**No. 04-1365C**
**(Judge Braden)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**CHEVRON U.S.A., INC.**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**JANE W. VANNEMAN**
**Senior Trial Counsel**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Phone: (202) 307-1011**
**Fa x: (202) 514-8624**

**OF COUNSEL:**
**PAUL MICHAEL, ESQ.**
**Department of Energy**
**Office of General Counsel**
**Washington, D.C**

**August 31, 2005**

# TABLE OF CONTENTS

**PAGE(S)**


DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1. The Court Lacks Jurisdiction To Entertain Plaintiff's Complaint Because The Contract At Issue, The Source Of Substantive Law Upon Which Chevron Relies, Is Not Money-Mandating . . . . . . . . . . . . . . . . . . . 3

2. The Court Lacks Jurisdiction To Entertain Plaintiff's Complaint Because This Court's Jurisdiction Extends Only To Cases In Which It May Render A Judgment Ordering the Payment of Money From Appropriated Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

3. The Court Lacks Jurisdiction To Entertain Chevron's Claim for Attorney Fees, Consultants Fees, Costs, And Other Expenses Associated With the Administrative Proceedings Because The United States Has Not Waived Its Sovereign Immunity For Chevron's Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4. The Department of Energy (DOE) Office of Hearing and Appeals (OHA) Is the Sole Forum Designated By The Parties In The EPA To Resolve Disputes, OHA Possesses The Power To Decide The Scope Of Its Own Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

A. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

B. Chevron Failed To Raise to the OHA Its Claim Relating to *Ex Parte* Contacts In Its Appeal of the Decision By The Assistant Secretary For Fossil Energy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C. Chevron's Reliance Upon An OHA Letter in 1999 Is Misplaced; It Is For OHA To Determine The Scope Of Its Own Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

5. The Statutory Authority for the Secretary of the Department of Energy To Enter Into Contracts . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

# TABLE OF AUTHORITIES

**CASE** | **PAGE(S)**


AINS v. United States,
365 F.3d 1333 (Fed. Cir. 2004) . . . . . . . . . . 7

Carranza v. United States,
2005 WL 1804318 (Fed. Cl., July 29, 2005) . . . . . . . . . . 4

Carroll v. United States,
2005 WL 1793418 (Fed. Cl., July 29, 2005) . . . . . . . . . . 4, 7

Chambers v. United States,
2005 WL 1798087 (Fed. Cir., 2005) . . . . . . . . . . 3

DCP Farms v. Yeutter,
957 F.2d 1183 (5th Cir. 1992), cert. denied, 500 U.S. 953 (1993) . . . . . . . . . . 14

Do-Well Mach. Shop v. United States,
870 F.2d 637 (Fed. Cir. 1989) . . . . . . . . . . 6

El-Sheikh v. United States,
177 F.3d 1321 (Fed. Cir. 1999) . . . . . . . . . . 6

Fisher v. United States,
402 F.3d 1167 (Fed. Cir. 2005) . . . . . . . . . . 3, 4

Furash & Co. v. United States,
252 F.3d 1336 (Fed. Cir. 2001) . . . . . . . . . . 6

Lewis v. United States,
2005 WL 1804336 (Fed. Cl., July 29, 2005) . . . . . . . . . . 4

Lion Raisins, Inc v. United States,
416 F.3d 1356 (Fed. Cir. 2005) . . . . . . . . . . 6, 10

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . 3

McCafferty v. United States,
61 Fed. Cl. 615 (2004), aff'd, 2005 WL 1634093 (Fed. Cir. 2005) . . . . . . . . . . 6

Palmer v. United States,
168 F.3d 1310 (Fed. Cir. 1999) . . . . . . . . . . 4

Samish Indian Nation v. United States,
No. 04-5042 (August 19, 2005, Fed. Cir.) . . . . . . . . . . 3

## TABLE OF AUTHORITIES (cont'd)

**CASE** **PAGE(S)**

The Federal Group, Inc., v. United States,
2005 WL 1797042 (Fed. Cl., 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Yancheng Baolong Biochemical Products Co., Ltd. v. United States,
406 F.3d 1377 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

**STATUTES AND REGULATIONS**

**PAGE(S)**

10 U.S.C. §7420 . . . . . . . . . . 7

28 U.S.C. §2517 . . . . . . . . . . 6

31 U.S.C. §1304(a)(1) . . . . . . . . . . 8

31 U.S.C. 1322(b)(2) . . . . . . . . . . 8

42 U.S.C. §§7101 et seq . . . . . . . . . . 11

42 U.S.C. §7131 (2000) . . . . . . . . . . 11

42 U.S.C. § 7256(a) . . . . . . . . . . 17

10 C.F.R. §§1003 et seq (2005) . . . . . . . . . . 11, 12, 13, 14

**MISCELLANEOUS**

Pub.L. 95-91 . . . . . . . . . . 17

Pub.L. 104-106 . . . . . . . . . . 7, 8, 9, 17

## INDEX TO APPENDIX

**PAGE(S)**

Defendant's Chart of Pertinent Statutes and Contracts . . . . . 1

Decision of Assistant Secretary Fossil Energy (ASFE), June 18, 2002 . . . . . 6

Letter, January 28, 2004, from Chevron to ASFE . . . . . 40

Letter, April 1, 2004, from DOE, General Counsel, to Chevron . . . . . 48

Reply Brief, April 2, 2004, from Akin Gump, counsel for Chevron, to OHA . . . . . 53

Letter, June 14, 2004, from attorney for Chevron to DOE, Office of General Counsel . . . . . 89

Letter, June 16, 2004, from Chevron attorney to Director, OHA . . . . . 91

Letter, June 21, 2004, from O'Melveny & Myers (attorney for DOE) to OHA . . . . . 92

Letter, July 23, 2004, from attorney for Chevron to OHA . . . . . 94

Letter, July 28, 2004, from DOE, OHA, to attorneys for Chevron and DOE . . . . . 96

Letter August 6, 2004, from O'Melveny & Myers to OHA . . . . . 98

Letter, August 10, 2004, from OHA, to attorneys for Chevron and DOE . . . . . 106

Letter, August 10, 2004, from attorney for Chevron to OHA . . . . . 107

Letter, August 12, 2004, from OHA to attorneys for Chevron and DOE . . . . . 109

Memorandum, June 10, 1997, from Secretary, DOE, for Director, OHA "Authority to Formulate and Conduct Adjudicative Proceedings Under "Agreement Regarding Equity Redetermination Process" Between The Department of Energy and Chevron U.S.A. Production Company . . . . . 110

Letter, February 2, 1999, from DOE, Office of General Counsel, to OHA, with DOE Opposition to Chevron's Request to Include Documents in Administrative Record . . . . . 118

Letter, February 19, 1999, from counsel for Chevron to OHA . . . . . 130

Letter, February 26, 1999, from OHA to counsel for Chevron and counsel for DOE . . . . . 134

Letter, March 4, 1999, from counsel for Chevron to OHA . . . . . 138

**INDEX TO APPENDIX (cont'd)**

**PAGE(S)**

Memorandum, April 21, 1998, from Charles J. Roy,
Financial Systems Officer, Office of Fossil Energy,
to Jean Morgan, Director, Capital Accounting Center,
re Transfer of Sales Proceeds from the Sale of Elk Hills . . . . . . . . . . . . . . . . . . . . . . . . 141

Samish Indian Nation v. United States, No. 04-5042 (August 19, 2005, Fed. Cir.) . . . . . . . . . 146

Department of Energy, Delegation Order, No. 00-016.00, December 6, 2001,
from Secretary of Energy to Director of The Office of Hearings and Appeals. . . . . . .
180

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A., INC. | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C<br>(Judge Braden) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION

Introduction

During the oral argument held in this case on July 21, 2005, the Court requested that defendant file a motion to dismiss pursuant to Rule 12(b)(1). Accordingly, defendant files this supplemental Rule 12(b)(1) motion. (Earlier in this case, we filed a motion to dismiss, pursuant to Rule 12(b)(6), for plaintiff's failure to state a claim upon which relief may be granted.) We respectfully request that this Court dismiss plaintiff's complaint for lack of jurisdiction pursuant to Rule 12(b)(1), and alternatively, dismiss pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Defendant also submits other supplemental material, as requested by the Court and/or to provide further clarification of points addressed at oral argument.[1] We also cite to recent several decisions issued after oral argument, on the points addressed in our supplemental brief.

---

[1] At oral argument, defendant presented its chart of pertinent statutes and contracts. As requested by the Court, we attach our chart to this filing, so that it is made part of the record. (We have made no changes to the chart from the one we presented to the Court at oral argument.) Appendix (App.). 1.

We make four main points in this supplemental brief, three of which involve jurisdiction. The Court lacks jurisdiction to entertain plaintiff's complaint for several reasons, including:

(1) the source of substantive law upon which Chevron relies, the contract, is not money-mandating;

(2) this Court's jurisdiction extends only to cases in which it may render a judgment ordering the payment of money from appropriated funds, and non-appropriated funds are involved here; and,

(3) the United States has not waived its sovereign immunity for Chevron's claims for attorney fees, costs and expenses.

As a final point, Chevron's reliance upon a letter opinion from the Department of Energy Office of Hearing and Appeals (OHA) in 1999, and also upon a 2004 OHA letter opinion, is misplaced. It is for OHA to determine the scope of its own authority, and, in the 1999 proceedings upon which Chevron relies, OHA interpreted its authority under the Equity Process Agreement (EPA) to review challenges to final equity determinations more broadly than Chevron acknowledges.

## ARGUMENT

1. The Court Lacks Jurisdiction To Entertain Plaintiff's Complaint Because The Contract At Issue, The Source Of Substantive Law Upon Which Chevron Relies, Is Not Money-Mandating

As noted by the Court at oral argument, the fundamental principle that governs our motions is that the United States has not waived sovereign immunity for any of plaintiff's claims relating to the contract at issue, Equity Process Agreement (EPA).[2] Therefore, this Court lacks jurisdiction to entertain the claims. See Transcript (Tr.) 20-24. The Court lacks jurisdiction because there has been no waiver of sovereign immunity for Chevron to sue under the Equity Process Agreement. Tr. 21, 30.

Since oral argument in this case, the United States Court of Appeals issued a decision addressing the requirement that a plaintiff must look outside the Tucker Act for the "source of substantive law" upon which to base a Tucker Act suit against the United States. See generally Chambers v. United States, 2005 WL 1798087, *3 (Fed. Cir., 2005) (citing Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003 (*en banc*) and Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005)(*en banc* in relevant part); see also generally Samish Indian Nation v. United States, No. 04-5042 (August 19, 2005, Fed. Cir.), slip op. at 13-15 (Indian Tucker Act), App. 147. Other recent decisions of the United States Court of Federal Claims, issued after oral

---

[2] At oral argument, counsel for Chevron attempted to argue that this case involves both the EPA and the Decoupling Agreement. Tr. 33-34. However, in its Complaint, Chevron included no allegations or counts relating to the Decoupling Agreement, and in its brief, Chevron included no arguments relating to the Decoupling Agreement. Further, as we set forth below, there is nothing in Chevron's correspondence to the Assistant Secretary for Fossil Energy (ASFE) or the OHA relating to the *ex parte* allegations that relate to the Decoupling Agreement.

Therefore, contrary to Chevron's arguments, its claims relate solely to the EPA, a contract *separate and apart* from the Decoupling Agreement, and an unusual contract in that it provides only for a *process* to be followed for the final equity redetermination.

argument, are to the same effect. See generally Lewis v. United States, 2005 WL 1804336 , **2-3 (Fed. Cl., July 29, 2005 (Braden, J.); Carranza v. United States, 2005 WL 1804318, *3-4 (Fed. Cl., July 29, 2005)(Braden, J.), citing Palmer v. United States, 168 F.3d 1310, 1313 (Fed. Cir. 1999), and Fisher v. United States, 402 F.3d 1167, 1172-73 (Fed. Cir. 2005)(*en banc* in relevant part)(if court's conclusion is that source as alleged and pleaded is not money-mandating, court shall so declare and dismiss for lack of jurisdiction pursuant to Rule 12(b)(1); absence of money-mandating source is fatal to court's jurisdiction under Tucker Act); see also Carroll v. United States, 2005 WL 1793418, *2-5 (Fed. Cl., July 29, 2005)(Bruggink, J.) (citing Fisher, 402 F.3d at 1167 (plaintiff must make more than a non-frivolous allegation that a statute is money-mandating to state a valid Tucker Act basis of jurisdiction).

While none of the cases cited above involve the type of contractual source of substantive law here, the courts employ broad language relating to the requirement of a "source of substantive law" upon which to base a Tucker Act claim. Given the expansive reading of "source of substantive law" in the Tucker Act context, the reasoning should apply here with equal force to a claim based upon a contract. This is so because jurisdiction exists to entertain a claim for breach of a contractual obligation only if that contractual obligation can fairly be interpreted as promising either performance or the payment of damages in the event of a failure to perform.

Here, the contractual obligation at issue cannot be fairly construed as a promise to pay damages in the event of a failure to perform. Rather, the parties agreed that any remedy for breach of the obligation would be limited to an appeal to OHA under the terms of the EPA. Paragraph 9 of the EPA establishes this principle, as it provides:

> The ASFE's determination of final equity shall be final, binding and non-appealable unless challenged by Chevron under the procedures and criteria set out above, in which case OHA's decision shall be final, binding and non-apppealable. In order to avoid the potential for protracted and costly litigation, Chevron and DOE have agreed, as an

> alternative to judicial resolution of any dispute regarding the ASFE equity redetermination decisions, to submit any challenge to such decisions to OHA and to be bound by the results thereof, without right of any further administrative or judicial review or appeal (nothing in the foregoing, however, shall be deemed to expand Chevron's right to challenge an ASFE decision beyond that permitted in paragraphs B.7 and B.8). To implement the foregoing, DOE and Chevron each knowingly and voluntarily waives any and all rights it may have (i) to bring any other judicial or administrative challenge to the final equity determination decisions by the ASFE, or (ii) to bring any judicial or administrative challenge to any decision by OHA." (Emphases added).

Paragraph 9, therefore, and particularly the final phrase, in section (ii), of the last sentence of paragraph 9, make clear that Chevron may not invoke the jurisdiction of this Court to review "any decision" by OHA, including any decision that OHA might make as to the scope of its authority to review any possible allegation of improper *ex parte* contacts. See Part 4, below.

Accordingly, because the Equity Process Agreement does not mandate the payment of money for any possible breach of the *ex parte* prohibition, defendant respectfully requests that this Court dismiss the complaint pursuant to Rule 12(b)(1) for lack of jurisdiction.

2. The Court Lacks Jurisdiction To Entertain Plaintiff's Complaint Because This Court's Jurisdiction Extends Only To Cases In Which It May Render A Judgment Ordering the Payment of Money From Appropriated Funds

At oral argument, the Court inquired whether it could render any money judgment against the United States in favor of Chevron out of appropriated funds. If non-appropriated funds are involved in this case, this Court would lack jurisdiction, and dismissal pursuant to Rule 12(b)(1) is appropriate. Therefore, if Chevron's purpose is to have this Court review the final equity redetermination decision, the Court possesses no jurisdiction because the funds in the Treasury account are not appropriated funds. See App. 141 (Department of Energy Memorandum, April 21, 1988, relating to funds at issue).[3]

---

[3] There is one exception that we note. **If** Chevron's claim is limited to claims for attorney fees and costs, and **if** the United States had waived sovereign immunity for Chevron's claim for attorney fees and costs (a legal point which we dispute, see Part 3, below), the non-appropriated funds doctrine would not be applicable. Therefore, assuming jurisdiction to entertain a claim for attorney fees and costs, a judgment from this Court in Chevron's favor

A recent decision of the United States Court of Appeals for the Federal Circuit addressed the issue of jurisdiction of this Court and non-appropriated funds. See Lion Raisins, Inc v. United States, 416 F.3d 1356, 1367-68 (Fed. Cir., 2005)(NAFI [non-appropriated funds] doctrine, which precludes exercise of Tucker Act jurisdiction by Court of Federal Claims over contract claims against NAFIs, does not extend to takings claims);[4] McCafferty v. United States, 61 Fed. Cl. 615 (2004)(Braden, J.), aff'd, 2005 WL 1634093 (Fed. Cir., 2005)(jurisdiction of Court of Federal Claims limited to rendering judgments that must be paid out of appropriated funds, citing 28 U.S.C. §2517); accord Furash & Co. v. United States, 252 F.3d 1336, 1339 (Fed. Cir. 2001); El-Sheikh v. United States, 177 F.3d 1321, 1322 (Fed. Cir. 1999)(NAFIs are Federal government entities whose monies do not come from congressional appropriation, but rather from their own activities).

---

would be paid from the Judgment Fund.

[4] Lion Raisins also stands for the general proposition that we presented in our briefs and at oral argument: where there is a comprehensive and integrated scheme for judicial review, jurisdiction by the United States Court of Federal Claims is precluded. Lion Raisins, 416 F.3d at 1371-72 (citing cases, including United States v. Fausto , 484 U.S. 439, 453-54, and Texas Peanut Farmers, 409 F.3d 1370 (Fed. Cir. 2005)).

Here, Chevron and DOE agreed, by contract, to a comprehensive, integrated, and exclusive scheme for an alternative dispute procedure – with Chevron's right to appeal to the Department of Energy Office of Hearing and Appeals under the terms of the EPA. E.g., Do-Well Mach. Shop v. United States, 870 F.2d 637, 640-41 (Fed. Cir. 1989)(parties' contractual agreement binds the parties).

Given the exclusive disputes procedure in the EPA, the Court should dismiss Chevron's complaint for lack of jurisdiction, and/or failure to state a claim upon which relief may be granted.

Similarly, this Court has issued decisions recently on the NAFI doctrine. See Carroll v. United States, 2005 WL 1793418, *5-6 (Fed. Cl., 2005)(Bruggink, J.) (action may proceed against United States, even if based upon actions of a NAFI, but only if the statute makes the United States liable for the actions of the NAFI). In Carroll, the Court relied upon the four-part test set forth in AINS v. United States, 365 F.3d 1333, 1344-45 (Fed. Cir. 2004)(United States did not waive sovereign immunity with respect to the action of the organization at issue; NAFIs are essentially self-supporting); cf. The Federal Group, Inc., v. United States, 2005 WL 1797042, *7-8 (Fed. Cl., 2005)(cases cited)(to be considered a NAFI for purposes of Tucker Act jurisdiction, must be a clear separation from appropriated funds to deprive the court of jurisdiction to entertain contract claims involved; significant portion of budget of Office of Personnel Management (OPM) is appropriated, so OPM is not a NAFI).

The four-part test set forth in AINS is as follows, and is met here:

(1) the funds, if any, that DOE might be required to pay Chevron will not come from Congressional appropriations:

(2) the funds, if any, will come from DOE's own activities in selling the Elk Hills field, 10 U.S.C. §7420 note;

(3) DOE could not utilize appropriated funds without a statutory amendment, because the money from the proceeds of the sale of Elk Hills were deposited into a special Treasury account, not into the general Treasury account, see App. 141-45; and,

(4) DOE's funds that were set aside after the sale of Elk Hills are separate from the General fund.

Pursuant to the "Decoupling Agreement" with Chevron, and under the terms of the settlement with the State of California,[5] DOE set aside part of the sale proceeds from the Elk Hills divestment specifically to pay for any additional amounts that might be owed to Chevron or

[5] See Sec. 3415(c) of Pub.L. 104-106 (the National Defense Authorization Act for Fiscal Year 1996, 110 Stat. 635-36).

the State of California after the finalization of the equity shares.[6] In 1998, $288 million was reserved for potential payment to Chevron. Because DOE possesses a specific source of funds to cover any required payments to Chevron in the event that Chevron's equity shares increase, the payment of any settlement, or judgment, is, pursuant to the Judgment Fund statute, "otherwise provided for." 31 U.S.C. §1304(a)(1) . Therefore, the Judgment Fund would not be available to pay any judgment. Because these funds were not "appropriated" to DOE for DOE's use,[7] DOE would not be permitted to use any transfer authorities to move monies into the set-aside to cover any possible deficit (nor would DOE be permitted to draw upon its appropriated funds to pay any deficiency).[8]

Specifically, in 1998, when DOE was distributing the sales proceeds, DOE deposited a portion of the funds into the Elk Hill School Lands Fund, a portion into the Naval Petroleum and Oil Shale Reserves Operating Account, a portion into the set-aside for any possible settlement involving Chevron, and the remainder went into the Treasury Miscellaneous Receipts fund(s).

Creation of an Elk Hills Schools Lands contingent fund for potential payment to the State of California is consistent with Sec. 3415(a), (b) of Pub. L. 104-106 (the National Defense

---

[6] In the Decoupling Agreement, Chevron was required to establish an irrevocable letter of credit as a source for contingency payments to DOE.

[7] The funds reserved for potential payment to Chevron if its equity share increases are from receipts collected from the purchaser in the sale of Naval Petroleum Reserve Numbered 1, not from DOE appropriated funds.

[8] Even if the set-aside funds are insufficient to cover all of DOE's possible liabilities, DOE would be required to make a correction of accounts, to the approximately $3 billion in proceeds from the sale of Elk Hills. DOE would not be required to request that Congress pass any appropriation to cover any possible deficiency because such amounts would be provided from the permanent, indefinite appropriations to the Secretary of the Treasury for "Refund of Moneys Erroneously Received and Covered." 31 U.S.C. 1322(b)(2).

Authorization Act for Fiscal Year 1996, 110 Stat. 635-636).[9]

Accordingly, given the non-appropriated funds involved in this case, this Court lacks jurisdiction, and dismissal pursuant to Rule 12(b)(1) is appropriate.

3. The Court Lacks Jurisdiction To Entertain Chevron's Claim for Attorney Fees, Consultants Fees, Costs, And Other Expenses Associated With the Administrative Proceedings Because The United States Has Not Waived Its Sovereign Immunity For Chevron's Claim

In its Complaint, Chevron requested attorney fees, consultants fees, costs, and other expenses associated with Chevron's participation in the administrative proceedings before the ASFE. Complaint, ¶¶ 58, 65, and 71. As we demonstrated in our briefs and at the oral argument, the United States has not waived its sovereign immunity for claims of this nature, and therefore, this Court lacks jurisdiction to entertain Chevron's claims for "damages."

In addition to the cases we cited in our briefs, we also rely upon a case that the Federal Circuit decided on May 11, 2005 (after we filed our reply brief, but before oral argument), that is controlling here. Yancheng Baolong Biochemical Products Co., Ltd. v. United States, 406 F.3d 1377, 1382-83 (Fed. Cir. 2005)(citing cases). In Yancheng, the court held that a waiver of sovereign immunity must be unequivocally expressed in the statutory text and will not be implied. In Yancheng, the court concluded that there was no waiver of sovereign immunity for "damages" in an anti-dumping duty case; therefore, the United States could not be held liable for

---

[9] If there are funds left in the account set up for potential payment to Chevron after finalization of equity with Chevron (either because DOE owes nothing to Chevron from the account, or because DOE owes less than is in the account), nine per cent of the net proceeds remaining in the account is to be deposited into the Elk Hill School Lands Fund and the remainder is to be deposited in Miscellaneous Receipts in the Treasury. See Sec. 3415(a) and (b). If DOE receives funds from Chevron, nine per cent of those funds are to be deposited into the Elk Hill School Lands Fund, just as if it were income from the original divestiture, and the remainder is to be deposited in Miscellaneous Receipts. (See Sec. 3414(a)) The particular Treasury account in which the Chevron set-aside funds were deposited is 89X6429. App. 141-46.

attorney fees as a contempt sanction, or for "damages," for violation of a preliminary injunction issued in that type of case. Certainly, if the United States could not be held liable in Yancheng for contempt "damages" in the form of attorney fees, DOE here also cannot be held liable for "damages" which are admittedly attorney fees and costs.

Another recent decision by the Federal Circuit supports our position that Chevron cannot characterize its attorney fees and costs as claims for general "damages." Chevron's claims are, in essence, for attorney fees, consultants fees, and costs – claims for which the United States has not waived sovereign immunity. See Lion Raisins Inc. v. United States, 416 F.3d at 1372 (plaintiff cannot seek compensation under the "guise" of a takings claim for what is essentially a challenge to invalid agency action). So too here, Chevron cannot sue for attorney fees and costs under the guise of a claim for "damages."

Accordingly, because the United States has not waived its sovereign immunity for the attorney fees and related costs that Chevron claims, this Court lacks jurisdiction to entertain the Complaint.

4. The Department of Energy (DOE) Office of Hearing and Appeals (OHA) Is the Sole Forum Designated By The Parties In The EPA To Resolve Disputes, OHA Possesses The Power To Decide The Scope Of Its Own Authority

A. Introduction

At oral argument, the Court inquired about the nature and extent of communications between Chevron and the Department of Energy (DOE) Office of Hearing and Appeals (OHA) relating to Chevron's claim of *ex parte* communication involving the Assistant Secretary for Fossil Energy (ASFE). In the appendix to this motion, we include a copy of the pertinent correspondence from 2004 relating to this issue. App. 40-109.[10] We also include a copy of pertinent correspondence from 1999, involving the OHA, upon which Chevron relies for its view that, because OHA cannot entertain the *ex parte* claim, Chevron can pursue its claim in this Court. App. 118-39.

It is apparent from the letter pleadings in 2004 before OHA that Chevron did not raise the *ex parte* issue in its brief on appeal of the ASFE decision to OHA, even though Chevron and DOE agreed in the EPA that OHA was to be the only forum to hear Chevron challenges regarding final equity decisions of the ASFE. Chevron agreed in the EPA to limited review by the OHA and agreed that it "knowingly and voluntarily" waived any and all rights to take any disputes to any court. Chevron is bound by its agreement. See paragraph 9, quoted above.[11]

---

[10] The DOE was established pursuant to the Department of Energy Organization Act, 42 U.S.C. §§7101 et seq. (2000); see 42 U.S.C. §7131 (2000). Regulations governing the jurisdiction and procedural rules of OHA can be found at 10 C.F.R. §§1003 et seq (2005). See Delegation Order, App. 180-84.

[11] At oral argument, the Court inquired as to the scope of OHA's authority and whether OHA would address the merits of the *ex parte* claims. Counsel for the Government attempted to respond, and stated that OHA possessed authority to entertain legal issues, and had considered Chevron's request that proceedings be suspended pending resolution of the *ex parte* issue. Tr. 11-16. Upon further review of proceedings before OHA, and consultation with the Department

B. Chevron Failed To Raise to the OHA Its Claim Relating to *Ex Parte* Contacts In Its Appeal of the Decision By The Assistant Secretary For Fossil Energy

In January 2004, Chevron raised, to the ASFE, the argument that there had allegedly been *ex parte* contacts, allegedly in violation of paragraph B.4 of the Equity Process Agreement. Chevron argued material breach and that Chevron's "due process" rights had been violated by these contacts. App. 40-47. Chevron requested that the ASFE:

-- suspend proceedings in the Stevens Zone case then pending before the OHA;

-- agree to the appointment of an impartial decision-maker with *de novo* judicial review[12] at Chevron's request; and,

-- allow Chevron to take discovery on the alleged *ex parte* contacts.

By letter dated April 1, 2004, the General Counsel at DOE responded. App. 48-52. Among other things, the General Counsel explained, with supporting examples, that the drafters of the EPA understood B.4 to proscribe *ex parte* communications between ASFE and DOE *field* equity teams; paragraph B.4 was not intended to restrict communications between the ASFE and the DOE technical staff in *headquarters in Washington, D.C*. Id. The General Counsel explained further that the *technical* process was separate from the *legal* process, and thus, the B.4 prohibition on *ex parte* communications did not apply to communications between legal counsel. Id.

In its 29-page brief to OHA (App. 53-88), dated April 2, 2004, Chevron pursued its EPA remedies and presented argument on numerous merits issues. However, Chevron did not present

---

of Energy, it is apparent that it was for OHA to determine the scope of its own authority relating to the matters that Chevron attempts to raise in this Court.

[12] Chevron contended, at oral argument, that it was not seeking "judicial review." However, Chevron did, in fact, specifically request ASFE to agree to judicial review if Chevron requested it. Tr. 32. Thus, it appears that Chevron is pursuing various avenues to attempt to secure judicial review, even though the Equity Process Agreement clearly does not provide for it.

any of its allegations with respect to the *ex parte* issue, because Chevron stated (page 1, n.1)

> The PDASFE's decision was supposed to be independent and impartial. However, after ChevronTexaco filed its opening brief in this appeal, it learned that the PDASFE's decision was written with the undisclosed involvement of DOE lawyers, including DOE counsel of record here. This ex parte involvement in the drafting of the PDASFE's decision is being addressed through those channels with authority over the matter, and is not at issue here. . . .

App. 59. Therefore, Chevron chose not to raise the *ex parte* issue to OHA, and, by so doing, waived the issue, and gave OHA no opportunity to consider the matter. Chevron should not be permitted to raise the issue now, in this Court, that Chevron knowingly and voluntarily waived before OHA.

By letter dated June 14, 2004, two months after filing its brief, Chevron's attorney informed the DOE General Counsel that Chevron alleged a material breach of contract and, because of these alleged improper *ex parte* contacts, Chevron considered the Equity Process Agreement to be no longer operative. App. 89-90. Chevron stated that it would participate in the OHA process under protest. Id. By letter dated June 16, 2004, from Chevron to the OHA, Chevron informed OHA of Chevron's position on this matter. App. 91.

By letter dated June 21, 2004, from O'Melveny & Myers (outside counsel engaged by DOE to represent DOE in the OHA proceedings), DOE complained that Chevron, by waiting until all the briefing was completed and the administrative record was filed before responding to the DOE General Counsel position on this matter, was, in reality, attempting to derail the entire proceedings. App. 92. DOE maintained that, pursuant to the agreement of the parties in the EPA, OHA was to review the legal issues on a *de novo* basis. DOE urged OHA to complete its proceedings. Id.

By letter dated July 23, 2004, Chevron's attorney informed OHA of Chevron's positions: that Chevron alleged a material breach of the EPA, would file a lawsuit in Federal court, any decision by OHA would be a nullity because of the breach, and further expenditure of time and

effort by OHA and the parties pending judicial resolution could be a waste of resources. App. 94-95. Chevron requested that OHA stay the proceedings pending the court case that Chevron intended to file. Id.[13] By letter dated July 28, 2004, OHA informed Chevron that it could file its brief on the merits (conversion methodology), but, if OHA subsequently granted the stay, Chevron could defer the filing of its brief pending the stay. App, 96-97.

By letter dated August 6, 2004, O'Melveny & Myers briefed the stay issue, arguing that Chevron failed to meet the OHA criteria for a stay. App. 98-105. DOE's attorney argued that Chevron had never responded to the *substance* of DOE's letter dated April 1, 2004, in which DOE rebutted Chevron's claim of material breach and violation of due process. Id.[14] To set aside the multi-tiered alternative dispute procedure to which the parties had agreed expressly by contract, would itself violate the parties' agreement.[15] Id. In any event, because OHA's review is *de novo*, any alleged taint in the ASFE decision in no way would affect the jurisdiction of OHA to decide the case, and would not contaminate any merits decision issued by OHA.[16]

---

[13] Chevron filed its Complaint in this Court on August 20, 2004.

[14] In a footnote, DOE argued that, if Chevron had truly been concerned about wasted resources, it would have submitted its request for a stay months prior to when it did; rather, Chevron allowed OHA to proceed through briefing, to learn the strength of DOE's position, before filing its request for a stay.

[15] DOE cited DCP Farms v. Yeutter, 957 F.2d 1183, 1188 (5th Cir. 1992), cert. denied, 500 U.S. 953 (1993) (judicial review of alleged improper interference in agency decision not available because the complaining party had failed to exhaust administrative review process; APA would provide for judicial review only where it is made reviewable by statute, and, if plaintiff believed that extraneous factors were considered, it may make that argument in its appeal).

[16] We note that OHA is the entity within DOE with authority to consider appeals of FOIA disputes. While the Court had requested that Chevron address the FOIA issue at oral argument, Chevron failed to explain why it did not pursue its appeal rights to OHA relating to DOE's denial in part of some of Chevron's FOIA requests with respect to documents relating to the *ex parte* issue.

By letter dated August 10, 2004, OHA informed the attorneys for Chevron and DOE that it had considered the parties' positions and determined that the OHA proceedings would not be stayed. App. 107. While Chevron filed, by letter dated the same day, August 10, 2004, what OHA determined to be a motion for reconsideration, OHA reviewed again Chevron's submission, and determined that none of Chevron's arguments warranted a change in its ruling denying the stay. App. 107-09.

Therefore, Chevron had the opportunity to file a brief with OHA on the issue of allegedly improper *ex parte* contacts, and OHA, in turn, would have considered whether it possessed the authority to decide the issue. Any OHA decision, pursuant to the EPA, and particularly paragraph 9, as to the scope of OHA's own authority would be final, binding, and non-appealable. Chevron's failure to raise the issue to OHA cannot confer jurisdiction upon this Court, where it otherwise does not exist, to adjudicate the dispute over allegedly improper ex parte contacts.

C. Chevron's Reliance Upon An OHA Letter in 1999 Is Misplaced; It Is For OHA To Determine The Scope Of Its Own Authority

In its brief to this Court, and at oral argument, Chevron contended that OHA determined, in a 1999 proceeding relating to the Carneros Zone, that OHA could not review matters involving the interpretation of the May 1997 Equity Process Agreement. However, Chevron takes the OHA statements out of context.

In 1999, Chevron had appealed to the OHA, to challenge a legal issue determined in the May 1998 Carneros Zone determination of the Assistant Secretary. App. 134. The Assistant Secretary rejected Chevron's contention that the Carneros Zone underlying the 25Z area (the disputed tract) was part of the Unit, and thus, subject to the final equity determination process. This dispute involved issues about the scope of the appeal (and extent of the Unit), and Chevron's request to submit disputed documents.

DOE argued that the May 1997 Agreement, providing for OHA review of the 25Z area legal issue, limited OHA to whether a June 1980 DOE determination included, in the Unit, the Carneros Zone underlying the 25Z area. Id. DOE maintained that Chevron improperly attempted to expand the scope of the proceeding to include whether the Assistant Secretary "*should have included* or *should now* include" (emphasis in original) the disputed area in the Unit. App. 118-29. Chevron disagreed, and suggested that it viewed the proceedings as extending to the issues that DOE argued were beyond the scope of the proceeding.

It was in this context that OHA stated:

> OHA does not have the authority to review disputes over the May 1997 agreement. The May 1997 agreement provides for OHA review of appeals from final equity redeterminations by the Assistant Secretary. The May 1997 agreement does not provide for OHA review of DOE's position on that agreement. Accordingly, DOE's position on OHA's authority under the agreement is the agency's position and governs this proceeding.

App. 135. OHA determined that it would not consider any arguments that the Assistant Secretary *should have* included, or *should now* include, the disputed area in the Unit. Id.

However, the OHA also went on immediately to conclude that the issue was, in fact, somewhat broader than DOE had framed it. Id. OHA recognized that its review authority was broad -–– it possessed *de novo* review authority - and therefore, OHA should consider any argument made by Chevron that the Assistant Secretary included the 25Z area in the Unit pursuant to some other document (which documents Chevron attempted to have included in the administrative record). App. 134-37; see App. 110. Thus, OHA determined that DOE's framing of the issue reflected, to some extent, its position on the merits, rather than a position that the May 1997 agreement precluded other arguments on the issue. Therefore, the OHA decided that it would "consider any Chevron arguments on the issue whether the Assistant Secretary included the disputed zone in the Unit." Id.

Thus, the OHA, in this 1999 dispute, took a broader view of its authority, by agreeing to

consider "any Chevron arguments...." The OHA's approach to its powers with respect to determining its own authority, and resolving the disputes between the parties involving final equity determinations, manifests a broader view of its powers than Chevron attempts to portray.

In any event, it would have been for OHA to determine, for itself, whether it possessed the authority to decide the *ex parte* issue, had Chevron raised it. That Chevron chose not to present the issue to OHA is a problem of its own making. Its failure to do so does not confer jurisdiction on this Court to address the issue.[17]

5. The Statutory Authority for the Secretary of the Department of Energy To Enter Into Contracts

At oral argument, the Court requested that we provide the general statutory authority for the Secretary of Energy to enter into contracts.

The Secretary of Energy's authority to enter into contracts is contained in section 646(a) of the Department of Energy Organization Act, Pub.L. 95-91. *See* 42 U.S.C. § 7256(a).

Specific to this case, the National Defense Authorization Act for Fiscal Year 1996 (NDA), particularly Sec. 3412(a) and (b) (Pub. L. 104-106, 110 Stat 635-636), authorized the Secretary of Energy to conduct the sale and to finalize equity interests in Naval Petroleum Reserve Numbered 1.

[17] Even if OHA had determined that it did not possess the authority to address this issue, Chevron has no right under the Equity Process Agreement to judicial review by this Court of Chevron's claim of improper *ex parte* contacts.

CONCLUSION

For the foregoing reasons, and those set forth in our initial Motion to Dismiss (and Reply Brief), defendant respectfully requests that this Court, pursuant to Rule 12(b)(1), dismiss the complaint for lack of jurisdiction, and alternatively, dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ David M. Cohen
DAVID M. COHEN
Director

/s/ Jane W. Vanneman
JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Phone: (202) 307-1011
Fa x: (202) 514-8624

OF COUNSEL:
PAUL MICHAEL, ESQ.
Department of Energy
Office of General Counsel
Washington, D.C

August 31, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of August, 2005, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION" and "APPENDIX" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jane W. Vanneman