AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

DONALD M. CRAVEN
202-887-4081/fax: 202-887-4288
dcraven@akingump.com

June 14, 2004

**BY HAND DELIVERY**

Lee Liberman Otis
General Counsel
United States Department of Energy
Forrestal Building, Room 6A245
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Re: Elk Hills Equity Finalization

Dear Ms. Otis:

Your April 1, letter to Mr. Warner Williams, Vice President of Chevron Texaco Exploration and Production Co., has been forwarded to me, as counsel for ChevronTexaco in this proceeding, for reply. Frankly, we were both surprised and disappointed by your letter. Although you acknowledge that a lawyer in the Office of General Counsel of the Department of Energy acted as both counsel for one of the parties in an adversarial legal proceeding and simultaneously as an advisor to the decision maker, you interpret the Equity Process Agreement as permitting this dual role. Clearly, you must appreciate that in consenting to the procedures afforded in the Equity Process Agreement, and thereby waiving its right to recourse to a court to determine controversies, ChevronTexaco understood that it was agreeing to alternative procedures which, at a minimum, would provide an objective decision maker and which would be fair and equitable. DOE does not disagree. Indeed, DOE recently advised Congress that "the ASFE is to impartially determine final equity shares between ChevronTexaco and the Department of Energy."

Any process in which the decision maker receives and relies on ex parte advice of counsel for one of the two adversary parties does not afford impartial decision-making nor can it be fair and equitable. It is simply common sense that for an adversarial process, whether administrative or judicial, to be impartial, fair and equitable, ex parte communications must be avoided at all cost. Such communications by representatives of the Office of General Counsel in this case, including participation in the drafting of the ASFE's (and, later, PDASFE's) decision, so infect the process that the decision understandably must be viewed as tainted. In a proceeding such as that contemplated under the *Equity Process Agreement*, it is incumbent upon each party to take every step necessary to avoid such improprieties in order to assure that any decision rendered thereunder be solely the product of the ASFE/PDASFE acting in his capacity as decision maker

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Leo Libarman Otis
June 14, 2004
Page 2

DOE's conduct in the Stevens Zone proceeding constitutes a fundamental and material breach of the DOE's obligations under the Equity Process Agreement. As a result of DOE's breach, ChevronTexaco considers both the Equity Process Agreement and the Decoupling Agreement to be no longer operative. Those agreements were simultaneously drafted and executed and are integrally related. Viewed together, they constitute a single, integrated contract.

Given the fact that the PDASFE's decision for the Stevens Zone was not rendered in compliance with the requirements of the Equity Process Agreement and the expectations of the parties, the Office of Hearings and Appeals lacks authority to review that decision. We thus intend, on ChevronTexaco's behalf, to notify the Office of Hearings and Appeals of DOE's breach of the Equity Process Agreement and our intention to participate in further Stevens Zone proceedings before OHA, should such proceedings take place, under protest. Similarly, while ChevronTexaco will continue to participate in proceedings related to the Shallow Oil Zone equity finalizations, it will do so only under protest and without waiving its claim of material breach.

Under the circumstances, we believe that the prior Carneros Zone and Dry Gas Zone equity determinations may also have been infected and may likewise be infirm. Pending receipt of information which would confirm that no similar ex parte communications occurred in those proceedings and that those proceedings otherwise have been conducted in strict accord with the terms of the Equity Process Agreement, we have no choice but to assume that decisions in those proceedings are similarly tainted and to dispute the validity of those decisions as well.

We deeply regret the current circumstances that have caused ChevronTexaco to question not only the objectivity of the decision maker but also the conduct of representatives of the Office of General Counsel who are playing an impermissible dual role in proceedings under the Equity Process Agreement. But the implications of the evidence we have obtained are unmistakable. As a result, ChevronTexaco must consider all legal remedies available to it.

Very truly yours,

Donald B. Craven

Donald B. Craven

cc: Mary Egger, Esquire (facsimile)
Gregory B. Thorpe, Esquire (facsimile)
Lisa Wing Stone, Esquire (facsimile)

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

DONALD B. CRAVEN
202.887.4051/fax:202.887.4288
dcraven@akingump.com

June 16, 2004

**BY HAND DELIVERY**

Mr. George Breznay
Director
Office of Hearings and Appeals
U.S. Department of Energy
1000 Independence Avenue, S.W
Room 7044
Washington, D C 20585-0107

Re: Case No TEA-0001

Dear Director Breznay:

In April, DOE's General Counsel confirmed the existence of communications that ChevronTexaco believes violate the May 19, 1997 Equity Process Agreement between ChevronTexaco and DOE. As a result of these communications, the decision of the Principal Deputy Assistant Secretary for Fossil Energy currently under review in this proceeding was not rendered in accordance with the requirements of the Equity Process Agreement. In turn, because OHA's authority to hear this matter derives solely from that same agreement, and extends only to review of decisions rendered in conformity with that agreement, OHA lacks jurisdiction to decide the pending appeal.

ChevronTexaco intends to proceed in the appropriate forum to seek redress for DOE's breach. If OHA decides to go forward with the pending appeal under the circumstances, ChevronTexaco will continue to participate in these proceedings. However, such participation will be under protest and with full reservation of ChevronTexaco's rights to dispute the validity and effect of any decision rendered.

Very Truly Yours,

Donald B. Craven / MCG

Donald B. Craven

cc: Mary H. Egger, Esq.
Gregory B. Thorpe, Esq.
Lisa Wing Stone, Esq.

# O'MELVENY & MYERS LLP

BEIJING
CENTURY CITY
HONG KONG
IRVINE SPECTRUM
LONDON
NEWPORT BEACH

400 South Hope Street
Los Angeles, California 90071-2899
TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407
www.omm.com

NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO
WASHINGTON, D.C.

June 21, 2004

OUR FILE NUMBER
882,691-0003

WRITER'S DIRECT DIAL
(213) 430-6593

WRITER'S E-MAIL ADDRESS
gthorpe@omm.com

VIA FACSIMILE AND U.S. MAIL

Mr. George Breznay
Director, Office of Hearings and Appeals
United States Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585-0107

Re: *Case No. TEA-0001*

Dear Mr. Breznay:

I write in response to Donald Craven's June 16, 2004 letter to you regarding the above-referenced appeal currently pending before the Office of Hearings and Appeals ("OHA"). The Department of Energy (DOE) completely disputes Chevron's allegation that the Equity Process Agreement has been violated. As explained in further detail in the attached April 1, 2004 letter from Lee Liberman Otis to Mr. Warner Williams, DOE has scrupulously adhered to the terms and conditions of the equity finalization process, and continues to do so. Chevron did not accept DOE's offer in the April 1 letter of a meeting to discuss any remaining concerns that Chevron may have had. In fact Chevron did not even respond to that letter until June 14, 2004, after all briefing had been completed and Chevron had participated in filing the administrative record in this appeal.

There simply is no basis for Chevron's rather transparent attempt to derail these proceedings. Chevron and DOE specifically agreed that disputes over legal issues addressed in the Principal Deputy Assistant Secretary for Fossil Energy's ("PDASFE") decision would be reviewed by OHA on a "*de novo*" basis. The current appeal is such a dispute over a legal issue. Accordingly, even if the PDASFE's decision had not been rendered in accordance with the parties' agreement, and again, DOE completely disputes this contention, OHA is free to render its own judgment. No one has questioned in any way OHA's decision making process or procedures in this matter. OHA continues to have full authority and "jurisdiction" to decide this appeal. While Chevron, for reasons currently unknown, may wish to disrupt these proceedings,

It does not have the right to do so. We respectfully submit that OHA should disregard Chevron's letter and complete these proceedings.

Very truly yours,

Gregory B. Thorpe /hws

Gregory B. Thorpe

Enclosure

cc: Mary H. Egger, Esq.
Donald B. Craven
Lisa Wing Stone, Esq.

DC1:589812.2

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

DONALD B. CRAVEN
202-887-4081/fax: 202-887-4288
dcraven@akingump.com

July 23, 2004

**BY FACSIMILE AND U.S. MAIL**

Mr. Thomas L. Wieker
Deputy Director
Office of Hearings and Appeals
U.S. Department of Energy
950 L'Enfant Avenue, S.W.
Washington, D.C. 20585

Re: Case No. TEA-0001

Dear Mr. Wieker:

I write in response to your July 2, 2004 letter in the above-referenced matter regarding my June 16, 2004 letter to OHA and Greg Thorpe's June 21 response thereto.

As stated in my June 16 letter, ChevronTexaco believes that DOE has materially breached the May 19, 1997 Equity Process Agreement ("Agreement") by engaging in ex parte communications precluded by the Agreement. These communications, a number of which have been acknowledged by DOE, have resulted in a situation in which one or more individuals advocating DOE's positions in the finalization process also simultaneously served as advisors to the Assistant Secretary/Principal Deputy Assistant Secretary, who was supposed to act as an impartial decision maker. As a result, the procedures established in the Agreement have been violated, depriving ChevronTexaco of the benefits of its bargain and rendering invalid the decision of the Principal Deputy Assistant Secretary under review in this proceeding.

ChevronTexaco first learned of an apparent breach of the Agreement in late December 2003 only after DOE finally responded substantively to a FOIA request that ChevronTexaco had filed eleven months earlier. Shortly thereafter, by letter dated January 28, 2004, Warner Williams, Vice President of ChevronTexaco Exploration and Production Co., wrote to the then Assistant Secretary, Carl Michael Smith, expressing ChevronTexaco's concerns about the situation. A copy of Mr. Williams's letter is attached hereto. In an April 1, 2004 letter from DOE General Counsel Lee Lieberman Otis to Mr. Williams, (a copy of which is attached to Mr. Thorpe's June 21 letter to OHA), DOE confirmed that a number of these troubling communications had, in fact, occurred but argued that they were permissible.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Mr. Thomas L. Wicker
July 23, 2004
Page 2

Since receiving DOE's confirmation of ex parte contacts, ChevronTexaco has been evaluating its options. We expect in the near term to file a complaint in federal court seeking appropriate redress. In contrast with OHA, which previously has acknowledged that it "does not have the authority to review disputes over the [Equity Process] agreement," (*see* February 26, 1999 letter from George B. Breznay to William H. Taft IV and Mary H. Egger in Case No. VEA-0010), a court has such jurisdiction and affords a process, including discovery, that allows for the development of a factual record necessary for a full airing of ChevronTexaco's claims that DOE has materially breached the Agreement.

Assuming the court finds that DOE has breached the Agreement, any decision rendered by OHA in this appeal would be a nullity because, at minimum, a condition precedent to OHA's jurisdiction – a decision by the Assistant Secretary (or his designee) untainted by ex parte communications – has not been satisfied. Under the circumstances, it appears that further expenditure of time and effort by OHA and the parties pending judicial resolution of the dispute over the parties' rights and obligations under the Agreement could be wasted. ChevronTexaco therefore respectfully requests that OHA stay the subject proceeding and await the outcome of the impending court case. In the event OHA nonetheless decides to proceed with this appeal, as stated in my June 16 letter, ChevronTexaco will continue to participate, under protest and with full reservation of its right to contest OHA's jurisdiction and the validity and effect of any decision rendered by OHA.

Sincerely,

Donald B. Craven (signature)

Donald B. Craven

cc: Mary H. Egger, Esq. (via fax)
Gregory B. Thorpe, Esq. (via fax)
Lisa Wing Stone, Esq. (via fax)
Gary D. Henderson, Esq. (via fax)

**Department of Energy**
Washington, DC 20585

JUL 28 2004

Donald B. Craven, Esq.
Akin Gump Strauss Hauer & Feld
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564

Mary H. Egger, Esq.
Deputy General Council, Technology
Transfer & Procurement
U.S. Department of Energy
GC-60, Forrestal Bldg.
1000 Independence Avenue, SW
Washington, DC 20585

Re: Case No. TEA-0001

Dear Mr. Craven and Ms. Egger:

Chevron has requested a stay of the instant case, and Fossil Energy has until August 6, 2004 to file a response. Once we receive the response, we will rule on the request.

In the meantime, we address a pending matter. Chevron moved to strike the Fossil Energy surreply. Chevron argues that its reply did not raise new issues and, therefore, that Fossil Energy was not entitled to file a surreply.

We will not strike Fossil Energy's surreply. The procedures do not define what constitutes a "new issue" and motions to strike are generally disfavored.

On the other hand, Chevron, as the appellant, should have the right to file the final brief in any round of briefing on the merits. Accordingly, Chevron has the option of filing a further brief. The tentative due date for that brief is September 1, 2004. If Chevron wishes to file a further brief but cannot do so by the due date, Chevron should so advise us.

If we grant the pending motion for stay, Chevron will have the option of filing its brief or of deferring the decision to file a brief pending the stay.

96

If you have any questions, please contact Janet N. Freimuth, Deputy Assistant Director, at (202)287-1439, janet.freimuth@hq.doe.gov.

Sincerely,

Thomas L. Wieker
Deputy Director
Office of Hearings and Appeals

cc: Gregory B. Thorpe, Esq.
O'Melveny & Myers, LLP

O'MELVENY & MYERS LLP

BEIJING
CENTURY CITY
HONG KONG
IRVINE
LONDON
LOS ANGELES

1625 Eye Street, NW
Washington, D.C. 20006-4001

TELEPHONE (202) 383-5300
FACSIMILE (202) 383-5414
www.omm.com

NEWPORT BEACH
NEW YORK
SAN FRANCISCO
SHANGHAI
SILICON VALLEY
TOKYO

OUR FILE NUMBER
882,691-003

WRITER'S DIRECT DIAL
(202) 383-5111

WRITER'S E-MAIL ADDRESS
lwstone@omm.com

August 6, 2004

VIA FACSIMILE AND U.S. MAIL

Mr. Thomas L. Wieker
Deputy Director
Office of Hearings and Appeals
U.S. Department of Energy
950 L'Enfant Avenue, S.W.
Washington, D.C. 20585

Re: *Case No. TEA-0001*

Dear Mr. Wieker:

I enclose the Department of Energy's Response to Chevron's Request for a Stay of Proceedings. Thank you for your consideration of DOE's position on this issue.

Very truly yours,

Lisa Wing Stone

Enclosure

cc: Janet Freimuth
Donald Craven
Daniel Joseph
C. Fairley Spillman
Gary Henderson (by overnight mail)
Mary Egger
Gena Cadieux
Gregory Thorpe

DC1:595001 1

98

**DEPARTMENT OF ENERGY**
**OFFICE OF HEARINGS AND APPEALS**
**CASE NO. TEA-001**

<u>Department of Energy's Response to Chevron's Request for a Stay of Proceedings</u>

The Department of Energy ("DOE") respectfully objects to Chevron's request for a stay of its own appeal before the Office of Hearings and Appeals ("OHA"). Chevron's stated reason for the stay is that it believes the DOE has breached the parties' Equity Process Agreement by allegedly engaging in prohibited ex parte communications with the Principal Deputy Assistant Secretary for Fossil Energy ("PDASFE"),[1] rendering the PDASFE's decision that is currently under appeal "invalid." Letter from D. Craven to T. Wisker, July 23, 2004.

As explained below, Chevron has failed to establish – or even assert – that OHA's criteria for granting such a stay are met in this case. In addition, any stay of the proceedings at this stage would be moot and short-lived, since no court would hear Chevron's case at this stage before Chevron has exhausted its administrative remedies under the Equity Process Agreement. We address each of these reasons in further detail below.

*Chevron Failed to Meet OHA's Standard for a Stay of Proceedings*

OHA should reject Chevron's request for a stay because Chevron has neither alleged nor established any of OHA's five recognized criteria for granting a stay,[2] which are as follows:

> (1) whether Chevron has made a showing that an irreparable injury will result if the stay is denied;

---

[1] DOE reserves all rights to refute the various factual and legal allegations Chevron makes to support this recently contrived argument.

[2] The OHA also could deny Chevron's request for a stay on the basis that Chevron did not comply with OHA's procedural requirements for a stay of its appeal under 10 C.F.R. Part 1003, subpart D, including, not limited to, the filing requirements of 10 C.F.R. § 1003.41 and the notification requirements of 10 C.F.R. § 1003.43(a).

DC1:596231.1

9

(2) whether Chevron has made a showing that denial of the stay will result in more immediate hardship or inequity to Chevron than a grant of the stay would cause others affected by the proceeding;

(3) whether Chevron has made a showing that a stay would be desirable for public policy reasons;

(4) whether Chevron has made a showing that it is impossible for Chevron to fulfill the requirements of an outstanding order or regulatory provision; and

(5) whether Chevron has made a showing that it has a strong likelihood of success on the merits.[3]

*See* 10 C.F.R. § 1003.45(b).

Most notably, Chevron has not even alleged that it will suffer either "irreparable injury" or "immediate hardship or inequity" if the stay is denied. 10 C.F.R. §§ 1003.45(b)(1), (b)(2). The only injury and hardship Chevron has asserted is the potential financial loss of allegedly "wasted" time and resources to complete the current proceedings before OHA, which at this late stage consist primarily of preparing for and presenting oral arguments.[4] The expenditure of time and resources to pursue an administrative remedy does not constitute irreparable injury. *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 108 (D.C. Cir. 1986). In fact, it is well recognized that economic loss does not constitute irreparable harm. *Wisconsin Gas Company v. Federal Energy Regulatory Commission*, 758 F.2d 669, 674 (D.C. Cir. 1985).

It is DOE, not Chevron, that would suffer "immediate hardship and inequity" should a stay be granted. *See* 10 C.F.R. § 1003.45(b)(2). Since Chevron filed its appeal in December 2003, DOE has invested significant time and resources into this proceeding. To stay the

---

3 These factors are nearly identical to those considered by courts when reviewing a stay of agency action. *See* Administrative Law, by Jacob Stein, Glenn Mitchell and Basil Mezines, § 49.03; *Virginia Petroleum Jobbers Ass'n. v. Federal Power Commission*, 259 F.2d 921, 925 (D.C. Cir. 1958).

4 Chevron's claim of concern regarding the expenditure of "wasted" resources itself is specious. Had Chevron truly been concerned about wasted resources, it would have requested a stay of these proceedings months ago. Instead, Chevron has sat back, allowed the OHA appeal proceeding to play out and learned the strength of DOE's position while formulating its strategy.

DC1:595023.1

proceeding at this late date, after completion of substantially all briefing and only weeks from oral argument, would be extremely unfair to DOE. This is particularly so because Chevron, fully aware of the issue since December 2003, nevertheless chose not to seek judicial intervention in the matter until now, after it has reviewed DOE's briefs and is fully aware of the strength of DOE's position.

To grant a stay under these facts would give Chevron unprecedented, unilateral control over the pacing and progress of this proceeding. Such a grant of power would be at the DOE's (and OHA's) expense. A party who brings a proceeding should not have the option of putting it on hold at its own discretion for its own strategic means. The interests of public policy and basic fairness demand that no one party hold such unilateral control. *See* 10 C.F.R. § 1003.45(b)(3) (identifying "public policy reasons" as a factor to consider in whether to grant a stay).

OHA's fourth factor for granting or denying a stay request also does not support Chevron's request. Chevron has made no allegation that it will be impossible for it to "fulfill the requirements of an outstanding order or regulatory provision" should the stay be denied, and DOE is unaware of any relevant order or provision. *See* 10 C.F.R. § 1003.45(b)(4).

Finally, Chevron has not established, or even asserted, that it has a strong likelihood of prevailing on the claim that DOE breached the procedures of the Equity Process Agreement. Over four months ago DOE vigorously denied Chevron's allegations and explained to Chevron why no breach occurred. *See* Letter from L. Otis to W. Williams, April 1, 2004. Chevron has not responded substantively to that letter. DOE continues to dispute Chevron's allegation that the procedures in the Equity Process Agreement were breached for the same reasons laid out in Lee Liberman Otis's April 1, 2004 letter, which was submitted to OHA as an attachment to Gregory Thorpe's June 21, 2004 letter to Director George Breznay. Chevron's continued silence

DC1:595033.1

to the DOE response is a tacit admission by Chevron that it cannot demonstrate a strong likelihood of success on its claim.

In the face of Chevron's complete failure to establish – or even assert – satisfaction of OHA's own standards for granting a stay of a proceeding, OHA should deny Chevron's request.

***Judicial Action is Not Warranted or Appropriate Until Chevron Exhausts its Administrative Remedies***

Finally, OHA should reject Chevron's request for a stay because, assuming *arguendo* a court would have jurisdiction, judicial review at this time would be, at best, premature where Chevron has failed to exhaust its administrative remedies.[5] The parties agreed to a specific, multi-tiered alternative dispute resolution process culminating in the use of the Office of Hearings and Appeals as the final adjudicative body. *See* Equity Process Agreement, § B. This process is not yet complete. To set this process aside in lieu of a court proceeding would violate the parties' agreement.

Moreover, no court would hear Chevron's case before the parties have completed the agreed-to alternative dispute resolution process, because the administrative process could moot any court proceeding. *See DCP Farms v. Yeutter*, 957 F.2d 1183 (5th Cir. 1992), *cert. denied* 500 U.S. 953 (1992) (judicial review of alleged improper interference in agency decision not available because party had failed to exhaust administrative review process). In this proceeding Chevron seeks a ruling that the parties should be using a specific conversion standard in the equity finalization. Chevron's position on this issue was not adopted by the PDASFE. Chevron

[5] The parties agreed in the Equity Process Agreement that any ruling by OHA is "final" and is not reviewable by a court. *See* Equity Process Agreement, §§ B.8, B.9, B.11. DOE reserves all its rights under the Equity Process Agreement, and does not here implicitly agree that a court would have jurisdiction over any court case brought by Chevron under the Equity Process Agreement.

DC1:595022.1

now has an opportunity to have the issue of the proper conversion method decided by OHA, on a *de novo* basis, in a proceeding that would supersede the PDASFE's decision.

Chevron incorrectly argues with no explanation that "any decision rendered by OHA in this appeal would be a nullity" and that an "untainted" decision by the PDASFE is a "condition precedent" to OHA's jurisdiction. Chevron has made no allegation of any impropriety before OHA and all parties agree that OHA is impartial. Moreover, because OHA's review on the issue before it is *de novo*, Equity Process Agreement, § B.11, OHA is free to give no deference to the PDASFE's decision, to make its own findings and to independently determine the merits of the legal issue before it. *See* 10 C.F.R. § 1003.37(a). Any alleged "taint" in the PDASFE's decision in no way affects OHA's jurisdiction, and would not contaminate any decision issued by OHA.

There can be no question that OHA can provide Chevron with the relief it seeks, that is, a ruling that the parties must use a specific conversion standard in the Stevens Zone equity finalization. In such case, the allegedly "tainted" PDASFE decision would become irrelevant and moot, and there would be no issue for Chevron to raise in a court proceeding. However, regardless of how OHA ultimately rules on the conversion method issue, Chevron will have received an impartial, independent decision-making body ruling on this issue, and this independent decision would overrule and replace the challenged PDASFE's decision.

Where an administrative proceeding could obviate judicial review, the exhaustion doctrine demands that the administrative proceeding should be allowed to proceed to fruition before any court proceeding. *See* Administrative Law, by Jacob Stein, Glenn Mitchell and Basil Mezines, § 49.01. To ask a court to intervene prematurely both undermines the integrity of the agency and wastes judicial resources. *See Public Citizen Health Research Group v.*

DC10VS033.1

*Commissioner, Food and Drug Administration*, 740 F.2d 21, 29 (D.C. Cir. 1984). Chevron can obtain full relief before OHA, and therefore should continue down the road it started.

*Conclusion*

Chevron has failed to establish any recognized reason why OHA should stay the pending proceeding. Chevron's request for a stay is unsupported. In addition, Chevron's timing reeks of strategic gamesmanship. There is no reason why at this late stage the parties should not continue to bring the current proceeding before OHA to closure. Even if judicial review were available, and DOE specifically does not concede that it is, such review in any event would not be appropriate until after OHA has issued a final ruling in this matter.

DC1:695023.1

CERTIFICATION

I, Elizabeth Wing Stone, hereby certify pursuant to 10 C.F.R. Section 1003.9(h), that I am a duly authorized representative of the United States Department of Energy and that I have caused a copy of this RESPONSE TO CHEVRON'S REQUEST FOR A STAY OF PROCEEDINGS to be served by overnight mail on the following representative of Appellant:

Gary D. Henderson
Assistant General Counsel
Chevron USA Inc.
North America Upstream
San Joaquin Valley Business Unit
Law Department
9525 Camino Media
Bakersfield, CA 93311

and by facsimile and U.S. mail on the following representatives of Appellant:

Donald B. Craven
Daniel Joseph
C. Fairley Spillman
Akin Gump Strauss Hauer & Feld, L.L.P.
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036

Dated: August 6, 2004

O'MELVENY & MYERS LLP

Elizabeth Wing Stone
Attorneys for Appellee U.S. Department of Energy

**Department of Energy**
Washington, DC 20585

AUG 10 2004

Donald B. Craven, Esq.
Akin Gump Strauss Hauer & Feld
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564

Mary H. Egger, Esq.
Deputy General Counsel, Technology
Transfer & Procurement
U.S. Department of Energy
GC-60, Forrestal Bldg.
1000 Independence Avenue, SW
Washington, DC 20585

Re: Case No. TEA-0001

Dear Mr. Craven and Ms. Egger:

Chevron has requested a stay of the instant case. Chevron indicates that, in the absence of a stay, Chevron will go forward with its appeal under protest. Fossil Energy opposes a stay.

After due consideration of the parties' positions, we have determined that the proceeding should not be stayed. As we indicated in a prior letter, Chevron has the option of submitting a brief by September 1, 2004 and oral argument is scheduled for September 22, 2004. As we also indicated, if Chevron will have difficulty meeting the September 1, 2004 deadline, it should so advise us.

If you have any questions, please contact Janet N. Freimuth, Deputy Assistant Director, at (202)287-1439, janet.freimuth@hq.doe.gov.

Sincerely,

Thomas L. Wieker
Deputy Director
Office of Hearings and Appeals

cc: Gregory B. Thorpe, Esq.
O'Melveny & Myers, LLP

Printed with soy ink on recycled paper

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

DONALD B. CRAVEN
202.887.4081/fax: 202-887-4288
dcraven@akingump.com

August 10, 2004

Mr. Thomas Wieker
Deputy Director
Office of Hearings and Appeals
U.S. Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

Re: Case No. TEA-0001

Dear Mr. Wieker:

We received this morning your letter denying ChevronTexaco's request for a stay of the above-referenced proceedings. Because of obvious flaws in the arguments made in DOE's August 6 response to ChevronTexaco's request, we intended to reply to DOE's letter and were finalizing that reply for filing this morning, when we received your letter ruling. We therefore instead ask that OHA reconsider its ruling and in support of that request offer the following comments:

As noted in my July 23 letter, serious irregularities in the proceedings underlying this appeal came to light late last year, after DOE finally responded to a FOIA request served by ChevronTexaco eleven months earlier. In April 2004, DOE's general counsel, Lee Lieberman Otis, confirmed a number of the facts giving rise to ChevronTexaco's concerns, but disputed the significance of those facts. Since receiving Ms. Otis's letter, ChevronTexaco has evaluated its options and decided to seek redress in court for DOE's actions that have corrupted the equity finalization proceedings. ChevronTexaco expects to file its complaint in the near future and will notify OHA once the filing has been made. At minimum, a decision favorable to ChevronTexaco in its lawsuit would mean that the decision under review in this appeal is void. Accordingly, ChevronTexaco has requested a stay of these proceedings so that OHA and the parties do not waste any additional resources in furtherance of a tainted process.

DOE makes two arguments in urging that OHA deny the stay. Both are misplaced.

First, DOE asserts that ChevronTexaco has failed to meet the standards in 10 C.F.R. §1003.45. However, that section sets forth the standards that must be met before OHA may stay the effect of an agency action or order, including its own order. *See* 60 Fed. Reg. 15004 (March 21, 1995) (referring to "Applications for Stay of DOE orders.") *See also* Department of Energy Delegation Order No. 00-016-00 (December 6, 2001), ¶ 1.7 (referring to "applications for stay of



107

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

Mr. Thomas Wieker
August 10, 2004
Page 2

any order, rule, regulation, ruling or other generally applicable requirement . . . .") Quite understandably, the standards for granting such relief are those routinely used in considering motions for preliminary injunctions. ChevronTexaco's request, by contrast, merely seeks a hiatus in the current proceedings for judicial economy-type reasons. The strict standards relied upon by DOE have no place in evaluating this type of request.

Second, DOE claims that ChevronTexaco has not exhausted its administrative remedies. However, the issue that ChevronTexaco will bring to court -- whether DOE has materially breached the Equity Process Agreement -- is not within the limited jurisdiction given to OHA in the Equity Process Agreement. Indeed, OHA has recognized that it does not have the authority to resolve disputes arising under the Equity Process Agreement itself. *See* February 26, 1999 letter from George Breznay to William H. Taft IV and Mary Egger in Case No. VEA-0010. DOE apparently also contends that OHA's jurisdiction is unaffected by the invalidity of the underlying PDASFE decision. However, OHA's jurisdiction here is a matter of contract, and both the Equity Process Agreement and the delegation order implementing that agreement make clear that such jurisdiction is limited to the review of equity finalization decisions of the ASFE. In the absence of a valid ASFE/PDASFE decision, OHA lacks authority to act.

Finally, in an apparent effort to question the timing of ChevronTexaco's request, DOE inexplicably contends that ChevronTexaco did not respond to Ms. Otis's April 1, 2004 letter. In fact, after due consideration of the very serious issue created by DOE's conduct, ChevronTexaco did respond to that letter on June 14, 2004. A copy of that June 14 letter is attached hereto. Moreover, even if ChevronTexaco had not responded to Ms. Otis's letter, that would have no bearing on DOE's breach of the Equity Process Agreement or the advisability of staying this proceeding while a court considers ChevronTexaco's complaint.

Accordingly, none of DOE's arguments opposing a stay has merit. For the reasons set forth herein, OHA should reconsider its denial of ChevronTexaco's request to stay these proceedings.

Very truly yours,

Donald B. Craven

Donald B. Craven

cc: Mary H. Egger, Esq. (via facsimile/U.S. mail)
Gregory B. Thorpe, Esq. (via facsimile/U.S. mail)
Lisa Wing Stone, Esq. (via facsimile/U.S. mail)
Gary D. Henderson, Esq. (via facsimile/U.S. mail)

07/19/2005 16 12 FAX 202 586 3274 DOE/GC-30,31,and 32 035/035
OHA
PAGE 02

Department of Energy
Washington, DC 20585

FILE COPY

AUG 1 2 2004

Donald B. Craven, Esq.
Akin Gump Strauss Hauer & Feld
1333 New Hampshire Avenue, NW
Washington, DC 20036-1564

Mary H. Egger, Esq.
Deputy General Counsel, Technology
Transfer & Procurement
U.S. Department of Energy
GC-60, Forrestal Bldg.
1000 Independence Avenue, SW
Washington, DC 20585

Re: Case No. TEA-0001

Dear Mr. Craven and Ms. Egger:

On August 11, Chevron filed a request for reconsideration of our August 10 denial of its request for stay. We have reviewed Chevron's submission and do not believe that any of the arguments warrant a change in our ruling. Chevron filed the appeal pursuant to an agreement with DOE, but now argues that DOE actions relieve it from the terms of the agreement. As we have previously stated, disputes about the agreement are outside our purview. Accordingly, given the absence of a joint motion for stay, the proceeding should go forward.

If you have any questions, please contact Janet N. Freimuth, Deputy Assistant Director, at (202)287-1435, janet.freimuth@hq.doe.gov.

Sincerely,

Thomas L. Wieker
Deputy Director
Office of Hearings and Appeals

cc: Gregory B. Thorpe, Esq.
O'Melveny & Myers, LLP

Printed with soy ink on recycled paper

07/29/2005 20:19 FAX 202 586 3274 DMM
JUL-29-2005 10:33
DOE/GC-30,31,and 32
P.15/25

The Secretary of Energy
Washington, DC 20585

June 10, 1997

MEMORANDUM FOR GEORGE B. BREZNAY
DIRECTOR, OFFICE OF HEARINGS AND APPEALS

FROM: FEDERICO F. PEÑA

SUBJECT: AUTHORITY TO FORMULATE AND CONDUCT ADJUDICATIVE PROCEEDINGS UNDER "AGREEMENT REGARDING EQUITY REDETERMINATION PROCESS" BETWEEN THE DEPARTMENT OF ENERGY AND CHEVRON U.S.A. PRODUCTION COMPANY

Pursuant to Paragraphs 14 and 18 of DOE Delegation Order No. 0204-24, as amended, I hereby authorize you as Director of the Office of Hearings and Appeals (OHA) to review challenges by Chevron U.S.A. Production Company (Chevron) to any decision or equity redetermination made by the DOE Assistant Secretary for Fossil Energy (ASFE) under the terms and procedures set forth in the Agreement Regarding Equity Redetermination Process (the Agreement) (attached), to implement Title XXXIV of the National Defense Authorization Act for Fiscal Year 1996, Pub. L. 104-106 (110 Stat. 186) for the sale of Naval Petroleum Reserve Numbered 1 (Elk Hills).

You are further authorized, upon notice to the parties, to adopt and administer procedures for adjudicating any challenge by Chevron under the Agreement, which you determine to be necessary or appropriate by reference to the DOE procedural regulations in 10 C.F.R. Chapter X and the terms of the Agreement.

Attachment

110

Agreement Regarding Equity Redetermination Process

This Agreement Regarding Equity Redetermination Process (this "Agreement"), dated as of May 19, 1997, is by and between the U.S. Department of Energy ("DOE") and Chevron U.S.A. Production Company, a division of Chevron U.S.A. Inc. ("Chevron"). DOE and Chevron officials have been engaged in an effort to finalize all equity interests in the four unitized productive zones within Naval Petroleum Reserve No. 1 (Elk Hills) pursuant to section 3412(b) of the National Defense Authorization Act for Fiscal Year 1996, Pub.L. 104-106 ("Act"). In connection with this activity and upon the execution of the Agreement Regarding Fixing of Equity Interests at Naval Petroleum Reserve No. 1 for Purposes of Sale (hereinafter the "Decoupling Agreement") by DOE and Chevron, DOE and Chevron hereby agree:

A. Independent Petroleum Engineer Process for Shallow Oil Zone.

1. DOE will submit the pending Shallow Oil Zone ("SOZ") equity redetermination dispute to Netherland, Sewell & Associates ("NSA") for its recommendation of final SOZ equity to the Assistant Secretary for Fossil Energy ("ASFE"). Such recommendation by NSA shall constitute the advisory report of the independent petroleum engineer for purposes of both section 3412(b) of the Act and section 9(b) of the Unit Plan Contract dated June 19, 1944, as amended and supplemented (the "UPC").

2. The procedures of Assistant Secretary for Fossil Energy Administrative Order No. 96-01, "Protocol on Naval Petroleum Reserve Numbered 1 Equity Finalization Implementation Process," dated July 8, 1996, as amended and supplemented, will be utilized for the SOZ pursuant to a schedule to be agreed upon by DOE, Chevron and NSA. The parties will agree upon a SOZ schedule based on the procedural framework set forth in Assistant Secretary for Fossil Energy Order No. 96-01, "Protocol on Naval Petroleum Reserve Numbered 1 Equity Finalization Implementation Process (Supplement 3)," dated January 21, 1997.

3. The disposition of legal issues associated with the SOZ which are common to the other zones (e.g., issues relating to proved reserves, recovery factors, and the appropriateness of the use of API gravity as a weighting factor) will apply to the SOZ redetermination process, including, without limitation, the disposition of legal issues in the Settlement Agreement, dated January 6, 1997 and in the Stevens Zone Settlement Agreement Dated May 7, 1997 ("Stevens Settlement Agreement"). In furtherance of the foregoing, the parties specifically agree that,

arising in the SOZ will be addressed by following the procedures set forth in Assistant Secretary for Fossil Energy Administrative Order No. 96-01 (Supplement No. 1), dated October 11, 1996.

4. In light of the substantial body of prior equity work already completed by the parties on the SOZ, the parties shall use their best efforts to agree on the scope and methodology to be used in the SOZ equity work, including manual sand counting and other issues, with the goal of facilitating and shortening the SOZ equity study process. The parties will use a production and data cutoff date of December 31, 1997.

5. Upon the execution of the Decoupling Agreement, the ASFE will withdraw the Preliminary SOZ Redetermination Decision, dated March 28, 1997. Upon withdrawal of the Preliminary SOZ Redetermination Decision, the parties agree to set aside the Independent Petroleum Engineer Report issued by James K. Dietrich and Associates (hereinafter the "Dietrich Report"), dated November 1995, on the SOZ and to provide a joint instruction to NSA to disregard the Dietrich Report for all purposes.

6. Neither DOE nor Chevron, or their representatives, will use, cite or reference either (i) the Preliminary SOZ Redetermination Decision, or (ii) the Dietrich Report on the SOZ, or any portions thereof, in any administrative or legal proceedings on any subject whatsoever, or in the SOZ equity finalization process described herein.

7. The ASFE's decision on SOZ equity issued as a result of the process described in this agreement will be both a redetermination of equity pursuant to sections 2(f) and 9(b) of the UPC, as well as a final determination of equity pursuant to § 3412(b) of the Act.

8. Chevron and DOE acknowledge that as a result of the process specified in this Agreement, the date for issuance of the ASFE's final SOZ equity redetermination decision will be delayed until after completion of the procedural steps described in paragraphs 8.1 through 8.3 below. Chevron waives any claim it may have as a result of the process specified in this Agreement that the ASFE's final SOZ decision is unduly delayed, was due by a certain date, or that following the procedures set forth in this agreement violates any requirements of § 3412(b) of the Act or the UPC.



112

Chevron and DOE agree on the following procedures for the ASFE redeterminations of equity for all four unitized zones and for any review of such equity redetermination decisions:

1. NSA will provide a provisional equity recommendation report for each zone. Chevron and DOE will review such report for factual accuracy, error or misinterpretation and provide written comments thereon to NSA within 30 days after issuance of the provisional recommendation, or such later date as determined by the ASFE upon the request of either party, which request will not be unreasonably withheld.

2. NSA shall issue its final recommendation report to the ASFE, with a copy to Chevron. Chevron and DOE will review the final recommendation and provide written comments thereon to the ASFE within two weeks after issuance of the final recommendation, or such later date as determined by the ASFE upon the request of either party, which request will not be unreasonably withheld.

3. After receipt of the NSA recommendation for a zone, the ASFE shall issue a preliminary decision on such zone and shall provide the Chevron and DOE equity teams with copies of the documents relied upon in reaching the preliminary decision which are not already in the equity teams' possession, including, without limitation, any geophysical, geological or petrophysical data relied upon by the ASFE, but excluding draft documents, any legal or technical advice provided to the ASFE, or documents concerning the deliberative process of reaching the preliminary decision. The Chevron and the DOE equity teams shall have the opportunity to review the preliminary decision and provide written comments thereon to the ASFE within 10 days after its issuance, or such later date as determined by the ASFE upon the request of either party, which request will not be unreasonably withheld.

4. The ASFE will not consult, directly or indirectly, with the DOE field equity technical team concerning equity redetermination-related matters without also consulting with the Chevron equity team on any such matter (the reference in this sentence to the DOE field equity technical team does not include the DOE technical staff in Washington, D.C.). No such communications by the ASFE with either equity team shall be on an ex parte basis. Any written materials submitted to the ASFE by either equity team shall be provided to the other party. The provisions of this paragraph B.4 shall cease to apply with respect to a zone upon the ASFE's issuance of her final equity decision for such zone.

... after the ASFE's receipt of written comments, if any, from DOE and Chevron on the NSA final recommendation for such zone. The ASFE shall use reasonable efforts to issue a final decision on such zone within 3 months after receipt of written comments, if any, from DOE and Chevron on the ASFE's preliminary decision.

6. In issuing the equity redetermination decisions for a zone, the ASFE may accept the NSA recommendations or reject the NSA recommendations in whole or in part. If the ASFE decides to reject the NSA recommendations in whole or in part, such decision must be based on a determination by the ASFE that one or more of the following criteria exist:

   a. The NSA recommendation(s) was arbitrary or capricious;

   b. The NSA recommendation(s) was a result of fraud;

   c. The NSA recommendation(s) was a result of undue influence, unless such undue influence had no impact on NSA's recommended equity participation percentages;

   d. The NSA recommendation(s) was inconsistent with statute, the UPC or an applicable Settlement Agreement between Chevron and DOE, unless such inconsistency had no impact on NSA's recommended participation percentages;

   e. The NSA recommendation(s) was not based on substantial geophysical, geological and/or petrophysical data; or

   f. The NSA recommendation(s) resulted from an approach or methodology which is inconsistent with sound oil field engineering principles.

7. If an ASFE decision adopts the NSA recommendation for a particular zone, that ASFE decision shall be final and not subject to challenge by Chevron. If an ASFE final decision rejects, in whole or in part, NSA's participation percentage recommendations, Chevron may challenge the ASFE decision and such challenge shall be referred to the Department of Energy Office of Hearings and Appeals ("OHA") for a decision. In this event, OHA shall review only the points on which the ASFE rejected NSA's recommendations that have been challenged by Chevron, and in all other respects the ASFE's decision shall be final. Chevron and DOE agree that the standard of review to be applied by OHA shall be the standards set forth in the Administrative Procedures Act (5 U.S.C. § 706) and the Wunderlich Act (41 U.S.C. §§ 321 and 322). Chevron shall file with OHA any challenge to an ASFE final redetermination decision for a zone within 6 months after the date of such ASFE final redetermination decision

... file such challenge within such 6-month period, the ASFE redetermination decision for the zone in question shall be final and binding on the parties and not subject to challenge by Chevron.

8. If OHA denies the Chevron challenge to the ASFE's decision on an issue, the ASFE's decision on such issue shall be final and binding on the parties. If OHA upholds the Chevron challenge on an issue, then the NSA recommendation(s) at issue shall be adopted as final. If OHA determines to uphold the ASFE decision in part, then OHA, in its discretion, may either (i) direct that the NSA recommendation on the issue be adopted by the ASFE, (ii) remand the specific issue back to the ASFE for further determinations in accordance with OHA's instructions, or (iii) render a decision on such issue based on the record before it. If OHA remands an issue to the ASFE, Chevron shall have the right to challenge any further determination of the ASFE on such remand under the process set forth in paragraph B.7 above.

9. The ASFE's determination of final equity shall be final, binding and non-appealable unless challenged by Chevron under the procedures and criteria set out above, in which case OHA's decision shall be final, binding and non-appealable. In order to avoid the potential for protracted and costly litigation, Chevron and DOE have agreed, as an alternative to judicial resolution of any dispute regarding the ASFE equity redetermination decisions, to submit any challenge to such decisions to OHA and to be bound by the results thereof, without right of any further administrative or judicial review or appeal (nothing in the foregoing, however, shall be deemed to expand Chevron's right to challenge an ASFE decision beyond that permitted in paragraphs B.7 and B.8 above). To implement the foregoing, DOE and Chevron each knowingly and voluntarily waives any and all rights it may have (i) to bring any other judicial or administrative challenge to the final equity determination decisions by the ASFE, or (ii) to bring any judicial or administrative challenge to any decision by OHA.

10. Chevron and DOE acknowledge that the procedural steps referenced in paragraphs B.1 and B.2 already have been completed for the Carneros Zone and the Dry Gas Zone for all purposes of this Agreement and that such steps shall not be repeated for such zones.

11. Notwithstanding the provisions of paragraph B.7 above, Chevron and DOE agree that any challenge by Chevron to the ASFE's decision regarding the "25% area" legal issue (which affects only the Carneros Zone) shall be reviewed "de novo" by OHA and that any OHA determination of the matter shall be



115

arise that are processed by NSA pursuant to instructions from the Independent Legal Advisor (as opposed to instructions agreed upon by Chevron and DOE in the form of a Settlement Agreement), the ASFE's decision on such legal issue, if challenged by Chevron, also shall be reviewed "de novo" by OHA and OHA's determination of the matter shall be final and binding on the parties.

C. Miscellaneous

1. The parties acknowledge that the ASFE is currently delegated the Secretary of Energy's authorities under title XXXIV of the Act. In the event this delegation is subsequently revised to alter this designation or in the event the Secretary chooses to perform the functions himself, such later designated official or the Secretary, as the case may be, will perform the ASFE functions identified in this Agreement.

2. This Agreement shall be governed by, and construed under, the federal law of the United States.

3. If the Decoupling Agreement is terminated pursuant to Sections 6.2 or 6.8 thereof, then this Agreement shall automatically terminate effective on the termination date of the Decoupling Agreement, and thereafter shall be of no force or effect, unless extended or modified by mutual agreement of the parties.

4. Each party represents that it has good and sufficient authority to execute and deliver this Agreement and to perform its respective obligations hereunder. This Agreement has been duly authorized, executed and delivered by the parties and constitutes the legal, valid and binding obligation of the parties, enforceable against them in accordance with its terms. Each individual signing this Agreement warrants and represents that he or she has full authority to execute the same on behalf of the party for whom he or she is signing.

5. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute but one and the same agreement.



111

Energy (or designee) will issue a written memorandum authorizing OHA to perform the functions set forth in paragraphs 7 and 8 of Part E of this Agreement. Chevron will be provided a copy of such memorandum.

IN WITNESS WHEREOF, DOE and Chevron have each caused this Agreement to be executed as of the date first written above.

U.S. Department of Energy

By: [signature]
Title: Assistant Secretary for Fossil Energy

Chevron U.S.A. Production Company, a division of Chevron U.S.A., Inc.

By: [signature]
Title: VP & Gen. MGR. WE

**Department of Energy**
Washington, DC 20585

February 2, 1999

George B. Breznay, Director
Office of Hearings and Appeals
U.S. Department of Energy
Washington, D.C. 20585

Re: Appeal of Chevron U.S.A. Production Company, Case No. VEA-0010

Dear Director Breznay:

Enclosed please find the original and one copy of the Department of Energy's Opposition to Chevron's Request to Include Documents in the Administrative Record. By letter, dated January 22, 1999, the Office of Hearings and Appeals (OHA) granted the Department until January 29, 1999 to file this Opposition. On January 29, OHA extended this period by telephone to February 2, upon the Department's request and representation that Chevron's counsel, William H. Taft IV, Esq., did not object to the requested extension.

In the event, OHA allows for, or defers a ruling on, inclusion of some or all of the documents identified by Chevron, the Department reserves the right to renew its objections at such later time or in the event Chevron actually seeks to rely on the documents. The Department also reserves the right to subsequently identify any additional documents needed by the Department to rebut the arguments or facts asserted by Chevron as a result to the documents here in dispute.

Sincerely,

Mary H. Egger
Deputy General Counsel
Technology Transfer & Procurement

Counsel for the U.S. Department of Energy

Enclosure

Printed with soy ink on recycled paper

118

cc:
William H. Taft IV, Esq.
Gary Henderson, Esq.
Greg Thorpe, Esq.

119

# THE U.S. DEPARTMENT OF ENERGY'S OPPOSITION TO CHEVRON'S REQUEST TO INCLUDE DOCUMENTS IN THE ADMINISTRATIVE RECORD

## INTRODUCTION

In accordance with the Proposed Procedures/Timetable for Appeal of Assistant Secretary for Fossil Energy Decision Regarding Carneros Zone Equity Redetermination, transmitted by the parties to the Office of Hearings and Appeals ("OHA") on October 26, 1998 (the "Procedures"),[1] the U.S. Department of Energy ("DOE" or "Department") submits this Opposition to Chevron U.S.A. Production Company's Request to Include Documents in the Administrative Record ("Chevron Request").[2] As will be discussed below, the documents proffered by Chevron U.S.A. Production Company ("Chevron") do not meet the clear admission criteria of the Procedures. Additionally, inclusion of the documents in the record is both burdensome and prejudicial to the Department, and will unduly delay the proceeding.[3]

## BACKGROUND

### A. The Old Unit and Chevron's Appeal Regarding the 25Z Legal Issue

Prior to February 5, 1998 (the closing date for the sale of the Government's interest in the Naval Petroleum Reserve No. 1), Chevron and DOE each owned individual parcels of oil and gas bearing properties within Naval Petroleum Reserve No. 1 ("NPR-1" or "Elk Hills") in Kern County, California. Most of these parcels were operated as a Unit (the "Old Unit") under the Unit Plan Contract, dated June 19, 1944. Notwithstanding the sale, certain issues surrounding the finalization of equity in the Old Unit were not completed before closing and have not yet been resolved.

---

[1] The Procedures were accepted by OHA in a conference call with the parties on October 29, 1998. See Chevron Exhibit 3.

[2] The new materials Chevron seeks to add to the record are: (1) the May 1997 Sales Brochure (the "Sales Brochure") and two reports asserted by Chevron to be attached to the Sales Brochure ("Associated Sales Documents"); (2) the January 27, 1998 Purchase and Sale Agreement for the sale of the Government's interest in the field, as amended (the "Purchase Agreement"); (3) a September 18, 1998 letter from the California Department of Conservation, Division of Oil and Gas to Chevron (the "1998 DOG Letter"); and (4) a letter to the ASFE dated September 24, 1996 ("Chevron's 1996 Letter").

[3] By letter from Chevron dated January 22, 1999, OHA advised the parties that OHA granted DOE's request for an extension to file this opposition response. In the January 22 letter, OHA also advised DOE that OHA "generally permits a party to file whatever documents that parties believes are necessary to support its position," unless DOE in an opposition explains why the "presence of the documents in the record would be burdensome or prejudicial, or would unduly delay the proceeding."

120

The 25Z Legal Issue, which is the issue in this case, centers on an inclusion determination, dated June 25, 1980, in which, pursuant to section 15(b) of the UPC, the Department's Assistant Secretary for Resource Applications advised Chevron that "it is desirable to include the [25Z Area] down to and including the Stevens Zone" in the Old Unit ("1980 Inclusion Determination").[4] Following receipt of the Independent Petroleum Engineer's recommendation of equity for the Carneros Zone (which lies beneath the Stevens Zone), the Assistant Secretary for Fossil Energy ("ASFE") finalized equity in the Carneros Zone by issuing the DECISION FINALIZING PARTICIPATION PERCENTAGES IN PRODUCTION FROM THE CARNEROS ZONE, NAVAL PETROLEUM RESERVE NO. 1 ("Carneros Zone Final Decision"). The Carneros Zone Final Decision determined, among other things, that the 1980 Inclusion Determination added only the portions of the 25Z "down to and including the Stevens Zone," and not down to and including the Carneros Zone as asserted by Chevron for the first time in 1996. Pursuant to the Agreement Regarding Equity Redetermination Process (the "Equity Process Agreement"),[5] Chevron brings this appeal to challenge the ASFE's decision on the 25Z Legal Issue.

**B. The Creation of the New Unit for the 1998 Sale and Chevron's Request to Expand the Administrative Record**

The disagreement regarding the administrative record centers around documents prepared in 1997 and 1998 — at least 17 years after the 1980 Inclusion Determination. At the time the United States sold its interest in the Elk Hills field in February 1998, Chevron and DOE were in the middle of the 25Z Legal Issue dispute regarding whether the Carneros Zone beneath certain acreage in the 25Z parcel (which is owned by Chevron) was part of the Old Unit. However, the parties also cooperated on a number of issues surrounding the sale of the Government's interest in Elk Hills.

In the spring of 1997, the Department and Chevron negotiated the form of a new Unit Agreement and Unit Operating Agreement ("New Unit Agreement") to govern the Elk Hills field after the sale of the Government's interest in the field. The New Unit Agreement,[6] which upon execution would form a New Unit, was distributed to potential

---

[4] The Stevens Zone refers to a stratigraphic interval containing hydrocarbons and is one of the commercially productive zones at Elk Hills. *See* section 2(o) of the Unit Plan Contract. The Stevens Zone lies above the Carneros Zone, which is the zone at issue in this 25Z Legal Issue appeal.
[5] *See* the Attachment to the June 10, 1997 Delegation of Authority to OHA (Exhibit A).
[6] The New Unit Agreement is attached as Exhibit I to the Purchase Agreement, one of the documents (continued...)



121

offerors so that they and Chevron (which would continue to own its lands in fee) would be assured that, at the option of the purchaser of the Operatorship interest, a New Unit could be formed following the sale. Significantly, as required by Section 3413(a)(3) of the National Defense Authorization Act for Fiscal Year 1996 (the "Act"), the Department terminated the Unit Plan Contract, and thus the Old Unit, upon closing on the sale of the Government's interest in NPR-1.

Towards the end of the negotiations with Chevron over the form of the New Unit Agreement, Chevron's business representative, Mr. James Brady, proposed deleting from the New Unit Agreement the formation limitations which were being carried over from the Old Unit. These limitations affected approximately six sections of land within the Old Unit, including the Carneros Zone underlying the 25Z Area that is the subject of this appeal. The Department agreed to this change to the New Unit Agreement only after requesting and receiving Chevron's agreement that:

> [R]emoval of the formation limitations shall have no precedential value and will not be used or cited in any manner by the parties in connection with the "25Z Area dispute" or any other disputes or issues that currently exist, or may arise in the future, under the Unit Plan Contract.

Exhibit B, p.1 (emphasis added). Chevron expressly agreed to this stipulation. *See* Exhibit B, p. 2, signed by Chevron's Corporate Assistant Secretary. Additionally, the New Unit Agreement describes a New Unit which is legally distinct and separate from the Old Unit -- ***When Chevron agreed to the formation of the New Unit, it understood that it differed from the Old Unit, and explicitly agreed to refrain from using or citing to the New Unit Agreement in these (and other) proceedings.***

## THE DOCUMENTS IN ISSUE

Chevron proposes that the following four categories of documents be included in the administrative record:

- Sales Brochure and Associated Sales Documents: The Sales Brochure consists of 2 volumes of materials describing the Elk Hills site and facilities, and it totals about 350 pages. The Sales Brochure was prepared and distributed by the

[4](...continued)
Chevron now seeks to add to the administrative record. *See* Chevron Response, p. 5.



122

Department's financial advisers in coordination with Department.[7] The Associated Sales Documents identified by Chevron are not attached to the Sales Brochure as Chevron describes, although they are summarized and referenced in the Sales Brochure. The Associated Sales Documents identified by Chevron are the **Ryder Scott Reserve Report** and the **Upside Study**. The Ryder Scott Reserve Report was an independent reserve report prepared (pursuant to statute)[8] by the Ryder Scott Company. The Ryder Scott Report consists of three volumes of extensive engineering materials which provide estimates of the mineral reserves underlying the Elk Hills field. The Report totals about 2000 pages and includes six CD ROMs (each with 650 megabytes of material, chiefly structure maps, logs, isopach maps, and engineering worksheets and notes). The Upside Study[9] was prepared by the Department to inform potential buyers of possible investment opportunities at Elk Hills. It contains ten volumes of materials and totals about 900 pages, plus approximately 120 maps, charts, and cross sections. Chevron did not specify which portions of these voluminous materials it believes is relevant to the 25Z Legal Issue.

- <u>The 1998 Purchase Agreement</u>: The Purchase Agreement was executed by the Department and the purchaser of the Government's interest[10] in Elk Hills, Occidental Petroleum of Elk Hills, Inc. The document, which originated with a draft contract available to all potential offerors, reflects the conclusion of the negotiations between the Department and Occidental, and consists of approximately 200 pages (including exhibits).

- <u>1998 DOG Letter</u>: This letter was solicited by Chevron from the California Division of Oil and Gas on an *ex parte* basis eighteen years after the 1980

---

[7] By statute, the Department was required to retain a financial adviser to "independently administer" the sale. *See* Section 3412(e)(1) of the Act. Page 1 of the Sales Brochure states:

> "No person has been authorized to make any representations or warranty, express or implied, regarding the [United States' interest in Elk Hills Naval Petroleum Reserve No. 1]. Only those representations, if any, which may be made to a party in a definitive [and executed] written agreement regarding a transaction involving the DOE . . . will have any legal effect whatsoever."

[8] By statute, the reserve report was to be an "independent" report. *See* Section 3412(f)(3) of the Act.
[9] Like the Sales Brochure, the Upside Study contained an express disclaimer that, in pertinent part, is virtually identical to that contained in the Sales Brochure. *See supra* note 7.
[10] The parcel of land at issue in this appeal, the 25Z Area, was not owned by the United States.



123

Inclusion Determination to support Chevron's position in this litigation. This letter bears no relation to the 1980 Inclusion Determination. Furthermore, it addresses a technical issue that is unconnected to the 25Z Legal Issue.

- Chevron's 1996 Letter: This letter relates to a proposal by the Department to include additional lands into the Old Unit, and is related to a separate February 4, 1998 decision by the Assistance Secretary for Fossil Energy (ASFE) that is briefly discussed in the Carneros Zone Final Decision. However, the letter has no relevance to the 25Z Legal Issue (*i.e.*, whether the Carneros Zone underlying the 25Z Area was added to the Old Unit in 1980), which is the sole issue in this appeal.

## STANDARD FOR INCLUDING DOCUMENTS IN THE ADMINISTRATIVE RECORD IN THIS APPEAL

Unlike many of the administrative review roles performed by OHA, OHA's review function in this case is pursuant to a special delegation of authority by the Secretary of Energy. *See* Exhibit A. Further, in accordance with the Secretary's delegation, OHA adopted the Procedures agreed upon by the parties for, among other things, the admission of documents into the administrative record. The Procedures set out the process for including documents which the parties themselves could not agree upon:

> OHA may decide to include a [disputed] document in the record if it is authentic, complete, relevant to the appeal, not prohibited from consideration as the result of any agreement of the parties, and if OHA determines that there was good cause for the document not being identified and utilized in the proceedings before the Independent Legal Advisor and/or the Assistant Secretary for Fossil Energy.[11]

*See* Chevron Appeal Exhibit 2 (emphasis added). By attempting to argue that it meets the criteria for inclusion of documents under the Procedures[12] Chevron acknowledges the applicability of the Procedures.

Notwithstanding the acceptance of the Procedures, in its January 22 letter to the

[11] For purposes of this Opposition only, the Department is challenging inclusion of the documents in issue principally on the basis of the underscored criteria. This emphasis should not be construed as an admission or agreement that the other criteria are met.

[12] *See, e.g.*, Chevron Request, p.5.

parties. OHA advised the parties that it normally employs a different standard for exclusion of documents (whether inclusion of a proposed document would be "burdensome, prejudicial or could unduly delay" the proceeding). The Department respectfully submits that this traditional standard does not apply in this case. Nevertheless, DOE will show that the documents in issue do not meet the inclusion criteria set out in the Procedures and meet the standards for exclusion referenced by OHA in its January 22 letter.

## ARGUMENT

### A. Addition of the Purchase Agreement is Prohibited from Consideration as the Result of an Agreement between the Parties

In its Request to Include Documents, Chevron asserts the Purchase Agreement:

> [R]epresents that the 25Z lands are included in the Unit *without restriction.* Thus, the [Purchase Agreement] confirms that DOE represented to Occidental that DOE was selling an interest in the Unit that included the Carneros Zone underlying the 25Z lands.[13]

Chevron Request, p. 5 (emphasis in original). However, on June 18, 1997, Chevron agreed that the purported "admissions" it now seeks to add to the record would *not* be used in this dispute. *See* Exhibit B. Not only does Chevron fail to inform OHA of a significant factor (the existence of the Old Unit and the different New Unit), but Chevron's use and citation of the New Unit Agreement in this regard is **prohibited by agreement of the parties.** OHA should not reward Chevron's breach of this agreement and its representations by permitting the inclusion of this document. Instead, OHA should enforce the terms of the Procedures agreed upon by the parties and exclude this document.

### B. The Documents Are Not Relevant To The 25Z Legal Issue

Notwithstanding Chevron's obvious attempts to broaden the 25Z Legal Issue,[14] the

---

[13] Technically speaking, the Department did not sell an interest in the Unit; rather, DOE terminated the Unit Plan Contract and it sold fee interests in parcels of land within NPR-1. The New Unit was one to which Chevron agreed to be bound for <u>future</u> operations.

[14] The Department first objected to Chevron's attempt to broaden the issue in this appeal in its

(continued...)



125

issue is quite narrow. The issue is whether or not the Carneros Zone underlying the 25Z Area was included, <u>in 1980</u>, within the boundaries of the lands subject to the Unit Plan Contract (the Old Unit). *See* Carneros Zone Final Decision, pp. 6, 9-11 (Chevron Appeal Exhibit 1). Thus, by their very nature, the various sales documents prepared in 1997-98 here sought to be included in the record by Chevron cannot affect the legal standing of the 25Z Area *vis à vis* the Old Unit. Furthermore, as is evident by the description of the documents set out above, the documents — some of which were not even prepared by DOE — clearly do not contain "admissions" by the Department that the 25Z Area was in the Old Unit.

Chevron gives no reason why written statements made in 1997 by DOE's consultants and investment bankers are relevant to the interpretation of the 1980 Inclusion Determination. Moreover, DOE finds no support in these documents for Chevron's claim that DOE said that the Carneros Zone underneath the 25Z Area was in the Old Unit. To the contrary, page 32 of the Sales Brochure (in the section marked "Ownership") clearly indicates that the 25Z Area added to the Unit in 1980 includes only that portion "Down to & including the Stevens Zone." Chevron should at least be required to provide some basis for its unsupported assertions of relevance before these documents are added to the administrative record.

The claimed "admissions" in the 1998 Purchase Agreement, including the New Unit Agreement (which is an exhibit to the 1998 Purchase Agreement), merely reflect a change in the New Unit Agreement that Chevron and DOE ***jointly*** made to smooth out certain operational issues in preparation for the 1998 sale of the United States' interest in the Elk Hills field. These changes were relevant to the new owner, not to the past treatment of the Old Unit by Chevron and DOE. As such, they have absolutely no bearing on the interpretation of the 1980 inclusion determination that is the subject of this appeal.

The 1998 DOG Letter is a self-serving letter obtained by Chevron on an *ex parte*

---

[14](...continued)
comments, dated November 27, 1998, to Chevron's Notice of Appeal. The only issue before the OHA is whether the 1980 Inclusion Determination included the 25Z Area down to and including the Carneros Zone. The issue in this appeal is <u>not</u> whether the ASFE, exercising the unilateral discretion granted to the Government in the Unit Plan Contract, <u>could have</u> included the 25Z Area in the Old Unit. The Assistant Secretary had the discretion to decide not to include lands in the Old Unit. *See United States v. Standard Oil Company of California*, 545 F.2d 624 (9th Cir. 1976). Chevron's attempt to broaden the issue under review clearly will unduly delay the proceeding, and will impose an additional burden on DOE.



126

basis specifically for this litigation, and has no bearing on the 1980 Inclusion Determination. Chevron's 1996 Letter is even more removed, in that it comments on a 1996 proposed inclusion by the Department.

None of these documents is relevant to the 25Z Legal Issue, and the introduction of these documents and the issues they represent will only serve to confuse and delay these proceedings.

C. **Inclusion of the Documents is Burdensome and Prejudicial to the Department and Will Unduly Delay the Proceeding**

Even under the standards used by OHA for its other cases, the documents in dispute should not be included in the administrative record. As set out above, the documents in Categories 1 and 2 are voluminous and Chevron has not even attempted to cite to the portions of the documents that allegedly support its position. Further, in order to adequately prepare its case, the Department will be required, if the documents are included, to thoroughly review this mountain of paper not only to try to identify the portions on which Chevron may attempt to rely, but to find all the various portions of those documents and other documents which rebut the Chevron position. The task of reviewing such extensive irrelevant documents is *both* burdensome and prejudicial. Similarly, the two letters sought to be included in Categories 3 and 4, though not voluminous, are directed to complicated issues (*e.g.*, what lands may or may not be "on the same geological structure"; whether it was "desirable" to add lands to the Old Unit) that *simply are not in issue in this appeal*. Inclusion of these documents, therefore, also would be burdensome and prejudicial by requiring the Department to prepare for a case that is not properly before OHA — a case that does not fall under the Secretarial delegation under which OHA is functioning. In addition, all of these documents, if included, will unduly delay these proceedings by signaling that issues well beyond the 25Z Legal Issue will be addressed.

## CONCLUSION

Inclusion of the documents in dispute is contrary to the Procedures adopted for this appeal. Chevron itself acknowledges, by unsuccessfully arguing that the disputed documents meet the criteria set out in the Procedures, that the Procedures apply.

In the event OHA nevertheless allows the documents in issue to be included in the

record, the Department reserves the right to request the inclusion of additional documents to rebut Chevron's allegations regarding these extraneous issues. In acting upon the Joint Designation contemplated in the Procedures that the parties agreed on and OHA accepted, the Department in good faith was operating under the Procedures, and the criteria set out therein. Accordingly, the Department should not be foreclosed from identifying for inclusion additional documents should OHA determine that it will impose the new standards first identified by OHA in its January 22, 1999 letter.

# CERTIFICATIONS

Pursuant to 10 C.F.R. 1003.9(b), I, Mary H. Egger, hereby certify that I am a duly authorized representative of the U.S. Department of Energy (DOE). In addition, I certify that DOE has complied with all notice requirements set forth in 10 C.F.R. 1003.34, and has caused a copy of the enclosed U.S. Department of Energy Opposition to Chevron's Request to Include Documents in the Administrative Record to be served by mail, postage prepaid, on the counsel listed below:

William H. Taft, IV
Fried, Frank, Harris, Shriver & Jacobson
1001 Pennsylvania Avenue, N.W. Suite 800
Washington, D.C. 20004-2505

Gary Henderson, Esq.
Chevron U.S.A. Production Company
4900 California Avenue
P.O. Box 1392
Bakersfield, CA 93309

Dated: 2/2/99

Mary H. Egger
Counsel for U.S. Department of Energy

129

FRIED, FRANK, HARRIS, SHRIVER & JACOBSON
A PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

1001 PENNSYLVANIA AVENUE, N.W., SUITE 800
WASHINGTON, DC 20004 - 2505
202 - 639 - 7000
FAX - 202 - 639 - 7008

February 19, 1999

202-639-7146

**Via Hand Delivery**

George B. Breznay, Director
Office of Hearings and Appeals
U.S. Department of Energy
950 L'Enfant Plaza, 7th Floor
Washington, D.C. 20585

**RE: Response To DOE's Opposition To Chevron's Request To Include Documents In The Administrative Record. Case No. VEA—0010**

Dear Director Breznay:

On January 15, 1999 Chevron U.S.A. Production Co. ("Chevron") filed a Request To Include Documents In The Administrative Record ("Request To Include") in connection with the above-captioned appeal. On February 2, 1999 the Department of Energy ("DOE") filed its Opposition To Chevron's Request To Include Documents In The Administrative Record ("Opposition").

In its Opposition DOE states that the Purchase and Sale Agreement between DOE and Occidental Petroleum Corporation is precluded from consideration by OHA as a result of an agreement reflected in a letter from DOE dated June 17, 1997 and agreed to by Chevron on June 18th 1997. The June 17, 1997 letter specifically dealt with the deletion of formation limitations from the new Unit Operating Agreement, and in it the parties agreed that Chevron would not refer to the absence of formation limitations in the Unit Operating Agreement in connection with the dispute that is now before OHA regarding whether the Cameros Zone underlying Section 25Z was subject to the terms of the Unit Plan Contract (UPC).

When Chevron filed its Request To Include, it did not consider that the language of the June 17, 1997 letter concerning the Unit Operating Agreement would prohibit reference in these proceedings to the Purchase and Sale Agreement. Chevron and DOE held extensive discussions regarding the inclusion of the Purchase and Sale

130

Agreement in the administrative record prior to Chevron's filing of its Request to Include, and at no point in those discussions did DOE suggest that the June 17, 1997 letter might preclude such inclusion.

Chevron takes very seriously any suggestion that it failed to inform OHA of significant facts or contravened its agreement concerning reference to the deletion of formation limitations from the new Unit Operating Agreement. Chevron had absolutely no intent to do either. Furthermore, having now reviewed the June 17, 1997 letter in light of DOE's recent statement of its grounds for Opposition, Chevron does not agree with DOE's interpretation of the June 17, 1997 letter, nor with DOE's characterization of Chevron's actions. Nevertheless, in order to avoid further, unnecessary controversy concerning reference to the Purchase and Sale Agreement, and distraction from the main issues of this proceeding, Chevron hereby withdraws its request to include the Purchase and Sale Agreement in the administrative record for this appeal.

The offering materials provided to prospective purchasers of DOE's interest in the Unit before June 17, 1997, include documents that reflect DOE's awareness – entirely distinct from the absence of formation limitations in the new Unit Agreement – that the 25Z Carneros was subject to the terms of the existing Unit Plan Contract. These documents are properly included in the administrative record for this appeal.

DOE states that Chevron "gives no reason" why documents prepared in connection with the sale of the Reserve are relevant to the question whether the Carneros Zone underlying Section 25Z was subject to the terms of the UPC. Opposition at 7. However, Chevron clearly stated in its Request to Include that the offering materials are relevant because they "contradict the assertion made by DOE to the ILA and the ASFE that the inclusion of the 25Z lands . . . did not include the Carneros Zone." Request To Include at 3.

Finally, DOE suggests that the inclusion of the offering materials in the administrative record will be unduly burdensome to DOE because it will be required to review a "mountain of paper . . . to try to identify the portions on which Chevron may attempt to rely." Opposition at 8. This assertion is unfounded. Chevron will file its opening brief in this matter on March 31, 1999. *See* "Proposed Procedures/Timetable for Appeal of Assistant Secretary for Fossil Energy Decision Regarding Carneros Zone Equity Redetermination" attached as Exhibit 2 to Chevron's Notice of Appeal dated November 18, 1998. As soon as DOE receives Chevron's brief, it will know the precise documents on which Chevron has relied. Thereafter, DOE will have three months in which to prepare its response to Chevron's brief. *See id.* Thus DOE will have ample time to review the documents necessary for its response.

With regard to the other two documents in Chevron's Request to Include, Chevron has set forth their relevance to the present dispute in that document. DOE's

contentions that these documents are irrelevant or that their inclusion would be unduly burdensome are without merit.

Sincerely,

William H. Taft, IV
Counsel for Chevron U.S.A. Production Co.

## CERTIFICATIONS

Pursuant to 10 C.F.R. § 1003.9(b), I, William H. Taft, IV hereby certify that I am a duly authorized representative of Chevron U.S.A. Production Company (Chevron). In addition, I certify that Chevron has complied with all of the notice requirements set forth in *10 C.F.R. § 1003.34*, and has caused a copy of the foregoing *RESPONSE TO DOE'S* OPPOSITION TO CHEVRON'S REQUEST TO INCLUDE DOCUMENTS IN THE ADMINISTRATIVE RECORD to be served by mail, postage prepaid, on the counsel listed below:

Mary H. Egger, Esq.
Assistant General Counsel
United States Department of Energy
1000 Independence Avenue S.W.
Washington, D.C. 20585

Greg Thorpe, Esq.
O'Melveny & Myers, LLP
400 South Hope Street
Los Angeles, CA 90071

Dated: February 19, 1999

William H. Taft, IV
Counsel for Chevron U.S.A. Production Co.

**Department of Energy**
Washington, DC 20585

FEB 26 1999

William H. Taft IV, Esq.
Fried, Frank, Harris, Shriver & Jacobson
1001 Pennsylvania Avenue, NW
Suite 800
Washington, DC 20004-2505

Mary H. Egger, Esq.
Office of General Counsel
U.S. Department of Energy
1000 Independence Avenue, SW
Washington, DC 20585-0103

Re: Case No. VEA-0010

Dear Mr. Taft and Ms. Egger:

This letter concerns the appeal by Chevron U.S.A. Production Co. (Chevron) of the May 1998 final equity determination issued by the Department of Energy's Assistant Secretary for Fossil Energy. In the May 1998 determination, the Assistant Secretary rejected Chevron's contention that the Carneros Zone underlying the 25Z area (the disputed zone) was part of the Unit.

On January 15, 1999, the Office of Hearings and Appeals received two submissions. The first was a Joint Designation of Administrative Record, which set forth a list of 54 documents. The second was a motion by Chevron to include an additional four documents (the disputed documents) in the record. On February 2, 1999, DOE responded to the motion, arguing that the documents should not be included in the record. On February 19, 1999, Chevron filed a reply.

The parties' submissions concern two matters: (i) the scope of this appeal, and (ii) Chevron's request to submit the disputed documents.

## I. The Scope of This Appeal

DOE argues that the disputed documents concern issues that OHA does not have the authority to consider. DOE argues that the May 1997 agreement between DOE and Chevron, providing for OHA review of "the '25Z area' legal issue," limits OHA to the following legal issue:



Printed with soy ink on recycled paper

whether a June 1980 DOE determination by the Assistant Secretary included, in the Unit, the Carneros Zone underlying the 25Z area. DOE maintains that Chevron seeks to enlarge the proceeding to include whether the Assistant Secretary *should have* included, or *should now* include, the disputed zone in the Unit.

Chevron does not directly address DOE's contention concerning the scope of the proceeding. Nonetheless, its submissions suggest that it views the proceeding as extending to the issues that DOE contends are beyond the scope of the proceeding.

OHA does not have the authority to review disputes over the May 1997 agreement. The May 1997 agreement provides for OHA review of appeals from final equity redeterminations by the Assistant Secretary. The May 1997 agreement does not provide for OHA review of DOE's position on that agreement. Accordingly, DOE's position on OHA's authority under the agreement is the agency's position and governs this proceeding.

As the foregoing indicates, OHA will not consider any arguments that the Assistant Secretary *should have* included, or *should now* include, the disputed zone in the Unit. As explained below, however, we believe that the issue properly before OHA is somewhat broader than the manner in which DOE has framed it.

DOE refers to the issue before OHA as whether the June 1980 determination included the disputed area in the Unit: DOE argues that the June 1980 determination did not include the disputed zone and that no other such determination exists. It seems to us that under the de novo review standard, which applies here, OHA should consider any Chevron argument that the Assistant Secretary included the disputed zone in the Unit pursuant to some other document. Indeed, the Assistant Secretary's May 1998 final equity determination referred to such an argument. Accordingly, we believe that DOE's framing of the issue to some extent reflected its position on the merits, rather than a position that the May 1997 agreement precludes other arguments on the issue. Accordingly, we will consider any Chevron arguments on the issue whether the Assistant Secretary included the disputed zone in the Unit.

II. Chevron's Request to Submit the Disputed Documents

Chevron originally requested the right to submit the following four documents:

1. 1997 offering materials provided by the DOE to prospective Elk Hills purchasers

2. 1998 DOE/Occidental Elk Hills sale/purchase agreement

3. 1998 Letter from California Department of Conservation to Chevron regarding the geologic structure of the 25Z lands

4. 1996 Letter from Chevron to DOE regarding the Asphalto Field.

After DOE argued that the parties had previously agreed not to cite the second document, Chevron withdrew its request to submit that document. 1/ Accordingly, we will consider the remaining three documents.

DOE argues that the standard for determining whether documents may be submitted in the proceeding is set forth in the parties' proposed procedures, and Chevron does not disagree with that argument. The parties' proposed procedures provide as follows:

> OHA may decide to include a document in the record if it is authentic, complete, *relevant* to the appeal, not prohibited from consideration as the result of any agreement of the parties, and if OHA determines that there was good cause for the document not being identified and utilized in the proceedings before the Independent Legal Advisor and/or the Assistant Secretary of Fossil Energy.

Proposed Procedures at 2(b) (emphasis added). DOE argues that the documents are not relevant because they do not relate to whether the Assistant Secretary included the disputed zone in the Unit.

Chevron has not clearly indicated whether it intends to use the disputed documents to support an argument that the Assistant Secretary included the disputed zone in the Unit. If Chevron intends to use the documents to support a Chevron argument on that issue, Chevron may submit the documents. Otherwise, Chevron may not submit them. If DOE believes that it needs to submit any

---

1/ Chevron indicated some disagreement with DOE's characterization of the parties' agreement concerning the document, but stated that it was withdrawing its request in order to avoid controversy.

documents to counter the argument to the extent it is based on the documents, DOE may do so.

In light of the foregoing, Chevron should advise, no later than March 5, 1999, whether it intends to use any of the three disputed documents to support an argument that the Assistant Secretary included the disputed zone in the Unit. Because of the size of the first document, any submission should be limited to the specific portion on which Chevron relies.

Finally, we do not anticipate that the determinations above pose any sizable burden on DOE, and we do not expect any appreciable delay. We would be willing to revisit these issues should the burden or delay imposed by these determinations, in DOE's view, become large.

If you have any questions, please contact Janet N. Freimuth, Deputy Assistant Director, Office of Hearings and Appeals, Department of Energy, at (202) 426-1439.

Sincerely,

George B. Breznay
Director
Office of Hearings and Appeals