No. 04-1365C
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A., INC.

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO CHEVRON'S RESPONSE
TO DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Phone: (202) 307-1011
Fa x: (202) 514-8624

OF COUNSEL:
PAUL MICHAEL, ESQ.
Department of Energy
Office of General Counsel
Washington, D.C

November 16, 2005

# TABLE OF CONTENTS

PAGE

DEFENDANT'S REPLY TO CHEVRON'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION . . . . . . . . . . . . . . . . . . . . . 1

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

1. The Court Lacks Jurisdiction To Entertain Plaintiff's Complaint Because The *Ex Parte* Provisions of the Contract, The Source Of Substantive Law Upon Which Chevron Relies, Is Not Money-Mandating . . . . . 2

2. The Non-Appropriated Funds Doctrine Applies; This Court Lacks Jurisdiction Because Any Possible Judgment Would Not Be Paid Out of Appropriated Funds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

3. The Court Lacks Jurisdiction To Entertain Chevron's Claim for Attorney Fees, Consultants Fees, Costs, And Other Expenses Associated With the EPA Administrative Proceedings Because The United States Has Not Waived Its Sovereign Immunity For Chevron's Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

4. The Department of Energy (DOE) Office of Hearing and Appeals (OHA) Is The Only Forum That Should Decide The Scope Of Its Own Authority To Resolve Disputes Pursuant to the EPA . . . . . . . . . . . . 12

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

CASES PAGE(S)

AT&T v. United States,
307 F.3d 1374 (Fed Cir. 2002) . . . . . 13

B&B Trucking v. United States Postal Service,
406 F.3d 766 (6th Cir. 2005) . . . . . 8

Barron Bancshares, Inc v. United States,
366 F.3d 1360 (Fed. Cir. 2004) . . . . . 4

Chevron v. United States,
20 Fed. Cl. 86 (1990) . . . . . 11

Christian v. United States,
337 F.3d 1338 (Fed. Cir. 2003) . . . . . 7

Core Concepts of Florida, Inc v. United States,
327 F.3d 1331 (Fed. Cir. 2003) . . . . . 10

Denkler v. United States,
782 F.2d 1003 (Fed. Cir. 1986) . . . . . 10

Do Well Machine Shop v. United States,
870 F.2d 637 (Fed. Cir. 1989) . . . . . 3, 13

Folden v. United States,
379 F.3d 1344 (Fed. Cir. 2004) . . . . . 3

Furash & Co. v. United States,
252 F.3d 1336 (Fed. Cir. 2001) . . . . . 9, 10

Gentex Corp. v. United States,
16 Fed. Cl. 49 (2004) . . . . . 11

Giesler v. United States,
232 F.3d 864 (Fed. Cir. 2000) . . . . . 3

Hughes Aircraft Co. v. United States,
534 F.2d 889 (1976) . . . . . 9

Lockheed Martin Corp. v. Defense Contract Audit Agency,
2005 WL 2847253 (D. Md. 2005) . . . . . 8

Mass. Bay Transp. Auth. v. United States,
129 F.3d 1226 (Fed. Cir. 1997) . . . . . . . . . . 7

San Juan City College v. United States,
391 F.3d 1357 (Fed. Cir. 2004) . . . . . . . . . . 2

Southern California Federal Savings & Loan Association v. United States,
422 F.3d 1319 (Fed. Cir. 2005) . . . . . . . . . . 3, 4

Standard Oil Co. of Cal v. United States,
685 F.2d 1337 (1982) . . . . . . . . . . 11

Texas Health Choice v. United States,
400 F.3d 895 (Fed. Cir. 2005) . . . . . . . . . . 8

United States v. General Electric Corp.,
727 F.2d 1567 (Fed. Cir. 1984) . . . . . . . . . . 9, 10

United States v. J& E Salvage Co.,
55 F.3d 985 (4th Cir.1995) . . . . . . . . . . 8

Whittaker Electronic Systems v. Dalton,
124 F.3d 1443 (Fed. Cir. 1997) . . . . . . . . . . 13

Wynn-Dixie Stores, Inc. v. FTC,
377 F.Supp. 773 (M.D. Fla 1974) . . . . . . . . . . 4

STATUTES

31 U.S.C. §1304 . . . . . . . . . . 9

41 U.S.C. §§601 et seq . . . . . . . . . . 8, 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A., INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| | ) | (Judge Braden) |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO CHEVRON'S RESPONSE
TO DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION

Introduction

We established in our supplemental motion to dismiss that this Court lacks jurisdiction to entertain plaintiff's complaint for three primary reasons: the source of the substantive law upon which Chevron relies (the contract, the Equity Process Agreement (EPA)) is not money-mandating; non-appropriated funds are involved; and, the United States has not waived its sovereign immunity for Chevron's claims for attorney fees, costs and expenses. We also established that it is for the Office of Hearing and Appeals (OHA), Department of Energy (DOE), to determine the scope of its own authority and whether it would entertain Chevron's claim of alleged improper *ex parte* contacts; in the 1999 OHA proceedings upon which Chevron relies, OHA interpreted its authority under the EPA to review challenges to final equity determinations more broadly than Chevron acknowledges.

None of the arguments, or unsupported factual assertions, in Chevron's brief in response to our supplemental motion have merit. As we demonstrate, Chevron exaggerates and/or mischaracterizes several of the issues, addresses matters not at issue in this lawsuit, and cites to inapposite cases. Further, Chevron presents arguments on the merits of its claim of alleged improper *ex parte* contacts, as well as arguments on other claims not even raised in this action, particularly, those relating to the Decoupling Agreement. These merits arguments are not appropriate in these briefs involving our motion to dismiss.

In our reply brief, we address those points that we did not address either in our supplemental motion to dismiss and/or the oral argument held in July 2005.

1. The Court Lacks Jurisdiction To Entertain Plaintiff's Complaint Because The *Ex Parte* Provisions of the Contract, The Source Of Substantive Law Upon Which Chevron Relies, Is Not Money-Mandating

We established that the Court lacks jurisdiction because there has been no waiver of sovereign immunity for Chevron to sue under the Equity Process Agreement (EPA), the contract at issue. Tucker Act jurisdiction exists to entertain a claim for breach of a contractual obligation only if the contractual obligation can fairly be interpreted as promising either performance or the payment of damages in the event of a failure to perform. Here, the contractual obligation at issue, the *ex parte* prohibition, cannot be fairly construed as a promise to pay damages in the event of a failure to perform. Rather, the parties agreed that the Office of Hearings and Appeals (OHA) was the sole forum for EPA challenges, and only in accordance with its terms. Paragraph 9 of the EPA, which we quoted, establishes the principle that all disputes relating to the EPA were to be heard by the ASFE (Assistant Secretary for Fossil Energy), with Chevron having the right to appeal certain issues to the OHA. (See Paragraphs 7 and 8, EPA). The specific terms of the EPA overcame any presumption that DOE would owe money damages if the *ex parte* terms of the EPA were violated. Therefore, to the extent that Chevron relies upon the "presumption"

that money damages are the default remedy here for a breach of contract by the United States, Chevron's reliance is misplaced. See Chevron's brief at pages 9, 13, citing San Juan City College v. United States, 391 F.3d 1357, 1361 (Fed. Cir. 2004).

Chevron proffers no law on point, or evidence, to counter the principle that we established. Many of the cases upon which Chevron relies do not address the issue raised here: whether the contract provision about which plaintiff alleges breach must be money-mandating. The cases that Chevron cites are inapposite.

Moreover, the cases cited by Chevron at page 11-12 of its brief, involving comprehensive, exclusive and integrated statutory schemes that provide for administrative and judicial review, support our position here, not Chevron's position. By analogy, the EPA established a comprehensive, exclusive and integrated scheme that provided for administrative review and expressly precluded judicial review. Having signed the EPA, Chevron is bound by the clear terms contained within the EPA. E.g., Giesler v. United States, 232 F.3d 864, 869 (Fed. Cir. 2000); Do Well Machine Shop v. United States, 870 F.2d 637 (Fed. Cir. 1989). Because Chevron's exclusive remedy is an appeal to the OHA, there is no other remedy. See generally e.g. Folden v. United States, 379 F.3d 1344 (Fed. Cir. 2004).

Chevron also has mis-read one of the cases upon which it places primary reliance for its argument that the EPA and the Decoupling Agreement, executed at roughly the same time, constitute one contract, and somehow thus confers upon Chevron the right to file suit in this Court asserting its *ex parte* claim and seeking money. Southern California Federal Savings & Loan Association v. United States, 422 F.3d 1319, 1328-31, 1338 (Fed. Cir. 2005). Footnote 1 in Chevron's brief cites correctly but only to part of the decision in Southern California – "a basic rule of contract interpretation to the effect that where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read

together, even though they do not expressly refer to each other." In citing only to part of the decision, Chevron fails to mention that the Federal Circuit vacated that part of the ruling of the Court of Federal Claims, in which this Court concluded that a series of agreements should be considered components of one overall contract, thus providing standing to certain of the individual plaintiffs in Southern California. In fact, the Federal Circuit stated that the reading by the Court of Federal Claims of one clause in the contract at issue in that case "violates one of the basic precepts of contract interpretation--it does not comport with the **plain meaning** of the clause." (emphasis added). Southern California, 422 F.3d at 1330, citing Barron Bancshares, Inc v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004)(with integration clause, court cannot look to external evidence to add to or modify the terms of a written agreement).[1]

Therefore, Chevron's reliance upon Southern California is misplaced. The EPA and the Decoupling Agreement are separate contracts.[2]

---

[1] Chevron argues (page 4 of its brief), without any evidence or law, that its "concession" in the negotiations that led to the EPA – Chevron's admitted waiver of judicial review -- was possible because of the Government's alleged assurance that the Assistant Secretary for Fossil Energy (ASFE), although a Department of Energy official, would act as much as possible like an "impartial federal judge." As with its earlier pleadings, Chevron cites to no provision, and proffers no factual evidence, in support of this assertion or its interpretation – "to act like a federal judge." Further, Chevron's error is evidenced by a simple reading of the very broad terms of the EPA itself, particularly, Paragraph 9 (EPA process applies to "any dispute"). Indeed, not even OHA--which was the independent forum actually selected by the parties to which Chevron could appeal an adverse ASFE decision--acts as an "impartial federal judge."

[2] Other cases cited by Chevron are inapposite. In Wynn-Dixie Stores, Inc. v. FTC, 377 F.Supp. 773 (M.D. Fla 1974), at issue was a consent decree, which included a "most favored nation" clause. The most favored nation clause, by its terms, provided for reopening of proceedings in certain circumstances.

There is no comparable language in the EPA that would even remotely suggest that the parties contemplated "reopening" — or, any judicial review of disputes relating to the EPA matters.

Even if, therefore, the court were to conclude that it possessed jurisdiction to entertain this action and rule against the Department of Energy on the merits, that ruling would not affect (or void, as Chevron appears to contend) the Decoupling Agreement.[3]

Here, the Court should focus upon the "plain meaning" of the provisions of the EPA, specifically, Paragraph 9 (quoted in full at pages 4-5 of our supplemental motion). Paragraph 9 is clearly applicable to the issue in this case. Id. at 1329 (cases cited). The court may also look to the intentions of the parties, with such intent to be gathered from the language of the individual instrument, the EPA, and not to any separate contract. Id. Paragraph 9 applies because it is written very broadly. It governs the resolution of "any dispute regarding the ASFE equity redetermination decisions. . . " and "any challenge to such decisions to OHA." In Paragraph 9, Chevron

> knowingly and voluntarily waives any and all rights it may have (i) to bring any other judicial or administrative challenge to the final equity determination decisions by the ASFE, or (ii) to bring any other judicial or administrative challenges to any decision by OHA.

---

[3] Chevron appears now to be attempting, through this lawsuit, to void the Decoupling Agreement (which fixed the owners' equity percentages for purposes of the Government's sale to a third party, "decoupling" those fixed equity interests from the finalization of equity between DOE and Chevron, and established the methodology for financial adjustments upon equity finalization) . Chevron's repeated attempts to rely upon that part of the applicable statute that provided that "nothing in this subtitle shall be construed to adversely affect the *ownership* interest of any other entity having any right, title, and interest in and to *lands* with the boundaries of Naval Petroleum Reserve Number 1 and which are subject to the unit plan contract" (emphasis added) are misplaced. The *ownership* interest in the lands are not at issue in this case or in the EPA process (in which Chevron and DOE are determining the appropriate conversion methodology to use to determine the final equity interests for purposes of a financial accounting for the parties' interests over the decades in which the parties operated the oil reserves). The EPA involves something altogether different. Thus, there were good reasons for these two contracts to be separate contracts, because they addressed distinct matters.

Paragraph B.9 also renders the decision of OHA final, binding and non-appealable, another indication that exclusive review is within the administrative procedures established by the EPA, not in this Court. Therefore, Paragraph 9 provides for the exclusive remedy for Chevron's claim.

Chevron persists in its attempts to convince the Court that the EPA and the Decoupling Agreement are a "single contract." Chevron appears to argue that a breach of the EPA is per se a breach of the Decoupling Agreement, causing both the EPA and the Decoupling Agreement to be voided. (Chevron brief, footnote 1, pages 5-6). Chevron is wrong. As noted before, the two contracts are clearly separate – one deals with ownership of land, and one deals with finalization of equity interest. In this case, our motion to dismiss requests that the Court determine whether it possesses jurisdiction, and, to do so, it is to interpret the contract terms, determine the plain meaning of the terms of the EPA, and whether Chevron waived its right to judicial review of any dispute relating to the EPA. Any possible merits issues relating to another contract is not at issue in this motion. Contrary to Chevron's argument that disputes relating to *process*, as compared to *merits issues*, are not governed by Paragraph 9, that paragraph of the EPA does apply here.

Even if Paragraph 9 were not applicable, the remedy for any possible violation of the *ex parte* prohibition might be a requirement that the process before the ASFE proceed without any of the types of *ex parte* contacts prohibited by the EPA. Thus, if there had been a violation of the *ex parte* provisions of the EPA (and we do not concede that there was), the parties could

possibly have restarted the ASFE process.[4] However, the remedy would not be any money "damages" in the form of attorney and consultant fees.

Accordingly, this Court lacks jurisdiction to entertain plaintiff's complaint because the e*x parte* provisions of the contract, the source of substantive law upon which Chevron relies, is not money-mandating.

2. The Non-Appropriated Funds Doctrine Applies; This Court Lacks Jurisdiction Because Any Possible Judgment Would Not Be Paid Out of Appropriated Funds

---

[4] We do not propose that the parties begin again with a new ASFE process. (We note, however, that had Chevron raised this matter in a timely fashion and pursued it with the OHA, and had OHA assumed jurisdiction, one option at that time might have been to reopen the ASFE proceedings.) This is because, as the circumstances unfolded, it is now apparent that Chevron's claim is, in any event, moot – the OHA ruled in Chevron's favor on almost all issues. OHA remanded to the ASFE, and, upon the ASFE's next decision, Chevron may decide whether to appeal any adverse decisions. Thus, Chevron clearly is wrong when it argues that the alleged *ex parte* contacts "irrevocably tainted" the finalization of the parties' respective equity interests in the Elk Hill Reserve . . . " Chevron brief, pages 1, 24.

Rather, the situation created now by Chevron — having participated fully in the ASFE process, exercised its right to appeal to the OHA, and secured a favorable OHA decision – points the way to the correct and only sensible result. The rationale of the *harmless error* rule is instructive here: courts apply the harmless error analysis to a wide range of errors, including constitutional claims, and, even in contract cases, damages for breach of contract should place the wronged party in as good a position as it would have been in had the breaching party fully performed its obligation, but not a *better* position. See Christian v. United States, 337 F.3d 1338, 1342-46 (Fed. Cir. 2003)(rehearing *en banc* denied)(citing cases, statutory provisions, and court rules of procedure); Mass. Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir. 1997)(non-breaching party not entitled to be placed in a *better* position than if other party had fully performed the contract).

Here, the parties did not agree that DOE would pay Chevron attorney fees and consultant costs if DOE breached the *ex parte* provisions of the EPA. Thus, even assuming that Chevron is correct that the "essence of the bargain" for Chevron was the ASFE-OHA procedures, and that Chevron agreed to accept limited OHA review of the ASFE's determination in lieu of full judicial review, does not mean that Chevron is entitled now to judicial review of its allegations of improper *ex parte* contacts and/or that DOE would be liable for attorney fees and costs if such a breach were established.

We established, and Chevron did not dispute the law and/or the facts that we provided, that, if Chevron's purpose is to have this Court review the final equity redetermination decision, the Court possesses no jurisdiction because the Deposit Fund Account specifically set aside for this purpose in the Treasury account are not appropriated funds. See App. 141 (Department of Energy Memorandum, April 21, 1988, relating to funds at issue). Indeed, Chevron admits that the Deposit Fund Account, established by the Decoupling Agreement, is the source of any contractual payments due to Chevron based upon the final equity determinations reached by the ASFE and OHA under the EPA. Chevron Br. p. 20 (citing Decoupling Agreement §3.1).

Moreover, while Chevron appears to agree that the Deposit Fund Account does not provide for payment of a judgment for *equity process expenses* incurred by Chevron in connection with the ASFE-OHA proceedings pursuant to the EPA, at the same time, Chevron attempts to recover these very types of expenses in its suit in this Court. Chevron, however, cannot avoid the express terms of the agreement that it executed, that precluded "any other judicial or administrative challenge," and, that did not provide for the recovery of expenses of the EPA proceedings (the attorney fees and consultant fees it seeks here) by attempting to "disguise" its attorney fees and consultant costs as "contract damages."[5]

---

[5] Chevron's suit appears to be the converse of suits brought by contractors with contracts governed by the Contract Disputes Act (CDA), 41 U.S.C. §§601 et seq., suits that Federal district courts routinely dismiss as "disguised contract actions." It is this Court, not district courts, that possesses exclusive jurisdiction to entertain CDA disputes, no matter how contractors may attempt to disguise the true nature of their claims. E.g., Texas Health Choice v. United States, 400 F.3d 895 (Fed. Cir. 2005); B& B Trucking v. United States Postal Service, 406 F.3d 766 (6th Cir. 2005); United States v. J& E Salvage Co. 55 F.3d 985, 989 (4th Cir.1995); Lockheed Martin Corp. v. Defense Contract Audit Agency, 2005 WL 2847253 (D. Md. 2005). Conversely, exclusive jurisdiction to entertain Chevron's claim of alleged improper *ex parte* contacts — if there is one – may be the OHA, not this Court. No matter what the "disguise," Chevron's allegation of improper *ex parte* contacts is a dispute relating to the EPA, and as such, this Court lacks jurisdiction to entertain it.

Chevron misconstrues our arguments on these points. We noted (at page 5, footnote 3) one, very limited, exception to the NAFI principle -- an exception we clearly conditioned upon two very important and clearly expressed factors – factors that are not met here:

> **<u>If</u>** Chevron's claim is limited to claims for attorney fees and costs, and **<u>if</u>** the United States had waived sovereign immunity for Chevron's claim for attorney fees and costs (a legal point which we dispute, see Part 3, below), the non-appropriated funds doctrine would not be applicable. Therefore, assuming jurisdiction to entertain a claim for attorney fees and costs, a judgment from this Court in Chevron's favor would be paid from the Judgment Fund.

Chevron cannot have it both ways, as it attempts to argue in its response brief. In fact, Chevron does not belong in this Court no matter which of the two theories it is pursuing. If Chevron is seeking only attorney fees and consultant costs (litigation-type expenses), and nothing else, the Court lacks jurisdiction, because the EPA did not provide for these costs and because United States has not waived sovereign immunity for this type of claim. If Chevron is attempting to challenge any decision of the ASFE-OHA on the merits of the equity finalization (and/or to void both the EPA and the Decoupling Agreement), the Court lacks jurisdiction because the Deposit Fund Account in the Treasury account does not involve appropriated funds.

Chevron contends that the NAFI "instrumentality" doctrine does not apply because the Department of Energy, *as a whole,* receives appropriated funds. However, Chevron again cites cases which are inapposite, including <u>United States v. General Electric Corp.</u>, 727 F.2d 1567 (Fed. Cir. 1984). In its brief, Chevron ignores the fundamental principle of the NAFI doctrine. It is true that, in <u>General Electric</u>, the court of appeals followed the general principle that exclusions to the non-appropriated funds doctrine are read narrowly, with the doctrine applicable only if the activity was specifically intended to operate without using appropriated funds. <u>Id</u>. 727 at 1570, citing <u>Hughes Aircraft Co. v. United States</u>, 534 F.2d 889, 907 (1976). The NAFI doctrine is limited to instances when, by law, appropriated funds not only are *not* used to fund the agency, but could not be used to fund the agency. However, at issue in <u>General Electric</u> was

legislation specifically addressed to the authority of the President, and the Department of Defense as an executive branch agency, to use appropriated funds to carry out the statute relating to sales of military equipment to foreign governments, as well as those sales involving the Contract Disputes Act (CDA), 41 U.S.C. §§601 et seq., and the authority of the Armed Services Board of Contract Appeals to award judgments pursuant to 31 U.S.C. §1304. Id at 1580-72.

No comparable legislation is at issue here. Chevron does not dispute that, pursuant to the applicable statutory scheme, proceeds from the sale of the Government's interests in Elk Hills were deposited into a special Treasury account, outside of the general Treasury funds that are used in appropriations bills to fund the activities of DOE other than the specific oil reserve program at issue here.

The NAFI principle was also addressed in Furash & Co. v. United States, 252 F.3d 1336, 1339-40 (Fed. Cir. 2001), another case that Chevron misinterprets. The Federal Circuit in Furash concluded that the legislative history of the 1970 statute at issue made clear that Congress intended to leave the NAFI doctrine intact for all other non-appropriated fund instrumentalities unrelated to post exchanges and exchange councils. The absence of an express prohibition on congressional appropriation is not determinative. Id. Rather, what matters is whether the agency's authorizing legislation makes clear that Congress intended the agency's activity, or the particular activity within the agency that gave rise to the dispute in question, not to be funded from general federal revenues. Id. at 1339-40. Accord Denkler v. United States, 782 F.2d 1003 (Fed. Cir. 1986)(agency held to be non-appropriated funds instrumentality even though its separation from appropriated funds was not made explicit; designation of source of funds outside appropriations was sufficient; character of funds was as separate, non-appropriated funds, even though funds were deposited in Treasury); see generally Core Concepts of Florida, Inc v. United

States, 327 F.3d 1331, 1336-37 (Fed. Cir. 2003)(one determining factor with respect to NAFI is whether designation of particular fund is to be kept distinct from general Federal revenues).

Therefore, the decision in General Electric, and the other cases upon which Chevron relies, are clearly distinguishable on the law and the facts. The case law from the Federal Circuit supports our position, not Chevron's position.

Accordingly, the non-appropriated funds doctrine applies. This Court lacks jurisdiction to entertain Chevron's claim. Any possible judgment would not be paid out of funds appropriated to DOE, but rather, would be paid out of the Deposit Fund Account established by the Decoupling Agreement when the oil reserves were sold.

3. The Court Lacks Jurisdiction To Entertain Chevron's Claim for Attorney Fees, Consultants Fees, Costs, And Other Expenses Associated With the EPA Administrative Proceedings Because The United States Has Not Waived Its Sovereign Immunity For Chevron's Claim

We established that Chevron clearly seeks attorney fees, consultants fees, costs, and other expenses associated with Chevron's participation in the administrative proceedings before the ASFE. Complaint, ¶¶ 58, 65, and 71. The United States has not waived its sovereign immunity for these types of claims. Therefore, this Court lacks jurisdiction to entertain Chevron's claims, what Chevron attempts to characterize as contract "damages."

Chevron argues that an earlier case involving the 1944 unit plan contract, Chevron v. United States, 20 Fed. Cl. 86 (1990), supports its jurisdictional argument because, according to Chevron, the attorney fees at issue here are similar in nature to the contract "damages" for breach at issue in Chevron. Chevron is wrong. In Chevron, the Court clearly viewed the attorney fees at issue there as "operating expenses," which the United States was required to share with co-owners of the oil reserves; the operating expenses included a judgment for attorney fees awarded under state law in favor of employees for injuries sustained by the unit operator's employees. Id. Further, the Government in Chevron had not contested that, as a prior course of

performance, repeated many times, such types of expenses had been allocated among the various zones based upon the percentage of total Reserve *operating costs* allocated to each zone during the prior fiscal quarter. Id at 87-88, citing Standard Oil Co. of Cal v. United States, 685 F.2d 1337, 1345 (1982).

In contrast, there are no comparable circumstances in this case, in which Chevron seeks to recover attorney fees and other related costs based upon litigating before the ASFE pursuant to the EPA process. Operating expenses are not at issue here.

Chevron's reliance upon Gentex Corp. v. United States, 16 Fed. Cl. 49, 54 (2004), is also misplaced. Gentex involved bid preparation costs which, by statute, may include attorney fees and consultant costs. Nothing in the applicable statute here or the EPA provides any authority for Chevron to recover attorney fees and other types of litigation costs in the EPA type of proceeding.

Accordingly, the Court lacks jurisdiction to entertain Chevron's claim for attorney fees, consultants fees and other expenses associated with the EPA administrative proceedings because the United States has not waived its sovereign immunity for Chevron's claim.

4. The Department of Energy (DOE) Office of Hearing and Appeals (OHA) Is The Only Forum That Should Decide The Scope Of Its Own Authority To Resolve Disputes Pursuant to the EPA

We established that the OHA is the only appropriate forum that should decide the scope of its own authority to resolve disputes pursuant to the EPA. We also demonstrated that Chevron purposefully chose not to raise the *ex parte* issue in its brief on appeal of the ASFE decision to OHA.

The undisputed chronology establishes that Chevron raised the *ex parte* issue in January 2004 to the ASFE, and requested at that time that Chevron be permitted to seek judicial review of the ASFE decision (if necessary, if there were an decision adverse to Chevron). App. 40-47.

In early April 2004, DOE responded to Chevron's arguments on the *ex parte* issue, App. 48-52; also at that same time, Chevron filed its brief to OHA, informing OHA that the "*ex parte* involvement in the drafting of the PDASFE's decision is being addressed through those channels with authority over the matter, and is not at issue here . . . " App. 59. Chevron clearly had the opportunity at that time to raise the issue with OHA, but chose not to do so, and in fact, led the OHA to believe that other "channels" – undefined – would address the matter.

As we explained in our supplemental motion, Chevron waived its right to request OHA to address the *ex parte* issue. Having waived its right to request that OHA address this issue, Chevron should not be permitted to raise the *ex parte* issue in this Court.[6] Permitting Chevron to do so in this Court would reward Chevron for its forum-shopping.[7]

Finally, we established that Chevron's reliance upon an OHA letter in 1999, in a case involving an issue wholly unrelated to the *ex parte* issue here, is misplaced. Nothing in that earlier proceeding or in that correspondence establishes that OHA would have concluded that it

---

[6] The circumstances here are analogous to cases in which a contractor fully performs a contract, and then attempts to claim that the contract was void, or a nullity. The United States Court of Appeals for the Federal Circuit has rejected claims of this nature. Chevron cannot now -- after having signed the EPA waiving any right to judicial review, and participated in the process through the ASFE decision to an appeal to OHA -- challenge the terms of Paragraph 9 of the EPA and claim that the EPA provisions precluding judicial review are a nullity. See e.g. Do Well Machine Shop v. United States, 870 F.2d 737 (Fed. Cir. 1989)(parties bound to contract provision signed); AT&T v. United States, 307 F.3d 1374 (Fed Cir. 2002) (contractor may not challenge fully-performed contract); Whittaker Electronic Systems v. Dalton, 124 F.3d 1443 (Fed. Cir. 1997)(same).

[7] As we explained in our supplemental motion, even if OHA were to determine that it lacked authority to review Chevron's claims of alleged improper *ex parte* contacts, that OHA lack of authority does not mean that the EPA provides for judicial review of Chevron's claim in this Court.

lacked authority to decide the *ex parte* issue raised here. Again, if there was any doubt, it was for OHA, not this Court, to decide the scope of OHA's authority.[8]

Accordingly, nothing in Chevron's brief supports its position that OHA has already decided that it would not entertain the claim that Chevron attempts to pursue in this Court.[9] To the extent, if any, that it is now too late for Chevron to raise this *ex parte* issue to OHA, that is a problem of Chevron's making — having had the opportunity to raise the issue to OHA and expressly declining to raise the matter then with OHA.

CONCLUSION

For the foregoing reasons, and those set forth in our earlier briefs and at oral argument, defendant respectfully requests that this Court, pursuant to Rule 12(b)(1), dismiss the complaint for lack of jurisdiction, and alternatively, dismiss the complaint pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

[8] These circumstances are analogous to a situation in which a plaintiff files suit either in a Federal district court, or this Court. Each forum is required to determine, for itself, the scope of its own authority, but, it is not empowered to determine the scope of authority of a forum other than its own.

[9] We dispute some of the items in Chevron's "schematic" (at page 7 of its brief). Chevron characterizes the EPA with the terms "waives right to judicial enforcement only for limited claims not involved here." That characterization is incorrect, and, in any event, begs the question, as that is the issue for this Court to decide.

/s/ David M. Cohen
DAVID M. COHEN
Director

s/s Jane W. Vanneman
JANE W. VANNEMAN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Phone: (202) 307-1011
Fa x: (202) 514-8624

OF COUNSEL:
PAUL MICHAEL, ESQ.
Department of Energy
ffice of General Counsel
Washington, D.C

November 16, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of November, 2005, a copy of the foregoing "DEFENDANT'S REPLY TO CHEVRON'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL RULE 12(b)(1) MOTION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.