IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR A PROTECTIVE ORDER

Pursuant to RCFC 26(c)(1),[1] defendant, the United States, respectfully requests that the Court issue an order that the deposition of Mary Egger, Deputy General Counsel for Technology Transfer and Procurement, Office of General Counsel, Department of Energy (DOE), noticed by plaintiff, Chevron U.S.A. Inc. (Chevron), for Wednesday, July 12, 2006, not be had on that date or upon an expedited basis and that any deposition of Ms. Egger be (1) postponed until after the Court has resolved the Government's evidentiary privilege claims with respect to documents withheld by the Government from production relating to the DOE legislative proposal concerning the Independent Petroleum Engineer (IPE) for the Elk Hills Field final equity redetermination (including the deliberative process privilege claim addressed during the telephone conference that was held on July 5, 2006, between the Court, counsel for the parties, and the Director,

---

[1] Rule 26(c)(1) provides that, "[u]pon motion by a party . . . accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court may make any order which justice requires to protect the party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following: (1) that the disclosure or discovery not be had; (2) that the disclosure or discovery may be had only on specified terms and conditions, including a designation of the time or place; . . . (4) that . . . the scope of the disclosure or discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition, after being sealed, be opened only be order of the court . . . ."

Commercial Litigation Branch, Civil Division, Department of Justice) and (2) rescheduled for a time and date convenient to the deponent and the parties in accordance with the discovery schedule for the above-captioned action to be established by the Court.[2] Alternatively, if the Court were to deny our request for such relief and grant Chevron's request for an expedited deposition of Ms. Egger, we respectfully request that: (1) the deposition be set for a time and date convenient for Ms. Egger as well as counsel for the parties; (2) the scope of the deposition be limited to the DOE IPE legislative proposal and any *ex parte* contacts between DOE and the IPE relative to that legislative proposal; and (3) the deposition, at the very least, be subject to a protective order entered by the Court that contains the same terms and conditions as are set forth in the Court's July 5, 2006 Protective Order Regarding Deposition of Mary Ann Masterson. On July 10, 2006, defendant's counsel attempted to contact plaintiff's counsel about this discovery request, as required by RCFC 26(c), but plaintiff's counsel was not available. Therefore, because of the shortness of the notice provided, we are filing this application out of an abundance of caution.

## BACKGROUND

### A. Nature Of The Case

The case involves the alleged breach by the Government of an agreement between Chevron and DOE, referred to by the parties as the Equity Process Agreement, which established a process for redetermining the equity interests of Chevron and DOE in an oil-and-gas unit near Bakersfield, California, known as the Elk Hills Field. There are four distinct zones in the Elk Hills Field: the Dry Gas Zone, the Carneros Zone, the Shallow Oil Zone, and the Stevens Zone.

---

[2] A pretrial and trial schedule for this case is the subject of the telephone conference between the Court and counsel for the parties presently scheduled for 3:30 p.m. on July 13, 2006.

A separate redetermination of the parties' equity interests was to be made for each zone. The redetermination of the equity interests for each zone was to be made by DOE's Assistant Secretary for Fossil Energy (ASFE). The ASFE's decision in each instance was to take into consideration the recommendation of the IPE selected by Chevron and DOE (Netherland, Sewell & Associates, Inc. (NSAI)). See Chevron U.S.A., Inc. v. United States, ____ Fed. Cl. ____, 2006 WL 1493822 (Fed. Cl.) (opinion denying Government's motion to dismiss).[3/]

B. Legislative Proposal Concerning Immunity For Independent Petroleum Engineer

On May 9, 2006, the Secretary of Energy sent the Congress a legislative proposal concerning the IPE. Def. App. 1-6. The Secretary stated that this proposal would "immunize the [IPE] from any claim regarding the formulation or presentation of its recommendation upon a determination by DOE that further protections are required" and that this "extension of immunity is necessary to protect the IPE from claims arising from the unique, quasi-judicial function in the equity finalization process." Defendant's Appendix ("Def. App.") 2, 5.[4/]

---

[3] The complaint filed by Chevron in this case in August 2004 contains claims for breach of the Equity Process Agreement between Chevron and DOE. For its first cause of action, Chevron alleges that Ms. Egger and unidentified "others acting with or under her direction" engaged in *ex parte* communications prohibited by the Equity Process Agreement by "serving both as attorney for the DOE equity team and as an advisor to the Assistant Secretary decision maker." Compl. ¶ 60. Chevron also alleges that, "on information and belief," the ASFE also engaged in *ex parte* communications prohibited by the Equity Process Agreement" with the Independent Petroleum Engineer (IPE) and with unidentified "engineers on DOE'S equity team." Compl. ¶¶ 61, 62. For its second cause of action, Chevron alleges that "DOE has acted in bad faith in performance of the Equity Process Agreement" in breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 67-69.

[4] The DOE IPE proposal provided, in pertinent part: "In light of the unique role that the independent petroleum engineer . . . performs in the process of finalizing equity interests, if the Secretary, in his unreviewable discretion, determines that the independent petroleum engineer requires additional protections in order to perform that role, the independent petroleum engineer, upon award or extension of its contract, shall be immune from any claim regarding any act or

This legislative proposal underwent significant change in the Senate. The version of this proposal recently adopted by the Senate, which (as yet) has not been enacted into law, provides that the IPE's provisional equity recommendation with respect to the Shallow Oil Zone presented to the DOE and Chevron equity teams in October 2002 "shall become the final recommendation of the [IPE]" unless DOE and Chevron agree within 60 days of the enactment of this legislation that the IPE "shall not be liable to either party for any cost or expense incurred or for any loss or damage sustained

> (i) as a result of the manner in which services are performed by the [IPE] in accordance with its contract with [DOE] to support the equity determination process;
>
> (ii) as a result of the failure of the [IPE] in good faith to perform any service or make any determination or computation, unless caused by its gross negligence;
>
> (iii) as a result of the reliance by either party on any computation, determination, estimate or evaluation made by the [IPE] unless caused by the [sic] its gross negligence or willful misconduct.

Def. App. 7 (Senate Amendment 4516 to Senate Bill 2766).

C. Chevron's Expedited Discovery

On June 13, 2006, Chevron requested, and the Court approved, a deposition of DOE upon an expedited basis with respect to the contractual relationship between DOE and NSAI, any *ex parte* contacts between DOE and NSAI regarding the equity redetermination process that did not also include Chevron, and actions and related communications by NSAI or "by any other party to obtain any immunity, indemnity or limitation from or to liability or suit for NSAI concerning

---

omission in connection with the formulation or presentation of its recommendation under the previous, current, or any future contract." Def. App. 3, 6.

equity redetermination or finalization with respect to Elk Hills." See Chevron's "Notice of Rule 30(b)(6) Deposition of Department of Energy" dated June 13, 2006, at 7-8, Def. App. 14-15. A major focus of this expedited discovery is the DOE IPE legislative proposal described above.

Pursuant to that discovery request, Chevron has taken the depositions of three DOE officials designated by the Government to testify upon behalf of DOE with respect to the areas of examination listed in the Rule 30(b)(6) deposition notice. Chevron took the deposition of Mr. Gary Latham on June 16, 2006, and the depositions of Ms. Mary Ann Masterson and Ms. Beth Kelly on July 6, 2006.

Ms. Masterson is an Assistant General Counsel in DOE's Office of General Counsel. The Government designated Ms. Masterson to testify upon DOE's behalf with respect to the DOE IPE legislative proposal and *ex parte* contacts between DOE and the IPE relative to that legislative proposal. The deposition of Ms. Masterson was taken subject to a protective order issued by the Court. See July 5, 2006 Protective Order Regarding Deposition of Mary Ann Masterson. Pursuant to that Protective Order, the transcript of Ms. Masterson's deposition has been placed under seal "unless and until the court orders otherwise." Id., ¶ 5. In addition, the Protective Order prohibits Chevron from "hav[ing] any use information obtained during the deposition of Ms. Masterson, or communicat[ing] with members of Congress and/or their staff or with any other attorney, other than counsel of record in this case, or lobbyist about the deposition of Ms. Masterson and/or pending Senate Bill 2766, Senate Amendment 4516, and/or House Bill 5122, unless and until the court orders otherwise." Id., ¶¶ 2, 3.

D. Chevron's Notice Of Deposition Of Mary Egger

On July 6, 2006, following Chevron's depositions of Ms. Egger and Ms. Kelly, plaintiff's counsel advised defendant's counsel that Chevron desired to take a deposition of Ms. Egger upon an expedited basis. In response to defendant's counsel's inquiry as to the scope of the deposition of Ms. Egger, plaintiff's counsel responded that he desired to depose Ms. Egger about the DOE IPE legislative proposal described above. Plaintiff's counsel did not identify any other topic or reason for an expedited deposition of Ms. Egger. The next day, Friday, July 7, 2006, plaintiff's counsel sent defendant's counsel a notice of deposition of Ms. Egger pursuant to RCFC 30, for Wednesday, July 12, 2006, which defendant's counsel received on July 10, 2006. See Def. App. 16-23.

ARGUMENT

A. Depositions Pursuant To RCFC 30 Upon An Expedited Basis

RCFC 30(a)(1) provides that "[a] party may take the testimony of any person, including a party, by deposition upon oral examination without leave of court except as provided in paragraph (2)." RCFC 30(a)(2)(C) provides that "[a] party must obtain leave of court, which shall be granted to the extent consistent with the principles stated in RCFC 26(b)(2)[[5/]] . . . if, without the written stipulation of the parties, . . . a party seeks to take a deposition before the time specified in RCFC 26(d) unless the notice contains a certification, with supporting facts, that the person to be examined is expected to leave the United States and be unavailable for examination in this country unless deposed before that time."

[5] Rule 26(b)(2) provides that, "[b]y order, the court may alter the limits in these rules on the number of depositions and interrogatories or the length of depositions under RCFC 30."

RCFC 26(d), which concerns the timing and sequence of discovery, provides that, "[e]xcept in categories of proceedings exempted from initial disclosure under RCFC 26(a)(1)(E),[6/] or when authorized under these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Appendix A ¶ 3." In turn, paragraph 3 of Appendix A to the Court's rules provides that, subsequent to the filing of defendant's answer to the complaint and within sufficient time to permit the parties to file the joint preliminary status report required by Appendix A, ¶ 4, "plaintiff's counsel shall communicate with defense counsel, and counsel shall confer," among other things, "[t]o discuss each party's discovery needs and discovery schedule . . . ."[7/]

RCFC 26 does not provide a standard for the Court to use in determining whether expedited discovery is appropriate. See, e.g., In re Fannie Mae Derivative Litigation, 227 F.R.D. 142 (D.D.C. 2005) (construing Fed.R.Civ.P. 26).[8/] "To determine whether expedited discovery is appropriate, courts have developed two commonly recognized approaches: (1) the Notaro test and (2) the reasonableness, or good cause, test." Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority, 234 F.R.D. 4, 6 (D.D.C. 2006). In Notaro v.

---

[6] Rule 26(a)(1)(E) exempts from initial disclosure under RCFC 26(a)(1) an action for review upon an administrative record, an action brought without counsel by a prisoner, an action to enforce an arbitration award, and an action under the National Vaccine Injury Compensation Act.

[7] The early meeting between counsel required by Appendix A, ¶ 3, has not yet occurred in this case. The Court has scheduled a telephone conference on July 13, 2006, to discuss, among other things, a discovery schedule for this litigation.

[8] In applying the Rules of the Court of Federal Claims, the Court "examines the general federal law interpreting the corresponding Federal Rule of Civil Procedure as persuasive." Wheeler v. United States, 11 F.3d 156, 157n.1 (Fed. Cir. 1993); accord Exxon Research and Engineering Co. v. United States, 44 Fed. Cl. 597, 599 (1999).

Koch, 95 F.R.D. 403 (S.D.N.Y. 1982), the court articulated the following standard for expedited discovery: "courts should require the plaintiff to demonstrate (1) irreparable injury, (2) some probability of success on the merits, (3) some connection between the expedited discovery and the avoidance of irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." Id. at 405.

Under the reasonableness, or good cause, test, "courts consider the reasonableness of the request in light of the entire record to date and all of the surrounding circumstances." Disability Rights Council, 234 F.R.D. at 6. Factors commonly considered in determining the reasonableness of expedited discovery include, but are not limited to: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requiring expedited discovery; (4) the burden on the party from which discovery is sought to comply with the discovery request; and (5) how far in advance of the typical discovery process the discovery request was made. Id..

B. An Expedited Deposition Of Ms. Egger Should Not Be Allowed.

Chevron seeks to take the deposition of Ms. Egger without leave of court before the time contemplated by Rule 26(d) or 30(a)(2)(C). Chevron cannot demonstrate good cause for taking the deposition of Ms. Egger upon an expedited basis.

So far as the Government has been advised, the purpose of the expedited deposition of Ms. Egger is to have her testify about the DOE IPE legislative proposal sent to the Congress on May 9, 2006, including the origination and development of that proposal. But Chevron has not alleged that the discovery sought will be unavailable in the future or is somehow subject to pend-

ing destruction if it is not taken now. Chevron does not suggest that Ms. Egger is about to leave the United States for an extended period of time and will be unavailable for examination in this country unless deposed before July 13, 2006, or that Ms. Egger is gravely ill and it is necessary to take a deposition now in order that her testimony may be preserved.

Nor can Chevron demonstrate that it will be irreparably harmed in some other way if the deposition of Ms. Egger is deferred. Chevron has already taken a deposition of Ms. Mary Ann Masterson, the DOE designated deponent, pursuant to RCFC 30(b)(6) concerning the DOE IPE legislative proposal. The deposition of Ms. Masterson has been placed under seal pursuant to a protective order entered by the Court that prevents Chevron from using the information obtained during the deposition for any purpose, including lobbying the Congress, instituting an action in another court, or amending its complaint in the present suit "unless and until the court orders otherwise." See Masterson Protective Order, ¶¶ 2-5. Presumably, the Court would impose the same terms and conditions for a deposition of Ms. Egger upon the same subject matter as the Court did in the case of the deposition of Ms. Masterson, if the Court were inclined to permit the deposition to be taken upon an expedited basis. If Chevron could not use the information obtained in an expedited deposition of Ms. Egger because of the restrictions that would be imposed by a protective order, it cannot demonstrate that it would be irreparably harmed by not being able to take the deposition of Ms. Egger.

Moreover, any deposition of Ms. Egger with respect to the DOE IPE legislative proposal should be deferred until *after* the Court has resolved the Government's privilege claims with respect to the DOE IPE legislative proposal, including any formal claim of the deliberative process privilege discussed during the telephone conference that was held on July 6, 2006, between the

Court, counsel for the parties, and the Director, Commercial Litigation Branch, Civil Division, Department of Justice. Once the Court resolves those claims, the parties will have guidance from the Court which then can be observed in any additional discovery proceedings, including a deposition of Ms. Egger. Otherwise, Ms. Egger – a high-ranking DOE attorney – potentially will be subjected to the annoyance of multiple depositions upon the DOE IPE legislative proposal, not to mention an additional deposition later in the case relative to the claims that are the subject of Chevron's complaint. Such inefficient discovery methods are to be eschewed whenever possible.

## CONCLUSION

For the foregoing reasons, defendant's motion for a protective order should be granted and the Court should issue an order that the deposition of Ms. Egger noticed by plaintiff for July 12, 2006, not be had on that date or upon an expedited basis and that any deposition of Ms. Egger be (1) postponed until after the Court has resolved the Government's evidentiary privilege claims with respect to documents withheld by the Government from production relating to the DOE IPE legislative proposal (including the deliberative process privilege claim addressed during the telephone conference that was held on July 5, 2006, between the Court, counsel for the parties, and the Director, Commercial Litigation Branch, Civil Division, Department of Justice) and (2) rescheduled for a time and date convenient to the deponent and the parties in accordance with the discovery schedule for the above-captioned action to be established by the Court. Alternatively, if the Court were to deny our request for such relief and grant Chevron's request for an expedited deposition of Ms. Egger, we respectfully request that: (1) the deposition be set for a time and date convenient for Ms. Egger as well as counsel for the parties; (2) the scope of the deposition be limited to the DOE IPE legislative proposal and any *ex parte* contacts between DOE and the IPE

relative to that legislative proposal; and (3) the deposition, at the very least, be subject to a protective order entered by the Court that contains the same terms and conditions as are set forth in the Court's July 5, 2006 Protective Order Regarding Deposition of Mary Ann Masterson.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
Trial Attorney
Office of General Counsel
Department of Energy
Washington, D.C.

JULY 10, 2006