# DEFENDANT'S APPENDIX

# INDEX TO DEFENDANT'S APPENDIX


| Document | Page |
|---|---|
| Letter dated May 9, 2006, from Samuel W. Bodman, Secretary of Energy, to Honorable Richard B. Cheney, President of the Senate, submitting legislative proposal | 1 |
| Letter dated May 9, 2006, from Samuel W. Bodman, Secretary of Energy, to Honorable Richard B. Cheney, President of the Senate, submitting legislative proposal | 4 |
| Portion of Congressional Record (Senate) (6/22/06) | 7 |
| Plaintiff's "Notice of Rule 30(b)(6) Deposition of Department of Energy" dated June 13, 2006 | 8 |
| Plaintiff's "Notice of Deposition of Mary Egger" dated July 7, 2006 | 17 |

2006-003667

**The Secretary of Energy**
**Washington, D.C. 20585**

May 9, 2006

The Honorable Richard B. Cheney
President of the Senate
Washington, D.C. 20510

Dear Mr. President:

The purpose of this letter is to submit legislation to provide protection against claims to the independent petroleum engineer retained to assist in the finalization of equity interests in the Naval Petroleum Reserve Elk Hills Unit.

The National Defense Authorization Act for Fiscal Year 1996 (NDAA) required the Department of Energy (DOE) to sell the United States' interest in the Naval Petroleum Reserve Numbered 1, commonly referred to as the Elk Hills Unit, located in Kern County California. Section 3412(b) of the NDAA requires DOE to finalize the equity interests of the Government and the other owner in the known oil and gas zones in the Elk Hills Unit using the services of an independent petroleum engineer (IPE). DOE has been engaged in the finalization of equity since 1996 under a process agreed to by the unit owners.

The IPE has nearly completed its equity finalization task for the productive zones at Elk Hills but the IPE's contract with DOE currently expires on September 30, 2006. The IPE is prepared to agree to a bilateral extension of the contract, but, in light of the fact that a unit owner has filed suit against the United States over the equity finalization process, the IPE does not wish to accept any legal risk of a lawsuit. Protection against any such legal risk is customary in the industry for retained IPEs, and usually is done through mutual contractual covenants by the respective property owners.

Although the contract approach was used in 1996, with the more recent advent of a litigation strategy by the corporate successor of the original unit co-owner, that corporate successor has not provided a new acknowledgement of its commitment to forbear from asserting liability against the IPE. Thus, the IPE remains exposed to a lawsuit, including the burden of defending against it.

DOE believes that it is imperative to complete the equity finalization process that is necessary for the Government to receive full value from the sale of Elk Hills, and that the most appropriate and efficient way of achieving that goal is to permit

Printed with soy ink on recycled paper

the current IPE contractor to finish the task. Under the process established by the Department, the IPE performs a unique role in that its equity recommendations are to be adopted by the Department unless certain conditions are found to exist. The IPE must be able to act independently, without "fear or favor" in the impartial discharge of its duties. Accordingly, the proposed legislation would amend section 3412(g) of the NDAA to immunize the IPE from any claim regarding to the formulation or presentation of its recommendation upon a determination by DOE that further protections are required. The extension of immunity is necessary to protect the IPE from claims arising from its unique, quasi-judicial function in the equity finalization process.

The Office of Management and Budget advises that there is no objection to the presentation of this legislative proposal to Congress from the standpoint of the President's program.

Enclosed with this letter is legislative language for the proposal. I urge Congress's favorable consideration of it. If you or your staff have any questions regarding the proposal, please call me or Jill Sigal, Assistant Secretary for Congressional and Intergovernmental Affairs, at 202-586-5450.

Sincerely,

Samuel W. Bodman

Samuel W. Bodman

Enclosure

Section 3412(g)of the National Defense Authorization Act for Fiscal Year 1996 (10 U.S.C. 7420 note) is amended by:

(a) inserting "(1)" after "(g)"; and

(b) adding the following new subparagraph after "the United States." :

"(2) In light of the unique role that the independent petroleum engineer who is retained pursuant to subparagraph (b)(2) of this section performs in the process of finalizing equity interests, if the Secretary, in his unreviewable discretion, determines that the independent petroleum engineer requires additional protections in order to perform that role, the independent petroleum engineer, upon award or extension of its contract, shall be immune from any claim regarding any act or omission in connection with the formulation or presentation of its recommendation under the previous, current, or any future contract. Nothing in this subparagraph shall affect any rights of the Secretary under the Contract Disputes Act. "

# The Secretary of Energy
Washington, D.C. 20585

May 9, 2006

The Honorable J. Dennis Hastert
Speaker of the House
Washington, D.C. 20515

Dear Mr. Speaker:

The purpose of this letter is to submit legislation to provide protection against claims to the independent petroleum engineer retained to assist in the finalization of equity interests in the Naval Petroleum Reserve Elk Hills Unit.

The National Defense Authorization Act for Fiscal Year 1996 (NDAA) required the Department of Energy (DOE) to sell the United States' interest in the Naval Petroleum Reserve Numbered 1, commonly referred to as the Elk Hills Unit, located in Kern County California. Section 3412(b) of the NDAA requires DOE to finalize the equity interests of the Government and the other owner in the known oil and gas zones in the Elk Hills Unit using the services of an independent petroleum engineer (IPE). DOE has been engaged in the finalization of equity since 1996 under a process agreed to by the unit owners.

The IPE has nearly completed its equity finalization task for the productive zones at Elk Hills but the IPE's contract with DOE currently expires on September 30, 2006. The IPE is prepared to agree to a bilateral extension of the contract, but, in light of the fact that a unit owner has filed suit against the United States over the equity finalization process, the IPE does not wish to accept any legal risk of a lawsuit. Protection against any such legal risk is customary in the industry for retained IPEs, and usually is done through mutual contractual covenants by the respective property owners.

Although the contract approach was used in 1996, with the more recent advent of a litigation strategy by the corporate successor of the original unit co-owner, that corporate successor has not provided a new acknowledgement of its commitment to forbear from asserting liability against the IPE. Thus, the IPE remains exposed to a lawsuit, including the burden of defending against it.

DOE believes that it is imperative to complete the equity finalization process that is necessary for the Government to receive full value from the sale of Elk Hills, and that the most appropriate and efficient way of achieving that goal is to permit

Printed with soy ink on recycled paper

the current IPE contractor to finish the task. Under the process established by the Department, the IPE performs a unique role in that its equity recommendations are to be adopted by the Department unless certain conditions are found to exist. The IPE must be able to act independently, without "fear or favor" in the impartial discharge of its duties. Accordingly, the proposed legislation would amend section 3412(g) of the NDAA to immunize the IPE from any claim regarding to the formulation or presentation of its recommendation upon a determination by DOE that further protections are required. The extension of immunity is necessary to protect the IPE from claims arising from its unique, quasi-judicial function in the equity finalization process.

The Office of Management and Budget advises that there is no objection to the presentation of this legislative proposal to Congress from the standpoint of the President's program.

Enclosed with this letter is legislative language for the proposal. I urge Congress's favorable consideration of it. If you or your staff have any questions regarding the proposal, please call me or Jill Sigal, Assistant Secretary for Congressional and Intergovernmental Affairs, at 202-586-5450.

Sincerely,

Samuel W. Bodman

Enclosure

Section 3412(g)of the National Defense Authorization Act for Fiscal Year 1996 (10 U.S.C. 7420 note) is amended by:

(a) inserting "(1)" after "(g)"; and

(b) adding the following new subparagraph after "the United States." :

"(2) In light of the unique role that the independent petroleum engineer who is retained pursuant to subparagraph (b)(2) of this section performs in the process of finalizing equity interests, if the Secretary, in his unreviewable discretion, determines that the independent petroleum engineer requires additional protections in order to perform that role, the independent petroleum engineer, upon award or extension of its contract, shall be immune from any claim regarding any act or omission in connection with the formulation or presentation of its recommendation under the previous, current, or any future contract. Nothing in this subparagraph shall affect any rights of the Secretary under the Contract Disputes Act."

(1) IN GENERAL.—Chapter 71 of title 10, United States Code, is amended by inserting after section 1407 the following new section:

**"§ 1407a. Retired pay base: members who were general or flag officers**

"Notwithstanding any other provision of law, if the determination of the retired pay base or retainer pay base under section 1406 or 1407 of this title with respect to a person who was a commissioned officer in pay grades O–7 through O–10 involves a rate or rates of basic pay that were subject to a reduction under section 203(a)(2) of title 37, such determination shall be made utilizing such rate or rates of basic pay in effect as provided by law rather than such rate or rates as so reduced under section 203(a)(2) of title 37.".

(2) CLERICAL AMENDMENT.—The table of sections for chapter 71 of such title is amended by inserting after the item relating to section 1407 the following new item:

"1407a. Retired pay base: members who were general or flag officers.".

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall take effect on October 1, 2006, and shall apply with respect to the computation of retired pay for members of the Armed Forces who retire on or after that date.

---

**SA 4514.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of subtitle D of title VI, add the following:

**SEC. 648. INAPPLICABILITY OF RETIRED PAY MULTIPLIER MAXIMUM PERCENTAGE TO SERVICE OF MEMBERS OF THE ARMED FORCES IN EXCESS OF 30 YEARS.**

(a) IN GENERAL.—Paragraph (3) of section 1409(b) of title 10, United States Code, is amended to read as follows:

"(3) 30 YEARS OF SERVICE.—

"(A) RETIREMENT BEFORE JANUARY 1, 2007.—In the case of a member who retires before January 1, 2007, with more than 30 years of creditable service, the percentage to be used under subsection (a) is 75 percent.

"(B) RETIREMENT AFTER DECEMBER 31, 2006.—In the case of a member who retires after December 31, 2006, with more than 30 years of creditable service, the percentage to be used under subsection (a) is the sum of—

"(i) 75 percent; and

"(ii) the product (stated as a percentage) of—

"(I) 2½; and

"(II) the member's years of creditable service (as defined in subsection (c)) in excess of 30 years of creditable service in any service, regardless of when served, under conditions authorized for purposes of this subparagraph during a period designated by the Secretary of Defense for purposes of this subparagraph.".

(b) RETIRED PAY FOR NON-REGULAR SERVICE.—Section 12739(c) of such title is amended—

(1) by striking "The total amount" and inserting "(1) Except as provided in paragraph (2), the total amount"; and

(2) by adding at the end the following new paragraph:

"(2) In the case of a person who retires after December 31, 2006, with more than 30 years of service credited to that person under section 12733 of this title, the total amount of the monthly retired pay computed under subsections (a) and (b) may not exceed the sum of—

"(A) 75 percent of the retired pay base upon which the computation is based; and

"(B) the product of—

"(i) the retired pay base upon which the computation is based; and

"(ii) 2½ percent of the years of service credited to that person under section 12733 of this title for service, regardless of when served, under conditions authorized for purposes of this paragraph during a period designated by the Secretary of Defense for purposes of this paragraph.".

---

**SA 4515.** Mr. WARNER (for Mr. DEWINE) proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of subtitle D of title VI, add the following:

**SEC. 648. MODIFICATION OF ELIGIBILITY FOR COMMENCEMENT OF AUTHORITY FOR OPTIONAL ANNUITIES FOR DEPENDENTS UNDER THE SURVIVOR BENEFIT PLAN.**

(a) IN GENERAL.—Section 1448(d)(2)(B) of title 10, United States Code, is amended by striking "who dies after November 23, 2003" and inserting "who dies after October 7, 2001".

(b) APPLICABILITY.—Any annuity payable to a dependent child under subchapter II of chapter 73 of title 10, United States Code, by reason of the amendment made by subsection (a) shall be payable only for months beginning on or after the date of the enactment of this Act.

---

**SA 4516.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of division C, add the following:

**TITLE XXXIII—NAVAL PETROLEUM RESERVES**

**SEC. 3301. COMPLETION OF EQUITY FINALIZATION PROCESS FOR NAVAL PETROLEUM RESERVE NUMBERED 1.**

Section 3412(g) of the National Defense Authorization Act for Fiscal Year 1996 (Public Law 104–106; 10 U.S.C. 7420 note) is amended—

(1) by inserting "(1)" after "(g)"; and

(2) by adding at the end the following new paragraph:

"(2)(A) In light of the unique role that the independent petroleum engineer who is retained pursuant to paragraph (b)(2) performs in the process of finalizing equity interests, and the importance to the United States taxpayer of timely completion of the equity finalization process, the independent petroleum engineer's 'Shallow Oil Zone Provisional Recommendation of Equity Participation,' which was presented to the equity finalization teams for the Department of Energy and Chevron U.S.A. Inc. on October 1 and 2, 2002, shall become the final equity recommendation of the independent petroleum engineer, as that term is used in the Protocol on NPR-1 Equity Finalization Implementation Process, July 8, 1996, for the Shallow Oil Zone unless the Department of Energy and Chevron U.S.A. Inc. agree in writing not later than 60 days after the date of the enactment of this paragraph that the independent petroleum engineer shall not be liable to either party for any cost or expense incurred or for any loss or damage sustained—

"(i) as a result of the manner in which services are performed by the independent petroleum engineer in accordance with its contract with the Department of Energy to support the equity determination process;

"(ii) as a result of the failure of the independent petroleum engineer in good faith to perform any service or make any determination or computation, unless caused by its gross negligence; or

"(iii) as a result of the reliance by either party on any computation, determination, estimate or evaluation made by the independent petroleum engineer unless caused by the its gross negligence or willful misconduct.

"(B) If Chevron U.S.A. Inc. agrees in writing not later than 60 days after the date of the enactment of this paragraph that the independent petroleum engineer shall not be liable to Chevron U.S.A. Inc. or the Department of Energy for any cost or expense incurred or for any loss or damage described in clauses (i) through (iii) of subparagraph (A), the Department of Energy shall agree to the same not later than such date.".

---

**SA 4517.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of title XIV, add the following:

**SEC. 1414. OUR MILITARY KIDS YOUTH SUPPORT PROGRAM.**

(a) ARMY FUNDING FOR EXPANSION OF PROGRAM.—Of the amount authorized to be appropriated by section 1405(1) for operation and maintenance for the Army, $1,500,000 may be available for the expansion nationwide of the Our Military Kids youth support program for dependents of elementary and secondary school age of members of the National Guard and Reserve who are severely wounded or injured during deployment.

(b) ARMY NATIONAL GUARD FUNDING FOR EXPANSION OF PROGRAM.—Of the amount authorized to be appropriated by section 1405(6) for operation and maintenance for the Army National Guard, $500,000 may be available for the expansion nationwide of the Our Military Kids youth support program.

---

**SA 4518.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of subtitle B of title III, add the following:

**SEC. 315. READING FOR THE BLIND AND DYSLEXIC PROGRAM OF THE DEPARTMENT OF DEFENSE.**

(a) DEFENSE DEPENDENTS.—Of the amount authorized to be appropriated by section 301(5) for operation and maintenance for Defense-wide activities, $500,000 may be available for the Reading for the Blind and

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:04CV1365 |
| UNITED STATES, | ) | Judge Susan G. Braden |
| Defendant. | ) | |

**NOTICE OF RULE 30(B)(6) DEPOSITION OF DEPARMENT OF ENERGY**

Take notice that Chevron U.S.A. Inc. ("Chevron") will take the deposition of Defendant United States Department of Energy ("DOE") under Federal Rule of Civil Procedure 30(b)(6). The deposition will take place on June 16, 2006, beginning at 9:00 a.m., and will be held at Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001, or at such other time and place as is mutually agreeable to the parties. The deposition will be conducted before an officer authorized to administer oaths and will be recorded by sound, visual, and stenographic means, and will continue from day to day until completed.

DOE is directed to and reminded of its Rule 30(b)(6) obligation to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf on the subject matter areas set forth in Schedule A. If Gary Latham is not so designated, a separate deposition of Gary Latham will be required.

Schedule A is limited to the subject matter areas for which expedited discovery is required. Chevron reserves the right to continue the deposition in the future in the normal course of discovery on these and other subject matter areas relevant to this litigation.

Dated: June 13, 2006

Respectfully submitted,

/s/ Lawrence D. Rosenberg

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*

## SCHEDULE A

## DEFINITIONS

Throughout this Notice of Deposition, the following terms shall have meanings as set forth below.

1. "You," Your," "DOE" or "Department of Energy" shall mean the United States Department of Energy, any other government agency such as the United States Department of Justice that may have directed or been involved with the activities of the Department of Energy, as well as their employees, agents, contractors, attorneys, counsel, or any other executive branch employee or office that may have directed or been involved with the activities of the Department of Energy.

2. "NSAI" shall mean Netherland Sewall & Associates, and all parent, subsidiary, affiliated, or predecessor firms or entities, and all partners, members, shareholders, directors, officers, employees, agents, attorneys, counsel, associates or agents of any of them.

3. "Chevron" shall mean Chevron U.S.A. Inc. and all parent, subsidiary, affiliated, or predecessor firms or entities, and all directors, officers, and employees thereof.

4. "Elk Hills" shall mean the oil field near Bakersfield, California (formerly known as Naval Petroleum Reserve No. 1) that is the subject of the 1944 Unit Plan Contract between the Department of the Navy (the predecessor-in-interest of the Department of Energy) and Standard Oil Company of California (the predecessor-in-interest of Chevron U.S.A. Inc.), and the subject of the 1997 Equity Process Agreement between DOE and Chevron.

5. "Equity redetermination or finalization" shall mean the processes respectively under the Unit Plan Contract and the Equity Process Agreement for redetermining and/or finalizing the relative equity interests of Chevron (and its predecessor) and DOE (and its predecessor) in Elk Hills.

6. "Communication(s)" shall mean any form of communication from one person or entity to another, including without any limitation any oral or electronic communication, whether in person, by telephone or otherwise.

7. "Concerning" and "relating to" shall mean referring to, concerning, constituting, evidencing, summarizing, demonstrating, reflecting, studying, analyzing, considering, explaining, mentioning, showing, describing, commenting upon, or in any way relevant to the subject matter of the request.

8. "Documents" shall be defined to the broadest extent permitted by law. Without limitation, "document" includes: papers, contracts, notes, memoranda, correspondence, letters, statements, invoices, reports, data, studies, records, photographs, diaries, tapes, email and any and all other written, printed, recorded, or other tangible matter in your possession, custody or control, whether in paper or electronic form.

9. "Person" shall mean any legal entity, including, without limitation, natural persons, public or private corporations, companies, limited liability companies, firms, joint ventures, proprietorships, partnerships, governmental bodies or agencies, associates, organizations, groups, trusts and estates. Any reference herein to any "person," whether or not a party herein, that is a corporation, partnership, or any entity other than an individual, shall be construed as including, without limitation, all past and present

directors, officers, employees, agents, representatives, partners and/or attorneys of the aforementioned entities.

10. "Thing" shall mean any tangible object other than a document including without limitation objects of every kind and nature, as well as prototypes, models, drafts, compositions or specimens thereof.

11. The words "and," "or" and "and/or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

**INSTRUCTIONS**

1. You are requested to produce all documents and things in the following categories that are in your possession, custody or control, in their entirety and without redaction or expurgation. "Possession, custody or control" shall be construed to the fullest extent provided under Federal Rules of Civil Procedure 34 and 45 and shall include, without limitation, those documents and things in the hands of any other Person that You have the ability to demand or to gain access to in the ordinary course of business.

2. If any document is withheld based upon a claim of privilege provide for each such document: (i) the date of the document, (ii) the names of all authors, (iii) the names of all recipients, (iv) the names of all cc and/or bcc recipients, (v) the type of document, (vi) a description of the document (vii) an identification of the privilege and (viii) a brief explanation of the basis of your claim of privilege.

3. Documents shall not be withheld on any other ground.

**DOCUMENTS REQUESTED**

1. All contracts between NSAI and DOE or any other government agency, or other documents, that contain any terms governing the relationship between NSAI and DOE for purposes of equity redetermination or finalization with respect to Elk Hills.

2. All documents concerning equity redetermination or finalization with respect to Elk Hills sent or shown by NSAI to DOE or sent or shown by DOE to NSAI, which were not also sent or copied to Chevron.

3. All documents containing communications of any sort concerning equity redetermination or finalization with respect to Elk Hills sent or shown by NSAI to DOE or sent or shown by DOE to NSAI, which were not also sent or copied to Chevron.

4. All documents providing evidence of or otherwise mentioning or relating to communications concerning equity redetermination or finalization with respect to Elk Hills sent or shown by NSAI to DOE or sent or shown by DOE to NSAI, which were not also sent or copied to Chevron.

5. All documents concerning any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

6. All documents containing communications of any sort or providing evidence of or otherwise mentioning or relating to communications concerning any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

## AREAS OF DESIGNATION AND INQUIRY

You are required to produce a witness or witnesses pursuant to Rule 30(b)(6) who will testify to all facts within DOE's knowledge concerning:

1. The manner in which the above-requested documents were made and kept, including (a) whether the documents were made at or near the time of the occurrences set forth in the documents, (b) whether the documents were made by, or from information transmitted by, a person with knowledge of the matters set forth in the documents, (c) whether the documents were kept in the course of a regularly conducted activity, and (d) whether the documents were made by the regularly conducted activity as a regular practice.

2. Any and all terms governing the relationship between NSAI and DOE for purposes of equity redetermination or finalization with respect to Elk Hills, including any contracts between NSAI and DOE or any other government agency, or other documents, that contain such terms.

3. Any and all negotiations or communications, and the substance thereof, between NSAI and DOE with respect to technical direction of NSAI's actions, conduct or work concerning equity redetermination or finalization with respect to Elk Hills.

4. Any and all communications of any sort, and the substance thereof, concerning equity redetermination or finalization with respect to Elk Hills between NSAI and DOE, which did not also include Chevron, or of which Chevron was not made expressly aware by NSAI and/or DOE.

5. Any and all actions by NSAI, DOE, or by any other party taken regarding any and all communications of any sort concerning equity redetermination or finalization

with respect to Elk Hills between NSAI and DOE, which did not also include Chevron, or of which Chevron was not made expressly aware by NSAI and/or DOE.

6. Any and all actions by NSAI or by any other party to obtain any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

7. Any and all communications of any sort, and the substance thereof, concerning any and all actions by NSAI or by any other party to obtain any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, v. UNITED STATES, Defendant. | ) ) ) ) ) ) ) ) ) | No. 1:04CV1365 Judge Susan G. Braden |

## NOTICE OF DEPOSITION OF MARY EGGER

Take notice that Chevron U.S.A. Inc. ("Chevron") will take the deposition of Mary Egger pursuant to Federal Rule of Civil Procedure 30 on July 12, 2006, beginning at 10:00 a.m., at Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001, or at such other time and place as is mutually agreeable to the parties. The deposition will be conducted before an officer authorized to administer oaths and will be recorded by sound, visual, and stenographic means, and will continue from day to day until completed.

The areas of inquiry on July 12, 2006 will concern the subject matter areas set forth in Schedule A, which is limited to the subject matter areas for which expedited discovery is required. These subject matter areas include, but are not limited to, areas as to which the witnesses previously designated by the United States as Rule 30(b)(6) witnesses and deposed by Chevron—Gary Latham, Mary Ann Masterson, and Beth Ann Kelly—lacked full knowledge. Chevron reserves the right to continue the deposition in the future in the normal course of discovery on these and other subject matter areas relevant to this litigation.

Dated: July 7, 2006

Respectfully submitted,

/s/ Lawrence D. Rosenberg

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*

17

## SCHEDULE A

## DEFINITIONS

Throughout this Notice of Deposition, the following terms shall have meanings as set forth below.

1. "DOE" or "Department of Energy" shall mean the United States Department of Energy, any other government agency such as the United States Department of Justice that may have directed or been involved with the activities of the Department of Energy, as well as their employees, agents, contractors, attorneys, counsel, or any other executive branch employee or office that may have directed or been involved with the activities of the Department of Energy.

2. "NSAI" shall mean Netherland Sewall & Associates, which is currently serving as the IPE as defined herein, and all parent, subsidiary, affiliated, or predecessor firms or entities, and all partners, members, shareholders, directors, officers, employees, agents, attorneys, counsel, associates or agents of any of them.

3. "Chevron" shall mean Chevron U.S.A. Inc. and all parent, subsidiary, affiliated, or predecessor firms or entities, and all directors, officers, and employees thereof.

4. "Elk Hills" shall mean the oil field near Bakersfield, California (formerly known as Naval Petroleum Reserve No. 1) that is the subject of the 1944 Unit Plan Contract between the Department of the Navy (the predecessor-in-interest of the Department of Energy) and Standard Oil Company of California (the predecessor-in-interest of Chevron U.S.A. Inc.), and the subject of the 1997 Equity Process Agreement between DOE and Chevron.

5. "Equity redetermination or finalization" shall mean the processes respectively under the Unit Plan Contract and the Equity Process Agreement for redetermining and/or finalizing the relative equity interests of Chevron (and its predecessor) and DOE (and its predecessor) in Elk Hills.

6. "IPE" shall mean the independent petroleum engineer referenced in Section 3412(b)(2) of Pub. L. No. 104-106, 110 Stat. 186, 632 (1995); in the proposed legislation transmitted by the Secretary of Energy to the Vice President and the Speaker of the House by letters dated May 9, 2006; and in Amendment 4516 to Senate Bill S. 2766, proposed by Senator Warner on June 22, 2006. NSAI currently serves as the IPE.

7. "Communication(s)" shall mean any form of communication from one person or entity to another, including without any limitation any oral or electronic communication, whether in person, by telephone or otherwise.

8. "Concerning" and "relating to" shall mean referring to, concerning, constituting, evidencing, summarizing, demonstrating, reflecting, studying, analyzing, considering, explaining, mentioning, showing, describing, commenting upon, or in any way relevant to the subject matter of the request.

9. "Documents" shall be defined to the broadest extent permitted by law. Without limitation, "document" includes: papers, contracts, notes, memoranda, correspondence, letters, statements, invoices, reports, data, studies, records, photographs, diaries, tapes, email and any and all other written, printed, recorded, or other tangible matter in your possession, custody or control, whether in paper or electronic form.

10. "Person" shall mean any legal entity, including, without limitation, natural persons, public or private corporations, companies, limited liability companies, firms, joint ventures, proprietorships, partnerships, governmental bodies or agencies, associates, organizations, groups, trusts and estates. Any reference herein to any "person," whether or not a party herein, that is a corporation, partnership, or any entity other than an individual, shall be construed as including, without limitation, all past and present directors, officers, employees, agents, representatives, partners and/or attorneys of the aforementioned entities.

11. "Thing" shall mean any tangible object other than a document including without limitation objects of every kind and nature, as well as prototypes, models, drafts, compositions or specimens thereof.

12. The words "and," "or" and "and/or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

## INSTRUCTIONS

1. You are requested to produce all documents and things in the following categories that are in your possession, custody or control, in their entirety and without redaction or expurgation. "Possession, custody or control" shall be construed to the fullest extent provided under Federal Rules of Civil Procedure 34 and 45 and shall include, without limitation, those documents and things in the hands of any other Person that You have the ability to demand or to gain access to in the ordinary course of business.

2. If any document is withheld based upon a claim of privilege, provide for each such document: (i) the date of the document, (ii) the names of all authors, (iii) the

names of all recipients, (iv) the names of all cc and/or bcc recipients, (v) the type of document, (vi) a description of the document (vii) an identification of the privilege and (viii) a brief explanation of the basis of your claim of privilege.

3. Documents shall not be withheld on any other ground.

**DOCUMENTS REQUESTED**

1. All documents concerning any proposed, adopted or enacted immunity, indemnity or limitation from or to liability or suit for the IPE and/or NSAI concerning equity redetermination or finalization with respect to Elk Hills.

2. All documents containing communications of any sort or providing evidence of or otherwise mentioning or relating to communications concerning any proposed, adopted or enacted immunity, indemnity or limitation from or to liability or suit for the IPE and/or NSAI concerning equity redetermination or finalization with respect to Elk Hills.

**AREAS OF DESIGNATION AND INQUIRY**

1. The manner in which the above-described documents were made and kept, including (a) whether the documents were made at or near the time of the occurrences set forth in the documents, (b) whether the documents were made by, or from information transmitted by, a person with knowledge of the matters set forth in the documents, (c) whether the documents were kept in the course of a regularly conducted activity, and (d) whether the documents were made by the regularly conducted activity as a regular practice.

2. Any and all actions by DOE, NSAI or by any other party or entity to propose, adopt or enact any immunity, indemnity or limitation from or to liability or suit

for the IPE and/or NSAI concerning equity redetermination or finalization with respect to Elk Hills.

3. Any and all communications of any sort, and the substance thereof, concerning any and all actions by DOE, NSAI or by any other party or entity to obtain any immunity, indemnity or limitation from or to liability or suit for the IPE and/or NSAI concerning equity redetermination or finalization with respect to Elk Hills.

## CERTIFICATE OF SERVICE

I certify that on July 7, 2006, I served a copy of the foregoing document upon the following counsel of record by electronic mail and U.S. mail.

JOHN E. KOSLOSKE, Esq.
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005
john.kosloske@usdoj.gov

/s/ Lawrence D. Rosenberg