No. 04-1365C
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MEMORANDUM IN SUPPORT OF PRIVILEGE CLAIMS

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
Trial Attorney
Office of General Counsel
Department of Energy
Washington, D.C.

AUGUST 11, 2006

# TABLE OF CONTENTS

Page

DEFENDANT'S MEMORANDUM IN SUPPORT OF PRIVILEGE CLAIMS .................... 1

BACKGROUND .......................................................................................................... 1

A. Nature Of The Case ........................................................................... 1

B. Legislative Proposal Concerning Immunity For Independent Petroleum Engineer ........................................................ 2

C. Clearance Of Legislation By The Office Of Management And Budget .......... 3

D. Senate Action Upon The DOE Legislative Proposal ...................................... 5

E. Chevron's Discovery Regarding The DOE IPE Legislative Proposal ............ 6

F. *In Camera* Review Of Documents That Government Asserts Are Privileged ........................................................................................ 6

ARGUMENT .............................................................................................................. 7

A. The Deliberative Process Privilege ........................................................ 7

(1) The Deliberative Process Privilege Applies To Document Nos. 1-118 Because Those Documents (In Whole Or In Part) Are Pre-Decisional And Deliberative ........................................................................... 12

(a) The Documents Grouped By Author And Nature Of Document ....... 13

(b) The Documents Grouped By Time Of Creation .............................. 14

(2) Chevron Cannot Demonstrate A Compelling Need For The Discovery It Seeks Concerning The DOE IPE Legislative Proposal .............................. 15

(3) The "Government Misconduct" Exception To The Deliberative Process Privilege Dos Not Apply To The Discovery Sought By Chevron With Respect To The DOE IPE Legislative Proposal .................... 20

**TABLE OF CONTENTS (CONT'D)**

Page

B. The Attorney-Client Privilege And The Attorney Work Product Doctrine .... 24

(1) The Comments And Drafts Of The Department Of Justice Regarding The DOE IPE Legislative Proposal Also Are Protected From Discovery By The Attorney-Client Privilege .... 26

(2) Document Nos. 119-129 And 137 Are Protected From Disclosure By The Attorney-Client Privilege .... 27

(3) Document Nos. 130-136 Are Protected From Disclosure By The Attorney-Client Privilege And/Or The Attorney Work Product Doctrine .... 30

(4) Chevron Has Not Demonstrated That The Crime-Fraud Exception To The Attorney-Client Privilege Applies .... 32

CONCLUSION .... 33

## TABLE OF AUTHORITIES

### CASES

Abramson v. United States,
39 Fed. Cl. 290 (1997) ........ 8, 9, 10, 11, 15

Alexander v. FBI,
186 F.R.D. 170 (D.D.C. 1999) ........ 22, 23

Alexander v. FBI,
193 F.R.D. 1 (D.D.C. 2000) ........ 32

Bank of Dearborn v. Saxon,
244 F.Supp. 394 (E.D. Mich. 1965),
aff'd, 377 F.2d 496 (6th Cir. 1967) ........ 20

CACI Field Services, Inc. v. United States,
12 Cl.Ct. 680 (1987) ........ 8, 10, 11

Cabot v. United States,
35 Fed. Cl. 442 (1996) ........ 25

Center for Biological Diversity v. Norton,
336 F.Supp.2d 1155 (D.N.M. 2004) ........ 11

Chevron U.S.A., Inc. v. United States,
71 Fed. Cl. 236 (2006) ........ 2

Cities Service Helix, Inc. v. United States,
216 Ct. Cl. 470 (1978) ........ 26

Coastal States Gas Corp. v. DOE,
617 F.2d 854 (D.C. Cir. 1980) ........ 8

Deuterium Corp. v. United States,
19 Cl. Ct. 697 (1990) ........ 25

Dow Jones & Co. v. DOJ,
917 F.2d 571 (D.C. Cir. 1990) ........ 8

Eagle-Picher Industries, Inc. v. United States,
11 Cl.Ct. 452 (1987) ........ 25

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Energy Capital Corp. v. United States,
45 Fed. Cl. 481 (2000) .......... 25, 31

Ferrell v. HUD,
177 F.R.D. 425 (N.D. Ill. 1998) .......... 11

First Federal Savings Bank of Hegewisch v. United States,
55 Fed. Cl. 263 (2003) .......... 25

First Heights Bank, FSB v. United States,
46 Fed. Cl. 312 (2000) .......... 7, 15, 24, 25

Formaldehyde Institute v. Department of Health and Human Services,
889 F.2d 1118 (D.C. Cir. 1989) .......... 8

Franklin National Bank Securities Litigation,
478 F.Supp. 577 (E.D.N.Y. 1979) .......... 11, 12, 20

General Electric Co. v. United States,
176 USPQ 83 (Ct. Cl. 1972) .......... 27

Hickman v. Taylor,
392 U.S. 495 (1947) .......... 30

Hinckley v. United States,
140 F.3d 277 (D.C. Cir. 1998) .......... 21, 22

Hopkins v. HUD,
929 F.2d 81 (2d Cir. 1991) .......... 10

Judicial Watch, Inc. v. DOJ,
432 F.3d 366 (D.C. Cir. 2005) .......... 10, 31

Kaiser Aluminum & Chemical Co. v. United States,
141 Ct. Cl. 38, 157 F.Supp. 939 (1958) .......... 7, 10

Lead Industries Ass'n, Inc. v. OSHA,
610 F.2d 70 (2d Cir. 1979) .......... 13

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Maine v. Norton,
208 F.Supp.2d 63 (D. Me. 2002) ........................................................................ 11

Marriott International Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006) .................................................................. 9, 11, 12, 15

Mobil Oil Corp. v. DOE,
102 F.R.D. 1 (N.D.N.Y. 1983) ............................................................................ 7

Mobil Oil Corp. v. EPA,
879 F.2d 698 (9th Cir. 1989) ...................................................................... 10, 13

NLRB v. Sears, Roebuck & Co.,
421 U.S. 132 (1975) ..................................................................................... 7, 9

National Wildlife Federation v. Forest Service,
861 F.2d 1114 (9th Cir. 1988) ........................................................................ 13

Oneida, Ltd. v. United States,
43 Fed. Cl. 611 (1999) ................................................................................. 31

Pacific Gas & Electric Co. v. United States,
69 Fed. Cl. 784 (2006) .......................................................................... 25, 30, 31

Pacific Gas & Electric Co. v. United States,
70 Fed. Cl. 128 (2006) ................................................................................ 9, 10

Redland Soccer Club v. Department of the Army,
55 F.3d 827 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996) .................................. 11

Renda Marine, Inc. v. United States,
62 Fed. Cl. 371 (2004) ................................................................................... 25

Resolution Trust Corp. v. Diamond,
773 F.Supp. 597 (S.D.N.Y. 1991) ...................................................................... 11

Rupert v. United States,
225 F.R.D. 154 (M.D. Pa. 2004) ...................................................................... 12

**TABLE OF AUTHORITIES (CONT'D)**

**CASES (CONT'D)**

Russell v. Department of Air Force,
682 F.2d 1045 (D.C. Cir. 1982) .......... 13

Ryan v. DOJ,
617 F.2d 781 (D.C. Cir. 1980) .......... 8

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997) .......... 10, 20, 21

In re Sealed Case,
107 F.3d 46 (D.C. Cir. 1996) .......... 32

In re Sealed Case,
754 F.2d 395 (D.C. Cir. 1985) .......... 32

Senate of Puerto Rico v. DOJ,
823 F.2d 574 (D.C. Cir. 1987) .......... 9

Soucie v. David,
448 F.2d 1067 (D.C. Cir. 1971) .......... 8

Standard Chartered Bank PLC v. Ayala International Holdings (U.S.) Inc.,
111 F.R.D. 76 (S.D.N.Y. 1986) .......... 25

In re Subpoena Duces Tecum Served on Office of the Comptroller of Currency,
145 F.3d 1422 (D.C. Cir. 1998) .......... 24

Sun Oil Co. v. United States,
206 Ct. Cl. 742, 514 F.2d 1020 (1975) .......... 12

Texaco Puerto Rico, Inc. v. Department of Consumer Affairs,
60 F.3d 867 (1st Cir. 1995) .......... 12

Tri-State Hospital Supply Corp. v. United States,
226 F.R.D. 118 (D.D.C. 2005) .......... 20

United States v. Farley,
11 F.3d 1385 (7th Cir. 1993) .......... 11

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

United States v. Nixon,
418 U.S. 683 (1974) .......... 7

United States v. Schmidt,
360 F.Supp. 339 (M.D. Pa. 1973) .......... 27

United States v. United Shoe Machinery Corp.,
89 F.Supp. 357 (D. Mass. 1950) .......... 25

Walsky Construction Corp. v. United States,
20 Cl.Ct. 317 (1990) .......... 9, 10, 11, 15

Wolfe v. Department of Health and Human Services,
839 F.2d 768 (D.C. Cir. 1988) .......... 7

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002) .......... 8, 9

Zenith Radio Corp. v. United States,
764 F.2d 1577 (Fed. Cir. 1985) .......... 10, 24

## MISCELLANEOUS

Rules of the Court of Federal Claims:

RCFC 26(b)(1) .......... 6, 16, 18

RCFC 26(b)(3) .......... 30

RCFC 26(b)(4) .......... 30

RCFC 30(b)(6) .......... 6

Federal Rules of Civil Procedure:

Fed.R.Civ.P. 26(b)(1) .......... 16

Treatises:

8 Wigmore, Evidence § 2292 (1961) .......... 27

## INDEX TO DEFENDANT'S APPENDIX


| Document | Page |
|---|---|
| Letter dated May 9, 2006, from Samuel W. Bodman, Secretary of Energy, to Honorable Richard B. Cheney, President of the Senate, submitting legislative proposal | 1 |
| Letter dated May 9, 2006, from Samuel W. Bodman, Secretary of Energy, to Honorable Richard B. Cheney, President of the Senate, submitting legislative proposal | 4 |
| Portion of Congressional Record (Senate) (6/22/06) | 7 |
| Plaintiff's "Notice of Rule 30(b)(6) Deposition of Department of Energy" dated June 13, 2006 | 8 |
| OMB Circular A-19 (rev. 9/20/79) | 16 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MEMORANDUM IN SUPPORT OF PRIVILEGE CLAIMS

Defendant, the United States, respectfully submits this memorandum of points and authorities in support of our claims of privilege with respect to documents that are responsive to a production request by plaintiff, Chevron U.S.A. Inc. (Chevron), for, among other things, materials that relate to a legislative proposal by the Department of Energy (DOE) concerning the Independent Petroleum Engineer (IPE) for the final equity determination with respect to the Elk Hills Field. Those documents were delivered to the Court on August 11, 2006, for *in camera* review.[1/]

BACKGROUND

A. Nature Of The Case

This case involves the alleged breach by DOE of an agreement between Chevron and DOE, referred to by the parties as the Equity Process Agreement, which established a process to determine the equity interests of Chevron and DOE in an oil-and-gas unit near Bakersfield, California, known as the Elk Hills Field. There are four distinct zones in the Elk Hills Field: the Dry Gas Zone, the Carneros Zone, the Shallow Oil Zone, and the Stevens Zone. A final

[1] In this Memorandum, "Def. App. ____" refers to the referenced page(s) of the appendix to this Memorandum and "Document No. ____" refers to the number assigned to a document listed in the Government's privileged documents log.

determination of the parties' equity interests was to be made for each zone. The determination of the equity interests for each zone was to be made by the DOE Assistant Secretary for Fossil Energy (ASFE). The ASFE's decision in each instance was to take into consideration the recommendation of the IPE selected by Chevron and DOE (Netherland, Sewell & Associates, Inc. (NSAI)). See Chevron U.S.A., Inc. v. United States, 71 Fed. Cl. 236 (2006) (opinion denying Government's motion to dismiss).

The complaint filed by Chevron in August 2004 contains claims for breach of the Equity Process Agreement between Chevron and DOE. For its first cause of action, Chevron alleges that Mary Egger, DOE's Deputy General Counsel for Technology Transfer and Procurement, and unidentified "others acting with or under her direction" engaged in *ex parte* communications prohibited by the Equity Process Agreement by "serving both as attorney for the DOE equity team and as an advisor to the Assistant Secretary decision maker." Compl. ¶ 60. Chevron also alleges that, "on information and belief," the ASFE also engaged in *ex parte* communications prohibited by the Equity Process Agreement" with the IPE and with unidentified "engineers on DOE'S equity team." Compl. ¶¶ 61, 62. For its second cause of action, Chevron alleges that "DOE has acted in bad faith in performance of the Equity Process Agreement" in breach of the implied covenant of good faith and fair dealing. Compl. ¶¶ 67-69.

B. Legislative Proposal Concerning Immunity For Independent Petroleum Engineer

On May 9, 2006, the Secretary of Energy sent Congress a legislative proposal concerning the IPE. Def. App. 1-6. The proposal provided, in pertinent part: "In light of the unique role that the independent petroleum engineer . . . performs in the process of finalizing equity interests, if the Secretary, in his unreviewable discretion, determines that the independent petroleum engineer

requires additional protections in order to perform that role, the independent petroleum engineer, upon award or extension of its contract, shall be immune from any claim regarding any act or omission in connection with the formulation or presentation of its recommendation under the previous, current, or any future contract." Def. App. 3, 6.

In the correspondence that transmitted the DOE IPE legislative proposal to the President of the Senate and the Speaker of the House of Representatives, the Secretary stated that this proposal would "amend section 3412(g) of the [National Defense Authorization Act for Fiscal Year 1996] to immunize the [IPE] from any claim regarding the formulation or presentation of its recommendation upon a determination by DOE that further protections are required" and that this "extension of immunity is necessary to protect the IPE from claims arising from the unique, quasi-judicial function in the equity finalization process." Defendant's Appendix ("Def. App.") 2, 5.

C. Clearance Of Legislation By The Office of Management And Budget

In the correspondence transmitting the May 9, 2006 DOE IPE legislative proposal to the Congress, the Secretary of Energy also stated that "[t]he Office of Management and Budget advises that there is no objection to the presentation of this legislative proposal to Congress from the standpoint of the President's program." Def. App. 2, 5. The DOE IPE legislative proposal, just as any other legislative initiative by the Executive Branch of the United States, was cleared by the Office of Management and Budget (OMB).

Since 1939, every President has used central clearance of legislation through OMB (and its predecessor, the Bureau of the Budget) as a means of assuring that members of the President's Administration provided their views to him on enrolled bills and on pending legislation, and also

requested legislation from Congress that was consistent with the President's own views of what legislation was necessary and expedient. As President Nixon stated in his message to Congress on his reorganization of the Bureau of the Budget into OMB in 1970, OMB will continue the legislative clearance functions that were performed by the Bureau of the Budget, drawing together agency reactions upon all proposed legislation, and will develop legislation to carry out the President's program. See Reorganization Plan No. 2 of 1970, 5 U.S.C. App. (Message of the President).

OMB, thus, working with other parts of the Executive Office of the President and with the departments and agencies of the Executive Branch, carries out this vital legislative clearance function, which is designed to serve the needs of the President in accomplishing his legislative responsibilities. The legislative clearance function primarily assists the President (and his policy representatives) in developing and presenting to the Congress a coherent, coordinated legislative program and coordinated views on pending legislation. In addition, through the clearance process, the various agencies receive and take into account the perspectives, concerns, and problems of other agencies, which ensures that the Congress receives coordinated and informative agency views on the legislation under consideration. The OMB legislative clearance function includes the interagency review of draft agency proposals for legislation as well as draft agency testimony and reports to Congress upon legislation.

The guidelines and procedures for the legislative clearance function are set forth in OMB Circular A-19 (rev. 9/20/79). See Def. App. 16-30. Circular A-19 "outlines procedures for the coordination and clearance by [OMB] of agency recommendations on proposed, pending, and enrolled legislation." Id., § 1, Def. App. 17. The Circular provides that "OMB performs legis-

lative coordination and clearance unctions to (a) assist the President in developing a position on legislation, (b) make known the Administration's position on legislation for the guidance of the agencies and information of Congress, (c) assure appropriate consideration of the views of all affected agencies, and (d) assist the President with respect to action on enrolled bills." Id., § 3, Def. App. 18. "All executive branch agencies," including DOE, "are subject to the provisions of [Circular A-19]." Id., § 4, Def. App. 18. "Agencies shall not submit to Congress proposed legislation that has not been coordinated and cleared within the Executive Branch in accordance with [Circular A-19]." Id., § 8.d(1), Def. App. 22. "OMB will undertake the necessary coordination with other agencies of an agency's proposed legislation or report." Id., § 8.a(1), Def. App. 21.

D. Senate Action Upon The DOE IPE Legislative Proposal

The DOE IPE legislative proposal underwent significant change in the Senate. The version of this proposal adopted by the Senate in June 2006, which (as yet) has not been enacted into law, provides that the IPE's provisional equity recommendation with respect to the Shallow Oil Zone presented to the DOE and Chevron equity teams in October 2002 "shall become the final recommendation of the [IPE]" unless DOE and Chevron agree within 60 days of the enactment of this legislation that the IPE "shall not be liable to either party for any cost or expense incurred or for any loss or damage sustained--(i) as a result of the manner in which services are performed by the [IPE] in accordance with its contract with [DOE] to support the equity determination process; (ii) as a result of the failure of the [IPE] in good faith to perform any service or make any determination or computation, unless caused by its gross negligence; or (iii) as a result of the reliance by either party on any computation, determination, estimate or evaluation made by the

[IPE] unless caused by the [sic] its gross negligence or willful misconduct." Def. App. 7 (Senate Amendment 4516 to Senate Bill 2766).

E. Chevron's Discovery Regarding The DOE IPE Legislative Proposal

On June 13, 2006, Chevron noticed a deposition of DOE, a major focus of which is the DOE IPE legislative proposal described above. See Chevron's "Notice of Rule 30(b)(6) Deposition of Department of Energy" dated June 13, 2006, at 7-8, Def. App. 14-15. This deposition notice to DOE also contains a document production request for, among other things, "[a]ll documents concerning any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills" and "[a]ll documents containing communications of any sort or providing evidence of or otherwise mentioning or relating to communications concerning any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills." Id. at 6, Def. App. 13. The Government contends that some of the documents responsive to this document production requests are exempt from disclosure, in whole or in part, under RCFC 26(b)(1)[2/] by virtue of the deliberative process privilege, the attorney-client privilege, and/or the attorney work product doctrine.

F. *In Camera* Review Of Documents That Government Asserts Are Privileged

During the July 3, 2006 telephone conference between the Court and counsel for plaintiff and defendant, the Court advised that it would conduct an *in camera* review of documents that the Government asserts are privileged from disclosure, including any documents as to which the

---

[2] With respect to the scope of discovery, Rule 26(b)(1) provides, in relevant part: "Parties may obtain discovery regarding any matter, *not privileged*, that is relevant to the claim or defense of any party . . . ." (Emphasis added.)

Government invoked the deliberative process privilege, in order to resolve the privilege claims. The documents that are the subject of the Government's privilege claims were delivered under a separate transmittal letter to the Court on August 11, 2006, for the *in camera* review.

ARGUMENT

A. The Deliberative Process Privilege

In United States v. Nixon, 418 U.S. 683, 705 (1974), the Supreme Court explained that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." Accord NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). Because of this fact and the strong public interest in having government officials candidly discuss prospective operations and policies, it is well-established that the Government may invoke certain executive privileges not available to other parties.

The deliberative process privilege, a privilege unique to the Government, is "a subset of the executive privilege." First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 320 (2000).[3/] "The purpose of the privilege is to encourage frank discussion of ideas and policies, thereby ensuring the quality of governmental decision making." Mobil Oil Corp. v. DOE, 102 F.R.D. 1, 5 (N.D.N.Y. 1983); accord Wolfe v. Department of Health and Human Services, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (The deliberative process privilege is predicated upon the recognition "that the quality of administrative decision-making would be seriously under-

---

[3] The deliberative process privilege is a court-created privilege, first recognized by the United States Court of Claims in Kaiser Aluminum & Chemical Co. v. United States, 141 Ct. Cl. 38, 49, 157 F.Supp. 939, 946 (1958) ("So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that it belongs to that class of governmental documents that are privileged from inspection as against the public interest but not absolutely.").

mined if agencies were forced to operate in a fishbowl.").[4] The deliberative process privilege extends to testimony as well as documents. See Abramson v. United States, 39 Fed. Cl. 290 (1997) (upholding deliberative process privilege claim with respect to deposition of agency officials about conversations with agency head concerning subsequently-issued revised personnel policy). And the privilege applies to *inter*-agency as well as intra-agency deliberative communications or official information. CACI Field Services, Inc. v. United States, 12 Cl.Ct. 680, 686 (1987); accord Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306, 312 (2002) ("The privilege protects *intra-governmental* documents reflecting advisory opinions, recommendations and deliberations." (emphasis in original; internal quotation marks omitted)).[5]

To assert the deliberative process privilege, the Government must follow a three-step process: (1) the head of the agency or the agency official to whom the agency head has delegated the authority to invoke the deliberative process privilege upon the agency's behalf that has control over the requested documents or information must invoke the privilege after personal consideration; (2) the head of the agency or official to whom the authority to assert the deliberative process

---

[4] See also Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (D.C. Cir. 1980) ("The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.").

[5] The deliberative process privilege even protects from disclosure advice or information generated outside a government agency by consultants, temporary employees, contractors, and the like, where the information is used by the agency as part of its deliberative process. E.g., Dow Jones & Co. v. DOJ, 917 F.2d 571 (D.C. Cir. 1990); Formaldehyde Institute v. Department of Health and Human Services, 889 F.2d 1118, 1124-25 (D.C. Cir. 1989); Ryan v. DOJ, 617 F.2d 781, 789-80 & n.30 (D.C. Cir. 1980); Soucie v. David, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971).

has been delegated must state with particularity what information is subject to the privilege; and (3) the agency must provide the Court with precise and certain reasons for maintaining the confidentiality of the requested documents or information. See Marriott International Resorts, L.P. v. United States, 437 F.3d 1302, 1308 (Fed. Cir. 2006); Pacific Gas & Electric Co. v. United States, 70 Fed. Cl. 128, 134 (2006); Abramson, 39 Fed. Cl. at 294; Walsky Construction Corp. v. United States, 20 Cl.Ct. 317, 320 (1990). These procedural requirements generally are satisfied by the production of an affidavit or declaration of the agency head or the agency official to whom the authority to assert the deliberative process privilege has been delegated. Pacific Gas, 70 Fed. Cl. at 134 n.8; Abramson, 39 Fed. Cl. at 294 n.3.

To protect documents under the deliberative process privilege, the Government must satisfy two fundamental legal requirements. *First*, "the information sought must be pre-decisional, or address activities antecedent to the adoption of an agency policy." Abramson, 39 Fed. Cl. at 294 (quoting Walsky, 20 Cl. Ct. at 320). A "document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." Walsky, 20 Cl.Ct. at 320 (quoting Senate of Puerto Rico v. DOJ, 823 F.2d 574, 585 (D.C. Cir. 1987)). "Thus, a document or information will be considered pre-decisional by linking it to a final decision." Abramson, 39 Fed. Cl. at 295.[6/]

*Second*, "the information must be deliberative in nature, containing opinions, recommendations, or advice pertaining to agency decisions." Abramson, 39 Fed. Cl. at 294-95 (internal quotation marks omitted); accord Pacific Gas, 70 Fed. Cl. at 133; Walsky, 20 Cl.Ct. at 320. Thus,

---

[6] The deliberative process privilege also applies to recommendations that are "part of a deliberative process which does not ripen into a final decision or a final change in policy." Walsky, 20 Cl.Ct. at 320-21; accord Yankee Atomic, 54 Fed. Cl. at 312 (citing Sears, Roebuck, 421 U.S. at 153 n.18). The Government, thus, "can show that a document is predecisional by linking it to either a final decision or proposed decision." Walsky, 20 Cl.Ct. at 321.

the privilege "applies to documents that contain opinions, recommendations, or advice on policy or legal matters." Walsky, 20 Cl.Ct. at 321 (citing Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985)). The information "must reflect an integral part of the Government's reasoning or deliberative process." Walsky, 20 Cl.Ct. at 321 (citing Kaiser Aluminum, 141 Ct. Cl. at 49, 157 F.Supp. at 946).

Factual statements fall outside the deliberative process privilege. Abramson, 39 Fed. Cl. at 295; CACI, 12 Cl.Ct. at 687. Thus, "[w]here possible, facts that are separable from the privileged portion of a document should be disclosed." Pacific Gas, 70 Fed. Cl. at 134 n.7 (internal quotation marks omitted).[7/]

In contrast to the attorney-client privilege, public disclosure of a document or a portion of a document to which the deliberative process applies does not constitute a waiver of the privilege as to other documents relating to the same subject matter. In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997) (The "all-or-nothing approach [to waiver in the context of the attorney-client privilege] has not been adopted with regard to executive privileges generally, or to the deliberative process privilege in particular. Instead, courts have said that release of a document only waives these privileges for the document or information specifically released, and not for related material."); Mobil Oil Corp. v. EPA, 879 F.2d 698, 703 (9th Cir. 1989) (The release of parts of a document did not result in a waiver of the deliberative process privilege with respect to an attach-

[7] See also Judicial Watch, Inc. v. DOJ, 432 F.3d 366, 372 (D.C. Cir. 2005) ("Factual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material[.]"); Hopkins v. HUD, 929 F.2d 81, 85 (2d Cir. 1991) (Factual information in a document that also contains statements subject to the deliberative process privilege must be produced, unless the factual information is inextricably intertwined with the privileged opinions, recommendations, and advice such that disclosure would compromise the confidentiality of deliberative information that is protected by the privilege.).

ment to the document where the attachment was not the same or similar to the released portions of the document.).

The deliberative process privilege is not absolute; it can be "overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure." Abramson, 39 Fed. Cl. at 295 (quoting CACI, 12 Cl.Ct. at 687); accord Marriott, 437 F.3d at 1307 ("[A] showing of compelling need can overcome the qualified deliberative process privilege."); Walsky, 20 Cl.Ct. at 320 ("Even though the Government properly asserts the [deliberative process] privilege, plaintiff nevertheless may discover the material at issue by showing a compelling need.").[8] The party seeking discovery of documents or other evidence to which the deliberative process privilege applies (Chevron here) "bears the burden of showing that its need for the documents outweighs the government's interest" in non-disclosure. Redland Soccer Club, 55 F.3d at 854; accord United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993); Center for Biological Diversity v. Norton, 336 F.Supp.2d 1155, 1161 (D.N.M. 2004); Maine v. Norton, 208 F.Supp.2d 63, 67 (D. Me. 2002).

[8] Factors considered by courts in weighing a litigant's need for evidence to which the deliberative process privilege applies against the Government's interest in confidentiality include: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the seriousness of the litigation and the issues involved in it; (4) the role of the Government in the litigation; and (5) the degree to which disclosure of the evidence sought would tend to chill future deliberations within government agencies, i.e., would hinder frank and independent discussion about governmental policies and decisions. See, e.g., Redland Soccer Club v. Department of the Army, 55 F.3d 827, 854 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996); Center for Biological Diversity, 336 F.Supp.2d at 1161; Resolution Trust Corp. v. Diamond, 773 F.Supp. 597, 605 (S.D.N.Y. 1991); Franklin National Bank Securities Litigation, 478 F.Supp. 577, 583 (E.D.N.Y. 1979); Ferrell v. HUD, 177 F.R.D. 425, 429 (N.D. Ill. 1998).

A court "may conduct in-camera review of documents" under the deliberative process privilege. Marriott, 437 F.3d at 1307; see also Sun Oil Co. v. United States, 206 Ct. Cl. 742, 751, 514 F.2d 1020, 1024 (1975) ("A court concludes whether or not there is enforceable privilege in a given case by examining the motion papers, or affidavits of the parties concerning claim of privilege, or, in some cases, by in camera inspection of the disputed documents. Confidentiality is not diminished by in camera inspection."); Rupert v. United States, 225 F.R.D. 154, 156 (M.D. Pa. 2004) ("In determining whether or not the [deliberative process] privilege applies, it is often appropriate to review the document *in camera*."); Franklin National Bank, 478 F.Supp. at 582 ("Given this clash of strong competing interests, the [deliberative process] privilege usually requires examination of the documents *in camera*.").

(1) The Deliberative Process Privilege Applies To Document Nos. 1-118 Because Those Documents (In Whole Or In Part) Are Pre-Decisional And Deliberative.

The deliberative process privilege applies to the highlighted portions of Document Nos. 1-118 listed in the privileged documents log and submitted to the Court for *in camera* review because those documents (i.e., the highlighted portions thereof) are pre-decisional and deliberative in nature, containing opinions, recommendations, or advice with respect to the DOE IPE legislative proposal that, on May 9, 2006, the Secretary of Energy sent to the President of the Senate and the Speaker of the House of Representatives.[9/]

---

[9] The deliberative process privilege is properly invoked here through a declaration by Eric Fygi, DOE Principal Deputy General Counsel. See "Declaration of Eric J. Fygi" dated August 11, 2006. Mr. Fygi's declaration demonstrates that Mr. Fygi has been delegated the authority to assert the deliberative process privilege upon DOE's behalf and that he has personally reviewed the documents as to which the privilege is asserted. The declaration also identifies with particularity the documents that are subject to the privilege and provides the Court with precise and certain reasons for maintaining the confidentiality of the highlighted information contained in the documents.

(a) The Documents Grouped By Author And Nature Of Document

All but five of the documents fall into one of two categories. First, there are electronic mail messages (1) by and between DOE officials and (2) by and between DOE officials and officials of other agencies involved in the OMB clearance process. Those messages contain opinions, analysis, recommendations, and advice regarding legislative proposals that culminated in the IPE legislative proposal sent by DOE to the Congress on May 9, 2006. See Document Nos. 1, 5, 6, 9, 11-13, 15-20, 22-24, 27, 28, 31, 32, 44-98, 100, 101, 102, and 116-118.

Second, there are drafts of the Secretary's May 9, 2006 correspondence to the President of the Senate and Speaker of the House of Representatives which transmitted the DOE IPE legislative proposal and draft legislative proposals that led to the DOE IPE legislative proposal sent to the Congress on May 9, 2006. See Document Nos. 2, 6-8, 10-12, 15, 16, 18, 21, 25, 26, 29, 30, 33-39, 42, 43, 46, 47, 74, 76-81, 83, 85, 88-94, 99, and 103-115. It is well-settled that the deliberative process privilege applies to drafts. As the court of appeals explained in Lead Industries Ass'n, Inc. v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979):

> If the [draft language] appeared in the final version, it is already on the public record and need not be disclosed. If [the draft language] did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so. It might indeed facilitate [the requester's] attack on the [Government] if it could know in just what respects the Assistant Secretary departed from the staff reports she had before her. But such disclosure of the internal workings of the agency is exactly what the law forbids.

Accord Mobil Oil, 879 F.2d at 703 ("[T]he deliberative process privilege [applies] to a draft document regardless of whether it differs from its final version."); National Wildlife Federation v. Forest Service, 861 F.2d 1114, 1122 (9th Cir. 1988) ("Materials that allow the public to recon-

struct the predecisional judgments of the administrator are no less inimical to [the] goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes."); Russell v. Department of Air Force, 682 F.2d 1045, 1049 (D.C. Cir. 1982) ("a simple comparison between the pages sought and the official document would reveal" an agency decision maker's judgment).

In addition, there are handwritten notes, typewritten meeting notes, and a DOE action memorandum relating to the OMB clearance process, all of which concern the DOE IPE legislative proposal and which are pre-decisional and deliberative in nature. See Document Nos. 3 (handwritten notes), 4 (handwritten notes), 14 (typewritten meeting notes), 40 (copy of DOE action memorandum), and 41 (copy of DOE action memorandum).

(b) The Documents Grouped By Time Of Creation

Alternatively, the documents may be looked at by separating them into the following two categories: (i) documents generated by DOE as it promulgated the legislative proposal prior to its submission to OMB for the legislative clearance process described in OMB Circular A-19 and (ii) documents generated during OMB's Circular A-19 clearance process, following DOE's submission of the proposal.

For ease, the documents described in (i) above – i.e., those documents that were generated as DOE was considering and preparing a draft of its legislative proposal prior to its submission to OMB for clearance under the process described in OMB Circular A-19 – are contained in Volume I. These documents are numbered 1-42, 103-115, and 118. Document No. 117 was also

generated by DOE, but was generated following the OMB Circular A-19 process.[10]

Conversely, the documents described in (ii) above – i.e., those documents that were generated by the Executive Branch during its deliberations that occurred in the context of the legislative clearance process described in OMB Circular A-19 – are contained in Volume II. These documents begin with Document No. 43, which contains the submission to OMB of the legislative proposal by DOE, and continue through Document No. 102, as well as Document No. 116.

(2) Chevron Cannot Demonstrate A Compelling Need For The Discovery It Seeks Concerning The DOE IPE Legislative Proposal.

As noted above, a showing by Chevron of "compelling need" for the documents relating to the DOE IPE legislative proposal to which the deliberative process privilege applies can overcome this qualified privilege. E.g., Marriott, 437 F.3d at 1307; Abramson, 39 Fed. Cl. at 296; Walsky, 20 Cl.Ct. at 320. However, Chevron has not demonstrated, and cannot demonstrate, an evidentiary need for documents that reveal the pre-decisional deliberations of agency officials regarding the DOE IPE legislative proposal, including drafts of the correspondence from the Secretary of Energy to the Congress transmitting the legislative proposal and drafts of related legislative proposals.

First Heights Bank is an example of a case in which this Court found that a plaintiff's evidentiary need for documents or other information outweighed the Government's interest in confidentiality under the deliberative process privilege. In that case, one of a series of Winstar-related cases, the court found that First Heights Bank had demonstrated a compelling need for

[10] Volume I also contains Document Nos. 119-137 which the Government is claiming are protected from disclosure by virtue of the attorney-client and/or the attorney work product doctrine, but not the deliberative process privilege.

the requested information where it was "potentially important" for First Heights' response to the Government's defense that First Heights had assumed the risk of a subsequent clarification or change in the tax code regarding the availability of deductions for covered asset losses and where the materials sought by First Heights "may be the only means available to permit First Heights to adequately respond to the Government's pending summary judgment motion." 46 Fed. Cl. at 322.

Chevron, by contrast, cannot demonstrate an evidentiary need for pre-decisional, deliberative information relative to the DOE IPE legislative proposal. Its complaint does not contain any allegations with respect to the DOE IPE legislative proposal. The complaint is addressed to breach-of-contract claims that center upon alleged *ex parte* communications between DOE official(s) and the ASFE and between DOE and the IPE purportedly in breach of the Equity Process Agreement between Chevron and DOE.

RCFC 26(b)(1) limits the scope of discovery to unprivileged facts relevant to "the claim or defense of any party," unless the Court determines that there is "good cause" to permit broader discovery relevant to the "subject matter" of the action. RCFC 26(b)(1) mirrors Fed.R.Civ.P. 26(b)(1), as amended in 2000. Neither RCFC 26(b)(1) nor Fed.R.Civ.P. 26(b)(1) specifically explains the difference in scope between, on the one hand, discovery relevant to "claims and defenses" in the litigation and, on the other hand, discovery relevant to the "subject matter" of an action. The Advisory Committee Notes to the 2000 amendment of Fed.R.Civ.P. 26(b)(1), however, provide:

> The Committee intends that *the parties and the court focus on the actual claims and defenses involved in the action*. The dividing line between information relevant to the claims and defenses and that

> relevant only to the subject matter of the action cannot be defined with precision. A variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action. For example, other incidents of the same type, or involving the same product, could be properly discoverable under the revised standard. Information about organizational arrangements or filing systems of a party could be discoverable if likely to yield or lead to the discovery of admissible information. Similarly, information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable. In each instance, the determination whether such information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the pending action.

Commentary to Rule Changes, Court Rules, 192 F.R.D. 340, 389 (emphasis added). This rule change "signals to the court that it has the authority to confine discovery to the claims and defenses asserted in the pleadings, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings." Id.

Chevron contends that it needs discovery with respect to how the DOE IPE legislative proposal was developed in order to determine whether that proposal resulted from *ex parte* contacts between DOE and the IPE. However, none of the material contained in the documents that is subject to the deliberative process privilege, including the privileged material that is a part of the OMB legislative clearance process pursuant to Circular A-19 discussed above, see Document Nos. 43-97, 100, and 101, supports the point that Chevron must establish about *ex parte* contacts between DOE and the IPE or is likely to lead to information regarding that point.

At any rate, the mere transmittal of the DOE IPE legislative proposal to Congress was not a breach of the Equity Process Agreement. The legislative proposal, if enacted, would have authorized DOE to grant the IPE immunity from suit by Chevron for the IPE's actions in the final

determination of the equity interests of Chevron and DOE in the Elk Hills Field. The legislative proposal did not in any manner alter the procedures established by the Equity Process Agreement for the final determination of the equity interests or otherwise affect any right enjoyed by Chevron under the Equity Process Agreement.

Chevron's discovery regarding the DOE IPE legislative proposal appears to be nothing more than an attempt by Chevron to acquire information that it may use in lobbying efforts against the proposal or, possibly, to institute some type of action concerning the proposal in a different judicial forum than this Court. Discovery for either of those purposes is manifestly beyond the scope of discovery permitted by RCFC 26(b)(1), which focuses upon information relevant to or needed to litigate the claims and/or defenses that are the subject of the pleadings in *this* action.

The pre-decisional, deliberative information that Chevron seeks to discover about the DOE IPE legislative proposal, moreover, is not even vital or necessary to establish any claim Chevron might pursue if the proposal were enacted into law. In that case, any claim Chevron might have would turn upon the *effect* of the legislation, *as enacted*, upon Chevron's rights or interests, e.g., whether the legislation breached or resulted in a breach of the Equity Process Agreement. The pre-decisional deliberations of government officials contained or reflected in e-mail messages or drafts of legislative proposals or related correspondence would be irrelevant upon the question of whether a statute regarding the IPE breached or resulted in a breach of contract or otherwise deprived Chevron of a right or other legally-protected interest.

The Government's interest in the confidentiality of pre-decisional, deliberative statements and legislative drafts – *especially* the statements and drafts that are a part of the OMB legislative

clearance process established by Circular A-19 discussed above (and are included in Volume II) – far outweighs any interest that Chevron has in those documents. The OMB legislative clearance function is vital to the accomplishment of the President's legislative responsibilities. The clearance function assists the President and his policy representatives in developing and presenting to Congress a coherent, coordinated legislative program. An important part of attaining that essential objective is interagency review of draft agency legislative proposals.

In order for the OMB clearance process to function effectively, it is *imperative* that the OMB and other government officials engaged in that process be able to explore ideas and policies freely and frankly without fear of public dissemination of their statements. The deliberative process privilege encourages the candid discussion of ideas and policies by maintaining the confidentiality of that information. If the OMB legislative clearance process were forced to operate in a "fish bowl," that would have a chilling effect upon the participants to the detriment of the legislative clearance function – which is vital to the to the achievement of the President's legislative responsibilities – would be seriously undermined. For, as the Supreme Court explained in Nixon, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." 418 U.S. at 705.

Chevron, therefore, cannot demonstrate an evidentiary need for the pre-decisional, deliberative documents relating to the origin and development of the DOE IPE legislative proposal that outweighs the Government's interest in the confidentiality of that information. The highlighted portions of Document Nos. 1-118, thus, are protected from disclosure by the deliberative process privilege.

(3) The "Government Misconduct" Exception To The Deliberative Process Privilege Does Not Apply To The Discovery Sought By Chevron With Respect To The DOE IPE Legislative Proposal.

During telephone conferences between the Court and counsel for the parties on June 28, 2006, and on July 5, 2006, Chevron argued that the "government misconduct" exception to the deliberative process privilege precludes recognition of the privilege with respect to the discovery that Chevron seeks relating to the DOE IPE legislative proposal. See transcript of June 28, 2006 telephone conference, at 17-18; transcript of July 5, 2006 telephone conference, at 19. We do not agree.

Chevron specifically cited the decision of the court of appeals for the District of Columbia Circuit in In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997), in support of its "government misconduct" exception contention. See transcript of June 28, 2006 telephone conference, at 17. In Sealed Case, the court of appeals opined that "where there is reason to believe that the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal deliberations in this context does not serve the public's interest in honest, effective government.'" 121 F.3d at 738 (quoting Texaco Puerto Rico, Inc. v. Department of Consumer Affairs, 60 F.3d 867, 885 (1st Cir. 1995)).[11/] Sealed Case further states

[11] As evidence of "routine" denials of the deliberative process privilege in cases of government misconduct, Sealed Case cites Texaco, 60 F.3d at 885. While Texaco uses the same language, it points to only two district court decisions (one 20-years old and the other 30-years old) in which a deliberative process claim was rejected supposedly because of a claim of government misconduct – Franklin National Bank, 478 F.Supp. at 582, and Bank of Dearborn v. Saxon, 244 F.Supp. 394, 402-03 (E.D. Mich. 1965), aff'd on other grounds, 377 F.2d 496 (6th Cir. 1967) – and neither of those cases referred to the rejection as "routine." In Franklin National Bank, the court stated that the privilege will be denied when the public interest in effective government is advanced by the disclosure of government malfeasance, but did not rely upon this principle in its discussion of the balance of interests. In Bank of Dearborn, the court found that the interest in disclosure outweighed the interest in confidentiality when the plaintiff had made a "prima facie case

that the deliberative process privilege "disappears altogether when there is any reason to believe government misconduct occurred." 121 F.3d at 746. Chevron's counsel also asserted during the June 28, 2006 telephone conference that there are several other cases (without citing any) that have rejected a claim of deliberative process privilege where a private party has *alleged* government misconduct. See transcript of June 28, 2006 telephone conference, at 18.

We disagree with the notion that a litigant may have access to documents protected by the deliberative process privilege simply by *alleging* misconduct. Even under Sealed Case, the court must have "reason to believe" that there was government misconduct and that the requested documents will "shed light" upon it. Accord Tri-State Hospital Supply Corp. v. United States, 226 F.R.D. 118, 135 (D.D.C. 2005) ("[I]n order to invoke [the government misconduct] exception, the party seeking discovery must provide an adequate factual basis for believing that the requested discovery would shed light upon government misconduct." (internal quotation marks omitted)).

The point is illustrated by the post-Sealed Case decision of the court of appeals for the District of Columbia Circuit in Hinckley v. United States, 140 F.3d 277 (D.C. Cir. 1998). In that case, John Hinckley, Jr., who was acquitted of attempting to assassinate President Reagan based upon insanity, sought a conditional release from St. Elizabeth's Hospital, which the district court denied. 140 F.3d at 278. In connection with that proceeding, Hinckley had requested discovery of the discussions that took place between members of the hospital review board, which had den-

---

of sham and subterfuge." 244 F.Supp. at 402. In short, these cases say nothing more than that, when the court balances the interests of the parties, one factor to be considered is the extent to which denial of the privilege will further the public interest by disclosing government misconduct.

ied his application for a conditional release. The district court upheld the Government's claim of deliberative process privilege with respect to the review board members' discussions.

On appeal, Hinckley argued that his attempt to discover those discussions fell within the government misconduct exception to the deliberative process privilege because he alleged that the review board "had improper motivations when it declined him a conditional release" based solely upon the fact that the hospital treatment team had unanimously recommended Hinckley's conditional release. Hinckley, 140 F.3d at 285. In rejecting that contention, the court of appeals held that the mere fact that Hinckley's treatment team and the review board reached different conclusions did not suggest any improper motivations upon the part of the review board and that Hinckley had not made a "colorable showing" that the review board had acted improperly. Id. at 286.

Chevron has not even alleged bad faith or other misconduct upon the part of any government official in connection with the OMB legislative clearance process or DOE's development of a draft of the IPE legislative proposal (quite apart from the question of whether this Court would have jurisdiction to entertain such a claim), much less provided the Court with any reason to believe that there was any such misconduct or that the requested documents would shed any light upon such misconduct. Chevron has not suggested that the DOE IPE legislative proposal sent to the Congress or the revised measure passed by the Senate would be unconstitutional if enacted or that the conduct of any government official who participated in the development of the DOE IPE legislative proposal violated a Federal statute or was otherwise unlawful.

In marked contrast to the circumstances of the present case (and Hinckley) is Alexander v. FBI, 186 F.R.D. 170 (D.D.C. 1999), where the court, in invoking the "government miscon-

duct" exception to the deliberative process privilege, found that there was reason to believe not only that government misconduct had occurred but also that the information sought by the plaintiffs might shed light upon it. That case involved allegations arising from what became known as "Filegate." The plaintiffs alleged that their privacy interests were violated when the FBI improperly disclosed to the White House hundreds of FBI files of former political appointees and government employees from the Reagan and Bush administrations. Id. at 171. They sought testimony from Kenneth Bacon, Assistant Secretary of Defense for Public Affairs, Department of Defense, who in a deposition had admitted to having been involved in the release of background security information of Linda Tripp to a reporter. Id. at 171-72. The Government invoked the deliberative process privilege with respect to certain testimony sought by the plaintiffs. Id. at 176.

The Alexander plaintiffs did not dispute the pre-decisional and deliberative nature of the information requested; they relied instead upon the "government misconduct" exception to that privilege. 186 F.R.D. at 177. The court held that the government misconduct exception applied because the plaintiffs had demonstrated that there was reason to believe that government misconduct had occurred and that the information sought by the plaintiffs might shed light upon it: "No one disputes that releasing Tripp's background security information qualifies as misconduct. A White House connection to that misconduct, which is the pertinent nexus to the plaintiffs' allegations, would be misconduct on its part as well. . . . [T]he court finds that there is some reason to believe that this testimony may shed light on potential government misconduct. . . . It is reasonable to believe that conversations between Bacon and Secretary Cohen may shed light on the

cover-up alleged by plaintiffs." Id. at 179.[12]

The "government misconduct" exception to the deliberative process privilege, therefore, does not apply to the discovery that Chevron seeks regarding the DOE IPE legislative proposal, including the deliberations of government officials who participated in the development of that proposal.

B. The Attorney-Client Privilege And The Attorney Work Product Doctrine

The attorney-client privilege applies where: "(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with the communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not

---

[12] In In re Subpoena Duces Tecum Served on Office of the Comptroller of Currency, 145 F.3d 1422, 1424 (D.C. Cir. 1998), the D.C. Circuit opined that "if either the Constitution or a statute makes the nature of governmental officials' deliberations *the* issue, the privilege is a nonsequiter." (Emphasis in original.). But, in First Heights Bank, 46 Fed. Cl. at 322, this Court disagreed with In re Subpoenas: "The court thus declines to follow the reasoning of In re Subpoenas to the extent that it supports an automatic bar on assertions of deliberative process privilege in any case where the Government's intent is potentially relevant. Instead, the court will apply the approach described in [Zenith Radio Corp. v. United States, 764 F.2d 1577 (Fed. Cir. 1985)] and used consistently in this court, in which the privilege may be overcome, but only after a showing of evidentiary need weighed against the harm that may result from disclosure." (internal quotation marks omitted); see also First Heights Bank, 46 Fed. Cl. at 321 ("Although the court agrees with the D.C. Circuit's observation in In re Subpoenas that assertions of the deliberative process privilege present unique problems when the Government's intent is at issue, the court also believes that Federal Circuit precedent on this question favors continued used of a case-by-case analysis to determine whether or not a plaintiff's need for particular evidence can overcome the Government's interest in maintaining the confidentiality of internal deliberations.").

waived by the client." Cabot v. United States, 35 Fed. Cl. 442, 444 (1996) (quoting United States v. United Shoe Machinery Corp., 89 F.Supp. 357, 358-59 (D. Mass. 1950)); accord Pacific Gas & Electric Co. v. United States, 69 Fed. Cl. 784, 810 (2006); First Federal Savings Bank of Hegewisch v. United States, 55 Fed. Cl. 263, 266 (2003); Energy Capital Corp. v. United States, 45 Fed. Cl. 481, 484-85 (2000). "While the Government may bear the burden of persuading the court that the communications arose out of an actual attorney-client relationship, this burden is satisfied if the overall tenor of the document indicates that it is a request for legal advice or services." First Heights Bank, 46 Fed. Cl. at 315 (citations and internal quotation marks omitted). "Moreover, it is not necessary that the party invoking the privilege expressly request confidential legal assistance when that request is implied." Id.

The attorney-client privilege "extends to legal advice by the attorney, not only confidential communications by the client," Eagle-Picher Industries, Inc. v. United States, 11 Cl. Ct. 452, 456 (1987),[13/] and it applies to communications with government employees "at all levels," not just to communications with high-ranking government officials. Deuterium Corp. v. United States, 19 Cl. Ct. 697, 700 (1990); accord Renda Marine, Inc. v. United States, 62 Fed. Cl. 371, 373 (2004) (dissemination of e-mail message to non-lawyer employees and agents of government agency did not alter privileged status of the communication).

---

[13] Accord Standard Chartered Bank PLC v. Ayala International Holdings (U.S.) Inc., 111 F.R.D. 76, 79 (S.D.N.Y. 1986) (The attorney-client privilege applies not only to confidential communications by a client to an attorney, but also "to confidential communications made by the attorney to the client if such communications contain legal advice or reveal confidential information on which the client seeks advice.").

(1) The Comments And Drafts Of The Department of Justice Regarding The DOE IPE Legislative Proposal Also Are Protected From Discovery By The Attorney-Client Privilege.

The advice by the Department of Justice (DOJ) officials upon the DOE IPE legislative proposal and related legislative drafts prepared by DOJ officials also are protected from disclosure by the attorney-client privilege. See highlighted portions of Document Nos. 46, 47, 55-57, 63-71, 73-84, 86, 89, and 90-97. The documents fall into two basic groups. First, there are electronic mail messages from Velma C. Taylor, Office of Legislative Affairs, DOJ, that convey the legal advice of DOJ's Civil Division with respect to the DOE IPE legislative proposal. See Document Nos. 46 (CHEV-DOE 0035, 0036), 47 (CHEV-DOE 00643, 00644), 55-57, 63-71, 94, 95, and 97.

Second, there are electronic mail messages between Mary Egger, DOE Deputy General Counsel for Technology Transfer and Procurement, and David M. Cohen, Director, Commercial Litigation Branch, Civil Division, DOJ, and between Mr. Cohen and Jeffrey Bucholtz, Principal Deputy Assistant Attorney General, Civil Division, and between Ms. Egger and Mr. Bucholtz relating to the DOE IPE legislative proposal. See Document Nos. 73-84, 86, 89, 96, and 97. Attached to some of these electronic mail messages are legislative drafts prepared by DOJ, see Document Nos. 74, 76, 79, 80, and a mark-up by Ms. Egger of a legislative draft that DOJ prepared, see Document Nos. 77 and 78. There is one other document that contains an electronic mail message between two DOE attorneys that summarizes the legal advice provided by Mr. Cohen. See Document No. 74.

In these contacts between DOJ and DOE officials, DOE is the client seeking legal advice and DOJ is the attorney providing legal advice or services. Cf. Cities Service Helix, Inc. v. Uni-

ted States, 216 Ct. Cl. 470, 476 (1978) ("In the case of the Government, it is not always easy to tell who play the roles of attorney and client, but, in general: (1) The Department of Justice is the attorney vis-a-vis the operating agencies involved in the particular litigation or transaction-to-be-litigated . . . ."); General Electric Co. v. United States, 176 USPQ 83, 87 (Ct.Cl. 1972) ("the 'out-side' counsel for the Government in suits brought in the Court of Claims is the Justice Department, and the 'internal' counsel are the agency staff attorneys"). The confidential communications between and among DOJ and DOE attorneys with respect to the DOE IPE legislative proposal, therefore, are protected from discovery by the attorney-client privilege as well as the deliberative process privilege.

In contrast to the qualified deliberative process privilege, the attorney-client privilege is absolute. See United States v. Schmidt, 360 F.Supp. 339, 346 (M.D. Pa. 1973) (communications subject to attorney-client privilege are "permanently protected" from disclosure by the client or by the attorney, absent a waiver by the client (citing 8 Wigmore, Evidence § 2292 (1961)). The attorney-client privilege cannot be overcome by a showing of compelling need for the evidence. Thus, insofar as the DOJ communications and legislative drafts identified above are concerned, even assuming for the sake of argument that the deliberative process privilege could be overcome by a showing of compelling need for that evidence, the documents nevertheless are protected from discovery by the attorney-client privilege.

(2) Document Nos. 119-129 And 137 Are Protected From Disclosure By The Attorney-Client Privilege.

Document Nos. 119-129 and 137, which are in Volume I of the documents, contain the following confidential communications between DOE attorneys and DOE officials subject to the

attorney-client privilege, inasmuch as they constitute confidential communications by DOE officials to DOE attorneys for the purpose of seeking legal advice or services, the provision of legal advice or services by DOE attorneys to DOE officials, or communications between DOE attorneys for the purpose of providing legal advice or services:

| | |
|---|---|
| Document No. 119: | 11/30/05 e-mail from Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) to David R. Hill (DOE General Counsel) and Eric Fygi (DOE Principal Deputy General Counsel) re: Elk Hills IPE. |
| Document No. 120: | 12/8/05 (9:12 AM) e-mail from Beth Kelly (Attorney-Advisor, DOE Office of General Counsel, Procurement) to Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement), Marc Johnston (DOE Deputy General Counsel for Litigation), and Paul Michael (DOE Office of General Counsel, Litigation) re: 12/7/05 e-mail from NSAI counsel (Beatty) to Ms. Kelly.<br><br>12/8/05 (9:21 AM) e-mail from Ms. Egger to Ms. Kelly and Messrs. Johnston and Michael responding to 12/8/05 Kelly e-mail. |
| Document No. 121: | 12/8/05 (1:29 PM) e-mail from Beth Kelly (Attorney-Advisor, DOE Office of General Counsel, Procurement) to Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement), Marc Johnston (DOE Deputy General Counsel for Litigation), and Paul Michael (DOE Office of General Counsel, Litigation) requesting review of draft e-mail from Ms. Kelly to NSAI counsel (Beatty). |
| Document No. 122: | 12/19/05 (3:25 PM) e-mail from Beth Kelly (Attorney-Advisor, DOE Office of General Counsel, Procurement) to Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) re: draft e-mail from Ms. Kelly to Chevron counsel (Henderson). |
| Document No. 123: | 2/28/06 (1:47 PM) e-mail from Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) to Beth Kelly (Attorney-Advisor, DOE Office of General Counsel, Procurement) re: indemnification language and confidentiality agreement. |
| Document No. 124: | 3/10/06 e-mail from Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) to Gary Latham (Geophysicist, DOE HQ), Arnold Smits (Petroleum Engineer, DOE |

HQ), and Ben Lardizabal (DOE Contracting Officer for IPE services contract between DOE and NSAI) re: proposed teleconference with NSAI.

Document No. 125: 3/30/06 (11:40 AM) e-mail from Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) to Marc Johnston (DOE Deputy General Counsel for Litigation), Stephen Skubel (DOE Assistant General Counsel, Litigation), Mary Ann Masterson (DOE Assistant General Counsel, Procurement), re: funding question.

3/30/06 (12:16 PM) e-mail from Mr. Johnston to Ms. Egger, et al., responding to 3/30/06 (11:40 AM) Egger e-mail.

Document No. 126: 5/17/06 (12:36 PM e-mail (highlighted portion only) from Christopher Guith (DOE Deputy Assistant Secretary, Congressional & Intergovernmental Affairs) to Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) re: question about services contract between DOE and NSAI.

5/17/06 (3:44 PM) e-mail (highlighted portion only) from Ms. Egger to Mr. Guith responding to question posed in 5/17/06 Guith e-mail.

Document No. 127: 5/17/06 (12:36 PM e-mail (highlighted portion only) from Christopher Guith (DOE Deputy Assistant Secretary, Congressional & Intergovernmental Affairs) to Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) re: question about services contract between DOE and NSAI.

5/17/06 (3:44 PM) e-mail (highlighted portion only) from Ms. Egger to Mr. Guith responding to question in 5/17/06 Guith e-mail.

5/17/06 (3:49 PM) e-mail from Mr. Guith to Ms. Egger re: question in response to 5/17/06 (3:44 PM) Egger e-mail.

5/17/06 (4:25 PM) e-mail from Ms. Egger to Mr. Guith responding to question in 5/17/06 (3:49 PM) Guith e-mail.

Document No. 128: 5/17/06 (12:36 PM e-mail (highlighted portion only) from Christopher Guith (DOE Deputy Assistant Secretary, Congressional & Intergovernmental Affairs) to Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) re: question about services contract between DOE and NSAI.

Document No. 129: 6/20/06 handwritten note from Eric Fygi (DOE Principal Deputy General Counsel) to Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement) re: agreements with respect to Elk Hills Field equity redetermination.

Document No. 137: Typewritten notes of 6/6/06 meeting (highlighted portion only) between Jeffrey D. Jarrett (Assistant Secretary for Fossil Energy), Mary Egger (DOE Deputy General Counsel for Technology Transfer and Procurement), Paul Michael (DOE Office of General Counsel, Litigation), et al.

(3) Document Nos. 130-136 Are Protected From Disclosure By The Attorney-Client Privilege And/Or The Attorney Work Product Doctrine.

Document Nos. 130-136, which are contained in Volume I of the privileged documents, are exempt from discovery under either the attorney-client privilege or the work product doctrine. The work product doctrine, codified at RCFC 26(b)(3),[14/] "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal strategy 'with an eye toward litigation,' free from unnecessary intrusion by adversaries." Pacific Gas, 69 Fed. Cl. at 789 (quoting Hickman v. Taylor, 329 U.S. 495, 510-11 (1947)). "The work product doctrine provides for the qualified protection of documents and tangible things prepared by or for a party or a party's representative "in anticipation of litigation or for trial." Pacific Gas, 69 Fed. Cl. at 789.

[14] Rule 26(b)(3) provides: "Subject to the provisions of [RCFC 26(b)(4) concerning discovery of experts], a party may obtain discovery of documents and tangible things otherwise discoverable under [RCFC 26(b)(1)] and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

Ordinary work product is discoverable upon a showing of substantial need and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. Pacific Gas, 69 Fed. Cl. at 789. "Core" or "opinion" work product is afforded near absolute protection from discovery; it includes "the mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation." Energy Capital, 45 Fed. Cl. at 493 (quoting Oneida, Ltd. v. United States, 43 Fed. Cl. 611, 618 n.13 (1999)).[15/]

The following confidential communications by Paul Michael, Office of General Counsel, Litigation Division, DOE (the DOE attorney assigned by DOE to assist defendant's counsel with the defense of this case) addressed to DOE officials and that concern this litigation are protected by the attorney-client privilege and/or the attorney work product doctrine:

Document Nos. 130-132: These documents contain a 6/28/06 (1:53 PM) e-mail from Paul Michael (DOE Office of General Counsel, Litigation) to listed DOE employees re: Chevron U.S.A. v. United States, No. 04-1365C (Fed. Cl.).

Document Nos. 133-136: These documents contain a 7/2/06 e-mail from Paul Michael (DOE Office of General Counsel, Litigation) to listed DOE employees re: Chevron U.S.A. v. United States, No. 04-1365C (Fed. Cl.).

[15] In contrast to the treatment of factual material under the deliberative process privilege, the work product doctrine does not distinguish between factual and deliberative material. Judicial Watch, 432 F.3d at 371. Thus, "factual material is itself privileged when it appears within documents that are attorney work product." Id. "If a document is fully protected as work product, then segregability is not required." Id.

(4) Chevron Has Not Demonstrated That The Crime-Fraud Exception To The Attorney-Client Privilege Applies.

It is not clear whether Chevron contends that the crime-fraud exception to the attorney-client privilege applies to any of the documents that the Government asserts are protected by the privilege, including the documents relating to the DOE IPE legislative proposal. If Chevron so contends, it has not made the requisite showing.

Communications "otherwise protected by the attorney-client privilege are not protected if they 'are made in furtherance of a crime, fraud, or other misconduct.'" Alexander v. FBI, 193 F.R.D. 1, 6 (D.D.C. 2000) (quoting In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985)). The party seeking to overcome the privilege has the burden of showing that the crime-fraud exception applies. Alexander, 193 F.R.D. at 6. In order to meet that burden, the party must offer "evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud." Id. (quoting Sealed Case, 754 F.2d at 399). "The party claiming the exception must then also show that 'the client consult[ed] the lawyer for the purpose of committing a crime or fraud.'" Alexander, F.R.D. at 6 (quoting In re Sealed Case, 107 F.3d 46, 51 (D.C. Cir. 1996)).

Chevron has not offered any evidence that if believed by this Court would establish the elements of a continuing or imminent crime or fraud, much less that anyone consulted a government attorney in furtherance of a crime or fraud. Chevron, thus, has not demonstrated that the crime-fraud exception to the attorney-client privilege applies to any of the documents that the Government asserts are protected by the privilege, including the documents relating to the DOE IPE legislative proposal.

## CONCLUSION

For the foregoing reasons, defendant's privilege claims with respect to the documents submitted to the Court on August 11, 2006, for *in camera* review should be sustained.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
Trial Attorney
Office of General Counsel
Department of Energy
Washington, D.C.

AUGUST 11, 2006