# DEFENDANT'S APPENDIX

2006-003667

**The Secretary of Energy**
Washington, D.C. 20585

May 9, 2006

The Honorable Richard B. Cheney
President of the Senate
Washington, D.C. 20510

Dear Mr. President:

The purpose of this letter is to submit legislation to provide protection against claims to the independent petroleum engineer retained to assist in the finalization of equity interests in the Naval Petroleum Reserve Elk Hills Unit.

The National Defense Authorization Act for Fiscal Year 1996 (NDAA) required the Department of Energy (DOE) to sell the United States' interest in the Naval Petroleum Reserve Numbered 1, commonly referred to as the Elk Hills Unit, located in Kern County California. Section 3412(b) of the NDAA requires DOE to finalize the equity interests of the Government and the other owner in the known oil and gas zones in the Elk Hills Unit using the services of an independent petroleum engineer (IPE). DOE has been engaged in the finalization of equity since 1996 under a process agreed to by the unit owners.

The IPE has nearly completed its equity finalization task for the productive zones at Elk Hills but the IPE's contract with DOE currently expires on September 30, 2006. The IPE is prepared to agree to a bilateral extension of the contract, but, in light of the fact that a unit owner has filed suit against the United States over the equity finalization process, the IPE does not wish to accept any legal risk of a lawsuit. Protection against any such legal risk is customary in the industry for retained IPEs, and usually is done through mutual contractual covenants by the respective property owners.

Although the contract approach was used in 1996, with the more recent advent of a litigation strategy by the corporate successor of the original unit co-owner, that corporate successor has not provided a new acknowledgement of its commitment to forbear from asserting liability against the IPE. Thus, the IPE remains exposed to a lawsuit, including the burden of defending against it.

DOE believes that it is imperative to complete the equity finalization process that is necessary for the Government to receive full value from the sale of Elk Hills, and that the most appropriate and efficient way of achieving that goal is to permit

Printed with soy ink on recycled paper

the current IPE contractor to finish the task. Under the process established by the Department, the IPE performs a unique role in that its equity recommendations are to be adopted by the Department unless certain conditions are found to exist. The IPE must be able to act independently, without "fear or favor" in the impartial discharge of its duties. Accordingly, the proposed legislation would amend section 3412(g) of the NDAA to immunize the IPE from any claim regarding to the formulation or presentation of its recommendation upon a determination by DOE that further protections are required. The extension of immunity is necessary to protect the IPE from claims arising from its unique, quasi-judicial function in the equity finalization process.

The Office of Management and Budget advises that there is no objection to the presentation of this legislative proposal to Congress from the standpoint of the President's program.

Enclosed with this letter is legislative language for the proposal. I urge Congress's favorable consideration of it. If you or your staff have any questions regarding the proposal, please call me or Jill Sigal, Assistant Secretary for Congressional and Intergovernmental Affairs, at 202-586-5450.

Sincerely,

Samuel W. Bodman

Samuel W. Bodman

Enclosure

Section 3412(g)of the National Defense Authorization Act for Fiscal Year 1996 (10 U.S.C. 7420 note) is amended by:

(a) inserting "(1)" after "(g)"; and

(b) adding the following new subparagraph after "the United States." :

"(2) In light of the unique role that the independent petroleum engineer who is retained pursuant to subparagraph (b)(2) of this section performs in the process of finalizing equity interests, if the Secretary, in his unreviewable discretion, determines that the independent petroleum engineer requires additional protections in order to perform that role, the independent petroleum engineer, upon award or extension of its contract, shall be immune from any claim regarding any act or omission in connection with the formulation or presentation of its recommendation under the previous, current, or any future contract. Nothing in this subparagraph shall affect any rights of the Secretary under the Contract Disputes Act."

The Secretary of Energy
Washington, D.C. 20585

May 9, 2006

The Honorable J. Dennis Hastert
Speaker of the House
Washington, D.C. 20515

Dear Mr. Speaker:

The purpose of this letter is to submit legislation to provide protection against claims to the independent petroleum engineer retained to assist in the finalization of equity interests in the Naval Petroleum Reserve Elk Hills Unit.

The National Defense Authorization Act for Fiscal Year 1996 (NDAA) required the Department of Energy (DOE) to sell the United States' interest in the Naval Petroleum Reserve Numbered 1, commonly referred to as the Elk Hills Unit, located in Kern County California. Section 3412(b) of the NDAA requires DOE to finalize the equity interests of the Government and the other owner in the known oil and gas zones in the Elk Hills Unit using the services of an independent petroleum engineer (IPE). DOE has been engaged in the finalization of equity since 1996 under a process agreed to by the unit owners.

The IPE has nearly completed its equity finalization task for the productive zones at Elk Hills but the IPE's contract with DOE currently expires on September 30, 2006. The IPE is prepared to agree to a bilateral extension of the contract, but, in light of the fact that a unit owner has filed suit against the United States over the equity finalization process, the IPE does not wish to accept any legal risk of a lawsuit. Protection against any such legal risk is customary in the industry for retained IPEs, and usually is done through mutual contractual covenants by the respective property owners.

Although the contract approach was used in 1996, with the more recent advent of a litigation strategy by the corporate successor of the original unit co-owner, that corporate successor has not provided a new acknowledgement of its commitment to forbear from asserting liability against the IPE. Thus, the IPE remains exposed to a lawsuit, including the burden of defending against it.

DOE believes that it is imperative to complete the equity finalization process that is necessary for the Government to receive full value from the sale of Elk Hills, and that the most appropriate and efficient way of achieving that goal is to permit

Printed with soy ink on recycled paper

the current IPE contractor to finish the task. Under the process established by the Department, the IPE performs a unique role in that its equity recommendations are to be adopted by the Department unless certain conditions are found to exist. The IPE must be able to act independently, without "fear or favor" in the impartial discharge of its duties. Accordingly, the proposed legislation would amend section 3412(g) of the NDAA to immunize the IPE from any claim regarding to the formulation or presentation of its recommendation upon a determination by DOE that further protections are required. The extension of immunity is necessary to protect the IPE from claims arising from its unique, quasi-judicial function in the equity finalization process.

The Office of Management and Budget advises that there is no objection to the presentation of this legislative proposal to Congress from the standpoint of the President's program.

Enclosed with this letter is legislative language for the proposal. I urge Congress's favorable consideration of it. If you or your staff have any questions regarding the proposal, please call me or Jill Sigal, Assistant Secretary for Congressional and Intergovernmental Affairs, at 202-586-5450.

Sincerely,

Samuel W. Bodman

Samuel W. Bodman

Enclosure

Section 3412(g)of the National Defense Authorization Act for Fiscal Year 1996 (10 U.S.C. 7420 note) is amended by:

(a) inserting "(1)" after "(g)"; and

(b) adding the following new subparagraph after "the United States." :

"(2) In light of the unique role that the independent petroleum engineer who is retained pursuant to subparagraph (b)(2) of this section performs in the process of finalizing equity interests, if the Secretary, in his unreviewable discretion, determines that the independent petroleum engineer requires additional protections in order to perform that role, the independent petroleum engineer, upon award or extension of its contract, shall be immune from any claim regarding any act or omission in connection with the formulation or presentation of its recommendation under the previous, current, or any future contract. Nothing in this subparagraph shall affect any rights of the Secretary under the Contract Disputes Act."

(1) IN GENERAL.—Chapter 71 of title 10, United States Code, is amended by inserting after section 1407 the following new section:

"§1407a. Retired pay base: members who were general or flag officers

"Notwithstanding any other provision of law, if the determination of the retired pay base or retainer pay base under section 1406 or 1407 of this title with respect to a person who was a commissioned officer in pay grades O-7 through O-10 involves a rate or rates of basic pay that were subject to a reduction under section 203(a)(2) of title 37, such determination shall be made utilizing such rate or rates of basic pay in effect as provided by law rather than such rate or rates as so reduced under section 203(a)(2) of title 37.".

(2) CLERICAL AMENDMENT.—The table of sections for chapter 71 of such title is amended by inserting after the item relating to section 1407 the following new item:

"1407a. Retired pay base: members who were general or flag officers.".

(b) EFFECTIVE DATE.—The amendments made by subsection (a) shall take effect on October 1, 2006, and shall apply with respect to the computation of retired pay for members of the Armed Forces who retire on or after that date.

**SA 4514.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of subtitle D of title VI, add the following:

**SEC. 648. INAPPLICABILITY OF RETIRED PAY MULTIPLIER MAXIMUM PERCENTAGE TO SERVICE OF MEMBERS OF THE ARMED FORCES IN EXCESS OF 30 YEARS.**

(a) IN GENERAL.—Paragraph (3) of section 1409(b) of title 10, United States Code, is amended to read as follows:

"(3) 30 YEARS OF SERVICE.—

"(A) RETIREMENT BEFORE JANUARY 1, 2007.—In the case of a member who retires before January 1, 2007, with more than 30 years of creditable service, the percentage to be used under subsection (a) is 75 percent.

"(B) RETIREMENT AFTER DECEMBER 31, 2006.—In the case of a member who retires after December 31, 2006, with more than 30 years of creditable service, the percentage to be used under subsection (a) is the sum of—

"(i) 75 percent; and

"(ii) the product (stated as a percentage) of—

"(I) 2½; and

"(II) the member's years of creditable service (as defined in subsection (c)) in excess of 30 years of creditable service in any service, regardless of when served, under conditions authorized for purposes of this subparagraph during a period designated by the Secretary of Defense for purposes of this subparagraph.".

(b) RETIRED PAY FOR NON-REGULAR SERVICE.—Section 12739(c) of such title is amended—

(1) by striking "The total amount" and inserting "(1) Except as provided in paragraph (2), the total amount"; and

(2) by adding at the end the following new paragraph:

"(2) In the case of a person who retires after December 31, 2006, with more than 30 years of service credited to that person under section 12733 of this title, the total amount of the monthly retired pay computed under subsections (a) and (b) may not exceed the sum of—

"(A) 75 percent of the retired pay base upon which the computation is based; and

"(B) the product of—

"(i) the retired pay base upon which the computation is based; and

"(ii) 2½ percent of the years of service credited to that person under section 12733 of this title for service, regardless of when served, under conditions authorized for purposes of this paragraph during a period designated by the Secretary of Defense for purposes of this paragraph.".

**SA 4515.** Mr. WARNER (for Mr. DEWINE) proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of subtitle D of title VI, add the following:

**SEC. 648. MODIFICATION OF ELIGIBILITY FOR COMMENCEMENT OF AUTHORITY FOR OPTIONAL ANNUITIES FOR DEPENDENTS UNDER THE SURVIVOR BENEFIT PLAN.**

(a) IN GENERAL.—Section 1448(d)(2)(B) of title 10, United States Code, is amended by striking "who dies after November 23, 2003" and inserting "who dies after October 7, 2001".

(b) APPLICABILITY.—Any annuity payable to a dependent child under subchapter II of chapter 73 of title 10, United States Code, by reason of the amendment made by subsection (a) shall be payable only for months beginning on or after the date of the enactment of this Act.

**SA 4516.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of division C, add the following:

**TITLE XXXIII—NAVAL PETROLEUM RESERVES**

**SEC. 3301. COMPLETION OF EQUITY FINALIZATION PROCESS FOR NAVAL PETROLEUM RESERVE NUMBERED 1.**

Section 3412(g) of the National Defense Authorization Act for Fiscal Year 1996 (Public Law 104-106; 10 U.S.C. 7420 note) is amended—

(1) by inserting "(1)" after "(g)"; and

(2) by adding at the end the following new paragraph:

"(2)(A) In light of the unique role that the independent petroleum engineer who is retained pursuant to paragraph (b)(2) performs in the process of finalizing equity interests, and the importance to the United States taxpayer of timely completion of the equity finalization process, the independent petroleum engineer's 'Shallow Oil Zone Provisional Recommendation of Equity Participation,' which was presented to the equity finalization teams for the Department of Energy and Chevron U.S.A. Inc. on October 1 and 2, 2002, shall become the final equity recommendation of the independent petroleum engineer, as that term is used in the Protocol on NPR-1 Equity Finalization Implementation Process, July 8, 1996, for the Shallow Oil Zone unless the Department of Energy and Chevron U.S.A. Inc. agree in writing not later than 60 days after the date of the enactment of this paragraph that the independent petroleum engineer shall not be liable to either party for any cost or expense incurred or for any loss or damage sustained—

"(i) as a result of the manner in which services are performed by the independent petroleum engineer in accordance with its contract with the Department of Energy to support the equity determination process;

"(ii) as a result of the failure of the independent petroleum engineer in good faith to perform any service or make any determination or computation, unless caused by its gross negligence; or

"(iii) as a result of the reliance by either party on any computation, determination, estimate or evaluation made by the independent petroleum engineer unless caused by the its gross negligence or willful misconduct.

"(B) If Chevron U.S.A. Inc. agrees in writing not later than 60 days after the date of the enactment of this paragraph that the independent petroleum engineer shall not be liable to Chevron U.S.A. Inc. or the Department of Energy for any cost or expense incurred or for any loss or damage described in clauses (i) through (iii) of subparagraph (A), the Department of Energy shall agree to the same not later than such date.".

**SA 4517.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of title XIV, add the following:

**SEC. 1414. OUR MILITARY KIDS YOUTH SUPPORT PROGRAM.**

(a) ARMY FUNDING FOR EXPANSION OF PROGRAM.—Of the amount authorized to be appropriated by section 1405(1) for operation and maintenance for the Army, $1,500,000 may be available for the expansion nationwide of the Our Military Kids youth support program for dependents of elementary and secondary school age of members of the National Guard and Reserve who are severely wounded or injured during deployment.

(b) ARMY NATIONAL GUARD FUNDING FOR EXPANSION OF PROGRAM.—Of the amount authorized to be appropriated by section 1405(6) for operation and maintenance for the Army National Guard, $500,000 may be available for the expansion nationwide of the Our Military Kids youth support program.

**SA 4518.** Mr. WARNER proposed an amendment to the bill S. 2766, to authorize appropriations for fiscal year 2007 for military activities of the Department of Defense, for military construction, and for defense activities of the Department of Energy, to prescribe personnel strengths for such fiscal year for the Armed Forces, and for other purposes; as follows:

At the end of subtitle B of title III, add the following:

**SEC. 315. READING FOR THE BLIND AND DYSLEXIC PROGRAM OF THE DEPARTMENT OF DEFENSE.**

(a) DEFENSE DEPENDENTS.—Of the amount authorized to be appropriated by section 301(5) for operation and maintenance for Defense-wide activities, $500,000 may be available for the Reading for the Blind and

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 1:04CV1365 |
| UNITED STATES, | ) | Judge Susan G. Braden |
| Defendant. | ) | |

**NOTICE OF RULE 30(B)(6) DEPOSITION OF DEPARMENT OF ENERGY**

Take notice that Chevron U.S.A. Inc. ("Chevron") will take the deposition of Defendant United States Department of Energy ("DOE") under Federal Rule of Civil Procedure 30(b)(6). The deposition will take place on June 16, 2006, beginning at 9:00 a.m., and will be held at Jones Day, 51 Louisiana Avenue, N.W., Washington, D.C. 20001, or at such other time and place as is mutually agreeable to the parties. The deposition will be conducted before an officer authorized to administer oaths and will be recorded by sound, visual, and stenographic means, and will continue from day to day until completed.

DOE is directed to and reminded of its Rule 30(b)(6) obligation to designate one or more officers, directors, managing agents, or other persons who consent to testify on its behalf on the subject matter areas set forth in Schedule A. If Gary Latham is not so designated, a separate deposition of Gary Latham will be required.

Schedule A is limited to the subject matter areas for which expedited discovery is required. Chevron reserves the right to continue the deposition in the future in the normal course of discovery on these and other subject matter areas relevant to this litigation.

Dated: June 13, 2006

Respectfully submitted,

/s/ Lawrence D. Rosenberg

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*

## SCHEDULE A

## DEFINITIONS

Throughout this Notice of Deposition, the following terms shall have meanings as set forth below.

1. "You," Your," "DOE" or "Department of Energy" shall mean the United States Department of Energy, any other government agency such as the United States Department of Justice that may have directed or been involved with the activities of the Department of Energy, as well as their employees, agents, contractors, attorneys, counsel, or any other executive branch employee or office that may have directed or been involved with the activities of the Department of Energy.

2. "NSAI" shall mean Netherland Sewall & Associates, and all parent, subsidiary, affiliated, or predecessor firms or entities, and all partners, members, shareholders, directors, officers, employees, agents, attorneys, counsel, associates or agents of any of them.

3. "Chevron" shall mean Chevron U.S.A. Inc. and all parent, subsidiary, affiliated, or predecessor firms or entities, and all directors, officers, and employees thereof.

4. "Elk Hills" shall mean the oil field near Bakersfield, California (formerly known as Naval Petroleum Reserve No. 1) that is the subject of the 1944 Unit Plan Contract between the Department of the Navy (the predecessor-in-interest of the Department of Energy) and Standard Oil Company of California (the predecessor-in-interest of Chevron U.S.A. Inc.), and the subject of the 1997 Equity Process Agreement between DOE and Chevron.

5. "Equity redetermination or finalization" shall mean the processes respectively under the Unit Plan Contract and the Equity Process Agreement for redetermining and/or finalizing the relative equity interests of Chevron (and its predecessor) and DOE (and its predecessor) in Elk Hills.

6. "Communication(s)" shall mean any form of communication from one person or entity to another, including without any limitation any oral or electronic communication, whether in person, by telephone or otherwise.

7. "Concerning" and "relating to" shall mean referring to, concerning, constituting, evidencing, summarizing, demonstrating, reflecting, studying, analyzing, considering, explaining, mentioning, showing, describing, commenting upon, or in any way relevant to the subject matter of the request.

8. "Documents" shall be defined to the broadest extent permitted by law. Without limitation, "document" includes: papers, contracts, notes, memoranda, correspondence, letters, statements, invoices, reports, data, studies, records, photographs, diaries, tapes, email and any and all other written, printed, recorded, or other tangible matter in your possession, custody or control, whether in paper or electronic form.

9. "Person" shall mean any legal entity, including, without limitation, natural persons, public or private corporations, companies, limited liability companies, firms, joint ventures, proprietorships, partnerships, governmental bodies or agencies, associates, organizations, groups, trusts and estates. Any reference herein to any "person," whether or not a party herein, that is a corporation, partnership, or any entity other than an individual, shall be construed as including, without limitation, all past and present

directors, officers, employees, agents, representatives, partners and/or attorneys of the aforementioned entities.

10. "Thing" shall mean any tangible object other than a document including without limitation objects of every kind and nature, as well as prototypes, models, drafts, compositions or specimens thereof.

11. The words "and," "or" and "and/or" shall be construed conjunctively or disjunctively as is necessary to make the request inclusive rather than exclusive.

## INSTRUCTIONS

1. You are requested to produce all documents and things in the following categories that are in your possession, custody or control, in their entirety and without redaction or expurgation. "Possession, custody or control" shall be construed to the fullest extent provided under Federal Rules of Civil Procedure 34 and 45 and shall include, without limitation, those documents and things in the hands of any other Person that You have the ability to demand or to gain access to in the ordinary course of business.

2. If any document is withheld based upon a claim of privilege provide for each such document: (i) the date of the document, (ii) the names of all authors, (iii) the names of all recipients, (iv) the names of all cc and/or bcc recipients, (v) the type of document, (vi) a description of the document (vii) an identification of the privilege and (viii) a brief explanation of the basis of your claim of privilege.

3. Documents shall not be withheld on any other ground.

## DOCUMENTS REQUESTED

1. All contracts between NSAI and DOE or any other government agency, or other documents, that contain any terms governing the relationship between NSAI and DOE for purposes of equity redetermination or finalization with respect to Elk Hills.

2. All documents concerning equity redetermination or finalization with respect to Elk Hills sent or shown by NSAI to DOE or sent or shown by DOE to NSAI, which were not also sent or copied to Chevron.

3. All documents containing communications of any sort concerning equity redetermination or finalization with respect to Elk Hills sent or shown by NSAI to DOE or sent or shown by DOE to NSAI, which were not also sent or copied to Chevron.

4. All documents providing evidence of or otherwise mentioning or relating to communications concerning equity redetermination or finalization with respect to Elk Hills sent or shown by NSAI to DOE or sent or shown by DOE to NSAI, which were not also sent or copied to Chevron.

5. All documents concerning any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

6. All documents containing communications of any sort or providing evidence of or otherwise mentioning or relating to communications concerning any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

## AREAS OF DESIGNATION AND INQUIRY

You are required to produce a witness or witnesses pursuant to Rule 30(b)(6) who will testify to all facts within DOE's knowledge concerning:

1. The manner in which the above-requested documents were made and kept, including (a) whether the documents were made at or near the time of the occurrences set forth in the documents, (b) whether the documents were made by, or from information transmitted by, a person with knowledge of the matters set forth in the documents, (c) whether the documents were kept in the course of a regularly conducted activity, and (d) whether the documents were made by the regularly conducted activity as a regular practice.

2. Any and all terms governing the relationship between NSAI and DOE for purposes of equity redetermination or finalization with respect to Elk Hills, including any contracts between NSAI and DOE or any other government agency, or other documents, that contain such terms.

3. Any and all negotiations or communications, and the substance thereof, between NSAI and DOE with respect to technical direction of NSAI's actions, conduct or work concerning equity redetermination or finalization with respect to Elk Hills.

4. Any and all communications of any sort, and the substance thereof, concerning equity redetermination or finalization with respect to Elk Hills between NSAI and DOE, which did not also include Chevron, or of which Chevron was not made expressly aware by NSAI and/or DOE.

5. Any and all actions by NSAI, DOE, or by any other party taken regarding any and all communications of any sort concerning equity redetermination or finalization

with respect to Elk Hills between NSAI and DOE, which did not also include Chevron, or of which Chevron was not made expressly aware by NSAI and/or DOE.

6. Any and all actions by NSAI or by any other party to obtain any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

7. Any and all communications of any sort, and the substance thereof, concerning any and all actions by NSAI or by any other party to obtain any immunity, indemnity or limitation from or to liability or suit for NSAI concerning equity redetermination or finalization with respect to Elk Hills.

OFFICE OF
MANAGEMENT AND BUDGET

# Circular No. A-19

**Revised September 20, 1979**

## TABLE OF CONTENTS


1. Purpose
2. Rescission
3. Background
4. Coverage
5. Definitions

   a. Advice
   b. Agency
   c. Proposed legislation
   d. Pending bill
   e. Report (including testimony)
   f. Enrolled bill
   g. Views letter

6. Agency legislative programs

   a. Submission to OMB
   b. Purposes of legislative program submission
   c. Timing of submission to OMB
   d. Number of copies
   e. Program content
   f. Relationship to advice

7. Submission of agency proposed legislation and reports

   a. Submission to OMB
   b. Agency scheduling of submissions
   c. Timing of agency submissions
   d. Number of copies
   e. Submission of legislation authorizing the enactment of new budget authority
   f. Items to be included in agency submissions
   g. Views letters
   h. Certain statutory and other requirements and Administration policies
   i. Drafting service
   j. Use of "no comment" reports

8. Clearance of agency proposed legislation and reports

   a. OMB action on agency submissions
   b. Forms of OMB advice
   c. Agency action on receipt of advice from OMB
   d. Agency action where prior clearance has not been effected
   e. Reclearance requirements

9. Interagency consultation

10. Enrolled bills

a. Initial OMB action
b. Agency action
c. Preparation of enrolled bill letters
d. Subsequent OMB action

11. Agency legislative liaison officers

12. Communications to OMB

**Attachments:**

A. Instructions Relating to the Preparation of Agency Legislative Programs
B. Instructions for the Preparation and Submission to Congress of Legislative Proposals Authorizing the Enactment of Additional Appropriations or Providing New Budget Authority Outside of Appropriation Acts
C. Basic Forms of OMB Advice

---

September 20, 1979

**CIRCULAR NO. A-19**
**Revised**
**Transmittal Memorandum No. 1**

**TO THE HEADS OF EXECUTIVE DEPARTMENTS AND ESTABLISHMENTS**

**SUBJECT:** Revision of Circular No. A-19, Revised, Dated July 31, 1972:
Legislative Coordination and Clearance

This transmits a revision of Circular No. A-19, Revised, dated July 1972: Legislative Coordination and Clearance.

The attached revision updates the Circular generally and makes explicit several long-standing practices. It does not change the basic aspects of the legislative coordination and clearance requirements and process.

The principal changes are as follows:

1. The Circular has been extensively restructured and a table of contents has been added to facilitate its reference use.
2. Requirements to identify the effect of legislation on personnel needs have been made explicit (sections 6e(5), 7f(1)(c), 7f(2), and 1Oc(4)(f)).
3. Requirements are set forth with respect to section 607 of the Congressional Budqet Act of 1974 dealing with year-ahead requests for authorizing the enactment of new budget authority (section 7e and Attachment B).
4. Additions have been made to the list of statutory and other requirements and Administration policies that should be taken into account (section 7h).
5. orms of clearance advice given by OMB are set forth and explained (section 8(b) and Attachment C).
6. Previous Attachments B, C, and D have been deleted.

Attachments

**CIRCULAR NO. A-19**
**Revised**

**TO THE HEADS OF EXECUTIVE DEPARTMENTS AND ESTABLISHMENTS**

**SUBJECT:** Legislative coordination and clearance

1. **Purpose.** This Circular outlines procedures for the coordination and clearance by the Office of Management and Budget (OMB) of agency recommendations on proposed, pending, and enrolled legislation. It also includes instructions on the timing and preparation of agency legislative programs.

2. **Rescission.** This revision supersedes and rescinds Circular No. A-19, Revised, dated July 31, 1972.

3. **Background.** OMB performs legislative coordination and clearance functions to (a) assist the President in developing a position on legislation, (b) make known the Administration's position on legislation for the guidance of the agencies and information of Congress, (c) assure appropriate consideration of the views of all affected agencies, and (d) assist the President with respect to action on enrolled bills.

4. **Coverage.** All executive branch agencies (as defined in section 5b) are subject to the provisions of this Circular, except those agencies that are specifically required by law to transmit their legislative proposals, reports, or testimony to the Congress without prior clearance. OMB will, however, honor requests from such agencies for advice on the relationship of particular legislation, reports, or testimony to the program of the President. The municipal government of the District of Columbia is covered to the extent that legislation involves the relationship between it and the Federal Government. Agencies of the legislative and judicial branches are not covered by this Circular.

5. **Definitions.** For the purpose of this Circular, the following definitions apply:

a. **Advice.** Information transmitted to an agency by OMB stating the relationship of particular legislation and reports thereon to the program of the President or stating the views of OMB as a staff agency for the President with respect to such legislation and reports.

b. **Agency.** Any executive department or independent commission, board, bureau, office, agency, Government-owned or controlled corporation, or other establishment of the Government, including any regulatory commission or board and also the municipal government of the District of Columbia.

c. **Proposed legislation*.** A draft bill or any supporting document (e.g., Speaker letter, section-by-section analysis, statement of purpose and justification, etc.) that an agency wishes to present to Congress for its consideration. Also, any proposal for or endorsement of Federal legislation included in an agency's annual or special report or in other written form which an agency proposes to transmit to Congress, or to any Member or committee, officer or employee of Congress, or staff of any committee or Member, or to make available to any study group, commission, or the public.

d. **Pending bill.** Any bill or resolution that has been introduced in Congress or any amendment to a bill or resolution while in committee or when proposed for House or Senate floor consideration during debate. Also, any proposal placed before the conferees on a bill that has passed both Houses.

e. **Report** (including testimony).* Any written expression of official views prepared by an agency on a pending bill for (1) transmittal to any committee, Member, officer or employee of Congress, or staff of any committee or Member, or (2) presentation as testimony before a congressional committee. Also, any comment or recommendation on pending legislation included in an agency's annual or special report that an agency proposes to transmit to Congress, or any Member or committee, or to make available to any study group, commission, or the public.

f. **Enrolled bill.** A bill or resolution passed by both Houses of Congress and presented to the President for action.

g. **Views letter.** An agency's written comments provided at the request of OMB on a pending bill or on another agency's proposed legislation, report, or testimony.

6. **Agency legislative programs.**

a. Submission to OMB. Each agency shall prepare and submit to OMB annually its proposed legislative program for the next session of Congress. If an agency has no legislative program, it should submit a statement to this effect.

* The terms "proposed legislation" and "report" do not include materials submitted in justification of appropriation requests or proposals for reorganization plans.

b. Purposes of legislative program submission. The essential purposes for requiring agencies to submit annual legislative programs are: (1) to assist agency planning for legislative objectives; (2) to help agencies coordinate their legislative program with the preparation of their annual budget submissions to OMB; (3) to give agencies an opportunity to recommend specific proposals for Presidential endorsement; and (4) to aid OMB and other staff of the Executive Office of the President in developing the President's legislative program, budget, and annual and special messages.

c. Timing of submission to OMB. (1) Each agency shall submit its proposed legislative program to OMB at the same time as it initially submits its annual budget request as required by OMB Circular No. A-11. Timely submission is essential if the programs are to serve the purposes set forth in section 6b.

(2) Items that are not included in an agency's legislative program and have significant upward budget impact will not be considered after the budget is prepared unless they result from circumstances not foreseeable at the time of final budget decisions.

d. Number of copies. Each agency shall furnish 25 copies of its proposed legislative program to OMB. These copies will be distributed by OMB within the Executive Office of the President.

e. Program content. Each agency shall prepare its legislative program in accordance with the instructions in Attachment A. Agency submissions shall include:

(1) All items of legislation that an agency contemplates proposing to Congress (or actively supporting, if already pending legislation) during the coming session, including proposals to extend expiring laws or repeal provisions of existing laws. These items should be based on policy-level decisions within the agency and should take into account the President's known legislative, budgetary, and other relevant policies. Agencies' proposed legislative programs should identify those items of sufficient importance to be included in the President's legislative program.

(2) A separate list of legislative proposals under active consideration in the agency that are not yet ready for inclusion in its proposed legislative program. For each item in this list, the agency should indicate when it expects to reach a policy-level decision and, specifically, whether it expects to propose the item in time for its consideration for inclusion in the annual budget under preparation.

(3) A separate list of all laws or provisions of law affecting an agency that will expire between the date the program is submitted to OMB and the end of the two following calendar years, whether or not the agency plans to propose their extension.

(4) All items in the submissions that are proposed, or expected to be proposed, for inclusion in the annual budget shall be accompanied by a tabulation showing amounts of budget authority and outlays or other measure of budgetary impact for the budget year and for each of the four succeeding fiscal years. See section 201(a)(5),(6), and (12) of the Budget and Accounting Act, 1921, as amended (31 U.S.C. 11(a)(12)). Criteria in OMB Circular No. A-11 shall be used in preparing these tabulations.

(5) All items covered by section 6e(4) above shall also be accompanied by estimates of work-years of employment and of personnel required to carry out the proposal in the budget year and four succeeding fiscal years.

f. Relationship to advice. Submission of a legislative program to OMB does not constitute a request for advice on individual legislative proposals. Such requests should be made in the manner prescribed in section 7 of this Circular.

7. **Submission of agency proposed legislation and reports.**

a. Submission to OMB. Before an agency transmits proposed legislation or a report (including testimony) outside the Executive branch, it shall submit the proposed legislation or report or testimony to OMB for coordination and clearance.

b. Agency scheduling of submissions. Agencies should not commit themselves to testify on pending bills or to submit reports or proposed legislation to Congress on a time schedule that does not allow orderly coordination and clearance. To facilitate congressional action on Administration proposals and to forestall hasty, last-minute clearance requests, agencies should plan their submissions to OMB on a time schedule that will permit orderly coordination and clearance. Particular care should be given to ensuring that draft legislation to carry out Presidential legislative recommendations is submitted promptly to OMB to allow sufficient time for analysis and review.

c. Timing of agency submissions.

(1) Agencies should submit proposed legislation, reports, and testimony to OMB well in advance of the desired date of transmittal to Congress.

(2) Agencies should include in their submissions to OMB of proposed reports and testimony a copy of any committee request for such reports and testimony, if the request calls for special information or includes specific questions to be covered in the reports or testimony.

(3) Depending on the complexity and significance of the subject matter, the policy issues involved, and the number of agencies affected, an adequate period for clearance by OMB may range from several days to a number of months. Agencies shall consult with OMB staff as to necessary periods for clearance, particularly in cases of major or complex legislation.

(4) On occasion, very short periods for clearances may be unavoidable because of congressional time schedules or other factors. Nevertheless, agencies should make every effort to give OMB a minimum of five full working days for clearance of proposed reports or testimony.

(5) Agencies shall state in their transmittal letters to OMB any information on congressional schedules or other special circumstances that may require expedited clearance.

d. Number of copies. Agencies should furnish to OMB 10 copies of proposed legislation and supporting materials and six copies of draft reports or testimony. If wide circulation or expedited action is required, the originating agency shall consult informally in advance with OMB staff on the number of copies to be supplied. Similarly, agencies should furnish to OMB six copies of their views letters on other agencies' proposed legislation, reports, or testimony.

e. Submission of legislation authorizing the enactment of new budget authority.

Section 607 of P.L. 93-344, the Congressional Budget Act of 1974, requires year-ahead requests for authorizing the enactment of new budget authority, as follows:

> "Notwithstanding any other provision of law, any request for the enactment of legislation authorizing the enactment of new budget authority to continue a program or activity for a fiscal year (beginning with the fiscal year commencing October 1, 1976) shall be submitted to the Congress not later than May 15 of the year preceding the year in which such fiscal year begins. In the case of a request for the enactment of legislation authorizing the enactment of new budget authority for a new program or activity which is to continue for more than one fiscal year, such request shall be submitted for at least the first 2 fiscal years."

Attachment B sets forth instructions, necessitated by section 607 of P.L. 93-344, for the preparation and submission to Congress of legislative proposals authorizing additional appropriations or providing new budget authority outside of appropriation acts.

f. Items to be included in agency submissions.

(1) Agencies should identify proposed legislation submitted to OMB by using the number assigned to the proposal in the agency's legislative program submission; e.g., Agriculture, 96-12 (see Attachment A). Each legislative proposal shall include a draft transmittal letter to the Speaker of the House and the President of the Senate as well as background information and justification, including where applicable:

(a) a section-by-section analysis of the provisions of the proposed legislation;

(b) comparison with existing law presented in "Ramseyer" or "Cordon" rule form by underscoring proposed additions to existing law and bracketing the text of proposed deletions (This need be done only when it would facilitate understanding of the proposed legislation.);

(c) budgetary and personnel impacts as described in sections 6e(4) and (5), including a statement of the relationship of these estimates to those previously incorporated in the President's budgetary program. (Public Law 89-554, 5 U.S.C. 2953, requires in certain cases that agencies, in proposing legislation and in submitting reports favoring legislation, provide estimates of expenditures and personnel that would be needed. Public Law 91-510, sections 252(a) (2U.S.C. 190j) and 252(b) imposes similar requirements on congressional committees.);

(d) comparison with previous agency proposals or related bills introduced in the Congress;

(e) an identification of other agencies that have an interest in the proposal;

(f) an indication of any consultation with other agencies in the development of the proposal; and

(g) information required by statute or by Administration policies, as, for example, that noted in section 7h below.

(2) Similarly, in their letters to OMB requesting advice on reports or testimony, agencies should identify related bills and set forth any relevant comments not included in the report or testimony itself. As indicated in section 7f(1)(c), certain reports or testimony favoring legislation are required by law to include budget and personnel estimates. Where such estimates are not included in other reports or in testimony favoring or opposing legislation, agencies should provide in their letters to OMB a statement of budgetary and personnel impacts as described in sections 6e(4) and (5), including a statement of the relationship of these estimates to those previously incorporated in the President's budgetary program.

(3) In cases where legislation carries out a Presidential recommendation, agencies should include in the proposed report or the letter transmitting proposed legislation a statement identifying the recommendation and indicating the degree to which the legislation concerned will carry it out.

g. Views letters. In views letters to OMB, an agency should indicate whether it supports, opposes, or has no objection to all or part of a pending bill or of another agency's proposed legislation, report, or testimony and should state the reasons for its position. If an agency proposes changes to a pending bill or to another agency's submission, its views letter should recommend, insofar as practicable, specific substitute language.

h. Certain statutory and other requirements and Administration policies. Agencies shall carefully consider and take into account certain requirements of existing statutes and Executive orders and Administration policies and directives that are of general applicability. Agency reports and proposed legislation shall, to the maximum extent possible, contain or be accompanied by appropriate recommendations, statements, or provisions to give effect to such requirements, including but not limited to:

(1) Civil rights
(2) Environmental impact
(3) Economic impact
(4) Federal budgetary impact and personnel requirements
(5) Federal and non-federal paperwork requirements
(6) State and local government impact
(7) Urban and community impact

i. Drafting service. Agencies need not submit for clearance bills that they prepare as a drafting service for a congressional committee or a Member of Congress, provided that they state in their transmittal letters that the drafting service does not constitute a commitment with respect to the position of the Administration or the agency. Agencies shall advise OMB of these drafting service requests while the requests are being complied with, and supply a copy of the request, if in writing. A copy of each such draft bill and the accompanying letter should be furnished to OMB at the time of transmittal, together with an explanatory statement of what the bill would accomplish if that is not contained in the transmittal letter.

j. Use of "no comment" reports. Agencies should submit no comment reports only when they have no interest in the pending legislation or nothing to contribute by way of informed comment. Agencies should submit such reports for clearance, unless a different procedure is informally arranged with OMB. In either event, they should furnish OMB with one copy of each such report at the time it is transmitted to Congress.

8. **Clearance of agency proposed legislation and reports.**

a. OMB action on agency submissions.

(1) OMB will undertake the necessary coordination with other interested agencies of an agency's proposed legislation or report. If congressional committees have not requested reports from all of the interested agencies, OMB will request other agency views within specified time limits. OMB will consult with the President, when appropriate, and undertake such staff work for him as may be necessary in cooperation with other Presidential staff. OMB may request the originating agency to provide additional information or may call interagency meetings to exchange views, resolve differences of opinion, or clarify the facts.

(2) When coordination is completed, OMB will transmit advice to the appropriate agencies, either in writing or by telephone. In transmitting advice, OMB may indicate considerations that agencies should or may wish to take into account before submitting proposed legislation or reports to Congress.

b. Forms of OMB advice. The exact forms of OMB advice will vary to suit the particular case. The basic forms of advice that are commonly used are set forth and explained in Attachment C.

c. Agency action on receipt of advice from OMB.

(1) Agencies shall incorporate the advice received from OMB in their reports and in their letters transmitting proposed legislation to Congress. Advice on testimony is usually not included in the testimony as delivered unless it would be likely to have a significant effect on a committee's consideration of particular legislation or would not otherwise be available to a committee through a written report.

(2) In the case of reports, receipt of advice contrary to views expressed does not require an agency to change its views. In such cases, however, the agency will review its position. If it decides to modify its views, the agency shall consult with OMB to determine what change, if any, in advice previously received is appropriate. If, after the review, the views of the agency are not modified, it shall incorporate in its report the full advice it received.

(3) In the case of proposed legislation, the originating agency shall not submit to Congress any proposal that OMB has advised is in conflict with the program of the President or has asked the agency to reconsider as a result of the coordination process. In such cases, OMB will inform the agency of the reasons for its action.

(4) Agencies are expected to transmit reports and proposed legislation to Congress promptly after receiving OMB clearance. Should circumstances arise that make prompt transmittal inadvisable, the agency shall immediately notify OMB. Similarly, in the case of cleared testimony, the agency shall immediately notify OMB if its testimony has been cancelled or rescheduled.

(5) Agencies should observe the instructions in House and Senate rules to forward proposed legislation or various reports required by law to the Speaker of the House and the President of the Senate. Reports that have been requested by committee chairmen on bills and resolutions pending before their committees should be transmitted directly to the requesting committees.

(6) Agencies shall furnish to OMB two copies of all proposed legislation, transmittal letters and accompanying materials, and reports (including testimony) in the form actually transmitted to the Congress. If reports or testimony cover more than one bill, agencies shall furnish two copies for each bill.

d. Agency action where prior clearance has not been effected.

(1) Agencies shall not submit to Congress proposed legislation that has not been coordinated and cleared within the Executive branch in accordance with this Circular.

(2) If congressional time schedules do not allow an agency to send its proposed report to OMB in time for the normal clearance and advice, the agency shall consult informally with OMB as to the advice to be included in the proposed report. OMB may advise the agency to state in its report that time has not permitted securing advice from OMB as to the relationship of the proposed legislation to the program of the President. Agencies shall send to OMB six copies of such reports at the same time that they are transmitted to Congress. Where appropriate, OMB will subsequently furnish advice on the report, which the agency shall transmit promptly to Congress.

(3) In cases where an agency has not submitted a report for clearance and its views on pending legislation are to be expressed in the form of oral, unwritten testimony, OMB will undertake such coordination and give such advice as the circumstances permit. In presenting oral testimony, the agency should indicate what advice, if any, has been received from OMB. If no advice has been obtained, the agency should so indicate.

e. Reclearance requirements. The advice received from OMB generally applies to all sessions of each Congress, but it does not carry over from one Congress to the next. Generally, agencies do not need to seek

identical bills introduced in the same Congress, unless considerable time has elapsed or changed conditions indicate that the need for reclearance is appropriate or should be rechecked. Prior to transmitting such reports, however, agencies shall consult informally with appropriate OMB staff to determine whether reclearance is necessary. In cases where reclearance does not take place, agencies shall include in the subsequent report appropriate reference to the advice received on the original report. They shall also send one copy of any subsequent report to OMB at the same time that it is transmitted to Congress. The transmittal letter to OMB should identify the related report that was previously cleared.

9. **Interagency Consultation.** In carrying out their legislative functions, agencies are encouraged to consult with each other in order that all relevant interests and points of view may be considered and accommodated, where appropriate, in the formulation of their positions. Such consultation is particularly important in cases of overlapping interest, and intensive efforts should be made to reach interagency agreement before proposed legislation or reports are sent to OMB. In order that the President may have the individual views of the responsible heads of the agencies, however, proposed legislation or reports so coordinated shall be sent to OMB by the individual agencies involved, with appropriate reference to the interagency consultation that has taken place.

10. **Enrolled Bills.** Under the Constitution, the President has 10 days (including holidays but excluding Sundays) to act on enrolled bills after they are presented to him. To assure that the President has the maximum possible time for consideration of enrolled bills, agencies shall give them top priority.

a. Initial OMB action. OMB will obtain facsimiles of enrolled bills from the Government Printing Office and immediately forward one facsimile to each interested agency, requesting the agency's views and its recommendation for Presidential action.

b. Agency action. Each agency receiving such a request shall immediately prepare a letter presenting its views and deliver it in duplicate to OMB not later than two days (including holidays but excluding Sundays) after receipt of the facsimile. OMB may set different deadlines as dictated by circumstances. Agencies shall deliver these letters by special messenger to OMB.

c. Preparation of enrolled bill letters.

(1) Agencies' letters on enrolled bills are transmitted to the President and should be written so as to assist the President in reaching a decision. Each letter should, therefore, be complete in itself and should not, as a general rule, incorporate earlier reports by reference.

(2) Agencies' letters on enrolled bills are privileged communications, and agencies shall be guided accordingly in determining their content.

(3) Because of the definitive nature of Presidential action on enrolled bills, agency letters shall be signed by a Presidential appointee.

(4) Agencies' letters shall contain:

(a) an analysis of the significant features of the bill including changes from existing law. OMB staff will advise the agencies on which one should write the detailed analysis of the bill where more than one agency is substantially affected;

(b) a comparison of the bill with the Administration proposals, if any, on the same subject;

(c) comments, criticisms, analyses of benefits and shortcomings, or special considerations that will assist the President in reaching a decision;

(d) identification of any factors that make it necessary or desirable for the President to act by a particular date;

(e) an estimate of the first-year and recurring costs or savings and the relationship of the estimates to those previously incorporated in the President's budgetary program;

(f) an estimate of the additional number of personnel required to implement the bill; and

(g) a specific recommendation for approval or disapproval by the President.

(5) Agencies recommending disapproval shall submit with their letters a proposed veto message or memorandum of disapproval, in quadruplicate, prepared on legal-size paper and double-spaced. Such messages or memoranda should be finished products in form and substance that can be used by the President without further revision.

(6) Agencies may wish to recommend issuance of a signing statement by the President. Agencies so recommending shall submit with their letters a draft of such statement, in the same form and quantity as required for a proposed veto message. In some cases, OMB may request an agency to prepare a draft signing statement.

(7) Agencies' letters on private bills shall cite, where appropriate, precedents that support the action they recommend or that need to be distinguished from the action recommended.

d. Subsequent OMB action. OMB will transmit agencies' letters to the President, together with a covering memorandum, not later than the fifth day following receipt of the enrolled bill at the White House.

11. **Agency legislative liaison officers.** To assist in effecting interagency coordination, each agency shall furnish OMB with the name of a liaison officer who has been designated by the agency to handle the coordination of legislative matters under this Circular. From time to time, OMB will send agencies lists of the liaison officers so designated. Agencies should promptly notify OMB of any change in their liaison officers.

12. **Communications to OMB.**

a. Written agency communications to OMB transmitting proposed legislation, proposed reports, views letters on other agencies' proposed legislation or reports, and letters on enrolled bills should be addressed to:

Director, Office of Management and Budget
Attention: Assistant Director for Legislative Reference

The envelope containing such communications should be addressed:

Legislative Reference Division
Office of Management and Budget
Room 7203, New Executive Office Building

unless a different arrangement is made with an appropriate OMB staff member.

b. Questions on status of proposed legislation, reports, testimony, or enrolled bills should be directed to appropriate OMB staff or to the Legislative Information Center (telephone 395-3230).

***DIRECTOR***

Attachments

---

ATTACHMENT A
Circular No. A-19
Revised

## INSTRUCTIONS RELATING TO THE PREPARATION OF AGENCY LEGISLATIVE PROGRAMS

1. Agencies' proposed legislative programs should be divided into two parts:

**PART I -- PRESIDENT'S PROGRAM PROPOSALS**

Those items that the agency believes are of sufficient importance to be included in the President's legislative program and given specific endorsement by him in one of the regular annual messages, such as the budget message, or in a special message.

**PART II -- ALL OTHER PROPOSALS**

2. Within each Part, agencies should list the items in order of relative priority. Each item of proposed legislation should be given a separate number for purposes of ready identification, using a numbering system which identifies the Congress; e.g., Agriculture, 96-12.

3. With respect to each item, agencies should provide the following information:

a. A brief description of the proposal, its objectives, and its relationship to existing programs. Agencies should include greater detail on the specific provisions of proposals included in Part I or where the subject matter of the proposal contains new policies or programs or raises complex issues;

b. Pertinent comments as to timing and readiness of draft legislation;

c. Pertinent references to bills and reports concerning the subject of the proposal in current or recent sessions of Congress;

d. An estimate for each of the first five fiscal years of (1) any budget authority and outlays that would be required, (2) any savings in budget authority and outlays, (3) any changes in budget receipts, and (4) work years of employment and numbers of personnel. These estimates should be prepared in accordance with the instructions in OMB Circular No. A-11.

4. The lists of (a) legislative proposals still under consideration in an agency and (b) expiring laws (see section 6 of the Circular) should be presented separately from Parts I and II. The following special instructions apply to them:

a. Items still under consideration should be listed in approximate order of priority and each briefly described in terms of subject matter and status.

b. Each expiring law should be described in terms of (1) the subject, (2) the citation, (3) the date of expiration, (4) the agency's views as to whether the law should be extended or permitted to expire, and (5) other pertinent information. If an agency recommends extension, the proposal should also be included in Part I or Part II, as appropriate.

5. The legislative program submission should be prepared on letter-size paper. General conformance to the format of the attached exhibit will greatly facilitate the use of these programs.

---

**EXHIBIT FOR ATTACHMENT A**
**Circular No. A-l9**
**Revised**

**DEPARTMENT OF GOVERNMENT**

PROPOSED LEGISLATIVE PROGRAM FOR THE _____ SESSION
OF THE _____ CONGRESS

(Items in each Part are listed in order of priority)

**PART I -- PRESIDENT'S PROGRAM PROPOSALS**

96-3 Amend the provisions of the 1902 Reclamation Act regarding acreage limitation, residency, leasing, excess land sales, the use of Class 1 Equivalency, contracts and

contracting procedures, and certain administrative procedures. This proposal would modify and update the acreage limitation provisions of Federal Reclamation law to reflect and accommodate modern agricultural practices, but at the same time retain the basic concept of the Reclamation program--providing opportunities for family farms.

The Department has recommended that legislation amending the law reflect the following: Eligibility to receive project water would be limited to adults--18 years of age or older; Residency as provided in the Reclamation Act of 1902, and defined as a maximum distance of 50 miles from the land, would be reimposed on both lessors and lessees of project lands, with specific guidelines for phasing in the requirement; the acreage entitlement for which project water would be available would be increased to 320 acres owned per adult individual, with an additional allowance of 160 acres leased, or the entire 480 acres could be leased (family corporations and multiple ownerships could hold up to 960 acres without regard to the number of people in the arrangement); Class 1 equivalency would be authorized for general use for projects with a frost-free growing season of 180-days or less and would be applied on a project-by-project basis; contracts with districts containing provisions for exemption from acreage limitation provisions upon payout of construction charges would be approved; Sale of excess land by the owner to immediate family members, long-time tenants, employees, or adjoining neighbors would be permitted; Charitable and religious organizations holding project lands on January 1, 1978, would be exempt from acreage limitations.

Cost: The estimated cost to the government of administering this

proposal would be comparable to the estimated cost of implementing the compliance program under regulations which are being promulgated at this time. The estimated cost of the compliance program for the 5-year period after the final rules are published (not including EIS costs prior to the final rules) is:

| | FY 1980 | FY 1981 | FY 1982 | FY 1983 | FY 1984 |
|---|---|---|---|---|---|
| (millions) | 2.4 | 2.4 | 2.0 | 2.0 | 2.0 |

Personnel requirements: Estimated personnel requirements are:

| | FY 1980 | FY 1981 | FY 1982 | FY 1983 | FY 1984 |
|---|---|---|---|---|---|
| (work-years) | 76 | 76 | 64 | 64 | 64 |
| (personnel) | 85 | 85 | 70 | 70 | 70 |

**PART II -- ALL OTHER PROPOSALS**

96-14 Amend Federal Power Commission Act of 1920. This proposal would amend the Federal Power Commission Act of 1920 to provide that a license will be issued only after the Secretary administering affected public lands makes a determination that the license will not interfere or be inconsistent with the purposes for which such lands are reserved. The Federal Power Commission has interpreted Section 4(e) to require only consideration of the affected Secretary's recommendations.

The proposal would also amend the act to provide for extinguishment of withdrawals created by the Federal Energy Regulatory Commission (FERC) applications if the FERC has not responded to the applicant within 6 months or as of date of denial or expiration, surrender, revocation, or termination of the license. Most applications do not result in FPC licenses; vet the land is withdrawn. The

administrative process of removing the withdrawals is cumbersome and time consuming and constrains the land managing agency from fully managing these lands for their resource values or from using these lands in exchanges. Revocation of the FERC withdrawal within a specified time period would be consistent with the provisions of Title II of the Federal Lands Policy and Management-Act relating to withdrawals.

No additional appropriations or outlays would be required.

---

ATTACHMENT B
Circular No. A-19
Revised

## INSTRUCTIONS FOR THE PREPARATION AND SUBMISSION TO CONGRESS OF LEGISLATIVE PROPOSALS AUTHORIZING THE ENACTMENT OF ADDITIONAL APPROPRIATIONS OR PROVIDING NEW BUDGET AUTHORITY OUTSIDE OF APPROPRIATION ACTS

1. **Legislative proposals providing authorizations to continue programs or activities.**

Under section 607 of P.L. 93-344, the Congressional Budget Act of 1974, legislative proposals to extend authorizations scheduled to expire at the end of a given fiscal year should be transmitted to Congress by May 15 of the fiscal year preceding that fiscal year. (For example, if an authorization expired on September 30, 1979, draft legislation to extend the authorization should have been transmitted to Congress by May 15, 1978.) If such proposals were not transmitted or were not enacted, new or revised proposals with language covering the budget year (i.e., the upcoming fiscal year) should be included in the same bill as proposals for the budget year plus one and subsequent years.

More specifically:

a. Proposals for agencies and programs that are customarily authorized on an annual basis (e.g., NASA, NSF, State, Justice, Peace Corps, military procurement and construction) should cover, in the same bill, proposed language for the budget year plus one and resubmittals or revisions of previously proposed authorizations for the budget year. Subsequent years should also be included if agencies deem it desirable and feasible.

b. Other legislative proposals to extend authorizations for the enactment of new budget authority expiring at the end of the budget year should cover, in the same bill, the budget year plus one and such subsequent years as is customary or deemed desirable for the particular program or activity involved.

c. Any proposals that provide for authorizations for the budget year or the current fiscal year should be submitted to Congress immediately after OMB clearance.

2. **Legislative proposals providing authorizations for new programs or activities.**

a. Proposals authorizing enactment of budget authority for a new program or activity should include at least two fiscal years, unless such new program or activity is proposed to be effective for only one fiscal year and to terminate at the end of that year.

b. Proposals that provide for authorizations to begin in the budget year plus one should, to the extent feasible, be prepared for submission to Congress no later than May 15 of the current fiscal year.

3. **General instructions for legislation authorizing the enactment of new budget authority.**

a. In keeping with the intent of section 401 of P.L. 93-344, proposals including contract authority or borrowing authority should provide that such authority is to be effective only to such extent or in such amounts as are provided in appropriation acts. Backdoor financing provisions may be proposed only when the exceptions set forth in section 401(d) of P.L. 93-344 apply.

b. As a general rule, bills submitted to Congress authorizing new budget authority for the current fiscal year or budget year will contain specific dollar amounts for those years. These amounts should be those approved for the Budget. For subsequent years, the bills should include "such sums as may be necessary" authorizations unless the agency and OMB agree that special circumstances warrant inclusion of specific amounts.

(1) Where specific amounts are included for years beyond the budget year, those amounts should be consistent with the five-year projections of budget authority printed in the Budget pursuant to P.L. 93-344. Such amounts will be based on the criteria provided for long-range projections in OMB Circular No. A-11.

(2) Authorizing legislation covering principally salaries and administrative expenses which heretofore has been enacted without specific dollar amounts may continue to be proposed for "such sums as may be necessary" for all fiscal years, including the current and budget fiscal years.

c. Agencies should draft their authorizing bills to incorporate the highest feasible level of aggregation for new budget authority.

4. **Required materials.**

a. **Budget year authorization extensions.** Proposed legislation authorizing the continuation of existing programs in the budget year should have been submitted to Congress not later than May 15 of the fiscal year preceding the current fiscal year. In cases where Congress did not enact budget year authorizations, new or revised authorizations should be submitted to Congress at the earliest possible date after the budget is published.

Accordingly, each agency will submit to OMB **no later than December 15** of each year 10 copies of drafts of proposed authorizing legislation to extend programs and activities that are authorized through the current fiscal year, but for which it will be necessary to propose new or revised authorizations for the budget year and subsequent years.

Since the specific amounts of the authorizations to be included cannot be determined until after decisions are made in connection with the budget, the draft bills are submitted to OMB should contain blank spaces for these amounts. When the budget decisions are final, OMB and the agencies will agree on the figures to be inserted.

b. **Authorization extensions for the budget year plus one.** Proposed legislation authorizing the continuation of existing programs in the budget year plus one must be submitted to Congress not later than May 15 of the current fiscal year. To meet this deadline, sufficient time must be provided for the legislative coordination and clearance process.

Accordingly, each agency will submit to OMB as early as possible but **no later than February 28** of each year 10 copies of legislative proposals for programs and activities that are authorized through the budget year, but for which an authorization request is necessary for the budget year plus one and subsequent years.

These draft legislative proposals should include "such sums as may be necessary" authorizations, unless the agency and OMB agree that special circumstances warrant inclusion of specific amounts. These figures should be the amounts agreed on as a result of the budget review and should be consistent with the five-year projections included in the Budget.

c. **Authorizations of new programs or activities.** In cases where decisions have been made during the budget review calling for authorizing legislation for new programs or activities proposed to begin in the budget year plus one, draft bills reflecting those decisions should be submitted to OMB no later than February 28 of

each year, as in paragraph 4b of this Attachment.

ATTACHMENT C
Circular No. A-19
Revised

## BASIC FORMS OF OMB ADVICE

The basic forms of advice and their implications are set forth below:

1. **"In accord (not in accord) with the program of the President."** When an agency or a committee of Congress is advised that enactment of a bill would be in accord with the program of the President, the advice means that the bill is of sufficient importance for the President to give it his personal and public support. That identification of the legislative proposal with the President is made in a variety of ways; e.g., by inclusion in one of his regular messages (State of the Union, Economic, Budget), a special message, speech, press conference, letter, or leadership meeting.

"Not in accord" advice indicates that a bill is so contrary to the President's legislative proposals or other policies or is otherwise so objectionable that should it be enacted in its current form, a veto would be considered. It is not, however, necessarily a commitment to veto.

2. **"Consistent with"** advice is used where the relationship of a legislative proposal to the Administration's objectives is direct and the Administration's expressed support is desirable, but the item does not warrant personal identification with, or support by, the President. "Not consistent with" advice signals to Congress that there are major objections to a bill, but does not indicate as clearly as "not in accord" advice that a veto would be considered if it were enacted.

3. **"No objection from the standpoint of the Administration's program."** Advice that there is no objection to a bill from the standpoint of the Administration's program is given on the large number of agency draft bills that deal with matters primarily of agency concern and do not bear a direct or immediate relationship to the President's program or the Administration's objectives. In effect, such advice indicates to Congress that OMB knows of no reason why the President would not approve the bill if Congress should enact it.

Advice to an agency that there is no objection from the standpoint of the Administration's program to its submission of a report (or testimony) on a bill to a committee of Congress does not indicate any commitment as to ultimate Presidential approval or disapproval of the bill if it is enacted. Nevertheless, such "no objection" clearance does set up certain presumptions. If all agencies' views are favorable, the presumption is that no major objection to the bill is known and that the agencies affected will recommend Presidential approval if it becomes enrolled. If all agencies' views are adverse, the presumption is that the agencies may wish to recommend a veto if the bill becomes enrolled.

Infrequently, "no objection" clearance is given to agency reports expressing divergent views on the same bill. When this is done, it normally means that there is no objection to the bill if Congress acts favorably after considering the adverse views. Occasionally, it means that the Administration's position is being reserved pending resolution of the agencies' differences, and this reservation may be explicitly stated. The interested agencies are advised of each other's differing views in these cases.

4. **Qualified advice.** In some cases the advice given is qualified. For example, the advice may be that there would be no objection to enactment of the bill from the standpoint of the Administration's program, or that the bill would be consistent with the Administration's objectives, if it were revised in specified respects.

Return to Top