**Electronically Filed on August 17, 2006**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, | ) | No. 1:04CV1365 |
| v. | ) | Judge Susan G. Braden |
| UNITED STATES, Defendant. | ) | |

# CHEVRON U.S.A. INC.'S RESPONSE TO THE UNITED STATES' MEMORANDUM IN SUPPORT OF PRIVILEGE CLAIMS

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*

# TABLE OF CONTENTS


BACKGROUND ..... 1

ARGUMENT ..... 4

I. THE GOVERNMENT MISCONDUCT EXCEPTION PROHIBITS THE GOVERNMENT FROM SHIELDING FROM DISCLOSURE DOCUMENTS LINKED TO SUBSTANTIAL ALLEGATIONS OF GOVERNMENT MISCONDUCT ..... 5

A. The Deliberative Process Privilege Is Inapplicable Where There Exist Serious Questions of Government Misconduct ..... 5

B. The Attorney-Client Privilege Does Not Apply Where Materials Relate To Policy Advice Or Where There Are Substantial Allegations Of Government Misconduct ..... 7

C. The Attorney Work-Product Privilege Does Not Apply To Materials Related To Legislative Efforts Or Where There Are Substantial Allegations Of Government Misconduct ..... 9

II. CHEVRON HAS SUFFICIENTLY ALLEGED GOVERNMENT MISCONDUCT TO DEFEAT APPLICATION OF THE PRIVILEGES ASSERTED BY THE GOVERNMENT HERE ..... 11

A. The Government Has Plainly Engaged In Misconduct By Introducing Legislation That Would Interfere With Ongoing Litigation And Deprive Chevron Of Its Contractual And Constitutional Rights ..... 11

B. This Government Misconduct Renders Inapplicable The Privileges Asserted By The Government Here ..... 16

CONCLUSION ..... 18

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Alexander v. FBI*, 186 F.R.D. 170 (D.D.C. 1999) .......... 5, 6, 7

*Clark v. United States*, 289 U.S. 1 (1933) .......... 8

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854 (D.C. Cir. 1980) .......... 9

*Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp. 258 (D.D.C. 1995) .......... 6

*Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998) .......... 15, 16

*In re Echostar Communications Corp.*, 448 F.3d 1294 (Fed. Cir. 2006) .......... 7, 10

*First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (2000) .......... 6

*Foretich v. United States*, 351 F.3d 1198 (D.C. Cir. 2003) .......... 14, 15

*Hinckley v. United States*, 140 F.3d 277 (D.C. Cir. 1998) .......... 17

*In re Lindsey*, 158 F.3d 1263 (D.C. Cir. 1998) .......... 8, 9, 18

*Lynch v. United States*, 292 U.S. 571 (1934) .......... 13

*Marriott International Resorts, L.P. v. United States*, 437 F.3d 1302 (Fed. Cir. 2006) .......... 5, 7

*Mobil Oil Corp. v. DOE*, 102 F.R.D. 1 (N.D.N.Y. 1983) .......... 8, 9, 18

*Pacific Gas and Electric Co. v. United States*, 69 Fed. Cl. 784 (2006) .......... 8, 9, 10

*P. & B. Marina v. Logrande*, 136 F.R.D. 50 (E.D.N.Y. 1991) .......... 10

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) .......... 5

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982) .......... 10

*In re Sealed Case*, 754 F.2d 395 (D.C. Cir. 1985) .......... 8

*Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841 (1984) .......... 14, 15

*In Re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422 (D.C. Cir. 1998) .......... 5, 6

*Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995) .......... 8

*Tri-State Hospital Supply Corp. v. United States*, 226 F.R.D. 118 (D.D.C. 2005) ........................ 10

*United States v. Brown*, 381 U.S. 437 (1965) .......................................................................... 14

*United States v. Lovett*, 328 U.S. 303 (1946) .......................................................................... 14

*United States v. Winstar Corp.*, 518 U.S. 839 (1996) ............................................... 13, 14, 15

*Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985) ...................................... 6, 7

## FEDERAL STATUTES

Fed. R. Civ. P. 26(b)(3) .......................................................................................................... 10

R. Ct. Fed. Cl. 26(b)(3) .......................................................................................................... 10

U.S. Const. art. II § 3 .............................................................................................................. 9

**Electronically Filed on August 17, 2006**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:04cv1365 |
| vs. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**CHEVRON U.S.A. INC.'S RESPONSE TO GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRIVILEGE CLAIMS**

Plaintiff Chevron U.S.A. Inc. respectfully submits this memorandum in response to the Government's assertion of privilege with respect to documents identified in the Government's privilege log and submitted to the Court on August 11, 2006, for *in camera* review.

**BACKGROUND**

As this Court is aware, the Department of Energy ("DOE"), without notice to Plaintiff Chevron U.S.A. Inc., recently asked Congress for legislation targeted directly at the Elk Hills equity finalization process that is the subject matter of this lawsuit. The most recent legislative proposal targets, even more directly than the original one, the contractual equity finalization rights that Chevron is seeking to vindicate in this Court. Specifically, the new language abrogates Chevron's unambiguous contract right to have the Independent Petroleum Engineer ("IPE") reconsider, based on comments by Chevron and DOE, its 2002 provisional recommendation for final equity interests in the Shallow Oil Zone—unless Chevron accepts broad immunization of the IPE. That new language was included in the Department of Defense appropriations bill, S. 2766,

that was passed by the Senate on Thursday, June 22, and is in the process of being conferenced with the corresponding appropriations bill passed by the House of Representatives.

By all appearances, DOE has engaged in a highly unusual, improper, and possibly vindictive attempt to use federal legislation to alter its rights and obligations under a single contract with Chevron—a contract that concerns only the payment of money and implicates no regulatory or other legitimate policy interest. That effort, moreover, directly affects this lawsuit. If DOE finalizes equity interests based on the IPE's provisional recommendation, rather than on a final recommendation, DOE will yet again violate the Equity Process and Decoupling Agreements that are the basis of Chevron's current breach-of-contract claims. DOE's effort to obtain the same result through legislation is a misguided attempt to undermine Chevron's ability to obtain relief for any such breach in this forum.

On June 13, 2006, this Court—noting the potential impact of the proposed legislation on this lawsuit—granted Chevron's motion for expedited discovery, including depositions of DOE officials, on the subject of the proposed legislation, particularly in light of NSAI's position that it, as the purported beneficiary, viewed the original proposed legislation as unconstitutional. *See, e.g.*, Transcript of June 13, 2006 phone conference at 24 (the Court: "I am having a little bit of difficulty understanding how legislation is introduced by the Secretary of the Department of Energy when the person who is the beneficiary claims they don't want it. . . . [I]f the Secretary doesn't have time to [write a letter withdrawing the request for legislation], then it seems to me that we're going to have an opportunity to have a deposition begin at least on Friday").

However, on June 16, 2006, during the deposition of DOE representative Gary Latham, the Government asserted the deliberative process privilege, the attorney-client privilege and the attorney work-product privilege, and refused to respond to any questions pertaining to the proposal

of the legislation, including internal DOE discussions of the goals and timing of the legislation. The Government also indicated at the time that the same objection would be asserted at depositions of any other DOE official. *See* Transcript of Deposition of Gary Latham, June 16, 2006, at 34.

On June 28, 2006, this Court ordered the deposition of a DOE official to serve as a Rule 30(b)(6) witness with respect to the topics concerning DOE's legislative attempts to interfere with the equity finalization process, including DOE's originally proposed legislation and the currently pending legislation. On June 30, 2006, John Kosloske, counsel for the Government, informed the Court and counsel for Chevron that the designated witness would be Mary Ann Masterson, DOE's Assistant General Counsel for Procurement. Ms. Masterson's deposition was scheduled for July 6, 2006. On July 3, 2006, this Court determined that it would review *in camera* documents regarding these legislative proposals that are responsive to Chevron's document requests and regarding which the Government has asserted claims of privilege(s). On July 5, 2006, the day prior to the scheduled Masterson deposition, the Government informed the Court that it required substantial additional time to evaluate and receive approvals for its planned assertions of privilege over the responsive documents. At that time, the Court determined to provide the Government additional time with respect to assertions of privilege and ordered that the Government provide Chevron with all responsive non-privileged documents concerning the legislative proposals; the Court also determined that the Masterson deposition would proceed under seal on July 6 and could be continued after the Court rules on the Government's privilege claims.

In light of the non-privileged responsive documents produced by the Government and the deposition of Ms. Masterson, Chevron requested that the Court order the deposition of Mary Egger, Deputy General Counsel of DOE, who apparently had much greater involvement in and knowledge of DOE's legislative proposals than Ms. Masterson. On July 10, 2006, the Court

determined that a deposition of Ms. Egger as to the legislation would go forward after the Court had evaluated the Government's privilege claims and examined the withheld documents *in camera*.

On August 11, 2006, the Government submitted documents to the Court for *in camera* review and a privilege log in response to Chevron's June 13, 2006 request for production of documents concerning the legislative proposals, asserting the deliberative process, attorney-client and/or attorney work product privileges.

Ms. Egger's deposition is scheduled to go forward on August 24, 2006, at 10 am.

## ARGUMENT

The Government has asserted deliberative process, attorney-client and attorney work-product privileges with respect to the documents listed in its privilege log. Chevron does not contest that the majority of documents would qualify as protected under the deliberative process, attorney-client or work-product privileges under the threshold requirements for application of those protections. Nor does Chevron dispute the legitimacy of the purposes for the deliberative process privilege or the propriety of shielding qualifying documents in most circumstances.

However, in this case, which involves Government attempts to use the legislative process to interfere with ongoing litigation and Chevron's contract rights, the government misconduct exception to the three privileges renders the majority of documents at issue unprotected and subject to disclosure. As the D.C. Circuit, which has handled the majority of privilege claims asserted by the Federal Government, has explained in several thorough and thoughtful opinions on the subject, the deliberative process, attorney-client, and attorney work product protections are inapplicable where a party has raised a serious question of government misconduct and has credibly alleged that the documents at issue have a connection to the asserted misconduct. As is

fully explained below, Chevron has raised a serious question of government misconduct that defeats the application of the privileges invoked by the Government.

## I. The Government Misconduct Exception Prohibits the Government From Shielding from Disclosure Documents Linked to Substantial Allegations of Government Misconduct

The government misconduct exceptions to the deliberative process, attorney-client and attorney work product privileges prevent the Government from shielding from disclosure materials related to subjects about which there exist serious questions of government misconduct.

### A. The Deliberative Process Privilege Is Inapplicable Where There Exist Serious Questions of Government Misconduct

The Government correctly notes that to be covered by the deliberative process privilege at a threshold level, material must be both "predecisional" and "deliberative." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997). "[A] showing of compelling need can overcome the qualified deliberative process privilege." *Marriott International Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006) (noting that the court may conduct in-camera review of documents under the qualified privilege).

In addition, there is a government misconduct exception, which applies where there is "*some reasonable basis* for believing that compelling testimony on these questions *may* shed *some* light on potential government misconduct." *Alexander v. FBI*, 186 F.R.D. 170, 179 (D.D.C. 1999) (emphases added). Evidence that the actions resulting from the deliberative process at issue embodied misconduct negates the basis for the privilege claim, and thus, "[t]he privilege *disappears altogether* when there is *any* reason to believe government misconduct occurred." *In re Sealed Case*, 121 F.3d at 746 (emphasis added). Therefore, no balancing of competing interests is any longer necessary. *Id.*; *see also In Re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1425 (D.C. Cir. 1998) (no balancing required);

*Alexander*, 186 F.R.D. at 177-78 ("[T]he Department of Defense's argument that the court must undertake a balancing of the plaintiffs' versus the public's interest in terms of protecting alleged misconduct must be rejected.").

Applying this exception, in *Subpoena Duces Tecum*, the D.C. Circuit rejected the Comptroller's assertion of the deliberative process privilege against a trustee in bankruptcy for The Bank of New England Corporation, who claimed that the FDIC had impermissibly pressured the Corporation to provide downstream assets to its subsidiary, the Bank of New England, N.A., to reduce the losses that the FDIC would incur as the receiver. 145 F.3d at 1423. In *Dominion Cogen, D.C., Inc. v. District of Columbia*, 878 F. Supp. 258 (D.D.C. 1995), the court denied defendants' motion for a protective order, on the ground that plaintiffs' allegations that their permits were denied for impermissible political reasons "raise[d] questions of governmental misconduct and place the deliberative process itself directly in issue." *Id.* at 268.

The Government does not cite any contrary authority. While the Government does discuss *First Heights Bank, FSB v. United States*, 46 Fed. Cl. 312 (2000), and *Zenith Radio Corp. v. United States*, 764 F.2d 1577 (Fed. Cir. 1985), in a footnote, Gov. Mem. at 24 n.12, neither case deals with the government misconduct exception to the application of privilege. *First Heights Bank* did not involve an argument that the government misconduct exception applied and did not address the authority underlying that exception. Instead, *First Heights Bank* simply held that there is no "an automatic bar on assertions of deliberative process privilege in any case where the Government's *intent* is *potentially relevant*." 46 Fed. Cl. at 322 (emphasis added). Here, the issue is not merely whether the government's intent may be relevant. Rather, it is already plain that the Government has engaged in affirmative misconduct by proposing legislation that would interfere with ongoing litigation and with rights guaranteed by contracts executed by the Government. Thus,

the issue in this case is whether that already-established conduct triggers the government misconduct exception to the assertion of privilege.

Similarly, *Zenith Radio Corp.*, 764 F.2d 1577, addressed the very different and narrow question of whether a party seeking judicial relief "automatically" waives whatever privilege it has "simply by bringing suit." Not surprisingly, the court in *Zenith* found that bringing suit does not always require a waiver of privilege. The case has nothing to do with the government misconduct exception to claims of privilege and does not hold that balancing is required where a party asserts government misconduct to defeat the deliberative process privilege. It did not involve allegations of government misconduct or in any way purport to address the government misconduct exception to privilege claims.

It is also important to note that while, as a general matter, this Court may conduct an *in camera* review of documents that the Government asserts are privileged to determine whether a document is predecisional and deliberative and whether the opposing party has sufficiently demonstrated a "compelling need" to nevertheless warrant disclosure, *see Marriott*, 437 F.3d at 1307, courts do not always need to determine whether the government misconduct exception applies on a document-by-document basis. Rather, if a sufficient showing of misconduct has been made, the relevant authorities hold that the privilege is forfeited for all materials that "may shed light" on that misconduct, even if a particular document does not directly contain incriminating evidence. *See, e.g., Alexander*, 186 F.R.D. at 177-78.

### B. The Attorney-Client Privilege Does Not Apply Where Materials Relate To Policy Advice Or Where There Are Substantial Allegations Of Government Misconduct

"The attorney-client privilege protects the confidentiality of communications between an attorney and client made for the purpose of obtaining legal advice." *In re Echostar Communications Corp.*, 448 F.3d 1294, 1300 (Fed. Cir. 2006). However, as a threshold matter,

"only communications that seek legal advice from a professional legal adviser in his capacity as such are protected." *In re Lindsey*, 158 F.3d 1263, 1270 (D.C. Cir. 1998); *Texaco Puerto Rico, Inc. v. Department of Consumer Affairs*, 60 F.3d 867 (1st Cir. 1995) ("The attorney-client privilege attaches only when the attorney acts in that capacity."). Thus, where counsel was charged with "policymaking authority" to such an extent "that counsel ceased to function as lawyers and began to function as regulators," a government agency was not permitted to invoke the attorney-client privilege. *Id. See also In re Lindsey*, 158 F.3d at 1270 ("Thus, Lindsey's advice on political, strategic, or policy issues, valuable as it may have been, would not be shielded from disclosure by the attorney-client privilege."). Where "it [wa]s not clear whether the addressees [of documents] [including high-ranking official in the General Counsel's office] were acting in their capacities as attorney-advisors or as regulatory decision-makers," the privilege did not apply. *Mobil Oil Corp. v. DOE*, 102 F.R.D. 1, 9 (N.D.N.Y. 1983). And "[a] document does not come within the attorney-client privilege merely by being forwarded to or routed through the counsel's office." *Id.* at 9-10. *Cf. Pacific Gas and Electric Co. v. United States*, 69 Fed. Cl. 784, 811 (2006) ("For the privilege to apply, legal advice must predominate. The privilege does not apply where legal advice is incidental to business advice."). In sum, "the attorney-client privilege must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *In re Lindsey*, 158 F.3d at 1272 (quoting *In re Sealed Case*, 676 F.2d 793, 807 n.44 (D.C. Cir. 1982)).

Moreover, even "[c]ommunications otherwise protected by the attorney-client privilege are not protected if the communications are made in furtherance of a crime, fraud, or other misconduct." *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) (citing, *inter alia*, *Clark v. United States*, 289 U.S. 1, 14 (1933)). In fact, this misconduct exception is particularly important and is interpreted broadly when the information is sought from the government. "[G]overnment

attorneys stand in a far different position from members of the private bar. . . . The constitutional responsibility of . . . all members of the Executive Branch, is to 'take Care that the Laws be faithfully executed.' U.S. Const. art. II § 3." *In re Lindsey*, 158 F.3d at 1272. "This view of the proper allegiance of the government lawyer [to the people in our democracy] is complemented by the public's interest in uncovering illegality among its elected and appointed officials." *Id.* at 1273.

### C. The Attorney Work-Product Privilege Does Not Apply To Materials Related To Legislative Efforts Or Where There Are Substantial Allegations of Government Misconduct

The attorney work-product privilege generally permits a party to shield from disclosure documents prepared in contemplation of litigation – but not in pursuit of a legislative enactment. It does not protect from disclosure documents implicated in crime, fraud, or other misconduct.

The work-product doctrine "has been uniformly held to be limited to documents prepared *in contemplation of litigation*." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 864 (D.C. Cir. 1980) (emphasis added) (rejecting Department of Energy's claim to work product protection for majority of documents because "DOE failed to establish that any of the remaining documents were prepared in apprehension of litigation"); *Mobil Oil Corp. v. Dep't of Energy*, 102 F.R.D. 1, 11-12 (N.D.N.Y. 1983) (rejecting DOE's claim of work product protection for two documents because the documents contained "no specific mention of the litigation and no discussion of legal theories or strategy regarding the pending litigation").

As this Court has held, "materials prepared in the ordinary course of business or pursuant to regulatory requirements or for other non-litigation purposes are not documents prepared in anticipation of litigation within the meaning of Rule 26(b)(3)." *Pacific Gas & Electric Co.*, 69 Fed. Cl. at 790. When it is difficult to discern whether documents were prepared "in anticipation of litigation," the "preferred approach gives protection only to those documents or portions of

documents that were prepared principally to assist in anticipated adversarial proceedings." *Id.* at 792. For example, when a party has attempted to shield documents prepared by attorneys in lobbying for legislation, courts have recognized that such activity is "not equivalent to litigation nor subject to the work-product immunity." *P. & B. Marina v. Logrande*, 136 F.R.D. 50, 59 (E.D.N.Y. 1991). Indeed, the court in *P. & B. Marina* held that there was no work product protection for documents prepared by a lobbyist because they were "not directed towards anticipated litigation but rather towards *non-litigation means that could achieve the same results in lieu of litigation*." *Id.* (emphasis added).

Moreover, even if certain documents were prepared in anticipation of litigation, the federal rules specifically provide that the work product privilege may be overcome by a showing that the party "seeking discovery has substantial need of the materials in preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3); R. Ct. Fed. Cl. 26(b)(3). *See also In re Echostar Commc'ns Corp.*, 448 F.3d at 1301-02 ("the work-product doctrine is not absolute"; "a party may discover certain types of work product" if they meet the substantial need and undue hardship test).

Finally, even if the work product privilege arguably applies to certain documents, it does not apply in light of evidence of government misconduct. To defeat application of the privilege, "there must be a prima facie showing of a violation sufficiently serious to defeat the work-product privilege" and a "valid relationship between the work product [at issue] and the prima facie violation." *Tri-State Hosp. Supply Corp. v. United States*, 226 F.R.D. 118, 133 (D.D.C. 2005). This exception even defeats the heightened protection afforded work product reflecting the mental impressions, conclusions or opinions of an attorney. *See In re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982) ("[A]n attorney's opinion work product cannot be privileged if the work was

performed in furtherance of a crime, fraud, or other type of misconduct fundamentally inconsistent with the basic premises of the adversary system.").

## II. Chevron Has Sufficiently Alleged Government Misconduct To Defeat Application Of The Privileges Asserted By The Government Here

In this case, it is plain that government misconduct has occurred with respect to the proposed legislation. The only issue is the precise nature and extent of that misconduct. Chevron has made specific and sufficient allegations regarding the relevance of the materials at issue to the Government's misconduct in this case. Indeed, the pending legislation would not only violate Chevron's contractual rights but would also violate Chevron's constitutional rights in several ways. Accordingly, the Government's assertions of privilege should be rejected.

### A. The Government Has Plainly Engaged In Misconduct By Introducing Legislation That Would Interfere With Ongoing Litigation And Deprive Chevron Of Its Contractual And Constitutional Rights

Government misconduct is directly at issue here and has plainly taken place with respect to the process of proposing the currently-pending legislation. *First*, the Government has tried to interfere with the integrity of ongoing litigation by introducing and lobbying for the currently-pending legislation since the Government has been well aware of this case and of the possibility that Chevron's claims for liability would extend to *ex parte* communications between DOE and the IPE. By initially attempting retroactively and prospectively to insulate the IPE from all liability with respect to its work on Elk Hills, the Government was plainly interfering with Chevron's ability to pursue remedies against the IPE similar to those already being pursued against DOE. Moreover, the revised legislation would place Chevron in the untenable position of either abandoning critical contract rights under the UPC and EPA concerning the equity finalization process, or allowing itself to be coerced into waiving any claims it may have against the IPE, similar to those pending against DOE.

*Second*, at the same time, it interferes with handling of the present litigation, the proposed legislation would also undermine Chevron's contractual rights under the UPC and the EPA. Chevron's contracts with the Government guarantee a fair and equitable process for the resolution of the parties' equity interests in the Elk Hills field. Paramount among the procedural rights guaranteed to Chevron under the EPA is the prohibition on *ex parte* communications between the DOE equity team and adjudicative personnel and between the parties and the IPE. The Government's initial legislative proposal would have undermined Chevron's right to a process free from such *ex parte* communications by retroactively and prospectively immunizing the IPE from all liability, including from engaging in prohibited *ex parte* communications. The Government's pending legislative proposal goes even further and puts at issue Chevron's basic rights to have a full consideration with input from the parties of the IPE's initial recommendation with respect to the very important Shallow Oil Zone of the Elk Hills field.

*Third*, for all the same reasons, the proposed legislation is yet another example of DOE's breach of its duties of good faith and fair dealing with respect to its contract partner under the UPC and the EPA. DOE has attempted to short-circuit the present litigation and arm-twist Chevron into relinquishing its rights under the UPC and EPA, by unilaterally communicating with Congress seeking legislation that would interfere with this lawsuit and Chevron's contractual rights. This is a pattern of conduct that is unbecoming at best. These actions plainly constitute the kind of misconduct that should render inapplicable the privileges that the Government now asserts.

*Fourth*, the pending legislation would be unconstitutional on several grounds – it would violate Chevron's due process guarantees to be free from interference with its contractual rights, it would constitutes a bill of attainder, and it would amount to a taking without just compensation.

**Due process/*Winstar* violation.** The courts have regularly held that the Government violates the due process rights of private parties when it seeks to modify its preexisting contractual obligations. In *Lynch v. United States*, 292 U.S. 571 (1934), the Court held that Congress could not cancel government war risk life insurance policies, as it had attempted to do in 1933 because of the Depression crisis. More recently, in *United States v. Winstar Corp.*, 518 U.S. 839 (1996), the Court held that when savings and loan associations ("S&Ls") were promised favorable accounting treatment if they acquired failing thrifts, a cause of action for deprivation of the S&Ls' rights arose when Congress amended the law to prohibit such accounting treatment. The Court recognized that "the Constitution 'bar[s] Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole,'" and thus the Government may not "simply shift costs of legislation onto its contractual partners who are adversely affected by the change in the law, when the Government has assumed the risk of such change." *Id.* at 883. The Court explained that the Federal Home Loan Bank Board, by making an unconditional promise in a regulated setting where some legal change was foreseeable, assumed the risk of that change. Citing *Lynch*, 292 U.S. at 579, the Court observed: "[A]llowing the Government to avoid contractual liability merely by passing any 'regulatory statute' would flout the general principle that, 'when the United States enters into contract relations, its rights and duties therein are governed generally by the law applicable to contracts between private individuals.'" *Winstar*, 518 U.S. at 895.

*Winstar* is directly applicable here. Through the proposed legislation, DOE is attempting to target directly the contractual equity finalization rights that Chevron is seeking to vindicate in this Court. Specifically, the new language abrogates Chevron's unambiguous contract right to have the IPE fully evaluate, based on comments by the parties, its 2002 provisional

recommendation for final equity participations in the Shallow Oil Zone—unless Chevron accepts broad immunization of the IPE. Just as in *Winstar*, where the government's promise to apply the accounting rules was essential to induce Winstar to acquire a failing bank, the government's promise here to follow the process specified by its contracts with Chevron was essential to induce Chevron to facilitate the Government's sale of its share of the Elk Hills field. *See id.* at 921.

**Bill of attainder.** The legislation here also amounts to an impermissible bill of attainder. In *Selective Service System v. Minnesota Public Interest Research Group*, 468 U.S. 841 (1984), the Court described a "bill of attainder," Art. I § 9 cl. 3, as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provisions of the protections of a judicial trial." *Id.* at 846-47. In deciding whether a statute inflicts forbidden punishment, courts consider "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes; and (3) whether the legislative record evinces a congressional intent to punish." *Id.* at 852. The Supreme Court found that Congress has violated the prohibition on bills of attainder where Congress passed a measure that prevented the payment of salaries to three named federal employees because the House of Representatives believed them to be subversives, *United States v. Lovett*, 328 U.S. 303 (1946), and where a law declared unlawful the employment of a member of the Communist Party in a labor union, *United States v. Brown*, 381 U.S. 437 (1965).

Recently, the D.C. Circuit invalidated legislation as a bill of attainder in *Foretich v. United States,* 351 F.3d 1198 (D.C. Cir. 2003), which arose after Congress passed an act to nullify a court decision granting visitation rights to a father accused of sexual abuse. The court found that the Act had targeted a specific person, despite its "fleeting hint of neutrality" (referring to "any pending

case involving a minor child"), and that the Act imposed "punishment" under the meaning of *Selective Service System* because it marked Dr. Foretich with a brand of infamy and because there existed an extraordinary imbalance between the burden imposed and nonpunitive purpose. "[T]he fact that Dr. Foretich was singled out for this severe burden belies the claim that Congress's purposes were nonpunitive." *Id.* at 1224. The court noted that there was an obvious intent to punish, *i.e.*, to "correct an injustice," as revealed by legislative history. *Id.* at 1225.

Here, the pending legislation falls squarely within the definition of a bill of attainder. *First*, overriding a bundle of contractual rights is a legislative punishment. *See, e.g., Winstar*, 518 U.S. at 895. *Second*, there is no non-punitive purpose for the legislation; rather, the plain purpose and effect of the legislation is to directly target Chevron and to deprive it of bargained-for contractual rights because of DOE's displeasure with Chevron's initiation of this lawsuit and refusal to agree to a retroactive waiver of any liability for the IPE's work with respect to Elk Hills. *Third*, the legislation is aimed directly at Chevron; there is no other entity mentioned in the statute; indeed, there is not even a "fleeting hint of neutrality" as there was in *Foretich*.

**Taking without just compensation/substantive due process**. The proposed legislation also amounts to a taking without just compensation and/or a due process violation. In *Eastern Enterprises v. Apfel*, 524 U.S. 498 (1998), the Court invalidated provisions of the Coal Industry Retiree Health Benefit Act of 1992 that required companies that had previously employed coal miners to bear a certain portion of the miners' health care costs in retirement, even if they had long since left the business and even if they had not been signatories to the federally-brokered labor-management agreements for covering such costs. Four justices, expressing "concerns about using the Due Process Clause to invalidate economic legislation," found the provision imposing this retroactive liability to be a regulatory taking subject to the Just Compensation Clause of the

Fifth Amendment. This plurality found satisfied three factors traditionally considered in determining whether economic regulation constitutes a taking: The economic impact was substantial, as Eastern was deprived of the $50 to $100 million it must pay to the Combined Fund; the Act substantially interfered with Eastern's reasonable investment-backed expectations; and the nature of the governmental action was unusual in that Congress's solution to the grave funding problem that it had identified singled out certain employers to bear a substantial burden, based on the employers' conduct far in the past and unrelated to any commitment that the employers made or to any injury they caused. *Id.* at 529-37. Supplying the fifth vote, Justice Kennedy found that the Act violated the substantive implications of the Due Process Clause: "[If] retroactive laws change the legal consequences of transactions long closed, the change can destroy the reasonable certainty and security which are the very objects of property ownership. As a consequence, due process protection for property must be understood to incorporate our settled tradition against retroactive laws of great severity." *Id.* at 547 (Kennedy, J., concurring in part, dissenting in part).

In this case, the legislation would effect a regulatory taking by stripping away Chevron's contractual rights. As in *Eastern Enterprises*, the economic impact of the legislation on Chevron would be substantial; the legislation would substantially interfere with Chevron's reasonable contract-based expectations; and the nature of the governmental action would be unusual in that Congress would be targeting Chevron directly and stripping it of contractual rights that were negotiated at arms-length decades ago. *See id.* at 529-37.

### B. This Government Misconduct Renders Inapplicable The Privileges Asserted By the Government Here

**The Deliberative Process Privilege.** The deliberative process privilege does not support DOE's request for protection of materials relating to the proposed legislation. Under the government misconduct exception, Chevron is entitled to discover the extent to which DOE is

impermissibly seeking through the proposed legislation to retaliate against Chevron for filing this lawsuit and resisting blanket, retroactive immunity for the IPE, to abrogate its contractual responsibilities under the Equity Process and Decoupling Agreements relating to the recommendations of the IPE, and to interfere with this Court's jurisdiction over breaches of the Government's contracts with Chevron. Chevron has amply demonstrated that there is a serious question as to Government misconduct with respect to DOE's legislative proposals. This case is therefore critically different from *Hinckley v. United States*, 140 F.3d 277 (D.C. Cir. 1998), relied upon by the Government (Gov. Mem. at 21-22), where the court had found that Hinckley had not made a "colorable showing" that any government misconduct had occurred.

Accordingly, the documents for which the Government has asserted the deliberative process privilege should be disclosed. The Government has categorized these documents into two main groups. *See* Gov. Mem. at 13-14. Both groups – by and between DOE officials and by and between DOE officials and officials of other agencies involved in the OMB clearing process – all relate to the legislative proposals and are presumptively subject to disclosure. Chevron has demonstrated a serious question of government misconduct with respect to the legislative proposals. To be sure, Chevron agrees that materials such as OMB reviews of proposed legislation would ordinarily be protected from disclosure. But when such reviews are of legislation that plainly would interfere with ongoing litigation and would deprive a contracting partner of its contractual and constitutional rights, such reviews should not be protected from disclosure. Put another way, the Government does not have a legitimate interest in protecting a deliberative process that has been used for improper actions by a government agency. For the same reasons, the drafts of the Secretary's correspondence with Congress, as well as notes concerning the DOE IPE legislative proposals, should also be disclosed.

**Attorney-Client Privilege.** In this case, DOE's assertion of attorney-client privilege cannot shield the evidence sought by Chevron. *First*, DOE has failed to show that the communications at issue were made by DOE and DOJ officials in their capacity as attorneys, rather than as policy makers, and thus, the material is presumed not to be covered by the attorney-client privilege. *See, e.g., In re Lindsey,* 158 F.3d at 1270; *Mobil Oil Corp.*, 102 F.R.D. at 9. *Second*, given the abundant evidence of DOE's misconduct throughout the equity finalization process, the crime-fraud-misconduct exception applies and defeats assertion of privilege here. Accordingly, the materials in both groups identified by the Government (electronic mail messages from the Office of Legislative Affairs, DOJ to DOJ Civil Division and electronic mail messages between DOE and DOJ), *see* Gov. Mem. at 26-27, are also presumptively subject to disclosure.

**Attorney Work Product Privilege.** With respect to work-product privilege, the materials that the Government has identified – emails from Paul Michael to DOE employees regarding the lawsuit – *see* Gov. Mem. at 31, could be entitled to threshold privilege protection so long as they do indeed concern litigation and are not part of DOE's lobbying effort. However, under the government misconduct exception, Chevron is entitled to disclosure because of the Government's misconduct in pursuing the legislation, which is the apparent subject of the identified materials.

## CONCLUSION

For the foregoing reasons, the Court should deny the Government's request for protection of the asserted documents, and should require that those documents be disclosed and that the Government's Rule 30(b)(6) witnesses testify about those documents.

Dated: August 17, 2006

Respectfully submitted,

s/ Lawrence D. Rosenberg

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*