# DEFENDANT'S APPENDIX

# INDEX TO DEFENDANT'S APPENDIX

**Document** **Page**

Pretrial and Trial Schedule dated August 22, 2006 .......................................................... 1

"Plaintiff's First Request for Production of Documents" dated September 22, 2006 ... 4

"Plaintiff's First Set of Interrogatories" dated September 22, 2006 ............................. 12

# In the United States Court of Federal Claims

No. 04-1365C
Filed August 22, 2006

***********************************
CHEVRON U.S.A., INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.
***********************************

## PRETRIAL AND TRIAL SCHEDULE

The July 28, 2006 Joint Motion to Adopt Pretrial and Trial Schedule is hereby **GRANTED.** By agreement of the parties, the court enters the following schedule:

1. <u>Bifurcation of Liability and Damages Proceedings</u>

The proceedings upon liability and damages, including discovery and trial, shall be bifurcated.

2. <u>Fact Discovery (Liability Issues)</u>

(a) The initial disclosures required by RCFC 26(a)(1)(A) & (B) shall be served on or before August 21, 2006.

(b) All fact discovery, including, but not limited to, requests for production of documents, interrogatories, and depositions of fact witnesses shall be completed on or before February 16, 2007.

(c) Interrogatories. Without leave of the court, Plaintiff and Defendant each shall be limited to fifty (50) interrogatories (including all discrete subparts) and twenty-five (25) supplemental interrogatories pursuant to RCFC 33.

(d) Requests for Admission. Without leave of the court, Plaintiff and Defendant each shall be limited to fifty (50) requests for admission and twenty-five (25) supplemental requests for admission pursuant to RCFC 36.

(e) Depositions. Without leave of the court, Plaintiff and Defendant each shall be limited to twenty-five (25) depositions of fact witnesses.

3. Expert Discovery (Liability Issues)

(a) Designation of Experts. The parties shall identify each expert, as required by RCFC 26(a)(2)(A), and, for each expert, shall provide the expert's qualifications, the expert's field of expertise, and the subject matter of the expert's testimony on or before November 22, 2006.

(b) Reports. The disclosures of expert testimony required by RCFC 26(a)(2)(B) shall be made on or before December 15, 2006.

(c) Rebuttal Reports. The disclosure required by RCFC 26(a)(2)(C) of any evidence intended solely to contradict or rebut evidence on the same subject matter identified be Plaintiff or Defendant pursuant to RCFC 26(a)(2)(B) shall be made on or before January 26, 2007.

(d) Depositions of Experts. Depositions of any person(s) identified by Plaintiff or Defendant pursuant to RCFC 26(a)(2)(A) shall be completed on or before February 16, 2007.

4. Meeting of Counsel

Plaintiff's counsel and Defendant's counsel shall meet to satisfy the requirements of Appendix A, ¶ 13, including the exchange of exhibit and witness lists, on or before February 23, 2007.

5. Dispositive Motions (Liability Only)

Any motion(s) pursuant to RCFC 12 and/or 56 shall be filed on or before February 23, 2007.

6. Pretrial Submissions

(a) Plaintiff and Defendant shall file their pretrial memoranda with respect to liability issues, witness lists, exhibit lists, any motions to present substantive evidence by way of deposition testimony (other than as provided in Fed.R.Evid. 801(d)) pursuant to Appendix A, ¶¶ 14(a), 15(a), and 16, and any other pretrial motions on or before March 30, 2007.

(b) Plaintiff and Defendant shall file any responses to the documents and motions enumerated in subparagraph (a) on or before April 10, 2007.



2

7. Pretrial Conference

A pretrial conference will be held in Washington, D.C., at 2:00 p.m. on Tuesday April 24, 2007.

8. Trial of Libility

A trial of liability issues shall be held during the week of April 30-May 4, 2007, beginning at 10:00 a.m. on Monday, April 30, 2007. The trial will be held at the National Courts Building, 717 Madison Place N.W., Washington, D.C. 20005.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:04cv1365 |
| vs. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Court of Federal Claims Rule 34, plaintiff requests that the United States Department of Energy ("DOE") produce for inspection and/or copying the documents described below within 30 days after service.

**DEFINITIONS AND INSTRUCTIONS**

**A. Definitions**

The following terms shall have the following meanings as used herein:

1. "ASFE" means the DOE's Assistant Secretary for Fossil Energy or the DOE's Principal Deputy Assistant Secretary for Fossil Energy.

2. "Chevron" means Chevron U.S.A. Inc. and all past or present affiliates, subsidiaries, groups, divisions, employees, agents, directors, attorneys, representatives, and all other entities owned or controlled by Chevron U.S.A. Inc.

3. "Chevron's FOIA Requests" means the requests made of DOE by Chevron pursuant to the Freedom of Information Act on January 7, 2003 and February 19, 2004.

4. "Communication" means any oral or written exchange of words, thoughts or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by telex or by any other process, electronic or otherwise. All such communications in writing shall include, without limitation, printed, typed, handwritten, or other readable documents, whether in

hardcopy, electronic mail or stored electronically on a computer disk or otherwise, contracts, correspondence, diaries, drafts (initial and all subsequent), forecasts, invoices, logbooks, memoranda, minutes, notes, reports, statements, studies, surveys and any and all non-identical copies thereof.

5. "Concern," "concerning," "relating to," or "relate to" means refer to, regard, concern, describe, explain, state, evidence, record, constitute, pertain to, reflect, comprise, contain, embody, mention, show, support, contradict, and discuss, whether directly or indirectly, as required by the context to bring within the scope of the requests in this request for production of documents any documents that might be deemed outside their scope by another construction.

6. "Decoupling Agreement" means the Agreement Regarding Fixing of Equity Interest at Naval Petroleum Reserve No. 1 for Purposes of Sale (May 19, 1997).

7. "Documents" means all original written, recorded, or graphic matters whatsoever, and any and all non-identical copies thereof, including but not limited to advertisements, affidavits, agreements, analyses, applications, appointment books, bills, binders, books, books of account, brochures, calendars, charts, checks or other records of payment, communications, computer printouts, computer stored data, conferences, or other meetings, contracts, correspondence, diaries, electronic mail, evaluations, facsimiles, files, filings, folders, forms, interviews, invoices, jottings, letters, lists, manuals, memoranda, microfilm or other data compilations from which information can be derived, minutes, notations, notebooks, notes, opinions, pamphlets, papers, photocopies, photographs or other visual images, policies, recordings of telephone or other conversations, records, reports, resumes, schedules, scraps of paper, statements, studies, summaries, tangible things, tapes, telegraphs, telephone logs, telex messages, transcripts, website postings, and work papers. A draft or non-identical copy is a separate document within the meaning of this term

8. "DOE" means the United States Department of Energy.

9. "Elk Hills Equity Redetermination and/or Finalization Process" means all actions taken by Chevron or DOE pursuant to or subsequent to passage of the 1996 Legislation (as defined below) in an effort to resolve the dispute between the parties as to their respective ownership rights in the commercially productive hydrocarbons found in the Elk Hills Reserve, including but not limited to proceedings before the ASFE regarding the Dry Gas Zone, the Carneros Zone, the Shallow Oil Zone, and the Stevens Zone.

10. "Equity Process Agreement" means the Agreement Regarding Equity Re-determination Process (May 19, 1997).

11. "FOIA" means the Freedom of Information Act.

12. The "1996 Legislation" means the National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 3412(a), 110 Stat. 631 (1996), 10 U.S.C. § 7420 (February 10, 1996).

13. "ILA" means any and all individuals or entities, including without limitation all employees, officials, attorneys, and representatives of such entities, that are serving or ever have served as the Independent Legal Advisor described in the 1996 Protocol and Supplements.

14. "IPE" means any and all individuals or entities, including without limitation all employees, officials, attorneys, and representatives of such entities, that are serving or ever have served as the Independent Petroleum Engineer described in the 1996 Legislation, the 1996 Protocol and Supplements, and the Equity Process Agreement and/or Decoupling Agreement.

15. "NSA" means Netherland, Sewell, & Associates, Inc., the petroleum consulting corporation that has served as the IPE pursuant to the 1996 Legislation, the 1996 Protocol and Supplements, and the Equity Process Agreement and/or Decoupling Agreement, and all of its present and former employees, officials, attorneys, and representatives.

16. "Subordinates" means any DOE employee over whom Mary Egger had or has direct or indirect supervisory authority.

17. "UPC" means the Unit Plan Contract (June 19, 1944)

18. The "1996 Protocol and Supplements" means the Administrative Order 96-01, Protocol on Naval Petroleum Reserve Number 1 Equity Finalization Implementation Process (July 8, 1996); the Supplement No. 1 to Administrative Order 96-01 (Legal Issues Protocol) (October 11, 1996); and the Supplement No. 2 to Administrative Order 96-01 (January 21, 1997).

19. The terms "and" and "or" shall mean "and/or."

20. Any word written in the singular shall include the plural and vice versa.

21. In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

**B. <u>Instructions</u>**

1. These requests seek responsive documents within DOE's possession or control or are otherwise available to DOE, its employees, agents, consultants, attorneys, and accountants, whether past or present.

2. All documents are to be produced as they are kept in the usual course of business, their relative order in such files, and how such files were maintained. All electronic files should be produced where possible in electronic form.

3. If any document once was but is no longer in DOE's possession, custody, or control, or was known to DOE, but is no longer in existence, please state, as to each document, its date, author(s), recipient(s) and what disposition was made of it or what became of it.

4. When an objection is made to any request or any subpart thereof, state with specificity the part or subpart of the document request considered to be objectionable and all grounds for the objection.

5. If DOE finds the meaning of any term in these document requests to be unclear, assume a reasonable meaning, state what that assumed meaning is, and respond to the request on the basis of that assumed meaning.

6. Each request for documents seeks production of the document in its entirety, without abbreviation or redaction, including all attachments or other matters affixed thereto.

7. With respect to each document that is withheld from production for any reason, or any portion of any document that has been redacted for any reason in connection with the production of a document, please provide a statement setting forth:

(a) its date;
(b) its title;
(c) its author;
(d) its addressee;
(e) the identity of each person who received and/or saw the original or any copy of such document;
(f) the specific privilege under which it is withheld;
(g) its general subject matter;
(h) its present custodian; and
(i) description of it that DOE contends is adequate to support the contention that it is privileged.

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

1. All documents responsive to Chevron's FOIA Requests that have not been previously produced, as well as complete and un-redacted copies of the redacted documents that have been previously produced in response to Chevron's FOIA Requests.

2. All documents relating in any way to the Elk Hills Equity Redetermination and/or Finalization Process that were drafted or reviewed by the ASFE, Gary Latham, Mary Egger, or Mary Egger's subordinates. This request includes without limitation the recommendations of the IPE, but not the technical appendices thereto.

3. All drafts of, or final versions of, or documents referring to draft or final versions of, or documents concerning communications regarding, the following decisions of the ASFE, including but not limited to drafts written, edited or reviewed in whole or in part, by Mary Egger or other DOE employees acting under her supervision or control:

(a) Preliminary and Final Decisions for the Dry Gas Zone (September 1997 and May 1998);
(b) Preliminary and Final Decisions for the Carneros Zone (November 1997 and May 1998);
(c) Preliminary Decision for the Shallow Oil Zone (March 1997);
(d) Preliminary and Final Decisions for the Stevens Zone (November 2001 and June 2002);
(e) Preliminary Decision for the Stevens Zone following remand (May 2006);
(f) Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For The Stevens Zone (September 1999).

4. All documents created after January 1, 1995 referencing Section 2(b) or Section 11(b) of the UPC and/or the rights established therein, not including submissions to or decisions of the ILA, IPE, ASFE, or the DOE Office of Hearings and Appeals that were made by or copied to Chevron.

5. All drafts of, or final versions of, or documents referring to draft or final versions of, or documents concerning communications regarding, the 1996 Legislation, the 1996 Protocol and Supplements, the Equity Process Agreement and/or Decoupling Agreement, the January 6, 1997 Settlement Agreement, or the May 7, 1997 Stevens Zone Settlement Agreement, and the document referred to by the parties as the "Communications Protocol" in or around July 1998.

6. All drafts of, or final versions of, or documents referring to draft or final versions of, documents evidencing each communication identified in response to Interrogatories 18 through 22.

7. All documents in any way concerning the permissibility or appropriateness of communications related to the Elk Hills Equity Redetermination and/or Finalization Process, including without limitation documents in any way concerning *ex parte* communications with the IPE or ILA, *ex parte* communications with the ASFE, or communications with the ASFE about procedural issues.

8. All documents in any way concerning the permissibility or appropriateness of procedures for the Elk Hills Equity Redetermination and/or Finalization Process, including without limitation all documents concerning the "cutoff" date for data presented to the IPE and/or the ASFE, concerning communications with the IPE and/or the ILA outside those specifically provided for in the 1996 Protocol and Supplements, concerning references to the Decoupling Agreement in presentations to the IPE, or concerning the handling of legal issues by the IPE.

9. All documents in any way concerning legal issues or other non-technical issues that employees, officials, attorneys, or representatives of either DOE or Chevron raised, or considered raising, with each other or with the ILA during the Elk Hills Equity Redetermination and/or Finalization Process.

10. All documents in any way concerning the procedure for and/or results of calculating payments under the Decoupling Agreement based on final equity participations.

11. All documents evidencing the identities of the employees who have reported to Mary Egger as part of her work on the Elk Hills Equity Redetermination and/or Finalization Process during her employment at DOE.

12. All documents evidencing the job responsibilities held by Mary Egger or her subordinates at DOE as part of their work on the Elk Hills Equity Redetermination and/or Finalization Process, including without limitation narrative portions of performance reviews that discuss such job responsibilities.

13. Documents supporting or undermining the DOE's denial of the allegation in Paragraph 41 of the complaint that during proceedings before the IPE, the ILA and the ASFE, Mary Egger "was in fact, and openly and consistently held herself out as and acted as, lead in-house counsel for the DOE equity team."

14. All memoranda that were drafted, edited, or reviewed by Mary Egger or other DOE employees acting under her supervision or control as part of assistance provided to the ASFE in reaching a Preliminary or Final Decision in the Elk Hills Equity Redetermination and/or Finalization Process.

15. Documents reflecting all communications between United States government officials during January 2003 to August 20, 2004 concerning DOE's response to Chevron's FOIA Requests.

16. All documents concerning any procedures employed by DOE to fulfill its obligations under Paragraph B.4 of the Equity Process Agreement, including without limitation written memoranda implementing ethical walls or describing guidelines for employees to follow to prevent *ex parte* communications.

17. All documents generated by the law firm of O'Melveny and Myers concerning the meaning or interpretation of Paragraph B.4 of the Equity Process Agreement, the permissibility or appropriateness of *ex parte* communications with the ASFE, the ILA, or the IPE, and/or the permissibility or appropriateness of any other communications between DOE and the IPE concerning the Elk Hills Equity Redetermination and/or Finalization Process.

18. All documents related to meetings and conference calls between DOE and Chevron at which Mary Egger or her subordinates participated, including but not limited to meetings in December 1996, January 1997, May 1997, April 1999, and October 2000.

19. All documents reflecting any continuing efforts by DOE to advocate for the passage of federal legislation that would immunize or indemnify the IPE, or otherwise affect the Elk Hills Equity Redetermination and/or Finalization Process.

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Dated: September 22, 2006

Counsel for Chevron U.S.A. Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2006, a true and correct copy of the foregoing **PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS** was served upon:

John E. Kosloske, Esq. **(By hand and email)**
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005
john.kosloske@usdoj.gov

Leslie Ohta **(By email)**
Trial Attorney
Commercial Litigation Branch
Civil Division,
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
leslie.ohta@usdoj.gov

Paul T. Michael **(By email)**
Of Counsel
Office of General Counsel
Department of Energy
Washington, D.C. 20585
paul.michael@hq.doe.gov

Lawrence Rosenberg

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, | ) | No. 1:04cv1365 |
| vs. | ) | Judge Susan G. Braden |
| UNITED STATES, Defendant. | ) | |

**PLAINTIFF'S FIRST SET OF INTERROGATORIES**

Plaintiff Chevron U.S.A. Inc. ("Chevron"), pursuant to Court of Federal Claims Rule 33, serves the following Interrogatories upon Defendant, the United States Department of Energy ("DOE"), to be answered under oath within 30 days after service. These Interrogatories are continuing and therefore may require supplemental responses.

**DEFINITIONS AND INSTRUCTIONS**

**A. Definitions**

The following terms shall have the following meanings as used herein:

1. "ASFE" means the DOE's Assistant Secretary for Fossil Energy or the DOE's Principal Deputy Assistant Secretary for Fossil Energy.

2. "Chevron" means Chevron U.S.A. Inc. and all past or present affiliates, subsidiaries, groups, divisions, employees, agents, directors, attorneys, representatives, and all other entities owned or controlled by Chevron U.S.A. Inc.

3. "Chevron's FOIA Requests" means the requests made of DOE by Chevron pursuant to the Freedom of Information Act on January 7, 2003 and February 19, 2004.

4. "Communication" means any oral or written exchange of words, thoughts or ideas to another person or entity, whether in person, in a group, by telephone, by letter, by telex or by any other process, electronic or otherwise. All such communications in writing shall include,

without limitation, printed, typed, handwritten, or other readable documents, whether in hardcopy, electronic mail or stored electronically on a computer disk or otherwise, contracts, correspondence, diaries, drafts (initial and all subsequent), forecasts, invoices, logbooks, memoranda, minutes, notes, reports, statements, studies, surveys and any and all non-identical copies thereof.

5. "Concern," "concerning," "relating to," or "relate to" means refer to, regard, concern, describe, explain, state, evidence, record, constitute, pertain to, reflect, comprise, contain, embody, mention, show, support, contradict, and discuss, whether directly or indirectly, as required by the context to bring within the scope of these interrogatories any information that might be deemed outside their scope by another construction.

6. "Decoupling Agreement" means the Agreement Regarding Fixing of Equity Interest at Naval Petroleum Reserve No. 1 for Purposes of Sale (May 19, 1997).

7. "DOE" means the United States Department of Energy.

8. "Elk Hills Equity Redetermination and/or Finalization Process" means all actions taken by Chevron or DOE pursuant to or subsequent to passage of the 1996 Legislation (as defined below) in an effort to resolve the dispute between the parties as to their respective ownership rights in the commercially productive hydrocarbons found in the Elk Hills Reserve, including but not limited to proceedings before the ASFE regarding the Dry Gas Zone, the Carneros Zone, the Shallow Oil Zone, and the Stevens Zone.

9. "Equity Process Agreement" means the Agreement Regarding Equity Re-determination Process (May 19, 1997).

10. "FOIA" means the Freedom of Information Act.

11. The "1996 Legislation" means the National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 3412(a), 110 Stat. 631 (1996), 10 U.S.C. § 7420 (February 10, 1996).

12. "Identify" means, with respect to an individual and except where otherwise specified, to state an individual's full name, business and residential addresses, business and residential telephone numbers, and relevant position of employment.

13. "ILA" means any and all individuals or entities, including without limitation all employees, officials, attorneys, and representatives of such entities, that are serving or ever have served as the Independent Legal Advisor described in the 1996 Protocol and Supplements.

14. "IPE" means any and all individuals or entities, including without limitation all employees, officials, attorneys, and representatives of such entities, that are serving or ever have

served as the Independent Petroleum Engineer described in the 1996 Legislation, the 1996 Protocol and Supplements, and the Equity Process Agreement and/or Decoupling Agreement.

15. "NSA" means Netherland, Sewell, & Associates, Inc., the petroleum consulting corporation that has served as the IPE pursuant to the 1996 Legislation, the 1996 Protocol and Supplements, and the Equity Process Agreement and/or Decoupling Agreement, and all of its present and former employees, officials, attorneys, and representatives.

16. "Subordinates" means any DOE employee over whom Mary Egger had or has direct or indirect supervisory authority.

17. "UPC" means the Unit Plan Contract (June 19, 1944).

18. The "1996 Protocol and Supplements" means the Administrative Order 96-01, Protocol on Naval Petroleum Reserve Number 1 Equity Finalization Implementation Process (July 8, 1996); the Supplement No. 1 to Administrative Order 96-01 (Legal Issues Protocol) (October 11, 1996); and the Supplement No. 2 to Administrative Order 96-01 (January 21, 1997).

19. The terms "and" and "or" shall mean "and/or."

20. Any word written in the singular shall include the plural and vice versa.

21. In case of doubt as to the scope of a clause including "and," "or," "any," "all," "each," and "every," the intended meaning is inclusive rather than exclusive.

**B. Instructions**

1. When an objection is made to any interrogatory or any subpart thereof, state with specificity the part or subpart of the interrogatory considered to be objectionable and all grounds for the objection.

2. If the meaning of any term in these interrogatories appears to be unclear, assume a reasonable meaning, state what that assumed meaning is, and answer the request on the basis of that assumed meaning.

3. With respect to any communication for which a privilege is being asserted, please identify the following:

(a) when and where the communication occurred;
(b) the name, title and job or position of each person who was present at or during the communication, whether or not such communication was in person or by some other method;
(c) a brief description of the communication's subject matter;
(d) the statute, rule or decision that is claimed to give rise to the privilege; and
(e) the name, title and job or position of all persons on whose behalf the privilege is asserted.

## PLAINTIFF'S FIRST SET OF INTERROGATORIES

1. Identify all DOE employees, officials, attorneys, or representatives who were or are involved in any way with drafting, advocating the passage of, or communicating regarding the 1996 Legislation, before and/or after its enactment, and describe the extent and nature of each individual's involvement.

2. Identify all DOE employees, officials, attorneys, or representatives who were or are involved in any way with drafting, negotiating, or communicating regarding the 1996 Protocol and Supplements, before and/or after their execution, and describe the extent and nature of each individual's involvement.

3. Identify all DOE employees, officials, attorneys, or representatives who were or are involved in any way with drafting, negotiating, or communicating regarding the Equity Process Agreement and/or the Decoupling Agreement, before and/or after their execution, and describe the extent and nature of each individual's involvement.

4. Identify all DOE employees, officials, attorneys, or representatives who were or are involved in any way with drafting, negotiating, or communicating regarding the January 6, 1997 Settlement Agreement, or the May 7, 1997 Stevens Zone Settlement Agreement, before and/or after their execution, and describe the extent and nature of each individual's involvement.

5. Identify all DOE employees, officials, attorneys, or representatives who were or are involved in any way with drafting, negotiating, or communicating regarding the document referred to by the parties as the "Communication Protocol" in or around July 1998.

6. Identify all individuals whom you believe are or were part of the DOE "equity finalization team," as described in the 1996 Protocol and Supplements, and describe the extent and nature of each individual's role in that capacity.

7. Identify all individuals who communicated about or participated in the decision to appoint the DOE "equity finalization team," as described in the 1996 Protocol and Supplements.

8. Identify all individuals whom you believe represent or represented DOE in its capacity as "Owner," as that term is used in the 1996 Protocol and Supplements, and describe the extent and nature of each individual's representation.

9. Identify all individuals whom you believe "analyze [or analyzed] the NSAI final equity recommendations and the equity positions and submissions of both the DOE and Chevron equity teams, and serve [or served] as staff advisors to the Assistant Secretary in the conduct of his equity finalization evaluations and determinations," as described in the letter from Mary H. Egger to William H. Taft IV, dated November 19, 1998.

10. Identify all individuals whom you believe "develop[] and advocate[] [or developed and advocated] the DOE equity position in accordance with the Protocols established in the equity finalization implementation process," as described in the letter from Mary H. Egger to William H. Taft IV, dated November 19, 1998.

11. Identify all individuals whom you believe were or are part of the "DOE field equity technical team," as that term is used in B.4 of the Equity Process Agreement, and describe the extent and nature of each individual's role in that capacity.

12. Identify all individuals whom you believe were or are part of the DOE "equity team," as that term is used in the Equity Process Agreement, and describe the extent and nature of each individual's responsibilities in that capacity.

13. Identify all individuals whom you believe were or are part of the "DOE technical staff in Washington, D.C." as that term is used in B.4 of the Equity Process Agreement, and describe the extent and nature of each individual's responsibilities in that capacity.

14. Identify all individuals who were or are part of the ASFE's staff and were or are involved in any way in the Elk Hills Equity Redetermination and/or Finalization Process, and describe the extent and nature of each individual's responsibilities in those proceedings.

15. Identify all individuals who serve or served as outside or inside legal counsel for any of the groups of individuals identified in Interrogatories 1-14, and describe the extent and nature of each lawyer's responsibilities during the course of that representation, including the group or groups that each lawyer serves or served, and whether or not each lawyer was or is lead counsel for that group or groups.

16. Identify all DOE employees, officials, attorneys, or representatives, other than those identified in response to Interrogatories 6 through 15, who were or are involved in any way in the Elk Hills Equity Redetermination and/or Finalization Process, and describe the extent and nature of each individual's responsibilities in those proceedings.

17. Identify all individuals who were in any way involved in drafting, providing input for, or communicating concerning the following:

(a) Preliminary and Final Decisions for the Dry Gas Zone (September 1997 and May 1998);
(b) Preliminary and Final Decisions for the Carneros Zone (November 1997 and May 1998);
(c) Preliminary Decision for the Shallow Oil Zone (March 1997);
(d) Preliminary and Final Decisions for the Stevens Zone (November 2001 and June 2002);
(e) Preliminary Decision for the Stevens Zone following remand (May 2006);
(f) Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For The Stevens Zone (September 1999);

and identify the decision in which each individual participated and the extent and nature of each individual's involvement. The response need not include those individuals who were involved solely through communications in which a Chevron employee or representative participated or was copied.

18. Identify all DOE employees, officials, attorneys, or representatives with whom the ASFE, members of his or her staff, his or her counsel, including without limitation Mary Egger, Gena Cadieux, or members of the DOE technical staff in Washington, D.C. communicated concerning the Elk Hills Equity Redetermination and/or Finalization Process, and describe the extent, nature, and participants in each such communication. The response need not include those individuals who were involved solely in communications in which a Chevron employee or representative participated or was copied.

19. For each individual listed in response to Interrogatory No. 18, identify all DOE employees, officials, attorneys, or representatives with whom he or she communicated concerning the Elk Hills Equity Redetermination and/or Finalization Process, and describe the extent and nature of such communication. The response need not include those individuals who were involved solely in communications in which a Chevron employee or representative participated or was copied.

20. Identify all DOE employees, officials, attorneys, or representatives with whom members of the DOE "field equity technical team," the DOE "equity team," or the DOE "equity finalization team," as identified above, communicated concerning the Elk Hills Equity Redetermination and/or Finalization Process, and describe the extent, nature, and participants in each such communication. The response need not include those individuals who were involved solely in communications in which a Chevron employee or representative participated or was copied.

21. Identify all DOE employees, officials, attorneys, or representatives who in any way were involved in communications with, or participated in proceedings before, the ILA, and describe the extent and nature of each individual's involvement.

22. Identify all DOE employees, officials, attorneys, or representatives who since January 1, 1996 have engaged in communications with NSA in which a Chevron employee or representative did not participate or was not copied, and identify the date and method of communication and the NSA with whom the DOE employees communicated.

23. Identify all individuals who have worked at DOE under the direct or indirect supervision of Mary Egger from January 1, 1995 through the present and the official job titles of those individuals during the time they were supervised by Ms. Egger.

24. Identify all communications between Mary Egger or her subordinates and other DOE field equity personnel, the ILA, and/or the IPE concerning the Elk Hills Equity Redetermination and/or Finalization Process.

25. Identify all meetings and conference calls between employees, officials, attorneys, or representatives of DOE and employees, officials, attorneys, or representatives of Chevron concerning the Elk Hills Equity Redetermination and/or Finalization Process in which Mary Egger or her subordinates participated, including but not limited to meetings in December 1996, January 1997, May 1997, April 1999, and October 2000.

26. To the extent they are not identified in response to previous interrogatories, identify all actions and communications of Mary Egger or her subordinates with respect to the Elk Hills Equity Redetermination and/or Finalization Process.

27. Identify all actions and communications of DOE employees, officials, attorneys, or representatives concerning pending federal legislation that would immunize or indemnify the IPE, or otherwise affect the Elk Hills Equity Redetermination and/or Finalization Process, and all continuing efforts by DOE employees, officials, attorneys, or representatives to advocate for the passage of federal legislation that would immunize or indemnify the IPE, or otherwise affect the Elk Hills Equity Redetermination and/or Finalization Process.

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Dated: September 22, 2006

Counsel for Chevron U.S.A. Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 22, 2006, a true and correct copy of the foregoing **PLAINTIFF'S FIRST SET OF INTERROGATORIES** was served upon:

John E. Kosloske, Esq. **(By hand and email)**
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005
john.kosloske@usdoj.gov

Leslie Ohta **(By email)**
Trial Attorney
Commercial Litigation Branch
Civil Division,
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
leslie.ohta@usdoj.gov

Paul T. Michael **(By email)**
Of Counsel
Office of General Counsel
Department of Energy
Washington, D.C. 20585
paul.michael@hq.doe.gov

Lawrence Rosenberg