# EXHIBIT 3

EXHIBIT 3

From: MARY EGGER [MARY EGGER at GC-02]
Sent: Monday, November 08, 1999 9:22 AM
To: gthorpe@omm.com_at_INTERNET; FGangle@nprc.doe.gov_at_INTERNET
Cc: aburzlaf@staped.com_at_INTERNET; GHolcomb@nprc.doe.gov_at_INTERNET
Subject: Re: Friday's Conference Call With Norm & Company

I have time this morning for a call. Butch, will you initiate? Not sure what time you had in mind, but today looks pretty go for me. I didn't understand Norm's/NSAI's ocnflict issue, so you'll have to fill me in on that as well as the "lively" call you had...

______________________________ Reply Separator ________________________________
Subject: Friday's Conference Call With Norm & Company
Author: FGangle@nprc.doe.gov_at_INTERNET at X400PO
Date: 11/5/1999 4:16 PM

Two things happened Friday: (1) Alan and I talked with NSAI and Norm on the conversion methodology and (2) we received Chevron's ILA brief.

(1) The Friday call was lively, and at one time animated. I think Norm lost control. Alan can explain it. Several things we need to talk about on Monday if we can all get together. First, we have another NSAI call set up for 1 p.m. PST on Tuesday, Conversion Methodology Act III. Secondly, Norm said that Gary Henderson was trying to contact Mary to set up an ILA call or meeting, see closing sentence below. Lastly, Krenek brought up a matter involving another conflict of interest raised by Norm. This issue involved NSAI's work for Oil Search and, I believe, Exxon, on a field in Papua New Guinea. In summary, no one perceived any conflicts, but we need to brief you on the details. Norm asked me if DOE saw any conflicts on the old issue with Sandifer. He expects DOE to respond in some fashion or other. By the way, we faxed our reply to NSAI's conversion questions this morning, and they had them before the meeting. Norm sent his over-night, and NSAI didn't receive the package by the time the call was initiated. So Norm faxed them.
We haven't seen Chevron's reply yet, which in part contributed to the animated outburst by Norm.

(2) For a month and a half, Norm has been saying October 1, 1997, with a 24-month average. His brief comes in September 30, 1997, with a 5-year average. Alan and I kicked it around and have a few things to point out to you. He cut off a day and added 3 years.

Look forward to the call on Monday. Remember Mary that Thursday is a holiday for us, and I'm scheduled for an AWS day on Friday. It would be nice to have an AWS day off once in awhile.

BG

# EXHIBIT 4

EXHIBIT 4

From: MARY EGGER [MARY EGGER at GC-02]
Sent: Friday, November 19, 1999 10:05 AM
To: FGangle@nprc.doe.gov_at_INTERNET; aburzlaf@staped.com; gthorpe@OMM.com
Subject: Re: Latest From Norm

Butch, sorry but I thought we all were clear on the date, etc. The ILA meeting is the 7th (Tuesday). Greg and I thought that if we all got in early enough that we could meet around 1pm or so on the 6th, we could prepare Monday afternoon.

I'm going to see about reservations at the Hyatt Regency Houston (govt rate $109), 1200 Louisiana Street (713.654.1234). It's about a 10-15 minute cab ride from Chevron.

I'll catch up on the emails and talk to you later.

______________________________ Reply Separator ________________________________
Subject: Latest From Norm
Author: FGangle@nprc.doe.gov_at_INTERNET at X400PO
Date: 11/18/1999 10:21 AM

Mary, we tried to call you after our Tuesday chat with NSAI and Chevron. We wanted to tell you about Norm's latest. You might already know from Greg if Alan has talked with him. I haven't.

Two things: (1) Norm said the Houston meeting is on. He got it from Gary Henderson. (2) Gary Latham asked us if we received letters from the ASFE, which we haven't. One letter apparently is a delegation letter which specifies that the PDASFE will act for the ASFE on the equity decisions. Norm took objection to this. He brought up that Chevron always thought the the DOE Secretary would decide equity. When it was delegated to the ASFE in 1994 or so, Chevron agreed providing that the delegation did not go below that level. I believe the concern at that time was a delegation down to the DAS level. You can expect something on this from Chevron.

When do you want us in Houston? On December 5th or 6th? Greg, Alan, and I need to make flight reservations. I'm in tomorrow if you want to reach me.
We are all at the Marriott Courtyard today for a meeting with the IPE and Chevron.

BG

# EXHIBIT 5

EXHIBIT 5

From: Egger, Mary
Sent: Friday, December 10, 1999 9:23 AM
To: 'Butch Gangle'; 'Thorpe, Gregory'
Cc: 'Ken Schuessler'; 'Alan Burzlaff'
Subject: RE: ILA Meeting in Houston

It would seem best to keep the ILA matter off the agenda until it's signed. Even after it's signed, it should be straight forward and we hopefully will not need any technical interpretation.

Mary

-----Original Message-----
From: Butch Gangle [mailto:bgangle@worldnet.att.net]
Sent: Friday, December 10, 1999 8:48 AM
To: Thorpe, Gregory
Cc: Egger, Mary; Ken Schuessler; Alan Burzlaff
Subject: Re: ILA Meeting in Houston

A team effort - yes. But every championship team needs a good coach and a good quarterback. Not so? Mary's coaching and your quarterbacking did the job very well indeed. My Christmas wish is that Chevron tosses in the towel on this one and does not make it an intermediate agreement. Mary has a good sense of these things, but in this case my hope is that we don't go back to Houston.

No baby yet. Little Willy must be waiting for Grandpa to come.

On Monday, we meet with NSAI and Chevron at the Doubletree. I asked Alan and Ken to stick to the SOZ agenda. Before the meeting starts, I'm going to ask Rick, Scott, and Norm that we take the ILA item off the agenda because the agreement is still under draft and until it is signed I don't think that we should be discussing it. Besides this Interim Meeting is an SOZ meeting,
not a forum for an ILA issue. My concern is that Norm would get on his
soap box and draw out from NSAI or even DOE something that could kill the agreement. Most of the staff attending this meeting aren't associated with the Stevens issue and don't need to be a part of any discussions on it.
What do you think?

I'm off today, but available by cell phone, 661-303-5669 or home phone, 661-397-8154, if you need to talk with Alan and/or me. I'll be out and about, shopping for my wife's birthday present and Christmas gift. Do you think that I could show up in Hawaii without those two things?

BG

----- Original Message -----
From: "Thorpe, Gregory" <GThorpe@OMM.com>
To: "'Butch Gangle '" <bgangle@worldnet.att.net>
Sent: Thursday, December 09, 1999 7:49 AM
Subject: RE: ILA Meeting in Houston

> Thanks for the kind words, but it really was a team effort. Any news
> on
the
> baby?

EXHIBIT 5

>
> -----Original Message-----
> From: Butch Gangle
> To: Tony Dammer; James Gruber
> Cc: Ken Schuessler; Gary Holcomb
> Sent: 12/8/99 7:49 AM
> Subject: ILA Meeting in Houston
>
> Mary, Greg Thorpe, Alan Burzlaff, and I met with the ILA and the
> Chevron contingent in the Chevron Tower in Houston on Tuesday.
>
> Surprise!
>
> We reached an agreement on the time period issue. This agreement
> should bring to a close the gas-oil conversion factor conflict that
> has been ongoing since last August when Norm first raised it as an
> issue. We now have agreement on the price dataset, the time period,
> and the methodology. Once the agreement is drafted and signed by the
> parties, hopefully within the next week, the IPE will be given the owners'
> instructions and then will be able to calculate the conversion factor
> and plug it into its worksheets in order to finalize its Stevens
> equity recommendation. The scheduled date for the IPE to present its
> final Stevens equity recommendation to the ASFE is March 3, 2000.
>
> I must complement our attorneys on the outstanding job that they did
> to draw this agreement out of Chevron. Alan also delivered a powerful
> technical argument that Chevron could not refute. All in all, it was
> a very satisfying venture to be able to see Chevron accept an offer
> they could not refuse. After more than two years of Norm's raising
> legal issues, we appear to be approaching the final stage in the
> Stevens equity saga. All attempts by myself and Alan to reach an
> agreement with Norm proved fruitless. But with our counselors
> present, we were able to do it, so I give our counselors all the
> credit. My gratitude goes out to Mary and Greg for bringing home the bacon.
>
> Butch
>
>
>

# EXHIBIT 6

EXHIBIT 6

From: Egger, Mary
Sent: Thursday, February 17, 2000 11:21 AM
To: 'Butch Gangle'
Subject: RE: SOZ 7th Interim Meeting Today

I am sure it's not old age!

-----Original Message-----
From: Butch Gangle [mailto:Bgangle@nprc.doe.gov]
Sent: Thursday, February 17, 2000 10:04 AM
To: Egger, Mary
Cc: 'Greg Thorpe'; Alan Burzlaff; Holcomb, Gary
Subject: SOZ 7th Interim Meeting Today

Mary, I recalled (with a little assist from Alan) the key item on the Stevens Final Recommendation for discussion today at the SOZ 7th Interim Meeting with NSAI and Chevron. Greg had discussed this item earlier in the week with me when he called about the Supplemental Filing. Namely, the Protocol calls for comments within 30 days of the IPE Final Stevens Recommendation on March 2nd. Everyone (NSAI, Chevron, and DOE) are requesting that the PDASFE grant us a deferred date of 30 days from a date in May or June. The reason is that we are exchanging equity materials and presentation materials in March and then are making our presentations in April. It is believed that the requirement to generate comments on the Stevens Final Recommendation will cause undue conflicts and disruptions to the SOZ effort. So this item will be discussed today so that the PDASFE team can take it back to D.C. and give the PDASFE a heads up.

I was so engrossed with the process on the Final Balancing which we were discussing that for the life of me I couldn't quite remember the item above at the time. I don't think it's old age so much as a juggling problem.

BG

# EXHIBIT 7

EXHIBIT 7

From: Egger, Mary
Sent: Thursday, April 13, 2000 10:54 AM
To: 'Francis Gangle'
Subject: RE: Norm Is Wearing Down

Sounds good!

I've gotten a couple of notes recently from Harvey Pinson (OXY) about the pre-1942 database. We should talk again about it, but I want to wait until after SOZ. I think I'll bring up with OXY the Gov'ts interest in documents for the National Archives -- "quid pro quo".

Get some rest this weekend.

Mary

-----Original Message-----
From: Francis Gangle [mailto:bgangle@worldnet.att.net]
Sent: Thursday, April 13, 2000 8:09 AM
To: Egger, Mary; Greg Thorpe
Subject: Re: Norm Is Wearing Down

One more day. NSAI showed strong interest in our simulation model. Chevron did not turn its over. Chevron talked about it and referred to it, but declined to turn it over.

The key value to a simulation model, supposing that it is a good one, is that it eliminates a great deal of interpretation and judgment which is associated with classical analytical methods. NSAI always strives for objectivity and repeatability in its work.

Meetings have been going well for us. We broke at 6 p.m. last night. Norm left before 6 p.m. looking a little haggard and perturbed that we were going so long. NSAI requested the extra hour session in order to review our recovery factor methodology in greater detail. NSAI is showing a lot of interest in some of our approaches which I didn't observe in Chevron's case last week.

We all plan to work through the weekend on our rebuttals. Alan's put a strong program together. Gloves are off on Tuesday next.

BG

----- Original Message -----
From: "Egger, Mary" <MARY.EGGER@hq.doe.gov>
To: "'Francis Gangle'" <bgangle@worldnet.att.net>; "'Greg Thorpe'"
<gthorpe@omm.com>
Sent: Wednesday, April 12, 2000 8:31 AM
Subject: RE: Norm Is Wearing Down

> Thanks for the update --- sounds like things are going well for you.
> Just
a couple more days.....
>
> -----Original Message-----
> From: Francis Gangle [mailto:bgangle@worldnet.att.net]
> Sent: Wednesday, April 12, 2000 9:23 AM
> To: Egger, Mary; Greg Thorpe
> Subject: Norm Is Wearing Down

EXHIBIT 7

>
>
> Norm is wearing down a bit. After the meeting broke around 5:15 p.m.
yesterday, I asked Norm if he wanted to talk with Vickie Allen about the audio CD's. Norm replied, "How about tomorrow morning? I'm going for a beer." I said okay. Norm took off with a few cohorts for the Doubletree lounge bar to refill his tank. He looked worn out from our afternoon presentations on recovery factors. It was a blockbuster presentation that elicited a lot of good response from NSAI.
>
> About the audio CD's, which Norm and I will talk with Vickie about
> this
morning. Keith Stark, the audio sound man, told me that each party will receive about 70 CD's. This surprised me because Vickie indicated earlier that there would be one CD for the morning session and one for the afternoon. When I brought this up to her, she was surprised too. I then mentioned it to Norm who was totally surprised. Because there are so many CD's to process, Keith said that they wouldn't be ready until two weeks after the final rebuttals. Therefore, the CD's won't be of any help in preparing our rebuttal comments which are due on May 15th. Also, because of protocol (as Vickie puts it), I won't be able to get a copy of Norm's melodramatic closing statement until the CD's are ready. No bootleg copies.
>
> Otherwise, we are plowing ahead. Today is simulation-model day.
> Chevron
did not turn in their model. They talked about it, but decided against submitting it. NSAI hired an extra modeling engineer in expectation of two models being turned over. They were definitely disappointed that Chevron did not submit something. So our model should offer them something extra.
>
> BG
>
>

# EXHIBIT 8

EXHIBIT 8

**From:** Egger, Mary
**Sent:** Tuesday, July 10, 2001 9:21 AM
**To:** Gangle, Butch
**Subject:** RE: Debriefing on SOZ Activities

Tomorrow would be a little better for me. How about 10 am?

-----Original Message-----
**From:** Gangle, Butch
**Sent:** Tuesday, July 10, 2001 9:09 AM
**To:** Egger, Mary
**Subject:** Debriefing on SOZ Activities

Mary, we have a telecon today at noon with NASAI and Chevron. If you have some free time this afternoon or tomorrow, we could get together for a brief update on the status of the SOZ technical work. Please let me know what is best for you.

Butch

# EXHIBIT 9

EXHIBIT 9

**From:** Gangle, Butch
**Sent:** Wednesday, October 09, 2002 2:00 PM
**To:** Egger, Mary
**Subject:** Equity Percentage Cheat Sheet

**Attachments:** NPR-1 Equity Percentages2.xls

Mary, here is a cheat sheet with all the equity percentages for the various redeterminations, owner cases, etc. Thought that you might like to have it for reference.

I know that November is a long way off, but I have to ask if you will be in the office the week of November 12th (November 11th being a holiday). STA wants to give you a briefing sometime in November. I'll be in Iowa the week of the 4th; taking A/L for my mother's-in-law 80th birthday party (family reunion), and I'll be at Myrtle Beach the week of November 18th (strictly golf). Please let me know if your calendar is open the week of November 12th.

Thanks,
Butch

# EXHIBIT 10

EXHIBIT 10

**From:** Egger, Mary
**Sent:** Thursday, October 25, 2001 3:12 PM
**To:** Kripowicz, Robert
**Subject:** Stevens Zone Preliminary Decisiion

At long last I'm forwarding to you today our draft (hard copy) preliminary Stevens Zone decision. While it's in pretty good shape, Gary, Arnie, Gena and I are continuing to review it and will likely find a few more knits to fix. I can send this to you electronically if you would like -- just say the word. Let me know if you'd like to sit down to discuss it after you've had an initial review.

Mary

# EXHIBIT 11

EXHIBIT 11

4-13-98

NSAI STEVENS ZONE EQUITY FINALIZATION

# REMA EVENS EQUITY SCHEDULE

Provided in redacted form

- December , 1997 - Extended to March 27, 1998
  - EFT Responses to IPE Provisional Recommendation
  - 2 Copies to IPE
- January 27, 1998 (est) TBD - By what process?
  - Final Recommendatio
  - Dallas or Washington
- February 3, 1998 (est)
  - Final Report to ASFE

Mary -
Status of Stevens schedule.
Gary

Mary Egger
Gave this to Pat
4-12-98.

10/31/97

Overview

CME014 01220

# EXHIBIT 12

EXHIBIT 12

# MEMORANDUM

TO: Gena Cadieux
Lou Capitanio
Mary Egger
Gary Latham
Arnie Smits

FROM: Patricia Godley

DATE: July 23, 1997

RE: Draft Preliminary Decision: Dry Gas Zone

Attached for your review and comment is a draft Preliminary Decision on final equity for the Dry Gas Zone. If possible, I would like to issue the Preliminary Decision next week. Accordingly, I would appreciate your comments as soon as possible. Thanks, as always.

# EXHIBIT 13

EXHIBIT 13

From: MARY EGGER [MARY EGGER at GC-02]
Sent: Tuesday, September 21, 1999 5:32 PM
To: Arnold Smits_at_HQ-EXCH
Subject: Re[2]: ASFE data decision draft

Thanks for your very careful review of all these drafts -- you're an excellent editor!

______________________________ Reply Separator ________________________________
Subject: RE: ASFE data decision draft
Author: Arnold Smits_at_HQ-EXCH at X400PO
Date: 9/21/1999 3:36 PM

Mary

Just one more very, very minor change to make.

The 6th line down in the last paragraph on page 8, there is an extra space between the words . . . but there . . .

-----Original Message-----
From: EGGER, MARY
Sent: Tuesday, September 21, 1999 2:35 PM
To: Kripowicz, Robert; Latham, Gary; Capitanio, Louis; Smits, Arnold; CADIEUX, GENA
Subject: ASFE data decision draft

All,

Attached is a revised version which incorporates changes from Gary, Lou, Arnie, and Gena. Most of the changes (which are few) are editorial in nature, though there are a couple of changes that are more substantive in reaction to comments. To facilitate your review, I have attached a redlined version from the version I distributed yesterday afternoon. If you are bothered by any of it, or have futher edits/changes, let me know.

Thanks for your prompt review,

Mary

# EXHIBIT 14

EXHIBIT 14

Department of Energy
Naval Petroleum Reserve in California
1601 New Stine Road, Suite 240
P.O. Box 12041
Bakersfield, CA 93389-2041

APR 7 1998

Ms. Patricia Fry Godley
Assistant Secretary for Fossil Energy, FE-1
U.S. Department of Energy
Forrestal Bldg., Room 4G-084
1000 Independence Avenue, S.W.
Washington, DC 20585

SUBJECT: CHEVRON COMMENTS ON IPE'S PROVISIONAL STEVENS EQUITY RECOMMENDATIONS

Dear Ms. Godley:

The DOE Equity Finalization Team (EFT) has performed a cursory review of the subject report submitted by Chevron to Netherland, Sewell and Associates, Inc. (IPE) on March 27, 1998.

As the result of that review, I am recommending that you permit the DOE EFT an opportunity to provide the IPE with written comments on the Chevron report. Of course, Chevron would likewise be given an opportunity to comment on DOE's report. I feel this work would benefit the IPE and should take no more than 30 days to complete after receipt of your instruction to proceed. This would not impact our Shallow Oil Zone work schedule.

I look forward to your response.

Sincerely,

Charles W. Kauffman
Deputy Director
Naval Petroleum Reserve
in California

# EXHIBIT 15

EXHIBIT 15

FILE COPY

Chevron

June 24, 1998

**Chevron U.S.A. Production Company**
4900 California Avenue
Bakersfield, CA 93309
Post Office Box 1392
Bakersfield, CA 93302

**Cynthia A. Giumarra**
Assistant General Counsel
Law Department
Phone No. 805 633 4695
Fax No. 805 633 4698

Mr. Greg Thorpe
O'Melveny & Myers
400 South Hope Street
Los Angeles, California 90071

Ms. Mary Egger
Assistant General Counsel
United States Department of Energy
1000 Independence Avenue S.W.
Washington, D.C. 20585

**Communication Protocol Issues**

Dear Greg and Mary:

By letter dated May 29, 1998, I requested a meeting be scheduled between Chevron, DOE, and NSAI to discuss Chevron's concerns about communication among and between DOE, Chevron, NSAI, and the Assistant Secretary of Fossil Energy (ASFE). As I mentioned in that letter, there have been several occasions in recent weeks during which certain communication has ensued between or among the DOE, NSAI, and/or the ASFE in which Chevron was not involved until after-the-fact. I also mentioned Chevron was concerned that the protocol for communication on equity-related matters has not been followed.

To understand what has occurred up to this point, Chevron would like additional information regarding certain communication (as set forth below), which is part of the reason for Chevron's concern and its request for a meeting to discuss communication protocol.

1. By letter dated April 15, 1998 to NSAI, with a copy to DOE's Mr. Wayne Kauffman, Chevron advised NSAI that it would require a written report explaining the methodologies used by NSAI to determine equity splits for the various Stevens intervals as well as an explanation how each of the errors from the provisional report was resolved. Chevron also requested NSAI provided it with certain cross-sections and other data substantiating its work in finalizing its report. In that letter Chevron also suggested that after NSAI had assessed the owner comments that DOE, Chevron, and NSAI should review the project schedule. Chevron did not hear from NSAI or from DOE concerning its request.

Instead, by letter dated May 4, 1998, the ASFE advised Chevron that she was instructing NSAI to disregard Chevron's request. Chevron wrote to NSAI with a copy to the DOE equity team leader on a technical request and a scheduling request and does not understand how the ASFE became involved in a technical matter. Chevron would like to know who contacted the ASFE regarding this letter and the substance of their communication.

2. By letter dated April 7, 1998 to the ASFE, the DOE requested the ASFE provide the DOE Equity Finalization Team an opportunity to provide comments to NSAI on Chevron's comments on the IPE's provisional recommendation for the Stevens Zone. This request by DOE was made without Chevron's having been consulted and without Chevron's knowledge. DOE went directly to the ASFE (who is to remain an independent decision maker) with an ex parte communication. The first Chevron heard of the matter was by letter dated May 1, 1998 from the ASFE to NSAI. Chevron would like to know why the DOE did not consult directly with Chevron and/or NSAI with regard to this request? Chevron would also like to know why the ASFE did not consult with Chevron about this. Were there discussions (in addition to the DOE request of April 7) between DOE and the ASFE on this matter and, if so, what was discussed?

3. By letter dated May 22 from the ASFE to NSAI and to the Chevron and the DOE equity teams, the ASFE indicated that she had asked Gary Latham to schedule a meeting between NSAI and the equity teams to determine whether additional comments would be helpful to NSAI in reaching its final recommendation. In a conference call on May 26 with Norm Stone, Wayne Kauffman, and Gary Latham, Mr. Latham indicated that he had telephoned NSAI to arrange a conference call pursuant to instructions from Ms. Godley and that he had had a "lengthy discussion with Netherland" that resulted in a decision that a meeting between NSAI, Chevron, and DOE was not necessary. The way this decision was reached is troubling. Chevron again was not a party to discussions between DOE and NSAI on equity-related business.

EXHIBIT 15

Mr. Greg Thorpe
O'Melveny & Myers LLP
Ms. Mary Egger
United States Department of Energy
June 24, 1998
Page 3

> During this conference call Mr. Stone was also advised that NSAI would need until early to mid-Fall to complete its final Stevens report. While Chevron had specifically requested information from NSAI concerning the timing on its Stevens work, Chevron did not hear from NSAI on this subject because the ASFE had instructed NSAI to disregard Chevron's request. It was troubling to Chevron to learn during this conference call that discussions concerning NSAI's schedule for completing the Stevens work had obviously taken place between DOE and/or NSAI and/or the ASFE, once again without input from or comment to Chevron. When did these discussions take place, who participated, and what was discussed?
>
> During the May 26 conference call, Chevron was advised that the ASFE had discussions with NSAI regarding scheduling, but that such information could not/should not be shared with Chevron due to the "recent communication issue." This of course was, and remains, very disturbing to Chevron. Chevron believes that it has the right to participate in any discussions with NSAI regarding scheduling. Chevron has no way of knowing what discussions the ASFE may have had with NSAI concerning the timing for completion of NSAI's technical work or future scheduling. As requested in Mr. Stone's April 15 letter, Chevron wants to be a participant (with DOE) in any discussions within NSAI concerning any aspect of its equity finalization work including scheduling. Chevron would like to know the substance of the discussions between or among NSAI or among the ASFE and/or DOE with regard to completion of NSAI's technical work and any future scheduling.

As Chevron and DOE address the issues surrounding communication protocol and the aforementioned problems on which Chevron has requested specific information, we should find paragraph B.4 of the Agreement Regarding Equity Redetermination Process instructive. That provision of the Agreement provides:

> The ASFE will not consult, directly or indirectly, with the DOE field equity technical team concerning equity redetermination-related matters without also consulting with the Chevron equity team on any such matter (the reference in this section to the DOE field equity technical team does not include the DOE technical staff in Washington, D.C.). No such communications by ASFE with

> equity team shall be on an ex parte basis. Any written materials submitted to the ASFE by either equity team shall be provided to the other party....

(As evidenced above, Chevron believes that this provision of the equity process agreement has been violated.)

Paragraphs C.20 and C.21 of the Assistant Secretary for Fossil Energy Administrative Order No. 96-1 (Protocol on NPR-1 Equity Finalization Implementation Process) provide as follows:

> 20. The EFTs and the equity IPE shall jointly determine the structure and time permitted for the initial and rebuttal presentations. The equity IPE shall ensure that each owner is able to present its equity positions without interruption by the other owner. *Any further matters required to be determined regarding the structure of the equity presentation process will be determined by the equity IPE in consultation with the Owners provided the matter is not otherwise covered by this Order or the equity IPE contract.* (emphasis added)
>
> 21. In the event a disagreement arises regarding the equity finalization implementation process or this Protocol which cannot be resolved jointly by the equity IPE and the EFTs, the matter shall be referred to the ASFE or designee for resolution. *Prior to resolution, the Assistant Secretary will consult with Chevron.* (emphasis added)

These provisions of the Protocol document and paragraph B.4 of the equity process agreement are instructive for the parties on both the substance and the manner in which communication between and among DOE, Chevron, NSAI and the ASFE is to take place.

In preparation for our upcoming conference call, please provide a written response to the questions raised it items 1-3 above. I will review that information with Chevron's equity team prior to our teleconference. I am confident we can resolve these earlier problems and agree on the guidance needed for NSAI, our respective equity teams, and the ASFE regarding proper future communication

EXHIBIT 15

Mr. Greg Thorpe
O'Melveny & Myers LLP
Ms. Mary Egger
United States Department of Energy
June 24, 1998
Page 5

Please call me if you have any questions concerning the foregoing. I look forward to receiving a written response from you and to further discussions on communication protocol next week.

Sincerely,

Cynthia A. Giumarra

EXHIBIT 15

*******************************************
TRANSMIT MESSAGE CONFIRMATION REPORT
*******************************************

NAME:CUSA LAW DEPT
TEL :805 6334698
DATE:06/24/98 15:12

| TRANSMIT:912025860325 | | | DURATION | PAGE | SESS | RESULT |
|---|---|---|---|---|---|---|
| TYPE: MEMORY TX | MODE | E-144 | 02'04 | 06 | 568 | OK |

# FACSIMILE TRANSMITTAL SHEET

**IMPORTANT:** THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS BELOW VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.

**CHEVRON U.S.A. PRODUCTION COMPANY**
**LAW DEPARTMENT**
4900 California Avenue
Bakersfield, California 93309
Mail Address: P. O. Box 1392, Bakersfield, CA 93302

**FAX MACHINE NUMBER: (805) 633-4698**

**DATE:** 6/24/98

**TO:** MS. MARY EGGER
U.S. DEPARTMENT OF ENERGY
OFFICE OF GENERAL COUNSEL

**FAX:** 202-586-0325

**FROM:** CYNTHIA A. GIUMARRA
ROOM B-107
PHONE - 805-633-4695

**MESSAGE:**

6 PAGES - TOTAL
(includes Cover Page)

[illegible]

P-02286

EXHIBIT 15

*************************************************
TRANSMIT MESSAGE CONFIRMATION REPORT
*************************************************

NAME:CUSA LAW DEPT
TEL :805 6334698
DATE:06/24/98 15:18

| TRANSMIT:213 669 6407 | | | DURATION | PAGE | SESS | RESULT |
|---|---|---|---|---|---|---|
| TYPE: MEMORY TX | MODE | E-144 | 02'02 | 06 | 569 | OK |

# FACSIMILE TRANSMITTAL SHEET

**IMPORTANT:** THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND RETURN THE ORIGINAL MESSAGE TO US AT THE ADDRESS BELOW VIA THE UNITED STATES POSTAL SERVICE. THANK YOU.

**CHEVRON U.S.A. PRODUCTION COMPANY**
**LAW DEPARTMENT**
4900 California Avenue
Bakersfield, California 93309
Mail Address: P. O. Box 1392, Bakersfield, CA 93302

**FAX MACHINE NUMBER: (805) 633-4698**

**DATE:** 6/24/98

**TO:** MR. GREG THORPE
O'MELVENY & MYERS, LLP

**FAX:** 213-669-6407

**FROM:** CYNTHIA A. GIUMARRA
ROOM B-107
PHONE - 805-633-4695

**MESSAGE:**

6 PAGES - TOTAL
(includes Cover Page)

FOR PROBLEMS WITH TRANSMISSION, PLEASE CALL M. P. HENLEY (633-4696)

# EXHIBIT 16

EXHIBIT 16

**FILE COPY**

Chevron

August 10, 1998

**Chevron U.S.A. Production Company**
4900 California Avenue
Bakersfield, CA 93309
Post Office Box 1392
Bakersfield, CA 93302

**Cynthia A. Giumarra**
Assistant General Counsel
Law Department
Phone No. 805 633 4695
Fax No. 805 633 4698

**Via Facsimile: (202) 586-0325**

Ms. Mary Egger
Assistant General Counsel
United States Department of Energy
1000 Independence Avenue S.W.
Washington, D.C. 20585

**Communication Protocol**

Dear Mary:

I received your revised draft on the Communication Protocol by letter dated July 31, 1998. After reviewing your draft, it appeared to me that Chevron and the DOE were looking for two different outcomes regarding the communication issues raised by Chevron. In the draft Communication Protocol document that I furnished to you on July 17, it was Chevron's intention to clarify prohibitions on ex parte communication between and among the DOE and the Chevron EFTs, the Assistant Secretary for Fossil Energy (ASFE), and Netherland, Sewell and Associates, Inc. (Equity IPE). In reviewing your revised draft of the Communication Protocol document, it was clear that your proposal was intended primarily to affirm the ASFE's authority to modify the Equity Process Agreement as well as to amend the ASFE Administrative Order No. 9601 Protocol Document unilaterally after consideration of Chevron's views. Your draft thus goes beyond the issue raised by Chevron. Moreover, it would give the ASFE authority Chevron does not believe is consistent with the existing obligations of Chevron and DOE to each other. Both the Equity Process Agreement and the Administrative Order were negotiated and agreed upon by Chevron and DOE, and if a modification to either document is desired by any party, it should also be negotiated. Chevron views your draft Communication Protocol document as an effort to expand the ASFE's authority under the sale legislation, the existing Protocol Document and the Equity Process Agreement.

I realize that Chevron and DOE may continue to have differing opinions on the question of the ASFE's authority. Resolution of any difference may not be necessary, however, if the ASFE does not attempt to assert unilateral authority. Accordingly, I suggest that in lieu of attempting to address the ASFE's authority to modify the Protocol Document or the Equity Process Agreement, we focus on what we agree on, ensuring that no future ex parte

EXHIBIT 16

Ms. Mary Egger
Assistant General Counsel
United States Department of Energy
August 10, 1998
Page 2

communications among the parties take place. In this regard, I believe our discussions concerning ex parte communications have been useful in bringing to the forefront the need for the EFTs, DOE, Chevron, the Equity IPE, and the ASFE to avoid such communications. I am confident that both EFTs now have a keen awareness of the problems which stem from ex parte communications. I recommend that we advise our respective EFTs, our management personnel and the Equity IPE that no ex parte communication is allowed, as discussed above, and that we leave the issue on the nature and extent of the ASFE's authority to another day, taking time to deal with it only in the event the issue becomes ripe.

As I discussed with Greg on August 6, it is not my intention to provide comments on your revised draft protocol document. I advised him that at this point, I did not think an exchange of comments would be productive. Please let me know if you disagree.

Sincerely,

Cynthia A. Giumarra

Cynthia A. Giumarra

cc: Mr. Greg Thorpe

# EXHIBIT 17

EXHIBIT 17

From: Gangle, Butch
Sent: Thursday, January 23, 2003 9:29 AM
To: Latham, Gary
Subject: FW: Abandonment pressures

Gary, I believe this series of e-mail messages relate to your inquiry about the abandonment pressure request, originally posed by Chevron, see below. I have not seen a response by NSAI as of yet; I asked STA if it has seen anything.

I might mention that we have noted in the Submulina that there were abandonment pressures higher than 1912 pressures. We are puzzled by this but have not mentioned it to NSAI.

Butch

-----Original Message-----
From: Burzlaff, Alan [mailto:Alan.Burzlaff@si-intl.com]
Sent: Wednesday, January 08, 2003 9:46 AM
To: Gangle, Butch
Cc: Deibert, Albert
Subject: RE: Abandonment pressures

Interesting. I recall that we had the same discussion when you were in Bakersfield last month concerning the high abandonment pressures in some of the fault blocks.

AAB

-----Original Message-----
From: Gangle, Butch [mailto:Butch.Gangle@HQ.DOE.GOV]
Sent: Wednesday, January 08, 2003 5:02 AM
To: Burzlaff, Alan
Subject: FW: Abandonment pressures

FYI

-----Original Message-----
From: Stone, Norman (NStone) [mailto:NStone@ChevronTexaco.com]
Sent: Tuesday, January 07, 2003 8:24 PM
To: Rick Krenek
Cc: Gangle, Butch
Subject: FW: Abandonment pressures

Rick, would you please supply an answer to Doug's question below.
Generally, we cannot find any discussion of how abandonment pressures were determined.

-----Original Message-----
From: Hess, Doug (DHSS)
Sent: Tuesday, January 07, 2003 3:21 PM
To: Stone, Norman (NStone)
Cc: Alexander, Pat (PALE); Holtzclaw, Mark (HOMJ)
Subject: Abandonment pressures

EXHIBIT 17

Running through NSAI's Provisional spreadsheets I've found a column with numbers & no reference to where they came from. Could we get NSA to tell us where the Abandonment pressure values came from that are shown in:

Workbook: Provisional USOZ 1942 Equity.xls
Worksheet: SS-1 Calc (actually all the zone Calc sheets)
Columns: AB, AP, BE labeled Abandonment Press @ datum (psia)

Thanks,

Doug Hess
Cell: 512-940-8999
CVX Office:
BK5001; C-220
661-395-6495

# EXHIBIT 18

EXHIBIT 18

From: Egger, Mary
Sent: Wednesday, March 02, 2005 4:03 PM
To: Latham, Gary
Subject: RE: Trip to Bakersfield

Thanks, Gary. I trust you are ensuring that the ex parte rule is followed.

-----Original Message-----
From: Latham, Gary
Sent: Wednesday, March 02, 2005 1:45 PM
To: Egger, Mary
Subject: FW: Trip to Bakersfield

I have been trying to orchestrate a peaceful reunion of opposing forces on the matter of responding to OHA's recent Order on the Stevens oil-to-gas conversion issue, without resort to legal debate. Butch's answer to my question about his travel plans, forwarded herewith, will bring you up you up to date.

-----Original Message-----
From: Gangle, Butch
To: Latham, Gary
Sent: 3/2/2005 10:03 AM
Subject: RE: Trip to Bakersfield

March 7th thru the 10th, flying back on the 11th. Basically, the whole trip is dedicated to this one purpose. If necessary, I shall make follow up trips to ensure that DOE fully understands the status of the records, their location and disposition. In other words, I plan to dedicate my time to this activity until it is satisfactorily resolved.

Therefore, I have formally notified Dammer and Shages by e-mail of Chevron's request for access to DOE records by forwarding Norm Stone's request and adding these comments of mine:

"On a matter relating to the equity finalization, in respect to the ASFE Stevens Zone final decision, appealed by ChevronTexaco, the Office of Hearings and Appeals (OHA) rendered a decision on January 31, 2005, granting, in part, the appeal by Chevron USA, Inc. The OHA decision instructs the ASFE to weight the conversion factor of gas to oil "...based on actual selling prices received over the life of the Unit's production of oil and gas." The weighting methodology dictated by OHA involves monthly "Unit" revenues, monthly oil prices, and monthly gas prices across the whole life of the Unit, that is, from 1942 to 1998. This detail of data, in the form of a single Unit dataset, does not exist; therefore, it is required of both ChevronTexaco and the DOE to search its own individual records, compile reciprocal datasets, agree upon a single dataset, and then digitize the single dataset into a form that would be considered to represent "Unit data" for the purpose mandated by
OHA.

By e-mail message below, Mr. Stone has requested that ChevronTexaco be granted access to the Unit records maintained by DOE.

Mr. Stone wrote, "At the time, you stated that ChevronTexaco had no right to view Unit records and that you would get back to me in two weeks." Allow me disagree with this statement by Mr. Stone and disavow his assertion. On the contrary, the records that Mr. Stone speaks to are, in fact, DOE revenue records, not Unit records as he asserts. Furthermore, this matter of searching for the revenue data is ongoing on the part of both ChevronTexaco and the DOE. During a telecon today, March 1, 2005, Mr. Stone told us that he has requested that ChevronTexaco bring back Mr. Syring, a ChevronTexaco accountant who worked on the Unit cost records, from overseas to help him reconstruct Chevron's revenue records. Mr. Stone could not offer any estimated time schedule to effect his proposed action. As for the DOE EFT, our Bakersfield office is presently searching our archived records for the DOE revenue data. The search of

EXHIBIT 18

archived records stored away in boxes at offsite locations could take substantial time. Effort is underway to determine the required time. As you probably have deduced by now, the DOE EFT draws a distinction between DOE revenue records and Unit cost records. The DOE EFT surmises that Mr. Stone has confused the two types of records.

In conclusion, it is anticipated that the DOE revenue records will be located in time. It is expected that both the revenue and the production records for the course of the life of the Unit will require copying and digitization for use by the ASFE technical team. These two actions most likely will require some time to accomplish in order to provide the ASFE technical team hard copies of the source data and the digital datasets required to fulfill the instructions laid out by OHA.

Butch Gangle
Chairman, DOE Equity Finalization Team"

-----Original Message-----
From: Latham, Gary
Sent: Wednesday, March 02, 2005 9:40 AM
To: Gangle, Butch
Subject: Trip to Bakersfield

When will you be in Bakersfield to check on data for the OHA calculation?

# EXHIBIT 19

EXHIBIT 19

PREPARED BY: | DATE: 4/9/98

PHONE CONVERSATION W/PAT GODLEY

MARY EGGER
GARY LATHAM

NOT JUDGEMENT

① ISOLATE A LIST OF QUESTIONS TO ASK BOTH OWNERS
- TECHNICAL IN NATURE

② SEPARATE QUESTIONS TO OWNERS REGARDING THEIR CASES

GET OUR SPECIFIC QUESTIONS ANSWERED
- GENERAL TO BOTH
- SPECIFIC TO ONE OR ANOTHER

INCLUDE A LAST GENERAL QUESTION -

ADD ANY OTHER GENERAL COMMENTS REGARDING THE OTHER OWNERS CASE

SUGGEST TO PAT TIME TO RESPOND

NSAI NETHERLAND, SEWELL & ASSOCIATES, INC.

# EXHIBIT 20

EXHIBIT 20

Eng PSF, RFK
Geol
Tech
Mgmt
Other Work Corr...

Department of Energy
Naval Petroleum Reserve In California
1601 New Stine Road, Suite 240
P.O. Box 12041
Bakersfield, CA 93389-2041

DATE: 12-02-99

# FACSIMILE TRANSMITTAL SHEET

To: Rick Krenek — NSAI (Company/Location) — 214-969-5411 (FAX)

214-969-5401 (Phone)

From: Butch Gangle — DOE-NPRC (Company/Location) — 661-283-5089 (FAX)

661-283-5002 (Phone)

RE:

- [x] Urgent
- [ ] For Review
- [ ] Please Comment
- [ ] Please Reply

EXHIBIT 20



Department of Energy
Naval Petroleum Reserve in California
1601 New Stine Road, Suite 240
P.O. Box 12041
Bakersfield, CA 93389-2041

DEC - 2 1999

Mr. Richard F. Krenek, IPE
Netherland, Sewell & Associates
4500 Thanksgiving Tower
1601 Elm Street
Dallas, TX 75201-4754

Dear Mr. Krenek:

Upon further reflection on what Mr. Norm Stone said about the Department of Energy (DOE) terminating settlement discussions on the conversion factor, let me set the record straight. The information provided by Mr. Stone in the conference call yesterday is contrary to my understanding of what had actually happened. Chevron cancelled the scheduled settlement call, not DOE. The reason Chevron gave for terminating the settlement effort, as I am told, was that DOE did not agree to limit discussion to the range of conversion factor numbers insisted upon by Chevron.

The DOE remains fully willing to discuss at any time possible means of settling either, or both, the "current price" dispute and the overall "conversion factor" dispute. In fact, we greatly prefer a mutually acceptable settlement to the current process. Settlement discussions, however, are not truly possible if one of the parties insists on controlling the range of numbers discussed.

Sincerely,

Francis J. Gangle
Director
Engineering Division
Naval Petroleum Reserves
in California

# EXHIBIT 21

EXHIBIT 21
F2004-00087

02/19/2004 00:54 FAX AKIN GUMP

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

MERRILL C. GODFREY
202.887.4186/fax: 202.887.4288
mgodfrey@akingump.com

February 19, 2004

VIA FACSIMILE AND REGULAR MAIL

Mr. Abel Lopez
Freedom of Information/Privacy Act
Department of Energy
1000 Independence Avenue, S.W.
ME-74
Washington, DC 20585

FEB 19 2004 04
COMMERCIAL SEARCH, REVIEW & REPRODUCTION

Re: Freedom of Information Request

Dear Mr. Lopez:

Akin Gump Strauss Hauer & Feld LLP, on behalf of Chevron U.S.A. Inc. (ChevronTexaco), hereby requests that the Department of Energy provide the records described herein under the Freedom of Information Act, 5 U.S.C. § 552(a)(3). The requested records relate to the final equity determination proceedings between the Department of Energy and ChevronTexaco for the Elk Hills Naval Petroleum Reserve. Some of the requests herein relate specifically to the proceedings for the Carneros Zone and the Dry Gas Zone, which are referred to herein as "the Proceedings." Specifically, please provide the following:

1. All records you can locate with reasonable effort that the PDASFE and/or the ASFE, or representatives of either of them, considered, used, and/or relied upon in connection with the preparation of either the Preliminary Decision or the Final Decision in either or both of the Proceedings.

2. All records you can locate with reasonable effort, including meeting notes and telephone logs, relating to or reflecting oral communications (including meetings and telephone discussions) involving the PDASFE, the ASFE, or representatives of either of them, regarding the Proceedings, regardless of whether the PDASFE or ASFE actually used or relied upon such communications in preparing the Preliminary Decision or Final Decision in either or both of the Proceedings, including, but not limited to, any records reflecting such communications with Mary Egger or any other employee of OGC.

3. All records constituting or evidencing written communications to the PDASFE, the ASFE, or representatives of either of them, regarding the Proceedings, regardless of

F2004-00087 Chri

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law



whether the PDASFE or ASFE actually used or relied upon such communications in preparing the Preliminary Decision or Final Decision in either or both of the Proceedings, including, but not limited to, any such communications with Mary Egger or any other employee of OGC.

4. All records discussing the propriety or impropriety of any actual, proposed, or contemplated communication between Mary Egger or any other employee of OGC and the PDASFE or ASFE, or representatives of either of them, relating in any way to the Elk Hills equity redetermination or finalization processes.

5. All records identifying, evidencing, listing, or otherwise tending to show the membership of the DOE equity team and/or the names of the attorneys serving as counsel to the DOE equity team.

6. All records constituting or evidencing written communications between any representative of the Department of Energy (including the contracting officer) and NSAI about the Proceedings, but excluding any materials the DOE field equity technical team provided to NSAI.

For purposes of this request, the following definitions shall apply:

- "PDASFE" means any individual(s) holding the position (including in an acting capacity) of Principal Deputy Assistant Secretary for Fossil Energy.
- "ASFE" means any individual(s) holding the position (including in an acting capacity) of Assistant Secretary for Fossil Energy.
- "NSAI" means Netherland, Sewell & Associates, Inc.
- "written communications" includes all letters, memoranda, electronic correspondence, facsimiles, and transmittals, including any attachments, whether in paper or electronic form.
- "DOE equity team" and "DOE field equity technical team" shall be construed as those terms are used in the May 19, 1997 Agreement Regarding Equity Redetermination Process between DOE and ChevronTexaco.
- "OGC" refers to the Office of General Counsel at the Department of Energy.

AKIN GUMP
STRAUSS HAUER & FELD LLP
Attorneys at Law

February 19, 2004
Page 3

- "contracting officer" refers to Gary Latham or any other DOE employee(s) possessing the responsibility and authority to engage NSAI as the Independent Petroleum Engineer for the Elk Hills final equity determination proceedings and the oversight authority for the contractual relationship between DOE and NSAI.

This request seeks only materials not covered by the response to FOIA request F2003-00009. Also, you do not need to provide the following: any briefs or other submissions DOE and ChevronTexaco have served on each other or their respective counsel in the course of the Elk Hills final equity determination proceedings, any materials ChevronTexaco or its counsel provided to DOE, any correspondence on which ChevronTexaco or its counsel was copied, any reports, presentations, data, or communications prepared by NSAI and provided to both DOE and ChevronTexaco, and any decisions or correspondence prepared by the Independent Legal Advisor under the procedures described in Assistant Secretary for Fossil Energy Administrative Order No. 96-01, Supplement 1 ("Protocol on Naval Petroleum Reserve Number 1 Equity Finalization Implementation Process") and provided to both DOE and ChevronTexaco.

We will pay whatever fees the Department of Energy is authorized to impose under 5 U.S.C. § 552(a)(4) and 10 C.F.R. § 1004.9 in responding to this request, not to exceed $3,000. If the fees exceed that amount, please contact me so that I can determine whether we wish to incur the additional cost to receive the materials. Please also contact me if you have any questions about this request.

Thank you for your assistance.

Sincerely,

Merrill C. Godfrey

Merrill C. Godfrey

# EXHIBIT 22

EXHIBIT 22

Department of Energy
Naval Petroleum Reserves in California
P.O. Box 11
Tupman, California 93276

DEC 15 1997

Mrs. Patricia Fry Godley
Assistant Secretary for Fossil Energy, FE-1
U.S. Department of Energy
Forrestal Bldg., Room 4G-084
1000 Independence Avenue, S.W.
Washington, DC 20585

SUBJECT: PRELIMINARY DECISION FINALIZING PARTICIPATION PERCENTAGES IN PRODUCTION FROM THE CARNEROS ZONE, NAVAL PETROLEUM RESERVE NO. 1

Dear Mrs. Godley:

The Department of Energy's staff at Naval Petroleum Reserve No. 1 and its equity contractor, System Technology Associates, have reviewed the subject document provided by your letter dated November 24, 1997.

I concur with your finalizing the Carneros Zone participation percentages at 100% for the Department of Energy and 0% for Chevron as the final Carneros Zone equity upon the sale of the Department of Energy's interest in the Unit.

Additionally, I concur with your decision regarding a possible future determination regarding additional lands which are not currently included as part of the Unit's Carneros Zone.

Sincerely,

Charles W. Kauffman
Deputy Director
Naval Petroleum Reserves
in California

cc:
R. Dobie Langenkamp, Deputy Assistant Secretary, NPOSR
Gary Latham, Special Assistant, NPOSR ←
Mary Egger, Assistant General Council
Tony Dammer, Director, NPOSR

# EXHIBIT 23

EXHIBIT 23

**Department of Energy**
Washington, DC 20585

October 25, 2001

Memorandum for Robert S. Kripowicz
Acting Assistant Secretary for Fossil Energy

From: Mary H. Egger
Deputy General Counsel
Technology Transfer & Procurement

Subject: Draft Preliminary Decision Finalizing Elk Hills Stevens Zone Equity

Pursuant to your request, attached please find a draft "Preliminary Decision Finalizing Participation Percentages in Production from the Stevens Zone, Naval Petroleum Reserve No. ," which was developed in coordination with your technical staff.

After you have had an opportunity to review the draft, we are available to discuss it further at your convenience. If you have any questions, please call me (x68978) or Gene Cadieux (x63426).

Attachment

cc (w/out attachment):
Gena Cadieux
Gary Latham
Arnold Smits

EXHIBIT 23

DRAFT

PRIVILEGED AND CONFIDENTIAL PREDECISIONAL ANALYSIS
NOT FOR DISTRIBUTION OR RELEASE

# PRELIMINARY DECISION FINALIZING PARTICIPATION PERCENTAGES IN PRODUCTION FROM THE STEVENS ZONE, NAVAL PETROLEUM RESERVE NO. 1

United States Department of Energy
November 2001

EXHIBIT 23

ppgs. ii - 33 - Redacted (b)(5)