JAN 06 2000 17:02 O'MELVENY & MYERS LLP1128 1128 P.02

882691-2

# STA

**System Technology Associates, Inc.**

**4700 Stockdale Hwy., Suite 110**
**Bakersfield, CA 93309**

## FAX COVER SHEET

**DATE:** 1/6/00

**TO:** **NAME:** Butch Gangle/Gary Holcomb – DOE
Ken Schuessler – STA Golden
Greg Thorpe – O'Melveny & Myers

**FAX NUMBER:**

**TELEPHONE:**

**FROM:** **NAME:** Alan Burzlaff

**COMPANY:** System Technology Associates, Inc.

**FAX NUMBER:** (661) 325-4178

**TELEPHONE:** (661) 325-0038

**COMMENTS:**

[redacted]

Thanks, AAB

Number of pages for this transaction (including cover sheet): 9

01/06/00 THU 15:07 [TX/RX NO 7666]

PRELIMINARY COPY

**DOE EFT RESPONSE TO NSAI QUESTIONS DATED OCTOBER 6, 1999**
**FOR THE OWNERS REGARDING UNCOUNTED NGLs**

[redacted]

**Kripowicz, Robert**

| | |
|---|---|
| **From:** | Latham, Gary |
| **Sent:** | Tuesday, October 12, 1999 3:56 PM |
| **To:** | Kripowicz, Robert; EGGER, MARY |
| **Subject:** | Gas - oil conversion |

Reminder that we are scheduled to talk by telephone with all parties about the status of the conversion issue on Friday afternoon (October 15), at 2 p.m. EDT. During our last biweekly equity telecon on September 28, Norm and Butch advised that Chevron had agreed to accept the DOE's product sale prices as part of the conversion equation, but the parties could not agree on the time span to be covered in calculating average prices or the methodology to be used. We learned during today's biweekly telecon that the attorneys have now agreed to send the timing issue to the ILA for resolution and the methodology issue to the IPE. Norm suggested during the discussion that footnote 4 of your Stevens data cutoff decision (p. 7) might reveal prohibited ex parte communication between myself and you (or otherwise how would you have known about the IPE data request, seems to be his point). [redacted]

AUG-04-2000 12:06 O'MELVENY & MYERS P.01/02

O'MELVENY & MYERS LLP

400 South Hope Street
Los Angeles, California 90071-2899

TELEPHONE (213) 430-6000
FACSIMILE (213) 430-6407

## FAX TRANSMITTAL

| | | |
|---|---|---|
| **DATE:** Friday, 08/04/00 | | **TOTAL NUMBER OF PAGES:** 2 |
| **TO:** Mary Egger | **FAX NUMBER:** 202-586-0325 | **TELEPHONE NUMBER:** 202-586-8978 |
| **FROM:** Greg Thorpe | **RETURN FAX NUMBER:** 213-430-6407 | **TELEPHONE NUMBER:** 213-430-6593 |

## MESSAGE

**IF YOU DID NOT RECEIVE ALL PAGES, PLEASE CALL** FAX DEPT. **AT** 213-430-6357.

| | | | |
|---|---|---|---|
| **FILE NO.:** | 882,691-002 | **RETURN ORIGINAL TO:** | Aleif Evangelista |
| **USER NO.:** | 02538 | **EXTENSION:** | 6594 |
| **RESPONSIBLE ATTY NAME:** | Gregory B. Thorpe | **LOCATION:** | 11s12 |
| **SPECIAL INSTRUCTIONS:** | 850211.1 | | |

**This document is intended for the exclusive use of the addressee. It may contain privileged, confidential, or non-disclosable information. If you are not the addressee, or someone responsible for delivering this document to the addressee, you may not read, copy, or distribute it. If you have received this document by mistake, please call us promptly and securely dispose of it. Thank you.**

O'MELVENY & MYERS LLP

**MEMORANDUM**

PERSONAL AND CONFIDENTIAL
ATTORNEY-CLIENT COMMUNICATION

| | |
|---|---|
| TO: | Butch Gangle and Alan Burzlaff |
| COPY TO: | Owen Olpin |
| FROM: | Greg Thorpe |
| DATE: | August 4, 2000 |
| SUBJECT: | **Stevens Zone** (882,691-002) |

[redacted]

GBT

LA3:938362.1

**Department of Energy**
Washington, DC 20585

Assistant Secretary for Fossil Energy Administrative Order No. 96-01

A. SUBJECT: PROTOCOL ON NAVAL PETROLEUM RESERVE NUMBERED 1 EQUITY FINALIZATION IMPLEMENTATION PROCESS

B. BACKGROUND

1. Pursuant to Section 3412(b)(1) of the National Defense Authorization Act for Fiscal Year 1996, Public Law 104-106 (110 Stat. 186), the Secretary of Energy is authorized and directed to "finalize the equity interests of the known oil and gas zones in Naval Petroleum Reserve Numbered 1 in the manner provided by this subsection."

2. Section 3412(b)(2) of the National Defense Authorization Act for Fiscal Year 1996 further provides:

> The Secretary shall retain the services of an independent petroleum engineer, mutually acceptable to the equity owners, who shall prepare a recommendation on final equity figures. The Secretary may accept the recommendation of the independent petroleum engineer for final equity in each know oil and gas zone and establish final equity interest in Naval Petroleum Reserve Numbered 1 in accordance with the recommendation, or the Secretary may use such other method to establish final equity interest in the reserve as the Secretary considers appropriate.

3. The equity owners of lands within Naval Petroleum Reserve Numbered 1, Chevron U.S.A. Production Company (Chevron) and the U.S. Department of Energy (DOE), will present their respective final equity positions to the mutually acceptable independent petroleum engineer (Netherland, Sewell & Associates, Inc.) (hereinafter Equity IPE) to be retained by the Secretary to provide final equity recommendations in the Dry Gas Zone, Carneros Zone, and the Stevens Zone.

4. Over the last two months there have been numerous meetings, discussions and correspondence, and oral communications between Chevron and DOE staff on the equity finalization implementation process. During the course of thesecommunications, Chevron and DOE staff each have presented varying viewsregarding the process to be utilized and have consulted with Netherland, Sewell.

5. This Protocol sets out an equity finalization implementation process that is designed to be open, fair, transparent and one that will adequately protect the respective ownership interests of the owners.

6. Chevron has been provided an opportunity to comment on this Protocol and its comments have been considered by DOE. Chevron has informed DOE that the following Equity Finalization Implementation Protocol is acceptable.

C. EQUITY FINALIZATION IMPLEMENTATION PROTOCOL

The following Equity Finalization Implementation Protocol will be utilized for the finalization of equity interests under section 3412(b)(2) of the National Defense Authorization Act for Fiscal Year 1996:

1. For equity finalization purposes, the zones will be handled in the following sequence: Dry Gas Zone, Carneros Zone, and the Stevens Zone.

2. Each owner has appointed an equity finalization team (EFT) to develop and present its equity positions for each of the three zones under consideration. The EFTs have held an initial joint meeting to begin the exchange of data and information and to identify issues of agreement and disagreement between the owners. The EFTs will provide an Equity Finalization Issues Report to the Equity IPE.

3. The EFTs will jointly meet with the Equity IPE early in the process (tentatively July 9, 1996) to present their respective views of the Equity Finalization Issues Report and to orient the Equity IPE to technical issues and geologic characteristics of the Dry Gas Zone, the Carneros Zone and the Stevens Zone.

4. During the time owners are developing their equity positions, either owner or the Equity IPE may request further orientation sessions. The Equity IPE also may request additional background information to facilitate its technical knowledge of the three zones. All written materials transmitted to the Equity IPE by an owner, including confidential and proprietary information, shall be transmitted immediately by the Equity IPE to the other owner (owners are to provide 10 copies to the Equity IPE). Confidential and proprietary information will be safeguarded by the Equity IPE and the owners, and release is subject to applicable laws and regulations. The Equity IPE shall not accept or consider any information or material that is restricted from being provided to the other owner.

5. There will be no written or oral equity-related communication or meeting with the Equity IPE (this term excludes contract administration communications or meetings) by an owner (including its agents and contractors) without the participation or opportunity to participate by the other owner. Before any equity-related communication or meeting occurs, the Equity IPE will notify both owners of the planned equity-related communication/meeting so as to allow both owners the opportunity to participate in all communications or meetings held between the Equity IPE and an owner. The Equity IPE shall record summaries of these communications/meetings and provide copies to the owners. In the event an owner chooses not to participate in an equity-related communication/meeting, the Equity IPE will notify both owners of that fact in writing prior to having the communication/meeting and provide both owners with a summary of the communication/meeting thereafter.

6. The equity presentations by the owners to the Equity IPE will commence on or about October 8, 1996 for the Dry Gas Zone and Carneros Zone, and on or about January 13, 1997 for the Stevens Zone. For the Stevens Zone, the initial presentations and rebuttals will end on or before January 24, 1997.

7. The order of presentation by the owners will be determined by a coin toss conducted by the Equity IPE in advance of the scheduled date for the Dry Gas Zone, and the owner who presents its equity position second for the Dry Gas Zone will be the first presenter of its equity position for the Carneros Zone. A separate coin toss will be conducted by the Equity IPE for the Stevens Zone.

8. Oral presentations will be conducted at a convenient location designated in advance by the owner conducting the presentation.

9. All equity-related meetings with the Equity IPE, including the presentation by the owners of their respective equity positions for each zone, will be sessions at which both owners are invited to attend (this excludes contract administration meetings that may be required by DOE). Each owner is permitted to designate its attendees, who will execute appropriate confidentiality agreements against disclosure of proprietary information.

10. On September 23, 1996 for the Dry Gas Zone/Carneros Zone and on December 18, 1996 for the Stevens Zone, each owner will submit to the Equity IPE 10 copies of all documentation identified in Attachment 1 hereto. The documentation submitted in advance of the oral presentations is to be the basis of the owners' final equity positions and no alteration in methodology or other significant change in the documentation will be permitted after the date of the advance submission of

documentation. (Correction of errors in the documentation by the owners will be permitted between the date required for the advance submission of documentation and the oral presentation, and any resulting changes by an owner in the documentation submitted must be promptly identified and explained in writing). The Equity IPE will ensure prompt distribution to the other owner of all materials submitted to the Equity IPE by an owner.

11. On the first day of oral presentations for each zone, the owners will provide to the Equity IPE 10 copies of all materials to be used or referred to by them in their presentations. The Equity IPE will provide each owner with copies of the other owner's presentation materials and ensure that each owner has all materials to be used or referred to by the other owner during the presentations (in addition to the documentation provided in advance pursuant to paragraph 10). Owners may not add to or change the presentation materials after the commencement of the first presentation except to correct factual errors in the materials or to provide materials in response to a question from the IPE. If the Equity IPE requests additional documentation from an owner or if an owner makes corrections to any material provided by that owner, such further documentation will be promptly provided to the Equity IPE and, by the Equity IPE, to the other owner. The Equity IPE will provide the owner receiving the further documentation with sufficient time to comment on all additional documentation.

12. For each zone, during and following the first presentation provided by an owner, the Equity IPE may present questions to the presenting owner. During and following the other owner's presentation for that zone, the Equity IPE may present questions to the second presenting owner. Subsequently, the second presenting owner may ask clarifying questions regarding the equity position of the first presenting owner through the Equity IPE and the first presenting owner may ask clarifying questions regarding the equity presentation of the second presenting owner through the Equity IPE. The second presenter for each zone may not reference the first presenter's presentation or offer rebuttal comments during its initial presentation.

13. For each zone, each owner will be permitted to provide, orally and in writing, a rebuttal of the other owner's equity position. The order for the rebuttal sessions shall be the reverse of the order of the original presentations for each zone.

14. During and following each rebuttal presentation, the Equity IPE may ask further questions of the owner making the presentation. If either owner has questions of

the other owner, the questions must be submitted to the Equity IPE, with a copy to the other owner, and the Equity IPE will determine whether to pursue the questions.

15. The Equity IPE shall present (orally and in writing) at a joint session to both parties its provisional recommendation. The owners may pose questions to the Equity IPE for clarification purposes at the oral presentation.

16. Owners will be provided 3 days to transmit written comments on the provisional recommendation to the Equity IPE as to matters of error, factual accuracy, or misinterpretation contained in the provisional recommendation. Following its receipt of both owners' comments, the Equity IPE will promptly transmit a copy of each owner's comments to the other owner.

17. After consideration of the comments, the Equity IPE shall prepare its final recommendation for each zone in accordance with the schedule set forth in the Equity IPE contract.

18. The Equity IPE shall provide its recommendation (orally and in writing) to the Assistant Secretary for Fossil Energy. Both owners may attend such presentation.

19. In the event the owners agree it is not practicable to provide 10 copies of some materials which are otherwise required by this Protocol to be supplied by an owner, the Equity IPE and the owners shall consult regarding the number of copies to be provided to the other owner and the Equity IPE, and the Equity IPE will ensure that each owner has complete and timely access to all materials submitted pursuant to this Protocol so as to provide the other owner with an opportunity to review and comment on all such materials in accordance with the schedules established for each zone. All maps required to be provided by an owner to the IPE and the other owner shall be full scale (at least 1" to 2000'), unless otherwise agreed by the owners.

20. The EFTs and the Equity IPE shall jointly determine the structure and time permitted for the initial and rebuttal presentations. The Equity IPE shall ensure that each owner is able to present its equity positions without interruption by the other owner. Any further matters required to be determined regarding the structure of the equity presentation process will be determined by the Equity IPE in consultation with the owners provided the matter is not otherwise covered by this Order or the Equity IPE contract.

21. In the event a disagreement arises regarding the equity finalization implementation process or this Protocol which cannot be resolved jointly by the Equity IPE and the EFTs, the matter shall be referred to the Assistant Secretary for Fossil Energy (or designee) for resolution. Prior to resolution, the Assistant Secretary will consult with Chevron.

U.S. Department of Energy

Patricia Fry Godley

Assistant Secretary for Fossil Energy

JUL 8 1996

Date

Attachment 1

DOCUMENTATION TO BE SUBMITTED PRIOR TO FINAL PRESENTATIONS

Dry Gas Zone, Carneros Zone, and Stevens Zone

1. Isochore maps of productive acre-feet with Estimated Limiting Lines of Commercial Productivity as of November 20, 1942 for the respective geologic intervals. This should include a supporting digital database of net pay values (in units of feet of true vertical thickness) by well and by geologic interval that are utilized in the construction of the isochore maps.

2. A stratigraphic column or type log that identifies the specific geologic intervals associated with the maps of productive acre-feet prepared for item #1.

3. A structure map on one correlatable marker or horizon at or near the top of the equity zone.

4. Digital database consisting of tabulations by section for each geologic interval of the following as of November 20, 1942:

   - Productive acres
   - Productive acre-feet
   - Oil-in-place

5. Digital database consisting of tabulations by geologic interval and by section (if available) of the following:

   - Weighting factors
   - Hydrocarbon reserves
   - Weighted acre-feet

6. Sufficient explanation of the weighting methodology utilized to "weight" the productive acre-feet such that the weighting factors and weighted acre-feet can be reproduced by the IPE and each owner.

7. The underlying data records, such as computer model output, petrophysical properties, fluid properties, and/or engineering plots, that support the calculation of oil-in-place volumes and the derivation of all weighting factors.