**Electronically Filed on May 24, 2007**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:04cv1365 |
| vs. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**CHEVRON U.S.A. INC.'S RESPONSE TO DEFENDANT'S MOTION TO VACATE THE TRIAL SCHEDULE**

Plaintiff Chevron U.S.A. Inc. ("Chevron") respectfully submits this response to the Government's motion to vacate the trial schedule. Chevron agrees with the Government that the current schedule should be vacated in light of the ongoing discovery procedures and the Court's work regarding the Government's assertions of privilege, but respectfully submits that a modified schedule to which the parties recently agreed should be entered in its place – at least until such time as the modified schedule becomes plainly unworkable. Chevron also opposes the Government's statement, in its motion, of an intent to file a summary judgment motion. The Government's contemplated motion would be improper for a number of reasons: (a) it would be extremely premature at this juncture, and would contravene this Court's instruction that summary judgment motions are inappropriate at this stage of the case; and (b) the motion described by the Government appears to be improperly directed toward seeking adjudication of a variety of free-floating "issues," rather than attempting to dispose of any entire claim, as required by Rule 56. Finally, Chevron proposes a procedure for the *in camera* inspection of additional documents.

1. Trial Schedule: The Government moves to vacate the current trial schedule, but does not propose any revised schedule to be adopted in its place. As Chevron has previously indicated, we agree with the Government that the current schedule, which still includes October 1,

2007 as the date trial is scheduled to commence, should be modified. Nonetheless, Chevron respectfully submits that it would be appropriate to substitute a revised schedule rather than, as the Government proposes, simply to defer entering any schedule until after "resolution of the underlying discovery dispute[s]." Motion at 4. Adopting a modified schedule is the ordinary and appropriate method for addressing delays or conflicts necessitating departure from a schedule, *see, e.g.*, *Int'l Air Response v. United States*, 75 Fed. Cl. 604, 608 (2007) (noting that parties were directed "to propose a new trial date" when they jointly sought vacatur of current schedule), and, moreover, as the Government itself notes, the Court has expressly requested the parties to do so here. *See* Motion at 1 n.1.

As the Government notes, *see id.*, the parties have conferred upon a modified schedule, and had agreed jointly to propose it to the Court, before their telephonic conference with the Court of May 12, 2007. That agreed schedule, which is attached hereto as Exhibit 1, would set a date for trial beginning October 29, 2007. Chevron respectfully submits that this agreed-upon schedule should be adopted in place of the current schedule – at least as a placeholder – until it becomes manifestly plain that the modified schedule is unworkable. Indeed, after the Government filed its motion to vacate the trial schedule, the Court issued its orders of May 21, 2007 including a sealed appendix that provided substantial guidance as to a significant number of withheld documents and indicating that it would continue to provide further guidance on a rolling basis. The Court's guidance may well lead to a very substantial reduction in the number of documents over which the Government formally chooses to assert the deliberative process privilege and may otherwise streamline adjudication of the Government's assertions of privilege. To be sure, the Court has noted the possibility that it may certify its ultimate privilege rulings for interlocutory appeal. But, even if the Court does so, it is not certain that the Federal Circuit would exercise its discretion to accept interlocutory review. In the event either, (1) that this Court ultimately were to decide not to certify its ultimate privilege rulings, or (2) that the Federal Circuit were to decline interlocutory

review over those rulings, it is at least possible that the October 29 trial date and the remainder of the schedule agreed to by the parties would be workable. Thus, Chevron submits that it would be most appropriate to enter the agreed, modified schedule at this time. If future developments make further adjustments to the schedule necessary, the schedule could be altered as appropriate when it becomes certain that the agreed, modified schedule is unworkable.

2. Inappropriateness of Summary Judtment At This Time: Despite the Government's acknowledgement that privilege assertions as to "voluminous" discovery documents remain to be adjudicated, Motion at 3, and that there have been no party depositions "related to the equity finalization process," *id.* at 3 n.4, the Government nonetheless states that it intends to file a summary judgment motion "addressing a number of issues" in the case. *Id.* at 4. The government's contemplated summary judgment motion would be improper, and the Court should not entertain it for several reasons.

In the first place, the Government's proposed summary judgment motion would be facially premature at this stage, where Chevron's ability to engage in discovery has been so limited. There have been no party depositions yet, and a substantial volume of critical documentary evidence remains to be adjudicated by the Court. Indeed, the Government affirmatively acknowledges this defect at page 5 of its motion, and concedes that in light of the lack of discovery, the Court may either "stay proceedings upon the motion" or defer consideration of it pending further discovery. *Id.* at 5.

The Government's motion would be particularly futile — and the expenses and other burdens to Chevron in preparing responsive papers and affidavits would be particularly wasteful — in light of this Court's expression during the telephonic conference of May 13, 2007, of its views that such a summary judgment motion would be premature since Chevron has not yet had the opportunity to conduct most of its discovery in this case. Accordingly, the Government should not be permitted to impose upon Chevron the wasteful and unnecessary expense of responding to a

futile and obviously premature summary judgment motion. *Cf. Mulholland v. United States*, 25 Cl. Ct. 748, 759 (1992) (cautioning the Government against summary judgment motions that "are not consonant with the spirit of the summary judgment rules" and that do not "further the interests of judicial economy").

The Government suggests that, despite the premature nature of a summary judgment motion, Chevron should be forced to go through the formality of filing an opposition and Rule 56(f) affidavit elaborating the premature posture that the Government does not dispute. *See id.* No such ritualistic formalities should be required to preclude summary judgment at this obviously premature point in the litigation. The Government ignores that "the court may relax the criteria [under Rule 56(f)] to fit the facts of the particular case," and that dispensing with the formal requirement of an affidavit in opposition is particularly appropriate where there has been no meaningful opportunity to conduct discovery on the key issues in the case. *See, e.g., Carll v. McClain Indus., Inc.*, No. Civ. 00-233-M, 2001 WL 716128, at *4-5 (D.N.H. June 12, 2001) (denying summary judgment as premature despite absence of Rule 56(f) affidavit).

Second, completely apart from the obvious impropriety of a summary judgment at this extremely preliminary stage, the Government's contemplated motion would still be inappropriate for an additional reason. While the Government is vague about the contours of its contemplated motion, the Government appears to indicate that it will attempt to use the summary judgment procedure to resolve a series of subsidiary "issues" that it believes can "narrow the scope" of the case, rather than to obtain judgment on any claim in the complaint. Motion at 4. The Government indicates, for example, that its motion will address the applicability of paragraph B(4) of the Equity Process Agreement to Mary Egger and others. But such a motion plainly would not resolve Chevron's breach of contract claim. For one thing, it is plain that paragraph B(4) does not *authorize* Mary Egger to assume a dual role as advocate for the DOE equity team and advisor to the ASFE and drafter of the ASFE's decisions. Thus, it is equally plain that the Government could

not be entitled to any ruling that would dispose of Chevron's breach of contract claim, which is based, in part, on Ms. Egger's dual roles, without the completion of further discovery.

Moreover, the Government does not indicate that it can, or will, move with regard to any of the other contractual provisions whose breach independently supports Chevron's breach of contract claim. For example, Chevron's claim for breach of contract is plainly and independently supported by Paragraphs C(4) and C(5) of the 1996 Protocol, ASFE Admin. Order No. 96-01, *Protocol on Naval Petroleum Reserve Numbered 1 Equity Finalization Implementation Process* (July 8, 1996), which expressly prohibit any "written or oral equity-related communication[s] or meeting[s] with the Equity IPE" by either "owner (including its agents and contractors" on an *ex parte* basis. *Id.* ¶ C(5). Recent depositions of NSAI employees have revealed that this provision was repeatedly and materially breached by DOE employees including Mary Egger and Gary Latham, the "technical advisor" to the ASFE. Such breaches included the preparation of a 67-page report to the ASFE on critical technical issues with respect to the Stevens Zone; that report included, *inter alia*, an effective admission that NSAI had made a major error with respect to its analysis of the Stevens Zone that had improved the DOE's equity position by well over $100 million, and a comprehensive defense of a technical ruling in Chevron's favor that the ASFE later reversed to the benefit of DOE's equity position on the purported ground that NSAI had not adequately justified its ruling. Instead of providing Chevron with that report as it was plainly obligated to do, so that Chevron could have properly evaluated these issues for appeal to DOE's Office of Hearings and Appeals or other potential action, DOE buried it. Accordingly, there simply is no prospect that the Government's proposed summary judgment motion could resolve any claim that Chevron has asserted.

In short, the Government appears to envision a summary judgment motion on various free-floating "issues" that will not purport to dispose of any claim in the case. Yet numerous courts have rejected precisely "the type of issue-narrowing sought" by the Government here

through a summary judgment motion. *Arado v. Gen. Fire Extinguisher Corp.*, 626 F. Supp. 506, 509 (N.D. Ill. 1985). It is well-settled that a summary judgment motion "which seeks to resolve only specified issues relevant to [a party's] claims, is entirely inappropriate under *any provision* of Rule 56." *Hawkinson v. Montoya*, No. Civ. A. 04CV01271, 2007 WL 776674, at *2 (D. Colo. Mar. 12, 2007) (emphasis in *Hawkinson*) (collecting cases). "To allow motions for summary judgment on only a portion of a claim would contravene the purposes of a motion for summary judgment, namely judicial efficiency." *Taylor v. Bekins Van Lines, Co.*, No. 95 C 2886, 1996 WL 14004, at *5 (N.D. Ill. Jan. 12, 1996) (internal quotation marks and brackets omitted). For this reason, too, the Government's motion would be improper as a matter of law.

The summary judgment motion described in the Government's current motion would thus be improper, and Chevron respectfully requests the Court to refuse to condone the summary judgment motion that the Government proposes. Such a ruling would spare Chevron the needless expense and burden of preparing a response and supporting affidavits, and would promote efficiency.

3. <u>Procedure for Document Review</u>: Finally, Chevron respectfully proposes an approach to the Court's *in camera* examination of additional documents that Chevron believes would present the most expeditious way to resolve the remaining privilege issues and develop a fuller documentation of the relevant facts. Chevron suggests that after the Court completes its examination of the deliberative-process documents Chevron has identified as most significant, that the Court consider proceeding directly with an *in camera* review of a set of documents redacted or withheld by the Government on attorney-client privilege or work-product grounds. Chevron has identified 263 redacted documents, Ex. 2, and an additional 290 documents withheld in their entirety, Ex. 3, that it believes likely to be most significant, and that warrant priority over the remaining deliberative process documents.

While Chevron respectfully maintains that is entitled to the remaining deliberative process documents, most of the remaining documents in that category, apart from those previously designated as most significant, will likely be less materially significant to its case. For example, a number of those documents appear to be either duplicate copies of, or generally similar drafts to, documents already designated in the initial set of significant deliberative process documents. Chevron believes that the attorney-client and work-product documents identified in Exhibits 2 and 3, by contrast, are likely to provide significant support to its case. For example, while the deliberative process documents tend to demonstrate Ms. Egger's heavy involvement with the activities of the ASFE in the equity finalization process, Chevron expects the documents listed in Exhibits 2 and 3 to reveal Ms. Egger's extensive participation in the activities of DOE equity team, whose advocacy the ASFE was supposed to judge impartially. Chevron believes that these documents will reveal Ms. Egger's involvement in a wide range of technical, procedural, administrative, and legal issues on behalf of the Department of Energy equity team, all while she was secretly operating as advisor to the ASFE and a draftsperson and/or significant contributor to the ASFE's decisions.

Accordingly, Chevron believes that the most expeditious course of action would be for the Court to order DOE to provide to the Court for *in camera* review the attorney-client and attorney work product documents identified by Chevron on the attached lists, and to review those documents, once the Court completes review of the list of most significant deliberative process documents that Chevron has previously identified.

## CONCLUSION

For the foregoing reasons, Chevron agrees with the Government that the current trial schedule should be vacated, but respectfully requests that the parties' previously agreed alternative schedule attached as Exhibit 1 should be entered in its place. Chevron also respectfully requests that the Court refuse to condone the summary judgment motion that the Government proposes to file. And finally, Chevron proposes that after the Court completes its *in camera* review of the first set of deliberative process documents previously designated by Chevron, the Court proceed to an *in camera* review of the most significant attorney-client and work-product documents, which are identified in Exhibits 2 and 3.

Dated: May 24, 2007

Respectfully submitted,

/s/ Lawrence D. Rosenberg

Donald B. Ayer
Lawrence D. Rosenberg
*Counsel of Record*
Michael S. Fried
Louis K. Fisher
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*