IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, | ) | No. 04-1365C |
| v. | ) | (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION FOR CLARIFICATION
OF THE SCOPE OF BIFURCATED PROCEEDINGS

Pursuant to the discussion in the May 11, 2007 telephonic status conference, defendant, the United States, has commenced taking depositions in the above-captioned action. In light of the position taken by plaintiff, Chevron U.S.A. Inc. ("Chevron"), in the opening deposition, we respectfully request that the Court clarify the scope of the bifurcated proceedings in this case so as to make clear that the issues to be resolved during the liability phase include not only the issue of whether defendant breached the Equity Process Agreement between Chevron and the Department of Energy ("DOE") as alleged, but also whether any *ex parte* communication that may be determined to have violated the Equity Process Agreement had any effect upon either the equity finalization recommendation(s) of the Independent Petroleum Engineer ("IPE") or the decision(s) of the Assistant Secretary for Fossil Energy ("ASFE"), as the case may be. The liability phase of the case should address the effect of any alleged improper *ex parte* communication upon the decisionmaking process, i.e., whether any such communication influenced a given IPE recommendation or ASFE decision and, if so, whether to Chevron's disadvantage.

The August 22, 2006 Pretrial and Trial Schedule initially adopted for this case and the February 5, 2007 Revised Pretrial and Trial Schedule presently in effect provide, simply, that

"[t]he proceedings upon liability and damages, including discovery and trial, shall be bifurcated." The proposed alternative pretrial and trial schedules appended to "Defendant's Motion for Leave to File Scheduling Alternatives" dated July 21, 2006, however, elaborated upon the scope of bifurcation:

> The proceedings upon liability and damages, including discovery and trial, shall be bifurcated. The issues to be resolved during the liability phase of the case include whether, as alleged, defendant breached the Equity Process Agreement between plaintiff and the department of Energy and, if so, the effect of any *ex parte* communication in breach of the Equity Process Agreement upon either the recommendation(s) of the Independent Petroleum Engineer or the decision(s) of the Assistant Secretary for Fossil Energy, as the case may be.

Until recently, the Government believed that Chevron shared this view. Our discovery requests to Chevron in the present liability phase of the case, among other things, seek information about any alleged improper *ex parte* communications that Chevron contends influenced the various equity finalization recommendations of the IPE or decisions of the ASFE. See Interrogatories Nos. 9-18 contained in "Defendant's First Set of Interrogatories" dated September 8, 2006, Def. App. 7-16. Chevron, in its responses to those discovery requests, does not take the position that they are not a proper subject of discovery in the liability phase of the case. See "Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories" dated October 24, 2006. Def. App. 20-27. In fact, the case schedule presently in effect, to which Chevron agreed, provides that Chevron will furnish complete responses to defendant's Interrogatories 4 through 18 upon the Court's resolution of the pending privileged documents dispute. See Revised Pretrial and Trial Schedule, at ¶ 2(d).

During the Government's recent deposition of Norman Stone, a Chevron official, on May 31 and June 1, 2007, an exchange took place between counsel for Chevron and the Government at which time Chevron's counsel expressed the view that the issue of the effect upon the Elk Hills equity finalization process of any alleged improper *ex parte* communication is reserved for the second or "damages" phase of this lawsuit and should not be the subject of any aspect of the first or "liability" phase of these bifurcated proceedings, including discovery upon liability issues. In other words, according to Chevron, as we understand, the only issues to be addressed during the liability phase of this action are the existence of an obligation or duty arising out of the Equity Process Agreement and breach of that duty, without a determination of whether there is a causal nexus between any established breach of contract and Chevron's alleged injury, which necessarily entails consideration of the effect of any proven improper *ex parte* communication upon the decisionmaking process.

This difference of view about the scope of the bifurcation in this case should be resolved before the discovery proceedings in the first phase of the case advance much farther, in particular Chevron's depositions of present and former DOE officials and DOE's outside counsel and consultants which, for the time being, are deferred pending the Court's resolution of the privileged document dispute between the parties. We will be unable to proceed with meaningful discovery if Chevron refuses to provide evidence of its claim that the United States is liable for alleged breach of contract because it views the issue of causation to be reserved for the damages phase of the case.

It is elementary that, to recover for a breach of contract, a claimant, such as Chevron, "must show three necessary elements – liability, causation, and resultant injury." Servidone

Construction Corp. v. United States, 931 F.2d 860, 861 (Fed. Cir. 1991). A claimant must show the fact of injury or loss with certainty. Lisbon Contractors, Inc. v. United States, 828 F.2d 759, 767 (Fed. Cir. 1987); Willems Industries, Inc. v. United States, 155 Ct. Cl. 360, 376, 295 F.2d 822, 831 (1961), cert. denied, 370 U.S. 903 (1962). The alleged injury or loss must be the direct or proximate result of the breach of contract. See, e.g., Hughes Communications Galaxy, Inc. v. United States, 271 F.3d 1060, 1066 (Fed. Cir. 2001) (citing Locke v. United States, 151 Ct. Cl. 262, 270, 283 F.2d 521, 526 (1960)). "For a damage to be direct, there must appear no intervening incident (not caused by the defaulting party) to complicate or confuse the certainty of the result between the cause and the damage; the cause must produce the effect inevitably and naturally, not possibly nor even probably." La Van v. United States, 382 F.3d 1340, 1351 (Fed. Cir. 2004) (quoting Myerle v. United States, 33 Ct. Cl. 1, 27 (1897)).

It is also clear that, "even in a hearing which is limited to the issue of liability, plaintiff must present some evidence that it was damaged by the governmental actions of which it complains." Chemical Technology, Inc. v. United States, 1982 WL 36669, at 4 (Ct.Cl. 1982). As stated by the court in Puritan Associates v. United States, 215 Ct. Cl. 976, 978, 566 F.2d 1191 (1977): "Even if, as here, the assessment of damages is reserved for the quantum phase of the case, the plaintiff as part of its proof of entitlement, must show it was damaged to some extent, by defendant's derelictions . . . ." Accord Cosmo Construction Co. v. United States, 196 Ct. Cl. 463, 469-70, 451 F.2d 602, 605-06 (1971) (In merits phase of board proceeding, "evidence on damages or quantum is not totally excluded, because there must be *some* evidence of damage to support a finding on liability" "sufficient to demonstrate that the issue of liability is not purely academic; that some damage has occurred." (emphasis in original)).

Chevron's position, therefore, is both legally wrong and practically unreasonable. To establish liability, Chevron must prove not only that a breach of contract by the Government occurred, but also that the breach is a direct or proximate cause of any damages. The reason to bifurcate proceedings is so that the Court and the parties do not need to proceed with the damages aspect of the case if Chevron fails to establish Government liability. Chevron fails to do so if it does not establish the existence of a Government breach or that such a breach if proven caused its alleged damages. Assuming it can prove Government liability, Chevron then has the burden in the damages phase of the case to prove the existence, reasonableness, and amount of its claimed damages.

Postponing consideration of the effect of an alleged improper *ex parte* communication upon the Elk Hills equity finalization until the damages phase of this litigation simply defeats the purpose of bifurcation and would result in an inefficient use of the Court's time and impose an unreasonable burden upon the witnesses, assuming for the sake of argument that the Court were to find a breach of contract as alleged. Under that scenario, the Court, in the second phase of the litigation, would have to reacquaint itself with the breach-of-contract rulings and the related evidence in order to consider additional evidence presented at a second trial of the effect of the breach of contract determined in the first phase of the litigation upon the Elk Hills equity finalization process. This would be wasteful of the Court's time and resources and impose an unreasonable burden upon numerous witnesses.

Chevron list of witnesses to be deposed in this case includes 15 present and former DOE officials for depositions, four of which are former Assistant Secretaries for Fossil Energy (Patricia F. Godley, Carl Michael Smith, Robert Kripowicz, Jeffrey Jarrett) and two of which are for-

mer General Counsel (Robert Nordhaus, Lee Lieberman Otis). See December 6, 2006 letter from Chevron's counsel to defendant's counsel, at 1, Def. App. 31. In addition, Chevron intends to depose a present partner (Gregory Thorpe) and a former partner (Owen Olpin) of the law firm of O'Melveny & Myers and the two individuals (Edward S. Renwick, C. Kenneth Roberts) who served as Independent Legal Advisors for the Elk Hills equity finalization process. Id., at 2, Def. App. 2. If adjudication of the effect of any alleged improper *ex parte* communication upon the Elk Hills equity finalization process were not addressed until the damages phase of the case, all of these individuals would be subjected to the possibility of being deposed twice – once during the liability phase and a second time during the damages phase of the case – as well as having to appear and testify at two trials.[1/] This is unreasonable.

Rather than require liability witnesses to appear, the proper subject of the damages phase of this bifurcated proceeding should be issues relating to costs allegedly expended by Chevron in reliance upon the Equity Process Agreement that, allegedly, are a waste because of the "taint" upon the Elk Hills equity finalization proceedings resulting from the *ex parte* communications that Chevron alleges violated the Equity Process Agreement. Thus, it is necessary to resolve the effect of any established improper *ex parte* communication upon the Elk Hills equity finalization proceedings during the liability phase of the case. In addition to establishing the legal predicate for considering damages, this would bring more focus to the damages phase. The parties would have the benefit of the Court's rulings upon the effect of any proven improper *ex parte* communication so that the parties could focus upon alleged expenditures by Chevron associated with that

[1] DOE officials Mary Egger, Beth Kelly, and Gary Latham were deposed by Chevron in June and July of 2006 in connection with the expedited discovery allowed by the Court concerning a DOE legislative proposal. So they potentially would have to give *three* depositions in this case.

part of the Elk Hills equity finalization process affected by the offending *ex parte* communications.

For the foregoing reasons, the Government's motion should be granted and the Court should clarify that the issues to be resolved during the liability phase include the effect upon the Elk Hills equity finalization process of any *ex parte* communication allegedly in breach of the Equity Process Agreement.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

/s/ John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-1438
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

JUNE 12, 2007

CERTIFICATE OF FILING

I hereby certify that on this 12th day of JUNE, 2007, a copy of "DEFENDANT'S MOTION FOR CLARIFICATION OF THE SCOPE OF BIFURCATED PROCEEDINGS" and related appendix were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske