# DEFENDANT'S APPENDIX

## INDEX TO DEFENDANT'S APPENDIX

**Document** **Page**

Portions of "Defendant's First Set of Interrogatories" dated September 8, 2006 ........... 1

Portions of "Plaintiff's Objections and responses to Defendant's First Set of Interrogatories" dated October 24, 2006 ........................................................... 19

Letter dated December 6, 2006, from plaintiff's counsel to defendant's counsel .......... 31

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, | ) | No. 04-1365C |
| v. | ) | (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S FIRST SET OF INTERROGATORIES

Pursuant to RCFC 26 and 33, defendant propounds the following interrogatories to plaintiff, Chevron U.S.A. Inc. (Chevron). In responding to these interrogatories, defendant requests that Chevron produce all information and documents in their possession, custody or control, or otherwise available to their employees, agents, consultants, attorneys, and accountants, whether past or present, or documents that are otherwise subject to their custody or control. If Chevron cannot answer any or all of the following interrogatories after exercising due diligence to secure the information needed to do so, we request that Chevron so state and answer the interrogatories to the extent possible, specifying the basis for Chevron's inability to answer the remainder and stating whatever information or knowledge Chevron has concerning the unanswered portion.

DEFINITIONS AND INSTRUCTIONS

As used herein, the following terms or abbreviations have the following meanings:

1. "And" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other whenever such construction will serve to bring within the scope of these requests any items that otherwise would not be brought within their scope.

2. "Chevron" means Chevron U.S.A. Inc., including, without limitation, any division, group, affiliate, or other entity owned or controlled by Chevron U.S.A. Inc., all present and past officers, directors, employees, agents, or representatives of Chevron U.S.A. Inc., and all predecessor entities of Chevron U.S.A. Inc.

3. "Communication" means the expression of any statement, question, command, idea, knowledge, information, or other matter, whether by speech, writing, sign, or otherwise.

4. "Complaint" means the "Complaint" filed by Chevron on August 20, 2004, in the above-captioned action.

5. "Computer" includes microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers, minicomputers, and mainframe computers.

6. "Date" means the exact day, month, and year, if ascertainable, and, if not, the best approximation.

7. "Department of Energy" means the United States Department of Energy, including any and all present and former employees, representatives, officers, or agents of the Department of Energy.

8. "Decoupling Agreement" means the ""'Agreement Regarding Fixing of Equity Interest at Naval Petroleum Reserve No. 1 for Purposes of Sale" dated May 19, 1997 between Chevron and the Department of Energy.

9. "Document" or "documents" means any written, recorded (by any means), or graphic matter, however produced or reproduced, in the possession, custody, or control of Chevron or Chevron's counsel, or known to Chevron or Chevron's counsel, whether or not claimed to be privileged or confidential or personal, including, but not limited to, any "document," "tangible thing," or "object," as those terms are used in RCFC 34, and any "writing," "recording," "photograph," "original, or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules of Evidence. "Document" or "documents" includes, but is not limited to: letters; memoranda; reports; agreements; working papers; preliminary, intermediate, and final drafts; communications (including intra- and inter-office communications, inter-company communications); correspondence; e-mail; reports of telephone or other conversations; electronic data, as defined below; computer runs; view-foils; compilations; summaries of records of personal conversations; diaries; appointment books; desk calendars; financial calculations; forecasts; statistical statements; graphs; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigation opinions or reports of consultants; opinions of counsel; reports of or summaries of either negotiations by Chevron or preparation of such; circulars; books; instruments; accounts; tapes and all other material of any tangible medium of expression and original or preliminary notes. A true copy will suffice provided that Chevron waives any objection to authenticity and will have the original

available for inspection upon the request of defendant at the time of the preparation of the pretrial order and at the time of trial. "Document" or "documents" also include copies of documents that are not identical duplicates of the originals and copies of documents the originals of which are not in the possession, custody, or control of Chevron.

10. "E-mail" means any computer-based system of electronic mail.

11. "Electronic data" means data of any kind or description, inscribed by computer, mechanical, facsimile, electronic, magnetic, digital, or other means, including, but not limited to, any and all items stored on e-mail; computer memories; hard disks; floppy disks; CD-ROMS, removable media such as Zip, Jaz, Bernoulli Box drives and their equivalent; magnetic tape of all types; microfiche; punched cards; punched tape, or data on or in any other vehicle for digital storage or transmittal; computer programs (whether private or commercial); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, any and all ASCII and EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether this electronic data exists in an active file, deleted file, or file fragment. The term "electronic data" also includes the file, folder tabs, containers and labels appended to or associated with any physical storage device for such data.

12. "Equity Process Agreement" means the "Agreement Regarding Equity Redetermination Process" dated May 19, 1997 between Chevron and the Department of Energy.

13. "Identification" or "identify" in reference to:

(a) a natural individual means to state (a) his or her full name, (b) his or her business and residential addresses, (c) his or her business and residential telephone numbers, and, (d) if pres-

ently employed by Chevron, his or her present position(s) with Chevron. (If the individual's current business and residential addresses and telephone numbers are not known, provide his or her last known business and residential addresses and last known business and residential telephone numbers.);

(b) a <u>person other than a natural individual</u> means to state, to the extent known, its full name, address, and telephone number (If the person's current business and residential address and telephone number is not known, provide the last known address and telephone number.);

(c) a <u>document</u> means to state, to the extent known, the author or originator, the addressee or addressees (if any), the date indicated on the documents as being the date thereof or the date (as exactly as possible) upon which the document was written or executed if no date is shown upon it, a description of the type of document (for example, letter, handwritten notes, etc.), the number of pages, the title (if any), and identification number, the present location and custodian of the original thereof, or, if unknown, the present custodian of any copy thereof and the last known address of each such custodian, and a summary of the contents thereof. We request that Chevron also state whether it has possession or control of the original or a copy of the document, and state the manner and date of disposition of any document that was, but no longer is, in its possession or subject to its control. (**Instead of identifying a document in the foregoing manner, when a document on its face indicates the date and author, the recipient, and the subject matter, Chevron may furnish, simultaneously with the filing of answers to these interrogatories, such documents for inspection and copying by defendant.**);

(d) a <u>telephone conversation</u> means to identify the caller and the recipient, and to identify any other person who was a party to the conversation, and to state, to the extent known, the loca-

tion of each at the time the call was made, the date and time of the conversation, and the author or maker and addressee of each statement, question, or remark made during the telephone conversation, and the substance of each such statement, question, or remark; and

(e) a communication means to state the nature of the communication (for example, letter, telephone conversation, private meeting, advertisement) and, to the extent that the communication was recorded in writing or stored electronically, to identify the pertinent document or documents and, to the extent that the communication was not written, to identify the person or persons involved in the communication, and to state, to the extent known, the place, date, and method of communication, and the author or maker and addressee of each statement, question, or remark, and the substance of each such statement, question, or remark.

14. "Person" and "individual" include a corporation, partnership, other business association or entity, any natural person, and any domestic or foreign governmental body, commission, board, agency, branch, department, or component or element thereof.

15. "Relate to," "relates to," or "relating to" means comprising, mentioning, analyzing, discussing, summarizing, describing, referring to, containing, depicting, embodying, evidencing, constituting, concerning, reporting, or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

16. "Representative" means officers, directors, employees, attorneys, consultants, and any other person speaking upon behalf of Chevron.

17. "Testimonial evidence" means all evidence from individuals that is not contained in documents.

INTERROGATORY NO. 9

If Chevron contends that NSAI's provisional recommendation with respect to equity finalization for the Dry Gas Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 10

If Chevron contends that NSAI's final recommendation with respect to equity finalization for the Dry Gas Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's final recommendation that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 11

If Chevron contends that NSAI's provisional recommendation with respect to equity finalization for the Carneros Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 12

If Chevron contends that NSAI's final recommendation with respect to equity finalization for the Carneros Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's final recommendation that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 13

If Chevron contends that NSAI's provisional recommendation with respect to equity finalization for the Stevens Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 14

If Chevron contends that NSAI's final recommendation with respect to the Stevens Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's final recommendation that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 15

If Chevron contends that NSAI's provisional recommendation with respect to the Shallow Oil Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 16

If Chevron contends that the final decision of the Assistant Secretary for Fossil Energy (ASFE) concerning equity finalization for the Dry Gas Zone was influenced by an improper communication between the ASFE (or any member of the ASFE's staff) and an attorney in the Department of Energy Office of General Counsel, identify each such communication and each finding, conclusion, or other aspect of the AFSE's final decision concerning the Dry Gas Zone that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 17

If Chevron contends that the final decision of the Assistant Secretary for Fossil Energy (ASFE) concerning equity finalization for the Carneros Zone was influenced by an improper communication between the ASFE (or any member of the ASFE's staff) and an attorney in the Department of Energy Office of General Counsel, identify each such communication and each finding, conclusion, or other aspect of the AFSE's final decision concerning the Carneros Zone that Chevron contends was influenced by each such communication.

ANSWER:

INTERROGATORY NO. 18

If Chevron contends that the final decision of the Assistant Secretary for Fossil Energy (ASFE) concerning equity finalization for the Stevens Zone was influenced by an improper communication between the ASFE (or any member of the ASFE's staff) and an attorney in the Department of Energy Office of General Counsel, identify each such communication and each finding, conclusion, or other aspect of the AFSE's final decision concerning the Stevens Zone that Chevron contends was influenced by each such communication.

ANSWER:

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

SEPTEMBER 8, 2006

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 8th day of SEPTEMBER, 2006, I caused to be sent by United States mail (postage prepaid) "DEFENDANT'S FIRST SET OF INTERROGATORIES" addressed as follows:

LAWRENCE D. ROSENBERG, ESQ.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

[signature]

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES**

Pursuant to Court of Federal Claims Rule 33, Plaintiff Chevron U.S.A. Inc. hereby submits the following objections and responses to Defendant's First Set of Interrogatories. Plaintiff reserves the right to supplement, correct, or clarify its responses to these interrogatories as it continues to investigate and discover the facts in this case.

GENERAL OBJECTIONS

Plaintiff incorporates the following general objections into each of its specific responses to Defendant's First Set of Interrogatories. Plaintiff objects to each interrogatory to the extent it seeks information that is not in the custody and/or control of Plaintiff, but rather in the custody and/or control of Defendant. Plaintiff also objects to each interrogatory to the extent it seeks any information that is protected by the attorney-client privilege, the work product doctrine, or is otherwise protected from disclosure under applicable law or any other evidentiary privileges or immunity from production. The inadvertent disclosure of any privileged information shall not signify any intent by Plaintiff to waive the rights to such privilege.

ANSWER:

This interrogatory duplicates Interrogatory No. 7 *verbatim*. *See* Plaintiff's response to Interrogatory No. 7.

**INTERROGATORY NO. 9**

**If Chevron contends that NSAI's provisional recommendation with respect to equity finalization for the Dry Gas Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. To the extent that Plaintiff understands this interrogatory, Plaintiff answers that ex parte or other improper communications related to the Dry Gas Zone irrevocably tainted the equity re-determination and finalization process for the Dry Gas Zone in its entirety. To the extent that this interrogatory seeks identification of ex parte or other improper communications, Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant. To the extent it understands this interrogatory, Plaintiff will supplement its response at such time as it possesses information sufficient to answer further.

**INTERROGATORY NO. 10**

**If Chevron contends that NSAI's final recommendation with respect to equity finalization for the Dry Gas Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such**

**communication and each finding, conclusion, or other aspect of NSAI's final recommendation that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. To the extent that Plaintiff understands this interrogatory, Plaintiff answers that ex parte or other improper communications related to the Dry Gas Zone irrevocably tainted the equity re-determination and finalization process for the Dry Gas Zone in its entirety. To the extent that this interrogatory seeks identification of ex parte or other improper communications, Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant. To the extent it understands this interrogatory, Plaintiff will supplement its response at such time as it possesses information sufficient to answer further.

**INTERROGATORY NO. 11**

**If Chevron contends that NSAI's provisional recommendation with respect to equity finalization for the Carneros Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. To the extent that Plaintiff understands this interrogatory, Plaintiff answers that ex parte or other improper communications related to the Carneros Zone irrevocably tainted the equity re-determination and finalization process for Carneros Zone in its entirety. To the extent that this interrogatory seeks

identification of ex parte or other improper communications, Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant. To the extent it understands this interrogatory, Plaintiff will supplement its response at such time as it possesses information sufficient to answer further.

**INTERROGATORY NO. 12**

**If Chevron contends that NSAI's final recommendation with respect to equity finalization for the Carneros Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's final recommendation that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. To the extent that Plaintiff understands this interrogatory, Plaintiff answers that ex parte or other improper communications related to the Carneros Zone irrevocably tainted the equity re-determination and finalization process for the Carneros Zone in its entirety. To the extent that this interrogatory seeks identification of ex parte or other improper communications, Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant. To the extent it understands this interrogatory, Plaintiff will supplement its response at such time as it possesses information sufficient to answer further.

INTERROGATORY NO. 13

**If Chevron contends that NSAI's provisional recommendation with respect to equity finalization for the Stevens Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. To the extent that Plaintiff understands this interrogatory, Plaintiff answers that ex parte or other improper communications related to the Stevens Zone irrevocably tainted the equity re-determination and finalization process for the Stevens Zone in its entirety. To the extent that this interrogatory seeks identification of ex parte or other improper communications, Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant. To the extent it understands this interrogatory, Plaintiff will supplement its response at such time as it possesses information sufficient to answer further.

INTERROGATORY NO. 14

**If Chevron contends that NSAI's final recommendation with respect to the Stevens Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's final recommendation that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. To the extent that Plaintiff understands this interrogatory, Plaintiff answers that ex parte or other improper communications related to the Stevens Zone irrevocably tainted the equity re-determination and finalization process for the Stevens Zone in its entirety. To the extent that this interrogatory seeks identification of ex parte or other improper communications, Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant. To the extent it understands this interrogatory, Plaintiff will supplement its response at such time as it possesses information sufficient to answer further.

**INTERROGATORY NO. 15**

**If Chevron contends that NSAI's provisional recommendation with respect to the Shallow Oil Zone was influenced by an ex parte communication or communications between the Department of Energy and NSAI, identify each such communication and each finding, conclusion, or other aspect of NSAI's provisional recommendation that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. To the extent that Plaintiff understands this interrogatory, Plaintiff answers that ex parte or other improper communications related to the Shallow Oil Zone irrevocably tainted the equity re-determination and finalization process for the Shallow Oil Zone in its entirety. To the extent that this interrogatory seeks identification of ex parte or other improper communications, Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the

subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant. To the extent it understands this interrogatory, Plaintiff will supplement its response at such time as it possesses information sufficient to answer further.

**INTERROGATORY NO. 16**

**If Chevron contends that the final decision of the Assistant Secretary for Fossil Energy (ASFE) concerning equity finalization for the Dry Gas Zone was influenced by an improper communication between the ASFE (or any member of the ASFE's staff) and an attorney in the Department of Energy Office of General Counsel, identify each such communication and each finding, conclusion, or other aspect of the ASFE's final decision concerning the Dry Gas Zone that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant.

Subject to and without waiving its general and specific objections, Plaintiff responds that communications between attorneys in the DOE General Counsel's office and the ASFE (or the ASFE's staff) reflected in the following documents improperly influenced the ASFE's decision concerning the Dry Gas Zone:

P-00218-00220
P-00222-00223
P-00233-00234
P-00236-00237

P-00284-00285
P-00287-00288
P-00290-00292
P-00294-00295

**INTERROGATORY NO. 17**

**If Chevron contends that the final decision of the Assistant Secretary for Fossil Energy (ASFE) concerning equity finalization for the Carneros Zone was influenced by an improper communication between the ASFE (or any member of the ASFE's staff) and an attorney in the Department of Energy Office of General Counsel, identify each such communication and each finding, conclusion, or other aspect of the ASFE's final decision concerning the Carneros Zone that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant.

Subject to and without waiving its general and specific objections, Plaintiff responds that communications between attorneys in the DOE General Counsel's office and the ASFE (or the ASFE's staff) reflected in the following documents improperly influenced the ASFE's decision concerning the Carneros Zone:

P-00193
P-00225-00226
P-00228-00231

INTERROGATORY NO. 18

**If Chevron contends that the final decision of the Assistant Secretary for Fossil Energy (ASFE) concerning equity finalization for the Stevens Zone was influenced by an improper communication between the ASFE (or any member of the ASFE's staff) and an attorney in the Department of Energy Office of General Counsel, identify each such communication and each finding, conclusion, or other aspect of the ASFE's final decision concerning the Stevens Zone that Chevron contends was influenced by each such communication.**

ANSWER:

Plaintiff objects to this interrogatory because it is vague and ambiguous. Plaintiff further objects on the grounds that this interrogatory is premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. In addition, Plaintiff objects to this interrogatory as unduly burdensome because it requests information that is primarily within the custody and/or control of Defendant.

Subject to and without waiving its general and specific objections, Plaintiff responds that communications between attorneys in the DOE General Counsel's office and the ASFE (or the ASFE's staff) reflected in the following documents improperly influenced the ASFE's decision concerning the Stevens Zone:

P-00796-00797
P-00802-00804
P-00811-00813
P-00815-00816
P-00818-00820
P-00822-00826

Dated: October 24, 2006

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Counsel for Chevron U.S.A. Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2006, a true and correct copy of the foregoing **PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FIRST SET OF INTERROGATORIES** was served upon:

John E. Kosloske, Esq. **(By hand and email)**
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005
john.kosloske@usdoj.gov

Leslie Ohta **(By email)**
Trial Attorney
Commercial Litigation Branch
Civil Division,
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
leslie.ohta@usdoj.gov

Paul T. Michael **(By email)**
Of Counsel
Office of General Counsel
Department of Energy
Washington, D.C. 20585
paul.michael@hq.doe.gov

Lawrence Rosenberg

VERIFICATION

I, Norman Stone, employee of Chevron U.S.A. Inc., depose and say as follows: I have read the foregoing Objections and Responses to Defendant's First Set of Interrogatories, and based upon representations made to me and upon information reasonably available to Chevron U.S.A. Inc. at this time, the information contained in Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories is true to the best of my knowledge, information, and belief.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 23, 2006.

Norman Stone

Subscribed and sworn to before me
this 23 day of October, 2006

Notary Public

My Commission Expires: 9-23-2010

JOY K. MOYER
Commission # 1695486
Notary Public - California
Kern County
My Comm. Expires Sep 23, 2010

JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: (202) 879-7622
ldrosenberg@jonesday.com

December 6, 2006

VIA FACSIMILE AND FIRST-CLASS MAIL

John E. Kosloske, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005

Re: *Chevron U.S.A. Inc. v. United States*, No. 04-1365C (Fed. Cl.)

Dear John:

I write to follow up on our conversations from earlier this week and from last week and to respond to your letter of December 4, 2006, with respect to production of expert reports.

To begin with, I want to reiterate our concern that we proceed in as expeditious a manner as possible to complete discovery so that we can proceed to trial as scheduled, beginning on April 30, 2006. As you know, the trial schedule was the result of significant discussions and compromise involving the parties and the Court.

As we discussed last week, in addition to the NSA witnesses that we agree should be deposed, Plaintiff's rough list of likely deponents is as follows:

Mary Egger
Gina Cadieux
Beth Kelly
Gary Latham
Tony Dammer
Arnie Smits
Butch Gangle
Charles Wayne Kauffman
Alan Berzloff, DOE equity team contractor
Pat Godley, former ASFE
Robert Kripowitz, former ASFE
Carl Michael Smith, former acting ASFE
Jeff Jarrett, current ASFE
Robert Nordhaus, former General Counsel, DOE
Lee Liberman Otis, former General Counsel, DOE

Greg Thorpe, outside counsel for DOE
Edward Renwick, former Independent Legal Advisor
Kenneth Roberts, former Independent Legal Advisor

Of course this list may change, depending on the outcome of discovery. We do anticipate that several of the depositions of these individuals could be completed in half a day.

Moreover, as we have also discussed, given the progress of discovery and all that remains to be completed, we propose amending the pretrial schedule in the following ways (some of which are a bit different from what we proposed last week):

| | |
|---|---|
| Close of fact discovery – | Change from February 16 to March 16 |
| Expert reports – | Change from December 15 to January 5 |
| Rebuttal reports – | Change from January 26 to February 16 |
| Expert deposition deadline – | Change from February 16 to March 16 |
| Meeting of Counsel – | Change from February 23 to March 21 |
| Dispositive Motion deadline – | Change from February 23 to March 21 |
| Pretrial submission deadline – | Change from March 30 to April 16 |
| Pretrial responses – | Change from April 10 to April 23 |
| Pretrial conference – | Change from April 24 to April 26 |

With respect to the expert reports, there are two reasons why we would like to move the deadline to January 5 for the experts' preliminary reports. First, both Professor Hazard and Professor Breger have expressed a desire to see any relevant documents produced by the defendant in discovery and will not have a meaningful opportunity to examine such documents by the current deadline. While both experts will, in part, be basing their opinions on the allegations contained in plaintiff's complaint, they also would like to consider any evidence relevant to those allegations as part of their analyses. Second, both have scheduling issues (including out-of-town commitments over the next few weeks) that would make it very difficult to complete their preliminary reports by December 15. In light of this information, please let me know if you will object to moving the deadline for the experts' preliminary reports to January 5, 2007.

Finally, as we have also discussed, we would like to attempt to streamline the process for resolving possible privilege issues. As I noted, we are primarily concerned with the possibility

that the Government will attempt to assert privilege to withhold production of four categories of information that we believe implicate the core issues in this suit: (1) information such as drafts and comments that reflect input from members of the DOE equity team, including attorneys such as Mary Egger and her subordinates, into the preliminary and final ASFE decisions that have been issued as part of the equity finalization process; (2) communications and related information that evidence or describe ex parte communications between the ASFE and members of the DOE equity team, including attorneys such as Mary Egger; (3) communications and related information that evidence or describe ex parte communications between or among the ASFE, the DOE equity team, including attorneys such as Mary Egger, and Netherland, Sewell, and Associates, Inc.; and (4) information such as internal drafts and comments that reflect the parties' understanding and intent regarding the prohibitions on ex parte communications contained in the Equity Process Agreement, the 1996 Protocols and related documents.

While we appreciate your position that your privilege designations and decisions are based on document-by-document analyses, we believe that the discovery process could be aided by disclosure of whether the Government intends to invoke privilege with respect to materials containing any or all of these four categories of information. If so, we believe that it would be expeditious to set up a briefing schedule now to resolve such assertions of privilege. Of course, we are amenable to devising such a schedule with due regard for the equally urgent task of completing the Government's document review and production in response to Chevron's discovery requests. Please let me know as soon as possible if the Government intends to invoke privilege as described above.

Sincerely,

Lawrence D. Rosenberg

Lawrence D. Rosenberg