No. 04-1365C
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO DISMISS IN PART

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

August 16, 2007

**TABLE OF CONTENTS**

TABLE OF CONTENTS. . . . . . -i-

TABLE OF AUTHORITIES. . . . . . -ii-

DEFENDANT'S MOTION TO DISMISS IN PART. . . . . . -1-

STATEMENT OF THE ISSUE. . . . . . -1-

STATEMENT OF THE CASE. . . . . . -2-

I. Nature Of The Case. . . . . . -2-

II. The National Defense Authorization Act for Fiscal Year 1996. . . . . . -3-

III. Equity Finalization Protocol For NPR-1. . . . . . -4-

IV. The Decoupling Agreement And The Equity Process Agreement. . . . . . -4-

ARGUMENT. . . . . . -6-

I. The Jurisdiction Of Court Of Federal Claims Is Limited. . . . . . -6-

II. Rule 12(b)(1) Motion Standards. . . . . . -6-

III. The Court Lacks Jurisdiction To Entertain Chevron's Request For A "Finding" That The Government "Materially" Breached The Equity Process Agreement Or The Alleged Two-Part May 19, 1997 Agreement. . . . . . -7-

CONCLUSION. . . . . . -14-

## TABLE OF AUTHORITIES

### CASES

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998). . . . . . . . . . 6

American Capital Corp. v. United States,
472 F.3d 859 (Fed. Cir. 2006). . . . . . . . . . 13

Anderson v. United States,
59 Fed.Cl. 451 (2004). . . . . . . . . . 10

Appalachian Regional Healthcare, Inc. v. United States,
999 F.2d 1573 (Fed. Cir. 1993). . . . . . . . . . 6

Austin v. United States,
206 Ct. Cl. 719, cert. denied, 423 U.S. 911 (1975). . . . . . . . . . 10

Barron Bancshares, Inc. v. United States,
366 F.3d 1360 (Fed. Cir. 2004). . . . . . . . . . 8

Block v. North Dakota ex rel. Board of University & School Lands,
461 U.S. 273 (1983).. . . . . . . . . . 6

Brown v. United States,
105 F.3d 621 (Fed. Cir. 1997). . . . . . . . . . 10

C.W. Travel, Inc. v. United States,
63 Fed. Cl. 369 (2004). . . . . . . . . . 6

Celentano v. United States,
41 Fed.Cl. 596 (1998). . . . . . . . . . 6

Chevron U.S.A., Inc. v. United States,
71 Fed. Cl. 236 (2006). . . . . . . . . . 1, 2, 13

Christopher Village, L.P. v. United States,
360 F.3d 1319 (Fed. Cir. 2004). . . . . . . . . . 8

Ervin and Associates, Inc. v. United States,
44 Fed.Cl. 646 (1999). . . . . . . . . . 6, 7

Farmers Grain Co. of Esmond v. United States,
33 Fed. Cl. 298 (1995). . . . . . . . . . 8

Gentry v. United States,
212 Ct. Cl. 1, 546 F.2d 343 (1976). . . . . . . . . . 10

Globex Corp. v. United States,
54 Fed.Cl. 343 (2002). . . . . . . . . . 7

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004). . . . . . . . . . 9, 13, 14

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990). . . . . . . . . . 6

Hometown Financial, Inc. v. United States,
409 F.3d 1360 (Fed. Cir. 2005). . . . . . . . . . 8, 9

Houston v. United States,
60 Fed.Cl. 507 (2004). . . . . . . . . . 10

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005). . . . . . . . . . 8

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998). . . . . . . . . . 11, 12

Kanemoto v. Reno,
41 F.3d 641 (Fed. Cir. 1994). . . . . . . . . . 10

Landmark Land Co., Inc. v. FDIC,
256 F.3d 1365 (Fed. Cir. 2001). . . . . . . . . . 13

Marcinkowsky v. United States,
44 Fed.Cl. 610 (1999), aff'd, 206 F.3d 1419 (Fed. Cir. 2000). . . . . . . . . . 10

National Air Traffic Controllers Ass'n v. United States,
160 F.3d 714 (Fed. Cir. 1998). . . . . . . . . . 10

Old Stone Corp. v. United States,
450 F.3d 1360 (Fed. Cir. 2006). . . . . . . . . . 13

Pauley Petroleum Inc. v. United States,
219 Ct. C 591 F.2d 1308 cert. denied, 444 U.S. 898 (1979). . . . . . . . . . 10

Reynolds v. AAFES,
846 F.2d 746 (Fed. Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Stephenson v. United States,
58 Fed. Cl. 186 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Stone Forest Industries, Inc. v. United States,
973 F.2d 1548 (Fed. Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

Tchakarski v. United States,
69 Fed.Cl. 218 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Thomas v. HUD,
124 F.3d 1439, 1442 (Fed. Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Mitchell,
445 U.S. 535 (1980).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Testan,
424 U.S. 392 (1976).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Westfed Holdings, Inc. v. United States,
407 F.3d 1352 (Fed. Cir. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wheeler v. United States,
3 Cl.Ct. 686, 688 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**STATUTES**

10 U.S.C. § 7420 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

28 U.S.C. § 1491 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

National Defense Authorization Act for Fiscal Year 1996, Pub. L. 104-106, § 3412(b). . . 3, 4, 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, | ) | No. 04-1365C |
| v. | ) | (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS IN PART

Pursuant RCFC 12(b)(1),[1] defendant, the United States, requests that the Court dismiss for lack of jurisdiction the request by plaintiff, Chevron U.S.A., Inc. (Chevron) for declarations ("findings") by the Court that the Government "*materially* breached the Equity Process Agreement" between Chevron and the Department of Energy ("DOE") (Compl. ¶ 64) and that the Government "*materially* breached the implied covenant of good faith and fair dealing with respect to the parties' two-part May 19, 1997 agreement" (Compl. ¶ 70) (emphases added).[2]

STATEMENT OF THE ISSUE

Whether the Court has jurisdiction to entertain Chevron's requests for "findings" that the Government "materially" breached the Equity Process Agreement and that the Government

---

[1]Rule 12(b)(1) provides that "[e]very defense, in law or in fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . ." See also RCFC 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.").

[2]In this brief, "Compl. ¶ ____" refers to the referenced paragraph(s) of the "Complaint" filed on August 20, 2004; "Tr. ____ (____)" refers to the referenced page(s) and (parenthetically) line(s) of the December 16, 2005 hearing upon the Government's motions to dismiss that are the subject of the Court's May 31, 2006 decision (Chevron U.S.A., Inc. v. United States, 71 Fed. Cl. 236 (2006)); and "Def. App. ____" refers to the referenced page(s) of the appendix to this brief.

"materially" breached a covenant of good faith and fair dealing implied in an alleged "two-part May 19, 1997 agreement" between Chevron and DOE.

## STATEMENT OF THE CASE

### I. Nature Of The Case

This case involves the alleged breach by DOE of an agreement between Chevron and DOE, referred to by the parties as the Equity Process Agreement, which established a process to determine the equity interests of Chevron and DOE in an oil-and-gas unit near Bakersfield, California, known as the Elk Hills Field. There are four distinct zones in the Elk Hills Field: the Dry Gas Zone, the Carneros Zone, the Shallow Oil Zone, and the Stevens Zone. A final determination of the parties' equity interests was to be made for each zone. The determination of the equity interests for each zone was to be made by the DOE Assistant Secretary for Fossil Energy ("ASFE"). The ASFE's decision in each instance was to take into consideration the recommendation of the IPE selected by Chevron and DOE (Netherland, Sewell & Associates, Inc. ("NSAI")). See Chevron U.S.A., Inc. v. United States, 71 Fed.Cl. 236 (2006) (opinion denying Government's motion to dismiss).

The complaint filed by Chevron in August 2004 contains claims for breach of the Equity Process Agreement between Chevron and DOE. Chevron avers that, during the Dry Gas Zone, Carneros Zone, and Stevens Zone proceedings, Mary Egger, DOE's Deputy General Counsel for Technology Transfer and Procurement, and unidentified "others acting with or under her direction" engaged in *ex parte* communications prohibited by the Equity Process Agreement by "serving both as attorney for the DOE equity team and as an advisor to the Assistant Secretary decision maker." Compl. ¶ 60. Chevron further alleges that, "on information and belief," the ASFE

also engaged in contractually prohibited communications" with the IPE and with unidentified "engineers on DOE's equity team." Compl. ¶¶ 61, 62. Chevron asserts that those alleged actions breached the Equity Process Agreement and, "in turn," an alleged two-part agreement between Chevron and DOE consisting of the Equity Process Agreement and an agreement referred to by the parties as the Decoupling Agreement. Compl. ¶¶ 24, 25, 63. Chevron also alleges that such actions breached "DOE's contractual duty of good faith and fair dealing with respect to the parties' two-part May 19, 1997 agreement." Compl. ¶ 69.

II. The National Defense Authorization Act for Fiscal Year 1996

The National Defense Authorization Act for Fiscal Year 1996 ("NDA Act") required that DOE sell the "right, title, and interest of the United States" to all lands owned or controlled by the United States in Naval Petroleum Reserve Numbered 1" ("NPR-1"), located in the Elk Hills Field, within two years of the NDA Act's effective date of February 10, 1996. Pub. L. No. 104-106, § 3412(a), 110 Stat. 631-32 (1996) (10 U.S.C. § 7420 (2000) (note)). In addition, the NDA Act required that, within eight month's of the NDA Act's effective date, DOE "finalize equity interests of the known oil and gas zones in [NPR-1]" and directed that DOE retain for that purpose an independent petroleum engineer mutually acceptable to "the equity owners," i.e., Chevron and DOE. The IPE was to prepare a "recommendation on final equity figures," which DOE could accept and establish "final equity interest" in accordance therewith, or DOE could "use such other method to establish final equity interest in [NPR-1] as [DOE] considers appropriate." Id., § 3412(b)(1)&(2).

III. Equity Finalization Protocol For NPR-1

On July 8, 1996, the ASFE issued Administrative Order 96-01, the "Protocol on Naval Petroleum Reserve Numbered 1 Equity Finalization Implementation Process." The Protocol sets out a process for equity finalization proceedings before the IPE with respect to three of the four oil/gas bearing geologic formations in the Elk Hills Field: the Dry Gas Zone, Carneros Zone, and Stevens Zone. See id., § B.3, Def. App. 1.[3]

The ASFE subsequently issued two supplements to the Protocol. Supplement No. 1 to Administrative Order 96-01 was issued on October 11, 1996 and established a mechanism by which guidance would be provided to the IPE regarding Unit Plan Contract interpretation issues that could have a material effect upon the IPE's equity finalization recommendations. Def. App. 8. Supplement No. 2 to Administrative Order 96-01 was issued on January 21, 1997 and established a revised plan and schedule for proceedings before the IPE with respect to equity finalization for the Stevens Zone. Def. App. 11.

IV. The Decoupling Agreement And The Equity Process Agreement

The NDA Act required that equity finalization for all four Elk Hills oil/gas bearing zones be completed within eight months of February 10, 1996, the effective date of the NDA Act, and that DOE sell its interest in the Elk Hills Field "not later than two years after the effective date"

[3]Initially, the equity finalization process established by the Protocol did not apply to equity finalization for the fourth oil/gas bearing formation, i.e., the Shallow Oil Zone ("SOZ"), because SOZ was the subject of an equity redetermination dispute under section 9(b) of the Unit Plan Contract between Chevron and DOE that was pending on the effective date of the NDA Act. The Act provided that, in such case, "the dispute shall be resolved in the manner provided in the unit plan contract within eight months after the effective date" and that such "resolution shall be considered final for all purposes under this section." Id., Pub. L. No. 104-106, § 3412(b)(3), 110 Stat. 632.

of the NDA Act. Id., § 3412(b), 110 Stat. 632. The equity finalization process could not be completed prior to the deadline for the sale of the Government's interest in the Elk Hills Field mandated by the NDA Act, however, and on May 19, 1997, Chevron and DOE entered an "Agreement Regarding Fixing of Equity Interests at Naval Petroleum Reserve No. 1 for Purposes of Sale," referred to as the "Decoupling Agreement." Compl., Appendix B.1. Among other things, the Decoupling Agreement fixed the relative interests of Chevron and DOE in the Elk Hills Field for purposes of the sale of NPR-1, with provision for financial adjustments between Chevron and DOE in the event that such fixed interests differed from the relative interest of Chevron and DOE ultimately established by the ASFE pursuant to section 3412(b) of the NDA Act. See Article I, §§ 1.1(a), 1.2, Def. App. 22, 24.

On May 19, 1997, Chevron and DOE also entered a second agreement, the "Agreement Regarding Equity Redetermination Process," referred to as the Equity Process Agreement, upon which Chevron's claims are based. Compl., Appendix B.2. In the Equity Process Agreement, the parties agreed that equity redetermination for the Shallow Oil Zone would be completed in accordance with the process and procedures established by ASFE Administrative Order No. 96-01 and Supplement No. 1 thereto, ¶¶ A.2, Def. App. 37. The Equity Process Agreement also established standards and a process by which the ASFE would issue equity finalization decisions for each of the four oil/gas bearing zones in the Elk Hills Field, ¶¶ B.1-B.6, Def. App. 39-40, as well as standards and procedures for the review of any such decisions by the DOE Office of Hearings and Appeals, ¶¶ B.7, B.8. Def App. 40-41. Chevron alleges that the Decoupling Agreement and the Equity Process Agreement constitute a "two-part May 19, 1997 agreement." Compl. ¶¶ 24, 25.

## ARGUMENT

### I. The Jurisdiction Of Court Of Federal Claims Is Limited.

The Court of Federal Claims "is a court of limited jurisdiction and, absent congressional consent to entertain a claim against the United States, the court lacks jurisdiction over that claim." Appalachian Regional Healthcare, Inc. v. United States, 999 F.2d 1573, 1577 (Fed. Cir. 1993) (citing United States v. Testan, 424 U.S. 392, 399 (1976)). Congressional consent to suit, thereby waiving the Government's traditional immunity from suit, must be explicit and strictly construed. United States v. Mitchell, 445 U.S. 535, 538 (1980); Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990). Thus, "when Congress attaches conditions to legislation waiving the sovereign immunity of the United States, those conditions must be strictly observed, and exceptions thereto are not to be lightly implied." Block v. North Dakota ex rel. Board of University & School Lands, 461 U.S. 273, 287 (1983). "The burden of proving that the Court of Federal Claims has subject matter jurisdiction over a claim rests with the party seeking to invoke its jurisdiction," i.e., Chevron here. Ervin and Associates, Inc. v. United States, 44 Fed.Cl. 646, 652 (1999); accord Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Reynolds v. AAFES, 846 F.2d 746, 748 (Fed. Cir. 1988).

### II. Rule 12(b)(1) Motion Standards

RCFC 12(b)(1) "governs dismissal of a claim for lack of subject matter jurisdiction." C.W. Travel, Inc. v. United States, 63 Fed. Cl. 369, 380 (2004). When considering a motion to dismiss, the Court "may consider all relevant evidence in order to resolve any disputes as to the truth of the jurisdictional facts alleged in the complaint." Celentano v. United States, 41 Fed.Cl. 596, 600 (1998) (citing Reynolds, 846 F.2d at 747). The Court "accepts as true all undisputed

allegations of fact asserted by the plaintiff and construes all reasonable inferences in the plaintiff's favor." Globex Corp. v. United States, 54 Fed.Cl. 343, 346 (2002). Because Chevron has the burden of establishing that the Court has jurisdiction to entertain its breach of contract claims, it "bears the burden of pleading the facts upon which the court's jurisdiction depends." Ervin, 44 Fed.Cl. at 652.

## III. The Court Lacks Jurisdiction To Entertain Chevron's Request For A "Finding" That The Government "Materially" Breached The Equity Process Agreement Or The Alleged Two-Part May 19, 1997 Agreement.

For its first cause of action, Chevron alleges that Mary Egger, the DOE Deputy General Counsel, "and others acting with or under her direction" "engaged in contractually prohibited communications,"[4] that, "[o]n information and belief," the ASFE also engaged in contractually prohibited communications" with the IPE and with unidentified "engineers on DOE's equity team," and that such actions "constitute a breach of the Equity Process Agreement and, in turn, the parties' two-part May 19, 1997 agreement." Compl. ¶¶ 60-63. Chevron asserts that it "is entitled to a finding that DOE has *materially* breached the Equity Process Agreement and, in turn, the parties' two-part May 19, 1997 agreement." Compl. ¶ 64 (emphasis added). In addition, Chevron seeks "an award of *damages* in an amount to be determined at trial to compensate [Chevron] for the expenses, effort, and time it invested in proceedings tainted through ex parte communications." Id. (emphasis added).

For its second cause of action, Chevron alleges that, "[b]y engaging in ex parte communications, DOE has acted in bad faith in performance of the Equity Process Agreement" and that

[4] See also Compl. ¶ 51 ("The dual role of Ms. Egger and others acting with or under her direction . . . constitutes a *material* breach of DOE's contract obligations." (emphasis added).

"DOE's actions constitute a breach of DOE's contractual duty of good faith and fair dealing with respect to the parties' two-part May 19, 1997 agreement." Compl. ¶¶ 68, 69. Chevron asserts that it is "entitled to a finding that DOE has *materially* breached the implied covenant of good faith and fair dealing with respect to the parties' two-part May 19, 1997 agreement." Compl. ¶ 70. Chevron also seeks "an award of *damages* in an amount to be determined at trial to compensate [Chevron] for the expenses, effort, and time it invested in proceedings tainted through ex parte communications." Id. (emphasis added). For the reasons discussed below, the Court lacks jurisdiction to decide whether either alleged breach of contract by DOE was "material."

The concept of materiality in the context of breach of contract arises in two ways. First, upon the material breach of a contract, the non-breaching party has the right to discontinue performance of the contract and to seek redress in accordance with law. Stone Forest Industries, Inc. v. United States, 973 F.2d 1548, 1550 (Fed. Cir. 1992); Farmers Grain Co. of Esmond v. United States, 33 Fed. Cl. 298, 300 (1995).[5] Second, a party sued for breach of contract may defend on a theory that its nonperformance is excused because the other contracting party committed the first material breach. Hometown Financial, Inc. v. United States, 409 F.3d 1360, 1370 (Fed. Cir. 2005); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1380 (Fed. Cir. 2004); Christopher Village, L.P. v. United States, 360 F.3d 1319, 1334 (Fed. Cir. 2004).

Whether a breach of contract is material "depends on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by

[5]Anticipatory repudiation – the renunciation of a contractual duty before the time fixed in the contract for performance – also can be a material breach. "For an aggrieved party to recover damages for an anticipatory repudiation, it must elect to treat the repudiation as a total breach." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1374 (Fed. Cir. 2005).

the parties." Stone Forest, 973 F.2d at 1551. "A breach is material when it relates to a matter of vital importance, or goes to the essence of the contract." Hometown, 409 F.3d at 1370 (quoting Thomas v. HUD, 124 F.3d 1439, 1442 (Fed. Cir. 1997)); see also Hansen Bancorp, Inc. v. United States, 367 F.3d 1297, 1309 (Fed. Cir. 2004) ("A total breach is defined as one that 'so substantially impairs the value of the contract to the injured party at the time of breach that it is just in the circumstances to allow him to recover damages based on all his remaining rights to performance.'" (quoting Restatement (Second) of Contracts § 243(4) (1981)).

The complaint in this case does not expressly state that Chevron has discontinued or intends to discontinue performance of the Equity Process Agreement or the *alleged* "two-part May 19, 1997 agreement" or that either agreement should be rescinded. Chevron does allege, however, that it is entitled to "a finding that DOE has *materially* breached the Equity Process Agreement," Compl. ¶ 64 (emphasis added), and to "a finding that DOE has *materially* breached the implied covenant of good faith and fair dealing with respect to the parties' two-part May 19, 1997 agreement," Compl. ¶ 70. Such findings would constitute declaratory relief.[6]

---

[6] A finding of "material" breach would confirm Chevron's right to discontinue performance of the Equity Process Agreement, absent a contrary election by Chevron. The Decoupling Agreement, however, contains a "Limitation on Default Remedies" clause which precludes termination of that agreement by Chevron in the event of a default by DOE: "Each of Chevron and DOE irrevocably agrees that *if either party defaults under the terms of this Agreement in any respect, such default shall not entitle the other party to terminate this Agreement*, or to rescind or revoke its agreement to the Fixed Sales Participations, the Facilities Fixed Ownership Interests, or, in the case of Chevron, its agreement not to challenge the validity of the sale of DOE's interest in NPR-1 specified in [the "Covenant Not To Sue" at section 5.1 of the Decoupling Agreement], but instead shall entitle the non-defaulting party to whatever monetary or other relief may be available under applicable law (other than setting aside or modifying the Fixed Sales Participations or the Facilities Fixed Ownership Interests)." Id., § 5.5 (emphasis added), Def. App. 32.

The jurisdictional basis for Chevron's claims in this case is the Tucker Act, 28 U.S.C. § 1491(a)(1). The Tucker Act does not provide the Court of Federal Claims with "independent jurisdiction" over claims for equitable relief, such as declaratory relief. Brown v. United States, 105 F.3d 621, 624 (Fed. Cir. 1997).[7]

Unless explicitly authorized by law, declaratory relief in a Tucker Act suit is permitted only where "it is tied and subordinate to a monetary award." Gentry v. United States, 212 Ct. Cl. 1, 24, 546 F.2d 343, 355 (1976) (internal quotation marks omitted). In Gentry, a ruling of law declaring a statutory provision unconstitutional in order to arrive at a money judgment was tied and subordinate to the monetary award. 212 Ct. Cl. at 7-8, 546 F.2d at 345-46; see also Pauley Petroleum Inc. v. United States, 219 Ct. Cl. 24, 38, 591 F.2d 1308, 1315, cert. denied, 444 U.S. 898 (1979) (court had jurisdiction to entertain suit that required ruling upon plaintiffs' rights under offshore oil leases where plaintiffs explicitly sought a monetary remedy and were "not asking for a simple declaration of rights in their leases which may or may not result in a subsequent payment of money outside of the court's processes"). As the Court of Claims noted in Austin v. United States, 206 Ct. Cl. 719, 723, cert. denied, 423 U.S. 911 (1975), "it is now firmly

[7]The Court of Federal Claims "lacks general authority to grant relief, monetary or otherwise, on purely equitable grounds," Anderson v. United States, 59 Fed.Cl. 451, 456 (2004), including declaratory relief. See Tchakarski v. United States, 69 Fed.Cl. 218, 220-21 (2005); Houston v. United States, 60 Fed.Cl. 507, 510 (2004); Stephenson v. United States, 58 Fed. Cl. 186, 193 (2003); Marcinkowsky v. United States, 44 Fed.Cl. 610, 613 (1999), aff'd, 206 F.3d 1419 (Fed. Cir. 2000). The remedies available in this Court "extend only to those affording monetary relief; the court cannot entertain claims for injunctive relief or specific performance, except in narrowly defined, statutorily provided circumstances . . . ." Kanemoto v. Reno, 41 F.3d 641, 644-45 (Fed. Cir. 1994)); see also National Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998) ("Although . . . Congress has authorized the Court of Federal Claims to grant equitable relief in certain limited circumstances, those circumstances do not include the general authority to grant equitable relief whenever a declaratory judgment would assist a claimant in obtaining monetary benefits in another forum.").

established that, since the general jurisdiction of this court is limited to money claims against the Government, we have no authority to enter a declaratory judgment, or to grant affirmative non-monetary relief unless it is tied and subordinate to a monetary award." Accord Wheeler v. United States, 3 Cl.Ct. 686, 688 (1983) (Claims Court "may properly interpret and apply statutes and review regulations incident to and as a necessary part of awarding damages").[8]

The Federal Circuit's decision in James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), illustrates the narrow circumstances under which the Court of Federal Claims may grant equitable relief in a Tucker Act suit. The plaintiff, James, was a former non-commissioned officer in the United States Army who commenced an action in district court seeking mandamus relief. 159 F.3d at 575. He alleged that, in discharging him, the Army had wrongfully denied him a five-month extension of his enlistment. Id. He sought an order directing the Army to correct his records to reflect the 20 years active duty service and eligibility for retirement that would have been his if he had been allowed to remain in the service for an additional five months. Id. James also asked the court to direct the Army to remove from his records a bar to re-enlistment that had been imposed upon him and he alleged that the Army had improperly denied him the right to appeal the bar to re-enlistment. Id. The district court concluded that, properly viewed, the suit

[8]Section 1491(a)(2) of title 28, United States Code, authorizes certain equitable relief when it would be "an incident of and collateral to" a money judgment pursuant to 28 U.S.C. § 1491(a)(1) (2000): "To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, and correction of applicable records, and such orders may be issued to any appropriate official of the United States." 28 U.S.C. § 1491(a)(2) (2000). The phrase "an incident of and collateral to" in 28 U.S.C. § 1491(a)(2) has been equated to "tied and subordinate to." See James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998) ("Stated another way, the Court of Federal Claims has no power to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment." (internal quotation marks omitted)).

was one for damages as well as injunctive relief and transferred the case to the Court of Federal Claims. Id. at 578.

The Federal Circuit held that James's claims regarding the bar to re-enlistment were not claims for money damages and that the Court of Federal Claims lacked jurisdiction to entertain them because removing the bar to re-enlistment or granting James the right to appeal the imposition of the bar to re-enlistment was not relief that would be "tied and subordinate to" an award of five-months back pay. James, 159 F.3d at 575, 581. The court explained:

> The reason is that *there would be no need to consider the bar in deciding whether James was entitled to back pay by reason of a five month extension of his enlistment*. In other words, the matter of the bar to reenlistment would be entirely unrelated to the back pay issue. Thus, James' challenge to the bar to reenlistment and his claim that he was denied the right to appeal the bar are claims for equitable relief that lie outside the Tucker Act jurisdiction of the Court of Federal Claims.

Id. at 581 (citations omitted) (emphasis added).

Chevron seeks an award of damages "to compensate [Chevron] for the expenses, effort, and time it invested in proceedings tainted through ex parte communications." Compl. ¶¶ 64, 70. In briefs filed by Chevron with respect to the Government's previously-filed motions to dismiss and, at the December 16, 2005 hearing upon those motions, plaintiff's counsel repeatedly characterized Chevron's monetary claim as one for "reliance damages." See "Chevron U.S.A. Inc.'s Response to the United States' Motion to Dismiss" dated February 1, 2005, at 27-30, Def. App. 45-48; "Chevron U.S.A. Inc.'s Response to the United States' Supplemental Motion to Dismiss" dated September 29, 2005, at 1, 22, 24-25, Def. App. 51-54; Tr. 24(18-19), Def. App. 58 ("What we're seeking in this case are the money damages, our reliance damages."); Tr. 34(2-5), Def.

App. 59 ("What we are seeking here is what I believe you characterized as express reliance damages, the expenditures Chevron put forth for this process."); Tr. 36(12-14), Def. App. 61 ("[W]e are just seeking the essential reliance damages for participating in the finalization process."); Tr. 47(12-15), Def. App. 62 ("[T]o rule against Chevron the Court would have to find that Chevron has failed to sufficiently seek reliance damages."); Tr. 63(1-4), Def. App. 63. ("[W]e really believe that this Court does provide a remedy, at least for the reliance damages, that we put into this process, and that's what we're seeking in this Court.") In its recently-filed status report concerning the pending privileged document dispute, Chevron continues to characterize its claim as one for "reliance damages." See "Chevron's Status Report Regarding Disputed Documents" dated July 24, 2007, at 8.

The Court has also construed Chevron's monetary claim as one for reliance damages. In its May 31, 2006 decision upon the Government's motions to dismiss the complaint, the Court stated that "Chevron has alleged a breach of contract claim seeking reliance damages." Chevron, 71 Fed.Cl. at 269.

The purpose of reliance damages is to compensate the non-breaching party for loss caused by reliance upon the contract. Old Stone Corp. v. United States, 450 F.3d 1360, 1374 (Fed. Cir. 2006); Landmark Land Co., Inc. v. FDIC, 256 F.3d 1365, 1378 (Fed. Cir. 2001). Reliance damages are used to put the non-breaching party in as good a position as it would have been in had the contract not been made. American Capital Corp. v. United States, 472 F.3d 859, 867 (Fed. Cir. 2006); Westfed Holdings, Inc. v. United States, 407 F.3d 1352, 1364 (Fed. Cir. 2005). "As reliance damages, the non-breaching party 'may recover expenses of preparation of part performance, as well as other foreseeable expenses incurred in reliance upon the contract.'" Hansen,

367 F.3d at 1309 (quoting Calamari & Perillo, The Law of Contracts § 14.9 (4th ed. 1998)).

As noted above, Chevron seeks an award of damages to compensate it for out-of-pocket costs incurred in connection with the Elk Hills equity finalization process, i.e., "for the expenses, effort, and time" that Chevron has "invested" in those proceedings. Compl. ¶¶ 64, 70. A finding by the Court of "material" breach in this case would not be tied and subordinate to any judgment for the reliance damages sought by Chevron because such a finding is not a prerequisite to the award of such monetary relief. The Court, therefore, lacks jurisdiction to entertain Chevron's request for a "finding" that DOE "materially" breached the Equity Process Agreement or a covenant of good faith and fair dealing implied in the *alleged* "two-part May 19, 1997 agreement" between Chevron and DOE.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss in part should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

/s/ John E. Kosloske by s/ Donald E. Kinner
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-1438
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

August 16, 2007

CERTIFICATE OF FILING

I hereby certify that on this 16th day of AUGUST, 2007, a copy of "DEFENDANT'S MOTION TO DISMISS IN PART" and Appendix in support thereof were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Anuj Vohra