No. 04-1365C
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS DELIBERATIVE-PROCESS PRIVILEGE CLAIMS

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

SEPTEMBER 4, 2007

# TABLE OF CONTENTS

Page

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS DELIBERATIVE PROCESS PRIVILEGE CLAIMS ........ 1

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. The Deliberative-Process Privilege ........ 3

II. The Deliberative-Process Privilege Attaches To Factual Sections In Draft Decisions ........ 9

III. The Deliberative-Process Privilege Applies To The Remainder Of The Documents Withheld Because The Documents Are Pre-Decisional And Deliberative ........ 12

IV. Chevron Cannot Demonstrate A "Compelling Need" For The Documents Over Which We Are Asserting The Deliberative-Process Privilege ........ 13

V. The "Government Misconduct" Exception To The Deliberative-Process Privilege ........ 15

CONCLUSION ........ 16

# TABLE OF AUTHORITIES

## CASES

Abramson v. United States,
39 Fed. Cl. 290 (1997). .......... 4, 5, 6, 7

CACI Field Services, Inc. v. United States,
12 Cl.Ct. 680 (1987) .......... 4, 7

Center for Biological Diversity v. Norton,
336 F.Supp.2d 1155 (D.N.M. 2004). .......... 8

Coastal States Gas Corp. v. DOE,
617 F.2d 854 (D.C. Cir. 1980). .......... 4

Dow Jones & Co. v. DOJ,
917 F.2d 571 (D.C. Cir. 1990). .......... 5

Ferrell v. HUD,
177 F.R.D. 425 (N.D. Ill. 1998) .......... 8

First Heights Bank, FSB v. United States,
46 Fed. Cl. 312 (2000). .......... 3, 5

Formaldehyde Institute v. Department of Health and Human Services,
889 F.2d 1118 (D.C. Cir. 1989). .......... 5

Franklin National Bank Securities Litigation,
478 F.Supp. 577 (E.D.N.Y. 1979). .......... 8

Hopkins v. HUD,
929 F.2d 81 (2d Cir. 1991). .......... 6

Judicial Watch, Inc. v. DOJ,
432 F.3d 366 (D.C. Cir. 2005). .......... 6

Kaiser Aluminum & Chemical Co. v. United States,
141 Ct. Cl. 38, 157 F.Supp. 939 (1958) .......... 4, 6

Lead Industries Ass'n, Inc. v. OSHA,
610 F.2d 70 (2d Cir. 1979). .......... 9

## TABLE OF AUTHORITIES (CONT'D)

### CASES (CONT'D)

Maine v. Norton,
208 F.Supp.2d 63 (D. Me. 2002). .......... 8

Mapother v. Department of Justice,
3 F.3d 1533 (D.C. Cir. 1993). .......... 10

Marriott International Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006). .......... 5, 7, 13

Mobil Oil Corp. v. DOE,
102 F.R.D. 1 (N.D.N.Y. 1983). .......... 4

Mobil Oil Corp. v. EPA,
879 F.2d 698 (9th Cir. 1989). .......... 7, 9

Montrose Chemical Corp. v. Train,
491 F.2d 63 (D.C. Cir. 1974). .......... 10

NLRB v. Sears, Roebuck & Co.,
421 U.S. 132 (1975). .......... 3

National Wildlife Federation v. Forest Service,
861 F.2d 1114 (9th Cir. 1988). .......... 9

Pacific Gas & Electric Co. v. United States,
70 Fed. Cl. 128 (2006). .......... 5, 6

Redland Soccer Club v. Department of the Army,
55 F.3d 827 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996). .......... 8

Resolution Trust Corp. v. Diamond,
773 F.Supp. 597 (S.D.N.Y. 1991). .......... 8

Russell v. Department of Air Force,
682 F.2d 1045 (D.C. Cir. 1982). .......... 10

Ryan v. DOJ,
617 F.2d 781 (D.C. Cir. 1980). .......... 5

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997). .......... 7, 10

Soucie v. David,
448 F.2d 1067 (D.C. Cir. 1971). .......... 5

United States v. Farley,
11 F.3d 1385 (7th Cir. 1993). .......... 8

United States v. Nixon,
418 U.S. 683 (1974). .......... 3

Walsky Construction Corp. v. United States,
20 Cl.Ct. 317 (1990) .......... 5, 6, 7

Wolfe v. Department of Health and Human Services,
839 F.2d 768 (D.C. Cir. 1988). .......... 4, 10

Yankee Atomic Electric Co. v. United States,
54 Fed. Cl. 306 (2002). .......... 4, 6

Zenith Radio Corp. v. United States,
764 F.2d 1577 (Fed. Cir. 1985) .......... 6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
OF ITS DELIBERATIVE-PROCESS PRIVILEGE CLAIMS

Pursuant to the Court's July 19, 2007 Scheduling Order,[1/] defendant, the United States, files this Memorandum of Law in Support of its Deliberative-Process Privilege Claims.

INTRODUCTION

The Court recently completed its *in camera* review of documents identified by plaintiff, Chevron U.S.A., Inc. ("Chevron"), as especially relevant to its lawsuit and over which the Government had asserted either the attorney-client, work-product, and/or deliberative-process privileges and withheld from production. As part of its *in camera* review, the Court, upon a rolling basis, issued appendices indicating its preliminary assessments of the Government's privilege assertions. Appendices 1-4 contain the Court's assessments of documents over which the Gov-

[1] The July 19, 2007 Scheduling Order, among other things, amended the Court's February 5, 2007 Scheduling Order to require that the Government "file notice of those documents for which it formally asserts the deliberative process privilege, and any briefing in support of that designation, by September 4, 2007." Appended to and in support of this brief is the "Declaration of Eric J. Fygi" dated August 31, 2007, in which Mr. Fygi, upon behalf of the Department of Energy, invokes the deliberative-process privilege.

ernment tentatively asserted the deliberative-process privilege.[2] On June 8, and 13, 2007, we filed status reports in response to those appendices ("June Status Reports"), identifying those documents over which we were withdrawing our privilege assertions and those documents for which we were maintaining our tentative assertion of the deliberative-process privilege. We also noted that, for those documents where we were maintaining the privilege assertion, we would provide the required agency declaration to formally invoke the privilege. Accordingly, attached to this memorandum as Exhibit A is the declaration of Eric J. Fygi, the United States Department of Energy's ("DOE") Principal Deputy General Counsel. Mr. Fygi's declaration indicates that he has been delegated the authority to assert the deliberative-process privilege on behalf of DOE. Mr. Fygi's declaration also states that he has personally reviewed each document for which we are asserting the privilege, describes each document in detail and provides the basis for the assertion. This brief sets out the contours of the deliberative-process privilege, the propriety of our assertions, and responds to Chevron's July 24 "Status Report Regarding Disputed Documents" ("Chevron's Status Report").

As indicated in our June Status Reports in response to appendices 1-4 and in our August 3, 2007 Status Report in response to appendices 5-20, we formally assert the deliberative-process privilege over the following 100 documents:[3] As reviewed in the Court's May 21, 2007 Appen-

---

[2] In its "Appendix No. 20," the Court reviewed attachments to documents not produced originally as part of its *in camera* review. We assert the deliberative-process privilege for a number of those attachments as well, as identified herein.

[3] The document numbers here correspond to the numbering system on our separate deliberative-process privilege logs, which we prepared at the Court's request and produced on April 12, 2007. We also note that two of the documents for which we formally assert the deliberative-process privilege are documents that were originally identified by Chevron, but never reviewed by the Court *in camera*. These are documents numbers 270 and 993 in our separate deliberative-

dix No. 1: 130, 132, 144, 159, 167, 178, 210, 240, 242, 243, 253, 255, 261, 264, 265, 268. As reviewed in the Court's May 24, 2007 Appendix No. 2: 278, 281, 283, 292, 294, 298, 320-32, 339, 337, 339, 356, 357, 362, 373, 380, 381, 384, 495, 497, 511, 531. As reviewed in the Court's May 24, 2007 Appendix No. 3: 543, 548, 551, 552, 557, 571, 572, 577, 589, 602, 672, 740, 750, 756, 783, 794, 800, 809. As reviewed in the Court's May 25, 2007 Appendix No. 4: 840, 841, 846, 850, 851, 872, 975, 979, 980, 983, 997, 1002, 1059, 1060, 1119, 1121, 1123, 1126, 1127, 1135. As reviewed in the Court's July 12, 2007 Appendix No. 20: 765, 809, 816, 819, 820, 850, 1119, 1472, 1486, 1497, 1505, 1507, 2286, 3946, 3954, 3956, 3964, 3970, 3978, 3801, 3819.

## ARGUMENT

### I. The Deliberative-Process Privilege

In United States v. Nixon, 418 U.S. 683, 705 (1974), the Supreme Court explained that "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process." Accord NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). Because of this fact and the strong public interest in having government officials candidly discuss prospective operations and policies, it is well-established that the Government may invoke certain executive privileges not available to other parties.

The deliberative process privilege, a privilege unique to the Government, is "a subset of the executive privilege." First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 320

---

process privileged documents log.

(2000).[4] "The purpose of the privilege is to encourage frank discussion of ideas and policies, thereby ensuring the quality of governmental decision making." Mobil Oil Corp. v. DOE, 102 F.R.D. 1, 5 (N.D.N.Y. 1983); accord Wolfe v. Department of Health and Human Services, 839 F.2d 768, 773 (D.C. Cir. 1988) (en banc) (The deliberative process privilege is predicated upon the recognition "that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl.").[5] The deliberative process privilege extends to testimony as well as documents. See Abramson v. United States, 39 Fed. Cl. 290 (1997) (upholding deliberative process privilege claim with respect to deposition of agency officials about conversations with agency head concerning subsequently-issued revised personnel policy). And the privilege applies to *inter*-agency as well as intra-agency deliberative communications or official information. CACI Field Services, Inc. v. United States, 12 Cl.Ct. 680, 686 (1987); accord Yankee Atomic Electric Co. v. United States, 54 Fed. Cl. 306, 312 (2002) ("The privilege protects *intra-governmental* documents reflecting advisory opinions, recommendations

---

[4] The deliberative process privilege is a court-created privilege, first recognized by the United States Court of Claims in Kaiser Aluminum & Chemical Co. v. United States, 141 Ct. Cl. 38, 49, 157 F.Supp. 939, 946 (1958) ("So far as the disclosure of confidential intra-agency advisory opinions is concerned, we conclude that it belongs to that class of governmental documents that are privileged from inspection as against the public interest but not absolutely.").

[5] See also Coastal States Gas Corp. v. DOE, 617 F.2d 854, 866 (D.C. Cir. 1980) ("The privilege has a number of purposes: it serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.").

and deliberations." (emphasis in original; internal quotation marks omitted)).[6]

To assert the deliberative process privilege, the Government must follow a three-step process: (1) the head of the agency or the agency official to whom the agency head has delegated the authority to invoke the deliberative process privilege upon the agency's behalf that has control over the requested documents or information must invoke the privilege after personal consideration; (2) the head of the agency or official to whom the authority to assert the deliberative process has been delegated must state with particularity what information is subject to the privilege; and (3) the agency must provide the Court with precise and certain reasons for maintaining the confidentiality of the requested documents or information. See Marriott International Resorts, L.P. v. United States, 437 F.3d 1302, 1308 (Fed. Cir. 2006); Pacific Gas & Electric Co. v. United States, 70 Fed. Cl. 128, 134 (2006); Abramson, 39 Fed. Cl. at 294; Walsky Construction Corp. v. United States, 20 Cl.Ct. 317, 320 (1990). These procedural requirements generally are satisfied by the production of an affidavit or declaration of the agency head or the agency official to whom the authority to assert the deliberative process privilege has been delegated. Pacific Gas, 70 Fed. Cl. at 134 n.8; Abramson, 39 Fed. Cl. at 294 n.3.

To protect documents under the deliberative process privilege, the Government must satisfy two fundamental legal requirements. *First*, "the information sought must be pre-decisional, or address activities antecedent to the adoption of an agency policy." Abramson, 39 Fed. Cl. at

---

[6] The deliberative process privilege even protects from disclosure advice or information generated outside a Government agency by consultants, temporary employees, contractors, and the like, where the information is used by the agency as part of its deliberative process. E.g., Dow Jones & Co. v. DOJ, 917 F.2d 571 (D.C. Cir. 1990); Formaldehyde Institute v. Department of Health and Human Services, 889 F.2d 1118, 1124-25 (D.C. Cir. 1989); Ryan v. DOJ, 617 F.2d 781, 789-80 & n.30 (D.C. Cir. 1980); Soucie v. David, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971).

294 (quoting Walsky, 20 Cl. Ct. at 320). A "document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." Walsky, 20 Cl.Ct. at 320 (quoting Senate of Puerto Rico v. DOJ, 823 F.2d 574, 585 (D.C. Cir. 1987)). "Thus, a document or information will be considered pre-decisional by linking it to a final decision." Abramson, 39 Fed. Cl. at 295.[7/]

*Second*, "the information must be deliberative in nature, containing opinions, recommendations, or advice pertaining to agency decisions." Abramson, 39 Fed. Cl. at 294-95 (internal quotation marks omitted); accord Pacific Gas, 70 Fed. Cl. at 133; Walsky, 20 Cl.Ct. at 320. Thus, the privilege "applies to documents that contain opinions, recommendations, or advice on policy or legal matters." Walsky, 20 Cl.Ct. at 321 (citing Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985)). The information "must reflect an integral part of the Government's reasoning or deliberative process." Walsky, 20 Cl.Ct. at 321 (citing Kaiser Aluminum, 141 Ct. Cl. at 49, 157 F.Supp. at 946).

Factual statements fall outside the deliberative process privilege. Abramson, 39 Fed. Cl. at 295; CACI, 12 Cl.Ct. at 687. Thus, "[w]here possible, facts that are separable from the privileged portion of a document should be disclosed." Pacific Gas, 70 Fed. Cl. at 134 n.7 (internal quotation marks omitted).[8/]

---

[7] The deliberative process privilege also applies to recommendations that are "part of a deliberative process which does not ripen into a final decision or a final change in policy." Walsky, 20 Cl.Ct. at 320-21; accord Yankee Atomic, 54 Fed. Cl. at 312 (citing Sears, Roebuck, 421 U.S. at 153 n.18). The Government, thus, "can show that a document is predecisional by linking it to either a final decision or proposed decision." Walsky, 20 Cl.Ct. at 321.

[8] See also Judicial Watch, Inc. v. DOJ, 432 F.3d 366, 372 (D.C. Cir. 2005) ("Factual material is not protected under the deliberative process privilege unless it is 'inextricably intertwined' with the deliberative material[.]"); Hopkins v. HUD, 929 F.2d 81, 85 (2d Cir. 1991) (Factual information in a document that also contains statements subject to the deliberative process privilege must be produced, unless the factual information is inextricably intertwined with the privi-

In contrast to the attorney-client privilege, public disclosure of a document or a portion of a document to which the deliberative process applies does not constitute a waiver of the privilege as to other documents relating to the same subject matter. In re Sealed Case, 121 F.3d 729, 741 (D.C. Cir. 1997) (The "all-or-nothing approach [to waiver in the context of the attorney-client privilege] has not been adopted with regard to executive privileges generally, or to the deliberative process privilege in particular. Instead, courts have said that release of a document only waives these privileges for the document or information specifically released, and not for related material."); Mobil Oil Corp. v. EPA, 879 F.2d 698, 703 (9th Cir. 1989) (The release of parts of a document did not result in a waiver of the deliberative process privilege with respect to an attachment to the document where the attachment was not the same or similar to the released portions of the document.).

The deliberative process privilege is not absolute; it can be "overcome upon a showing of evidentiary need weighed against the harm that may result from disclosure." Abramson, 39 Fed. Cl. at 295 (quoting CACI, 12 Cl.Ct. at 687); accord Marriott, 437 F.3d at 1307 ("[A] showing of compelling need can overcome the qualified deliberative process privilege."); Walsky, 20 Cl.Ct. at 320 ("Even though the Government properly asserts the [deliberative process] privilege, plaintiff nevertheless may discover the material at issue by showing a compelling need.").[9/] The party

---

leged opinions, recommendations, and advice such that disclosure would compromise the confidentiality of deliberative information that is protected by the privilege.).

[9] Factors considered by courts in weighing a litigant's need for evidence to which the deliberative process privilege applies against the Government's interest in confidentiality include: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence that would serve the same purpose as the documents sought; (3) the seriousness of the litigation and the issues involved in it; (4) the role of the Government in the litigation; and (5) the degree to which disclosure of the evidence sought would tend to chill future deliberations within govern-

seeking discovery of documents or other evidence to which the deliberative process privilege applies (Chevron here) "bears the burden of showing that its need for the documents outweighs the government's interest" in non-disclosure. Redland Soccer Club, 55 F.3d at 854; accord United States v. Farley, 11 F.3d 1385, 1389 (7th Cir. 1993); Center for Biological Diversity v. Norton, 336 F.Supp.2d 1155, 1161 (D.N.M. 2004); Maine v. Norton, 208 F.Supp.2d 63, 67 (D. Me. 2002).

Each document for which we formally assert the deliberative-process privilege relates to the decision making process of a DOE Assistant Secretary for Fossil Energy ("ASFE") regarding some aspect or issue of the equity finalization process between the parties.[10/] These documents include drafts of not only ASFE equity finalization decisions, but also draft decisions relating to other issues arising out of the equity finalization process and brought to the attention of the ASFE by the parties' Equity Finalization Teams ("EFTs"). These documents also include communications between the ASFE and his headquarters technical advisory staff and DOE attorneys advising him regarding equity finalization, as well as internal communications between members of the headquarters technical advisory staff and DOE attorneys. As the deliberative-process privilege requires, each of those documents is "pre-decisional" or "deliberative in nature."

---

ment agencies, i.e., would hinder frank and independent discussion about governmental policies and decisions. See, e.g., Redland Soccer Club v. Department of the Army, 55 F.3d 827, 854 (3d Cir. 1995), cert. denied, 516 U.S. 1071 (1996); Center for Biological Diversity, 336 F.Supp.2d at 1161; Resolution Trust Corp. v. Diamond, 773 F.Supp. 597, 605 (S.D.N.Y. 1991); Franklin National Bank Securities Litigation, 478 F.Supp. 577, 583 (E.D.N.Y. 1979); Ferrell v. HUD, 177 F.R.D. 425, 429 (N.D. Ill. 1998).

[10] The equity finalization process for the Elk Hills Field is described in detail in our August 3, 2007 "Memorandum Of Law In Support Of [Our] Attorney-Client And Work-Product Privilege Claims" and in our August 16, 2007 "Motion For Summary Judgment."

II. The Deliberative-Process Privilege Attaches To Factual Sections In Draft Decisions

As part of its *in camera* review, the Court reviewed a number of draft ASFE decisions arising out of various aspects of the equity finalization process. Though the Court generally agreed that certain sections of ASFE draft decisions were subject to the protections of the deliberative-process privilege, it did not extend the privilege to the sections of those decisions containing factual content. See, e.g., Court App. No. 2, Doc. No. 130; Court App. No. 2, Doc. No. 278; Court App. No. 3, Doc. No. 572; Court. App. No. 3, Doc. 577; Court. App. No. 4, Doc. No. 975; Court App. No. 4, Doc. No. 1060. The Court's assessments of our deliberative process privilege assertions are incorrect to the extent they do not recognize that the privilege attaches to factual sections of drafts of documents. Though the deliberative-process privilege generally requires the separation of factual from deliberative material, drafts of documents are an exception to that rule.

The deliberative process privilege applies to drafts, including factual material contained therein. As the Second Circuit explained in Lead Industries Ass'n, Inc. v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979):

> If the [draft language] appeared in the final version, it is already on the public record and need not be disclosed. If [the draft language] did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so. It might indeed facilitate [the requester's] attack on the [Government] if it could know in just what respects the Assistant Secretary departed from the staff reports she had before her. But such disclosure of the internal workings of the agency is exactly what the law forbids.

Accord Mobil Oil, 879 F.2d at 703 ("[T]he deliberative process privilege [applies] to a draft document regardless of whether it differs from its final version."); National Wildlife Federation

v. Forest Service, 861 F.2d 1114, 1122 (9th Cir. 1988) ("Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to [the] goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes."); Russell v. Department of Air Force, 682 F.2d 1045, 1049 (D.C. Cir. 1982) (noting that "a simple comparison between the pages sought and the official document would reveal" an agency decision maker's judgment); see also Montrose Chemical Corp. v. Train, 491 F.2d 63, 71 (D.C. Cir. 1974) ("When a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process . . .").

With respect to factual content, the very choice of what factual material a decision maker chooses to rely upon and include in a decision reflects the deliberative process. Though the deliberative-process privilege generally requires that factual material be separated from that which is deliberative, "the fact/opinion test, while offering 'a quick, clear, and predictable rule of decision,' is not infallible and must not be applied mechanically." Mapother v. Department of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citing Wolfe, 839 F.2d at 774); cf. Sealed Case, 121 F.3d at 737 (noting that the deliberative-process privilege does not "protect material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations"). "This is so because the privilege serves to protect the deliberative process itself, not merely documents containing deliberative material." Id.

Those facts that an ASFE considers and ultimately relies upon in issuing her decisions regarding equity finalization issues are clearly part of the deliberative process. Were Chevron

allowed access to just the factual material in those ASFE draft decisions, it would gain insight into the ASFE's deliberative process simply by comparing the draft decisions to those ASFE decisions actually issued. The ability of the ASFE and his staff to engage in frank discussions of ideas and policies will be compromised if those discussions (here, the preparation of those decisions) may subsequently be subject to public scrutiny. This concern is especially relevant in light of the fact that the equity finalization process is ongoing for the Shallow Oil and Stevens Zones. The parties have not yet completed the process before the Independent Petroleum Engineer ("IPE") for the Shallow Oil Zone, and, thus, the ASFE has yet to issue either a preliminary or final equity decision for that zone. Regarding the Stevens Zone, Chevron has appealed the ASFE's February 27, 2007 final equity decision. If Chevron is successful in its appeal, the ASFE may have to render yet another final equity decision. If the deliberative process underlying those decisions is exposed going forward – that is, if the decisionmakers are "forced to operate in a fishbowl" – the quality of the decision-making with respect to equity finalization process matters will be severely compromised.

Indeed, for at least one draft decision reviewed by the Court, relating to a dispute with respect to data submitted in the Stevens Zone finalization process, it agreed that the deliberative process privilege applied to the draft decision in its entirety, including the factual sections of the draft. See Court App. 1, Doc. No. 265. Though the draft in question was a "red-line" draft and contained comments and changes of the ASFE technical staff, the privilege should attach to factual sections even where there are not discernible comments and revisions. To require the disclosure of factual sections of unmarked drafts would defeat the purpose of protecting the red-lined versions: Chevron, even without seeing red-lined versions, would be able to determine what

changes were made in the withheld drafts simply by reviewing the chronological iterations of the unmarked drafts leading up to the final published decision. Thus, for the deliberative-process privilege to have any effect, it must apply to all drafts in their entirety, even where the drafts do not contain identifiable comments or revisions.

For this reason, we assert the deliberative-process privilege over the following draft decisions in their entirety: As reviewed in Court Appendix No. 1: 130, 265. As reviewed in Court Appendix No. 2: 278, 281, 298, 526. As reviewed in Court Appendix No. 3: 548, 572, 577, 794. As reviewed in Court Appendix No. 4: 975, 979, 980, 983, 1002, 1060, 1126, 1127. As reviewed in Court Appendix No. 20: 809, 816, 819, 1472, 1486, 1497, 1505, 1507, 3819, 3946, 3954, 3956, 3964, 3970, 3978.

## III. The Deliberative-Process Privilege Applies To The Remainder Of The Documents Withheld Because The Documents Are Pre-Decisional And Deliberative

The remainder of the documents for which we formally assert the deliberative-process privilege all arise out of the ASFE's decisionmaking process for a variety of issues relating to the equity finalization process. Throughout the equity finalization process, the ASFE was in communication with his technical advisory staff and attorneys representing DOE on various issues relating to the process, including, *inter alia*, the acceleration of the process for the Shallow Oil Zone, data submission cutoff dates, and ongoing negotiations between the parties on equity finalization matters. The majority of the remaining documents over which we formally assert the deliberative process privilege reflect such communications, both directly with the ASFE, and internally amongst the ASFE's technical team and DOE attorneys as part of their decision making and briefing to the ASFE. These documents also include handwritten and typewritten notes

of the ASFE, ASFE staff members and DOE attorneys. Mr. Fygi's declaration attached hereto provides a detailed description of each of these documents.

These documents reflect the deliberative process of the ASFE and his staff and advisors, and is subject to the protections of the privilege. Again, the privilege is especially significant in light of the fact that the equity finalization process is not yet complete - the ASFE has yet to issue a decision on the Shallow Oil Zone and may be required to issue another decision on the Stevens Zone. The deliberative process privilege encourages the candid discussion of ideas and policies by maintaining the confidentiality of that information. The release of the documents in question here will undermine the ASFE's ability to prepare future decisions free from a concern of public dissemination, scrutiny, and second-guessing.

## IV. Chevron Cannot Demonstrate A "Compelling Need" For The Documents Over Which We Are Asserting The Deliberative-Process Privilege

While the deliberative-process privilege is qualified and can be overcome upon a showing of "compelling need" by a party, see, e.g., Marriott, 437 F.3d at 1307, Chevron can make no such showing. Chevron argues in its July 24, 2007 "Status Report Regarding Disputed Documents" ("Chevron's Status Report") that, for those documents as to which the Court has recognized the applicability of the deliberative-process privilege and will balance the interests of the parties, "balancing strongly favors disclosure . . . these documents relate to central issues in the case, such as the scope and full character of the very breaches of contract that are the subject of the litigation." Id. at 3-4.

Documents reflecting the "full scope and character" of the alleged breach, however, are irrelevant for the liability phase of this litigation. On June 12, 2007, we filed a "Motion

for Clarification of the Scope of Bifurcated Proceedings," in which we argued that the current liability phase of this lawsuit should include not only a determination of the *existence* of any communications that allegedly breached ¶ B.4 of the Equity Process Agreement, but also whether such communications *actually harmed* Chevron. See Defendant's June 12, 2007 Motion for Clarification, p. 1. On June 14, 2007, the Court issued an order denying our motion "[f]or the reasons discussed in the June 14, 2007 telephone discovery conference." During that conference, the Court noted that such issues of causation are to be considered in the damages phase of this litigation. The Court's ruling indicates that Chevron need only establish the existence of communications it believes breached ¶ B.4 of the Equity Process Agreement, and, therefore, documents reflecting the "full scope and character" of any alleged breach are unnecessary at this stage.

This appears to be Chevron's understanding of the Court's ruling on the bifurcation of liability and damages in this litigation as well. Indeed, Chevron stated the following in its Status Report:

> It is apparent from documents already in Chevron's possession that Mary Egger and her subordinates provided the ASFE with input on matters as to which Ms. Egger also had acted as an advisor/advocate for the DOE Equity Team. Chevron believes that the evidence already in hand is more than sufficient to establish that fact and that Ms. Egger's active participation in this dual role constitutes a breach of contract, which entitles Chevron to recover the money it invested in this contractual process that was irrevocably tainted by DOE's breach. For this reason, *Chevron does not believe that additional evidence of the precise advice and input provided by Ms. Egger to the ASFE is necessary to establish liability*[.]

Chevron's Status Report at 8 (emphasis supplied). In light of the fact that Chevron believes that documents already in its possession establish its allegation of a breach of ¶B.4 of the Equity Pro-

cess Agreement and that additional evidence of alleged communications between Mary Egger and the ASFE is not necessary, the notion that Chevron nonetheless has a "compelling need" for those documents over which we assert the deliberative-process privilege - documents that arise entirely out of the ASFE's decisionmaking process - is plainly inconsistent with Chevron's position as reflected above, and clearly untenable. Because the Court has ruled that the effect of any allegedly improper communications is an issue for the damages phase of this litigation,[11/] Chevron cannot establish a compelling need for those documents over which we formally assert the deliberative-process privilege at this time. Moreover, as we demonstrate in our August 16, 2007 Motion for Summary Judgment, Chevron cannot establish a compelling need for any of these documents even as part of the damages phase of this litigation, because there is no contractual violation arising from any of the communications that Chevron alleges are contained in the documents it seeks. Chevron's entire lawsuit is based upon its incorrect interpretation of the Equity Process Agreement. The Equity Process Agreement's communications prohibition at ¶ B.4 was never intended to apply to attorneys.

V. The "Government Misconduct" Exception To The Deliberative Process Privilege

In its Status Report, Chevron restates the arguments originally raised in its March 15, 2007 Motion to Compel regarding the "government misconduct" exception to the deliberative process privilege.[12/] See Chevron's Status Report at 4-6. Because the "government misconduct" issue was fully briefed in response to Chevron's motion to compel and Chevron has raised no

---

[11] The Court has bifurcated all proceedings, including discovery proceedings, with respect to liability and damages. See December 12, 2006 "Revised Pretrial and Trial Schedule," ¶ 1.

[12] The Court has not yet ruled upon Chevron's Motion to Compel.

new arguments regarding the issue in its Status Report, we rely upon our April 7, 2007 response to Chevron's motion. We note, however, that the misconduct-exception argument contained in Chevron's Status Report suffers from the same fundamental defects as the argument presented in Chevron's motion: (1) in not a single case that Chevron has cited, or of which we are aware, has a court applied the government misconduct exception to the deliberative process privilege where the "misconduct" alleged was a mere breach of contract; and (2) although the Government's motion for summary judgment addresses the issue of whether any of the alleged conduct of Ms. Egger, even if true, constitutes a breach of ¶ B.4 of the Equity Process Agreement, the Court has stayed briefing and further proceedings upon the motion for summary judgment pending the Court's resolution of the Government's privilege claims. Without a determination of this threshold liability issue, the Court should not rule upon the applicability of a government misconduct exception to the deliberative-process privilege.

## CONCLUSION

For the foregoing reasons, the documents enumerated above, which also are identified in defendant's status reports and the Declaration of Eric J. Fygi, are protected from disclosure by the deliberative-process privilege.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

/s/ John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

SEPTEMBER 4, 2007

CERTIFICATE OF FILING

I hereby certify that on this 4th day of September, 2007, copies of "DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS DELIBERATIVE-PROCESS PRIVILEGE CLAIMS" and "DECLARATION OF ERIC J. FYGI" were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske