IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, | ) | No. 1:04CV1365 |
| v. | ) | Judge Susan G. Braden |
| UNITED STATES, Defendant. | ) | |

**DECLARATION OF ERIC J. FYGI**

1. I am the principal Deputy General Counsel of the United States Department of Energy ("DOE") and my office is located at 1000 Independence Avenue, S.W., Washington, D.C. 20585. I have served in this position since the DOE was established in October 1977. I have also periodically served during that period as the DOE Acting General Counsel. I am a charter member of the Senior Executive Service, and my service has been recognized by the receipt of four Presidential Rank Awards from three different Presidents, as well as the Secretary of Energy's Gold Award on three separate occasions, which was the DOE's highest form of recognition for meritorious service. I previously have submitted an affidavit, dated August 11, 2006, in this case.

2. My duties as the principal Deputy General Counsel of DOE include being responsible, along with the DOE General Counsel, to the Secretary of Energy for all of the Department's legal affairs and the management of more than 100 attorneys at the DOE headquarters in Washington, D.C. who provide legal services and guidance to DOE program offices. In the course of my duties, I have overseen and supervised DOE's handling of and response to multiple legal problems, including those arising in administrative litigation and in litigation before federal

courts.

3. I have been advised by DOE attorneys assigned to this case that the Plaintiff, Chevron U.S.A. Inc. ("Chevron"), has directed certain discovery to the DOE that requests the production of documents. DOE attorneys have further advised me that the DOE has in its possession a number of documents responsive to the Plaintiff's discovery request and that the DOE would be required to produce those documents to the Plaintiff in the absence of a legally cognizable privilege. The DOE attorneys have further advised me, based on their preliminary analyses, that some of the responsive documents appear to be predecisional and deliberative in nature and that such materials appear to be properly subject to a claim of deliberative process privilege.

4. Making a claim of deliberative process privilege for documents should be something that, in the first instance, is the responsibility of the head of the agency and should be based on a personal review of the documents that are being sought. Because reviewing individual documents for a deliberative process privilege would place an inordinate burden on the Secretary of Energy, the Secretary delegated to the DOE General Counsel the authority to claim the privilege, along with the authority to further delegate the authority to assert in litigation the DOE's deliberative process privilege along with other recognized legal privileges. That delegation to the DOE General Counsel was made by memorandum dated June 16, 2006, a true and correct copy of which is attached to this Declaration as Exhibit A.

5. Because the DOE General Counsel's duties and responsibilities prevent him from devoting the time necessary to review personally all of the documents sought in this case for which a deliberative process privilege may be asserted properly, the General Counsel, by memorandum dated July 11, 2006, redelegated to me the authority in this case "to examine and

assert, where appropriate, the Department's claim of the deliberative process privilege for any documents or testimony relating to or arising from" this case. A true and correct copy of that further delegation is attached to this Declaration as Exhibit B. The delegation from the General Counsel sets forth specific guidelines that I am directed to observe in exercising the authority that has been delegated to me.

6. I have personally examined numerous documents that DOE attorneys assigned to this case have provided to me. Pursuant to the guidelines set forth in the DOE General Counsel's delegation to me, I have concluded that these documents, which have been submitted to the Court for an *in camera* review, are of the type and nature for which deliberative process privilege should be asserted. Therefore, based on the authority delegated to me, I hereby assert on behalf of the DOE where appropriate the deliberative process privilege for all or portions of the documents that are covered by my Declaration. I explain in the following paragraphs the reasons why I have asserted, for each document, the deliberative process privilege. For the convenience of the Court, I list in Exhibit C to my Declaration the DOE officials, along with the positions they hold or held, who are shown in the documents as involved in the deliberative process for which claims of privilege are being asserted.

7. In reviewing the documents for which privileges might properly be asserted, I have approached the task from the following perspectives: (1) I am not intimately familiar with the particulars or briefed issues in this lawsuit; (2) the decisions regarding equity finalization are to be made in accordance with the relevant provisions of the 1944 Unit Plan Contact ("UPC"), and are not by its terms to be done by formal adjudication under the Administrative Procedures Act (which had not been enacted when the 1944 UPC was adopted after congressional rejection of its

predecessor); (3) whatever procedural constraints on how the Department of Energy makes its required final equity determination are to be found in explicit text the Department has agreed to in its subsequent agreements with Chevron, but only to that extent; and (4) the courts have counseled that an entity disappointed in a federal determination done under a statute placing the decision in the federal agency has no right to probe the mind of the decision maker in discovery.

8. Many of the documents as to which the Court thus far has declined to concur in the assertion of a deliberative process privilege contain recitations that, when viewed in isolation, conceivably might seem more "factual" than "deliberative" on potential policy choices. In my view, any such individual document assessment, in isolation, is an unreliable basis on which to determine whether its production would reveal protected deliberative process particulars: (1) some "facts" actually are the preliminary judgments of an author of a draft document contributing to the ultimate agency decision; (2) some of this type of "facts" are essentially intertwined with the overtly-described "analyses" to make those selected "facts" in truth an integral part of the "analysis;" and (3) some of these "factual" passages repeated in successive versions of the same draft document contain indisputably deliberative material that, when only portions of the document's text are redacted, would reveal, by comparison to the unredacted "factual" material, the particular areas of the final document that were the subject of particular internal debate in the formation of the final document.

**BACKGROUND**

9. Congress directed the DOE in the National Defense Authorization Act for Fiscal Year 1996 ("Act") to sell the Federal Government's interest in the Naval Petroleum Reserve Numbered 1, which is commonly known as Elk Hills, and to finalize the respective equity

interests in the field of the Federal Government and Chevron. Rather than viewing the field as a single entity to determine both parties' equity interests, consistent with prior practice under the 1944 Unit Plan Contract ("UPC"), the equity finalization process focused on each one of Elk Hills' four commercial production zones as an individual element for which each party's equity interest was to be determined. Those four commercial production zones are: Dry Gas Zone, Carneros Zone; Shallow Oil Zone; and Stevens Zone. The documents I have reviewed for this Declaration relate either specifically to those four commercial production zones or more generally to the finalization process itself. The following paragraphs containing the reasons for my conclusions as to why it is appropriate to assert the deliberative process privilege are organized to describe each document, in numerical order in a particular paragraph, for which the privilege is being asserted.

**MATERIALS RELATING TO DRAFT DECISIONS**

10. **Document No. 130 – Bates Number(s) CLC001 3921-3940**, identified as: cover memorandum from Godley to Cadieux, Egger, Latham and Smiths, dated 07/23/1997, subject: Draft Preliminary Decision, Dry Gas Zone, attaching draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Dry Gas Zone, Naval Petroleum Reserve No. 1, United States Department of Energy July 23, 1997."

I assert the deliberative process privilege for the redacted portions of the draft preliminary decision for the Dry Gas Zone. This is a draft preliminary decision that was prepared by the Assistant Secretary for Fossil Energy ("ASFE") and distributed by her to advisors for review and comment. This document, by its very nature, is deliberative as it seeks comments from advisors on what should or should not be included in a final decision. To the

extent that any part of the redacted material was made public and released to Chevron, there is no basis to require the production of the same material that might appear in this document, because it is already in Chevron's possession. To the extent that such material was not released, that clearly demonstrates it is deliberative in nature and/or was part of the deliberative process that the privilege is designed to protect. Indeed, the very fact that material appearing in drafts is not included in a final decision shows that it was part of a deliberative process that excluded it from a final decision and is therefore subject to the deliberative process privilege..

Moreover, the information or data that a decision maker includes in a draft are also deliberative. The very fact that certain information or data are selected for inclusion in a draft provides insight into the decision maker's thought processes to the extent it shows at that particular stage what the person believed was important; and the fact such information or data were selected at a certain point also does not address the issue of whether the information or data were actually relied on or included as "facts" in the final decision. It also provides insights into what a decision maker thought was not important or relevant at the time the draft was prepared, but that judgment might have been further informed by the time the final decision was or would be made. To require the disclosure of the ASFE's draft document accomplishes nothing other than the negation of a well founded privilege that is designed to protect an important value in public administration.

Exchanges of views and opinions between advisors and decision makers are the types of communications that must be protected by the deliberative process privilege. The ability of a decision maker like the ASFE in this instance to do her work efficiently and effectively, aided by candid advice, would be undermined if this type of communication were made public. A

primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill her mission. Releasing this communication would construct a dangerous and unwarranted barrier between a decision maker and the persons who advise the decision maker. A decision maker such as the ASFE requires frank and uninhibited advice from staff, whether such advice is offered without prompting or, most vividly, when it is given in response to a direct inquiry from the decision maker. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this document.

11. **Document No. 265 – Bates Number(s) CLC001 2695-2705**, identified as: e-mail string on page CLC001 2695, e-mail on top of page from Capitanio to Egger, dated 09/13/1999, 4:44 p.m., subject: RE: New Draft, attaching an undated draft cover letter addressed to "Gentlemen" for the signature of Kripowicz and an undated draft document entitled "Decision Regarding Dispute Over Data to be Submitted In Connection With The Equity Finalization Implementation Process For the Stevens Zone." **Document No. 278 – Bates Number(s) CLC001 2657-2668**, identified as: e-mail string on page CLC001 2657, e-mail on top of page from Capitanio to Egger, dated 09/16/1999, 12:35 p.m., subject: RE: comments/revision of draft decision, attaching an undated draft cover letter addressed to "Gentlemen" for the signature of Kripowicz and an undated draft document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For the Stevens Zone." **Document No. 281 – Bates Number(s) CLC001 2643-2656**, identified as: undated draft cover letter addressed to "Gentlemen" for the signature of Kripowicz attaching a non-identical duplicate cover letter and an undated draft

document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For the Stevens Zone." **Document No. 298 – Bates Number(s) CDE003 9001-9013** , identified as: draft cover letter, dated 09/23/1999, addressed to Taft and Thorpe for the signature of Kripowicz attaching an undated draft document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For the Stevens Zone." **Document No. 997 – Bates Number(s) CDE003 7913-7922**, identified as: undated draft cover letter addressed to "Gentlemen" for the signature of Kripowicz, attaching an undated draft document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Process For The Stevens Zone."

I assert the deliberative process privilege for all redacted portions of Document Nos. 265, 278, 281, 298 and 997. Page CLC001 2695 of Document No. 265 is an e-mail string that includes the 4:44 p.m. e-mail, and the redacted portion of such e-mail contains deliberative commentary by the author regarding what type of impact the draft decision would have on the required Independent Petroleum Engineer ("IPE") and its ability to perform its function. CLC001 2657 of Document No. 278 is an e-mail string that includes e-mails of 09/16/1999 from Cadieux at 10:30 a.m. and from Capitanio at 12:35 p.m., and the redacted portions of each e-mail contain deliberative commentary by advisors to the PDASFE concerning a draft decision on a dispute between the parties over the submission to the IPE of data in the Stevens Zone proceeding. Page CLC001 2643 of Document No. 281 contains a handwritten note on a draft cover letter for the PDASFE reflecting the deliberative process in a meeting between the PDASFE and his advisors on the same dispute. These materials reflect the opinions and

comments of the PDASFE and his advisors that are deliberative and should be protected from disclosure under the privilege.

All remaining redacted materials in Document Nos. 265, 278, 281, 298 and 997 are draft decisions involving the same dispute over the submission of data to the IPE in the Stevens Zone proceeding. All portions of the redacted materials in these documents contain draft materials that were prepared by the PDASFE's advisors for his review and, as such, are deliberative and subject to the full protection of the deliberative process privilege. These documents are, by their very nature, deliberative because they are drafts that were prepared for the PDASFE's review. To the extent that any part of the redacted material was made public and released to Chevron, there is no basis to require the production of the same material that might appear in these documents, because it is already in Chevron's possession. To the extent that such material was not released, that clearly demonstrates it is deliberative in nature and/or was part of the deliberative process that the privilege is designed to protect. Indeed, the very fact that material appearing in drafts is not included in a final decision shows that it was part of a deliberative process that excluded it from a final decision.

Moreover, all information or data that are included by advisors in a draft prepared for a decision maker are also deliberative. The fact that certain information or data are selected for inclusion in a draft provides insight into an advisor's thought processes to the extent it shows at that particular stage what the advisor believed was important; and the fact such information or data were relied on or selected at a certain point does not address the issue of whether such information or data were actually included as "facts" in the final decision. It also provides insights into what an advisor thought was not important or relevant at the time the draft was

prepared. To require the public disclosure of these draft documents would accomplish nothing other than the negation of a well founded privilege that is designed to protect an important value in public administration.

In the same manner, any edits made on these documents by the PDASFE or his advisors are also deliberative. The very essence of the deliberative process privilege involves communication between a decision maker and his staff. By its very nature, an advisor's commentary on a draft decision must not be disclosed to the public. Advisors who believe their advice will be made public are likely to censor or moderate their advice to avoid second-guessing or criticism when it is made public. That would undermine the rationale for the deliberative process privilege and do damage to the process it is designed to protect.

Exchanges of views and opinions between advisors and decision makers are the types of communications that must be protected by the deliberative process privilege. The ability of a decision maker like the PDASFE in this instance to do his work efficiently and effectively would be undermined if these types of materials were made public. A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing these materials would construct a dangerous and unwarranted barrier between a decision maker and the persons whose advice the decision maker needs to perform the duties of his job. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this paragraph no. 11.

12. **Document No. 526 – Bates Number(s) CGC007 294-323**, identified as: draft document, dated 02/18/2001, entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve No. 1 March 2001."

**<u>Document No. 548 – Bates Number(s) CGC007 144-178</u>**, identified as: draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve No. 1, United States Department of Energy May 2001." **<u>Document No. 572 – Bates Number(s) CME015 1894-1928</u>**, identified as: memorandum, dated 10/25/2001, from Egger to Kripowicz, subject: Draft Preliminary Decision Finalizing Elk Hills Stevens Zone Equity, with attached draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve No. 1, United States Department of Energy November 2001." **<u>Document No. 577 – Bates Number(s) CFO001 1174-1181</u>**, identified as: note, dated 11/09/20001 [sic], from Cadieux to Kripowicz, attaching non-identical duplicate note and draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve No. 1, United States Department of Energy November 2001." **<u>Document No. 975 – Bates Number(s) CDE001 72-79</u>**, identified as: undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve No. 1." **<u>Document No. 979 – Bates Number(s) CDE001 1019-1026</u>**, identified as: undated draft document entitled "Preliminary Decision, Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve Numbered 1." **<u>Document No. 980 – Bates Number(s) CDE001 1037-1044</u>**, identified as: undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." **<u>Document No. 983 – Bates Number(s) CDE003 784-791</u>**, identified as: undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens

Zone Naval Petroleum Reserve No. 1." **Document No. 1002 – Bates Number(s) CDE005 22-29**, identified as: undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." **Document No. 1060 – Bates Number(s) CGC002 1737-1744**, identified as: undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." **Document No. 1126 – Bates Number(s) CME025 802-809**, identified as: undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve Numbered 1." **Document No. 1127 – Bates Number(s) CME025 810-817**, identified as: undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1."

I assert the deliberative process privilege for the redacted portions of Document Nos. 526, 548, 572, 577, 975, 979, 980, 983, 1002, 1060, 1126 and 1127. The redacted portions of the foregoing documents are draft preliminary decisions regarding the finalization of the parties' participation percentages in production from the Stevens Zone. All portions of the redacted materials in these documents contain draft materials that were prepared for a decision maker by his advisors and, as such, are deliberative and subject to the full protection of the deliberative process privilege. These documents are, by their very nature, deliberative because they are drafts that were prepared for the PDASFE's review. To the extent that any part of the redacted material was made public and released to Chevron, there is no basis to require the production of the same material that might appear in this document, because it is already in Chevron's possession. To the extent that such material was not released, that clearly demonstrates it is

deliberative in nature and/or was part of the deliberative process that the privilege is designed to protect. Indeed, the very fact that material appearing in drafts is not included in a final decision shows that it was part of a deliberative process that excluded it from a final decision.

Moreover, all information or data that are included by advisors in a draft prepared for a decision maker are also deliberative. The fact that certain information or data are selected for inclusion in a draft provides insight into an advisor's thought processes to the extent it shows at that particular stage what the advisor believed was important; and the fact such information or data were selected at a certain point does not address the issue of whether the information or data were actually relied on or included as "facts" in the final decision. It also provides insights into what an advisor thought was not important or relevant at the time the draft was prepared, but that judgment might have been further informed by the time the final decision was or would be made. To require the public disclosure of these draft documents would accomplish nothing other than the negation of a well founded privilege that is designed to protect an important value in public administration.

In the same manner, any edits made on these documents by advisors are also deliberative. The very essence of the deliberative process privilege involves communication between a decision maker and his staff. By its very nature, an advisor's commentary on a draft decision must not be disclosed to the public. Advisors who believe their advice will be made public are likely to censor or moderate their advice to avoid second-guessing or criticism when it is made public. That would undermine the rationale for the deliberative process privilege and do damage to the process it is designed to protect.

Exchanges of views and opinions between advisors and decision makers are the types of

communications that must be protected by the deliberative process privilege. The ability of a decision maker to do his work efficiently and effectively would be undermined if these types of materials were made public. A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing these materials would construct a dangerous and unwarranted barrier between a decision maker and the persons whose advice the decision maker needs to perform the duties of his job. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this paragraph No. 12.

**MATERIALS THE COURT INITIALLY BELIEVES ARE NOT, IN**
**WHOLE OR PART, SUBJECT TO THE DELIBERATIVE PROCESS PRIVILEGE**

13. **Document No. 178 – Bates Number(s) CAS002 734-737**, identified as: note from Egger to Godley and Kripowitz [sic], dated 07/ 27/1998, subject: Elk Hills Equity Finalization – Communications Protocol with Chevron, with attachment.

I assert the deliberative process privilege for both the redacted portion of the cover note on page CAS002 734, and also for both pages, CAS002 735-736, that are attached to the note.. The redacted portion of the cover note communicates the opinions and recommendations of an advisor (Egger) to the ASFE (Godley) and the PDASFE (Kripowicz). The materials redacted from the two pages attached to the note contain the recommendations of the author to the decision makers.

With respect to the note, the author expresses her interpretations and opinions on material submitted by Chevron concerning a proposal for a protocol between the parties. The author states her views on the proposal and what action should be taken in response to the proposal. The passage for which the privilege is asserted is, on its face, deliberative in nature and contains

the type of communication that the privilege is designed to protect. The author is giving decision makers her frank and uncensored interpretations and opinions about a proposal and, furthermore, is offering the decision makers her advice on what action should be taken. This is precisely the type of communication that decision makers need to assist them in fulfilling their mission, and the disclosure of this communication would only result in advisors to decision makers moderating their advice. For that reason, I conclude that the deliberative process privilege must be asserted for the material in the note that is redacted.

In addition, the two typed pages attached to the note are also the type of communication for which the deliberative process privilege is designed. These pages contain the formal elaboration of the author's advice to the decision makers and, as such, must be protected from disclosure to the public. The note provides the author's recommendation as to what course of action should be taken in response to the Chevron proposal and it is presented to the decision makers as a draft for their review. In other words, this communication, taken as a whole, is a prime example of the deliberative process in action. An advisor to the decision maker provides her interpretations and opinions on a matter of importance and then makes a recommendation to the decision makers and asks for direction and guidance as to what course of action the decision makers want the staff to pursue. To disclose this communication to the public would undermine the decision making process and make it more difficult for decisions makers in this case or any other similar matter before DOE to receive the frank and unvarnished advice that this communication represents. Therefore, I assert the deliberative process privilege for the redacted materials identified in this document.

14. **<u>Document No. 210 – Bates Number(s) CDE010 1793</u>**, identified as: e-mail string,

e-mail on top of page from Gruber to Latham & Kripowicz, dated 02/01/1999, 10:41 a.m., subject: Re [2]: Equity legal issue -- oil/gas equivalence.

I assert the deliberative process privilege for the redacted portions of the following three e-mails: (1) e-mail from Gruber to Latham & Langenkamp, dated 02/01/1999, 10:41 a.m., subject: Re: [2] Equity legal issue -- oil/gas equivalence; and (2) e-mail from Kripowicz, dated 02/01/1999, 10:15 a.m., subject: Re: Equity legal issue -- oil/gas equivalence; and (3) e-mail from Latham, dated 02/01/1999, 9:52 a.m., subject: Equity legal issue -- oil/gas equivalence.

The 9:52 a.m. e-mail is a communication to Kripowicz – the PDASFE – from one of his advisors (Latham) providing a response to a question that the PDASFE had raised previously concerning the impact on the Stevens Zone proceeding of using certain methodologies relating to the issue identified in the subject matter heading of this e-mail. The PDASFE responded in the 10:15 a.m. e-mail by asking yet another question on the same subject matter, and the 10:41 a.m. e-mail is a response from another advisor (Gruber) to the PDASFE answering the question that the PDASFE raised in his 10:15 a.m. e-mail.

These e-mails disclose questions that the PDASFE raised about the Stevens Zone proceeding and the responses he received from two of his advisors. The PDASFE's questions and his staff's answers are inextricably linked to the PDASFE's role as a decision maker in this matter, as well as the role his staff played in helping him in the process. More specifically, the information provided in the 10:41 a.m. e-mail is no less deliberative because of its content than it would be if it also included suggestions as to how the information should or could be used by the PDASFE in the process of making a decision. If this type of information were purely factual and appeared in a final decision, then its disclosure from this type of material would be moot because

such information would be in the hands of the party requesting it. On the face of this document, however, there is no way of determining if this information was even used, or how it was used or even if it were correct or was overtaken by other events. Indeed, the first eight lines of text in the 10:41 a.m. e-mail simply provide the sender's opinion or interpretation of what a party did, and there is no basis to conclude that such material is "factual" in the sense that it is not protected by the deliberative process privilege. Lines nine through thirteen of the text then describe the sender's own thoughts on how a methodology should be used to arrive at an answer to the PDASFE's question.

It is for those reasons that this is precisely the type of communication that is, and should be, protected from disclosure by the deliberative process privilege. A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker like the PDASFE requires frank and uninhibited advice from staff, whether such advice is offered without prompting or, most vividly, when it is given in response to a direct inquiry from the decision maker. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this document.

15. **Document No. 240 – Bates Number(s) CME016 2750-2753**, identified as: e-mail string, e-mail on top of page from Latham to Egger, dated 08/03/1999, subject: FW: Critical Data and Decline Curves.

I assert the deliberative process privilege for the redacted portions on pages CME016

2751 and CME016 2752. The redacted material is part of a communication to the PDASFE from an advisor to the PDASFE. It was prepared and forwarded pursuant to the instructions of the PDASFE. The material was provided to the PDASFE to assist him with the preparation of a decision on a dispute that had arisen between the parties and had been presented to the PDASFE for resolution. It contains the opinions and recommendations of the author regarding the matter identified in the subject heading of his e-mail to the PDASFE. As such, it is precisely the type of communication that the privilege is designed to protect from disclosure.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

16. **Document No. 268 – Bates Number(s) CLC001 2715-2716**, identified as: e-mail string, e-mail on top of page from Capitanio to Egger, dated 09/14/1999, 1:50 p.m., subject: RE: Re[2]: New draft.

I assert the deliberative process privilege for the redacted portions of the following three e-mails: (1) e-mail from Capitanio to Egger, dated 09/14/1999, 1:50 p.m., subject: RE: Re[2]: New Draft; (2) e-mail from Egger to Capitanio, dated 09/14/1999, 9:54 a.m., subject: Re[2]: New Draft; and (3) e-mail from Capitanio, dated 09/13/1999, 4:44 p.m., subject: RE: New

draft.

These e-mails by and between advisors to the PDASFE (Kripowicz) relate to a draft decision that was being prepared for the PDASFE. A draft decision with revisions was sent out by one of the PDASFE's advisors (Egger) for review and comment to the PDASFE and some of his other advisors. The 09/13/1999 4:44 p.m. e-mail provides comments from one of the other advisors (Capitanio) responding to the draft and raising a concern in the fifth paragraph of the e-mail as to how the proposed decision might affect the ability of the IPE to carry out its function. The 09/14/1999 9:54 a.m. e-mail acknowledges that concern and offers various ideas in response to it. The 09/14/1999 1:50 p.m. e-mail, in turn, provides further information about the IPE's position and it states the author's (Capitanio) thoughts on and interpretations of the information concerning the IPE.

The redacted portions of the 09/14/1999 1:50 p.m. e-mail contain the author's thoughts and interpretations of the IPE's actions that the author was sharing with the PDASFE and some of the PDASFE's other advisors. This is the type of deliberative information that must be shared openly and frankly with the PDASFE, as well as other advisors whose responsibilities included the duty to advise the PDASFE in this matter.

By the same token, the redacted portions of the 09/14/1999 9:54 a.m. e-mail contain the views and opinions of the advisor (Egger) who initially circulated the draft decision for comment on the concern that another advisor had raised in response to the draft revisions. That concern related to a question as to what impact the draft decision might have on the IPE's ability to fulfill its mission and continue gathering data. In this context, those views and opinions are not simply factual, because they attempt to address the concern that, left unresolved, could not only affect

the substantive content of the decision but also threaten the underlying process itself – the ability of the IPE to perform its duties. Thus, these are not merely factual matters but relate directly to policy and whether the PDASFE can issue a decision contemplated by the draft or chart a new course because of the concern raised about the proposed decision.

The same reasoning applies to the redacted portion of the 09/13/1999 4:44 p.m. e-mail that raised the concern in the first instance. The concern itself posed in the first sentence is, on its face, deliberative since it asks the question whether the proposed decision would have an impact on the IPE's ability to do its work, with the second sentence providing the author's own thoughts and opinions on what impact the proposed decision should have in that regard. As just previously stated, this concern goes to the very heart of whether the draft is appropriate in light of the impact it may have on the IPE's ability to do its job. That is a policy issue being raised by one advisor to the PDASFE for the consideration of the PDASFE and his other advisors in the pre-decisional stage. It is the very heart of deliberation for an advisor to raise a concern as to whether a proposed decision is appropriate and may interfere with other important policy matters. It does not simply raise a procedural question such as when will submissions be made or which party will be the first one to submit a document. Rather, it addresses the question whether the proposed decision itself would undermine the very substantive policy it is addressing or perhaps even an unrelated but nonetheless important policy issue.

These types of exchanges of views and opinions between advisors are the types of communications that must be protected by the deliberative process privilege. The ability of a decision maker like the PDASFE and members of his staff also involved in the process to do their work efficiently and effectively would be undermined if these types of exchanges were

made public. A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker or an agency may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker like the PDASFE requires frank and uninhibited advice from staff, whether such advice is offered without prompting or, most vividly, when it is given in response to a direct inquiry from the decision maker. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this document.

17. **Document Nos. 320-332 – Bates Number(s) CME013 1693-1705**, identified as: thirteen typed pages, 02/16/2000, 9:40 a.m., each having a separate heading with the first page entitled "Historical Background."

I assert the deliberative process privilege for the redacted portions on page CME013 1702 and page CME013 1704, both entitled "Potential Impact on Equity." These materials were prepared by an advisor to the decision maker for the purpose of briefing the decision maker (Kripowicz) on the status of the matter pending between the parties, and the redacted portions of these materials contain the author's opinions on an important issue that was in dispute between the parties.

While this briefing paper may contain some factual matters that may in isolation of context be disclosed to the public, the redacted portions constitute the authors' opinions on an important issue that could have been presented to the decision maker. The redacted materials go beyond abstract and isolated descriptions of the issues and focus on the author's opinions on the issues, although those opinions themselves are deliberative. The issue constituted a matter of

significance in the pending matter and the advisor was formulating advice to the decision maker with his opinions on what impact the issue might have on the pending matter. This is part and parcel of advisor's role.

The release of this type of communication could only have the effect of causing advisors to pull back from providing their full and frank opinions to decision makers. A major purpose of the privilege is to ensure the flow of frank and unvarnished communications between and among advisors formulating advice to decision makers, and releasing this type of communication could only undermine that purpose. The end result would be to isolate decision makers from their advisors, because advisors would be hesitant to provide their ideas, opinions and recommendations if they would be disclosed at a subsequent time and subject the advisors to second-guessing and criticism. It is for this reason that I assert the deliberative process privilege for the redacted materials identified in these documents.

18. **Document No. 337 – Bates Number(s) CME013 1676-1680**, identified as: five typed pages, with the first page dated 02/23/2000 and entitled "Key Question For NSA At Stevens Final Equity Briefing For Principal Deputy ASFE."

I assert the deliberative process privilege for redacted portions of pages CEM013 1676-1680. This document was prepared by an advisor to the decision maker to prepare the decision maker for a conference between the decision maker and the IPE.

This document provides the author's ideas and opinions to the decision maker as to what questions the decision maker should raise in a conference call with the IPE. This document, too, is part and parcel of what advisors do in providing assistance to decision makers. It reflects the ideas, thoughts and recommendations that the advisor provided to the decision maker as to what

the decision maker should do in accomplishing his mission.

The release of this type of communication could only have the effect of causing advisors to pull back from providing their full and frank opinions to decision makers. A major purpose of the privilege is to ensure the flow of frank and unvarnished communications between advisors and decision makers, and releasing this type of communication could only undermine that purpose. The end result would be to isolate decision makers from their advisors, because advisors would be hesitant to provide their ideas, opinions and recommendations if they would be disclosed at a subsequent time and subject the advisors to second-guessing and criticism. It for this reason that I assert the deliberative process privilege for the redacted materials identified in this document.

19. **Document No. 339 – Bates Number(s) CLC001 4511-4513**, identified as: three typed pages, dated 03/17/2000, entitled "Elk Hills Equity Status."[1]

I assert the deliberative process privilege for the redacted portions of the materials on pages CLC001 4511 and CLC001 4513. This document was prepared by an advisor (Latham) to the ASFE to provide the author's opinions on the Elk Hills proceedings and also his recommendations as to what actions the ASFE could take in the proceedings. The redacted portions of these materials provide the author's opinions and recommendations to the ASFE and is the type of communication that the privilege is designed to protect from disclosure.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing

---

[1] This document was incorrectly identified on the government's privilege log as being prepared by Alan Burzlaff. It was prepared by Gary Latham.

this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

20. **Document No. 362 – Bates Number(s) CFO001 948-952**, identified as: five pages, with e-mail on first page from Latham to Kripowicz, dated 08/10/2000, 3:37 p.m., subject: Possible equity discussions with Chevron's Gary Luquette.

I assert the deliberative process privilege for the redacted portions of the materials on pages CFO001 948-952. These materials contain an advisor's (Latham) ideas, interpretations, recommendations, and forecasts of actions and events that could arise or be taken in the matter pending before the parties.

This document was prepared by an advisor for the decision maker and covers a wide range of topics that are relevant to the matters pending between the parties. It is the type of document that advisors routinely prepare to assist decision makers and is at the heart of the deliberative process. It covers issues that relate to each party and it provides opinions and recommendations and courses of action that the decision maker could take.

The release of this type of communication could only have the effect of causing advisors to pull back from providing their full and frank opinions to decision makers. A major purpose of the privilege is to ensure the flow of frank and unvarnished communications between advisors and decision makers, and releasing this type of communication could only undermine that

purpose. The end result would be to isolate decision makers from their advisors, because advisors would be hesitant to provide their ideas, opinions and recommendations if they would be disclosed at a subsequent time and subject the advisors to second-guessing and criticism. It is for this reason that I assert the deliberative process privilege for the redacted materials identified in this document.

21. **Document No. 380 – Bates Number(s) CLC001 2288**, identified as: handwritten notes, dated 08/23/2000, by Capitanio about call from Gangle concerning issue raised by the DOE Equity Finalization Team ("EFT").

I assert the deliberative privilege process for the redacted portions in two paragraphs of this document. These notes reflect the thoughts and opinions of one of the PDASFE's advisors (Latham) regarding a call made by the head of the DOE EFT concerning an issue that he had raised in a letter to the PDASFE regarding changes that the IPE was making to a provisional recommendation it already had issued.

The redacted materials reflect the opinions of an advisor (Latham) to the PDASFE on an important issue that had been presented to the PDASFE for a decision. The IPE had made a provisional recommendation and then decided to change it based on comments made by the parties. The question of whether and how that could be done in light of existing protocols had been presented to the PDASFE for resolution. Both redacted paragraphs reflect the opinions of this advisor on how the issue should be handled. All matters discussed in the first redacted paragraph are part and parcel of, and form the basis for, that person's recommendations and opinions. In other words, the redacted materials form, and are inextricably part of, that person's recommendations and opinions. The redacted materials are clearly deliberative in content and

effect and are of the type that advisors routinely provide concerning issues placed before decision makers.

These types of opinions by an advisor to a decision maker must be protected from disclosure to the public in order to prevent the advisor from holding back such opinions in the future. The ability of a decision maker like the PDASFE and members of his staff to do their work efficiently and effectively would be undermined if these types of exchanges were made public. A primary basis for the privilege is to ensure the free flow of ideas so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker like the PDASFE requires frank and uninhibited advice from staff. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this document.

22. **Document No. 384 – Bates Number(s) CAS005 1712**, identified as: e-mail string, e-mail on top of page from Egger to Smits, dated 08/29/2000, 2:15 p.m., subject: RE: Request For A Conference Call.

I assert the deliberative process privilege for those materials that are redacted on page CAS005 1712. The redacted materials contain the views, opinions and recommendations of the author to the decision maker on two issues raised by the parties to the proceedings.

This document was prepared by an advisor for the decision maker and covers issues that had been presented to the decision maker for resolution. The author was an advisor to the decision maker and he was providing his frank and unvarnished views as to how the questions

that had been presented to the decision maker could be decided. It is the type of advice that advisors routinely provide to decision makers and it clearly reflects the deliberative process.

The release of this type of communication could only have the effect of causing advisors to pull back from providing their full and frank opinions to decision makers. A major purpose of the privilege is to ensure the flow of frank and unvarnished communications between advisors and decision makers, and releasing this type of communication could only undermine that purpose. The end result would be to isolate decision makers from their advisors, because advisors would be hesitant to provide their ideas, opinions and recommendations if they would be disclosed at a subsequent time and subject the advisors to second-guessing and criticism. It is for this reason that I assert the deliberative process privilege for the redacted materials identified in this document.

23. **Document No. 495 – Bates Number(s) CAS005 1665-1667**, identified as: three typed pages in table format, dated 01/17/2001, entitled "Summary of Owner Criticisms of the Final Equity Recommendation by NSAI for the Stevens Zone and NSAI Responses to those Criticisms."[2]

I assert the deliberative process privilege for all redacted portions of this document. This document contains the author's opinions as to what issues the parties in the Stevens Zone proceeding had raised in response to the IPE's final recommendation and the IPE's responses to those positions. This document also contains the author's opinions of what impacts these issues would have on the parties' equity interests. These are opinions and interpretations of an advisor

---

[2] The government's privilege log incorrectly identifies the author of this document as Francis Gangle, the head of the DOE Equity Finalization Team. This document was prepared by Gary Latham, the head of the DOE Headquarters technical advisory team.

to the decision maker and are of the type that are designed to be protected from disclosure by the privilege. This is the type of activity normally performed by the staff of a decision maker and must not be disclosed if a decision maker is to have unfettered access to the free flow of open and frank information that is necessary to make informed decisions.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

24. **Document No. 497 – Bates Number(s) CFO001 1150-1153**, identified as: three typed pages in table format, dated 01/17/2001, entitled "Summary of Owner Criticisms of the Final Equity Recommendation by NSAI for the Stevens Zone and NSAI Responses to those Criticisms." This is a non-identical duplicate of Document No. 495.

I assert the deliberative process privilege for all redacted portions of this document. This document contains the author's opinions as to what issues the parties in the Stevens Zone proceeding had raised in response to the IPE's final recommendation and the IPE's responses to those positions. This document also contains the author's opinions of what impacts these issues would have on the parties' equity interests. These are opinions and interpretations of an advisor to the decision maker and are of the type that are designed to be protected from disclosure by the

privilege. This is the type of activity normally performed by the staff of a decision maker and must not be disclosed if a decision maker is to have unfettered access to the free flow of open and frank information that is necessary to make informed decisions.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

25. **Document No. 531 – Bates Number(s) CBG006 12**, identified as: e-mail from Burzlaff to Egger, Latham, Gangle and Thorpe, dated 02/26/2001, 8:23 p.m., subject: Chevron's Streamlining Suggestions for SOZ Equity Process.

I assert the deliberative process privilege for the redacted portions of this e-mail. This is a communication to the ASFE's advisors on a pending proposal by Chevron -- one of the party's to the equity proceeding. More specifically, Chevron had made certain suggestions concerning the topic identified in the subject line of this e-mail. The author provided some of the ASFE's advisors with his thoughts and opinions on Chevron's suggestions. All redacted portions of this e-mail are deliberative. None of the redacted material is separable from the whole as being non-deliberative. The redacted material in each paragraph of the e-mail forms a single unit of deliberative thought being communicated by the author to the ASFE's advisors. Furthermore,

releasing any part of the redacted material makes it distinctly possible, if not probable, that the material disclosed would be sufficient to provide a person reading the redacted material with knowledge or information that would be sufficient to form a well based opinion on material that was not released, resulting in an unwarranted and improper negation of the deliberative process privilege in its entirety. Clearly, this material is the type of information that the deliberative process privilege is designed to protect from disclosure.

The deliberative process privilege is designed, in part, to ensure the free flow of information to a decision maker. That goal is best served if there is an open and frank exchange of ideas by and between persons whose responsibilities include providing opinions, ideas and advice on issues that a decision maker must resolve. In this instance, the author of this e-mail was doing exactly that, i.e., providing opinion, ideas and advice to persons who were required to advise the ASFE on the issue identified in the subject line of the e-mail. Releasing this type of commentary to the public would have a chilling effect on the willingness of a person to provide such advice, because it could subject the author to criticism or second-guessing and, as a result, act as a barrier to receipt of candid advice by a decision maker. To protect the decision making process, I conclude that it is necessary to assert the deliberative process privilege over the redacted materials identified in this document.

26. **Document No. 552 – Bates Number(s) CDE003 7354**, identified as: e-mail string, e-mail on top of page from Egger to Cadieux, dated 06/08/2001, 9.55 a.m., subject: RE: Stevens Prelim.

I assert the deliberative process privilege for the redacted portions of the following two e-mails: (1) e-mail from Cadieux to Egger, dated 06/06/2001, 4:09 p.m., subject: FW: Stevens

Prelim; and (2) e-mail from Smits to Cadieux, dated 06/06/2001, 3:57 p.m., subject: RE: Stevens Prelim. The 3:57 p.m. e-mail is a communication that contains the author's opinion or interpretation of the position that Chevron took regarding the IPE's preliminary recommendation in the Stevens zone proceeding. The 4:09 p.m. e-mail, in turn, is that author's opinion or interpretation of the first author's opinion of the position that Chevron took during the Stevens Zone proceeding.

The 3:57 p.m. e-mail communicates both the author's opinion and interpretation of a position Chevron had taken before the IPE in the course of the Stevens Zone proceeding and, as is shown by the 4:09 p.m. e-mail, resulted in the author and other advisors to a decision maker to take their own action. That is demonstrated by the communication in the 4:09 p.m. e-mail, in which that author explains in even greater detail the basis of the actions taken by the author of the 3:57 p.m. e-mail.

All of the redacted material is deliberative in its entirety in that it conveys the opinions and interpretations of advisors to a decision maker about a matter that the advisors are working on for the decision maker. The material communicated in the 3:57 p.m. e-mail consists of the author's opinions and interpretations as a way of explaining the basis of the actions taken in preparing a draft document for a decision maker. That is precisely the type of communication that is and must be covered by the deliberative process privilege.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-

guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

27. **<u>Document No. 756 – Bates Number(s) CDE003 4336</u>**, identified as: e-mail from Cadieux to Smits and Latham, dated 02/22/2006, 4:04 p.m., subject: Building blocks for the decision.

I assert the deliberative process privilege for the redacted portions of this e-mail. This e-mail was sent from one advisor to the ASFE to another ASFE advisor, communicating the author's thoughts and opinions as to what content should be included in the text of a preliminary decision that was being drafted for the decision maker. To the extent the redacted material is read to contain any non-deliberative matter, such material is part and parcel of the deliberative matter itself and cannot be interpreted to stand alone apart from the deliberative matter. This communication epitomizes the type of discourse that should be and is protected by the deliberative process privilege. The communication reflected by the e-mail is between two advisors to the decision maker and was undertaken for the purpose of drafting a document for the decision maker.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and

releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

28. **Document No. 794 – Bates Number(s) CDE001 520-521**, identified as: draft document, dated 03/27/06, entitled "Draft Section III.C."

I assert the deliberative process privilege for all redacted portions on both pages of this document. This document is a draft decision that was prepared by an advisor (Cadieux) to the ASFE.[3] As such, it contains the author's recommendations, which also incorporate the recommendations of yet another advisor (Latham), as to what should be included in the draft decision being prepared for the ASFE.

All of the redacted material is deliberative and needs to be protected by the deliberative process privilege. The first page of this document describes both advisors' recommendations, and includes edits made by the author of this document, as to what material should be included in the text of the decision being prepared for the ASFE. The second page contains matters that constitute a continuation of the material from the first page.

More specifically, the first sentence and following table on the second page constitute an analysis performed by the ASFE's advisors (Latham and Smits) who were also involved in drafting the document for the ASFE. To the extent that this material was included in a final decision that was made public, it has already been released to Chevron. To the extent the materials on the second page was not published in a final decision that was released to Chevron,

[3] This document was prepared by Gena Cadieux, and it is described incorrectly on the government's privilege log as a "report." The document is part of a draft decision that was being prepared for the ASFE in the Stevens Zone proceeding.

the material is then clearly part of a draft document that was raised but not made part of a final document, which means it is deliberative and should be protected from disclosure.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

29. **Document No. 850 – Bates Number(s) CDE007 1660**, identified as: e-mail from Latham to Egger, dated 06/09/2006, 2:06 p.m., subject: Revised file "Equity scenarios 6-9-06."

I assert the deliberative process privilege for the redacted portion of this e-mail. This is an e-mail from one advisor (Latham) to the ASFE to another advisor (Egger) to the ASFE concerning potential outcomes to both parties under various assumptions. This document communicates the author's views and predictions on the subject matter of this e-mail, which is a subject that would be presented to the decision maker for resolution. This type of routine communication between and among advisors to a decision maker reflects the advisor's deliberative processes and it must be protected.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a

person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

30. **Document No. 1119 – Bates Number(s) CME003 2333-2334**, identified as: two typed pages, dated 01/1992, entitled "Carneros Reservoir."

I assert the deliberative process privilege for the redacted portions of the material on pages CME003 2333-2334. This material, prepared by an advisor to the decision maker, contains the author's views, interpretations and opinions on a significant issue that was raised by the parties and was pending before the decision maker. This author's material was considered by the decision maker in the course of reviewing and analyzing the particular issue and is the type of deliberative communication that should be protected from disclosure.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

31. **Document No. 1121 – Bates Number(s) CME015 1948-1949**, identified as: undated two page document entitled "Stevens Zone Protocol Issue."

I assert the deliberative process privilege for the redacted materials on pages CME015 1948-1949. The IPE had issued a final recommendation in the Stevens Zone proceeding, and the IPE subsequently determined that its recommendation had to be amended because of a mistake. The parties could not reach agreement on what course of action should be taken and the matter was brought to the attention of the PDASFE for resolution. This document was prepared by one of the PDASFE's advisors (Egger) and provides her assessment of the problem and recommendations of various courses of action to the decision maker. It is deliberative in its entirety as it communicates her assessments of the problem and various recommendations to the decision maker.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

32. **Document No. 1123 – Bates Number(s) CME025 627-628**, identified as: undated two-page document that is entitled "Stevens Zone Protocol Issue." This document is a non-identical duplicate of Document No. 1121.

I assert the deliberative process privilege for the redacted materials on pages CME025 627-628. The IPE had issued a final recommendation in the Stevens Zone proceeding, and the IPE subsequently determined that its recommendation had to be amended because of a mistake. The parties could not reach agreement on what course of action should be taken and the matter was brought to the attention of the PDASFE for resolution. This document was prepared by one of the PDASFE's advisors (Egger) and provides her assessment of the problem and recommendations of various courses of action to the decision maker. It is deliberative in its entirety as it communicates her assessments of the problem and various recommendations to the decision maker.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

**MATERIALS THE COURT INITIALLY BELIEVES ARE, IN WHOLE OR PART, SUBJECT TO THE DELIBERATIVE PROCESS PRIVILEGE**

33. **Document No. 132 – Bates Number(s) CDE003 7512**, identified as: e-mail from Egger to Latham and Capitanio, dated 8/29/1997, 10:00 a.m., subject: Dry Gas Zone Preliminary Decision. **Document No. 144 – Bates Number(s) CME009 1890-1894**, identified as: cover note from Egger to Godley, dated 09/29/1997, attaching draft document entitled