"'Additional Carneros Formations' Outline." **Document No. 159 – Bates Number(s) CDE003 3616**, identified as: e-mail string, top e-mail from Egger to Latham and Langenkamp, dated 03/09/1998, 4:12 p.m., subject: Re[2]: Opportunity to reply to Stevens rebuttal. **Document No. 161 – Bates Number(s) CDE003 6990-6991**, identified as: two page draft letter, dated 04/242/1998 [sic], for the signature of Godley. **Document No. 167 – Bates Number(s) CME003 1825-1827**, identified as: cover facsimile sheet, dated 04/28/1998, from Latham to Godley attaching a typed note entitled "Status of NSAI planning for response to comments on their provisional Stevens equity recommendation – April 28, 1998." **Document No. 242 – Bates Number(s) CFO001 1819-1827**, identified as: two sets of notes, one set dated, 08/25/1999, taken by PDASFE, during telephone call with the IPE about an issue in the Stevens Zone proceeding, and the second set reflecting a discussion about the same issue. **Document No. 243 – Bates Number(s) CFO001 1828-1838**, identified as: handwritten notes, dated 08/25/1999, by Cadieux during meeting to discuss an upcoming meeting with IPE on issues raised in Stevens Zone proceeding. **Document No. 253 – Bates Number(s) CFO001 1808-1811**, identified as: notes from a conference call, dated 08/31/1999, with NSAI on the data issue in the Stevens Zone proceeding. **Document No. 255 – Bates Number(s) CDE003 7810**, identified as: e-mail string, e-mail on top of page from Egger to Latham and Kripowicz, dated 09/03/1999, 10:07 a.m., subject: Re[2]: Decision on Stevens Zone data submission. **Document No. 261 – Bates Number(s) CME016 2735-2739**, identified as: facsimile cover sheet, dated 09/10/1999, 4:46 p.m., attaching one typed page from Latham and two pages of handwritten notes from Smits on the data issue in the Stevens Zone proceeding. **Document No. 264 – Bates Number(s) CLCO001 2345**, identified as: e-mail from Latham to Kripowicz, dated

09/11/1999, 12:17 p.m., subject: NSAI critique of the Stevens shale studies by DOE and Chevron. **Document No. 283 – Bates Number(s) CDE003 9043**, identified as: e-mail from Egger to Kripowicz, Latham, Capitanio and Smits, dated 09/20/1999, 4:58 p.m., subject: ASFE data decision. **Document No. 292 – Bates Number(s) CDE013 10270**, identified as: e-mail from Latham to Kripowicz, Egger, Capitanio and Smits, dated 09/21/1999, subject: Stevens data cutoff decision. **Document No. 294 – Bates Number(s) CDE003 4074**, identified as: e-mail string, e-mail on top of page from Egger to Smits, dated 09/22/1999, 10:06 a.m., subject: Re: Draft ASFE Data Decision. **Document No. 356 – Bates Number(s) CAS002 1105**, identified as: e-mail from Latham to Kripowicz and Egger, dated 08/04/2000, 1:24 p.m., subject: Changes to NSAI final equity recommendation for the Stevens Zone. **Document No. 357 – Bates Number(s) CAS003 910**, identified as: e-mail string, e-mail on top of page from Egger to Latham and Kripowicz, dated 08/04/2000, 2:24 p.m., subject: RE: Changes to NSAI final equity recommendation for the Stevens Zone. **Document No. 373 – Bates Number(s) CLC001 1235-1237**, identified as: three pages of handwritten notes and a chart prepared by Louis Capitanio, undated.[4] **Document No. 381 – Bates Number(s) CDE013 33720**, identified as: e-mail string, e-mail on top of page from Capitanio to Smits, dated 08/25/2000, 4:55 p.m., subject: FW: Response to DOE 8/22 Stevens Equity Letter. **Document No. 511 – Bates Number(s) CBG006 3-9**, identified as: handwritten notes, dated 02/01/2001, prepared by Gangle,[5] as well as charts, e-mails and draft talking points prepared in anticipation of

[4] The government's privilege log incorrectly identifies Alan Burzlaff as the author of this document. The document was prepared by Louis Capitanio.

[5] The government's privilege log incorrectly identifies Egger as the author of these notes. They were prepared by Gangle.

negotiations between the parties to streamline the SOZ proceeding, including e-mail on page CBG006 5 from Egger to Latham and Burzlaff, dated 01/29/2001, 2:09 p.m., subject: Chevron Mtg., e-mail top of page CBG006 8 from Burzlaff to Egger and Thorpe, dated 01/19/2001, 3:43 p.m., subject: Chevron's response, and e-mail from Egger to Burzlaf and Thorpe on page CBG006 9, dated 01/17/2001, 1:14 p.m., subject: Chevron's response. **Document No. 543 – Bates Number(s) CAS002 940-941**, identified as: e-mail string, e-mail on top of page from Latham to Cadieux, dated 04/05/2001, 6:15 p.m., subject: RE: NSAI procedure for estimating 26R ultimate recovery. **Document No. 551 – Bates Number(s) CAS006 2920**, identified as: one typed page, dated 06/06/2000, discussing an issue involved in the Stevens Zone proceeding before the ASFE. **Document No. 557 – Bates Number(s) CDE003 3566**, identified as: e-mail string, e-mail on top of page from Egger to Cadieux, dated 06/26/2001, 3:06 p.m., subject: RE: Basis for conversion of Stevens Zone gas to oil equivalent. **Document No. 571 – Bates Number(s) CFO001 1889-1890**, identified as: two pages (the first being a non-identical duplicate of the second) prepared by Cadieux, with the second page entitled "Comments on Stevens Zone draft decision submitted 10/25/01. **Document No. 589 – Bates Number(s) CDE003 4454-4455**, identified as: e-mail string, e-mail on top of page from Egger to Latham and Cadieux, dated 12/05/2001, 10:09 a.m., subject: RE: Owner comments on the Stevens Zone Preliminary Decision. **Document No. 602 – Bates Number(s) CDE007 8635-8636**, identified as: e-mail string, e-mail on top of page from Latham to Cadieux, dated 05/13/2002, 3:11 p.m., subject: RE: Reflections on the abandonment pressure debate. **Document No. 672 – Bates Number(s) CDE007 1247-1249**, identified as: e-mail string, e-mail on top of page from Smits to Egger, dated 09/24/2004, 8:18 a.m., subject: RE: Stevens CF and Equity for 1942 Prices.

**Document No. 740 – Bates Number(s) CFE001 119-121**, identified as: facsimile cover page, dated 01/05/2006, 8:51 a.m., attaching a 2 typed pages, dated 01/04/2006, from Latham to Jarrett, subject: Redetermination of Final Equity in the Stevens Zone of the Elk Hills Oil Field. **Document No. 750 – Bates Number(s) CDE007 6638-6639**, identified as: two typed pages, dated 02/09/2006, prepared by Cadieux and entitled "Gena Cadieux's Questions with Responses by the ASFE Equity Advisory team (Latham, Smits)." **Document No. 754 – Bates Number(s) CLC001 74**, identified as: one page of handwritten notes, dated 02/19/06, entitled "Stevens Equity OHA decision." **Document No. 783 – Bates Number(s) CDE007 6766**, identified as: e-mail string, e-mail on top of page from Latham to Cadieux, dated 03/15/2006, 1:23 p.m., subject: RE: OHA Decision Piece. **Document No. 800 – Bates Number(s) CDE007 2033**, identified as: e-mail from Latham to Cadieux, dated 03/28/2006, 10:13 a.m., subject: Revised Section III A. **Document No. 809 – Bates Number(s) CDE007 15865**, identified as: e-mail string, e-mail on top of page from Arnold to Cadieux, dated 04/05/2006, 10:38 a.m., subject: Section III C Text Rewrite.doc. **Document No. 840 – Bates Number(s) CDE003 1602**, identified as: e-mail string, e-mail on top of page from Latham to Egger, dated 06/09/2006, 9:32 a.m., subject: RE: Financial Risks associated with the Elk Hills equity finalization process. **Document No. 841 – Bates Number(s) CDE003 1625-1626**, identified as: e-mail string, e-mail on top of page from Latham to Egger, dated 06/09/2006, 12:25 p.m., subject: RE: Financial risks associated with the Elk Hills equity finalization process. **Document No. 846 – Bates Number(s) CDE007 538-539**, identified as: e-mail string, e-mail on top of page from Egger to Latham, dated 06/09/2006, 12:45 p.m., subject: RE: Financial risks associated with the Elk Hills Equity finalization process. **Document No. 851 – Bates Number(s) CDE007 6742**,

identified as e-mail string, e-mail on top of page from Egger to Latham, dated 06/09/2006, 2:40 p.m., subject: RE: Additional data for the equity scenarios. **Document No. 872 – Bates Number(s) CBG011 220-271**, identified as: multiple page document containing numerous e-mail strings, e-mail on top of first page from Latham to Stone and Gangle, dated 08/28/2006, 7:13 p.m., subject: RE: DOE EFT Comments, with materials for which the deliberative process privilege is being asserted on pages CBG011 259, 262, 266, 268 and 271. **Document No. 1059 – Bates Number(s) CBG002 1734-1736**, identified as: three typed pages constituting a portion of draft of a preliminary decision in the Stevens Zone proceeding. **Document No. 1135 – Bates Number(s) CLC001 4094-4095**, identified as: two typed pages reflecting a meeting on the DGZ and the Carneros Zone, dated 04/07/1997, and entitled "DGZ/Carneros Equity Review."

I assert the deliberative process privilege for all redacted portions of foregoing documents, which for the sake of brevity may be divided into a number of categories.

The first and largest category of these documents (nos. 132, 167, 294, 511, 543, 557, 589, 602, 672, 783, 800, 809, 840, 841, 846, 851, 872, 1059 and 1135) are communications between and among persons who have been advisors to individuals who have held positions since approximately the mid-1990s requiring them to make decisions on Elk Hills equity finalization matters. These communications range from situations in which advisors were asked by other advisors to provide commentary to situations in which advisors initiated contact with others seeking commentary to facilitate resolution of issues arising in this area. All such communications are consonant with a primary purpose of the deliberative process privilege, which is to foster open and frank communications by and between government officials in order

to provide decision makers with necessary support to perform their jobs as efficiently and effectively as possible.

The next largest category of these documents (nos. 144, 159, 161, 255, 261, 264, 283, 292, 356, 357, 381, 571, 740 and 754) are communications between decision makers and advisors to the decision makers. For the most part, these communications arose either because a decision maker made a direct inquiry to one of his or her advisors for assistance, or because an advisor initiated contact to keep a decision maker informed about various developments relating to Elk Hills issues or wanted guidance from a decision maker as to what course of action should be taken in a given circumstance. In any case, these are the types of communications that fall squarely within the scope of the deliberative process privilege. The privilege is designed to ensure that a decision maker receives the best possible advice and guidance in performing his role. That can be accomplished, in major part, if the decision maker's advisors do not feel constrained to moderate or censor their commentary and advice for fear that it will be disclosed to the public and subject the advisor to criticism and second-guessing.

The final category of these documents (nos. 242, 243, 253, 373, 511, 551 and 750) are communications that reflect the internal thought processes of a decision maker or his advisors. Within this category are documents that contain notes of meetings and telephone conferences where matters affecting Elk Hills were discussed. This category also includes in a few instances notes or informal writings that a decision maker or his advisors prepared when they were apparently considering issues arising in the Elk Hills proceeding. These types of materials are also afforded protection under the privilege because they may reflect the innermost thoughts and ideas of a decision maker or an advisor about Elk Hills issues. These materials are also protected

from disclosure because they go to the very heart of the process that the privilege is supposed to protect.

A primary basis for the deliberative process privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing these types of communications to the public, in general, would have a chilling effect on the willingness of a person providing advice to a decision maker because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this paragraph no. 33.

**DELIBERATIVE PROCESS MATERIALS THE COURT DID NOT REVIEW**

I am advised that there are two documents, Document Nos. 270 and 993, that Chevron identified in its May 8, 2007 letter to the Court and stated that it believed were relevant to its case and wished to have made available to it. I am further advised that it appears that neither of these documents has been initially or subsequently assessed by the Court, but they are documents for which the DOE wishes to continue asserting the deliberative process privilege, as is indicated in the following paragraphs.

34. **Document No. 270 – Bates Number(s) CDE003 4426-4428**, identified as: e-mail string, e-mail top of page from Egger to Kripowicz, dated 09/16/1999, 5:26 p.m., subject: Re[2]: FW: Proposed SOZ Schedule Change.

I assert the deliberative process privilege for the redacted portions of the 5:26 p.m. e-mail and the 2:10 p.m. e-mail. The 5:26 p.m. e-mail is a communication between an advisor (Egger)

to the decision maker and the decision maker (Kripowicz) about a proposed decision in the Shallow Oil Zone matter. The 2:10 p.m. e-mail is a communication between another advisor (Smits) and the decision maker (Kripowicz) about a different issue in the Shallow Oil Zone proceeding.

The redacted portion of the 5:26 p.m. e-mail discloses the author's views about a particular issue in the draft decision that was pending before the decision maker and provides a recommendation as to what should be done concerning the issue. The author brings the issue to the decision maker's attention and provides a brief description of the issue. The redacted material is deliberative in its entirety in that it conveys an advisor's views and recommendations to a decision maker about a particular issue in a matter pending decision. It is precisely the type of communication that is and must be covered by the deliberative process privilege.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

35. **<u>Document No. 993 – Bates Number(s) CDE003 4348-4349</u>**, identified as: two typed pages entitled "Stevens Zone Protocol Issue."

I assert the deliberative process privilege for all of the redacted materials on pages

CDE003 4348-4349. This document is a duplicate of Document No.1123, Bates Number(s) CME025 627-628 and a non-identical duplicate of Document No. 1121, Bates Number(s) CME015 1948-1949.

The IPE had issued a final recommendation in the Stevens Zone proceeding, and the IPE subsequently determined that its recommendation had to be amended because of a mistake. The parties could not reach agreement on what course of action should be taken and the matter was brought to the attention of the PDASFE for resolution. This document was prepared by one of the PDASFE's advisors (Egger) and provides her assessment of the problem and recommendations of various courses of action to the decision maker. It is deliberative in its entirety as it communicates her assessments of the problem and various recommendations to the decision maker.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

**DELIBERATIVE PROCESS MATERIALS DISCUSSED IN COURT APPENDIX 20**

I am advised that the Court previously had reviewed certain documents that had referred to other materials that were not initially submitted to the Court for review, and that the Court had

requested that all such materials be submitted to it for review. I am further advised that Appendix 20 contains, in part, the Court's assessments of the applicability of the deliberative process privilege to some of the additional materials that were submitted for review. I am further advised that the Appendix 20 materials are identified by the document numbers to which the subsequently submitted materials were attached. For the sake of continuity, these materials will be identified in this section of my Declaration in the same manner, even though in so doing some of the document numbers discussed in this section duplicate document numbers identified in earlier sections of this Declaration.

36. **Document No. 1472 – Bates Number(s) CDE013 32979-32987**, identified as: an undated draft document entitled "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For The Stevens Zone." **Document No. 1486 – Bates Number(s) CLC001 2657 and 2659-2668**, identified as: e-mail string on page CLC 2657, e-mail on top of page from Capitanio, dated 09/16/1999, 12:35 p.m., subject: RE: comments/revision of draft decision, attaching an undated draft document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For The Stevens Zone." **Document No. 1497 – Bates Number(s) CDE013 33271-33282**, identified as: an undated draft document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For The Stevens Zone." **Document No. 1505 – Bates Number(s) CDE013 33161-33172**, identified as: an undated draft document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For The Stevens Zone." **Document No. 1507 – Bates Number(s) CDE003 9030-9042**, identified as: an undated

draft document entitled "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For The Stevens Zone."

I assert the deliberative process privilege for all redacted portions of Document Nos. 1472, 1486, 1497, 1505 and 1507, which are draft decisions involving the same dispute over the submission of data to the IPE in the Stevens Zone proceeding. All portions of the redacted materials in these documents contain draft materials that were prepared by the PDASFE's advisors for his review and, as such, are deliberative and subject to the full protection of the deliberative process privilege. These documents are, by their very nature, deliberative because they are drafts that were prepared for the PDASFE's review. To the extent that any part of the redacted material was made public and released to Chevron, there is no basis to require the production of the same material that might appear in this document, because it is already in Chevron's possession. To the extent that such material was not released, that clearly demonstrates it is deliberative in nature and/or was part of the deliberative process that the privilege is designed to protect. Indeed, the very fact that material appearing in drafts is not included in a final decision shows that it was part of a deliberative process that excluded it from a final decision.

Moreover, all information or data that are included by advisors in a draft prepared for a decision maker are also deliberative. The fact that certain information or data are selected for inclusion in a draft provides insight into an advisor's thought processes to the extent it shows at that particular stage what the advisor believed was important; and the fact such information or data were selected at a certain point does not address the issue of whether such information or data were actually relied on or included as "facts" in the final decision. It also provides insights

into to what an advisor thought was not important or relevant at the time the draft was prepared, but that judgment might have been further informed by the time the final decision was or would be made. To require the public disclosure of these draft documents would accomplish nothing other than the negation of a well founded privilege that is designed to protect an important value in public administration.

In the same manner, any edits made on these documents by the PDASFE or his advisors are also deliberative. The very essence of the deliberative process privilege involves communication between a decision maker and his staff. By its very nature, an advisor's commentary on a draft decision must not be disclosed to the public. Advisors who believe their advice will be made public are likely to censor or moderate their advice to avoid second-guessing or criticism when it is made public. That would undermine the rationale for the deliberative process privilege and do damage to the process it is designed to protect.

Exchanges of views and opinions between advisors and decision makers are the types of communications that must be protected by the deliberative process privilege. The ability of a decision maker like the PDASFE in this instance to do his work efficiently and effectively would be undermined if these types of materials were made public. A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing these materials would construct a dangerous and unwarranted barrier between a decision maker and the persons whose advice the decision maker needs to perform the duties of his job. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this paragraph No. 36.

37. **Document No. 816 – Bates Number(s) CDE001 72-80**, identified as: an undated

draft letter (page CDE001 80) addressed to Stone and Gangle for the signature of Jarrett and an undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." **Document No. 819 – Bates Number(s) CDE007 2110-2118**, identified as: an undated draft letter addressed to Stone and Gangle for the signature of Jarrett attaching an undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." **Document No. 3946 – Bates Number(s) CDE005 22-30**, identified as: an undated draft letter (page CDE005 30) addressed to Stone and Gangle for the signature of Jarrett attaching an undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." **Document No. 3954 – Bates Number(s) CDE007 3389-3396**, identified as: an undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve Numbered 1." **Document No. 3956 – Bates Number(s) CDE007 3407-3414**, identified as: an undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve Numbered 1." **Document No. 3964 – Bates Number(s) CDE007 3380-3387**, identified as: an undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve Numbered 1." **Document No. 3970 – Bates Number(s) CDE007 3556-3563**, identified as: an undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve Numbered 1." **Document No. 3978 – Bates Number(s) CDE007 3547-3554**, identified as: an

undated draft document entitled "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve Numbered 1."

I assert the deliberative process privilege for all redacted portions of Document Nos. 816, 819, 3946, 3954, 3956, 3964, 3970 and 3978, which are draft preliminary decisions regarding the finalization of the parties' participation percentages in production from the Stevens Zone. All portions of the redacted materials in these documents contain draft materials that were prepared for a decision maker by his advisors and, as such, are deliberative and subject to the full protection of the deliberative process privilege. These documents are, by their very nature, deliberative because they are drafts that were prepared for a decision maker. To the extent that any part of the redacted material was made public and released to Chevron, there is no basis to require the production of the same material that might appear in this document, because it is already in Chevron's possession. To the extent that such material was not released, that clearly demonstrates it is deliberative in nature and/or was part of the deliberative process that the privilege is designed to protect. Indeed, the very fact that material appearing in drafts is not included in a final decision shows that it was part of a deliberative process that excluded it from a final decision.

Moreover, all information or data that are included by advisors in a draft prepared for a decision maker are also deliberative. The fact that certain information or data are selected for inclusion in a draft provides insight into an advisor's thought processes to the extent it shows at that particular stage what the advisor believed was important; and the fact such information or data were selected at a certain point does not address the issue of whether such information or data were actually relied on or included as "facts" in the final decision. It also provides insights

into what an advisor thought was not important or relevant at the time the draft was prepared, but that judgment might have been further informed by the time the final decision was or would be made. To require the public disclosure of these draft documents would accomplish nothing other than the negation of a well founded privilege that is designed to protect an important value in public administration.

In the same manner, any edits made on these documents by advisors are also deliberative. The very essence of the deliberative process privilege involves communication between a decision maker and his staff. By its very nature, an advisor's commentary on a draft decision must not be disclosed to the public. Advisors who believe their advice will be made public are likely to censor or moderate their advice to avoid second-guessing or criticism when it is made public. That would undermine the rationale for the deliberative process privilege and do damage to the process it is designed to protect.

Exchanges of views and opinions between advisors and decision makers are the types of communications that must be protected by the deliberative process privilege. The ability of a decision maker to do his work efficiently and effectively would be undermined if these types of materials were made public. A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing these materials would construct a dangerous and unwarranted barrier between a decision maker and the persons whose advice the decision maker needs to perform the duties of his job. Based on the foregoing, I assert the deliberative process privilege for the redacted materials identified in this paragraph No. 37.

38. **Document No. 765 – Bates Number(s) CDE007 3354-3357**, identified as: four

typed pages, the last two of which are entitled "Exhibit A" and "Figure 4." **Document No. 820 – Bates Number(s) CDE007 3354-3357**, identified as: four typed pages, the last two of which are entitled "Exhibit A" and "Figure 4." **Document No. 3801 – Bates Number(s) CDE001 403-406**, identified as: four typed pages, the last two of which are entitled "Exhibit A" and "Figure 4."

I assert the deliberative process privilege for the redacted portions of Document Nos. 765, 820 and 3801. Document Nos. 820, 765 and 3801 contain an advisor's interpretations, opinions and recommendations to a decision maker concerning the Stevens Zone matter that was pending resolution on the remand to the decision maker from the DOE Office of Hearings and Appeals ("OHA"). This communication provides different options to the decision maker regarding possible responses to the matter remanded from OHA, based on the author's interpretations and opinions and it tells the decision maker the bases for the author's recommendations. This communication contains deliberative material that should be protected.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials in this paragraph No. 38.

39. **Document No. 809 – Bates Number(s) CDEE007 15866**, identified as: one typed

page, dated 04/05/2006, entitled "Section III C Rewrite." **Document No. 3819 – Bates Number(s) CDEE001 395**, identified as: one typed draft page, dated 03/26/20060 [sic], entitled "III A. Gaps in the Data."

I assert the deliberative process privilege for the redacted portions of Document Nos. 809 and 3819. Document No. 809 is an advisor's rewrite of a part of a draft decision relating to the matter in the Stevens Zone proceeding that OHA remanded to the decision maker. Document No. 3819 is also an advisor's draft document concerning the matter that OHA remanded to the decision maker in the Stevens Zone proceeding.

All of the redacted material in Document Nos. 809 and 3819 are the recommendations of advisors to decision makers as to how various issues in the matter OHA remanded should be resolved. This is the type of communication that routinely flows between advisors and decision makers and must be protected from disclosure to ensure that decision makers receive frank and unvarnished opinions from their advisors.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this paragraph No. 39.

40. **Document No. 850 – Bates Number(s) CDE007 1661**, identified as: an undated

one page table entitled "Financial Impacts For Various Equity Scenarios For The Elk Hills Oil Field."

I assert the deliberative process privilege for the redacted portions of Document No. 850. This document shows potential results to the parties of various outcomes in the matters relating to the Stevens Zone and the Shallow Oil Zone. It is material that was prepared and provided by an advisor to assist the decision maker in performing his responsibilities in the two proceedings. This material contains the thoughts and recommendations of an advisor that were provided to a decision maker and should be protected from public disclosure.

This is the type of communication that routinely flows between advisors and decision makers and must be protected from disclosure to ensure that decision makers receive frank and unvarnished opinions from their advisors. A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

41. **Document No. 1119 – Bates Number(s) CFO001 144**, identified as: a note from Capitanio to Godley, Egger and Latham, dated 04/09/1997, subject: Carneros Gas Migration Issue.

I assert the deliberative process privilege for the redacted portions of Document No.

1119. This document is a communication between an advisor to a decision maker and the decision maker and other advisors. It contains the thoughts, opinions and recommendations of the author on an issue that was pending before the decision for a resolution. This redacted material is deliberative in nature and should be protected.

The author of this communication provides a decision maker and other advisors to the decision maker with his thoughts, opinions and recommendations on an issue that was pending before the decision maker for resolution This is the type of communication that routinely flows between advisors and decision makers and must be protected from disclosure to ensure that decision makers receive the frank and unvarnished opinions from their advisors.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

42. **Document No. 2286 – Bates Number(s) CDE007 17619-17621 and 17623-17625,** identified as: two sets of non-identical, undated duplicate notes, entitled "G. Latham - Comments on May 31st draft of Stevens Final Decision."

I assert the deliberative process privilege for the redacted portions of Document No. 2286. This document contains the notes of an advisor to the decision maker about a draft of a

final decision on the Stevens Zone proceeding that OHA had remanded to the decision maker for resolution.

The author of this communication provides a decision maker with his thoughts, opinions and recommendations on the draft of a final decision in the Stevens Zone proceeding on an issue that OHA had remanded. This is the type of communication that routinely flows between advisors and a decision makers and must be protected from disclosure to ensure that decision makers receive frank and unvarnished opinions from their advisors.

A primary basis for the privilege is to ensure the free flow of ideas among officials so that a decision maker may receive the best advice possible to help fulfill his mission. Releasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing. A decision maker requires frank and uninhibited advice from staff at all times, and releasing this type of deliberative material would only have a chilling effect on that need. I therefore assert the deliberative process privilege for the redacted materials identified in this document.

Under penalty of perjury, I attest on this 31st day of August, 2007, that the foregoing statements are true and correct.

ERIC J. FYGI

# EXHIBIT A

Memorandum from Secretary of Energy Samuel W. Bodman
to David R. Hill, dated June 16, 2006

The Secretary of Energy
Washington, DC 20585

June 16, 2006

MEMORANDUM FOR: DAVID R. HILL
GENERAL COUNSEL

FROM: SAMUEL W. BODMAN

SUBJECT: Authority to Assert in Litigation the Federal Government's Privileges Including the Deliberative Process Privilege on Behalf of the Department of Energy

The Department participates in various litigation and has been and will be required to provide testimony and produce numerous documents in discovery. These demands may implicate privileged matters, specifically including predecisional drafts and other candid internal recommendations previously prepared for the Secretary and other senior DOE officials. With respect to testimony and documents that have been temporarily withheld from requesting parties by the litigating attorneys on the ground of deliberative process privilege, in order to prevent their ultimate disclosure to requesting parties, the Department is required to formally assert the privilege in an affidavit executed by the "head of the agency" or his lawful delegate.

Since the head of a large department cannot reasonably be expected to devote his or her individual time to examining internal documents for the assertion of privileges in litigation, the Secretary of Energy has, from time to time, delegated that responsibility. To ensure the Department may assert this privilege when necessary, I delegate to the General Counsel of the Department of Energy the authority to assert in litigation the Department's deliberative process and other legally-recognized privileges. The General Counsel is authorized to further delegate this authority.

All actions pursuant to any authority delegated prior to this Memorandum or pursuant to any authority delegated by this Memorandum taken prior to and in effect on the date of this Memorandum are ratified and remain in force as if taken under this Memorandum, unless or until rescinded, amended or superseded.

Printed on recycled paper

# EXHIBIT B

Memorandum from David R. Hill to Eric J. Fygi, dated July 11, 2006

**Department of Energy**
Washington, DC 20585

July 11, 2006

MEMORANDUM TO: Eric J. Fygi
Deputy General Counsel

FROM: David R. Hill
General Counsel

SUBJECT: Authority to assert in Chevron v. United States, 04-1365 (Fed. Cl.) the Federal Government's deliberative process privilege on behalf of the United States Department of Energy

By memorandum dated June 16, 2006, the Secretary of Energy delegated to the General Counsel, along with the right to further delegate such authority, "the authority to assert in litigation the Department's deliberative process and other legally-recognized privileges." Because my duties and responsibilities as the Department's General Counsel prevent me from devoting the time necessary to examine documents produced in the referenced case for privilege, I hereby delegate to you my authority to examine and assert, where appropriate, the Department's claim of the deliberative process privilege for any documents or testimony relating to or arising from the referenced case because any such documents or testimony could contain information that is recommendatory and predecisional, or part of the agency decision-making process, and thus a privilege is necessary in order to protect and promote the frank and open discussion within the agency that is essential to effective decision making.

Because of my other duties and responsibilities, I cannot devote my time to the personal review of all the materials or testimony that will arise in this case. Therefore, I hereby delegate to you the authority to conduct that review and, if you determine it to be appropriate, to assert the Government's deliberative process privilege for recommendatory and deliberative documents, and for testimony relating thereto, the release of which would in your judgment threaten the free flow of communication which is necessary for the effective functioning of the agency.

In general, documents will be presented to you by the attorneys representing the Department in this litigation. The attorneys will have made a preliminary judgment that these materials may be privileged, and will advise you of the nature of the action, the scope of the discovery request at issue and other pertinent information. Review of documents pursuant to this delegation should be in accord with the following guidelines:

1. Each document must be personally examined, and careful consideration must be given as to whether the release of a document, or of a related set of documents, would seriously inhibit or impair the frank and open discussion of legal or policy matters among agency personnel and among agency personnel and other executive and legislative branch officials.

Directives from a superior to subordinates explaining a decision already made should not be withheld pursuant to this privilege unless they are elements of an unfinished deliberative process involving other executive and legislative branch officials. However, drafts of substantive documents or documents reflecting discussions, analyses, recommendations, advice or other deliberations leading to a possible decision on a legal or policy matter should, consistent with advice of counsel and the guidance herein, be withheld.

2. In evaluating the public interest in any possible disclosure, particular consideration is to be given to the implications of any inquiry into the formation and exposition of any legislative initiative authorized on behalf of the President under his constitutional responsibility to make legislative proposals of his own choosing.

3. If only certain portions of particular documents memorializing purely intra-Departmental deliberations should be protected and those segments are reasonably segregable, the remaining portions should be released. For example, purely factual portions of memoranda generally should not be withheld pursuant to this privilege, but drafts should be withheld in their entirety.

4. The degree of harm to the public interest resulting from release of a given document or group of related documents should be carefully weighed against any public benefits or individual need for the information contained in that document.

5. Decisions in various civil actions as to whether the privilege is to be asserted should be based on consistent considerations. In addition, all similar or related documents in a particular case should be evaluated consistently. Consistency is also important because the requesting party may later contend that a waiver has occurred, i.e., that release of one document concerning a particular issue has waived the privilege as to all documents regarding the same subject, as may be the case with the attorney-client privilege.

6. In addition to the foregoing standards for evaluation, any particular request by the litigant or other demanding entity for documents or testimony the response to which would result in intrusion into the President's constitutional responsibility to make legislative proposals shall be denied on both the ground of the deliberative process privilege and on the ground of separation of powers under which the President's actions supervising the making of and subsequently advancing to the Congress legislative recommendations are committed to his discretion and therefore are not subject to inquiry by any private litigant.

7. All assertions of deliberative process privilege shall be reduced to written form and described with a degree of particularity that is sufficient to permit any court or other reviewer to understand the reasons for the assertions of such privilege.

EXHIBIT C

**UNITED STATES DEPARTMENT OF ENERGY OFFICIALS**

Gena Cadieux, Assistant General Counsel, Procurement and Financial Assistance

Louis Capitanio, Petroleum Engineer, member Headquarters Equity Advisory Team

Mary Egger, Deputy General Counsel, Technology Transfer and Procurement

Francis Gangle, Team Leader, DOE Equity Finalization Team

Patricia Godley, Assistant Secretary Fossil Energy

Jeffrey Jarrett, Assistant Secretary Fossil Energy

Robert Kripowicz, Principal Deputy Assistant Secretary Fossil Energy

Dobie Langenkamp, Director, Naval Petroleum and Oil Shale Reserves

Gary Latham, Geophysicist, Team Leader Headquarters Equity Advisory Team

Arnold Smits, Petroleum Engineer, member Headquarters Equity Advisory Team