No. 04-1365
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY IN SUPPORT OF ITS DELIBERATIVE-PROCESS PRIVILEGE CLAIMS

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

October 2, 2007

TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY IN SUPPORT OF ITS DELIBERATIVE-PROCESS PRIVILEGE CLAIMS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. THE DECLARATION OF ERIC J. FYGI IS AN APPROPRIATE FORMAL INVOCATION OF THE DELIBERATIVE-PROCESS PRIVILEGE. . . . . . . . . . 1

II. FACTUAL MATERIAL IN ASFE DRAFT DECISIONS IS SUBJECT TO THE PROTECTIONS OF THE DELIBERATIVE PROCESS PRIVILEGE. . . . . . . . . 3

III. CHEVRON CANNOT ESTABLISH A "COMPELLING NEED" FOR THE WITHHELD DOCUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV. THE "GOVERNMENT MISCONDUCT" EXCEPTION DOES NOT APPLY TO THE DOCUMENTS AT ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. INDIVIDUAL DOCUMENTS IDENTIFIED BY CHEVRON IN ITS RESPONSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## CASES

Alexander v. F.B.I.,
186 F.R.D. 170 (D.D.C. 1999). . . . . . . . . . 10

Burka v. New York City Transit Auth.,
110 F.R.D. 660 (S.D.N.Y. 1986). . . . . . . . . . 10

Exxon Corp. v. Department of Energy,
585 F. Supp. 690 (D.D.C. 1983). . . . . . . . . . 6

Lead Industries Ass'n, Inc. v. OSHA,
610 F.2d 70 (2d Cir. 1979). . . . . . . . . . 4, 5, 6

Mapother v. Department of Justice,
3 F.3d 1533 (D.C. Cir. 1993). . . . . . . . . . 4

Marriott Int'l Resorts, L.P. v. United States,
437 F.3d 1302 (Fed. Cir. 2006). . . . . . . . . . 2, 3

Mead Data Central, Inc. v. United States Department of the Air Force,
566 F.2d 242 (D.C. Cir. 1977). . . . . . . . . . 6

In re Sealed Case,
121 F.3d 729 (D.C. Cir. 1997). . . . . . . . . . 10

United States v. Lake County Bd. Of Comm'rs
233 F.R.D. 523 (N.D. Ind. 2005). . . . . . . . . . 10

Wildnerness Society v. United States Department of Interior,
344 F. Supp. 2d 1 (D.D.C. 2004). . . . . . . . . . 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365 |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS DELIBERATIVE-PROCESS PRIVILEGE CLAIMS

Defendant, the United States, files the following brief in support of its deliberative-process privilege assertions and in reply to plaintiff, Chevron, U.S.A. Inc.'s ("Chevron") September 21, 2007 "Response to Defendant's Memorandum Of Law In Support Of Its Deliberative-Process Privilege Claims" ("Pl. Resp.").

## I. THE DECLARATION OF ERIC J. FYGI IS AN APPROPRIATE FORMAL INVOCATION OF THE DELIBERATIVE-PROCESS PRIVILEGE

In formally asserting the deliberative-process privilege, the Government provided to the Court the declaration of Eric J. Fygi, the United States Department of Energy's ("DOE") Principal Deputy General Counsel, which identified each document for which DOE was asserting the deliberative-process privilege, and the basis for that assertion. (A copy of Mr. Fygi's declaration is attached to the Government's September 4, 2007 "Memorandum of Law In Support Of Its Deliberative-Process Privilege Claims" ("Def. Mem") as Exhibit A). Chevron argues that "the government's invocation of the deliberative process privilege is ineffective, and should be denied as to all documents at the threshold," because "Mr. Fygi has been directly involved with the issues underlying this lawsuit[.]" Pl. Resp. 4. As an example, Chevron states that "[Mr. Fygi] was actively involved in the DOE's 2006 proposal of legislation that related to

this lawsuit." Id. at 3. That legislative proposal concerned indemnification of the Independent Petroleum Engineer ("IPE") for its work as part of the Equity Finalization Process. Chevron's objection to Mr. Fygi's declaration here, however, is puzzling in light of the fact that it did *not* raise an objection to the Government's invocation of the deliberative-process privilege last summer over documents relating to the IPE legislative proposal, when DOE's declaration formally asserting the privilege was also provided by Mr. Fygi.[1/] See August 11, 2006 Declaration of Eric J. Fygi. Mr. Fygi had more substantive involvement in the development of the IPE legislation last summer than in any aspect of the ongoing equity finalization process.

The Government is aware of no caselaw that prohibits or nullifies the assertion of the deliberative-process privilege based upon the involvement of the agency official providing the declaration. Chevron argues that in Marriott Int'l Resorts, L.P. v. United States, 437 F.3d 1302 (Fed. Cir. 2006), the court "noted that the agency head cannot properly confer the power [to formally assert the privilege] upon a subordinate unless that subordinate 'is not directly responsible for or involved in' the substance of the underlying dispute." Pl. Resp. 2 (citing Marriott, 437 F.3d at 1308). Chevron overstates the court's holding in Marriott. In that case, the court considered the propriety of an agency head's delegation of authority to a subordinate to assert the privilege. The court, in holding that such delegation was appropriate "when carefully undertaken," did note that the subordinate in question in that case was not directly involved in the litigation at issue, but never held that a lack of involvement was a *requirement* prior to such a delegation. Marriott, 437 F.3d at 1308. The Marriott court did not outline any sort of formal criteria that had to be met prior to the delegation of authority from an agency head to a

[1] Nor did this Court find Mr. Fygi's declaration deficient or improper last summer.

subordinate for purposes of asserting the privilege. Nor has any other court stated that the privilege was not properly asserted based upon a declarant's alleged involvement in the underlying issues.

Indeed, Chevron appears to be arguing for a rule that would prevent an agency head or his designee from asserting the privilege whenever he was involved, or had any interest, in the matter to which the privileged information relates. But such a construction of the privilege would greatly limit the privilege's application and is unnecessary in light of the fact that the privilege allows a reviewing court to review the privileged documents *in camera* and balance the needs of the parties to determine whether disclosure is appropriate. Marriott, 437 F.3d at 1307 (noting that, in light of a reviewing court's ability to conduct an *in camera* review, "[t]he qualified deliberative process privilege is subject to judicial oversight"). The availability of the privilege, then, turns not on the "independence" of the declarant formally asserting the privilege, but upon the persuasiveness of the rationale and other information set forth in the declaration. Chevron's objection to Mr. Fygi's declaration is therefore baseless, and appears to be little more than a novel attempt to overcome the Government's assertion of the deliberative-process privilege where Chevron cannot, as we discuss below, establish a "compelling need" for the documents at issue.

## II. FACTUAL MATERIAL IN ASFE DRAFT DECISIONS IS SUBJECT TO THE PROTECTIONS OF THE DELIBERATIVE PROCESS PRIVILEGE

Our opening memorandum regarding the deliberative-process privilege provided the basis for our assertion of the deliberative-process privilege over drafts of decisions of DOE's Assistant Secretary for Fossil Energy ("ASFE") created as part of the equity finalization process, including

factual material contained therein. Though the privilege generally requires the separation of factual from deliberative materials, such is not the case where factual materials are part of a draft decision that reflect an agency's deliberative process. This is because the inclusion or removal of such factual material in reaching the agency's ultimate decision reflects the agency's deliberative process. As the D.C. Circuit has held, though the privilege generally requires the separation of factual from deliberative material, "the fact/opinion test, while offering 'a quick, clear, and predictable rule of decision,' is not infallible and must not be applied mechanically." Mapother v. Department of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (internal citations omitted). "This is so because *the privilege serves to protect the deliberative process itself*, not merely documents containing deliberative material." Id. (Emphasis supplied).

In support of our privilege assertions, we cited to the Second Circuit's opinion in Lead Industries Ass'n, Inc. v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979), in which the court held that factual material in drafts was protected by the deliberative process privilege. Chevron argues that "[the government] ignores the Court's actual treatment of factual content in [Lead Industries]," and that "the Court . . . evaluated the factual segments on their merits, and did not simply obviate the ordinary analysis on the basis of a *per se* rule." Pl. Resp. 5-6. According to Chevron, "[f]ar from holding that factual content in drafts is *per se* exempt from disclosure, the Second Circuit held that courts should 'consider[] the segments in the context of the whole document and that document's relation to the administrative process which generated it.'" Id. (citing Lead Industries, 610 F.2d at 86).

Chevron completely misconstrues the Second Circuit's holding in Lead Industries. In Lead Industries, the Second Circuit held that the ordered disclosure of draft sections of "the

preamble to the standards that appeared in the Federal Register" was improper. The Second Circuit expressly instructed *against* "combing the documents for 'purely factual' tidbits." 610 F.2d at 86. Instead:

> If the [draft language] appeared in the final version, it is already on the public record and need not be disclosed. If [the draft language] did not appear in the final version, its omission reveals an agency deliberative process: for some reason, the agency decided not to rely on that fact or argument after having been invited to do so. It might indeed facilitate [the requester's] attack on the [Government] if it could know in just what respects the Assistant Secretary departed from the staff reports she had before her. But such disclosure of the internal workings of the agency is exactly what the law forbids.

Id.

The Second Circuit did *not*, as Chevron contends, "evalute[] the factual segments on their merits." Pl. Resp. 6. The court noted that *beyond* its discussion regarding the evaluation of factual material in the context of the entire document described above, even if a document contained only a small amount of factual material, if that material was inextricably intertwined with the rest of the document, "the material is *still protected* because, although not exempt, it is not 'reasonably segregable, under [FOIA]." Id. (Emphasis supplied) (internal citation omitted).

Those cases Chevron cites in its Response do not dispute the court's holding in Lead Industries. In Wildnerness Society v. United States Department of Interior, 344 F. Supp. 2d 1 (D.D.C. 2004), though the court determined that the deliberative process privilege did not apply to factual material that "does not bear on . . . policy formation," it allowed defendants to "identify the function and significance . . . in the agency's decision making process' of all redacted and withheld documents to qualify them as exempt under the deliberative process privilege." Id. at 14. The factual material in question here is subject to the privilege, because as explained above,

the selection and compilation of factual material in the ASFE draft decisions is clearly part of the deliberative process, because such factual material provides the basis for the ASFE's underlying decisions related to equity finalization. Therefore, that material bears on the ASFE's "policy formation" as applicable to the facts at hand.

In Exxon Corp. v. Department of Energy, 585 F. Supp. 690 (D.D.C. 1983), the court held that "draft documents, by their very nature, are typically predecisional and deliberative." Id. at 698. The court in Exxon relied on the Second Circuit's holding in Lead Industries to dispute Exxon's argument that the government was required "to show to what extent the draft *differs* from the final document. The effect of this would be to expose what occurred in the deliberative process between the draft's creation and the final document's issue." Id. The court noted that, "[l]ike the Lead Industries court, the [D.C. Circuit] has made it clear that there are circumstances where 'the disclosure of even purely factual material may so expose the deliberative process within an agency that it must be deemed exempted[.]" Id. (Citing Mead Data Central, Inc. v. United States Department of the Air Force, 566 F.2d 242, 256 (D.C. Cir. 1977)). In the instant case, requiring DOE to disclose the factual sections of those ASFE decisions withheld as protected by the deliberative process privilege undoubtedly would "expose the deliberative process" by which the ASFE arrived at those decisions.

If Chevron were allowed access to just the factual material in those ASFE decisions that have been withheld to this point, it would gain insight into the ASFE's deliberative process by simply comparing the various draft decisions that preceded a final equity decision and noting the changes leading up to the final decision. See Def. Mem. 10-12. Moreover, as we noted in our opening memorandum, the Court had tentatively agreed with our assertion of the deliberative

process privilege over the factual sections of at least one ASFE draft decision. See Court App. 1, Doc. No. 265. Though that document was a "red-line" draft that contained revisions and suggestions to the document, we noted that the privilege's protection over that document would be negated if Chevron had access to unmarked drafts of the same decision as it would be able to determine the process that led to the final decision, simply by viewing the decision's evolution through its various drafts. This concern is especially relevant in light of the fact that the equity finalization process is not yet complete. The ASFE has yet to render even an initial decision regarding equity finalization for the Shallow Oil Zone, and because Chevron has appealed the ASFE's February 2007 final equity decision on the Stevens Zone, it is possible that the ASFE will have to render another decision with respect to that zone as well. Thus, if Chevron is allowed access to those draft decisions, the ASFE's deliberative process is exposed, and its decision-making ability with regards the remaining aspects of the equity finalization process will be compromised. For those reasons, we maintain the deliberative process privilege over the entirety of the ASFE's draft equity decisions.

## III. CHEVRON CANNOT ESTABLISH A "COMPELLING NEED" FOR THE WITHHELD DOCUMENTS

Chevron has not established a compelling need for any documents over which the Government has asserted the deliberative-process privilege. In its Response, Chevron identifies 18 documents withheld as deliberative-process privileged that it argues should be released because the documents "appear to provide direct evidence of the misconduct that forms the basis of Chevron's action, or are otherwise central to the issues in this case, and therefore are directly or highly important to Chevron." Pl. Resp. 8. Chevron, then, is arguing merely that the

documents are *relevant* to its claims in this litigation, a fact that the Government has never disputed. But relevance alone is of course not enough to establish a "compelling need" to overcome the deliberative process privilege. The only time Chevron has identified any ostensible "compelling need" for any of the documents the Government has withheld as subject to the deliberative process privilege was in its July 24, 2007 "Status Report Regarding Disputed Documents" ("Chevron's Status Report"), where it stated that those documents relate to "the scope and full character of the very breaches that are the subject of the litigation." Chevron's Status Report, p.4.

As we noted in our opening memorandum, documents relating to the "scope and character" of any alleged breach are not relevant during the liability phase of this litigation. The Court has held that the first phase of this litigation is limited to determining the existence of communications that breach of the Equity Process Agreement, and that the consideration of the *effect* of any such communications shall be reserved for the damages phase of the litigation. Indeed, Chevron has prevented the Government from raising questions regarding the effect of any alleged improper communications during the Government's discovery depositions, and, subsequent to the Court's June 14, 2007 Order clarifying the scope of bifurcation in this litigation, the Government has withdrawn all of its discovery requests that seek information related to the effect of allegedly improper communications. Thus, at this juncture of the litigation, Chevron has no need for documents that reflect the "scope and character" of any alleged breach during the liability phase of the litigation. We noted in our opening memorandum that Chevron concedes in its Status Report. <u>See</u> Chevron's Status Report p.14 ("Chevron does not believe that additional evidence of the precise advice and input provided by Ms. Egger to the

ASFE is necessary to establish liability[.]").

Chevron now argues that it "did not suggest that it did not need those documents the Court had indicated *were* relevant and should be disclosed." Pl. Resp. 9. But in its Status Report, Chevron clearly states that "it is apparent from documents *already in Chevron's possession* that Mary Egger and her subordinates provided the ASFE with input on matters as to which Ms. Egger also had acted as an advisor/advocate for the DOE Equity team. Chevron believes that the *evidence already in hand is more than sufficient* to establish that fact and that Ms. Egger's active participation in this dual role constitutes a breach of contract[.]" Chevron's Status Report, p.8 (emphases supplied). Given that Chevron believes and has represented that documents already in its possession are "more than sufficient" to establish liability, it simply cannot establish a compelling need at this stage of the litigation for any of those documents over which the Government has asserted the deliberative process privilege.

## IV. THE "GOVERNMENT MISCONDUCT" EXCEPTION DOES NOT APPLY TO THE DOCUMENTS AT ISSUE

Chevron again argues that the "government misconduct" exception to the deliberative process privilege applies in this case, and that as a result the Court should order that the Government turn over all of the documents over which we have asserted the deliberative process privilege "as they involve improper ex parte communications in violation of contractual obligations and rules of administrative procedure and ethics."[2/] Pl. Resp. 10. And again,

---

[2] To the extent Chevron argues that any alleged communications violate "rules of administrative procedure or ethics," it has identified no statute or regulation from which such rules derive. Nor has Chevron explained how the equity finalization process here, which was the result of an arms-length negotiation between two sophisticated parties, incorporates such rules where they are not identified anywhere in the agreed-upon Equity Process Agreement.

Chevron's argument is flawed for the reasons we identified in our April 5, 2007 opposition to Chevron's Motion to Compel: 1) in no case that Chevron cites in support of its "government misconduct" argument has a court applied the exception where the misconduct alleged is nothing more than the breach of an agreed-upon contractual provision; and 2) this Court has not yet had an opportunity to determine whether the alleged conduct even constitutes a *breach* of the Equity Process Agreement. If the alleged conduct is not even a breach (and as we establish in our August 16, 2007 Motion for Summary Judgment, it is not), it could not possibly be "misconduct" of any kind, and could not be sufficient to overcome the privilege.

Chevron cites to a litany of cases in support of its government misconduct argument, but fails to consider the *actual misconduct* alleged in each case. In Burka v. New York City Transit Auth., 110 F.R.D. 660 (S.D.N.Y. 1986), plaintiffs alleged that the New York City's Transit Authority's drug testing was arbitrary and unconstitutional. In United States v. Lake County Bd. Of Comm'rs, plaintiffs alleged that the defendants had fired two employees and denied certain zoning requests based upon racial biases. 233 F.R.D. 523, 525 (N.D. Ind. 2005). In In re Sealed Case, 121 F.3d 729 (D.C. Cir. 1997), the court considered the exception in light of allegations that defendants were attempting to frustrate an ongoing criminal investigation. And in Alexander v. F.B.I., 186 F.R.D. 170, 179 (D.D.C. 1999), the court considered the exception in light of allegations that the F.B.I. had mishandled and destroyed evidence, and was engaged in a "so-called political cover-up." Obviously, none of these cases considered the applicability of the government misconduct exception where a plaintiff had alleged nothing more than a breach of

contract,[3] but more importantly, in each of these cases, the conduct alleged, if true, was indisputably improper.

Such is clearly not the case before this Court. Chevron alleges that Mary Egger engaged in communications with both the Assistant Secretary for Fossil Energy and members of the Department of Energy's Field Equity Technical Team, which, according to Chevron, violated the communications prohibition at ¶B.4 of the Equity Process Agreement. But as our Motion for Summary Judgment demonstrates, that communications prohibition does not apply to attorneys, and when, during the negotiation of the Equity Process Agreement, Chevron attempted to broaden the scope of the prohibition to include attorneys, DOE explicitly rejected Chevron's proposal. Therefore the alleged "misconduct" here is not only *not* akin to the misconduct alleged in the cases upon which Chevron relies, it is not even apparent that the "misconduct" alleged by Chevron was a *breach* of the Equity Process Agreement. Thus, even assuming the "government misconduct" exception could apply here (which it cannot), until this Court makes a determination on the threshold question regarding the application and extent of the communications prohibition of ¶B.4 of the Equity Process Agreement, it cannot consider whether an alleged breach of contract warrants application of the exception to the deliberative process privilege in this dispute.

---

[3] Nor do any of the cases Chevron raised in its original March 15, 2007 Motion to Compel in support of its argument regarding the government misconduct exception discuss the applicability of the exception in a breach of contract action.

## IV. INDIVIDUAL DOCUMENTS IDENTIFIED BY CHEVRON IN ITS RESPONSE

Chevron identifies three specific documents in its Response for which it provides further argument in favor of disclosure.[4] Pl. Resp. 12. For the reasons set forth below, Chevron does not establish a "compelling need" for these documents.

Document No. 337 - Chevron argues that the description of this document in Mr. Fygi's declaration "constitutes new and critical evidence of an *ex parte* communication" between the ASFE and the IPE, and cites to ¶C.5 of ASFE Administrative Order 96-01, which states, in pertinent part, that "[t]here will be no written or oral equity-related communication or meeting with the Equity IPE (this term excludes contract administration communications or meetings) by an owner (including agents and contractors) without the participation or opportunity to participate by the other owner." Pl. Resp. 12. Chevron's complaint in this litigation, however, alleges only a breach of ¶B.4 of the Equity Process Agreement, which prohibits *ex parte* communications by the ASFE with DOE's "Field Equity Technical Team." The Equity Process Agreement does not prohibit communications between the ASFE and the IPE, and incorporates the procedures set forth in ASFE Administrative Order 96-01 only for purposes of equity finalization for the Shallow Oil Zone. See Equity Process Agreement, ¶A.2. Document no. 337, however, clearly relates to an ASFE final equity briefing regarding the *Stevens Zone*.[5] Therefore document no. 337, by Chevron's own admission, does not identify any conduct that supports its

---

[4] Chevron also identifies two other documents, Nos. 495 and 497, for which it withdraws its request for disclosure. Pl. Resp. 12.

[5] Document no. 337 is entitled "Key Questions For NSA At Stevens Final Equity Briefing For Principal Deputy ASFE (02/23/00)." The document's title was not redacted when produced to Chevron's counsel.

allegations of a breach of the Equity Process Agreement, and Chevron cannot establish a compelling need for this document's disclosure.

Document No. 362 - Chevron argues that its "need for this document outweighs the government's interest in maintaining its secrecy" based upon the Court's preliminary determination that "the data on [document no. 362] is directly relevant to the reasonableness of damages in this case." Pl. Resp. 12-13. But pursuant to the Court's order of February 5, 2007, "the proceedings on liability and damages, including discovery and trial, [are] bifurcated." During this, the liability phase of these proceedings, a document "relevant to the reasonableness of *damages* in this case" is unnecessary, and therefore Chevron cannot establish a compelling need for this document's disclosure.

Document No. 144 - Chevron argues that this document evidences "misconduct" and should therefore be disclosed. Pl. Rep. 13. As we have already established, no court has ruled that an alleged breach of contract could be the basis for the application of the government misconduct exception to the deliberative process privilege, or any other privilege. Moreover, this Court cannot consider Chevron's request to unreasonably broaden the application of the "government misconduct" exception to the deliberative process privilege without first ruling on the threshold question regarding the scope of the communications prohibition at ¶B.4 of the Equity Process Agreement. Chevron also relies upon those reasons set forth in its Status Report as weighing in favor of this document's disclosure. Id. With regards to this document, Chevron's Status Report refers to the Court's preliminary assessment of the Government's privilege assertion in Court Appendix No. 1, where the Court stated that "the [attorney-client]

privilege may be overridden."[6] Chevron's Status Report, p. 10 (citing Court Appendix No. 1). But as we noted in our August 3, 2007 "Memorandum of Law In Support Of [Defendant's] Attorney-Client and Work-Product Privilege Claims" and our September 14, 2007 "Reply In Support Of [Defendant's] Attorney-Client And Work-Product Privilege Claims," the only way in which the attorney-client privilege can be "overridden" is via the "crime/fraud" exception to the privilege. Chevron has not made the *prima facie* showing necessary for the Court to consider that exception, nor can it. In any event, even if it could make such a showing, the Court cannot apply the exception without first allowing the Government an opportunity to present its arguments on the merits. Therefore, prior to such a consideration by the Court, Chevron cannot establish a compelling need for this document's disclosure.

---

[6] Chevron also refers to page 31 of its Status Report to argue that the Government "has failed to establish[] an attorney-client relationship between the ASFE and Mr. Thorpe (or his law firm), and thus, any such privilege has been waived." Pl. Resp. 13. The Government, however, has consistently stated that Mr. Thorpe and other attorneys in his law firm, O'Melveny & Myers LLP, represent the *Department of Energy* with regards to Elk Hills-related matters. See, e.g., Defendant's Response to Plaintiff's Interrogatory No. 15 (Attached hereto as Exhibit A); Defendant's Memorandum of Law In Support Of Its Attorney-Client And Work-Product Privilege Claims, p. 6 ("[T]he DOE was represented at [meetings before the Independent Legal Advisor] by its *attorneys assigned to matters related to the Elk Hills sale*: the outside law firm of O'Melveny & Myers, LLP, and Mary H. Egger[.]) (emphasis supplied). Therefore Chevron's argument is without merit.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

s/ John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

October 2, 2007

CERTIFICATE OF FILING

I hereby certify that on this 2nd day of October, 2007, a copy of "DEFENDANT'S REPLY IN SUPPORT OF ITS DELIBERATIVE-PROCESS PRIVILEGE CLAIMS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske