No. 04-1365C
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION *IN LIMINE* RE: PLAINTIFF'S DESIGNATED EXPERTS

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

<u>OF COUNSEL</u>:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

OCTOBER 10, 2007

# TABLE OF CONTENTS

DEFENDANT'S MOTION *IN LIMINE* RE: PLAINTIFF'S DESIGNATED EXPERTS. ............ 1

CHEVRON'S DESIGNATED EXPERT WITNESSES. ............ 1

ARGUMENT. ............ 2

I. A Motion *In Limine* Is An Appropriate Mechanism For Raising An Objection To The Testimony Of A Designated Trial Expert. ............ 2

II. Gatekeeper Function Of Court Under Rule 702 Of The Federal Rules Of Evidence. ............ 3

III. Expert Testimony Upon Legal Issues Is Inadmissible. ............ 4

IV. The Testimony Of Chevron's Designated Experts Is Irrelevant. ............ 8

V. Even Assuming That The Testimony Of Chevron's Designated Experts Were Relevant, Such Testimony Would Constitute Inadmissible Legal Conclusions. ............ 13

CONCLUSION. ............ 15

## TABLE OF AUTHORITIES

### CASES

Adalman v. Baker Watts & Co.,
807 F.2d 359 (4th Cir. 1986). .......... 6

Aetna Life Insurance Co. v. United States,
16 Cl.Ct. 364, 375 (1989), aff'd, 935 F.2d 280 (Fed. Cir. 1991) (Table) .......... 4

Alinco Life Insurance Co. v. United States,
178 Ct. Cl. 813, 373 F.2d 336 (1967). .......... 4

Al-Kurdi v. United States,
25 Cl.Ct. 599 (1992) .......... 4

Applegate v. United States,
35 Fed. Cl. 406 (1996). .......... 4

Baskett v. United States,
2 Cl.Ct. 356, 367-68 (1983), aff'd, 790 F.2d. 93 (Fed. Cir.) (Table),
cert. denied, 478 U.S. 1006 (1986). .......... 3

Blinderman Construction Co., Inc. v. United States,
39 Fed. Cl. 529 (1997), aff'd, 178 F.3d 1307 (Fed. Cir. 1998) (Table). .......... 7

Bradley v. Chiron Corp.,
136 F.3d 1317 (Fed. Cir. 1998) .......... 12

Burkhart v. Washington Metropolitan Area Transit Authority,
112 F.3d 1207 (D.C. Cir. 1997). .......... 4, 5

Casa de Cambio Comdiv S.A. de C.V. v. United States,
291 F.3d 1356 (Fed. Cir. 2002), cert. denied, 538 U.S. 921 (2003) .......... 9

Chevron U.S.A., Inc. v. United States,
71 Fed. Cl. 236 (2006) .......... 9

Christiansen v. City of Tulsa,
332 F.3d 1270 (10th Cir. 2003). .......... 4, 13

Colon v. United States,
35 Fed. Cl. 337 (1996). .......... 7

# TABLE OF AUTHORITIES

## CASES (CONT'D)


Comprehensive Care Corp. v. RehabCare Corp.,
98 F.3d 1063 (8th Cir. 1996) .......... 12

Crawford v. United States,
4 Cl.Ct. 699, 702 (1984) .......... 4

Cray Research, Inc. v. United States,
41 Fed. Cl. 427 (1998). .......... 7

Empire Energy Management Systems, Inc. v. Roche,
362 F.3d 1343 (Fed. Cir. 2004).......... 6, 13

Franklin Savings Corp. v. United States,
56 Fed. Cl. 720 (2003), aff'd, 97 Fed.Appx. 331 (Fed. Cir. 2004),
cert. denied, 544 U.S. 947 (2005). .......... 12

Helix Electric, Inc. v. United States,
68 Fed. Cl. 571 (2005). .......... 12

Inslaw, Inc. v. United States,
35 Fed. Cl. 295 (1996). .......... 3

Jarvis v. United States,
43 Fed. Cl. 529 (1999). .......... 11

Jonasson v. Lutheran Child and Family Services,
115 F.3d 436 (7th Cir. 1997). .......... 2

Khan v. United States,
201 F.3d 1375 (Fed. Cir. 2000).......... 9

Kiewit/Tulsa-Houston v. United States,
25 Cl.Ct. 110, 117, aff'd, 981 F.2d 531 (Fed. Cir. 1992) .......... 7

Kumho Tire Co., Ltd. v. Carmichael,
526 U.S. 137 (1999).......... 4

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003).......... 9

## TABLE OF AUTHORITIES

## CASES (CONT'D)


Marx & Co., Inc. v. Diners' Club, Inc.,
550 F.2d 505 (2d Cir.), cert. denied, 434 U.S. 861 (1977). .............................................. 8

Micro Chemical, Inc. v. Lextron, Inc.,
317 F.3d 1387 (Fed. Cir. 2003)........................................................................... 4

Nieves-Villanueva v. Soto-Rivera,
133 F.3d 92 (1st Cir. 1997). ............................................................................ 5

Owen v. Kerr-McGee Corp.,
698 F.2d 236 (5th Cir. 1983). .......................................................................... 5

PR Contractors, Inc. v. United States,
69 Fed. Cl. 468 (2006). ................................................................................. 3

Principal Mutual Life Insurance Co. v. United States,
26 Cl.Ct. 616, 625 (1992), aff'd, 50 F.3d 1021 (Fed. Cir. 1995) ..................................... 4

Ralph Larsen & Son, Inc. v. United States, 17 Cl.Ct. 39 (1986) ..................................................7

Rumsfeld v. United Technologies Corp.,
315 F.3d 1361 (Fed. Cir. 2003)........................................................................ 6, 13

Schweiger Construction Co., Inc. v. United States,
49 Fed. Cl. 188 (2001). ................................................................................ 11

Snellman v. Ricoh Co.,
862 F.2d 283 (Fed. Cir. 1988), cert. denied, 491 U.S. 910 (1989). ................................ 14

Southern Pine Helicopters, Inc. v. United States,
320 F.3d 838 (8th Cir. 2003). .......................................................................... 4

Specht v. Jensen,
853 F.2d 805 (10th Cir. 1988), cert. denied, 488 U.S. 1008 (1989). .......................... 5, 13

State of Alaska v. United States,
35 Fed. Cl. 685 (1996), aff'd, 119 F.3d 16 (Fed. Cir. 1997) (Table),
cert. denied, 522 U.S. 1108 (1998). .................................................................. 12

## TABLE OF AUTHORITIES

### CASES (CONT'D)

Stearns Co., Ltd. v. United States,
34 Fed. Cl. 264 (1995). .................................................. 4

United States v. Basin Electric Power Cooperative,
248 F.3d 781 (8th Cir. 2001), cert. denied, 534 U.S. 1115 (2002). .................. 11

United States v. Bilzerian,
926 F.2d 1285 (2d Cir.), cert. denied, 502 U.S. 813 (1991). .................. 4

United States v. Scop,
846 F.2d 135 (2d Cir.), rev'd in part on reh'g on other grounds,
856 F.2d 5 (2d Cir. 1988). .................................................. 6

Weeks Dredging & Contracting, Inc. v. United States, 11 Cl.Ct. 37 (1986) .................. 3

Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd.,
505 F.Supp. 1125 (E.D. Pa. 1980). .................................................. 3

### STATUTES

28 U.S.C. § 1491(a)(1) (2000). .................................................. 9

### MISCELLANEOUS

Rules of the Court of Federal Claims:

RCFC 26(a)(2)(A) .................................................. 1

RCFC 83.2(c)(2) .................................................. 14

Federal Rules of Evidence:

Rule 702 .................................................. 1, 3, 4

Rule 703 .................................................. 1

Rule 704 .................................................. 5, 6

Rule 704(a) .................................................. 5

## TABLE OF AUTHORITIES

## MISCELLANEOUS (CONT'D)

Federal Rules of Evidence (cont'd):

Rule 705 .......... 1

Treatises:

7 Wigmore on Evidence § 1952 (Chadbourne rev. 1978). .......... 5

The New Wigmore on Evidence (Expert Evidence) § 1.4 (2004) .......... 7

# INDEX TO DEFENDANT'S APPENDIX


| **Document** | **Page** |
|---|---|
| Plaintiff's Designation of Expert Witnesses | 1 |
| Agreement Regarding Equity Redetermination Process | 26 |

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION *IN LIMINE* RE: PLAINTIFF'S DESIGNATED EXPERTS

Defendant, the United States, respectfully requests that the Court exclude the testimony of law professors Geoffrey C. Hazard and Marshall J. Breger, the designated expert witnesses of plaintiff, Chevron U.S.A. Inc. ("Chevron"), from the trial of the above-captioned action.[1/] The testimony of these individuals, described in "Plaintiff's Designation of Expert Witnesses" dated November 22, 2006 ("Designation"), a copy of which is appended to this motion, see Def. App. 1- 25, is inadmissible because it is irrelevant and embodies impermissible legal conclusions.

CHEVRON'S DESIGNATED EXPERT WITNESSES

Pursuant to RCFC 26(a)(2)(A),[2/] Chevron designated Geoffrey C. Hazard and Marshall J. Berger "as persons whom [Chevron] expects to provide opinions to the Court and to call as retained expert witnesses to present evidence under the Federal Rules of Evidence about issues relating to liability in this matter." Pl. Desig. 1, Def. App. 1. Mr. Hazard is a professor of law

[1] In this motion, "Pl. Desig. ____" refers to the referenced page(s) of "Plaintiff's Designation of Expert Witnesses" dated November 22, 2006; "Compl. ¶ ____" refers to the referenced paragraph(s) of the "Complaint" filed on August 20, 2004; and "Def. App. ____" refers to the referenced page(s) of the appendix to this motion.

[2] Rule 26(a)(2)(A), concerning the disclosure of expert testimony, provides that "a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence."

at the University of Pennsylvania Law School. According to Chevron, Professor Hazard "is an expert in the fields of Legal Ethics and Civil Procedure" who Chevron intends to call "to testify that the actions of Department of Energy attorneys and adjudicators alleged in this case, which the United States may argue were not precluded by or were consistent with the language of the relevant agreements between Chevron and the United States as the United States interprets those agreements, were contrary to accepted rules, canons and fundamental principles of legal ethics." Id.

Mr. Breger is a professor of law at Catholic University of America Columbus School of Law. According to Chevron, Professor Breger "is an expert in the fields of Administrative Law and Alternative Disputes Resolution" who Chevron intends to call "to testify that the actions of Department of Energy attorneys and adjudicators alleged in this case, which the United States may argue were not precluded by or were consistent with the language of the relevant agreements between Chevron and the United States as the United States interprets those agreements, were contrary to principles of fundamental fairness and to acceptable and standard practice in agency adjudication proceedings." Pl. Desig. 2, Def. App. 2.

## ARGUMENT

### I. A Motion *In Limine* Is An Appropriate Mechanism For Raising An Objection To The Testimony Of A Designated Trial Expert

A motion *in limine* "is an important tool available to the trial judge to ensure the expeditious and evenhanded management of trial proceedings." Jonasson v. Lutheran Child and Family Services, 115 F.3d 436, 440 (7th Cir. 1997). It "serves a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly would

be inadmissible for any purpose." PR Contractors, Inc. v. United States, 69 Fed. Cl. 468, 469 (2006); accord Baskett v. United States, 2 Cl.Ct. 356, 367-68 (1983) ("A motion in limine is a useful tool to prevent a party before trial from encumbering the record with irrelevant, immaterial or cumulative matters. Such a motion enables a court to rule in advance on the admissibility of documentary or testimonial evidence and thus expedite and render efficient a subsequent trial."), aff'd, 790 F.2d. 93 (Fed. Cir.) (Table), cert. denied, 478 U.S. 1006 (1986)); see also Inslaw, Inc. v. United States, 35 Fed. Cl. 295, 303 (1996) (Through a motion *in limine*, "the court filters out irrelevant evidence and performs its function of simplifying issues for trial." (internal quotation marks omitted)); Weeks Dredging & Contracting, Inc. v. United States, 11 Cl.Ct. 37, 45 (1986) (A motion *in limine* is a remedy designed to "increas[e] trial efficiency and promot[e] improved accuracy of evidentiary determinations by virtue of the more thorough briefing and argument of the issues that are possible prior to the crush of trial," quoting Zenith Radio Corp. v. Matsushita Electric Industrial Co., Ltd., 505 F.Supp. 1125, 1140 (E.D. Pa. 1980)).

II. Gatekeeper Function Of Court Under Rule 702 Of The Federal Rules Of Evidence

Rule 702 of the Federal Rules of Evidence provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine the fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." A trial court, such as this Court, "acts as a 'gatekeeper' to exclude expert testimony that is irrelevant or does not result from the application of reliable methodologies or theories to the

facts of the case." Micro Chemical, Inc. v. Lextron, Inc., 317 F.3d 1387, 1391 (Fed. Cir. 2003). Rule 702 applies not only to scientific testimony but also to expert testimony based upon technical or other specialized knowledge. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 147-49 (1999).

III. Expert Testimony Upon Legal Issues Is Inadmissible

As a general rule, "an expert's testimony on issues of law is inadmissible." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir.), cert. denied, 502 U.S. 813 (1991). An "expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." Christiansen v. City of Tulsa, 332 F.3d 1270, 1283 (10th Cir. 2003); accord Southern Pine Helicopters, Inc. v. United States, 320 F.3d 838, 841 (8th Cir. 2003) ("expert testimony on legal matters is not admissible").[3/] Thus, "an expert may offer his opinion as to facts that, if found, would support a conclusion that the legal standard at issue was satisfied, but he may not testify as to whether the legal standard has been satisfied." Burkhart v. Washing-

[3] There are some exceptions to this general rule. In determining foreign law, a court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." RCFC 44.1; accord Al-Kurdi v. United States, 25 Cl.Ct. 599, 603-04 (1992); Crawford v. United States, 4 Cl.Ct. 699, 702 (1984). This Court also has held that it may receive expert testimony that concerns state law or a "technical provision" that is "peculiar" to an industry, such as, for example, the insurance industry. See Principal Mutual Life Insurance Co. v. United States, 26 Cl.Ct. 616, 625 (1992), aff'd, 50 F.3d 1021 (Fed. Cir. 1995); Aetna Life Insurance Co. v. United States, 16 Cl.Ct. 364, 375 (1989), aff'd, 935 F.2d 280 (Fed. Cir. 1991) (Table); accord Applegate v. United States, 35 Fed. Cl. 406, 424-25 (1996) (State environmental protection regulatory processes); Alinco Life Insurance Co. v. United States, 178 Ct. Cl. 813, 841-42, 373 F.2d 336, 352-53 (1967) ("technical provisions" of section 801 of Life Insurance Tax Act, which were "couched in language peculiar to the insurance industry"); see also Stearns Co., Ltd. v. United States, 34 Fed. Cl. 264, 268-69 (1995) ("Experts may refer to existing law and conclusory terms that touch on legal concepts which may be employed in technical areas, such as patent law, if such testimony assists the court." (citation omitted)).

ton Metropolitan Area Transit Authority, 112 F.3d 1207, 1212-13 (D.C. Cir. 1997).

Expert testimony that consists of legal conclusions cannot properly assist the trier of fact to understand the evidence or determine the fact in issue "because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial." Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 100 (1st Cir. 1997). "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." Burkhardt, 112 F.3d at 100; see also 7 Wigmore on Evidence § 1952 (Chadbourne rev. 1978) ("It is not the common knowledge of the jury which renders the witness' opinion unnecessary, but the special legal knowledge of the judge.").

Federal Rule of Evidence 704(a), which abolishes the *per se* rule against testimony upon ultimate issues of fact, does not render expert testimony upon legal issues admissible in evidence. That rule provides that "testimony in the form of an opinion or inference *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." (Emphasis added.). Testimony regarding legal issues is not "otherwise admissible" evidence. As the Fifth Circuit explained in Owen v. Kerr-McGee Corp., 698 F.2d 236, 240 (5th Cir. 1983):

> The Advisory Committee notes [to Rule 704] make it clear that questions which would merely allow the witness to tell the jury what result to reach are not permitted. Nor is the rule intended to allow a witness to give *legal* conclusions.

(Emphasis in original.). Accord Nieves-Villanueva, 133 F.3d at 100 (Rule 704(a) "removes the common-law bar to 'otherwise admissible' testimony that 'embraces an ultimate issue to be decided by the trier of fact,'" but it "does not vitiate the rule against expert opinion on questions of law."); Specht v. Jensen, 853 F.2d 805, 808 (10th Cir. 1988) ("While testimony on ultimate facts

is authorized under Rule 704, the [Advisory Committee's] comments emphasize that testimony on ultimate questions of law is not favored."), cert. denied, 488 U.S. 1008 (1989); United States v. Scop, 846 F.2d 135, 139 (2d Cir.), rev'd in part on reh'g on other grounds, 856 F.2d 5 (2d Cir. 1988) ("Rule 704 was not intended to allow experts to offer opinions embodying legal conclusions."); Adalman v. Baker Watts & Co., 807 F.2d 359, 368 (4th Cir. 1986) (Rule 704 "removes [the proscription of testimony on the 'ultimate issue'], but it should not, and does not, permit the expert witness to usurp the province of the judge.").

The fact that cases in the Court of Federal Claims are not tried before a jury does not make a difference. In Rumsfeld v. United Technologies Corp., 315 F.3d 1361 (Fed. Cir. 2003), which involved the review of a decision of a board of contract appeals, the issue was whether the Cost Accounting Standards (CAS) incorporated in a Government contract required that the contractor include a "cost" for collaboration in the allocation bases used to allocate its overhead. The Federal Circuit noted that resolution of that issue turned upon the interpretation of CAS, an issue of law, and, commenting upon the evidence received by the board upon that issue, opined:

> The views of the self-proclaimed CAS experts, including professors of economics and accounting, a former employee of the CAS Board, and a government contracts accounting consultant, as to the proper interpretation of those regulations is simply irrelevant to our interpretive task; such evidence should not be received, much less considered, by the Board on the interpretive issue. That interpretive issue is to be approached like other legal issues–based on briefing and argument by the affected parties.

Id. at 1369; accord Empire Energy Management Systems, Inc. v. Roche, 362 F.3d 1343, 1352 n.11 (Fed. Cir. 2004) (board of contract appeals "should directly ascertain legal requirements 'based on briefing and argument by the parties'") (quoting United Technologies, 315 F.3d at

1369)); see also Kaye, D.H., Bernstein, D.E., & Mnookin, J.L., The New Wigmore on Evidence (Expert Evidence) § 1.4 (2004) ("Even during a bench trial there seems no compelling reason to allow live testimony by conflicting experts on the law, as written briefs, supplemented by oral argument by counsel if appropriate, will serve the same function. To permit a party to present both a brief from its counsel and testimony by an expert on the same legal issue risks wasting time or, even worse, exposing courts to the problems inherent when a party's counsel and that party's legal expert each present nuanced—and potentially inconsistent—interpretations of the law.").

It is well-established that contract interpretation is a matter of law for the Court to decide. E.g., Cray Research, Inc. v. United States, 41 Fed. Cl. 427, 434 (1998); Blinderman Construction Co., Inc. v. United States, 39 Fed. Cl. 529, 537 (1997), aff'd, 178 F.3d 1307 (Fed. Cir. 1998) (Table); Colon v. United States, 35 Fed. Cl. 337, 344 (1996); Kiewit/Tulsa-Houston v. United States, 25 Cl.Ct. 110, 117, aff'd, 981 F.2d 531 (Fed. Cir. 1992). Expert testimony with respect to the import of a contract, therefore, should not be entertained. As the Court observed in Ralph Larsen & Son, Inc. v. United States, 17 Cl.Ct. 39, 46 (1986), which involved the interpretation of a construction contract:

> It is solely the function of the court to decide legal issues. No fact finding mission is required to determine what a reasonable interpretation of the contract was, or whether the contract was ambiguous, or whether terms of the contract are in conflict, or what the obligations arising from the contract are. All are questions of law, no trial is necessary to decide them. Plaintiff's allegation . . . that expert testimony is required to interpret the specifications is without merit. To accept such an assertion would result in the untenable situation of requiring that every disputed contract be interpreted with expert testimony. Contracts, such as the one at issue here, are not beyond the ability of courts to accurately interpret.

Accord Marx & Co., Inc. v. Diners' Club, Inc., 550 F.2d 505, 509 (2d Cir.) (legal opinions of securities business practices expert as to meaning of contract terms at issue were inadmissible), cert. denied, 434 U.S. 861 (1977).

IV. The Testimony Of Chevron's Designated Experts Is Irrelevant

Chevron has identified two professors of law as its trial experts in this matter: Professor Hazard who, according to Chevron's Designation, is an expert in the fields of "legal ethics" and "civil procedure," and Professor Breger who, according to the Designation, is an expert in the fields of "administrative law" and "alternative dispute resolution." Pl. Desig. 1-2, Def. App. 1- 2. Chevron represents that Professor Hazard will "testify that the actions of Department of Energy attorneys and adjudicators alleged in this case . . . were contrary to accepted rules, canons and fundamental principles of legal ethics" and that Professor Breger will "testify that the actions of Department of Energy attorneys and adjudicators alleged in this case . . . were contrary to principles of fundamental fairness and to acceptable and standard practice in agency adjudication proceedings." Id.

Chevron's complaint in this case, however, does not allege that the conduct of any Department of Energy ("DOE") official violated "accepted rules, canons and fundamental principles of legal ethics." Nor does the complaint allege that the conduct of any DOE official contravened "principles of fundamental fairness" or "acceptable and standard practice in agency adjudication proceedings." The complaint, rather, alleges that the actions of certain DOE officials breached the Agreement Regarding Equity Redetermination Process ("Equity Process Agreement") (see Def. App. 26-32) – a contract between Chevron and DOE in which they agreed to specific procedures for aspects of the process for determining their equity interests in Naval Petroleum Reserve

Numbered 1 – an oil-and-gas unit located in Kern County near Bakersfield, California, also referred to as "Elk Hills."[4]

The complaint avers that DOE "materially violated" a provision of the Equity Process Agreement that "prohibits ex parte contacts between an owner's advocacy team (which presents owner's position on disputed issues) and the [Assistant Secretary for Fossil Energy ("ASFE")] (who must impartially decide those issues)." Compl. ¶ 3. "In particular," Chevron alleges that "the lead in-house DOE attorney advocating the ownership interest of DOE (in opposition to [Chevron's] advocates in adversarial proceedings before the [ASFE] *simultaneously* served as *an advisor* to the [ASFE] in the same proceedings" and that "[t]his dual role has completely undermined the process agreed to by the parties and has assured that the [ASFE] decisions have been neither impartial nor fair." Compl. ¶ 4 (emphases in original); see also Compl. ¶¶ 60, 63 ("During the Dry Gas Zone proceedings, the Carneros Zone proceedings, and the Stevens Zone

[4] The Court would not have jurisdiction under the Tucker Act (28 U.S.C. § 1491(a)(1) (2000)) to entertain Chevron's contentions that the actions of DOE officials contravened "accepted rules, canons, and fundamental principles of legal ethics," "principles of fundamental fairness," or "acceptable and standard practice in agency adjudication proceedings" (whatever those concepts may be supposed to embrace) independent of Chevron's claim that the Government breached the Equity Process Agreement. As previously observed by the Court in this case, Tucker Act jurisdiction – apart from claims against the United States founded upon contracts – is confined to claims against the United States founded upon money-mandating provisions of the Constitution, Federal statutes, regulations, or executive orders. Chevron U.S.A., Inc. v. United States, 71 Fed. Cl. 236, 258 (2006) (citing Martinez v. United States, 333 F.3d 1295, 1302-03 (Fed. Cir. 2003); Khan v. United States, 201 F.3d 1375, 137-78 (Fed. Cir. 2000)). Rules, canons, or principles of legal ethics, principles of "fundamental fairness," and practices in agency adjudication proceedings are not money-mandating constitutional provisions, statutes, regulations or executive orders. See, e.g., Casa de Cambio Comdiv. S.A. de C.V. v. United States, 291 F.3d 1356, 1363 (Fed. Cir. 2002) ("[T]here is no jurisdiction under the Tucker Act over a Due Process claim unless it constitutes an illegal exaction" and "[a]n illegal exaction under the Due Process Clause exists only if money has been improperly exacted or retained by the government." (internal quotation marks omitted), cert. denied, 538 U.S. 921 (2003). Chevron does not allege a due process claim arising from an illegal exaction.

proceedings, DOE's Deputy General Counsel for Technology Transfer and Procurement, and others acting with or under her direction, engaged in contractually prohibited communications, serving both as attorney for the DOE equity team and as an advisor to the [ASFE] decision maker;" "DOE's actions constitute a breach of the Equity Process Agreement . . . .").

For its first cause of action, Chevron alleges that Ms. Mary H. Egger, the DOE Deputy General Counsel for Technology Transfer and Procurement, "and others acting with or under her direction" "engaged in contractually prohibited communications," that, "[o]n information and belief," the ASFE also engaged in contractually prohibited communications" with the IPE and with unidentified "engineers on DOE's equity team," and that such actions "constitute a breach of the Equity Process Agreement and, in turn, the parties' two-part May 19, 1997 agreement." Compl. ¶¶ 60-63. For its second cause of action, Chevron alleges that, "[b]y engaging in ex parte communications, DOE has acted in bad faith in performance of the Equity Process Agreement" and that "DOE's actions constitute a breach of DOE's contractual duty of good faith and fair dealing with respect to the parties' two-part May 19, 1997 agreement." Compl. ¶¶ 68, 69.

As Chevron acknowledges, the Equity Process Agreement "sets out a specific process for determining [the] owners' respective interests in [the Elk Hills Field]." Compl. ¶ 2. The only provision contained in the Equity Process Agreement with respect to prohibited communications is ¶ B.4, a precisely-drawn clause which provides:

> The ASFE will not consult, directly or indirectly, with the DOE field equity technical team concerning equity redetermination-related matters without also consulting with the Chevron equity team on any such matter (the reference in this sentence to the DOE field equity technical team does not include the DOE technical staff in Washington, D.C.). No such communications by the ASFE with either equity team shall be on an ex parte basis. Any written

> materials submitted to the ASFE by either party shall be provided to the other party. The provisions of this paragraph B.4 shall cease to apply with respect to a zone upon the ASFE's issuance of her final equity decision for such zone.

Def. App. 28.

Paragraph B.4 of the Equity Process Agreement does not in any manner refer to "accepted rules, canons and fundamental principles of legal ethics," "principles of fundamental fairness," or "acceptable and standard practice in agency adjudication proceedings." The testimony of Chevron's designated experts, therefore, regarding "accepted rules, canons and fundamental principles of legal ethics," "principles of fundamental fairness," or "acceptable and standard practice in agency adjudication proceedings," including application of any such standards to the conduct of DOE officials during the Elk Hills equity finalization process, is not relevant to the interpretation of ¶ B.4 of the Equity Process Agreement or its application to the actions of DOE officials.

Nor would "accepted rules, canons and fundamental principles of legal ethics," "principles of fundamental fairness," or "acceptable and standard practice in agency adjudication proceedings" be relevant to the interpretation or application of an implied covenant of good faith and fair dealing to the conduct of DOE officials during the Elk Hills equity finalization process. This implied covenant does not operate in a vacuum. "The implied duty of good faith and fair dealing does not form the basis for wholly new contract terms, particularly terms which would be inconsistent with the express terms of the agreement." Jarvis v. United States, 43 Fed. Cl. 529, 534 (1999); see also United States v. Basin Electric Power Cooperative, 248 F.3d 781, 796 (8th Cir. 2001) (The "good faith covenant does not impose a general requirement that a party act reasonably."), cert. denied, 534 U.S. 1115 (2002); Comprehensive Care Corp. v. RehabCare Corp.,

98 F.3d 1063, 1066 (8th Cir. 1996) (The covenant of good faith and fair dealing "is not an ever-flowing cornucopia of wished-for legal duties . . . .").

The covenant of good faith and fair dealing, moreover, "must attach to a specific substantive obligation, mutually assented to by the parties." Schweiger Construction Co., Inc. v. United States, 49 Fed. Cl. 188, 203 (2001) (quoting State of Alaska v. United States, 35 Fed. Cl. 685, 704 (1996), aff'd, 119 F.3d 16 (Fed. Cir. 1997) (Table), cert. denied, 522 U.S. 1108 (1998)). This implied duty is "limited to assuring compliance with the express terms of the contract and cannot be extended to create new obligations not contemplated in the contract." Helix Electric, Inc. v. United States, 68 Fed. Cl. 571, 587 (2005) (quoting Bradley v. Chiron Corp., 136 F.3d 1317, 1326 (Fed. Cir. 1998)). As this Court observed in Franklin Savings Corp. v. United States, 56 Fed. Cl. 720, 744-45 (2003), aff'd, 97 Fed.Appx. 331 (Fed. Cir. 2004), cert. denied, 544 U.S. 947 (2005): "Although the obligation of good faith and fair dealing is a real one, it is not a catch-all . . . whereby [a party to a contract] can retroactively insert specific obligations into an otherwise silent contract. A holding to the contrary would allow the covenant of good faith and fair dealing to supplant specific terms of the contract. Moreover, it would obviate classic contract law and eliminate any incentive to enter a contract in the first place since neither party could be assured that the terms of the contract were final, exclusive and binding."

Testimony by Chevron's designated trial experts regarding "accepted rules, canons and fundamental principles of legal ethics," "principles of fundamental fairness," or "acceptable and standard practice in agency adjudication proceedings," including application of any such standards to the conduct of DOE officials during the Elk Hills equity finalization process, would not be consistent with and would supplant the carefully-crafted communications ban negotiated by

Chevron and DOE in ¶ B.4 of the Equity Process Agreement. Such testimony, therefore, is not relevant to interpretation of the implied duty of good faith and fair dealing or its application to the actions of DOE officials in this case.

V. Even Assuming That The Testimony Of Chevron's Designated Experts Were Relevant, Such Testimony Would Constitute Inadmissible Legal Conclusions

The only way that the testimony of Chevron's designated trial experts arguably would be relevant is if it could be said to define the parameters of or otherwise shed light upon a duty imposed by the Equity Process Agreement or if such testimony purported to evaluate the actions of DOE officials relative to the Elk Hills equity finalization process in light of the requirements of the Equity Process Agreement. But in that case the testimony would be inadmissible because it would usurp the province of the Court to ascertain and apply the law of the case. As discussed above, contract interpretation and the application of a contractual requirement to the facts are matters of law for the Court to decide. "In no instance can a witness be allowed to define the law of the case." Specht, 853 F.2d at 810. An "expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." Christiansen, 332 F.3d at 1283. The Federal Circuit has made clear that a tribunal, such as this Court, should resolve legal issues directly based upon briefing and argument by the parties, not through the testimony of experts. Empire Energy, 362 F.3d at 1352 n.11; United Technologies, 315 F.3d at 1369.

The areas of law embodied in the testimony of Chevron's designated experts, moreover, do not fit within any of the narrow exceptions discussed above to the general rule that an expert's testimony upon legal issues is inadmissible. Testimony regarding legal ethics, principles of

fundamental fairness, and acceptable and standard practice in agency adjudication proceedings involves domestic law, not foreign law. Nor does such testimony concern state law or a technical provision peculiar to an industry, such as, for example, the insurance industry. Legal ethics, principles of fundamental fairness, and acceptable or standard practice in agency adjudication proceedings are matters upon which this Court is the "legal expert," not expert witnesses such as the law professors designated by Chevron or others with legal training or experience.[5/]

Therefore, even assuming for the sake of argument that it could be deemed relevant to Chevron's breach-of-contract claim based upon the Equity Process Agreement, testimony by Professors Hazard and Breger as to "accepted rules, canons and fundamental principles of legal ethics," "principles of fundamental fairness," or "acceptable and standard practice in agency adjudication proceedings," and application of those standards to the conduct of DOE officials during the Elk Hills equity finalization process, would not be admissible at trial.

---

[5] For the purpose of disciplinary actions against attorneys, this Court defines misconduct as behavior that "violate[s] the Code of Professional Responsibility" and the Code of Professional Responsibility adopted by the Court is the "American Bar Association Model Rules of Professional Conduct, as amended from time to time by the Association, except as otherwise provided by specific rule of the court." See RCFC 83.2(c)(2). The Court's expertise in matters of legal ethics, therefore, can be assumed. There is also a substantial body of precedent created by this Court, the Federal Circuit, and its predecessor, the Court of Claims, addressed to what may be considered acceptable practice – including precepts of fundamental fairness – in agency adjudication proceedings in a variety of contexts, including, but not limited to, civilian and military pay cases and proceedings before boards of contract appeals. That is not a highly technical area of the law, such as patent law, in which the assistance of a legal expert arguably might be of some assistance to the Court upon a discrete point. See, e.g., Snellman v. Ricoh Co., 862 F.2d 283, 287 (Fed. Cir. 1988) (In patent infringement action, "expert testimony is admissible to explain the meaning of the technical terms in the claims and to give an opinion on the ultimate question of infringement."), cert. denied, 491 U.S. 910 (1989).

## CONCLUSION

For the foregoing reasons, defendant's motion *in limine* should be granted and the testimony of plaintiff's designated expert witnesses, Geoffrey C. Hazard and Marshall J. Breger, should be excluded from the trial of this case.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

/s/ John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

OCTOBER 10, 2007

CERTIFICATE OF FILING

I hereby certify that on this 10th day of OCTOBER, 2007, a copy of "DEFENDANT'S MOTION *IN LIMINE* RE: PLAINTIFF'S DESIGNATED EXPERTS" and related Appendix in support thereof were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske