# DEFENDANT'S APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:04cv1365 |
| vs. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES, | ) | |
| Defendant. | ) | |

RECEIVED
2006 DEC 14 P 12: 5
CASE PROCESSING UNIT
CIVIL DIVISION/DOJ

**PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES**

Pursuant to Court of Federal Claims Rule 26(a)(2)(A), and in accordance with Paragraph 3(a) of the Pre-Trial and Trial Schedule (8/22/06), Plaintiff Chevron U.S.A. Inc. hereby identifies the following individuals as persons whom Plaintiff expects to provide opinions to the Court and to call at trial as retained expert witnesses to present evidence under the Federal Rules of Evidence about issues relating to liability in this matter:

1. Geoffrey C. Hazard
Trustee Professor of Law
University of Pennsylvania Law School
3400 Chestnut Street
Philadelphia, PA 19104

Professor Hazard is an expert in the fields of Legal Ethics and Civil Procedure. Plaintiff intends to call Professor Hazard to testify that the actions of Department of Energy attorneys and adjudicators alleged in this case, which the United States may argue were not precluded by or were consistent with the language of the relevant agreements between Chevron and the United States as the United States interprets those agreements, were contrary to accepted rules, canons and fundamental principles of legal ethics.

2. Marshall J. Breger
Professor of Law
The Catholic University of America Columbus School of Law
3600 John McCormack Rd., N.E.,
Washington, D.C. 20064

Professor Breger is an expert in the fields of Administrative Law and Alternative Dispute Resolution. Plaintiff intends to call Professor Breger to testify that the actions of Department of Energy attorneys and adjudicators alleged in this case, which the United States may argue were not precluded by or were consistent with the language of the relevant agreements between Chevron and the United States as the United States interprets those agreements, were contrary to principles of fundamental fairness and to acceptable and standard practices in agency adjudication proceedings.

Information describing each individual's qualifications to testify as an expert on these topics is enclosed herewith.

Plaintiff reserves the right to identify rebuttal experts and submit rebuttal expert reports. The timing of the identification of any such experts and the submission of rebuttal expert reports will be in accordance with the Pre-Trial and Trial Schedule in this case. Plaintiff also reserves the right to identify experts and submit expert reports in the damages phase of this trial.

Should it be determined that Plaintiff is entitled to attorneys' fees or prejudgment interest, Plaintiff reserves the right to identify and present expert testimony on these issues at an appropriate time to be determined by the Court.

Plaintiff may also elicit trial testimony pursuant to Fed. R. Evid. 701 from witnesses who will have been deposed in this action prior to trial. A number of these witnesses possess technical or specialized knowledge derived from or relating to their positions of employment, job responsibilities, and historical involvement in the events at issue in this case. As a part of their

trial testimony related to factual events, about which they have personal knowledge, and as necessary to understand that testimony, certain of these witnesses incidentally may testify to matters that could be determined to fall under Fed. R. Evid. 702, 703, or 705.

Lawrence D. Rosenberg
Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Victoria Dorfman
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Dated: November 22, 2006

Counsel for Chevron U.S.A. Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on November 22, 2006, a true and correct copy of the foregoing **PLAINTIFF'S DESIGNATION OF EXPERT WITNESSES** was served upon:

John E. Kosloske, Esq. **(By email, facsimile and first class mail)**
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005
Fax No. (202) 514-8624
john.kosloske@usdoj.gov

Leslie Ohta **(By email)**
Trial Attorney
Commercial Litigation Branch
Civil Division,
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
leslie.ohta@usdoj.gov

Paul T. Michael **(By email)**
Of Counsel
Office of General Counsel
Department of Energy
Washington, D.C. 20585
paul.michael@hq.doe.gov

Lawrence Rosenberg

# GEOFFREY C. HAZARD, JR.

*University of Pennsylvania Law School*
*3400 Chestnut Street*
*Philadelphia Pa 19104*

Trustee Professor of Law, University of Pennsylvania Law School
Miller Professor of Law, University of California Hastings College of the Law
Director Emeritus, American Law Institute

Address: 2263 California St.
San Francisco, CA 94115

Hastings College of the Law Tel: 415-565-4800
200 McAllister St.
San Francisco, CA 94102

University of Pennsylvania Law School
3400 Chestnut St. Tel: (215) 898-7494
Philadelphia, PA 19104 Fax:(215) 573-2025
Email: ghazard@law.upenn.edu

## EDUCATION

Swarthmore College, B.A. 1953 (Phi Beta Kappa)
Columbia University, LL.B. 1954 (Columbia Law Review)

## PROFESSIONAL APPOINTMENTS

Member, California State Bar, Pennsylvania Bar
Admitted to practice: Oregon, 1954; California, 1960; Connecticut, 1982; Pennsylvania, 1994
Practiced in Oregon, 1954-57; Deputy Legislative Counsel, State of Oregon, 1956-57; Executive Secretary, Oregon Legislative Interim Committee on Judicial Administration, 1957-58
Executive Director, American Bar Foundation, 1964-70
Consultant, American Bar Association Special Committee on Code of Judicial Conduct, 1970-72
Reporter, American Bar Association Special Commission on Standards of Judicial Administration, 1971-77
Reporter, American Law Institute, Restatement of Judgments, Second, 1973-81
Reporter, American Bar Association Special Commission on Evaluation of Professional Standards, 1978-83

Reporter, Committee on Ethical Standards, National Association of Bond Counsel, 1983-84
Director, American Law Institute, 1984-1999
Reporter, American Law Institute and International Organization for Unification of Private Law, Principles of Transnational Civil Procedure, 1999-2005
Member and Consultant, Standing Committee on Rules of Practice and Procedure, Judicial Conference of the United States, 1994-
Member, Judicial Conference Ad Hoc Committee on Mass Torts, 1997-99
Member, American Bar Association Resource Team for High Profile Trials 1996-1998
Member, American Bar Association Commission on Ethics 2000, 1997-2002
Member, Associazione Italiana fra gli Studiosi del Processo Civile, 1998-

**ACADEMIC APPOINTMENTS**

Trustee Professor of Law, University of Pennsylvania, 1994-
Miller Professor of Law, University of California Hastings College of the Law,2005-
Professor of Law, Yale University, 1971-94; Sterling Professor of Law Emeritus 1994-
Associate Professor of Law, University of California, Berkeley, 1958-61; Professor of Law, 1961-64
Visiting Professor, University of Michigan, 1963
Professor of Law, University of Chicago, 1964-71
Visiting Professor, Stanford University, 1974
Acting Dean, Yale School of Organization and Management, 1980-81; Associate Dean, 1979-80; Deputy Dean, 1981-82
Visiting Professor, Universite d'Aix-Marseille, 1982
Visiting Professor, Harvard University, 1983
Visiting Professor, University of Arizona, 1997-2001

**TEACHING SUBJECTS**

Civil Procedure, Legal Ethics, Federal Jurisdiction

**BOARD MEMBERSHIPS**

Board of Trustees, Supreme Court Historical Society, 1989-
Board of Directors, Avatar Holdings, Inc., 1980-94 Board of Directors, Smyth, Sanford & Gerard Professional Liability, L.L.C. 1995-97
Member, Board of Directors, Friends of the Library of the Supreme Court of Israel 1998-
Board of Governors, International Insolvency Institute, 2004-

**PROFESSIONAL ACTIVITIES**

Member, Administrative Conference of United States, 1972-78
Adviser, American Bar Association, Standing Committee on Ethics and Professional Responsibility, Subcommittee on Code
of Judicial Conduct, 1988-89
Member, Board of Overseers, Institute for Civil Justice, RAND Corp., 1985-90
Advisory Council, Trinity Church (New York) Center for Ethics and Corporate Policy, 1983-1990
Legal Advisory Committee, New York Stock Exchange, 1989-92
Member, American Bar Association Committee on Professional
Discipline, 1985-91
Member, American Bar Association, Committee on Lawyers' Responsibility for Client Protection, 1991-1994
Member, National Association of Corporate Directors, Blue
Ribbon Commission, 2005
Member, Pennsylvania Bar Ass'n, California State Bar, American Bar Ass'n, American Law Institute, American Judicature Society, National Legal Aid and Defender Ass'n, Fellows of American Bar Foundation, American Academy of Arts and Sciences, American Philosophical Society

## PROFESSIONAL AWARDS

American Bar Foundation, Research Award, 1985
American Bar Foundation, William Keck Foundation Award, 1997
Columbia University School of Law Association, Medal for Excellence, 1999
American Judicature Society, Outstanding Contributions to Promoting Effective Administration of Justice. 1999
Ceremony of Salute, Superior Court of Pennsylvania, 1999
Gold Medal, International Insolvency Institute, 2004
American Bar Association Section of Legal Education, Kutak Award, 2005

## HONORARY DEGREES

M.A., Yale University 1971
LL.D., Gonzaga University, 1985
LL.D., University of San Diego, 1985
LL.D., Swarthmore College, 1988
LL.D., Illinois Institute of Technology, 1990
LL.D., Nova University, 1992
LL.D., Republica Italiana (faculta di Urbino), 1998

## BOOKS

RESEARCH IN CIVIL PROCEDURE (1963; Walter E. Meyer Research Institute of Law).
LAW IN A CHANGING AMERICA (1968; editor).
QUEST FOR JUSTICE (1973; editor, American Bar Association).
GOING TO LAW SCHOOL? (1974;editor, with Thomas Ehrlich).
CIVIL PROCEDURE (5th ed. 2001, with Fleming James, Jr. and John Leubsdorf).
ETHICS IN THE PRACTICE OF LAW (1978).
PLEADING & PROCEDURE, STATE & FEDERAL (9th ed. 2005; with D. W. Louisell, Colin Tait and Wm. Fletcher).
MANAGING COMPLEX LITIGATION: A PRACTICAL GUIDE TO THE USE OF SPECIAL MASTERS (1983; with Wayne Brazil and Paul Rice).
THE LEGAL PROFESSION: RESPONSIBILITY AND REGULATION (3d ed. 1994; editor, with Deborah Rhode).
THE LAW OF LAWYERING: A Handbook on the Model Rules of Professional Conduct (3d ed. 2004 with William Hodes). PERSPECTIVES ON CIVIL PROCEDURE (1987; editor, with Jan Vetter).
BOARD GAMES: The Changing Shape of Corporate Power (1988; with Arthur Fleisher, Jr. and Miriam Z. Klipper).
THE LAW AND ETHICS OF LAWYERING (4th ed. 2005; with Susan Koniak, Roger Cramton and George Cohen)
LA GUISTA CIVIL NEGLI STATI UNITI (1993; with Michele Taruffo)
AMERICAN CIVIL PROCEDURE: AN INTRODUCTION (1993, with Michele Taruffo)
AMERICAN CIVIL PROCEDURE: AN INTRODUCTION (Japanese ed., Tanabe Tr. 1997)
POKUS`ENI` SPRA `NI` CHI RAD (Prague, 1996; translation of BOARD GAMES, with Arthur Fleisher, Jr. and Miriam Z. Klipper)
PROFESSIONAL RESPONSIBILITY AND REGULATION (Foundation Press, 2002) (with Deborah Rhode)
LEGAL ETHICS: A COMPARATIVE STUDY (Stan. U. Press.2004)(with Angelo Dondi)

**REPORTS**
(as reporter or draftsman)

Oregon Legislative Interim Commission on Judicial Administration, Vol. I (Judicial Administration), Vol. II (Juvenile Code) (1958)
California Special Legislative Commission on the Insanity Defense, Report (1962).
American Bar Association, Code of Judicial Conduct (1972).
American Bar Association, Standards of Judicial Administration (3 vol., 1974-77).
Legal Services for the Average Citizen, Report of A.B.A. Consortium on Legal Services (1977).
American Law Institute, Restatement Second of Judgments (1982).
American Bar Association, Model Rules of Professional Conduct (1983).

National Association of Bond Lawyers, Function and Professional Responsibilities of Bond Counsel (1984).
American Law Institute and International Organization for Unification of Private Law, Principles of Transnational Civil Procedure (2005).

## ARTICLES

May v. Anderson: Preamble to Family Law Chaos, 45 Va. L. Rev. 379 (1959)

Oregon Administrative Procedure Act -- Status and Prospects, 39 Ore. L. Rev. 97 (1960).

Indispensable Party: The Historical Origin of a Procedural Phantom, 61 Colum. Law Rev. 1254 (1961).

Insanity as a Defense: The Bifurcated Trial, 49 Calif. L.Rev. 805 (1961) (with D. W. Louisell).

Death, the State, and the Insane: Stay of Execution, 9 U.C.L.A. Rev. 381 (1962) (with D. W. Louisell).

Early Evolution of the Common Law Writs: A Sketch, 6 Am. J. Legal Hist. 114 (1962).

An Historical and Critical Analysis of Interpleader, 52 Calif. L. Rev. 706 (1963) (with Myron Moskovitz).

The Research Program of the American Bar Foundation,51 A.B.A.J. 539 (1965).

Reflections on Four Studies of the Legal Profession, in Law and Society, A Supplemental to Social Problems (Summer, 1965).

After the Trial Court -- The Realities of Appellate Review, in Jones, Harry W., ed., The Courts, the Public and the Law Explosion (1965).

A General Theory of State-Court Jurisdiction, 1965 Sup. Ct. Rev. 241.

Rationing Justice, 8 J. Law & Econ. 1 (1965).

Limitations on the Uses of Behavioral Science in the Law,19 Case Western L. Rev. 71 (1967).

The Ombudsman: Quasi-Legal and Legal Representation in Public Assistance Administration, in Sherrard, ed.,Social Welfare and Urban Problems (1968).

Challenges to Legal Education, in Sutherland, ed. The Path of the Law from 1967 (1968), pp. 185-194.

Epilogue to the Criminal Justice Survey, 55 A.B.A.J. 1048 (1969).

Social Justice Through Civil Justice, 36 U. Chi. L. Rev. 699 (1969).

Law Reforming in the Anti-Poverty Effort, 37 U. Chi. L. Rev. 242 (1970).

Legal Problems Peculiar to the Poor, 26 J. Social Issues 47 (1970).

Securing Courtroom Decorum, 80 Yale L. J. 433 (1970)(book review).

Res Nova in Res Judicata, 44 So. Calif. L. Rev. 1036 (1971).

Court Finance and Unitary Budgeting, 81 Yale L. J. 1286 (1972)(with Martin B. McNamara and Irwin F. Sentilles, III).

Attorneys' Responsibilities and Duties Under the Securities Laws, in Goldberg, Stuart C., ed., Expanding Responsibilities Under the Securities Laws (1973).

The Effect of the Class Action Device Upon the Substantive Law, 58 F.R.D 299 (1973).

Legal Services in the U.S.A., 2 Internat'l J.of Crim. And Pen. 43 (1974).

Chancery Procedure and the Seventh Amendment: Jury Trial of Issues in Equity Cases before 1791, 83 Yale L. J. 999 (1974) (with Harold Chesnin).

Law School "Law" and Sociolegal Research, 50 Denver L. J. 403 (1974).

Rethinking Legal Ethics, 26 Stan. L. Rev. 1227 (1974).

Conscience and Circumstance in Legal Ethics, in Hodges, ed., Social Responsibility: Journalism, Law, Medicine (Wash. & Lee Univ., 1975).

Administration of Supporting Services in the Trial Court, 1 Justice System Journal 3 (1975).

Representation in Rule-Making, in Schwartz, ed., Law and the American Future (1975).

The Tennessee Administrative Procedure Act: An Outsider's Perspective, 6 Memphis State U. L. Rev. 143 (1976).

Standards of Judicial Administration: Appellate Courts,62 A.B.A.J. 1015 (1976).

The Jurisprudence of Juvenile Deviance, in Rosenheim, ed.,Pursuing Justice for the Child (1976).

Requisites of a Valid Judgment, 24 Practical Lawyer 35 (1978).

The Supreme Court as Legislature, 64 Cornell L. Rev. 1 (1978).

An Historical Perspective on the Lawyer-Client Privilege, 66 Calif. L. Rev. 1061 (1978).

Talking to Your Lawyer, MBA, May 1978, 17.

The Legal and Ethical Position of the Code of Professional Ethics, V Social Responsibility: Journalism, Law, Medicine (Wash. & Lee Univ., 1979).

Interstate Venue, 64 Nw. L. Rev. 711 (1979).

Proposed Revision of the Rules of Legal Ethics in the United States, in Am. Bar Ass'n, American/Australian/New Zealand Law: Parallels and Contrasts (1980).

Guidelines for Claims of Privilege, United States v. Am. Tel. & Tel. Co., 86 F.R.D. 603 (1980) (with Paul Rice).

Rules of Legal Ethics: The Drafting Task, 36 The Record 77 (1981).

Revisiting the Second Restatement of Judgments: Issue Preclusion and Related Problems, 66 Cornell L. Rev. 564 (1981).

The Lawyer's Obligation to be Trustworthy When Dealing with Opposing Parties, 33 South Carolina L. Rev. 181 (1981).

How Far May a Lawyer Go in Assisting a Client in Legally Wrongful Conduct?, 35 U. of Miami L. Rev. 669 (1981).

Will the ABA Draft Model Rules of Professional Conduct Change the Concept of the Lawyer's Role?, Association of the Bar of the City of New York (Third Orison Marden Memorial Lecture,1981).

The Lawyer's Pro Bono Obligation, in ABA Proceedings of the Second National Conference on Legal Services and the Public
(1981).

Do Lawyers Really Need New Disciplinary Rules?, 53 Cleveland Bar J. 1 (1981).

Legal Ethics: Legal Rules and Professional Aspiration,30 Cleveland State L. Rev. 4 (1982).

Liability of Attorneys Involved in the Preparation of Disclosure Statements, in Fleischer, et al. eds.,Thirteenth Annual Institute on Securities Regulation (1982).

Arguing the Law: The Advocate's Duty and Opportunity,16 Georgia L. Rev. 821 (1982).

Judicial Management of the Pretrial Process in Massive Litigation: Special Masters as Case Managers, 1982 Am. Bar Found. Res. J. 375 (with Paul R. Rice).

The Criminal Justice System: Overview, in Encyclopedia of Criminal Justice (1982).

Competing Aims in Legal Education, 59 No. Dakota L. Rev.533 (1983).

Why Lawyers Should be Allowed to Advertise: A Market Analysis of Legal Services, 58 N.Y.U.L. Rev. 1084 (1983), (withRussell Pearce and Jeffrey Stempel) republished in Italian, Perche Agli Avvocati Dovrebbe Essere Consentito L'Uso Della Pubblicita, 32 Rivista Di Diritto Civile 277 (1986).

Preclusion as to Issues of Law: The Legal System's Interest,70 Iowa L. Rev. 81 (1984).

A Question of Scale, Harvard Law School Bulletin, Winter, 1984 (review of Bok report on legal education).

The Technical Expert in Procedure: U.S. National Report, in Nicklisch, ed., Der Technische Sachverstandige im Prozess, VII.Internationaler Kongress fur Prozessrecht, p. 207 (1984).

Legal Ethics, in Gillers, ed., Looking At Law School (1984, 3d ed. 1990).

Rectification of Client Fraud: Death and Revival of a Professional Norm, 33 Emory L.J. 271 (1984).

Reflections on the Substance of Finality, 70 Cornell L. Rev. 642 (1985).

Curriculum Structure and Faculty Structure, 35 J. Legal Ed,326 (1985).

The Position of the Supreme Court in the Contemporary Constitutional System of the United States, in Lombardi, Constituzione e Giustizia Constituzionale nel Diritto Comparato (Centro Italiano per lo Sviluppo della Ricerca, 1985).

Ethical Considerations in Withdrawal, Expulsion, and Retirement[from a Firm], in Berger, ed., Withdrawal, Retirement & Disputes, Am. Bar Ass'n Section of Economics of Law Practice (1986).

Court Delay: Toward New Premises, 5 Civil Justice Q. 236 (1986), republished in Italian, Costo e Durata del Processo in Italia e in U.S.A., 32 Rivista di Diritto Civile 271 (1986).

Quis custodiet ipsos custodes?, 95 Yale L.J. 1523 (1986) (book review).

Principles in Legislation, 41 The Record 685 (1986) (Cardozo Lecture).

Rising Above Principle, 135 U.Penn.L.Rev. 153 (1986) (Roberts Lecture).

A Lawyer's Privilege Against Self-Incrimination in Professional Disciplinary Proceedings, 96 Yale L.J. 1060 (1987) (withCameron Beard).

Triangular Lawyer Relationships: An Exploratory Analysis, 1 Georgetown J. Legal Ethics 15 (1987).

Permissive Affirmative Action for the Benefit of Blacks, 1987 U.Illinois L. Rev. 379 (David C. Baum Memorial Lecture).

Professional Ethics, Rules and Conduct, in Conference Papers, ALI-ABA Arden House III National Conference on the Continuing Education of the Bar (November 13, 1987), reprinted 34 CLE Journal and Register 5 (1988).

The Public Nature of Private Adjudication, 6 Yale L. & Pol'y Rev. 42 (1988) (with Paul D. Scott).

Communitarian Ethics and Legal Justification, 59 U. of Colo. L. Rev. 721 (1988).

Forms of Action Under The Federal Rules of Civil Procedure, 63 Notre Dame L. Rev. 628 (1988).

Four Portraits of Law Practice, 57 UMKC L. Rev. 1 (1988).

Ethics and Politics in the Corporate World, 6 Yale J. on Regulation 155 (1989) (book review).

Discovery Vices and Trans-Substantive Virtues in the Federal Rules of Civil Procedure, 137 U. Penn. L. Rev. 2237 (1989).

Authority in the Dock, 69 Boston U. L. Rev. 469 (1989).

My Station as a Lawyer, 6 Georgia State U. L. Rev. 1 (1989).

Per un approcio manageriale al problema dei ritardi nell'amministrazione della guistizia, 43 Rivista Trimestrial di Diritto e Procedura Civile, No. 4, p. 960 (Dicembre 1989), translated by Dttr. Angelo Dondi.

After Professional Virtue, 1989 Supreme Court Rev., 213.

Law and Business Ethics, in Reitzel, et al. Contemporary Business Law (4th ed. 1990).

The Role of the Legal System in Response to Public Risk, Fall 1990 Daedalus, 229.

Ethical Opportunity in the Practice of Law, 27 San Diego L.Rev. 127 (1990).

It Smacks of Elitism, Am. Law Inst. Remarks and Addresses, May 15-18, 1990.

The Future of Legal Ethics, 100 Yale L.J. 1239 (1991).

Il processo con giuria come modello processuale,"45 Rivista Trimestrial di Diritto e Procedura Civile,No. 2, p. 479(Giugno, 1991), translated by Dttr. Angelo Dondi.

Swimwear for the Ethics Goldfish Bowl, 26 Int'l Soc'y of Barristers Quarterly 297 (1991).

Equality in Civil Litigation, In Kojima, ed., America no Daishihou Shisutemu ("Grand Justice System: American Style"), Chiou University Institute of Comparative Law (1992).

L'avvocato e l'etica professionale: gli aspetti giuridici, Il Foro Italiano, June, 1992, V, 215, translated by Dttr. Angelo Dondi

Justice Marshall in the Medium of Civil Procedure: Portrait of a Master, 80 Georgetown L.J. 2063 (1992).

Doing the Right Thing, 70 Washington U.L.Q. 691 (1992).

Alvin B. Rubin: Man of the Law, 52 Louisiana L. Rev. 1481 (1992).

Lawyers and Client Fraud: They Still Don't Get It, 6 Georgetown J. of Legal Ethics 701 (1993).

Sources of Delays, Motions to Disqualify Could be Handled Promptly Through ADR, July 1993

Alternatives to the High Cost of Litigation (Center for Public Resources).

The Role of the Legal System in Responses to Public Risk, in E. Burger, ed., Risk (U. Michigan Press 1993).

Dimensions of Ethical Responsibility: Relevant Others, 54 U. Pittsburgh L. Rev. 965 (1993).

Lawyer Liability in Third Party Situations: The Meaning of the Kaye Scholer Case, 26 U. Akron L. Rev. 395.

Reflections on Judge Weinstein's Ethical Dilemmas in Mass Tort Litigation, 88 Northwestern U. L. Rev. 569 (1994).

The American Law Institute: What it is and What it Does, Centro do Studi e Ricerche di Diritto Comparato e Straniero, Saggi, Conferenze e Seminari, (1994).

Azioni di Responsabilita Verso gli Amministratori di Societa Commerciali nel Diritto Statunitense, 39 Rivista delle Societa 441 (1994).

Conflict of Interest in Estate Planning for Husband and Wife, 20 The Probate Lawyer 1 (1994).

Equality and Selectivity in American Civil Litigation, in T. Kojima, T. Atsumi, H. Hokama, and M. Shimuzu, eds., The Grand Design of America's Justice System, Institute of Comparative Law in Japan (1995).

Law, Morals, and Ethics, 19 So. Illinois U.L.J. 447 (1995).

La Nozione di "Substantial Evidence" nel Processo Civile Statunitense, 1-1996 Rivista Trimestrale di Diritto e Procedura Civil 251 (1996).

Conflict of Interest in the Classic Professions, in R. Spece, D. Shimm and A. Buchanan, Conflicts of Interest in Clinical Practice and Research (1996).

The Settlement Black Box, 75 Boston Univ. Law Review. 1257 (1996).

The Client Fraud Problem: A Justinian Quartet, 1 J. Institute for Study of Legal Ethics 43 (1996)

The Privity Requirement Reconsidered, 37 So. Texas L. Rev. 967 (1996).

Commentary: Policy Implications [of Lawyers Problems with Alcohol], 10 J. Law and Health 79 (1995-96).

Un Codice di Etica Professionale per gli Avvocati Italiani? Rivista Trimestrale di Diritto e Procedura Civile, Anno L Fasc. 4-1996.

An Examination Before and Behind the "Entire Controversy" Doctrine, 28 Rutgers L.J. 7 (1996).

A Lawyer's Moral and Ethical Discretion, 8 Researching Law No.2 (1997).

Transnational Rules of Civil Procedure, 30 Cornell Int'l. L.F. 495 (1997, with M. Taruffo).

State Supreme Court Regulation of Professional Ethics, 72 Notre Dame L. Rev. 1177 (1997).

Protecting the Environment: Finding the Balance Between *Delaney* and Free Play, 18 U. Penna. J. Of Int'l Economic Law 487 (with H. Kunreuther, 1997).

Ethical Dilemmas of Corporate Counsel, 46 Emory L.J. 1011, 1053 (1997).

Professional Legal Education and Citizen Education, 25 J. Japanese Institute of Int'l Bus. Law 1181 (1997) (in Japanese, translation by Professor Koichi Miki).

Harmonization of Procedural Law, 44 J. Of Civil Procedure 70(Japanese Ass'n of the Law of Civil Procedure) (translated into Japanese by Professor Koichi Miki).

Non-Silences of Professor Hazard on "The Silences of the Restatement": A Response to Professor Menkel-Meadow." 10 Georgetown L. Legal Ethics 1997).

Per L'Indipendenza Professionale Dell'Avvocatura, 1997 Rivista Trimestrale di Diritto e Procedura Civile 407.

Discovery and the Role of the Judge in Civil Law Jurisdictions,73 Notre Dame L. Rev. 1017 (1998).

The American Law Institute is Alive and Well, 26 Hofstra L. Rev. 661 (1998).

From Whom No Secrets are Hid, 76 Texas L.Rev. 1665 (1998).

The Duty or Option of Silence, 23 Law & Social Inquiry 139 (1998).

Reflections on Self-Study [of the American Law Institute], 23 Law & Social Inquiry 641 (1998).

The County Courthouse No Longer Looms Over the Community, 51 SMU L. Rev. 1559 (1998).

Foreward, Symposium, The Legal Profession: The Impact of law and Legal Theory, 67 Fordham

L. Rev. 239 (1998).

Substance, Procedure and Practice in Comparative Law, in T. Shiibashi, ed., Toward Comparative Law in the 21st Century (Chuo Univ. Press 1998).

Preliminary Draft of the ALI Transnational Rules of Civil Procedure, 33 Texas Int'l L.J. 489 (1998)

An Historical Analysis of the Binding Effect of Class Suits, 146 U. Penna L. Rev. 1849 (1998) (with John L. Gedid and Stephen Sowle)

The Underlying Causes of Withdrawal and Expulsion of Partners from Law Firms,55 Washington and Lee Rev. 1073 (1998)

Individual Justice in a Bureaucratic World, 7 Tulane J. of Int'l and Comparative Law 73 (1999)

From Whom No Secrets are Hid [Segretezza e Ricerca della verita nel Processo Civile], Rivista Trimestrale di Diritto e Procedura Civile, Anno LIII Fasc. 2 – 1999

Responsibility, Professional and Otherwise, 31 Connecticut L. Rev 1139 (1999)

Regulation of Banking in the United States, in F. Riolo and D. Maschiandaro, Il Governe delle Banche in Italia (Fondazione Rosselli, Rome 1999).

Abuse of Procedural Rights: A Summary View of the Common Law Systems, and Abuse of Procedural Rights: Regional Report for the United States, *in* M. Taruffo, ed. Abuse of Procedural Rights: Comparative Standards of Procedural Fairness(1999).

Under Shelter of Confidentiality, 50 Case Western Law Rev. 1 (1999).

Tribute to Harvey Perlman, 78 Nebraska L.Rev. 744 (1999).

Litigio civil sin fronteras: armonizacion y unificacion del derecho procesal, Derecho PUC (Revista de la Facultad de Derecho del la Pontoficia Universidad Catolica del Peru), No. 52, 583 (Abril 1999)

The Future of the Legal Profession, in American Bar Association, Common Law, Common Values, Common Rights 357-365 (2000)

The Futures Problem, 148 U.Penn.L.Rev. 1901 (2000).

Foreword: The Future of the Profession, 84 Minn.L.Rev. 1083 (2000).

The Future of the Legal Profession, in American Bar Ass'n, Common Law, Common Values, Common Rights, 357-363 (2000).

Globalization, National States, and the Rule of Law, in Jose Ciprut, ed., Of Fears and Foes: Security and Insecurity in an Evolving Global Political Economy (2000).

Law Practice and the Limits of Moral Philosophy, in Deborah Rhode, ed., Ethics in Practice (2000).

Tribute in Memory of Herbert Wechsler, 100 Columbia L. Rev. 1362 (2000).

Changing Structure in the Practice of Law, 62 Louisiana L.Rev.167 (2000).

Equality and Affiliation as Bases for Ethical Responsibility, 61 Louisiana L.Rev.173 (2000).

Environmental Contracts in the United States (with Eric Orts), in E. Orts and K. Dekelelaere, Environmental Contracts: Comparative Approaches to Regulatory Innovation in the United States and Europe (Kluwer 2001)

Transnational Rules of Civil Procedure: A Challenge to Judges and Lawyers, 68 Estratto Studi Urbinati, Nuova Serie A-N. 51,3 247 (1999/2000)

Introduction to the Principles and Rules of Transnational Civil Procedure, 33 N.Y.U. J. of International Law and Politics 769 (with M. Taruffo. R. Sturner and A. Gidi (2001)

Conflicts of Interest in Representation of Public Agencies in Civil Matters, 9 Widener J. Public Law 211 (2000).

Globalization, National States and the Rule of Law, in J. Ciprut, ed., Of Fears and Foes: Security and Insecurity in an Evolving Global Political Economy at 209 (2001)

Whistleblowing is a Non-issue, Legal Intelligencer (of Philadelphia), Feb. 25, 2002, p. 9.

Law and Justice in the Twenty-First Century, 70 Fordham L. Rev. 1739 (2002)

Fundamentals of Civil Procedure, 6 Uniform Law Review 753 (Revue de Droit Uniforme) (2001-4)

Class Certification Based on Merits of the Claims, 69 Tennessee L. Rev. 1 (2001)

The Changing Professional Environment and the Ideal of General Practice, 30 Hofstra Law

Review 759 (2002)

A Short Historical Sketch of the Legal Profession, ZZPInt (Zeitschrift fur Zivilprozess International) 6 Band 2001, 205-238 (with Angelo Dondi)

Principios fundamentales del Proceso Civil Transnacional, 54 Derecho PUC 253 (Revista de la Facultad de Derecho de la Pontificia Universdad Catolica del Peru)(2001)(with M. Taruffo, R. Sturner and A. Gidi)

Judicial Redress for Historical Crimes: Procedure, 5 International Law FORUM 36(2003)

Seeking Justice, Preserving Liberty, 54 Hastings L.J. 695 (2003)

Modeling Class Counsel, 81 Nebraska L. Rev. 1397 (2003)

International Civil Procedure and Transnational Civil Procedure: The Impact of Regional Economic Integration—An Overview, 8 Uniform Law Review 437 (2003-1/2)

Lawyer as Wise Counselor, 49 Loyola Law Rev. 215 (2003)

The ALI/UNIDROIT Project, in M. Andenas, N. Andrews and R. Nazzini, eds., The Future of Transnational Civil Litigation (2004)

Constitutional Law and Professional Regulation: Reflections on Sarbanes-Oxley, King County (Washington) Bar Bulletin, August 2004

A New Player in the Boardroom: The Emergence of the Independent Directors' Counsel, 59 The Business Lawyer 1389 (with Edward Rock)

Humanity and the Law, 16 Yale J. Law and the Humanities 79 (2004).

"Announcement" by Federal Judicial Nominees, 32 Hofstra L. Rev. 1281 (2004)
Lawyer for the Situation, 39 Valparaiso U. L. Rev. 377 (2004).

Advertising and Intermediaries in Provision of Legal Services: *Bates* in Retrospect and Prospect, 39 Ariz. State L.J. 309 (2005).

Various Newspaper Articles, National Law Journal, 1987-2001

# Columbus School of Law



**Marshall Breger**
**Professor**
breger@law.edu

Marshall J. Breger is a professor of law at the Columbus School of Law, The Catholic University of America. From 1993-95, he was a senior fellow at the Heritage Foundation, Washington, D.C.

During the Bush Administration he served as Solicitor of Labor, the chief lawyer of the Labor Department with a staff of over 800. During 1992 by presidential designation he served concurrently as Acting Assistant Secretary for Labor Management Standards.

From 1985-91 Breger was chairman of the Administrative Conference of the United States, an independent federal agency. During 1987-89 he also served as alternate delegate of the U.S. to the U.N. Human Rights Commission in Geneva.

From 1982-84 he served as special assistant to President Reagan and his liaison to the Jewish Community.

In Fall 2002, Breger was Lady Davis Visiting Professor of Law at the Hebrew University of Jerusalem. In Fall 2003 he was Distinguished Sy-Cip Fulbright Lecturer in the Philippines.

Breger is a contributing columnist to *Moment* magazine. He writes and speaks regularly on legal issues and has published over 25 law review articles in publications including the *Stanford Law Review, Boston University Law Review, Duke Law Journal* and *North Carolina Law Review*. He has published as well in periodicals such as the *Middle East Quarterly*, the *National Interest*, the *Los Angeles Times, the Wall Street Journal, the Washington Post*, and the *New York Times*. He has testified over thirty times before the United State Congress. His subjects include alternate dispute

resolution (ADR), administrative law, labor law and international law.

Breger is the author (with Tom Idinopolis) of a monograph, *Jerusalem's Holy Places and the Peace Process*, (Washington Institute of Near East Policy, 1998). He is the editor (with Ora Ahimeir) of *Jerusalem: A City and Its Future (Syracuse University Press, 2002)* as well as editor of *Public Policy and Social Issues: Jewish Sources and Perspectives* (Praeger 2003) and *The Vatican-Israel Accord: Legal, Pontifical, and Theological Issues* (Notre Dame University Press, 2004)(in press). Together with David M. Gordis, he co-edited *Vouchers for School Choice: Challenge or Opportunity? An American Jewish Reappraisal*, (Wilstein Institute of Jewish Policy Studies, 1998).

He is Vice-President of of the Jewish Policy Center, a Jewish conservative think-tank.

Professor Breger holds a B.A. and M.A., 1967, from University of Pennsylvania, a B.Phil., 1970, from Oriel College, Oxford University; and a J.D., *magna cum laude* 1973, from the University of Pennsylvania Law School, where he was an editor of the law review and a member of the Order of the Coif.

Together with his wife, Jennifer, and two daughters, Sarah 18 and Esther 16, he lives in Silver Spring, Maryland.

---

**BOOKS**

*The Vatican-Israel Accord: Legal, Political, and Theological Issues* (Notre Dame University Press, 2004)(in press).
*Public Policy and Social Issues: Jewish Sources and Perspectives* (Praeger 2003)

*Jerusalem: A City and Its Future (Syracuse University Press, 2002) (edited with Ora Ahimeir).*

*ADR in the Federal Government: A Practitioner's Handbook.* : (American Bar Association, 2000)

*Vouchers for School Choice, Challenges or Opportunity?:An American Jewish Reappraisal.* Washington, DC: Wilstein Institute of Jewish Policy Studies, 1999. (edited with David Gordis).

*Jerusalem's Holy Places and the Peace Process.* Washington, D.C.: The Washington Institute for Near East Policy, 1998 (with Thomas A. Idinopulos).

**BOOK CHAPTERS**

"The Christian Right and the Jewish Community." In *Jews and Conservative Christians*. New York: American Jewish Committee, 1996.

**BOOK REVIEWS**

"Review of *Jewish Power* by J.J. Goldberg." *Commentary* (February 1997): 68.

"Pursuing Justice: Pitfalls and Prospects." (Review-essay of Marvin Frankel, *Partisan Justice*), 34 *Stanford Law Review* 501 (1982).

**JOURNAL ARTICLES**

"International Commercial Arbitration: A Case Study of the Areas Under Control of the Palestinian Authority." *Case Western Reserve International Law Review*(2000) (with Shelby Quast).

"Established by Practice: The Theory and Operation of Independent Federal Agencies." 52 *Administrative Law IIII* (Fall 2000) (with Gary Edles).

"Is There an Ethical Duty to Consult With Your Client on ADR?" *Georgetown Journal of Legal Ethics* (2000).

"Should an Attorney be Required to Advise Client of ADR Options?" 13, *Georgetown Journal of Legal Ethics* 427 (May 2000).

"Why Likud Needs the Peace Process." *Middle East Quarterly.* (March 1999): 37.

"An Introduction: The Fundamental Agreement Between the Holy See and the State of Israel: A Symposium." *Catholic University Law Review* 47 (Winter 1998): 369.

"Government Accountability in the Twenty-First Century." *University of Pittsburgh Law Review* 57 (Winter 1996): 423.

"Regulatory Flexibility and the Administrative State." *Tulsa Law Journal* 32 (Winter 1996): 325.

"Indeterminacy and Craft in Judicial Review of Administrative Law: A Comment on Shapiro and Levy." *Catholic University Law Review* 45 (Fall 1995): 109.

"Defending Defenders: Remarks on Nichol and Pierce." 42 Duke Law Journal 1202 (April 1993) [remarks made at a symposium on *Lujan v. Defenders of Wildlife* 112 S. Ct. 2130 (1992), with Professor Richard Pierce (Columbia University), Professor Gene Nichol (University of Colorado), and John Roberts (Deputy Solicitor-General)].

"Legal Aid for the Poor: A Conceptual Analysis." 60 *North Carolina Law Review* 281 (1982).

**NEWSPAPERS AND MAGAZINE ARTICLES**

"How Arabs Fight Islamism: A Letter from Tunis," The National Interest, No. 73, Fall 2003 at 117.

"A Jewish and a Democratic Israel?," *Moment* (December 2000) at p. 34.

"Memorandum to the Next President Re: Middle East," *Middle East Insight* 40 (Nov./Dec. 2000).

"Keep the Middle East Out of It," *Forward* (August 25, 2000) at 9 (with Ted Mann).

"The Freedom to Exclude," *Moment* (August 2000) at p. 30.

"Is the Holocaust Unique?," *Moment* (April 2000) at p. 34.

"The Vatican and The Middle East: Pope John Paul II' s Trip to the Holy Land," *Peace Watch* no. 250, Washington Institute for Near East Policy (March 17, 2000) (with George Weigel).

"Letter From a Republican Friend." *The Jerusalem Post* (January 14, 2000).

Interview, "His Excellency President Ben Ali of Tunisia," *Middle East Insight*, Vol. 15, No. 4 pp.7-8 (2000).

"Awaiting the First Report on International Religious Freedom." *Policy Watch* 407 (September 7, 1999).

"Advise from a Republican Friend." *Ha'aretz* (July 19, 1999).

"Row Over the Embassy, Constitution Prevents Congress from Moving Ambassador to Jerusalem." *Legal Times* (May 10, 1999): 22.

"End of the Myth of the 'Treat from the East.'" *Los Angeles Times* (March 29, 1999).

"Jerusalem Gambit." *National Review* 47 (October 23, 1995): 41.

**REPORTS**

"In Good Faith: A Dialogue on Government Funding of Faith- Based Social Services" (Co-Drafter) (prepared for Pew Charitable Trusts, 2001).

**ONGOING SCHOLARSHIP**

I am engaged in work on the legal issues related to the concept of 'holy places' and of sacred space as well as continued study of the independent federal agencies in American Administrative Law. I also continue to work on issues related to the Middle East peace process.

## Agreement Regarding Equity Redetermination Process

This Agreement Regarding Equity Redetermination Process (this "Agreement"), dated as of May 19, 1997, is by and between the U.S. Department of Energy ("DOE") and Chevron U.S.A. Production Company, a division of Chevron U.S.A. Inc. ("Chevron"). DOE and Chevron officials have been engaged in an effort to finalize all equity interests in the four unitized productive zones within Naval Petroleum Reserve No. 1 (Elk Hills) pursuant to section 3412(b) of the National Defense Authorization Act for Fiscal Year 1996, Pub.L. 104-106 ("Act"). In connection with this activity and upon the execution of the Agreement Regarding Fixing of Equity Interests at Naval Petroleum Reserve No. 1 for Purposes of Sale (hereinafter the "Decoupling Agreement") by DOE and Chevron, DOE and Chevron hereby agree:

**A. <u>Independent Petroleum Engineer Process for Shallow Oil Zone</u>.**

1. DOE will submit the pending Shallow Oil Zone ("SOZ") equity redetermination dispute to Netherland, Sewell & Associates ("NSA") for its recommendation of final SOZ equity to the Assistant Secretary for Fossil Energy ("ASFE"). Such recommendation by NSA shall constitute the advisory report of the independent petroleum engineer for purposes of both section 3412(b) of the Act and section 9(b) of the Unit Plan Contract dated June 19, 1944, as amended and supplemented (the "UPC").

2. The procedures of Assistant Secretary for Fossil Energy Administrative Order No. 96-01, "Protocol on Naval Petroleum Reserve Numbered 1 Equity Finalization Implementation Process," dated July 8, 1996, as amended and supplemented, will be utilized for the SOZ pursuant to a schedule to be agreed upon by DOE, Chevron and NSA. The parties will agree upon a SOZ schedule based on the procedural framework set forth in Assistant Secretary for Fossil Energy Order No. 96-01, "Protocol on Naval Petroleum Reserve Numbered 1 Equity Finalization Implementation Process (Supplement 2)," dated January 21, 1997.

3. The disposition of legal issues associated with the SOZ which are common to the other zones (e.g., issues relating to proved reserves, recovery factors, and the appropriateness of the use of API gravity as a weighting factor) will apply to the SOZ redetermination process, including, without limitation, the disposition of legal issues in the Settlement Agreement, dated January 6, 1997 and in the Stevens Zone Settlement Agreement Dated May 7, 1997 ("Stevens Settlement Agreement"). In furtherance of the foregoing, the parties specifically agree that,

notwithstanding the language of the Stevens Settlement Agreement, the Stevens Settlement Agreement shall apply to the SOZ redetermination process. Any new legal issues arising in the SOZ will be addressed by following the procedures set forth in Assistant Secretary for Fossil Energy Administrative Order No. 96-01 (Supplement No. 1), dated October 11, 1996.

4. In light of the substantial body of prior equity work already completed by the parties on the SOZ, the parties shall use their best efforts to agree on the scope and methodology to be used in the SOZ equity work, including manual sand counting and other issues, with the goal of facilitating and shortening the SOZ equity study process. The parties will use a production and data cutoff date of December 31, 1997.

5. Upon the execution of the Decoupling Agreement, the ASFE will withdraw the Preliminary SOZ Redetermination Decision, dated March 28, 1997. Upon withdrawal of the Preliminary SOZ Redetermination Decision, the parties agree to set aside the Independent Petroleum Engineer Report issued by James K. Dietrich and Associates (hereinafter the "Dietrich Report"), dated November 1995, on the SOZ and to provide a joint instruction to NSA to disregard the Dietrich Report for all purposes.

6. Neither DOE nor Chevron, or their representatives, will use, cite or reference either (i) the Preliminary SOZ Redetermination Decision, or (ii) the Dietrich Report on the SOZ, or any portions thereof, in any administrative or legal proceedings on any subject whatsoever, or in the SOZ equity finalization process described herein.

7. The ASFE's decision on SOZ equity issued as a result of the process described in this agreement will be both a redetermination of equity pursuant to sections 2(f) and 9(b) of the UPC, as well as a final determination of equity pursuant to § 3412(b) of the Act.

8. Chevron and DOE acknowledge that as a result of the process specified in this Agreement, the date for issuance of the ASFE's final SOZ equity redetermination decision will be delayed until after completion of the procedural steps described in paragraphs B.1 through B.3 below. Chevron waives any claim it may have as a result of the process specified in this Agreement that the ASFE's final SOZ decision is unduly delayed, was due by a certain date, or that following the procedures set forth in this agreement violates any requirements of § 3412(b) of the Act or the UPC.

B. Equity Redetermination Process.

Chevron and DOE agree on the following procedures for the ASFE redeterminations of equity for all four unitized zones and for any review of such equity redetermination decisions:

1. NSA will provide a provisional equity recommendation report for each zone. Chevron and DOE will review such report for factual accuracy, error or misinterpretation and provide written comments thereon to NSA within 30 days after issuance of the provisional recommendation, or such later date as determined by the ASFE upon the request of either party, which request will not be unreasonably withheld.

2. NSA shall issue its final recommendation report to the ASFE, with a copy to Chevron. Chevron and DOE will review the final recommendation and provide written comments thereon to the ASFE within two weeks after issuance of the final recommendation, or such later date as determined by the ASFE upon the request of either party, which request will not be unreasonably withheld.

3. After receipt of the NSA recommendation for a zone, the ASFE shall issue a preliminary decision on such zone and shall provide the Chevron and DOE equity teams with copies of the documents relied upon in reaching the preliminary decision which are not already in the equity teams' possession, including, without limitation, any geophysical, geological or petrophysical data relied upon by the ASFE, but excluding draft documents, any legal or technical advice provided to the ASFE, or documents concerning the deliberative process of reaching the preliminary decision. The Chevron and the DOE equity teams shall have the opportunity to review the preliminary decision and provide written comments thereon to the ASFE within 30 days after its issuance, or such later date as determined by the ASFE upon the request of either party, which request will not be unreasonably withheld.

4. The ASFE will not consult, directly or indirectly, with the DOE field equity technical team concerning equity redetermination-related matters without also consulting with the Chevron equity team on any such matter (the reference in this sentence to the DOE field equity technical team does not include the DOE technical staff in Washington, D.C.). No such communications by the ASFE with either equity team shall be on an ex parte basis. Any written materials submitted to the ASFE by either equity team shall be provided to the other party. The provisions of this paragraph B.4 shall cease to apply with respect to a zone upon the ASFE's issuance of her final equity decision for such zone.

5. The ASFE shall use reasonable efforts to issue a preliminary decision on a zone within 6 months after the ASFE's receipt of written comments, if any, from DOE and Chevron on the NSA final recommendation for such zone. The ASFE shall use reasonable efforts to issue a final decision on such zone within 3 months after receipt of written comments, if any, from DOE and Chevron on the ASFE's preliminary decision.

6. In issuing the equity redetermination decisions for a zone, the ASFE may accept the NSA recommendations or reject the NSA recommendations in whole or in part. If the ASFE decides to reject the NSA recommendations in whole or in part, such decision must be based on a determination by the ASFE that one or more of the following criteria exist:

   a. The NSA recommendation(s) was arbitrary or capricious;

   b. The NSA recommendation(s) was a result of fraud;

   c. The NSA recommendation(s) was a result of undue influence, unless such undue influence had no impact on NSA's recommended equity participation percentages;

   d. The NSA recommendation(s) was inconsistent with statute, the UPC or an applicable Settlement Agreement between Chevron and DOE, unless such inconsistency had no impact on NSA's recommended participation percentages;

   e. The NSA recommendation(s) was not based on substantial geophysical, geological and/or petrophysical data; or

   f. The NSA recommendation(s) resulted from an approach or methodology which is inconsistent with sound oil field engineering principles.

7. If an ASFE decision adopts the NSA recommendation for a particular zone, that ASFE decision shall be final and not subject to challenge by Chevron. If an ASFE final decision rejects, in whole or in part, NSA's participation percentage recommendations, Chevron may challenge the ASFE decision and such challenge shall be referred to the Department of Energy Office of Hearings and Appeals ("OHA") for a decision. In this event, OHA shall review only the points on which the ASFE rejected NSA's recommendations that have been challenged by Chevron, and in all other respects the ASFE's decision shall be final. Chevron and DOE agree that the standard of review to be applied by OHA shall be the standards set forth in the Administrative Procedures Act (5 U.S.C. § 706) and the Wunderlich Act (41 U.S.C. §§ 321 and 322). Chevron shall file with OHA any challenge to an ASFE final redetermination decision for a zone within 6 months after the date of such ASFE final redetermination decision

for the zone in question. If Chevron does not file such challenge within such 6-month period, the ASFE redetermination decision for the zone in question shall be final and binding on the parties and not subject to challenge by Chevron.

8. If OHA denies the Chevron challenge to the ASFE's decision on an issue, the ASFE's decision on such issue shall be final and binding on the parties. If OHA upholds the Chevron challenge on an issue, then the NSA recommendation(s) at issue shall be adopted as final. If OHA determines to uphold the ASFE decision in part, then OHA, in its discretion, may either (i) direct that the NSA recommendation on the issue be adopted by the ASFE, (ii) remand the specific issue back to the ASFE for further determinations in accordance with OHA's instructions, or (iii) render a decision on such issue based on the record before it. If OHA remands an issue to the ASFE, Chevron shall have the right to challenge any further determination of the ASFE on such remand under the process set forth in paragraph B.7 above.

9. The ASFE's determination of final equity shall be final, binding and non-appealable unless challenged by Chevron under the procedures and criteria set out above, in which case OHA's decision shall be final, binding and non-appealable. In order to avoid the potential for protracted and costly litigation, Chevron and DOE have agreed, as an alternative to judicial resolution of any dispute regarding the ASFE equity redetermination decisions, to submit any challenge to such decisions to OHA and to be bound by the results thereof, without right of any further administrative or judicial review or appeal (nothing in the foregoing, however, shall be deemed to expand Chevron's right to challenge an ASFE decision beyond that permitted in paragraphs B.7 and B.8 above). To implement the foregoing, DOE and Chevron each knowingly and voluntarily waives any and all rights it may have (i) to bring any other judicial or administrative challenge to the final equity determination decisions by the ASFE, or (ii) to bring any judicial or administrative challenge to any decision by OHA.

10. Chevron and DOE acknowledge that the procedural steps referenced in paragraphs B.1 and B.2 already have been completed for the Carneros Zone and the Dry Gas Zone for all purposes of this Agreement and that such steps shall not be repeated for such zones.

11. Notwithstanding the provisions of paragraph B.7 above, Chevron and DOE agree that any challenge by Chevron to the ASFE's decision regarding the "25Z area" legal issue (which affects only the Carneros Zone) shall be reviewed "de novo" by OHA and that any OHA determination of the matter shall be

final and binding on the parties. If any other legal issues arise that are processed by NSA pursuant to instructions from the Independent Legal Advisor (as opposed to instructions agreed upon by Chevron and DOE in the form of a Settlement Agreement), the ASFE's decision on such legal issue, if challenged by Chevron, also shall be reviewed "de novo" by OHA and OHA's determination of the matter shall be final and binding on the parties.

C. **Miscellaneous**

1. The parties acknowledge that the ASFE is currently delegated the Secretary of Energy's authorities under title XXXIV of the Act. In the event this delegation is subsequently revised to alter this designation or in the event the Secretary chooses to perform the functions himself, such later designated official or the Secretary, as the case may be, will perform the ASFE functions identified in this Agreement.

2. This Agreement shall be governed by, and construed under, the federal law of the United States.

3. If the Decoupling Agreement is terminated pursuant to Sections 6.2 or 6.8 thereof, then this Agreement shall automatically terminate effective on the termination date of the Decoupling Agreement, and thereafter shall be of no force or effect, unless extended or modified by mutual agreement of the parties.

4. Each party represents that it has good and sufficient authority to execute and deliver this Agreement and to perform its respective obligations hereunder. This Agreement has been duly authorized, executed and delivered by the parties and constitutes the legal, valid and binding obligation of the parties, enforceable against them in accordance with its terms. Each individual signing this Agreement warrants and represents that he or she has full authority to execute the same on behalf of the party for whom he or she is signing.

5. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original copy of this Agreement, and all of which, when taken together, shall be deemed to constitute but one and the same agreement.

6. Following execution of this Agreement, the Secretary of Energy (or designee) will issue a written memorandum authorizing OHA to perform the functions set forth in paragraphs 7 and 8 of Part B of this Agreement. Chevron will be provided a copy of such memorandum.

**IN WITNESS WHEREOF**, DOE and Chevron have each caused this Agreement to be executed as of the date first written above.

U.S. Department of Energy

By: Patricia F. Godley
Title: Assistant Secretary for Fossil Energy

Chevron U.S.A. Production Company, a division of Chevron U.S.A., Inc.

By: [signature]
Title: VP-Gen MGR WSy Chevron USA Production Co