# In the United States Court of Federal Claims

No. 04-1365C
Filed: January 31, 2008
**TO BE PLACED UNDER SEAL**

| | |
|---|---|
| CHEVRON U.S.A., INC., | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

**FINAL ORDER REGARDING DOCUMENTS THE GOVERNMENT ASSERTS ARE SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE.**

| **Documents Withheld** | **Ruling** |
|---|---|
| 13 | October 20, 1999 fax cover sheet from Butch Gangle to "DOE SOZ Equity Team" copied to Mary Egger, Greg Thorpe, Alan Burzlaff re: "EHEC Minutes - 1956 Objection."<br><br>The redacted text of the October 20, 1999 cover e-mail does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 14 | October 20, 1999 fax cover sheet from Butch Gangle to "DOE SOZ Equity Team," copied to Mary Egger, Greg Thorpe, Alan Burzlaff re: "SOZ Conversion research" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The attachments CBG0030612-22 are factual documents dated 1956 re: gas reserves in NPR #1 and are not privileged. *Id.* |

| | |
|---|---|
| 27 | October 3, 2000 fax cover sheet from Butch Gangle to Mary Egger forwarding a redacted May 19, 1981 letter to Chevron from Barton House, Department of Energy ("DOE") Acting Assistant Secretary. The May 19, 1981 letter was sent to Chevron, does not request nor convey legal advice and is not subject to the attorney client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 66 | October 12, 1999 3:56 p.m. e-mail from Gary Latham to Robert Kripowicz/Mary Egger re: "Gas-oil Conversion."<br><br>The redacted text of the e-mail does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>In addition, the disclosed text references Ms. Egger's role and potential *ex parte* communications between Ms. Egger and Mr. Latham, and/or the IPE which are directly relevant to the issues before the court. |
| 262 | August 9, 1996 cover sheet and draft memo re: Final Elk Hills Equity Recommendations from Robert Nordhaus, DOE General Counsel, to Netherland Sewell (IPE) regarding "legal issues . . . regarding the meaning of certain UPC provisions and the role of Netherland Sewell & Associates (NSA) as the Independent Petroleum Engineer[.]" This document was circulated by Mary Egger to J. Williams and Wayne Kaufman for "technical review."<br><br>The cover sheet does not request nor convey legal advice. Likewise the draft memo from Mr. Nordhaus expresses a legal opinion to the IPE, a third party. The document is not subject to attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). Moreover, the header of the document (CGB0050818) describes the functions being performed by Gary Latham at that time (as Contracting Officer's Representative) which appear to differ from those |

represented to the court. *Compare* CBG0050818 *with* Fygi Decl. Exhibit C.

626 March 25, 1997 cover sheet from Mary Egger to Owen Olpin, Wayne Kauffman, Ken Schuessler, Alan Burzlaff, and Gary Latham requesting comments on draft letter (CBG0020884) from Mary Egger to "the Equity IPE" re: "Legal Issues for Stevens Zone Equity Finalization." does not request nor convey legal advice, but rather provides Ms. Egger's views about legal issues to the Equity IPE, a third party. In fact, the memo refers to the Independent Legal Advisor, evidencing that Ms. Egger was not the attorney for IPE. The draft letter is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The March 25, 1997 cover sheets (CBG0020883, 85-86) are factual and not privileged.

If Mr. Schussler or Mr. Burzlaff functioned as members of the "DOE field equity technical team" this document also may evidence an improper *ex parte* communication with Ms. Egger.

631 COM00600009 is a fax cover sheet from Greg Thorpe to Mary Egger, Wayne Kauffman, Alan Burzlaff, and Owen Olpin. This document is factual and not subject to the attorney-client privilege. COM00600012-13 is a March 31, 1997 draft of 626 with edits made by Greg Thorpe. The edits made by Greg Thorpe, however, could be construed to convey legal advice and are subject to the attorney-client privilege. COM00600014 is an attachment to the March 31, 1997 draft letter titled "Chevron's Statement of Potential Legal Issues." stating Chevron's position and is not privileged.

634 COM00602479 is an April 1, 1997 fax cover sheet from Greg Thorpe to Mary Egger. The cover sheet is factual and not subject to the attorney-client privilege. COM00602481-2 is an April 1, 1997 draft of 626 with handwritten edits by Mr. Thorpe that could be construed to convey legal advice and is subject to the attorney-client privilege. Attachment 1 (COM00602483) is titled "alt 1" "Department of Energy's Description of Potential Stevens Zone Legal Issues" and Attachment 2 (COM00602484) is titled "Alt 2." Both documents could be construed to convey legal advice and are subject to the attorney-client privilege.

| | |
|---|---|
| 733 | May 12, 1997 cover fax sheet from Greg Thorpe to Mary Egger, Wayne Kaufmann, and Ken Meeks (CBG00100917) is factual and not privileged. The attached draft "Agreement Regarding Fixing Of Equity Interests at Naval Petroleum Reserve No. 1 For Purpose of Sale" (CBG00100918-37) could be construed to request or convey legal advice and is subject to the attorney-client privilege. |
| 782 | February 24, 1999 fax cover sheet from Alan Burzlaff to Greg Thorpe, Mary Egger, Wayne Kauffman, and Butch Gangle, forwarding transcripts of Stevens Zone June/July 1997 presentations.<br><br>The redacted text on the cover sheet provides factual information "pertinent to our current legal issue topic" and could be construed to request legal advice and is subject to the attorney client privilege.<br><br>The more relevant issue to this case is whether any of the recipients functioned as members of the "DOE field equity technical team." If so, the header of the fax cover sheet (CME0102240), which was produced, may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The transcript pages already were provided to Chevron with edits, so any privilege regarding the edits has been waived. |
| 953 | May 6, 1998 memo from Alan Burzlaff to Wayne Kauffman copied to K. L. Schuessler re: "Stevens Zone Equity Finalization Potential 'Capture' Analysis Legal Issue." Reference "Letter dated April 30, 1998 from Cynthia Giumarra, Chevron USA to Mary Egger, U.S. Department of Energy (DOE)." This technical memo and attachments were requested by Wayne Kauffman and do not request nor convey legal advice and are not subject to the attorney-client privilege, nor do they attain that status simply subsequently by being faxed to Ms. Egger on that same day for a subsequent discussion. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>In addition, if any of the recipients functioned as members of the "DOE field equity technical team" this folder may evidence a |

prohibited *ex parte* communication prohibited by the Equity Process Agreement.

954 Same ruling as 953.

968 May 19, 1998 fax cover sheet from Wayne Kauffman to Ms. Egger (CBG0030153) requesting approval for a cover sheet for the "equity reports," however, the cover sheet was not attached. A May 6, 1998 letter from O. J. Williams, Director, Naval Petroleum Reserves of California, to Mr. Don Romine, Occidental (CBG0030154), was attached. This document addressed to Chevron's predecessor does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

976 The redacted text of a memo "Proposed Joint Instruction Meeting" (CBG0030293) faxed on June 1, 1998 at 10:57 from O'Melveny & Myers LLP conveys legal advice and is subject to the attorney-client privilege.

CBG0030295 is another draft of the text of the prior document, re: "Proposed Joint Instructions Wording" faxed on June 1, 1998 at 8:19 from Alan Burzlaff to Mary Egger, Greg Thorpe, and Wayne Kauffman, could be construed to request legal advice and is subject to the attorney-client privilege.

The redacted text of the May 29, 1998 10:59 fax cover sheet (CBG0030296) forwarding a draft of a letter to Richard Krenek (IPE) from DOE and Chevron re: "Joint Instruction relating to Stevens Zone Equity Finalization" could be construed to convey legal advice and is subject to the attorney-client privilege.

If Wayne Kauffman or Alan Burzlaff functioned as members of the "DOE field equity technical team," however, the fax cover sheet (CBG0030291) and (CBG0030296), already produced, may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

978 "Technical Issues for Discussion" (CBG0030310) is an attachment to a June 4, 1998 letter from Mary Egger to Cynthia Giumarra, Assistant General Counsel, Chevron, is not privileged and should be produced.

E-mail string (CBG0030311-15). The redacted text of the June 4, 1998 12:07 p.m. e-mail from Alan Burzlaff to Mary Egger re: "Proposed Letter to CUSA 6/4/98" (CBG00315) and June 4, 1998 11:01 a.m. reply copied to Greg Thorpe, Wayne Kauffman and Ken Schuessler do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The attached draft letter, however, could be construed to request legal advice and is subject to the attorney-client privilege

* * *

The redacted text of the June 4, 1998 12:13 p.m. e-mail (CBG0030314) from Alan Burzlaff to Mary Egger copied to Ken Schuessler, Greg Thorpe, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the June 4, 1998 12:28 p.m. e-mail (CGB0030312) from Wayne Kauffman to Mary Egger re: "Proposed Letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the June 4, 1998 2:14 p.m. e-mail (CBG0030311) from Greg Thorpe to Alan Burzlaff, Mary Egger, Ken Schuessler, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" could be construed to convey legal advice and is subject to the attorney-client privilege.

* * *

CBG030317 is a June 4, 1998 letter from Mary Egger to Ms. Giumarra (Chevron) copied to Greg Thorpe, Own Olpin, Wayne Kauffman, and Alan Burzlaff re: "Stevens Zone Equity – For discussion purposes only." CBG030318 is the same as CBG030317.

* * *

E-mail string. (CBG0030319-21) The June 4, 1998 9:58 a.m. e-mail from Wayne Kauffman to Mary Egger re: “Draft letter to CUSA” could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 10:19 a.m. reply from Mary Egger re: “Draft letter to CUSA” could be construed to convey legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 12:07 p.m. e-mail from Alan Burzlaff to Mary Egger re: “Proposed letter to CUSA 6/4/98” could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 10:16 a.m. e-mail from Mary Egger to Alan Burzlaff re: “Proposed Letter to CUSA 6/4/98” could be construed to convey legal advice and is subject to the attorney-client privilege. (CBG0030319)

* * *

Draft June 4, 1998 memo with handwritten notes from ABB (Alan Burzlaff) marked June 18, 1998 (CBG0030323) could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

(CBG003025-27) Draft letter to Ms. Cynthia H. Giumarra (Chevron) re: “Stevens Zone Equity – For discussion purposes only” is the same text as CBG0030317 with handwritten note “Draft – For Review/Comment,” conveys legal advice and is subject to the attorney-client privilege.

(CBG0030329) Edits to CBG0030325 from Greg Thorpe to Mary Egger, Alan Burzlaff, Ken Schuessler, and Wayne Kauffman re: "Possible Instruction Letter Paragraph (new language in bold)" conveys legal advice and is subject to the attorney-client privilege.

* * *

(CBG0030330) is a June 30, 1998 memo from Alan Burzlaff to Mary Egger/Greg Thorpe that requests legal advice and is subject to the attorney-client privilege.

993 January 25, 1998 e-mail from Mary Egger to Greg Thorpe re: "Draft Comments." could be construed to convey legal advice and is subject to the attorney-client privilege.

1000 July 21, 1998 e-mail from Wayne Kauffman to Mary Egger copied to Francis Gangle, Jim Murphy, Greg Thorpe, Jay Williams re: "CUSA Proposed Communications Protocol draft."

In this memo Mr. Kauffman is reporting on the views of the "DOE EFT" about Chevron's proposed changes to the Protocol. The first three paragraphs do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If Butch Gangle functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The fourth paragraph arguably could be construed as requesting legal advice, however, the last sentences "Wording should . . . at this time." admits there were *ex parte* communications, the central issue in this case. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this paragraph. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

1025 August 3, 1998 4:11 p.m. e-mail from Alan Burzlaff to Greg Thorpe, Wayne Kauffman, Mary Egger copied to Jim Murphy, Butch Gangle, and Ken Schuessler re: "Equity Finalization Data Cutoff Dates."

This document does not request nor convey legal advice, as it reports on cutoff dates reflected in minutes to NSAI meeting where Chevron was in attendance, is factual, and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

1027 Same ruling as1025.

1057 The redacted text of a September 22, 1998 memo from Alan Burzlaff to Wayne Kauffman copied to Mary Egger, Ken Schuessler, Jim Murphy re: "Shallow Oil Zone (SOZ) Final Equity Finalization Proposed Change to Data Cutoff Date." The document does not request or convey legal advice, as it reports on a September 15, 1999 SOZ interim meeting that Alan Burzlaff attended apparently as a member of the "DOE Equity Finalization Team," and is not subject to the attorney-client privilege. In addition, if any of the above-named functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

Attachment 1 is a document re: "SOZ Equity Finalization Data Cutoff Date," is a DOE handout used at the "SOZ First Interim Meeting on September 15, 1998." Attachment 2 is a copy of January 9-10, 1996 NSAI Minutes. Attachment 3 is an August 2, 1996 letter from DOE to Norman D. Stone, Equity Manager for Chevron. Attachment 4 is a copy of an August 15, 1996 letter sent by Norman Stone (Chevron) in response to the above referenced August 2, 1996 letter. Attachment 5 is a copy of a document "Current WOC Data" which was "Stevens Zone - Chevron Presentation Slide - 242 Reservoirs" using data from a June 1997 meeting. Attachment 6 is a Chevron Response to the NSAI Provisional Stevens Zone Recommendations, March 1998. Attachment 7 is page 2 from the May 19, 1997 Agreement Regarding Equity Redetermination Process. Attachment 8 is a May 15, 1997 memo from Gary Latham to the file re: "[May 13, 1997] Discussion with Chevron and NSA (IPE) on process ground rules for SOZ equity finalizations.

| | |
|---|---|
| | None of these attachments request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 1071 | 1071 to 1077, 1079 to 1087, and 1090 are individual pages from 1090, a 20 page presentation prepared by Systems Technology Associates, Inc. re: "Potential Stevens Zone Legal Issue 'Use of Capture Methodology' - September 30, 1998 Briefing." Although 1090 contains the caption "Attorney Client Communication-Privileged and Confidential," the document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 1072 | Same ruling as 1071. |
| 1073 | Same ruling as 1071. |
| 1074 | Same ruling as 1071. |
| 1075 | Same ruling as 1071. |
| 1076 | Same ruling as 1071. |
| 1077 | Same ruling as 1071. |
| 1079 | Same ruling as 1071. |
| 1080 | Same ruling as 1071. |
| 1081 | Same ruling as 1071. |
| 1082 | Same ruling as 1071. |
| 1083 | Same ruling as 1071. |
| 1084 | Same ruling as 1071. |
| 1085 | Same ruling as 1071. |
| 1086 | Same ruling as 1071. |
| 1087 | Same ruling as 1071. |
| 1090 | Same ruling as 1071. Five slides in this presentation arguably could be construed to discuss legal issues regarding the equity |

| | |
|---|---|
| | finalization process. CME01302117 (“Legal Issue on Use of Capture”); CME01302132 (“What Are Chevron’s Issues”); CME01302134 (“What are Merits of Chevron’s Legal Arguments”); CME01302135 (“Stevens Zone Legal Issue”); CME01302136 (“NSAI Shale Methodology”). The Government’s log, however, does not represent these slides as being prepared by or presented to an attorney. The attorney-client privilege does not attach. |
| 1108 | October 22-23, 1998 e-mail string. The October 22, 1998 6:27 p.m. e-mail from Alan Burzlaff “To all” re: “Revised Equity Data Cutoff Date Proposal” could be construed to request legal advice as it is a “subject data cutoff proposal that incorporates the feedback I received today” and is subject to the attorney-client privilege.<br><br>The October 23, 1998 8:55 a.m. memo from Mary Egger to Greg Thorpe, Ken Schuessler, Wayne Kauffman, Alan Burzlaff copied to Butch Gangle and Jim Murphy re: same could be construed to convey legal advice and is subject to the attorney-client privilege.<br><br>The October 23, 1998 8:32 a.m. e-mail from Ken Schuessler to Mary Egger, Greg Thorpe, Wayne Kauffman, Alan Burzlaff copied to Butch Gangle and Jim Murphy re: “Revised Equity Data Cutoff Date Proposal” could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>If any of the above-named, however, functioned as a member of the “DOE field equity technical team” this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1108. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000). |
| 1123 | October 28-29, 1998 e-mail string. The October 28, 1998 7:58 p.m. e-mail from Alan Burzlaff “to all” re: “DOE Proposed Materiality Question for NSAI” could be construed to request legal advice and is subject to the attorney-client privilege. |

* * *

The October 29, 1998 6:21 a.m. e-mail from Mary Egger to Ken Schuessler, Greg Thorpe, Wayne Kauffman, Alan Burzlaff re: "DOE Proposed Materiality Question for NSAI" conveys legal advice and is subject to the attorney-client privilege.

* * *

The October 29, 1998 10:15 a.m. e-mail from Butch Gangle to Mary Egger re: same could be construed to request legal advice and is subject to the attorney-client privilege.

Butch Gangle, Wayne Kauffman, and Ken Schuessler were authorized to represent DOE before the IPE (NSAI). Ms. Egger was not, as she was counsel to the ASFE. This document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1123. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

| | |
|---|---|
| 1133 | October 13, 1997 "Description of NSAI 31S Shale Methodology," authored by Alan Burzlaff, System Technology Associates, Inc. Although this document is labeled "Privileged Attorney-Client Communication," it does not request nor convey legal advice as it is a factual description of the "technical approach used by the IPE in competing equity participation in the 31S Shales" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 1142 | November 19, 1998 4:21 a.m. e-mail from Alan Burzlaff to Greg Thorpe re: "Item 1Writeup for Stevens Zone Capture Legal Issue" does not request nor convey legal advice as it describes the fact that Mr. Burzlaff prepared a "write-up of item 1 for the subject Capture legal issue." The "write-up" is not included, therefore the e-mail text alone is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex* |

*parte* communication prohibited by the Equity Process Agreement.

1145 November 23, 1998 fax cover sheet from Greg Thorpe and Stephanie Walter to Alan Burzlaff, Butch Gangle, Mary Egger, and Owen Olpin attaching a "redraft of technical review" *i.e.* November 23, 1998 System Technology Associates' "Description of the IPE's 31S Shale Methodology." The edits on this document convey legal advice and are subject to the attorney-client privilege. An undated version of underlying text, however, is not privileged, as discussed at 1133.

If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1154 December 1, 1998 fax cover sheet from Greg Thorpe to Ken Schuessler, Alan Burzlaff, Mary Egger, Owen Olpin, and Wayne Kauffman forwarding "Revised draft of 'technical' piece." The attached document is re-named "Netherland Sewell's 31S Shale Methodology." The edits on this document convey legal advice and are subject to the attorney-client privilege. An undated version of underlying text, however, is not privileged, as discussed at 1133. If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1170 December 7, 1998 memo from Butch Gangle to Greg Thorpe and Mary Egger copied to Wayne Kauffman, Alan Burzlaff, Ken Schuessler re: "NSAI EFT Conference Call on December 7, 1998." does not request nor convey legal advice as it reports on an "Equity Finalization Team teleconference" where Chevron participated and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 1237 | February 3, 1999 7:51 p.m. e-mail from Alan Burzlaff to Mary Egger and Greg Thorpe re: "BTU Legal Issue Internal Briefing" could be construed to request legal advice and is subject to the attorney-client privilege. If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1243 | February 16, 1999 memo from Greg Thorpe to Mary Egger, Wayne Kauffman, Butch Gangle, Alan Burzlaff, and Ken Schuessler with cc: to Christine Suh and Owen Olpin re: "Value Weighing." The memo conveys legal advices and is subject to the attorney-client privilege, however, the attachment "Table III-Results of Operations For Oil and Gas Producing Activities" is from the Chevron Corp. 1998 Annual Report, is in the public domain, and should be produced, without the notation. If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1255 | March 5-6, 1999 e-mail string.<br><br>The March 5, 1999 4:59 p.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle, Ken Schuessler, Gary Holcomb, Wayne Kauffman, Greg Thorpe regarding "Chevron's Data Cutoff Proposal dated March 5," could be construed to request legal advice and is subject to the attorney-client privilege. Butch Gangle, Wayne Kauffman, and Ken Schuessler were authorized to represent DOE before the IPE (NSAI). Ms. Egger was not, as she was counsel to the ASFE. This document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1255. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).<br><br>* * *<br><br>The March 6, 1999 e-mail from Ken Schuessler to Alan Burzlaff regarding "Chevron's Data Cutoff Proposal dated March 5," does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] |

whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

1286 April 15, 1999 e-mail string. The redacted text of the April 15, 1999 3:30 p.m. e-mail from Alan Burzlaff "To all" does not request nor convey legal advice as it reports the fact that Alan Burzlaff worked on a draft "Technical Report," but the report itself was not included and therefore the e-mail text is not subject to the attorney-client privilege.

The redacted text of the April 15, 1999 5:21 p.m. e-mail from Mary Egger to Alan Burzlaff re: "Final Draft of Technical repot being Faxed" could be construed to convey legal advice and is subject to the attorney-client privilege.

1294 CME01102353-55 is a April 21, 1999 memo from Alan Burzlaff to Greg Thorpe, Mary Egger, Wayne Kauffman, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh, re: "Analysis of Chevron's Equitable Claim." The redacted text of the April 21, 1999 memo arguably could be construed to request legal advice, as it appears to respond to a memo from Greg Thorpe regarding Chevron's equitable claim.

If any of the above referenced individuals, however, functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Butch Gangle, Wayne Kauffman, and Ken Schuessler were authorized to represent DOE before the IPE (NSAI). Ms. Egger was not, as she was counsel to the ASFE. This exchange occurred before the IPE's Decision on the Stevens Zone and the ASFE's Preliminary and Final Decisions, in both of which Ms. Egger took a leading role. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the documents in folder 1294. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

1312 May 6, 1999 fax cover sheet from Mary Egger to Wayne Kauffman, together with May 6, 1999 signed final letter from Mary Egger to C. Kenneth Roberts, Esq. re. "Mediation of Stevens Zone Legal Matters." The log indicates that Mr. Roberts was the "ILA" and a "client DOE employee." In fact, Mr. Roberts' client was Netherland Sewell, the IPE. Therefore, the May 6, 1999 letter is not privileged, nor are Ms. Egger's edits

on Settlement Agreement Number Three since they were disclosed.

1356 September 13, 1999 4:44 p.m. e-mail (CAS0021163-64) from Lou Capitanio to Mary Egger re: "New Draft" could be construed to request legal advice and is subject to the attorney-client privilege, but for the text "The 1998 production data . . . into 1998." which is factual, and should be produced.

The September 14, 1999 9:54 a.m. e-mail (CAS0021163) from Mary Egger to Lou Capitanio re: "New Draft" copied to Gary Latham, Arnold Smits, and Robert Kripowicz (ASFE) could be construed to convey legal advice and is subject to the attorney-client privilege.

The redacted text of the September 14, 1999 1:50 p.m. e-mail (CAS0021163) from Lou Capitanio to Mary Egger re: "New Draft" copied to Gary Latham, Arnold Smits, and Robert Kripowicz does not request nor convey legal advice as it is a factual report of a "teleconference with the IPE" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The redacted text of a June 22, 1999 11:46 a.m. e-mail (CAS002116122) from Mary Egger to Robert Kripowicz re: "Elk Hills injury lawsuit" is not relevant to this case.

1372 E-mail string dated July 20, 1999.

The redacted text of a July 20, 1999 7:02 a.m. e-mail (CBG0031080-81) from Butch Gangle to Alan Burzlaff, Ken Schuessler, Gary Holcomb, James Gruber re: "Questions for NSAI on Wednesday" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or

services.”).

July 20, 1999 10:07 a.m. e-mail from Alan Burlaff in response copied to Mary Egger and Greg Thorpe could be construed to request legal advice and is subject to the attorney-client privilege. The redacted text of the July 20, 1999 12:06 p.m. e-mail from Greg Thorpe could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the aforementioned individuals functioned as members of the “DOE field equity technical team,” this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1373 Same ruling as 1372 re: July 20, 1999 7:02 a.m. e-mail and July 20, 1999 1:06 p.m. e-mail.

The redacted text of the July 20, 1999 5:58 p.m. e-mail (CDE00304407) from Mary Egger to Butch Gangle, Ken Schuessler, Gary Holcomb, James Gruber, and Alan Burzlaff copied to Greg Thorpe re: “Questions for NSAI on Wednesday.” could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the aforementioned individuals functioned as members of the “DOE field equity technical team,” this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1384 July 23-26, 1999 e-mail string.

The redacted text of the July 23, 1999 8:49 a.m. e-mail (CDE00304417-18) from Alan Burzlaff to Greg Thorpe, Christine Suh re: “Comments on Cutoff Date Brief” coped to Mary Egger, Ken Schuessler, and Butch Gangle could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the July 23, 1999 1:23 p.m. reply (CDE00304417) from Greg Thorpe does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed.

Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the July 23, 1999 12:44 p.m. e-mail (CDE00304416-17) from Mary Egger in response could be construed to convey legal advice and is subject to the attorney-client privilege. Ms. Egger's memo, however, directly discusses the issue in this case, *i.e.*, the parties compliance with the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

* * *

The July 25, 1999 1:43 p.m. e-mail from Greg Thorpe to Mary Egger, Alan Burzlaff, Christine Suh copied to Ken Schuessler and Butch Gangle could be construed to convey legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

* * *

The redacted text of the July 26, 1999 11:20 a.m. e-mail from Alan Burzlaff to Greg Thorpe could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The July 26, 1999 12:23 p.m. e-mail from Mary Egger in reply could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 1390 | July 29, 1999 cover memo from Christine Suh (O'Melveny & Myers) to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, and Owen Olpin, copied to Greg Thorpe re: "Stevens Zone Data Cutoff Date Dispute." (CME01302657) does not request nor convey legal advice, as it is factual, and not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>Instead of attaching the DOE EFT position paper referenced, the documents that follow (CME01602658-63) are documents in the public domain that previously were received by Chevron.<br><br>If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1458 | September 10, 1999 e-mail string. The redacted text of the September 10, 1999 8:22 a.m. e-mail (CDE00307147-48) from Butch Gangle to Greg Thorpe (O'Melveny & Myers) re: "Meeting with NSAI & Chevron" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>The redacted text of the September 10, 1999 9:49 a.m. e-mail (CDE00307147) from Mary Egger to Greg Thorpe and Butch Gangle copied to Alan Burzlaff, Ken Schuessler, and Gary Holcomb in reply does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br>If any of the recipients of this communication functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |

| | |
|---|---|
| 1468 | The redacted text of the September 11, 1999 12:17 p.m. e-mail from Gary Latham to Mary Egger re: "NSAI critique of the Stevens shale studies by DOE and Chevron" does not request nor convey legal advice, as it reports on a September 9, 1999 meeting with the NSAI and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients of this communication functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1503 | September 20-21, 1999 e-mail string. The redacted text of the September 20, 1999 3:58 p.m. e-mail from Mary Egger to Robert Kripowitcz, Gary Latham, Louis Capitanio, and Arnold Smits re: "ASFE data decision" does not request nor convey legal advice as it states only that a draft decision is being circulated, but the draft was not attached, therefore, the e-mail text is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>The deleted text of the September 21, 1999 9:45 a.m. e-mail from Lou Capitanio to Mary Egger copied to Gary Latham, Arnold Smits, and Gena Cadieux re: same could be construed to request legal advice and is subject to the attorney-client privilege. |
| 1518 | September 23, 1999 e-mail string. The redacted text of the September 23, 1999 10:14 a.m. e-mail from Mary Egger to Robert Kripowicz copied to Patsy Hicks, Gary Latham, Louis Capitanio, Arnold Smits, and Gena Cadieux re: "Data Decision." The text "Bob . . . data" contains legal advice and is subject to the attorney-client privilege. The remainder of the text does not convey legal advice is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |

* * *

The redacted text of the September 23, 1999 12:32 p.m. reply e-mail from Robert Kripowicz does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the September 23, 1999 2:40 p.m. reply e-mail from Mary Egger does not request nor convey legal advice and not is subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients of this communication functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1524 September 28, 1999 e-mail string. The redacted text of the September 28, 1999 12:19 p.m. e-mail from Butch Gangle to Mary Egger and Greg Thorpe re: "Draft: Chevron Stevens Pricing Data" could be construed to seek legal advice about a draft memo to Norm Stone and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

The September 28, 1999 reply from Greg Thorpe to same conveys legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the September 28, 1999 6:23 p.m. reply from Mary Egger to Butch Gangle and Greg Thorpe copied to Christine Suh and Alan Burzlaff conveys legal advice and is subject to attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1525 September 27-28, 1999 e-mail string.

The September 27, 1999 3:56 p.m. e-mail from Francis Gaggle to Mary Egger and Greg Thorpe regarding "Chevron's Stevens Price Data" does not request nor convey legal advice as it reports the fact that Butch Gangle received price data from Chevron and, therefore, is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The September 24, 1999 10:34 p.m. e-mail from Greg Thorpe does not identify the recipient. Assuming the recipients were those listed in the 3:56 p.m. e-mail, the document conveys legal advice and is subject to attorney-client privilege.

* * *

The September 28, 1999 10:02 a.m. e-mail memo from Mary Egger to Butch Gangle and Greg Thorpe could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1526 September 29, 1999 e-mail string. The September 29, 1999 8:27 a.m. e-mail from Butch Gangle to Mary Egger and Alan Burzlaff does not request nor convey legal advice as it conveys price ratio calculations performed by Alan Burzlaff and his views on not

having the meeting in Dallas and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

Of significance is Ms. Gangle's requesting approval from Ms. Egger on negotiating price ratio calculations with Chevron relevant to the IPE's decision. Arguably this request is subject to the attorney-client privilege. Mr. Gangle was authorized to represent DOE before the IPE. Ms. Egger was not. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1526. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

* * *

The September 29, 1999 11:29 a.m. e-mail from Mary Egger to Butch Gangle copied to Greg Thorpe re: "Pricing Ratios" could be construed to convey legal advice and is subject to the attorney client privilege.

Same ruling as with 8:27 a.m. e-mail. This document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1529 The redacted text of the October 1, 1999 9:56 fax cover sheet (CME01102058) and attached factual graphs showing Stevens Zone price data from Alan Burzlaff to Greg Thorpe, Mary Egger, and Ken Schuessler do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1530 The redacted text of the October 1, 1999 8:01 a.m. e-mail from Butch Gangle to Mary Egger/Greg Thorpe, Alan Burzlaff, and

Gary Holcomb re: "Norm's Final Firm Offer." The document could be construed to request legal advice and is subject to the attorney-client privilege.

1549 The redacted text of the October 20, 1999 cover fax sheet (CME01100834) from Butch Gangle to "DOE Equity Team" copied to Mary Egger, Greg Thorpe and Alan Burzlaff does not request nor convey legal advice as it describes documents from the 1976 Report on 29R Carneros Zone and therefore is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The attachments (CME01100835-36) are a June 9, 1976 document: "Addendum and Modifications of Reservoir Engineering and Correlation Subcommittees Report on 29 R Carneros Zone" previously were submitted to Chevron's predecessors and are in the public domain and not privileged. *Id*.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1553 October 20-21, 1999 e-mail string. The redacted text of the October 21, 1999 11:35 a.m. e-mail from Butch Gangle to Mary Egger does not request nor convey legal advice, as it reports Alan Burzlaff is receiving Chevron data and the discovery of "a great deal of materials in our warehouse and out at Elk Hills" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the October 21, 1999 4:50 p.m. e-mail from Mary Egger to Greg Thorpe, Butch Gangle and copied to Alan

| | |
|---|---|
| | Burzlaff, and Gary Holcomb re: "Gas Plants inlet & outlet streams gas analysis, Elk" does not request nor convey legal advice, as it reports on a revised NSAI schedule and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1555 | October 22, 1999 memo from Greg Thorpe and Christine Suh to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, and Owen Olpin regarding "Current Price Issue In Rebuttal Brief." This document conveys legal advice and is subject to the attorney-client privilege.<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1562 | October 28, 1999 fax cover sheet (CBG0030584) from Alan Burzlaff to Greg Thorpe, Christine Suh, Mary Egger, Butch Gangle, and Ken Schuessler, attaching a October 27, 1999 memo (CBG0030585-86) to F.J. Gangle from Alan Burzlaff (signed) and copied to Greg Thorpe, Mary Egger, Ken Schuessler, and Christine Suh re: "Appropriate 'Current Price' Time Period, Stevens Zone Conversion Factor Issue." The fax cover sheet does not request nor convey legal advice as it is a technical analysis of "the current price period from DOE's perspective" and is not subject to the attorney-client privilege. The memo (CBG0030585-86) does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>The attachments CBG0030587-92 are factual charts/graphs and should be produced. In particular, CBG0030590 is information from the U.S. Energy Information Administration in the public domain. |

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 1563 | Unsigned draft of October 27, 1999 Burzlaff memo (unsigned). Same ruling as 1562. |
| 1564 | Signed copy of October 27, 1999 Burzlaff memo. *See* comments on document number 1562. |
| 1565 | Signed copy of October 29, 1999 Burzlaff memo. *See* comments on document number 1562. |
| 1574 | The redacted text of the November 1, 1999 4:58 p.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle, Greg Thorpe and Christine Suh and re: "1942 Prices" does not request nor convey legal advice as it reports on information from a May 23, 1941 oil price bulletin from Standard Oil (Chevron's predecessor) and the 1957 SOZ Redetermination and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). <br><br> If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1575 | November 2, 1999 fax cover sheet (CME01102064) from Alan Burzlaff to Greg Thorpe/Christine Suh, Mary Egger, and Butch Gangle. The fax cover sheet comment does not request nor convey legal advice as it reports that the attachments are "plots of historical prices,"is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The four attached charts (CME01102065-68) are factual data that also are not privileged. <br><br> If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process |

Agreement. The attached graphs are factual and should be produced.

1579 November 4, 1999 memo from Alan Burzlaff to Butch Gangle Reference to a NSAI letter to Butch Gangle and Norm Stone (Chevron) dated October 27, 1999 Subject: "Stevens Zone Gas Conversion Guidelines" copied to Ken Schuessler (CME0141124-35) does not request nor convey legal advice, as it is a series of technical answers to questions posed by the IPE, and therefore is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

A November 5, 1999 fax cover sheet from Butch Gangle to Mary Egger (CME04120-21) indicates this memo was forwarded to Ms. Egger on November 5, 1999, however, CME0401122-23, a November 5, 1999 letter from Butch Gangle to Richard Krenek, (IPE) indicating that the November 4, 1999 memo was sent to the IPE first, with no input from Ms. Egger.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1582 November 18, 1999 e-mail string.

The November 15, 1999 6:13 p.m. e-mail (CME0110253-54) from Alan Burzlaff to Greg Thorpe, Mary Egger, Christine Suh copied to Butch Gangle, Ken Schuessler, and Gary Holcomb re: "Prices in Chevron Current Price Brief to ILA." could be construed to request legal advice and is subject to the attorney-client privilege. The comparative chart, however, is factual and not subject to the attorney-client privilege.

* * *

The November 16, 1999 2:01 p.m. response from Greg Thorpe conveys legal advice and is subject to the attorney-client privilege.

* * *

The November 16, 1999 9:11 p.m. e-mail from Alan Burzlaff to Greg Thorpe copied to Mary Egger, Owen Olpin, Francis Gangle, and Kenneth Schuessler. The first sentence could be construed to request legal advice and is subject to the attorney-client privilege. The comparative chart, however, conveys facts and is not privileged.

* * *

The November 18, 1999 2:53 p.m. e-mail from Francis Gangle to Mary Egger, Greg Thorpe, Alan Burzlaff copied to Gary Holcomb re: "NSAI Conversion Methodology Meeting in Bakersfield." does not request nor convey legal advice, as it reports on a November 18, 1999 meeting with IPE and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). This document is also relevant to Chevron's causation theory. *See* 6/15/07 TR at 10. The author of the hand-written note on CME01102050 is not identified, but the content is factual.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1586 November 22, 1999 fax cover sheet (CSI0020020) from Alan Burzlaff to Greg Thorpe, Christine Suh, Mary Egger, and Butch Gangle transmitting "Plots of conversion factor results (based on NSAI methodology) for varying price window," with 2 pages of charts (CSI0020021-22). These documents do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper

| | |
|---|---|
| | *ex parte* communication prohibited by the Equity Process Agreement. |
| 1589 | The redacted text of the November 23, 1999 11:53 a.m. e-mail from Mary Egger to Alan Burzlaff, Butch Gangle, Greg Thorpe re: "Voicemail from Gary Henderson (Counsel for Chevron)" does not request nor convey legal advice and is not subject to the attorney-client privilege. That text, however, discusses a settlement that the court does not consider to be relevant to this case. Therefore, the document does not need to be produced. |
| 1593 | November 30, 1999 memo from Alan Burzlaff to Butch Gangle, Greg Thorpe, and Mary Egger re: "Gas Conversion Factor Methodology, Analysis of Impact on NSAI Stevens Zone Provisional Equity Recommendation," (CSI0020411) copied to Ken Schuessler forwarding 5 charts (CSI0020412-16). Although these documents are marked "privileged and confidential" they do not request nor convey legal advice as they graphically depict a range of "possible equity outcomes related to the proposed price-based gas conversion factors methodologies presented by [the IPE]" and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1596 | All of the factual charts in this file also are not subject to the attorney-client privilege, without the notations by Ms. Egger on CME01102038. The source for CME01102034-6 is listed as NPR I Product Revenues (DOE share), BP01 Monthly Status Report and are in the public domain. |
| 1602 | E-mail string. The redacted text of the November 15, 1999 6:13 p.m. e-mail (CBG01100275) from Alan Burzlaff to Greg Thorpe, Mary Egger, Christine Suh, copied to Butch Gangle, Ken Schuessler, and Gary Holcomb re: "Prices in Chevron Current Price Brief to ILA" could be construed to request legal advice and is subject to the attorney-client privilege. Mr. Gangle and Mr. Schuessler were authorized to represent the DOE before the IPE/ILA. Ms. Egger was not. This document may evidence an |

improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). The attached three charts, however, are factual and should be disclosed.

* * *

The redacted text of the November 16, 1999 5:01 p.m. e-mail from Greg Thorpe to Alan Burzlaff copied to Christine Suh, Own Olpin, Mary Egger and Butch Gangle could be construed to request legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

* * *

The redacted text of the November 24, 1999 11:43 a.m. e-mail (CBG01100283) from Greg Thorpe to Alan Burzlaff and Butch Gangle and copied to Gary Holcomb, Greg Thorpe, and Mary Egger could be construed to convey legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

* * *

The redacted text of the December 13, 1999 12:34 p.m. e-mail (CBG01100288) from Alan Burzlaff to Greg Thorpe coped to Mary Egger and Butch Gangle re: "Price Window for Stevens Zone Settlement Agreement." does not request nor convey legal advice as it reports on the fact of a "current price window we agreed to with Chevron" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

CBG01100289 is the same document as CBG01100288.

1602 [CBG01100367-68]

The redacted text of the November 18, 1999 11:53 a.m. e-mail (CBG01100367-68) from Butch Gangle to Mary Egger, Greg Thorpe, and Alan Burzlaff copied to Gary Holcomb re: "NSAI conversion methodology meeting in Bakersfield" does not request nor convey legal advice as it reports on the facts of a November 18, 1999 NSAI meeting and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the November 19, 1999 11:05 a.m. e-mail from Greg Thorpe to Butch Gangle, Mary Egger and Alan Burzlaff copied to Gary Holcomb re: same could be construed to convey legal advice and is subject to the attorney-client privilege.

The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. In addition, these documents are relevant to the Government's causation theory. *See* 6/15/07 TR at 10.

1666

The redacted text of the February 23, 2000 3:16 p.m. e-mail (CDE00307731) from Butch Gangle to Mary Egger re: "Of All Surprises" could be construed to request legal advice and is subject to the attorney-client privilege. This document shows communication between Gangle and Latham about activities with the IPE, that also were conveyed to Ms. Egger. It also shows Gangle advising the ASFE. If any of the recipients functioned as

a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

1682 March 22-23, 2000 e-mail string. The redacted text of the March 22, 2000 6:31 p.m. e-mail (CDE00307246-47) from Greg Thorpe to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, Christine Suh and Owen Olpin re: "letter to krenek" conveys legal advice and is subject to the attorney-client privilege.

The March 23, 2004 5:44 a.m. e-mail from Mary Egger to Greg Thorpe, Butch Gangle, Alan Burzlaff, Ken Schuessler, Owen Olpin, and Christine Suh re: "letter to krenek" could be construed to convey legal advice and is subject to the attorney-client privilege.

The redacted text of the March 22, 2000 7:34 a.m. e-mail (CDE00307246) from Alan Burzlaff to Mary Egger, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh re: "letter to krenek" does not request nor convey legal advice, as it reports on the "estimated recoverable oil that Chevron is claiming" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The redacted text of the March 23, 2000 10:38 a.m. e-mail reply from Greg Thorpe to Mary Egger, Alan Burzlaff, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh contains legal advice and is subject to the attorney-client privilege.

The March 23, 2000 1:39 p.m. e-mail reply from Mary Egger to Greg Thorpe, Alan Burzlaff, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh arguably conveys and requests legal advice and is subject to the attorney-client privilege, however, the referenced attachment was not produced

| | |
|---|---|
| | in this folder.<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1699 | April 25, 2000 memo from Francis Gangle to Mary Egger and Greg Thorpe re: "SOZ 1994 Equity Studies," transmitting 4 attachments re: same. This document does not request legal advice, as it reports on public documents relevant to the Equity Process Agreement. Attachments 1, 2, and 4 were all sent to Chevron and any privilege was waived, except for the handwritten notes which may be withheld. Attachment 3 (CBG0050319) a February 5, 1998 memo to the IPE from Butch Gangle re: "1998 schedule" is factual, and not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1721 | May 19, 2000 e-mail from A. Burzlaff to Greg Thorpe copied to Butch Gangle, Ken Schuessler, and Mary Egger re: "Verification of Capture Analysis in CUSA SOZ Equity Case" together with attachments. CSI004-1053-54 could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>CSI0041055-61 are Chevron documents and are not subject to any privilege. CSI0041062-63 are allegedly handwritten notes of A. Burzlaff, but are factual in nature, not privileged, and should be produced. |
| 1725 | The text of CBG0040615-16 is a draft letter re: "1994 SOZ Reports" with handwritten notes from Mary Egger to Greg Thorpe, Butch Gangle, and Alan Burzlaff. CBG0040615 was produced, so whatever privilege attached was waived. CBG0040616 could be construed to convey legal advice and is subject to the attorney-client privilege. |

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1727 May 25, 2000 fax cover sheet (CBG0040577) from Butch Gangle to Mary Egger, Owen Olpin, and Greg Thorpe re: "16G/17G Inclusion," forwarding three documents provided by Jim Gruber (CBG0040579-85) . The text of the fax cover does not request nor convey legal advice and is not subject to attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

CBG0040579 is an April 11, 1979 letter sent to Chevron and is not privileged. CBG0040580-81 is a April 9, 1979 memo from R. H. Nelson, Capt. CEC, USN to George S. McIssac, DOE Assistant Secretary re: "Clarification of Letter to Mr. D. L. Bower Regarding Inclusion of Section 16G and 17G Into the Unit Plan Contract." If R. H. Nelson is an attorney, this document is subject to the attorney-client privilege as it conveys legal advice. As CBG0040585 indicates, CBG0040582-84 is the text of a communication about the terms of a proposed 1978 settlement re: "Elk Hills" that the court considers not relevant to the issues in this case. Production of CBG0040580-85 is not required.

1808 August 24, 2000 e-mail (CDE01332934) from Louis Capitanio to Mary Egger with cc: to Gary Latham re: "Response to DOE 8/22 Stevens Equity Letter" with attachment "doe8-23.wpd." This document does not convey legal advice – in fact it states "I could not give any consideration to legal significance of 'final recommendation' since I'm not really too familiar with the agreements and protocols." The document is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 1809 | The redacted text of the August 24, 2000 10:14 a.m. e-mail (CLC00102286) is the same as 1808. The attached draft letter from Robert Kripowicz to Francis Gangle (CLC00102287) authored by Louis Capitanio, however, arguably could be construed to request legal advice from Ms. Egger and is subject to the attorney-client privilege. |
| 1826 | August 29, 2000 e-mail string.<br><br>The August 29, 2000 10:42 a.m. e-mail from Arnold Smits to Mary Egger copied to Gary Latham, Louis Capitanio re: "Extension of Time." The text arguably could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>* * *<br><br>The 1:54 p.m. response from Mary Egger to Arnold Smits and Robert Kripowicz copied to Gary Latham and Louis Capitanio states that Greg Thorpe is "the DOE EFT lawyer." The text arguably could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1832 | Same ruling as 1826. |
| 1835 | The redacted text of the September 5, 2000 2:46 p.m. e-mail from Arnold Smits to Mary Egger copied to Louis Capitanio and Gary Latham re: "Supplement to the Protocol for the SOZ and draft letter to Luquatte" does not request nor convey legal advice, as it reports on a September 5, 2002 meeting with Robert Kripowicz and is not subject to the attorney-client privilege.<br><br>As to paragraphs 1-3 and paragraph 4 until: "Therefore, I recommend . . . question" that arguably could be construed to request legal advice. The remainder of the text in paragraphs four and five are factual and do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication |

was one that was made . . . for the purpose of obtaining legal advice or services.").

This document, however, is relevant to the issues in this case in that Lou Capitanio appears to be in communication with the "DOE EFT" as well as Gena Cadieux and Mary Egger who the Government states is counsel for the ASFE. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this document. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

* * *

The redacted text of Ms. Egger's 3:05 p.m. reply is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

1849 September 11-13, 2000 e-mail string. The redacted text of the September 13, 2000 10:48 a.m. e-mail from Lou Capitanio to Gena Cadieux copied to Arnold Smits, Gary Latham, and Mary Egger re: "Draft Letter Confirming September 7 Protocol Teleconference" does not request nor convey legal advice and is not subject to the attorney-client privilege.

* * *

The redacted text of the September 13, 2000 11:01 a.m. reply from Gena Cadieux conveys legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the September 13, 2000 11:22 a.m. e-mail from Lou Capitanio to Gena Cadieux copied to Arnold Smits and Gary Latham does not request nor convey legal advice, as it reports on the fact that Chevron submitted no comment on a NSAI final recommendation and is not subject to the

attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1881 The redacted text of the October 10, 2000 fax cover sheet (CME01300526) from Butch Gangle to "DOE Equity Legal Team" copied to Mary Egger, Greg Thorpe, Alan Burzlaff, and Owen Olpin re: "In reply to question on Bowers Memo" does not request nor convey legal advice, as it describes various attachments from 1976 proceedings and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The attached April 17, 1976 memo (CME01300527) from R.F. Schlecht re: Section 7 R Evaluation-Godsey-Earlougher, Inc." with attachment, to 17 recipients who were asked to provide a technical review the Godsey-Earlougher evaluation, none of which appear to be attorneys. CME01300528 is March 31, 1976 comparative analysis of Section 7R Reserves that is factual. CME01300529 is the first page of a document prepared by Godsey-Earlougher, Inc. "Department of Navy Petroleum and Oil Shale Reserves-Evaluation of Stevens Sand Reservoir . . . as of March 1, 1976." None of these documents request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The redacted text of CME01300530-31, a letter to George G. Dowd, Captain JAGG, USN from an engineering firm, "Godsley-Earlougher, Inc." does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he

central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.”).

CME01300532-34 is a report “Oil In Place Determination Section 7R, Tule Elk Oil Field, Kern County, California” by Richard L. Whiting, Consulting, Petroleum, Natural Gas and Geological Engineers, P.O. Drawer B, College Station, Texas 77841. The requestor of the document is not clear, but the document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (“[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.”).

1884 Same ruling as 1881.

1889 October 12, 2000 fax cover memo from Alan Burzlaff to Greg Thorpe, Molly White, Mary Egger, Butch Gangle, and Owen Olpin (CBG0051006) does not request nor convey legal advice, but rather discusses a conference call re: the CUSA’s SOZ technical case. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (“[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.”)

If any of the recipients functioned as a member of the “DOE field equity technical team,” this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The attached March 14, 2000 Doug Hess USOZ Sectors Chart (CBG0051007-08) text (CBG0051009-10) is a Chevron document (*see* CBG0051006 - “attached as a copy of a page from CUSA’s [Chevron’s] equity spreadsheet . . . the attached CUSA materials presented to the IPE . . .”). These documents are in the public domain and do not request or convey legal advice. Therefore, CBG0051007-10 are not subject to the attorney-client privilege.

1894 October 12, 2000 e-mail string.

The redacted text of the October 12, 2000 1:11 p.m. e-mail (CME01102747-48) from Greg Thorpe to Alan Burzlaff copied to Butch Gangle re: "SOZ" does not request nor convey legal advice as it requests clarification regarding technical issues and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

The redacted text of the October 12, 2000 3:18 p.m. e-mail (CME01102747) from Alan Burzlaff to Greg Thorpe copied to Butch Gangle, Mary Egger, and M. White re: "SOZ" does not request legal advice and is not subject to the attorney-client privilege.

The redacted text of the October 12, 2000 3:38 p.m. e-mail (CME03302746-47) from Greg Thorpe to Alan Burzlaff copied to Butch Gangle, Mary Egger, Owen Olpin, and Molly White could be construed to convey legal advice and is subject to the attorney-client privilege.

The redacted text of the October 12, 2000 7:47 p.m. e-mail (CME01102746) from Alan Burzlaff to Greg Thorpe copied to Mary Egger, Butch Gangle, Owen Olpin, and Molly White re: "SOZ" does not request legal advice, as it discusses the technical significance of "Chevron's 166/176 Methodology" and is not subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1897 Same ruling as 1894.

1898 Same ruling as 1889.

1899 The redacted text of the October 17, 2000 1:27 p.m. e-mail from

Gary Latham to Robert Kripowicz copied to Mary Egger and Arnold Smits re: "Protocol on IPE Communications" does not request legal advice, except for the last sentence of the first paragraph which is directed to Ms. Egger. The remainder of the text of the first paragraph, however, is highly relevant to the issues in this case providing Mr. Latham's explanation to ASFE Kripowicz of Mr. Latham's understanding and views about the *ex parte* communications barred by Administrative Order 96-01. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

This document appears to evidence past communications between Mr. Latham and the IPE (NSAI)If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Assuming *arguendo*, Ms. Egger's receipt of this document and question directed to her is subject to the attorney-client privilege, the court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

1902 October 17-19, 2000 e-mail string. The reacted text of the October 17, 2000 1:27 p.m. e-mail from Gary Latham to Robert Kripowicz copied to Mary Egger and Arnold Smits re: "Protocol on IPE communications. Same ruling as 1899.

* * *

The October 19, 2000 4:05 p.m. reply e-mail from Mary Egger to Gary Latham and Richard Kripowicz copied to Arnold Smits re: "Protocol on IPE communications" conveys legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all of the e-mails in folder 1902. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

1905 The redacted text of the October 20, 2000 7:50 a.m. e-mail reply from Robert Kripowicz to Mary Egger and Gary Latham re: "Protocol on IPE Communications" in response to the October

19, 2000 4:05 p.m. e-mail (*see* 1902) does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

2049 January 19, 2001 12:32 p.m. e-mail from Alan Burzlaff to Mary Egger and Greg Thorpe copied to Ken Schuessler, Butch Gangle, and Molly White re: "Chevron's response" arguably could be construed to request legal advice as it comments on Chevron's legal filings and is subject to the attorney-client privilege. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2058 The redacted text of the January 29, 2001 10:06 a.m. e-mail from Butch Gangle to Mary Egger, Gary Latham, Louis Capitanio, Arnold Smits, Greg Thorpe, and Alan Burzlaff re: "Comments On Talking Points" arguably could be construed to request legal advice and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

2111 The redacted text of the March 13, 2001 11:50 a.m. e-mail from Gary Latham to Mary Egger copied to Arnold Smits re: "Time Periods for preparation of preliminary and final SOZ equity decisions" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 2130 | The redacted text of the May 3, 2001 8:08 a.m. e-mail (CDE00304468-69) from Butch Gangle to Mary Egger re: "SOZ Equity Update Report" does not request nor convey legal advice, as it reports on a April 16, 2001 meeting in Golden with STA, a meeting on April 17, 2001 with DOE engineers in Bakersfield, where Greg Thorpe was in attendance and a follow-on "regularly scheduled conference call" with IPE "to discuss . . . progress on the SOZ equity finalization," and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). <br><br> If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2142 | The reacted text of the June 20, 2001 3:04 p.m. e-mail from Arnold Smits to Gena Cadieux coped to Gary Latham re: "Comparison of the Effects of Different Gas Conversion Methods on Equity" arguably could be construed to request legal advice and is subject to the attorney-client privilege. The attached chart, however, is factual and not privileged. |
| 2152 | The redacted text of the June 28, 2004 2:04 p.m. e-mail from Gary Latham to Robert Kripowicz copied to Mary Egger, Gina Cadieux, and Arnold Smits re: "Stevens Zone equity - Basis for Conversion from natural gas to Barrels of oil equivalent (BOE)" arguably could be construed to convey legal advice and is subject to the attorney-client privilege. |
| 2195 | Power point slide presentation prepared by Butch Gangle and presented on November 6, 2001 to DOE Equity Process Team. The majority of this document (CBG0124105-19, 21) are technical bullets or graphs re: "Shallow Oil Zone, DOE Modeling Effort, NSAI Modeling Effort, IPE (NSAI) Interim Deliverables, Streamlining The Equity Process" and do not convey nor request legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The slide "Legal Issues" (CGB01204120) arguably could be construed to request legal |

| | |
|---|---|
| | advice but the log does not reflect that this information was communicated to an attorney represents the DOE EFT. |
| 2196 | The November 7, 2001 12:38 a.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle and Ken Schuessler confirms that Ms. Egger was present at the November 6, 2001 meeting. Her role at that meeting is central to the issues before the court (this document, however, implies the author was Burzlaff not Gangle, as is represented in the text). The text of this e-mail does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). Moreover, if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2260 | April 26-27, 2002 e-mail string.<br><br>The April 26, 2002 4:09 p.m. e-mail from Gena Cadieux to Gary Latham re: "questions, finally." This e-mail arguably convey legal advice regarding Chevron's comments on the Preliminary IPE Decision and is subject to the attorney-client privilege.<br><br>* * *<br><br>The April 27, 2002 7:13 a.m. e-mail from Gary Latham to Gena Cadieux in response, copied to Arnold Smits does not request nor convey legal advice, as it re-states the 4 cases set forth by the IPE re: "depletion scenarios for the 26R reservoir" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2261 | April 27, 2002 10:04 a.m. e-mail from Gary Latham to Gena Cadieux copied to Arnold Smits re: "26R abandonment |

pressure." This document does not request nor convey legal advice and is subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). In addition, this document is relevant to Chevron's causation theory. *See* 6/15/07 TR at 10. Moreover, if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2265 May 1, 2002 e-mail string. The redacted text of the first four paragraphs of the May 1, 2002 12:54 p.m. e-mail from Alan Burzlaff to Butch Gangle copied to Kevin Beacon and Ken Schuessler re: "SOZ Equity Interim Deliverable Process" does not request nor convey legal advice, as it reports on an April 30, 2002 meeting with the IPE and Chevron and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The text "1. Any future . . . May 31st (simulation), respectively" arguably could be construed to request legal advice via the fact this was subsequently forwarded by Butch Gangle to Mary Egger and Greg Thorpe with a request for advice.

* * *

The redacted text of the May 1, 2002 10:58 a.m. e-mail from Butch Gangle to Mary Egger, Greg Thorpe copied to Alan Burzlaff and Ken Schuessler re: "SOZ Equity Interim Deliverable Process" does not request nor convey legal advice as it discussed a April 30, 2002 meeting with the IPE and Chevron. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 2266 | May 8, 2002 e-mail string. The May 1, 2002 8:32 a.m. e-mail from Gena Cadieux to Gary Latham copied to Arnold Smits re: "aquifer encroachment" arguably could be construed to convey legal advice and is subject to the attorney-client privilege.<br><br>The May 8, 2002 1:15 p.m. response from Gary Latham to Gena Cadieux and Arnold Smits. The first and second paragraphs forward an excerpt from the NSAI "Special Report" and is not subject to any privilege, except for text "that we . . . far," that arguably could be construed to request legal advice and is subject to the attorney-client privilege. The third paragraph also arguably requests legal advice and is subject to the attorney-client privilege. |
| 2267 | May 8, 2002 e-mail string. The May 8, 2002 8:43 a.m. e-mail from Gena Cadieux to Gary Latham re: "horizontal well case" arguably conveys legal advice and is subject to the attorney-client privilege.<br><br>The May 8, 2002 3:29 p.m. reply e-mail from Gary Latham to Gena Cadieux copied to Arnold Smits does not request nor convey legal advice and is not subject to the attorney-client privilege as it summarizes Chevron's comments on the NSAI final recommendation. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2319 | The redacted text of the August 27, 2002 1:31 p.m. e-mail from Butch Gangle to Mary Egger re: "Heads Up" does not request nor convey legal advice, as it discusses Burzlaff's report on the IPE's preliminary USOZ simulation model for the period 1919-1997 and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field |

equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2323 The redacted text of the October 3, 2002 5:01 p.m. e-mail from Gary Latham to Mike Smith copied to Mary Egger, Louis Capitanio, Arnold Smits, and Gena Cadieux re: "Provisional Recommendation on Equity In Elk Hills Shallow Oil Zone" does not request nor convey legal advice, as it summarizes the IPE decision announced at a public meeting on October 1, 2002 and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). This document, however, is relevant to the Government's causation theory. *See* 6/15/07 TR at 10.

Moreover, If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2327 October 3, 2002 e-mail string. The redacted text of the October 3, 2002 7:34 a.m. e-mail from Butch Gangle to Mary Egger copied to Alan Burzlaff, Ken Schuessler re: "Somewhat Good News" does not request nor convey legal advice, as it summarizes an October 1, 2002 public meeting of the NSAI at which the NSAI announced a provisional recommendation and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). This document is also relevant to the Government's causation theory. *See* 6/15/07 TR at 10.

Moreover, if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2340 November 13, 2002 e-mail string. The redacted text of the November 13, 2002 10:26 a.m. e-mail from Gary Latham to Mary Egger copied to Arnold Smits re: "Effective Date for Purposes of determining financial adjustments between Chevron

| | |
|---|---|
| | Texaco and DOE" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>The redacted text of the November 13, 2002 10:36 a.m. reply from Mary Egger arguably could be construed to convey legal advice and is subject to the attorney-client privilege. |
| 2341 | Same ruling as 2340 |
| 2351 | November 18, 2002 e-mail string. The redacted text of the November 18, 2002 4:38 p.m. e-mail from Mary Egger to Mike Smith and Gary Latham coped to Lee Otis and Eric Fygi re: "Chevron challenge to final ASFE Stevens Zone" does not request nor convey legal advice, as it reports on Chevron's notice of appeal and schedule and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>* * *<br><br>The redacted text of the November 18, 2002 6:02 p.m. e-mail from Gary Latham to Mary Egger does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 2352 | Same ruling as 2351 |
| 2356 | Same ruling as 2351 (Note that the first paragraph was produced here.). |
| 2391 | The redacted text of the January 13, 2003 e-mail from Butch Gangle to Alan Burzlaff copied to Mary Egger re: "Petrophysics Question" arguably could be construed to request legal advice and is not subject to the attorney-client privilege. |

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 2392 | January 13, 2003 e-mail memo from Gary Latham to Mary Egger, Isaiah Smith, Beth Kelly, Butch Gangle, Louis Capitanio re: "FOAI [sic] Request from Akin et al." does not request or convey legal advice, but reflects Mr. Latham's impressions of the scope of Chevron's FOIA request.<br><br>The attached January 9, 2003 memo marked "Privileged and Confidential" arguably could be construed to request legal advice. The document references the existence of a "Secret Report" not produced to the court. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this memo. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). |
| 2398 | Same ruling as 1905. |
| 2711 | May 28, 2003 e-mail string. The redacted text of the May 28, 2003 5:05 a.m. e-mail from Butch Gangle to Mary Egger and Alan Burzlaff re: "SOZ Comments Due Tomorrow" does not request nor convey legal advice as it discusses scheduling matters re: "NSAI SOZ Provisional Recommendations" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>The deleted text of the May 28, 2003 10:37 a.m. e-mail from Alan Burzlaff to Butch Gangle re: "SOZ Comments Due Tomorrow" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2994 The redacted text of the July 21, 1998 9:51 a.m. e-mail (CBG0090110-11) from Wayne Kauffman to Mary Egger copied to Butch Gangle, Jim Murphy, Greg Thorpe, and Jay Williams re: "CUSA Proposed Communications Protocol draft" could be construed to request legal advice and is subject to the attorney-client privilege. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

The July 21, 1998 9:57 a.m. message flag and status are not privileged.

3201 The redacted text of the May 6, 1996 6:04 p.m. e-mail (CME01300840) from Ernest Hunter to Jay Willis, Wayne Kauffman, Mary Egger, and Gary Latham does not request legal advice, but for the text "Mary will get . . . me." Except for the noted text, this document is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

CMEE01600838-39 is a separate document created May 7, 1996 by Navy Petroleum Reserves called "Discussion Paper for Divcat . . . nt-Related Owner Issues Meeting with Chevron." The meeting was to be held at DC DOE HQ on May 10, 1996 with the following attendees: for DOE: Cpt. Hunter; Mary Egger; Gary Latham; Wayne Kauffman; Alan Burzlaff; and for Chevron: Mike Stay; Cynthia Giumarra; Jim Brady; Norm Stone; and possibly Jack Smith. This document lists 16 "Assumptions for the Equity Finalization Process Team" and 13 "Guiding Principles for Process." This document was re-faxed from SI International on May 3, 2004, together with the May 6, 1996 e-mail discussed above to unknown recipients, since the fax cover sheet was not enclosed. The document does not request

| | |
|---|---|
| | nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). <br><br> If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 3339 | November 15, 2004 3:36 p.m. e-mail from Butch Gangle to Gena Cadieux copied to Alan Burzlaff, Greg Thorpe re: "Stevens CF Update." This e-mail does not request nor convey legal advice, as it responds to a technical question from Ms. Cadieux and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). <br><br> If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The document is also relevant to the Government's causation theory. *See* 6/15/07 TR at 10. |
| 3423 | May 11, 2005 note to NSAI allegedly authored by Ms. Egger and sent to Gary Latham. The log description does not match this document as it appears to be been prepared for the NSAI. The document does not request nor convey legal advice and is not subject to the attorney client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). <br><br> If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 3715 | February 22, 2006 4:04 p.m. e-mail from Gena Cadieux to Arnold Smits, Gary Latham copied to Mary Egger re: "Building |

| | |
|---|---|
| | blocks for the decision." This document arguably could be construed to convey legal advice and is subject to the attorney-client privilege. |
| 3767 | February 22, 2006-March 10, 2006 e-mail string.<br><br>The February 22, 2006 4:04 p.m. e-mail. Same ruling as 3715.<br><br>The February 23, 2006 3:42 p.m. e-mail from Arnold Smits to Gena Cadieux copied to Gary Latham re: "Building blocks for the decision" arguably could be construed to request legal advice is subject to the attorney-client privilege.<br><br>The March 10, 2006 3:51 p.m. and March 10, 2006 4:26 p.m. e-mails do not request nor convey legal advice and are not subject to the attorney-client privilege. The text, however, of all of the above are irrelevant to the issues in this case. |
| 3779 | March 10-13, 2006 e-mail string.<br><br>The March 10, 2006 9:23 a.m. e-mail from Mary Egger to Gary Latham, Arnold Smits, Ben Lardizabal, Beth Kelly, Paul Michael re: "Telecom with NSAI," with legend "Attorney-Client Communications/Attorney Work Product Privileged and Confidential." This document arguably could be construed to convey legal advice regarding the expiration of the IPE contract and concerns about suit from Chevron. The document is relevant, however, in that Ms. Egger characterizes Gary Latham as the "DOE HQ Team Leader" (CDE00706987) and that sentence should be produced.<br><br>* * *<br><br>The March 10, 2006 e-mail from Gary Latham to Mary Egger, Arnold Smits, Ben Lardizabal, copied to Beth Kelly, Paul Michael re: "Telecom with NSAI" does not request nor convey legal advice and is not subject to the attorney-client privilege.<br><br>* * *<br><br>The March 13, 2006 8:17 a.m. e-mail reply from Mary Egger to Gary Latham, Arnold Smits, Ben Lardizabal, Beth Kelly, Paul Michael re: "Telecom with NSAI" does not request nor convey |

| | |
|---|---|
| | legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| | * * * |
| | The March 13, 2006 9:19 am reply from Gary Latham to Mary Egger copied to Arnold Smits does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| | If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 3820 | "Draft-3/26/06 (GVL) "III A. Gaps in the Data 3/26/06)." On the face of this document, it does not request nor convey legal advice. The log, however, represents that the document contains "[d]raft comments to *a* DOE attorney . . . reflecting confidential attorney client communication[.]" (emphasis added). Therefore, this document arguably could be construed to request or convey legal advice and is subject to the attorney-client privilege. |
| 4347 | October 17, 2006 "Draft DOE Equity Finalization Team Comments On Accuracy of OHA Conversion Factor Calculation Case No. TEA-0001," prepared by "DOE EFT and counsel." This document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4348 | October 17, 2006 Draft.002 of document 4347. |
| 4349 | October 17, 2006 Draft.002 of document 4347, with red-line edits, which the log alleges were made by unnamed members of the "EFT staff." This document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. |

| | |
|---|---|
| | Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4350 | October 17, 2006 "Draft DOE Equity Finalization Team [Technical] Comments On Accuracy of OHA Conversion Factor Calculation Case No. TEA-0001." Same ruling as 4347. |
| 4354 | Undated "DOE Written Rebuttal of CUSA Report and Presentation on the Shallow Oil Zone Detailed Outline," with staff assignments designated. On its face, this document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4357 | The redacted text is of a draft October 17, 2006 letter to Richard Krenek (IPE) from Butch Gamble copied to Norm Stone, Gary Latham, Alan Burzlaff and blind-copied to Mary Egger and Greg Thorpe does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 4361 | January 22, 1999 "DOE Technical Response to Chevron Technical Report on Capture Methodology," with red-line edits authored by "DOE EFT (Gangle et al.)." This document does not request nor convey legal advice and is not subject to the attorney-client privilege. |
| 4382 | Same ruling as 1549. |
| 4384 | The redacted text of the October 17, 2006 fax cover sheet from Butch Gangle to "DOE Equity Team" copied to Mary Egger, Greg Thorpe and Alan Burzlaff re: "Carneros MER (1/12/93)" is identical to the fax cover sheet in 1556, except for the date. This document does not request nor convey legal advice as it forwards a Chevron MER response dated 1/12/93 and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, |

| | |
|---|---|
| | 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 4385 | The redacted text of a October 17, 2006 fax cover sheet. This document is the same as the fax cover sheet in 14. The fax cover sheet from Butch Gangle to the "DOE Equity Team," re: "SOZ Conversion Research," copied to Mary Egger, Greg Thorpe and Alan Burzlaff, does not request not convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 4403 | The redacted text of a October 17, 2006 memo from Butch Gangle to "DOE SOZ Equity Legal Team" re: "Inclusion under UPC Sec. 15(b) vs. A&S agreement Sec. 4(d) Part II" does not request not convey legal advice, but forwards old correspondence from the Acting Secretary of the Navy to the U.S. Attorney General, and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 4636 | Draft portion of DOE EFT document re. "4.16 USOZ Reserves." On its face, this document does not request nor convey legal advice. The log represents this document as being prepared "for review by counsel." Therefore, this document arguably could be |

| | |
|---|---|
| | construed to request or convey legal advice and is subject to the attorney-client privilege. |
| 4651 | Draft partial DOE "Response to [NSAI] Provisional Recommendation of Equity Participation For the Stevens Zone,"with edits. This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4652 | Draft (different than 4651) DOE "Response to [NSAI] Provisional Recommendation of Equity Participation For the Stevens Zone," with edits. This undated document alleged to have been authored by Butch Gangle on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4655 | Draft portion of DOE EFT document re: "4.1 Issue 1: High Abandonment Pressures." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4656 | Draft portion of DOE EFT document re: "4.11 Issue 11: Water Saturations form Oil Base Core." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4657 | Draft portion of DOE EFT document re. "4.12 Issue 12: Sand Counting Using Mud Logs." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client |

| | |
|---|---|
| | privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4658 | Draft portion of DOE EFT document re. "4.2 Issue 2: Oil Migration, 26R Sand to 31S C/D Shales." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4659 | Draft portion of DOE EFT document re. "4.7 Issue 7: 26 R Net Sand Thickness." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4660 | Draft portion of DOE EFT document re: "4.8 Issue 8: W31S Reserves." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4661 | This document is undated with unknown author re: "DOE EFT views on 'Protocol'" does not request nor convey legal advice on its face. It is represented, however, as being prepared for review by Mary Egger, an attorney. Therefore, this document arguably could be construed to request or convey legal advice and is subject to the attorney-client privilege. |
| 4676 | Draft document, "31S Shales Pool Abandonment Pressure," with edits. This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to neither the attorney-client privilege. |
| 4681 | "Comments on CUSA's Rebuttal to NSAI's Provisional Stevens Equity Report Material Balance Water Influx." This undated |

document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

| | |
|---|---|
| 4688 | Draft portion of DOE EFT document re: "4.9 Issue 9: T&N Sands Reserves." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4689 | Same ruling as 4651. |
| 4690 | Same ruling as 4652. |
| 4773 | Undated draft letter to Laurence Rosenberg, Jones Day from Jeffrey Jarrett, ASFE. This document, authored by Mr. Jarrett, in response to Mr. Rosenberg's July 14, 2006 letter, re: June 5, 2006 Gangle letter re: SOZ, does not request nor convey legal advice and is not subject to the attorney-client privilege. |
| 4826 | Undated document (but prepared after this case was filed) with the legend "Privileged and Confidential" and titled "Talking Points Call with Fred Sewell." This document allegedly was prepared by unidentified "DOE attorneys." If an *ex parte* contact, initiated by the ASFE, with the IPE violates the Equity Process Agreement, this document may evidence of the fact that such a contact may have occurred. If so, this document may also bear on the misconduct exception issue. At this juncture, the court believes the log information provides Plaintiff with the ability to explore this topic in deposition with any of the ASFE's who have served since this suit was filed. If an ASFE is identified who recalls that he/she initiated an *ex parte* telephone call with Fred Sewell, the court would like that witness's knowledge to be exhausted, before the court will rule on whether disclosure of document 4826, is required under the misconduct exception. |
| 5082 | May 29, 1998 memo from Alan Burzlaff, Ken Schuessler to Mary Egger re: "Proposed Joint [Technical] Instruction to NSAI," with hand edits made by Greg Thorpe. The memo arguably could be construed to request legal advice and is subject |

to the attorney-client privilege. The handwritten notes of Mr. Thorpe are subject to the attorney-client privilege.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**