# DEFENDANT'S APPENDIX

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A., INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 04-1365C |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Tuesday,
October 16, 2007

Live Tape

(The following transcript was transcribed from a digital recording provided by the U.S. Court of Federal Claims to Heritage Reporting Corporation on October 24, 2007.)

BEFORE: HONORABLE SUSAN G. BRADEN
Judge

APPEARANCES: (Via Telephone)

For the Plaintiff:

LARRY ROSENBERG, Esquire
LOUIS FISHER, Esquire
MICHAEL FREED, Esquire
Jones Day Reavis & Pogue
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(202) 879-3738

For the Defendant:

JOHN KOSLOSKE, Esquire
ANUJ VOHRA, Esquire
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
1100 L Street, N.W.
Washington, D.C. 20530

P R O C E E D I N G S

(3:59 p.m.)

THE CLERK: Good afternoon, Counsel. This is Joe Whitehead from Judge Braden's chambers. This will be digitally recorded, so if we could start by having you state your name and the party you represent. Thank you.

MR. ROSENBERG: It's Lawrence Rosenberg of Jones Day in Washington, D.C., for Plaintiff Chevron. With me are Louis Fisher and Michael Freed, also with Jones Day.

MR. KOSLOSKE: John Kosloske, Department of Justice, and with me is Anuj Vohra, also of the Department of Justice.

THE COURT: I just thought I would call -- it's Judge Braden -- because we received the government's motion relating to the two expert witnesses. Maybe it's my fault, but I thought I was clear the last time that I wasn't going to entertain any more motions until we can finish what I've got on my plate right now and the privileged documents.

So I didn't want anybody to be spending any additional time writing motions or answering them until we can get through that process.

I don't see any particular reason that we

just can't stay the response from the Plaintiffs. We are quite a ways from getting to the issue of the expert witnesses.

MR. ROSENBERG: Your Honor, it's Larry Rosenberg. That's our view of the world, and, in fact, I contacted Mr. Kosloske late last week asking if the government would simply agree to stay any briefing on this until we were a lot further down the road.

THE COURT: And?

MR. ROSENBERG: I never got a response.

THE COURT: I see. Okay.

MR. KOSLOSKE: Your Honor, John Kosloske.

THE COURT: Yes.

MR. KOSLOSKE: We think that the motion is timely as filed. There is no reason that the motion can't be briefed and ready for a decision. This is not a matter of something that would require the Court's decision in the immediate future, but it's simply a motion that we have filed and that can be briefed and ready for a decision when it's convenient for the Court to decide it.

THE COURT: Right. It was my inclination that it might be an effort to kind of cluss up the ability to finish what I've got on my plate right now,

and I'm not going to allow that to take place.

So I'm going to go ahead and stay it for a response until we finish dealing with the other documents, the other motions, that I have here on privilege. I'll return as improvidently filed anything else that the government decides to file. You've got another 15 motions up your sleeve.

I assume Plaintiff doesn't have anything, but if they do, I have one project on my plate right now I want to finish. I'll finish that, and then all of these motions can be brought forth in good order. So that's where I am.

MR. KOSLOSKE: Your Honor, John Kosloske. There is another matter that I think we need to discuss now, though --

THE COURT: Okay.

MR. KOSLOSKE: -- in terms of your ruling that you would not accept any additional motions.

Just recently, we discovered that, in the summary judgment papers that we filed, in one of the volumes of the appendices there are -- I think it's three or four tabs -- documents that contain some pages that are marked confidential, in accordance with a protective order that was entered by the Court earlier in the case.

We inadvertently did not file that appendix, or that part of the appendix, under seal, as required by the protective order, and we would like an opportunity to withdraw the volume of the appendix that contains the protected material and to refile it in a way that the protected material is filed separately in a sealed envelope.

MR. ROSENBERG: Your Honor, this is Larry Rosenberg. Chevron has no objection to the government's proposal to refile that piece of the appendix.

THE COURT: Okay. Why don't you send me something, some type of full order, that says what you want to have done? All right? This is a good example, basically, of -- there needs to be some order. We've got a big issue right now on these privileged documents, and that needs to be dealt with first, and you can file your summary judgment and your motions in limine and whatever else we want to do, but, you know, this is a good example of why we need to do one thing at a time.

Now, just so you know, I have, in the queue, I have three other opinions that are coming out this month that have precedence, and then I will turn -- I haven't even begun to look at the briefs yet from the

parties. So I'll begin to work with those next month.

I'm going to be out of the country for one week of the month, and I'm going to be in California at a hearing, another later in the month. So it's unlikely I'm not going to get to a decision issued probably until December, would be my best guess, but it will still be ahead of schedule.

That's my order of priorities. I have three other opinions that are due this month. I did one already, so that will be four. Then I'll turn to <u>Chevron</u>. Okay?

MR. ROSENBERG: All right, Your Honor.

THE COURT: All right. Thank you very much.

ALL: Thank you.

(Whereupon, at 4:03 p.m., the hearing in the above-entitled matter was concluded.)

//

//

//

//

//

//

//

//

//

U.S. Department of Justice

Civil Division

JKosloske
DJ No. 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

Telephone: (202) 307-1438
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

By First Class Mail

June 20, 2007

Lawrence D. Rosenberg, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Re: Chevron U.S.A. Inc. v. United States,
No. 04-1365C (Fed. Cl.)

Dear Mr. Rosenberg:

FILE

The court's June 14, 2007 Order denied "Defendant's Motion for Clarification of the Scope of Bifurcated Proceedings" dated June 12, 2007, "[f]or the reasons discussed in the June 14, 2007 telephone discovery conference[.]" During the telephone conference, the court made clear that any issue of the influence or effect of an alleged improper *ex parte* communication upon a recommendation of the Independent Petroleum Engineer (IPE) or a decision of the DOE Assistant Secretary of Fossil Energy (ASFE) is reserved for the second or damages phase of this litigation.

Therefore, the discovery sought by Interrogatories Nos. 9-18 contained in "Defendant's First Set of Interrogatories" dated September 8, 2006, which request information for any *ex parte* communications plaintiff contends "influenced" recommendations of the IPE or decisions of the ASFE, should be part of the damages phase in this case. Accordingly, we withdraw Interrogatories Nos. 9-18, reserving our right to pursue that discovery in the damages phase of this case, and substitute for Interrogatories Nos. 9-18, the enclosed "Defendant's Fourth Set of Interrogatories" and "Defendant's Third Request for Production of Documents."

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

Enclosures

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S FOURTH SET OF INTERROGATORIES

Pursuant to RCFC 26 and 33, defendant propounds the following interrogatories to plaintiff, Chevron U.S.A. Inc. ("Chevron"). In responding to these interrogatories, defendant requests that Chevron produce all information and documents in its possession, custody or control, or otherwise available to its employees, agents, consultants, attorneys, and accountants, whether past or present, or documents that are otherwise subject to their custody or control. If Chevron cannot answer any or all of the following interrogatories after exercising due diligence to secure the information needed to do so, we request that Chevron so state and answer the interrogatories to the extent possible, specifying the basis for Chevron's inability to answer the remainder and stating whatever information or knowledge Chevron has concerning the unanswered portion.

DEFINITIONS AND INSTRUCTIONS

As used herein, the following terms or abbreviations have the following meanings:

1. "And" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other whenever such construction will serve to bring within the scope of these requests any items that otherwise would not be brought within their scope.

2. "Chevron" means Chevron U.S.A. Inc., including, without limitation, any division, group, affiliate, or other entity owned or controlled by Chevron U.S.A. Inc., all present and past officers, directors, employees, agents, or representatives of Chevron U.S.A. Inc., and all predecessor entities of Chevron U.S.A. Inc.

3. "Communication" means the expression of any statement, question, command, idea, knowledge, information, or other matter, whether by speech, writing, sign, or otherwise.

4. "Complaint" means the "Complaint" filed by Chevron on August 20, 2004, in the above-captioned action.

5. "Computer" includes microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers, minicomputers, and mainframe computers.

6. "Date" means the exact day, month, and year, if ascertainable, and, if not, the best approximation.

7. "Decoupling Agreement" means the ""Agreement Regarding Fixing of Equity Interest at Naval Petroleum Reserve No. 1 for Purposes of Sale" dated May 19, 1997 between Chevron and the Department of Energy.

8. "Document" or "documents" means any written, recorded (by any means), or graphic matter, however produced or reproduced, in the possession, custody, or control of Chevron or Chevron's counsel, or known to Chevron or Chevron's counsel, whether or not claimed to be privileged or confidential or personal, including, but not limited to, any "document," "tangible thing," or "object," as those terms are used in RCFC 34, and any "writing," "recording," "photograph," "original, or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules of Evidence. "Document" or "documents" includes, but is not limited to: letters; memoranda; reports; agreements; working papers; preliminary, intermediate, and final drafts; communications (including intra- and inter-office communications, inter-company communications); correspondence; e-mail; reports of telephone or other conversations; electronic data, as defined below; computer runs; view-foils; compilations; summaries of records of personal conversations; diaries; appointment books; desk calendars; financial calculations; forecasts; statistical statements; graphs; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigation opinions or reports of consultants; opinions of counsel; reports of or summaries of either negotiations by Chevron or preparation of such; circulars; books; instruments; accounts; tapes and all other material of any tangible medium of expression and original or preliminary notes. A true copy will suffice provided that Chevron waives any objection to authenticity and will have the original available for inspection upon the request of defendant at the time of the preparation of the pretrial order and at the time of trial. "Document" or "documents" also include copies of documents that

are not identical duplicates of the originals and copies of documents the originals of which are not in the possession, custody, or control of Chevron.

9. "DOE" means the United States Department of Energy, including any and all present and former employees, representatives, officers, or agents of the Department of Energy.

10. "E-mail" means any computer-based system of electronic mail.

11. "Electronic data" means data of any kind or description, inscribed by computer, mechanical, facsimile, electronic, magnetic, digital, or other means, including, but not limited to, any and all items stored on e-mail; computer memories; hard disks; floppy disks; CD-ROMS, removable media such as Zip, Jaz, Bernoulli Box drives and their equivalent; magnetic tape of all types; microfiche; punched cards; punched tape, or data on or in any other vehicle for digital storage or transmittal; computer programs (whether private or commercial); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, any and all ASCII and EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether this electronic data exists in an active file, deleted file, or file fragment. The term "electronic data" also includes the file, folder tabs, containers and labels appended to or associated with any physical storage device for such data.

12. "Equity Process Agreement" means the "Agreement Regarding Equity Redetermination Process" dated May 19, 1997 between Chevron and the Department of Energy.

13. "Identification" or "identify" in reference to:

(a) a <u>natural individual</u> means to state (a) his or her full name, (b) his or her business and residential addresses, (c) his or her business and residential telephone numbers, and, (d) if pres-

ently employed by Chevron, his or her present position(s) with Chevron. (If the individual's current business and residential addresses and telephone numbers are not known, provide his or her last known business and residential addresses and last known business and residential telephone numbers.);

(b) a person other than a natural individual means to state, to the extent known, its full name, address, and telephone number (If the person's current business and residential address and telephone number is not known, provide the last known address and telephone number.);

(c) a document means to state, to the extent known, the author or originator, the addressee or addressees (if any), the date indicated on the documents as being the date thereof or the date (as exactly as possible) upon which the document was written or executed if no date is shown upon it, a description of the type of document (for example, letter, handwritten notes, etc.), the number of pages, the title (if any), and identification number, the present location and custodian of the original thereof, or, if unknown, the present custodian of any copy thereof and the last known address of each such custodian, and a summary of the contents thereof. We request that Chevron also state whether it has possession or control of the original or a copy of the document, and state the manner and date of disposition of any document that was, but no longer is, in its possession or subject to its control.

(d) a telephone conversation means to identify the caller and the recipient, and to identify any other person who was a party to the conversation, and to state, to the extent known, the location of each at the time the call was made, the date and time of the conversation, and the author or maker and addressee of each statement, question, or remark made during the telephone conversation, and the substance of each such statement, question, or remark; and

(e) a communication means to state the nature of the communication (for example, letter, telephone conversation, private meeting, advertisement) and, to the extent that the communication was recorded in writing or stored electronically, to identify the pertinent document or documents and, to the extent that the communication was not written, to identify the person or persons involved in the communication, and to state, to the extent known, the place, date, and method of communication, and the author or maker and addressee of each statement, question, or remark, and the substance of each such statement, question, or remark.

14. "Person" and "individual" include a corporation, partnership, other business association or entity, any natural person, and any domestic or foreign governmental body, commission, board, agency, branch, department, or component or element thereof.

15. "Relate to," "relates to," or "relating to" means comprising, mentioning, analyzing, discussing, summarizing, describing, referring to, containing, depicting, embodying, evidencing, constituting, concerning, reporting, or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

16. "Representative" means officers, directors, employees, attorneys, consultants, and any other person speaking upon behalf of Chevron.

17. "Testimonial evidence" means all evidence from individuals that is not contained in documents.

18. The "1996 Protocol and Supplements" means Administrative Order No. 96-01 (July 8, 1996); Administrative Order No. 96-01, Supplement 1 (October 11, 1996); and Administrative Order No. 96-01, Supplement 2 (January 21, 1997).

INTERROGATORY NO. 26:

Identify each communication that Chevron contends breached the Equity Process Agreement.

RESPONSE:

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

JUNE 20, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 20th day of JUNE, 2007, I caused to be sent by United States mail (postage prepaid) "DEFENDANT'S FOURTH SET OF INTERROGATORIES" addressed as follows:

LAWRENCE D. ROSENBERG, ESQ.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., Plaintiff, | ) | No. 04-1365C |
| v. | ) | (Judge Braden) |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Pursuant to RCFC 26 and 34, defendant requests that Chevron U.S.A. Inc. ("Chevron") produce for inspection and/or copying the documents described below. In responding to the document production request, we request that Chevron furnish all information available to it, including information in the possession of the employees, agents, accountants, attorneys, and investigators for the attorneys of Chevron, not just information within the personal knowledge of Chevron.

DEFINITIONS AND INSTRUCTIONS

A. Definitions

As used herein, the following terms or abbreviations have the following meanings:

1. "And" and "or" shall be construed both conjunctively and disjunctively, and each shall include the other whenever such construction will serve to bring within the scope of these requests any items that otherwise would not be brought within their scope.

2. "ASFE" means the DOE Assistant Secretary for Fossil Energy or the DOE Principal Deputy Assistant Secretary for Fossil Energy.

3. "Chevron" means Chevron U.S.A. Inc., including, without limitation, any division, group, affiliate, or other entity owned or controlled by Chevron U.S.A. Inc., all present and past officers, directors, employees, agents, or representatives of Chevron U.S.A. Inc., and all predecessor entities of Chevron U.S.A. Inc.

4. "Communication" means the expression of any statement, question, command, idea, knowledge, information, or other matter, whether by speech, writing, sign, or otherwise.

5. "Complaint" means the "Complaint" filed by Chevron on August 20, 2004, in the above-captioned action.

6. "Computer" includes microcomputers (also known as personal computers), laptop computers, portable computers, notebook computers, palmtop computers, minicomputers, and mainframe computers.

7. "Date" means the exact day, month, and year, if ascertainable, and, if not, the best approximation.

8. "Decoupling Agreement" means the ""Agreement Regarding Fixing of Equity Interest at Naval Petroleum Reserve No. 1 for Purposes of Sale" dated May 19, 1997 between Chevron and the DOE.

9. "Document" or "documents" means any written, recorded (by any means), or graphic matter, however produced or reproduced, in the possession, custody, or control of plaintiffs or plaintiffs' counsel, or known to plaintiffs or plaintiffs' counsel, whether or not claimed to be privileged or confidential or personal, including, but not limited to, any "document," "tangible thing," or "object," as those terms are used in RCFC 34, and any "writing," "recording," "photograph," "original, or "duplicate," as those terms are defined in Rule 1001 of the Federal Rules

of Evidence. "Document" or "documents" includes, but is not limited to: letters; memoranda; reports; agreements; working papers; preliminary, intermediate, and final drafts; communications (including intra- and inter-office communications, inter-company communications); correspondence; e-mail; reports of telephone or other conversations; electronic data, as defined below; computer runs; view-foils; compilations; summaries of records of personal conversations; diaries; appointment books; desk calendars; financial calculations; forecasts; statistical statements; graphs; charts; plans; drawings; minutes or records of meetings; minutes or records of conferences; expressions or statements of policy; lists of persons attending meetings or conferences; reports of or summaries of interviews; reports of or summaries of investigation opinions or reports of consultants; opinions of counsel; reports of or summaries of either negotiations by plaintiffs or preparation of such; circulars; books; instruments; accounts; tapes and all other material of any tangible medium of expression and original or preliminary notes. A true copy will suffice so long as you waive any objection to authenticity and will have the original available for inspection upon request of defendant at the time of the preparation of the pretrial order and at the time of trial. "Document" or "documents" also include copies of documents that are not identical duplicates of the originals and copies of documents the originals of which are not in the possession, custody, or control of plaintiffs.

10. "DOE" means the United States Department of Energy, including any and all present and former employees, representatives, officers, or agents of the Department of Energy.

11. "E-mail" means any computer-based system of electronic mail.

12. "Electronic data" means data of any kind or description, inscribed by computer, mechanical, facsimile, electronic, magnetic, digital, or other means, including, but not limited

to, any and all items stored on e-mail; computer memories; hard disks; floppy disks; CD-ROMS, removable media such as Zip, Jaz, Bernoulli Box drives and their equivalent; magnetic tape of all types; microfiche; punched cards; punched tape, or data on or in any other vehicle for digital storage or transmittal; computer programs (whether private or commercial); programming notes or instructions; output resulting from the use of any software program, including word processing documents, spreadsheets, database files, charts, graphs, outlines, electronic mail, any and all ASCII and EBCDIC files, and any miscellaneous files or file fragments, regardless of the media on which they reside and regardless of whether this electronic data exists in an active file, deleted file, or file fragment. The term "electronic data" also includes the file, folder tabs, containers and labels appended to or associated with any physical storage device for such data.

13. "Elk Hills equity finalization process" means all actions taken by Chevron or DOE pursuant to or subsequent to passage of the 1996 Legislation (defined below), in an effort to resolve the dispute between the parties as to their respective ownership rights in the commercially productive hydrocarbons found in the Elk Hills Reserve, including but not limited to proceedings before the AFSE regarding the Dry Gas Zone, the Carneros Zone, the Stevens Zone, and the Shallow Oil Zone.

14. "Equity Process Agreement" means the "Agreement Regarding Equity Redetermination Process" dated May 19, 1997 between Chevron and DOE.

15. "IPE" means any and all individuals and entities, including without limitation all employees, officials, attorneys, and representatives of such entities, that are serving or have ever served as the Independent Petroleum Engineer described in the 1996 Legislation, the 1996 Protocol and Supplements, and the Equity Process Agreement.

16. "NSAI" means Netherland, Sewell & Associates, Inc., including, without limitation, any division, group, affiliate, or other entity owned or controlled by Netherland, Sewell & Associates, Inc., and all present and past officers, directors, employees, agents, or representatives of Netherland, Sewell & Associates, Inc.

17. "Person" and "individual" include a corporation, partnership, other business association or entity, any natural person, and any domestic or foreign governmental body, commission, board, agency, branch, department, or component or element thereof.

18. "Relate to," "relates to," or "relating to" means comprising, mentioning, analyzing, discussing, summarizing, describing, referring to, containing, depicting, embodying, evidencing, constituting, concerning, reporting, or involving an act, occurrence, event, transaction, fact, thing, or course of dealing.

19. "1996 Legislation" means the National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106, § 3412, 110 Stat. 631 (1996) (10 U.S.C. § 7420).

20. "1996 Protocol and Supplements" means Administrative Order No. 96-01 (July 8, 1996); Administrative Order No. 96-01, Supplement 1 (October 11, 1996); and Administrative Order No. 96-01, Supplement 2 (January 21, 1997).

B. Instructions

1. Defendant requests that Chevron produce all information and documents in its possession, custody or control, or otherwise available to its employees, agents, consultants, attorneys, and accountants, whether past or present, or documents that are otherwise subject to its custody or control.

2. Defendant requests that Chevron produce all documents that respond, in whole or part, to any portion of the production requests in their entirety, including any and all attachments and enclosures.

3. Defendant requests that Chevron produce all drafts, marked-up versions, preliminary versions, or other nonidentical copies of documents requested.

4. If any document is withheld by Chevron under a claim of privilege, for each such document, defendant requests that Chevron provide the following information:

(a) Principals. The name and title of the author(s), sender(s), addressee(s), and recipient(s) of the document.

(b) Date. The date of the document.

(c) Publications. The date and title of each person to whom the contents of the document has been disclosed by copy, exhibition, reading, summarization, or otherwise.

(d) Descriptions. A description of the nature and subject matter of the document.

(e) Privilege. A statement of the privilege(s) and the basis or bases upon which the privilege(s) is or are asserted.

5. If any document is withheld by Chevron under a claim that only part of a document is exempt from production by reason of a privilege or privileges, defendant requests that Chevron produce the part(s) of the document that it does not claim is or are exempt from production by reason of a privilege or privileges.

6. If Chevron cannot produce a requested document, defendant requests that Chevron identify the document as accurately as it can and state the reason(s) that it is unable to produce the document.

7. This discovery request is continuing in nature. Therefore, defendant requests that Chevron provide by way of supplemental responses and documents whatever information may hereafter be obtained by it, or by anyone upon its behalf, that will supplement this request.

DEFENDANT'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS

Defendant requests that Chevron produce any written communication(s) identified by Chevron in response to Interrogatory No. 26 contained in "Defendant's Fourth Set of Interrogatories."

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-0282
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

JUNE 20, 2007

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on this 20th day of JUNE, 2007, I caused to be sent by United States mail (postage prepaid) "DEFENDANT'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS" addressed as follows:

LAWRENCE D. ROSENBERG, ESQ.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

**U.S. Department of Justice**

Civil Division

Telephone: (202) 307-1438
Telecopy: (202) 514-8624

JKosloske
DJ No. 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

*Washington, D.C. 20530*

By Telecopy and First Class Mail

August 29, 2007

Lawrence D. Rosenberg, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001
(Telecopy: (202) 626-1700)

Re: Chevron U.S.A. Inc. v. United States, No. 04-1365C (Fed. Cl.)

Dear Mr. Rosenberg:

FILE

This is in regard to "Defendant's Fourth Set of Interrogatories" dated June 20, 2007, and "Defendant's Third Request for Production of Documents" dated June 20, 2007, which request that plaintiff identify the communication(s) that it contends breached the Equity Process Agreement and produce copies of any such communication(s) that are written. Under the court's rules of procedure, plaintiff was allowed 30 days within which to respond to these discovery requests. See RCFC 33(b)(3); 34(b). To date, we have not received from plaintiff either responses to the discovery requests or a proposed written stipulation or application to the court for an enlargement of time within which to respond to these discovery requests.

It is important for the Government's trial preparation that we receive timely responses to these discovery requests. Granted, because of the pending privileged document dispute, plaintiff may not be able to provide complete responses to these discovery requests at this time. But that does not and should not relieve plaintiff of the duty to respond now to the discovery requests to the extent that it can based upon the information that plaintiff has in hand, including the many thousands of documents already produced by the Government for plaintiff in this matter.

Please advise us by September 5, 2007, of a specific date by which plaintiff proposes to respond to these discovery requests.

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

JONES DAY

51 LOUISIANA AVENUE, N.W. • WASHINGTON, D.C. 20001-2113
TELEPHONE: 202-879-3939 • FACSIMILE: 202-626-1700

Direct Number: (202) 879-7622
ldrosenberg@jonesday.com

September 6, 2007

VIA ELECTRONIC AND FIRST-CLASS MAIL

John E. Kosloske, Esq.
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005

Re: *Chevron U.S.A. Inc. v. United States*, No. 1:04cv1365 (Ct. Fed. Cl.)

Dear John:

I write to confirm our conversation late last week about several outstanding discovery issues:

1. I wish to confirm that Chevron will make available for deposition Gary Luquette on November 6, 2007 at 10:00 a.m. in Houston, TX, and Gary Henderson, on November 7, 2007 at 10:00 a.m., also in Houston, TX. I am still conferring with my client to determine the best location for those depositions but anticipate that it would make the most sense to do them at Chevron's facility in downtown Houston.

2. I wish to confirm that we have carefully examined the documents located by Fried, Frank that have some relationship to Elk Hills. It is plain from our inspection that the vast majority of those documents were already provided to Jones Day and have been thoroughly searched for any material that is responsive to the Government's discovery requests. The only materials contained in the Fried, Frank documents that may not have been provided previously to Jones Day consist exclusively of memoranda and notes between Fried, Frank attorneys about legal strategy and analysis regarding issues then pending before the Independent Legal Advisor or DOE's Office of Hearings and Appeals as well as print-outs of cases, some of which containing attorney notes. We do not believe that any of these additional materials are discoverable and wish to confirm that you will not require Chevron to produce a privilege log containing these materials. I also wish to reiterate that we have carefully searched all of Chevron's files and all documents provided to us by Fried, Frank and Akin Gump and have not been able to locate any drafts of the Equity Process Agreement or the Decoupling Agreement.

3. I enclose Chevron's objections and responses to Defendant's Fourth Set of Interrogatories and Third Request for Production of Documents.



ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG
HOUSTON • IRVINE • LONDON • LOS ANGELES • MADRID • MENLO PARK • MILAN • MUNICH • NEW DELHI • NEW YORK
PARIS • PITTSBURGH • SAN FRANCISCO • SHANGHAI • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

Please let me know if you have any questions or would like to discuss these issues further.

Sincerely,

Lawrence D. Rosenberg

Enclosures

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES**

Pursuant to Court of Federal Claims Rule 33, Plaintiff Chevron U.S.A. Inc. hereby submits the following objections and responses to Defendant's Fourth Set of Interrogatories. Plaintiff reserves the right to supplement, correct, or clarify its responses to these interrogatories as it continues to investigate and discover the facts in this case.

**INTERROGATORY NO. 26**

**Identify each communication that Chevron contends breached the Equity Process Agreement.**

**RESPONSE:**

Plaintiff objects to this interrogatory because it seeks a legal conclusion on the interpretation of a contract rather than a discoverable fact. *Corrales v. U.S.*, 56 Fed. Cl. 283, 287 (Fed. Cl. 2003) ("contract interpretation is a question of law, not of fact"); *Kendrick v. Sullivan*, 125 F.R.D. 1, 4 (D.D.C. 1989) ("Discovery as to legal arguments is impermissible."); *id.* at 3 ("Rule 33(b)'s language requires that the contentions or legal opinions of an interogatee must relate to, or be applied to, a *fact*."). In addition, Plaintiff objects to this interrogatory as premature because it seeks information that is the subject of ongoing and incomplete discovery

in this case. *See* Court of Federal Claims Rule 33(c) ("such an interrogatory need not be answered until after designated discovery has been completed or until a pretrial conference or other later time."); *In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, 333 (N.D. Cal. 1985) ("the [Advisory] Committee anticipated that courts normally would not order responses to contention interrogatories until late in the pretrial period"); *id.* at 336 ("there is considerable recent authority for the view that the wisest general policy is to defer propounding and answering contention interrogatories until near the end of the discovery period."). Such a request is "more appropriate after a substantial amount of discovery has been conducted." *Nestle Foods Corp. v. Aetna Casualty and Surety Co.*, 135 F.R.D. 101, 110-111 (D.N.J. 1990); *Fischer and Porter Co. v. Tolson*, 143 F.R.D. 93, 95 (E.D. Pa. 1992); *McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996).

Plaintiff also objects to this interrogatory because it seeks information that is already in the custody and control of Defendant. *See In re Convergent Technologies Securities Litigation*, 108 F.R.D. at 337-338 ("[I]n cases where defendants presumably have access to most of the evidence about their own behavior, it is not at all clear that forcing plaintiffs to answer these kinds of questions, early in the pretrial period, is sufficiently likely to be productive to justify the burden that responding can entail."); *id.* at 339 ("the Court will be especially vigilant in its evaluation of proffered justifications [for contention interrogatories] when a complaint is not facially infirm and when defendants appear to have control over or adequate access to much of the evidence relevant to their alleged misconduct."). Finally, Plaintiff objects to this interrogatory to the extent it seeks information that is protected by the attorney-client privilege, the work product doctrine, or is otherwise protected from disclosure under applicable law or any other evidentiary privileges or immunity from production.

Subject to and without waiving its objections, Plaintiff incorporates herein by reference the following discovery responses and briefs, which identify communications evidencing the government's breach of the Equity Process Agreement: Pl.'s Objs. and Resps. to Def.'s Interrogatories (Oct. 23, 2006), Interrog. Response Nos. 6, 7, 16, 17, 18; Chevron's Memorandum of Law in Support of Motion to Compel (March 15, 2007), Chevron's Status Report Regarding Disputed Documents (July 24, 2007); Motion of Chevron USA Inc. to Stay or Continue the OHA Appeal (Aug. 24, 2007).

Dated: September 6, 2007

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Counsel for Chevron U.S.A. Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2007, I caused a true and correct copy of the foregoing **PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S FOURTH SET OF INTERROGATORIES** to be served upon:

John E. Kosloske, Esq. **(By first class mail and email)**
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005
john.kosloske@usdoj.gov

Leslie Ohta **(By email)**
Trial Attorney
Commercial Litigation Branch
Civil Division,
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
leslie.ohta@usdoj.gov

Paul T. Michael **(By email)**
Of Counsel
Office of General Counsel
Department of Energy
Washington, D.C. 20585
paul.michael@hq.doe.gov

Lawrence Rosenberg

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

Pursuant to Court of Federal Claims Rule 34, Plaintiff Chevron U.S.A. Inc. hereby submits the following objections and responses to Defendant's Third Request for Production of Documents. Plaintiff reserves the right to supplement, correct, or clarify its responses to these requests as it continues to investigate and discover the facts in this case.

**DOCUMENT REQUEST:**

**Defendant requests that Chevron produce any written communication(s) identified by Chevron in response to Interrogatory No. 26 contained in "Defendant's Fourth Set of Interrogatories."**

**RESPONSE:**

Plaintiff objects to this document request as premature because it seeks information that is the subject of ongoing and incomplete discovery in this case. Plaintiff further objects to this request to the extent it seeks documents that are not in the custody and/or control of Plaintiff, but rather in the custody and/or control of Defendant. Plaintiff finally objects to the extent this request seeks documents that are protected by the attorney-client privilege, the work-product doctrine, or are otherwise protected from disclosure under applicable law or any other

evidentiary privileges or immunity from production. The inadvertent disclosure of any privileged information shall not signify any intent by Plaintiff to waive the rights to such privilege.

Subject to and without waiving its objections, Plaintiff responds that it already has produced all documents identified in its response to Interrogatory No. 26 to the extent such documents are in Chevron's possession.

Dated: September 6, 2007

Donald B. Ayer
Lawrence D. Rosenberg
Louis K. Fisher
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Counsel for Chevron U.S.A. Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2007, a true and correct copy of the foregoing **PLAINTIFF'S OBJECTIONS AND RESPONSES TO DEFENDANT'S THIRD REQUEST FOR PRODUCTION OF DOCUMENTS** was served upon:

John E. Kosloske, Esq. **(By first class mail and email)**
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 12052
Washington, DC 20005
john.kosloske@usdoj.gov

Leslie Ohta **(By email)**
Trial Attorney
Commercial Litigation Branch
Civil Division,
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
leslie.ohta@usdoj.gov

Paul T. Michael **(By email)**
Of Counsel
Office of General Counsel
Department of Energy
Washington, D.C. 20585
paul.michael@hq.doe.gov

Lawrence Rosenberg

U.S. Department of Justice

Civil Division

JKosloske
DJ No. 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

Telephone: (202) 307-1438
Telecopy: (202) 514-8624

*Washington, D.C. 20530*

By E-Mail and First Class Mail

October 29, 2007

Lawrence D. Rosenberg, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001

Re: Chevron U.S.A. Inc. v. United States,
No. 04-1365C (Fed. Cl.)

Dear Mr. Rosenberg:

I am writing in regard to our recent conversations regarding "Plaintiff's Objections and Responses to Defendant's Fourth Set of Interrogatories" and "Plaintiff's Objections and Responses to Defendant's Third Request for Production of Documents." In Interrogatory No. 26, we requested that plaintiff "[i]dentify each communication that Chevron contends breached the Equity Process Agreement" and, in the related production request, we requested that plaintiff "produce any written communication(s) identified by Chevron in response to Interrogatory No. 26[.]"

Plaintiff objected to Interrogatory No. 26 upon three grounds: (1) the interrogatory "seeks a legal conclusion on the interpretation of a contract rather than a discoverable fact;" (2) the interrogatory is "premature because it seeks information that is the subject of ongoing and incomplete discovery in this case;" and (3) the interrogatory "seeks information that is already in the custody and control of" the Government. Plaintiff's response further states that, "[s]ubject to and without waiving its objections, [p]laintiff incorporates herein by reference" certain enumerated "discovery responses and briefs" which "identify communications evidencing the government's breach of the Equity Process Agreement."[1]

The first and third grounds for plaintiff's objection to Interrogatory No. 26 are not well-taken. "An interrogatory otherwise improper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact *or the applica-*

[1] Plaintiff objected to the Government's document production request related to Interrogatory No. 26 as "premature because it seeks information that is the subject of ongoing and incomplete discovery in this case" and "to the extent that it seeks documents that are not in the custody and/or control of [p]laintiff, but rather in the control and/or custody of [d]efendant."

*tion of law to fact* . . . ." RCFC 33(c) (emphasis added). The answer to Interrogatory No. 26 involves the application of law to fact because it requires that plaintiff identify the "communications" (facts) that plaintiff contends breached the Equity Process Agreement. Kendrick v. Sullivan, 125 F.R.D. 1 (D.D.C. 1989), is not to the contrary. It merely held that responses to interrogatories which would involve issues of "pure law" unrelated to the facts of the case are improper. Id. at 3-4.

Plaintiff's objection that Interrogatory No. 26 is improper because it "seeks information that is already in the custody and control of" the Government is also without merit. The Government is not required to guess at the specific communications that Chevron contends breached the Equity Process Agreement. Moreover, "it is no objection to discovery that the moving party may already have knowledge of the matters inquired into." Burton Mechanical Contractors, Inc. v. Foreman, 148 F.R.D. 230, 236 (N.D. Ind. 1992) (quoting 4A J. Moore, J. Lucas, Moore's Federal Practice ¶ 34.12 (2d ed. 1991)).

Plaintiff's remaining objection to Interrogatory No. 26 is somewhat different because the objection to the discovery request is not an absolute one. Rather, plaintiff asserts that the interrogatory is "premature" because it seeks information that is the object of continuing and incomplete discovery by plaintiff, specifically, documents that are the subject of the pending privileged documents dispute and depositions of present and former officials and employees of the Department of Energy (DOE) that plaintiff has deferred taking until after the privileged documents dispute has been resolved.

In our recent discussions, if I understood you correctly, you indicated that plaintiff would respond to Interrogatory No. 26 and the related document production request if the date for plaintiff's responses to these discovery requests were deferred until after plaintiff has taken its depositions of present and former DOE officials and employees. You also stated that plaintiff would be agreeable to furnishing the Government with responses to these discovery requests 30 days prior to the commencement of the trial upon liability issues, which presently is scheduled to begin on February 4, 2008. We would need to have the information solicited by these discovery requests no later than 30 days before the date upon which the Government's pretrial submissions are due, however. Please advise whether plaintiff would agree to settling its objections to Interrogatory No. 26 and the related document production request upon that basis.

Very truly yours,

John Kosloske

JOHN E. KOSLOSKE
Senior Trial Counsel
Commercial Litigation Branch

# UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 04-1365 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**REVISED AND CORRECTED COPY**

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on June 15, 2007.)

Pages: 1 through 20

Place: Washington, D.C.

Date: June 15, 2007

**HERITAGE REPORTING CORPORATION**
*Official Reporters*
1220 L Street, N.W., Suite 600
Washington, D.C. 20005-4018
(202) 628-4888
hrc@concentric.net

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON, )
)
Plaintiff, )
)
v. ) Docket No. 04-1365
)
THE UNITED STATES, )
)
Defendant. )

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on June 15, 2007.)

The parties met, pursuant to the notice of the Court, at 4:32 p.m.

BEFORE: HON. SUSAN G. BRADEN
Judge

APPEARANCES:

For the Plaintiff:

LAWRENCE DAVID ROSENBERG, Esquire
LEWIS FISHER, Esquire
MICHAEL FREED, Esquire

For the Defendant:

JOHN EDGAR KOSLOSKE, Esquire
ANUJ VOHRA, Esquire
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

P R O C E E D I N G S

(4:32 p.m.)

THE CLERK: Good afternoon. This is Matt Spengler, Judge Braden's law clerk. I am here with the Judge. If we can go ahead and get started and have each person state their name and the party they represent. The conference call is being digitally recorded. Actually, Judge Braden stepped out for just one moment and if you will stand by --

THE COURT: I think I am here.

THE CLERK: Oh, she is here. Go ahead.

MR. ROSENBERG: This is Lawrence Rosenberg on behalf of Plaintiff Chevron and with me are Louis Fisher and Michael Fried.

MR. KOSLOSKE: This is John Kosloske with the Department of Justice. I represent the United States. With me is Anuj Vohra.

THE COURT: All right. I am calling about the government's motion for clarification of the scope of the proceedings. Let me find out, first of all, where you -- Mr. Rosenberg, can you tell me precisely, with not a lot of explanation, just what discovery -- what depositions have you noticed and you are prepared to do now?

MR. ROSENBERG: We have already taken the

Egger was involved in at least two roles. Now, the government probably has a legal argument about that and so there's nothing -- we haven't gotten there yet. At least as a factual matter, she was, was far as I'm concerned, everything I've seen is quite clearly was engaged in two functions.

Now, Mr. Kosloske, we have spent a lot of time in this Court trying Winstar cases, where the government's argument on liability and causation are conducted in two -- or bifurcated and this effect, this sort of causation goes to the damage aspect, not to liability. If you want me to pull out some of the government's briefs on that issue, if you would like me to, I would pleased to do so. But, there is not even a close call.

Now, I don't want to have the people deposed twice though. I think your point on that is well taken. I am looking at the list of people that from the letter that Mr. Rosenberg gave to you about who he thought he might want to depose someday, now, I can help everybody shorten that list, I think, unless you have some compelling need to practice your deposition skills. Let me see if I can get that here. It is in Rosenberg's letter, dated December 6th.

I certainly think the deposition of Ms.

opposite of what you're suggesting, I really have to wonder what your litigation strategy is in this, other than basically to get me so mad I would do something that becomes reversible. I mean, that may be a theory.

MR. KOSLOSKE: Your Honor, if you're talking about the bifurcation motion, I don't understand your point you're making. The Plaintiff has to establish a duty, breach, causation, and injury or damages. The bifurcation motion is addressed to causation or a nexus between breach and either.

THE COURT: Well, what type of injury are they going to have to demonstrate to you, other than the fact that there was a breach?

MR. KOSLOSKE: That the breach resulted in harm to Chevron. For example, theoretically, say you have an ex parte communication that the Court determines to violate the agreement, suppose the tenor of the communication was to result in a change to a decision or a contemplated decision that was favorable to Chevron of that had no impact on that decision, what would be the harm to Chevron, that would be our argument.

THE COURT: Well, I think that's going to be an interesting argument to make. So what do you want

me -- I mean, I'm not granting your motion.

MR. KOSLOSKE: So, the motion for clarification is to not --

THE COURT: The motion assuredly is denied.

MR. KOSLOSKE: -- an order that provides any kind of clarification or is there not --

THE COURT: I think it's fairly clear the bifurcation between liability and the damages is.

MR. KOSLOSKE: So the first part of the case, as far as Your Honor is concerned, from what I understand here is that Chevron's burden is simply to establish that a communication facially breached the --

THE COURT: What you're trying to do is link the two agreements. The equity agreement is what they're suing under. What you are trying to say is that they've got to show causation under the decoupling agreement, I guess it is, or the other side of what's going on, on the division of the money, or that they were hurt or not hurt by whatever the final decision is. And that's not -- I don't have jurisdiction over that issue. I have jurisdiction over whether or not there was an ex parte communication, whether it was material or not, and what the damages are that flow from that.

THE COURT: Don't -- you know, think about it a little bit what you're doing.

MR. ROSENBERG: Yeah.

THE COURT: And I -- you know, frankly, I don't know when you get this -- I want to write this opinion, so I can get this thing wound up and certified for the Appellate Court. And if they don't take it, we're going to be in trial in November. I'm not going to change that date. I don't think you're going to need to do a lot of discovery, frankly. The government has their own argument. I don't know what type of discovery they're going to make that they would want to know about. They know from the deliberative process documents that they're claiming privilege on whether people changed their mind and why. If they want to have those documents privileged, fine, they're privileged.

All right. I will talk to you guys next week and I'll get this other order out. The motion is denied. I did it in an oral order. I may have Matt put it in writing, so you can appeal the Court's direction for providing Ms. Egger's personnel records. Good afternoon.

(Whereupon, at 4:56 p.m., the hearing in the above-entitled matter was concluded.)