No. 04-1365
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION TO CERTIFY THE COURT'S JANUARY 31, 2008 PRIVILEGE RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE COURT'S APRIL 4, 2008 ORDER PENDING APPEAL

---

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

April 16, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . i

TABLE OF AUTHORITIES. . . . . ii

DEFENDANT'S MOTION TO CERTIFY THE COURT'S JANUARY 31, 2008 PRIVILEGE RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE COURT'S APRIL 4, 2008 ORDER PENDING APPEAL. . . . . 1

ARGUMENT. . . . . 2

I. Standard For Certification. . . . . 2

II. The Court Already Has Stated That It Believes The Privilege Dispute Is Appropriate For Certification . . . . . 4

III. The Government's Identified Questions Meet The Requirements For Certification . . . . . 5

A. Controlling Questions Of Law. . . . . 5

B. Substantial Ground For Difference Of Opinion . . . . . 7

i. The Crime/Fraud Exception To The Attorney-Client Privilege . . . 7

ii. Application Of The Deliberative-Process Privilege To Factual Material In Drafts. . . . . 9

iii. Application Of The Work-Product Privilege To Factual Material . . . . . 10

C. Materially Advance The Litigation . . . . . 12

IV. The Court Should Stay Its April 4, 2008 Order Requiring Production Of Privileged Documents Pending The Government's Appeal . . . . . 13

CONCLUSION. . . . . 15

## TABLE OF AUTHORITIES

### CASES

American Telephone & Telegraph Co. v. United States,
33 Fed. Cl. 540 (1995). . . . . . . . . . 2, 5

Chevron U.S.A. Inc. v. United States,
80 Fed. Cl. 340 (2008). . . . . . . . . . *passim*

Coast Federal Bank FSB v. United States,
49 Fed. Cl. 11, 13 (2001). . . . . . . . . . 7, 14

In re Seagate Technology, LLC,
497 F.3d 1360 (Fed. Cir. 2007). . . . . . . . . . 10, 11

In re Sealed Case,
754 F.2d 395 (D.C. Cir. 1985). . . . . . . . . . 7, 8

In re Sealed Case,
107 F.3d 46 (D.C. Cir. 1997). . . . . . . . . . 8, 9

Judicial Watch, Inc. v. Dept. of Justice,
432 F.3d 366 (D.C. Cir. 2005) . . . . . . . . . . 11

Klamath Irrigation District v. United States,
69 Fed. Cl. 160 (2005). . . . . . . . . . 2

Landis v. North American Co.,
299 U.S. 248 (1936).. . . . . . . . . . 9

Lead Industries Ass'n, Inc. v. OSHA,
610 F.2d 70 (2d Cir. 1979).. . . . . . . . . . 9

Marriott Int'l Resorts, L.P. v. United States,
63 Fed. Cl. 144 (2004). . . . . . . . . . 5, 6, 12, 13

Marriott Int'l Resorts, L.P. v. United States,
122 Fed. Appx. 490, 491 (Fed. Cir. 2005). . . . . . . . . . 12, 13

Mobil Oil v. United States Environmental Protection Agency,
879 F.2d 698 (9th Cir. 1989). . . . . . . . . . 9

Montrose Chemical Corp. v. Train,
491 F.2d 63 (D.C. Cir. 1974). . . . . . . . . . 9, 10

National Wildlife Federation v. Forest Service,
861 F.2d 1114 (9th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Pac. Gas & Elec. Co. v. United States,,
70 Fed. Cl. 128 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Russell v. Department of Air Force,
682 F.2d 1045 (D.C. Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES AND RULES

28 U.S.C § 1292.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

## MISCELLANEOUS

19 J. Moore, Moore's Federal Practice § 203.31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16 C. Wright, A. Miller & Cooper, Federal Practice & Procedure §§ 3930, 3931 (2d ed. 1996)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365 |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO CERTIFY THE COURT'S JANUARY 31, 2008 PRIVILEGE RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE COURT'S APRIL 4, 2008 ORDER PENDING APPEAL

Defendant, the United States, respectfully requests that this Court amend its privilege decision of January 31, 2008, Chevron U.S.A. Inc. v. United States, 80 Fed. Cl. 340 (2008), to "include [] in th[at] order a statement that [] controlling question[s] of law [are] involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation," 28 U.S.C. § 1292(d)(2), in order that the Government may pursue an interlocutory appeal from the decision to the United States Court of Appeals for the Federal Circuit. Plaintiff, Chevron U.S.A. Inc. ("Chevron"), has already represented that it does not believe that certification of the Court's January 31, 2008 Order is appropriate. See "Chevron's Response To The Court's January 31, 2008 Orders" ("Chevron's Response"), dated March 18, 2008. The Government further requests that, pending the resolution of our interlocutory appeal, the Court stay its April 4, 2008 Memorandum Opinion And Order ("April 4, 2008 Order") to the extent it requires the production of documents that are the subject of the continuing privilege dispute.

ARGUMENT

I. Standard or Certification

Certification of an otherwise interlocutory decision is appropriate when the Court finds "that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(d)(2). This three-part test "is designed to weigh the relative benefits of an immediate appeal; thus the three factors should be viewed together as a statutory language equivalent of a direction to consider the probable gains and losses of an immediate appeal." American Telephone & Telegraph Co. v. United States, 33 Fed. Cl. 540, 541 (1995) (internal citation omitted). The decision to certify a question for interlocutory appeal "is committed to the sound discretion of the trial judge." Klamath Irrigation District v. United States, 69 Fed. Cl. 160, 162 (2005). The factors set forth in § 1292(d)(2) should be viewed together as a "unitary requirement" so that the Court may consider the probable gains and losses of certification against proceeding with a full disposition of the case. 19 J. Moore, Moore's Federal Practice § 203.31[1], at 203-206. Cf. AT&T, 33 Fed. Cl. at 541 (certifying question for interlocutory appeal upon determination that "much can be gained by having the court of appeals address the controlling questions . . . on an interlocutory basis rather than at the conclusion of what could otherwise prove to be a protracted lawsuit").

The Court also may consider factors such as "[t]he difficulty and general importance of the question presented, the probability of reversal, the significance of the gains from reversal, and the hardship on the parties in their particular circumstances." 16 C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3930, at 442 (2d ed. 1996). Given the Court's broad

discretion in making certification decisions, "[t]here should also be room . . . to reach out to decide issues that involve important interests such as privilege, that arise frequently but evade review." Id. § 3931, at 445.

In light of these considerations, we have identified the following questions of law upon which the Court ruled in its January 31, 2008 Opinion which are appropriate for interlocutory appellate review:

1. Whether the "crime/fraud" exception to the attorney-client privilege applies where the conduct that serves as the basis for its application is an alleged breach of contract.

2. Whether the work-product privilege applies to factual material prepared in anticipation of litigation.

3. Whether the deliberative-process privilege protects against the disclosure of factual material in draft decisions.

As explained below, these questions are appropriate for certification because they are controlling questions of law that served as the basis for the Court's rulings upon individual documents withheld by the Government from production as privileged. For each of these controlling questions, as well as the Court's rulings upon them, there are substantial grounds for differences of opinion. Moreover, the identified issues and Court's rulings are important not only to the resolution of this case, but also generally as they elaborate on the applicability and exceptions of these privileges, as well as the Government's ability to assert them here and in the future. The identified issues are discrete issues of law that can be decided without any further factual development, and are therefore ideally suited for immediate appeal.

II. The Court Already Has Stated That It Believes The Privilege Dispute Is Appropriate For Certification

This Court already has stated during this privilege dispute that it believed that the issues it was considering were appropriate for interlocutory appeal. Indeed, the Court noted in a telephonic status conference with the parties on May 9, 2007, that this privilege dispute "is not a small thing. And [the Court is] trying to figure out how to best present it, that advances the litigation in a rational way, but giving the [Court of Appeals for the Federal Circuit] an opportunity to correct course before we do anything that would cause some problems." May 9, 2007 transcript, p. 46, line 9. (A copy of the cited pages of the transcript of the May 9, 2007 telephonic conference with the Court are attached hereto as Exhibit A). The Court further noted that certification of its ruling for interlocutory review made sense "because of the nature of the question that we're into here. And [the Court thinks] the Federal Circuit will appreciate that, rather than . . . just going forward with the documents." May 9, 2007 transcript, p. 28, line 25-p. 29, line 3. Additionally, the Court observed in that conference that while the Federal Circuit tends to not take certified questions, "it's appropriate for [the Court] to ask," id. at p. 48, line 20, and that an interlocutory appeal was "time . . . well spent in this litigation." Id. at p. 35, line 20.

In a telephonic status conference with the parties on May 24, 2007, the Court stated that, in undertaking the privilege dispute, it was "set[ting] it up for [the parties] then to seek appellate review . . . [the Federal Circuit] may decide to look at what [the Court has] done and say it looks like she's been thorough to us." May 24, 2007 transcript, p. 22, line 7. (A copy of the cited pages of the transcript of the May 24, 2007 telephonic status conference with the Court are attached hereto as Exhibit B). In an August 28, 2007 telephonic status conference with the parties, during a discussion of the mechanics of an interlocutory appeal, the Court stated that it

was "going to be the one that put this issue before the Federal Circuit." August 28, 2007 transcript, p. 24, line 19-20. (A copy of the cited pages of transcript of the August 28, 2007 telephonic status conference with the Court are attached hereto as Exhibit C).

In its published privilege decision, the Court, *sua sponte*, invited the parties to indicate whether they intended to request certification of the order for interlocutory review. Chevron, 80 Fed. Cl. at 366. In light of the Court's repeated comments that the privilege issues in dispute are important questions of law for which interlocutory appellate review is appropriate, the Court should grant the Government's motion for certification.

III. The Government's Identified Questions Meet The Requirements For Certification

The legal issues the Government has identified for interlocutory appeal satisfy the standards for interlocutory appeal, especially in light of a consideration of the "relative burdens and benefits attendant to the allowance of an immediate appeal." AT&T, 33 Fed. Cl. at 541. The Court's opinion made a number of significant rulings on important issues of law. The Court's rulings stand to play a significant role not only in this case, but in other similar Government contract actions in which parties attempt to withhold documents as privileged.

A. Controlling Questions Of Law

The Court's rulings upon the issues the Government has identified are "controlling questions of law" for purposes of interlocutory appeal. In Marriott Int'l Resorts, L.P. v. United States, 63 Fed. Cl. 144 (2004), the Court considered a motion for interlocutory appeal involving the issue of whether the deliberative-process privilege could be invoked on behalf of the United States by an official other than the head of the agency seeking to assert the privilege. In applying the standard for interlocutory appeal, the Court noted that the question before it was "purely

procedural" and did "not directly address the merits of these . . . cases." Id. at 145. Nonetheless, Judge Lettow determined that "despite the lack of a direct link to the merits, the procedural question at hand arguably does 'materially affect' the outcome" of the lawsuit, because the documents in dispute in that matter were directly relevant to the underlying issues in the case. Id. See also id. at 146 ("This indirect link to the merits may materially affect the issues to be decided, and thus the procedural question . . . may be 'controlling.'").

The Court's rationale in Marriott applies here. Though the legal issues we have identified relate to the attorney-client, work-product, and deliberative-process privileges and do not directly address the merits of this lawsuit, these legal issues - if Chevron's arguments regarding the communications restrictions of the Equity Process Agreement are to be accepted - may nevertheless "materially affect" the litigation's outcome because the documents currently in dispute bear directly on the material issues in this matter. This is certainly true in light of the fact that the documents reviewed by the Court *in camera* were documents that Chevron identified as especially relevant to its lawsuit. See Chevron U.S.A. Inc., 80 Fed. Cl. at 352 (noting that the documents the Court reviewed were specifically identified by Chevron). Moreover, the Court in Marriott considered merely the *procedural* requirements necessary to assert the deliberative-process privilege. The Court's rulings on the questions of law identified here are the basis for its determinations on individual documents it reviewed *in camera*. Given that the Court's rulings on the legal issues directly influenced its decision on the individual documents it reviewed, those issues are clearly "controlling" for the purposes of interlocutory review.

B. Substantial Ground For Difference Of Opinion

Certification for interlocutory appeal is appropriate where there is a "substantial ground for difference of opinion" upon a controlling question of law. Typically, an issue upon which there is "substantial ground for difference of opinion" is one upon which courts are divided. Coast Federal Bank FSB v. United States, 49 Fed. Cl. 11, 13 (2001). In this case, the basis for the "substantial ground for difference of opinion" is not the fact that courts have disagreed, but that this Court's rulings narrow the scope of the of the attorney-client, work-product, and deliberative process privileges in a novel manner that conflicts with the established authority setting forth the parameters of each privilege.

i. The Crime/Fraud Exception To The Attorney-Client Privilege

With regards to the attorney-client privilege, the Court ruled that the "crime/fraud" exception applied in this case, based upon language from a D.C. Circuit opinion that held the privilege did not protect communications "made in furtherance of a crime, a fraud, or other misconduct." Chevron U.S.A. Inc., 80 Fed. Cl. 363 (citing In re Sealed Case, 754 F.2d 395, 399 (D.C. Cir. 1985)). The Court also noted that a more recent decision from the same court "did not overrule or diminish the viability of a 'misconduct' exception." Id. The Court concluded that while the Federal Circuit has never addressed whether the crime/fraud exception applied to "other misconduct," the Court saw "no reason" why the Federal Circuit would not apply the exception to the breach of contract alleged here. Id. Based upon its application of the crime/fraud exception, the Court ordered the production of privileged documents "that appear to evidence *ex parte* communications prohibited by the Equity Process Agreement." Id. at 364.

There is substantial ground for disagreement with the Court's application of the

crime/fraud exception to the attorney-client privilege. First, despite the fact that the decision upon which the Court relies used the language "crime, a fraud, or other misconduct," the actual conduct the District of Columbia Circuit considered in Sealed Case prior to its application of the exception was what it described as "a pervasive and systematic scheme to destroy or alter subpoenaed evidence" and "to conceal its wrongdoing before courts in which it was involved in litigation - all with the knowledge and participation of [the wrongdoing entity's] legal department." Sealed Case, 754 F.2d at 399. Sealed Case applied the exception directly to attorney communications that were made for the purpose of *facilitating* an "illegal and fraudulent scheme." Id. at 402. The court in Sealed Case never discussed what constituted "other misconduct," and it certainly gave no indication that a breach of contract, much less an *alleged* breach of contract, as is the case here, was the type of misconduct that could give rise to the crime/fraud exception. Indeed, since the filing of its March 15, 2007 motion to compel, Chevron has not identified a single case in which the crime/fraud exception was applied to a breach of contract. Nor are we aware of any case in which the exception has been applied either in a civil action for breach of contract or against the Government. As such, the Court's application of the crime/fraud application is an issue of first impression for the Federal Circuit.

Moreover, there is substantial ground for disagreement with the Court's application of the crime/fraud exception to documents that "appear to *evidence* ex parte communications." Chevron, 80 Fed. Cl. at 364 (emphasis supplied). We are aware of no case in which the mere "evidence" of presumed misconduct is enough to trigger the crime/fraud exception; instead, the communication must have been made with the intent by the client to further a wrongful act. See In re Sealed Case, 107 F.3d 46, 50 (D.C. Cir. 1997) (to invoke crime-fraud exception,

Government was required to demonstrate that company sought legal advice "with the intent to further its illegal conduct"; showing "temporal proximity between the communication and a crime is not enough"). Therefore, there is substantial ground for disagreement with the Court's application of the crime/fraud exception to the attorney-client privilege.

ii. Application Of The Deliberative-Process Privilege To Factual Material In Drafts

With regards to the deliberative process privilege, the Court stated that based upon the "absolute clarity" of Court of Federal Claims precedent, factual material was not subject to the privilege where it could be segregated from deliberative material in a document. Chevron, 80 Fed. Cl. at 361 (citing Pac. Gas & Elec. Co. v. United States, 70 Fed. Cl. 128, 134 (2006)). But, as discussed in our briefing on the deliberative process privilege, several appellate courts have held that the separation requirement does not apply to factual material contained in *drafts*. See, e.g., Lead Industries Ass'n, Inc. v. OSHA, 610 F.2d 70, 86 (2d Cir. 1979) (noting that the production of factual material in drafts would allow insight into agency's internal workings, which "is exactly what the law forbids"); Mobil Oil v. United States Environmental Protection Agency, 879 F.2d 698, 703 (9th Cir. 1989) ("[T]he deliberative process privilege [applies] to a draft document regardless of whether it differs from its final version."); National Wildlife Federation v. Forest Service, 861 F.2d 1114, 1122 (9th Cir. 1988) ("Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to [the] goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes."); Russell v. Department of Air Force, 682 F.2d 1045, 1049 (D.C. Cir. 1982) (noting that "a simple comparison between the pages sought and the official document would reveal" an agency decision maker's judgment); cf. Montrose Chemical Corp. v. Train, 491 F.2d

63, 71 (D.C. Cir. 1974) ("When a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process . . .").

Pacific Gas, the decision upon which the Court relied here, did not address draft decisions. Nor has the Federal Circuit yet had the opportunity to consider the applicability of the privilege to drafts. Indeed, the Court itself noted that "our circuit does not have a lot of law, nor is there really a tremendous amount of law out there to begin with on deliberative process privilege." May 9, 2007, telephonic transcript, p. 34, line 11. Nonetheless, the Court does not appear to have considered, and certainly did not distinguish, those cases we cited which hold that factual material in drafts is protected deliberative material. Given the significant amount of authority that appears to conflict with the authority of the Court of Federal Claims as identified by the Court here, there is substantial ground for disagreement on the issue, making it appropriate for interlocutory review.

iii. Application Of The Work-Product Privilege To Factual Material

As for the work-product privilege, the Court ruled that "factual information is not subject to the attorney work-product privilege, because facts by definition have no attorney work-product content." Chevron, 80 Fed. Cl. at 366. This ruling conflicts not only with the express language of RCFC 26(b)(3), but also the voluminous authority which has clearly set forth the governing principles of the work-product doctrine. In In re Seagate Technology, LLC, 497 F.3d 1360 (Fed. Cir. 2007), to which this Court cited in its opinion, the Federal Circuit explained that there are two types of work-product: that which is factual, and can be discovered upon a showing of substantial need, and that which is the result of mental processes, which is afforded "nearly

absolute" protection from disclosure. Id. at 1375. See also Judicial Watch, Inc. v. Dept. of Justice, 432 F.3d 366, 371-72 (D.C. Cir. 2005) ("The work product doctrine does not distinguish between factual and deliberative material."). Indeed, prior to ruling that "factual material is not subject to the attorney work-product privilege," this Court noted that the Federal Circuit has recognized that "the line between factual work product and opinion work product is not always distinct." Chevron, 80 Fed. Cl. at 365 (citing Seagate, 497 F.3d at 1375). Given that the Court's opinion greatly diminishes the scope of the work-product privilege and appears to conflict with the Federal Circuit's application of the privilege, there is clearly a substantial ground for disagreement on that ruling.

In an April 14, 2008 telephonic status conference with the Court, Chevron argued that there is no substantial ground for disagreement as to any of the Court's rulings regarding the propriety of the Government's privilege assertions because those rulings were based upon the Court's *in camera* review of each individual document, as opposed to the general issues of law the Government has identified for appellate review. See April 14, 2008 transcript, p. 12-13 (arguing that "the issues the Government has set forth really aren't even raised by those documents. There's not a clear cut situation where it was either, well, gee, the crime fraud is going to apply in a contract case or not. It was the crime fraud exception should apply as to this document because this particular document shows significant evidence of misconduct. And so, in our view, you know, there really isn't a substantial ground for difference of opinion on any of that stuff."). (A copy of the cited pages of transcript of the April 14, 2008 telephonic status conference with the Court are attached hereto as Exhibit D).

Chevron's argument attempts to disregard the fact that the Court's determinations from

its individualized review of the documents were informed by the Court's rulings on the general applicability of the privileges. For example, the Court's ultimate determination that certain Government documents were attorney-client privileged but nonetheless were required to be disclosed because of the crime/fraud exception necessarily relied upon the Court's first ruling that the exception applies in a breach of contract action. Similarly, the Court's ultimate ruling that a number of documents it reviewed were prepared as part of the equity finalization process, but were nonetheless not work-product because they were entirely factual, was based upon the Court's initial determination that the work-product privilege does not apply to factual material. As such the issues the Government has identified for appeal directly affect the vast majority of the rulings the Court has made on individual documents. Were Chevron's argument correct, the Court's original 38-page opinion would be rendered merely advisory. Certainly this was not the Court's intention.

C. Materially Advance The Litigation

In Marriott, in certifying its order for interlocutory appeal, the Court noted that the parties "ha[d] spent over two years debating the procedural question . . . [and that] [a]n interlocutory appeal . . . would mean that a significant additional period would pass before the merits could be addressed." 63 Fed. Cl. at 147. The Court nevertheless certified its order for interlocutory appeal, stating that "definitive resolution of the procedural issue would manifestly benefit" the case. Id. The Federal Circuit ultimately granted the Government's petition for interlocutory review in Marriott, noting the Government's argument that "although disposition of the issue would not dispose of the litigation . . . review of the issue might simplify the litigation or affect other cases with similar important issues." Marriott Int'l Resorts, L.P. v. United States,

122 Fed. Appx. 490, 491 (Fed. Cir. 2005).

The Court here already recognized that the parties would benefit from interlocutory review of the privilege decision when it noted that "this is a pivotal ruling, this privilege issue in this particular case. This is not a small thing. And I'm trying to figure out how to best present it, that advances the litigation in a rational way, but giving the [Federal] Circuit an opportunity to correct course before we do anything that would cause some problems." May 9, 2007 Transcript, p. 46, line 19. Indeed, review and direction from the Federal Circuit would indisputably simplify the litigation going forward and provide guidance in other cases before the Court of Federal Claims that raise similar important privilege issues. As such, certification of the Court's January 31, 2008 Memorandum Opinion and Orders is appropriate.

## IV. The Court Should Stay Its April 4, 2008 Order Requiring The Production Of Privileged Documents Pending The Government's Appeal

On April 4, 2008, the Court issued a Memorandum Opinion And Order that required, among other things, the Government "to produce forthwith all documents that Plaintiff requested the court review and that were withheld to date, but for those subject to the Government's February 13, 2008 Motion For Reconsideration and those determined to be privileged in the court's January 31, 2008 Memorandum Opinion and Orders." The Government respectfully requests that the Court stay the April 4, 2008 Order to the extent it requires the disclosure of documents that are the subject of the ongoing privilege dispute between the parties pending the resolution of our interlocutory appeal.[1]

[1] We also request that the Court stay its April 4, 2008 Order to the extent it requires the production of documents at least until the Court has had an opportunity to rule upon this motion.

This Court "has broad discretion to stay proceedings before it in the interests of 'economy of time and effort for itself, for counsel, and for litigants.'" Coast Federal Bank, 49 Fed. Cl. at 15 (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)). The party requesting the stay "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." Id.

Requiring the production of documents prior the resolution of an interlocutory appeal would greatly harm the Government given that once the privileged materials are released, the privilege is effectively destroyed and the Government's arguments with regards to its privilege assertions will be moot. This concern is even more significant in light of the fact that numerous documents Chevron seeks are work product prepared by the United States Department of Energy's Equity Finalization Team as part of the Elk Hills equity finalization process. Should that work product be released, the DOE's EFT will be at a significant disadvantage when the equity finalization process recommences for the Shallow Oil Zone.

Moreover, a stay of the April 8, 2008 Order's production requirement need not halt the litigation entirely. An order staying production of privileged documents will not prevent the completion of briefing on the Government's August 16, 2007 Motion to Dismiss, nor would it impede the Court's ability to consider and rule upon the Government's February 13, 2008 Motion for Reconsideration or any other outstanding motions. As such the Court should stay the directive in its April 4, 2008 Order that the Government produce privileged documents pending the Government's interlocutory appeal.

CONCLUSION

For the foregoing reasons, defendant's motion to certify an interlocutory appeal should be granted, and the Court should modify its January 31, 2008 Opinion and Orders to include the express findings required by 28 U.S.C. § 1292(d)(2) to certify an interlocutory appeal of the Opinion and Orders. In addition, pending interlocutory appeal, we respectfully request that the Court stay its April 4, 2008 Order to the extent that it requires the Government to produce documents that are the subject of the continuing privilege dispute.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-1438
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

April 16, 2008

CERTIFICATE OF FILING

I hereby certify that on April 16, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO CERTIFY THE COURT'S JANUARY 31, 2008 PRIVILEGE RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE COURT'S APRIL 4, 2008 ORDER PENDING APPEAL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Anuj Vohra