**Filed Electronically on April 25, 2008**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:04cv1365 |
| vs. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**CHEVRON'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE APRIL 4, 2008 ORDER**

Donald B. Ayer
Lawrence D. Rosenberg
*Counsel of Record*
Michael S. Fried
Louis K. Fisher
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Dated: April 25, 2008

*Counsel for Chevron U.S.A. Inc.*

## TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. THIS COURT SHOULD DENY CERTIFICATION FOR INTERLOCUTORY REVIEW ..... 2

A. The Government Identifies No Truly Controlling Question Of Law ..... 3

B. Even The Government's Non-Controlling Questions Raise No Substantial Ground For A Difference Of Opinion ..... 6

C. Far From Materially Advancing The Litigation As Required, Interlocutory Appeal Would Materially Impede The Litigation ..... 9

D. This Court Has Not Already Decided To Certify ..... 14

II. THIS COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR A STAY ..... 14

A. There Is No Likelihood of Success of the Government's Arguments ..... 15

B. The Government Will Experience No Irreparable Harm In The Absence Of A Stay ..... 21

C. A Stay Would Harm Chevron And The Public Interest ..... 22

D. The Government Fails Even Its Own Improper Test ..... 25

CONCLUSION ..... 25

# TABLE OF AUTHORITIES

## CASES

*American Airlines, Inc. v. United States*, 71 Fed. Cl. 744 (2006)....................................2, 3, 10, 13

*American Management System, Inc. v. United States*, 57 Fed. Cl. 275 (2003) ..............................3

*Brown v. United States*, 3 Cl. Ct. 409 (1983) ..................................................................3, 11

*Chevron U.S.A., Inc., v. United States*, 71 Fed. Cl. 236 (2006)..........................................23

*Chevron U.S.A., Inc., v. United States*, 80 Fed. Cl. 340 (2008).........................5, 16, 18, 19, 20, 21

*Coast Federal Bank, FSB v. United States*, 49 Fed. Cl. 11 (2001)........................................10, 15

*Connaught Laboratoriess, Inc. v. SmithKline Beecham, P.L.C.*, 165 F.3d 1368 (Fed. Cir. 1999) ........................................................................................................15

*Dairyland Power Co-op v. United States*, 77 Fed. Cl. 330 (2007) ...............................................21

*Doolin Security Savings Bank, F.S.B. v. F.D.I.C.*, 53 F.3d 1395 (4th Cir. 1995) .........................24

*EPA v. Mink*, 410 U.S. 73 (1973) ..................................................................................16

*Exxon Corp. v. Department of Energy*, 585 F. Supp. 690 (D.D.C. 1983) ......................................8

*Favell v. United States*, 22 Cl. Ct. 132 (1990).....................................................................3

*Hilton v. Braunskill*, 481 U.S. 770 (1987) ........................................................................14

*Jackson v. Motel 6 Multipurposes, Inc.*, 172 F.R.D. 469 (M.D. Fla. 1997) ..................................14

*Jade Trading, LLC v. United States*, 65 Fed. Cl. 443 (2005) ................................................11, 21

*Judicial Watch, Inc. v. DOJ*, 432 F.3d 366 (D.C. Cir. 2005) ..................................................9, 16

*Kearney v. Jandernoa*, 979 F. Supp. 1156 (W.D. Mich. 1997)..............................................14, 15

*Koch v. Specialized Care Services, Inc.*, 437 F. Supp. 2d 362 (D. Md. 2005)...............................6

*Kockums Industrial Ltd. v. Salem Equip., Inc.*, 561 F. Supp. 168 (D. Or. 1983) ..........................11

*Lead Industries Association, Inc. v. OSHA*, 610 F.2d 70 (2d Cir. 1979).......................................8

*Lorenz v. Valley Forge Insurance Co.*, Civ. No. H 82-191, 1984 WL 2234 (N.D. Ind. Nov. 28, 1984) ....................11

*Marriott International Resorts, L.P. v. U.S.*, 122 Fed. Appx. 490 (Fed. Cir. 2005)....................13

*Marriott International Resorts, L.P. v. United States*, 63 Fed. Cl. 144 (2004) ....................4, 12, 13

*Marriott International Resorts, L.P. v. United States*, 437 F.3d 1302 (Fed. Cir. 2006)....12, 16, 17

*Mobil Oil Corp. v. United States EPA*, 879 F.2d 698 (9th Cir. 1989)....................8

*Moncrief v. Williston Basin Interstate Pipeline Co.*, 174 F.3d 1150 (10th Cir. 1999)....................12

*Moody v. IRS*, 654 F.2d 795 (D.C. Cir. 1981) ....................7, 18

*Munoz v. Strahm Farms, Inc.*, 69 F.3d 501 (Fed. Cir. 1995)....................12

*NXIVM Corp. v. O'Hara*, 241 F.R.D. 109 (N.D.N.Y. 2007) ....................6

*National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114 (9th Cir. 1988) ....................8

*Nebraska Public Power District v. United States*, 74 Fed. Cl. 762 (2006) ....................10

*Pacific Gas & Electric Co. v. United States*, 70 Fed. Cl. 128 (2006)....................16

*Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290 (Fed. Cir. 2005) ....................3

*Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123 (Fed. Cir. 2006) ....................12

*Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991) ....................10, 15, 21

*In re Regents of University of California.*, 101 F.3d 1386 (Fed. Cir. 1996)....................16

*Russell v. Department of Air Force*, 682 F.2d 1045 (D.C. Cir. 1982)....................8

*Ryan v. Department of Justice*, 617 F.2d 781 (D.C. Cir. 1980)....................16

*SEC v. Canadian Javelin Ltd.*, 451 F. Supp. 594 (D.C. Cir. 1978) ....................11

*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) ....................20

*In re Sealed Case*, 676 F.2d 793 (D.C. Cir. 1982)....................18, 20

*In re Sealed Case*, 754 F.2d 395 (D.C. Cir. 1985)....................18

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)..........17

*Senate of Puerto Rico v. Department of Justice*, 823 F.2d 574 (D.C. Cir. 1987) ..........16

*Scholl v. United States*, 69 Fed. Cl. 395 (2005)..........15

*In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800 (Fed. Cir. 2000)..........18

*Standard Havens Products, Inc. v. Gencor Industrial, Inc.*, 897 F.2d 511 (Fed. Cir. 1990)..........14

*In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630 (D.C. Cir. 1992)..........17

*Thorndike v. United States*, 72 Fed. Cl. 580 (2006)..........10, 13

*United States v. Nobles*, 422 U.S. 225 (1975)..........19

*United States v. Philip Morris Inc.*, 314 F.3d 612 (D.C. Cir. 2003)..........14

*United States v. Witmer*, 835 F. Supp. 208 (M.D. Pa. 1993), *aff'd*, 30 F.3d 1489 (3d Cir. 1994) (table)..........7, 18

*Weiss v. United States*, 155 Ct. Cl. 825 (1961)..........7, 18

*Wilderness Society v. United States Department of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004)..........7, 8

*Wolfchild v. United States*, 78 Fed. Cl. 472 (2007)..........2, 10

**STATUTES**

28 U.S.C. § 1292(d)(2)..........2, 3

National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106 § 3412(a), 110 Stat. 186 (1996)..........24

## INTRODUCTION

Plaintiff Chevron U.S.A. Inc. ("Chevron") opposes the government's motion to certify discovery rulings for interlocutory appeal, and to stay this Court's order requiring it to produce documents. The government's motion is baseless on both counts, and should be denied. Indeed, either certification or a stay would impose substantial harm upon Chevron. Due to the government's baseless, and in some cases frivolous, privilege designations, Chevron has already suffered severe delay in pursuing this lawsuit, as well as a corresponding needless extension of the underlying tainted equity redetermination process. Permitting the government to put off its production obligations once again for months or longer while it exhausts meritless interlocutory appellate avenues would contravene the applicable legal standards and would be fundamentally unfair. This Court should deny the relief sought by the government.

First, there is no arguable basis for certification. The government has manufactured a list of three questions of law as its purported basis for appeal, yet it makes no effort to show that the Court's decision turned on these issues, and, in fact, the Court's decision plainly did not do so. And even with respect to these non-controlling issues, the government makes no showing that they are subject to sufficient reasonable disagreement to support certification. Indeed, the government's brief argument on the merits of the three issues largely ignores the Court's rulings and fails to address Chevron's prior briefing. The government also entirely ignores facts showing that an interlocutory appeal could not significantly advance the litigation in the context of this case. To the contrary, it would certainly delay the case needlessly, because no ruling by the Federal Circuit would terminate the proceedings or avoid potentially wasted proceedings.

Second, the government's request for a stay is, if anything, even weaker than its request for certification. It does not even mention the requirements for a stay, let alone attempt to show how

they are satisfied. In all events, the government cannot satisfy the requirements for a stay because it is not likely to prevail on the merits of any appeal and because a stay would severely prejudice Chevron. Even under its own erroneous and too-narrow standard – whether the government would be harmed in the absence of a stay – the government's request should fail because a stay would not substantially harm the government. In short, the government provides no justification for amplifying the effects upon Chevron of its own wrongful privilege assertions by imposing a stay that would effectively halt the progress of the case entirely until any appeals are finished.

## ARGUMENT

### I. THIS COURT SHOULD DENY CERTIFICATION FOR INTERLOCUTORY REVIEW

The motion for certification is governed by 28 U.S.C. § 1292(d)(2), which provides:

> When . . . any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that **a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation**, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(emphasis added). This section "sets forth a three-part test to determine whether a question may be certified for interlocutory appeal, *i.e.*, whether: [1] 'a controlling question of law' is presented; [2] that question is one 'with respect to which there is substantial ground for difference of opinion;' and [3] 'an immediate appeal from that order may materially advance the ultimate termination of the litigation.'" *Am. Airlines, Inc. v. United States*, 71 Fed. Cl. 744, 745 (2006). All three of the requirements must be satisfied to justify certification. *See, e.g.*, *Wolfchild v. United States*, 78 Fed. Cl. 472, 481 (2007) (noting that the statute "requires the court to determine that" all three elements are satisfied). The government fails to sustain its burden on any of this test's three parts, let alone on all three.

Signaling its inability to make the required showing under section 1292(d)(2), the government suggests that "[t]he Court also may consider [other] factors" in the certification equation. Gov. Br. at 2. But the government ignores that such additional factors cannot relieve it from its obligation to satisfy the three-part test at a minimum. To the contrary, section 1292(d)(2) affirmatively *requires* the Court to "include[] in the order a statement" that the three-part test is satisfied. If the test is *not* met, then there is no authority to grant certification based on other factors. Indeed, this Court has recognized that the three-part "test is to be applied strictly to preserve the important policies that underlie the final judgment rule, *i.e.*, avoiding piecemeal litigation, avoiding harassment due to separate appeals from the same litigation, and 'promoting efficient judicial administration.'" *Am. Airlines*, 71 Fed. Cl. at 745 (quoting *Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1293 (Fed. Cir. 2005)). Accordingly, the government's inability to show that the three-part test is satisfied here is fatal to its certification request.

**A. The Government Identifies No Truly Controlling Question Of Law**

"Questions of law have only been deemed 'controlling' under [the certification] statute, if they materially affect issues *remaining to be decided* in the trial court." *Brown v. United States*, 3 Cl. Ct. 409, 411 (1983). "This definition excludes questions involving narrow, nondispositive legal issues." *Am. Mgmt. Sys., Inc. v. United States*, 57 Fed. Cl. 275, 277 (2003). Whether or not "reversal of the trial court's order [must] terminate the litigation" altogether, the issues must at least be analogous to the "restrictive examples . . . such as: who are necessary and proper parties; whether or not a court to which a case has been transferred has jurisdiction; or whether state or federal law should apply." *Favell v. United States*, 22 Cl. Ct. 132, 144 (1990). None of those examples remotely resembles this case, where the Court merely ordered the production of

documents that may be used along with all of the other evidence in the litigation.[1]

Even more fundamentally, the questions of law identified by the government are not "controlling" because, contrary to the government's unsupported claims, the Court's rulings did not turn on them. The government makes no effort to connect its three abstract legal principles to the Court's actual rulings on any of the documents at issue. And, in fact, these issues did not form the basis for the underlying decisions.

The first of the government's issues is "[w]hether the 'crime/fraud' exception to the attorney-client privilege applies where the conduct that serves as the basis for its application is an alleged breach of contract." Gov. Br. at 3. The government ignores that, far from a bare or simple breach of contract, the Court's findings evidence systematic and egregious *ex parte* communications between advocates and decisionmakers, and impermissible and undisclosed dual roles in the decisionmaking process, not merely in violation of contract, but in repeated violation of an administrative order, fundamental principles of fairness, and basic canons of legal ethics. Chevron has alleged and the Court's findings appear to rest on blatant and egregious misconduct that is akin to fraud. Indeed, if the Court had determined that a *prima facie* showing of breach of contract, without more, were *per se* sufficient to order the production of the documents at issue, it surely would have ordered disclosure of many more documents than the mere twelve to which it actually applied the exception.

---

[1] Contrary to the Government's argument, the Court's decision in *Marriott International Resorts, L.P. v. United States*, 63 Fed. Cl. 144 (2004), does not hold that a legal question is "controlling" whenever it "directly influenced" a decision to require production of documents that "bear directly on the material issues" in the lawsuit. Gov. Br. at 6. In *Marriott*, the Court found "a very close question as to whether the criteria for certification under 28 U.S.C. § 1292(d)(2) have been met," *id.* at 145, but ultimately concluded only that the question at issue "*may be* 'controlling,'" *id.* at 145-46, based largely on the extraordinary nature of the question at issue, which affected every case in which the Government asserted deliberative process privilege.

The second issue identified by the government is "[w]hether the work-product privilege applies to factual material prepared in anticipation of litigation." Gov. Br. at 3. Yet the government ignores that the Court expressly agreed that factual materials prepared in anticipation of litigation *can* be work product. *See Chevron U.S.A., Inc. v. United States*, 80 Fed. Cl. 340, 365 (2008) (discussing standards governing fact work product). Thus, the Court has expressly adopted the proposition the government would urge on appeal. In raising this as a potential issue for interlocutory review, the government takes out of context and misconstrues the Court's statement that factual information differs from opinion content in terms of its work-product protection. *See* Gov. Br. at 10 (quoting *Chevron U.S.A., Inc.*, 80 Fed. Cl. at 366). The Court clearly distinguished fact work product from opinion work product. The Court recognized that fact work product is entitled to *less* protection than opinion work product; it did *not* hold that fact work product is entitled to no protection at all. In analyzing fact work product, moreover, the Court only ordered disclosure where facts were severable and could be revealed without disclosing the fruits of attorney efforts (or where Chevron had a "substantial need" for the document). Accordingly, there is no significant disagreement as to this legal issue. While the government may continue to challenge the Court's ultimate determinations regarding factual material in documents prepared by attorneys, it has failed to identify a disputed "question of law" upon which those determinations rest.

The third issue identified by the government is "[w]hether the deliberative-process privilege protects against the disclosure of factual material in draft decisions." Gov. Br. at 3. Again, however, the Court did not apply any such blanket legal rule regarding factual material in draft decisions. The Court instead made careful, document-by-document and line-by-line determinations as to whether factual material could be disclosed without revealing the deliberative

process. As the Court noted, this approach is dictated by clear, binding precedent. The government now seems to be arguing that the Court should have violated this precedent and applied a blanket legal rule precluding the disclosure of factual material in draft decisions, *even if* an inspection *in camera* demonstrated that the material could be disclosed without also revealing the deliberative process.

### B. Even The Government's Non-Controlling Questions Raise No Substantial Ground For A Difference Of Opinion

The government's purported issues for interlocutory review are not reasonably disputable in any event. The government's argument regarding its three issues does little more than cite a case or two with little discussion or analysis, and makes no effort to address the Court's rulings or to address Chevron's extensive prior briefing on the issues. The government's unsupported assertions cannot withstand even a cursory review of the case law.

1. The government claims that there is substantial ground for difference over whether the crime-fraud exception can apply in breach of contract cases. Gov. Br. at 7-9. But, of course, by its terms, the crime-fraud exception turns on the nature of the misconduct at issue, not the nature of the claim asserted against the defendant. *See, e.g.*, *Koch v. Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 373 (D. Md. 2005) ("The determinant of the [crime-fraud] exception's applicability is the wrongfulness of the conduct before the Court, not the form of pleading."). Indeed, if the government were right that the exception is inapplicable except where the claim is of a certain kind, it would follow that the crime-fraud exception could never be applied to overcome privilege assertions by *plaintiffs*, against whom *no* cause of action is asserted; yet, of course, the exception is routinely applied to plaintiffs where relevant misconduct is found. *See, e.g.*, *NXIVM Corp. v. O'Hara*, 241 F.R.D. 109, 134-35 (N.D.N.Y. 2007) (holding that "the crime/fraud exception will pierce the attorney-client privilege" with respect to documents over which the

plaintiff had asserted privilege). The government cites no case that has ever suggested that the exception may turn on the nature of the claim, because there is none.

In any event, the government simply ignores that the crime-fraud doctrine has been applied in contract cases against the government. This Court in *Weiss v. United States*, 155 Ct. Cl. 825 (1961), applied the doctrine to require the government's production of privileged documents based upon misconduct related to the Army's "contrived default termination" of certain contracts. *Id.* at 886-87. Moreover, courts have also premised the crime-fraud exception on misconduct similar to — but substantially less serious and extensive than — the government's wrongdoing in this case. In *Moody v. IRS*, 654 F.2d 795 (D.C. Cir. 1981), for example, the D.C. Circuit found that the exception would likely require disclosure of privileged documents documenting an allegedly improper *ex parte* meeting between an attorney and a judge. *See id.* at 800. *See also, e.g.*, *United States v. Witmer*, 835 F. Supp. 208, 212 (M.D. Pa. 1993), *aff'd*, 30 F.3d 1489 (3d Cir. 1994) (table) (requiring *in camera* review to consider applicability of exception in connection with a bid for a government contract). In short, the government provides no ground to question the application of the crime-fraud exception here, and its suggestion that there is some uncertainty flies in the face of numerous cases that it simply ignores.

2. As to the deliberative process privilege, the government cites several cases that it asserts create a categorical exception to the ordinary requirement of segregating and disclosing factual materials appearing in "drafts." Gov. Br. at 9-10. The government's argument, however, boils down to an attempt to elevate the unexceptional principle that factual materials are not segregable where they inherently reflect deliberative processes into a blanket rule exempting segregation and disclosure of factual material in "drafts" *per se*, which its cases nowhere recognize. Thus, the government ignores cases holding that factual materials in drafts are non-segregable

only if they are inextricably intertwined with deliberative content. For example, in *Wilderness Society v. United States Department of Interior*, 344 F. Supp. 2d 1 (D.D.C. 2004), the court reviewed a deliberative process privilege claim asserted with respect to drafts of Department of the Interior documents relating to a re-inventory of certain lands in Utah. The court noted that classifying a document as a "draft" does *not* alter the relevant legal standard, and held that "factual information which does not bear on the policy formulation is not subject to the deliberative process privilege." *Id.* at 14. Similarly, in *Exxon Corp. v. Department of Energy*, 585 F. Supp. 690 (D.D.C. 1983), the court held that factual material in draft documents "must be disclosed only if 'reasonably segregable' from privileged material." *Id.* at 698. These cases expressly say that the ordinary segregation principles apply to factual parts of drafts.

The government's cases merely apply the ordinary segregation standard to factual content in drafts of various sorts. The government cites a case in which no segregation was required, *Lead Industries Association, Inc. v. OSHA*, 610 F.2d 70, 86 (2d Cir. 1979), and several that did *not* address the issue of factual content in drafts, but which merely indicated that drafts are generally covered by the deliberative process privilege, *Mobil Oil Corp. v. United States EPA*, 879 F.2d 698, 703 (9th Cir. 1989), *National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114, 1122 (9th Cir. 1988), and *Russell v. Department of Air Force*, 682 F.2d 1045, 1049 (D.C. Cir. 1982). None of these cases undermine the ordinary application of the segregation requirement to factual materials in draft documents.

3. Finally, the government's argument regarding the application of the work-product doctrine to factual materials fares no better. While the government contends that the Court refused to recognize that factual materials can constitute work product at all, the Court expressly recognized that factual materials *can* constitute work product. *Chevron U.S.A., Inc.*, 80 Fed. Cl. at

365. The Court's actual rulings merely required the redaction and production of portions of, or attachments to, documents that were *not* protected work product for other reasons (for example, because they were already in the public domain, or because they were written by Chevron instead of the government).

Nothing in the government's cases addressing the inclusion of factual materials within the scope of work product suggests that documents, including easily segregable attachments, can be withheld in their entirety simply because they contain some work product within them. To the contrary, the government's own authority recognizes that segregation and disclosure of factual material is usually required. *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366 (D.C. Cir. 2005), and ruled that no segregation was required simply because "[e]ach of the nine documents [at issue], in its entirety, [wa]s work product." *Id.* at 370. The government ignores, however, that the court in *Judicial Watch* also explained that where portions of documents were *not* work product, disclosure of those portions would be required. *See id.* at 371 (noting that where "any portions" of documents, including "the attachments, included nonprivileged materials," disclosure of nonprivileged portion with redaction of privileged content is appropriate).

In short, the government has identified no appeal-worthy issue. Indeed, the plain inadequacy of its list of issues merely reinforces that the standard for certification cannot be satisfied in a challenge to the routine discovery rulings at issue here.

### C. Far From Materially Advancing The Litigation As Required, Interlocutory Appeal Would Materially Impede The Litigation

Interlocutory appeal would not materially advance the resolution of this case because even if the Federal Circuit were somehow to reverse this Court's orders on the privilege issues (which is highly unlikely), full discovery and a trial on the merits still would be required. Interlocutory appeal, in fact, would greatly impede ultimate resolution of the litigation if the disclosure orders

were stayed pending appeal. That is because, as the Court and parties have recognized, it is impractical for discovery and trial to proceed before Chevron receives all documents to which the Court has held it is entitled. Ultimate resolution of the case thus would be delayed for however long it would take to resolve the government's appeal.

"Whether interlocutory review of [a] question would materially advance the resolution of [a] case depends in large part on considerations of 'judicial economy' and the need to avoid 'unnecessary delay and expense' and 'piecemeal litigation.'" *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 14 (2001) (citation omitted). The question, therefore, is whether the usual drawbacks of interlocutory appeal are overcome by the possibility that an interlocutory appeal will result in substantial compression of post-appeal proceedings. "For example, certification is appropriate when the court determines that the resolution of the issue certified for interlocutory appeal could result in the entire lawsuit . . . be[ing] dismissed . . . ." *Thorndike v. United States*, 72 Fed. Cl. 580, 585 (2006) (internal quotation marks omitted); *see also Wolfchild*, 78 Fed. Cl. at 484; *Neb. Pub. Power Dist. v. United States*, 74 Fed. Cl. 762, 764 (2006). Even when an interlocutory appeal could result in immediate termination of the case, however, the countervailing prospect of piecemeal litigation may make certification unwarranted. *See, e.g.*, *Am. Airlines*, 71 Fed. Cl. at 747 (noting that it is generally inappropriate to certify decision on liability merely because damages trial might thereby be precluded).

In particular, where the court orders disclosure of allegedly privileged documents, interlocutory appeal generally does not materially advance the ultimate termination of litigation. For example, in *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991), the district court had overruled an assertion of privilege and ordered the production of attorney-client documents. *Id.* at 643. The Federal Circuit concluded that "the district court properly declined to certify its

orders . . . because . . . early appellate resolution would not likely materially advance the ultimate termination of the litigation." *Id.* at 644 (internal quotation marks omitted).[2] Similarly, in *Jade Trading, LLC v. United States*, 65 Fed. Cl. 443 (2005), this Court held that ultimate termination of the litigation would not have been materially advanced by interlocutory appeal of an order compelling production of confidential third-party tax information protected by statute. *Id.* at 448-49. To the contrary, an interlocutory appeal "would result in disruption and delay" because it would not be efficient to proceed to trial, without the tax information, during the pendency of an appeal. *Id.*; *accord Canadian Javelin*, 451 F. Supp. at 598 n.10 ("[R]ather than assisting in the ultimate termination of the litigation, an interlocutory appeal on the privilege question would cause further undue delay herein.").

In this case, while the withheld documents provide compelling evidence of government misconduct, there is sufficient other evidence for the case to proceed through discovery and trial *even if* the Federal Circuit were to reverse the orders compelling disclosure. *Brown*, 3 Cl. Ct. at 412 (interlocutory appeal would not materially advance ultimate termination of litigation because "even in the unlikely event that plaintiff were to prevail in an interlocutory appeal, . . . he would still have to return to trial in this court"). Far from immediately terminating the litigation, therefore, an interlocutory reversal would not even shorten the time to judgment. Instead, as in *Jade Trading*, interlocutory appeal would materially *impede* resolution because, if a stay of

[2] *Accord, e.g.*, *SEC v. Canadian Javelin Ltd.*, 451 F. Supp. 594, 598 (D.C. Cir. 1978) (denying certification of order that overruled assertion of attorney-client privilege), *vacated on other grounds*, 1978 WL 1139 (D.D.C. 1978); *Kockums Indus. Ltd. v. Salem Equip., Inc.*, 561 F. Supp. 168, 174 (D. Or. 1983) (denying certification of order that relied on crime/fraud exception and "compelling need" in overruling assertion of attorney-client privilege and work product doctrine); *Lorenz v. Valley Forge Ins. Co.*, Civ. No. H 82-191, 1984 WL 2234, at *3 (N.D. Ind. Nov. 28, 1984) (denying certification of order overruling assertion of attorney-client privilege and work product doctrine).

disclosure were granted, there would be a potentially lengthy delay before it would be practical to proceed to discovery and trial.

Indeed, even if the Court's discovery orders were reversed after a final judgment, a retrial would not be required. To attack a judgment based on the Court's admission into evidence of allegedly privileged documents, the government would have to show not only that the Court erred but also that the error was prejudicial. *See, e.g.*, *Munoz v. Strahm Farms, Inc.*, 69 F.3d 501, 503 (Fed. Cir. 1995). And even if the government could make that showing, a resulting remand in a Court of Claims case with no jury would require only that the Court reweigh the properly admitted evidence without reference to the improperly admitted evidence; no retrial or other additional proceedings would be needed. *See, e.g., Purdue Pharma L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1135 (Fed. Cir. 2006) (vacating judgment after bench trial and instructing district court on remand to "rethink the relevance of the evidence" and to "reweigh its materiality and intent findings"); *Moncrief v. Williston Basin Interstate Pipeline Co.*, 174 F.3d 1150, 1155 (10th Cir. 1999) ("remand[ing] the case for a determination, on evidence in the record prior to the court's" order admitting wrongful evidence). Thus, proceeding with discovery and trial could not possibly result in wasted efforts that would need to be redone.

The single authority cited by the government on this issue, *Marriott International Resorts, L.P. v. United States*, 63 Fed. Cl. 144 (2004), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006), is inapposite in this context. In *Marriott*, the issue was "whether the deliberative-process prong of executive privilege must be invoked by the head of the relevant agency or department or may be delegated to a subordinate." *Id.* at 145. Resolution of that issue had broad significance bearing on the validity of *all* deliberative process privilege claims made in that and every other case — including this one. *See* Gov. Br. at 12 (noting government's argument in *Marriott* that

resolution would "affect other cases with similar important issues") (internal quotation marks omitted). It was particularly important to resolve that issue as quickly as possible, moreover, because "the circuits [were] split on the issue" and the government argued that there was even a split "within the Court of Federal Claims itself." 63 Fed. Cl. at 146; *Marriott Int'l Resorts, L.P. v. United States*, 122 Fed. Appx. 490 (Fed. Cir. 2005) (reciting government's argument).

Thus, *Marriott* does not establish that the "materially advance" test is satisfied whenever interlocutory appeal would "simplify the litigation going forward." Gov. Br. at 13. The certification test is designed to authorize interlocutory appeals only in "exceptional" cases, not in every case where the litigation could be "simplified" by interlocutory appellate rulings. *See Am. Airlines*, 71 Fed. Cl. at 747 (appeal could "sav[e] the parties and the court time and resources," but if every such case "was considered to meet the standard of 'materially advanc[ing] the ultimate determination of this litigation,' the policy limiting interlocutory appeal to 'exceptional cases' would be severely eroded").

The *Marriott* certification instead reflects the issue's importance for countless other cases involving the deliberative process privilege. *See, e.g.*, *Thorndike*, 72 Fed. Cl. at 585 ("The court also should certify a question for interlocutory appeal when resolution of the issue would materially advance the termination of other claims pending before the Court of Federal Claims."). The issues here, however, are not relevent to other pending cases. While the government asserts that an interlocutory decision would "provide guidance in other cases before the Court of Federal Claims that raise similar important privilege issues," Gov. Br. at 13, it fails to identify any pending case that involves the same issues and would be affected by such a decision. Accordingly, *Marriott* has no bearing on the certification question in this case. *See Am. Airlines*, 71 Fed. Cl. at 747 (potential impact on other cases "might be a viable argument if a significant number of other

commercial airlines had similar pending cases against the Government," but "materially advance" test not met where "[t]he court . . . is aware of only one similar case").

**D. This Court Has Not Already Decided To Certify**

Rather than making a credible argument for certification on the merits, the government's primary argument is that this Court has already found that certification is appropriate. Gov. Br. at 4-5. The government's quotation of several telephonic hearings ignores the Court's express disclaimer that it was merely "thinking out loud," May 9, 2007 Tr. at 39:15-16 (Gov. Br. Ex. A), and was not making definitive decisions. More fundamentally, it ignores that the Court has flatly said, "I don't know that I will or won't" certify. Feb. 13, 2008 Tr. at 4:17-18 (Ex. 1). The Court also indicated that the government's announcement that it intends to file a petition for mandamus in any event undermines any need for certification. Apr. 15, 2008 Tr. at 9:17-20, 14:9-12 (Ex. 2).

**II. THIS COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR A STAY**

A motion seeking to stay pending appeal the effect of an otherwise binding order "must apply the four factors that always guide our discretion to issue a stay pending appeal: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). Courts routinely apply this ordinary four-factor stay test in the context of interlocutory appeals. *See, e.g.*, *United States v. Philip Morris Inc.*, 314 F.3d 612, 621-22 (D.C. Cir. 2003) (applying four-part test to stay pending interlocutory appeal of discovery privilege ruling); *Jackson v. Motel 6 Multipurposes, Inc.*, 172 F.R.D. 469, 473 (M.D. Fla. 1997) (rejecting motion for certification of interlocutory appeal of a "communication order…analogous to a discovery order" and applying traditional four-factor test

also to reject motion for stay of the order pending appeal); *Kearney v. Jandernoa*, 979 F. Supp. 1156, 1159 (W.D. Mich. 1997) (denying motion for certification and applying traditional four-factor test to deny motion for stay pending petition for mandamus); *cf. Scholl v. United States*, 69 Fed. Cl. 395, 395-97 (2005) (expressing "serious doubts" that the government could satisfy the requirements for a stay of an existing "deadline for various filings" based upon mandamus petition to review discovery rulings due to ordinary stay test, including lack of success on "the merits" and lack of "irreparable harm"). Nonetheless, the government simply ignores this governing standard, and does not even attempt to argue that it is satisfied. In fact, none of the foregoing factors supports a stay here.[3]

**A. There Is No Likelihood of Success of the Government's Arguments**

As shown above, the government's list of three issues that it claims warrant certification are plainly inadequate to raise a reasonable difference of opinion, or create any reasonable likelihood of success on the merits. This would be true even if the Court were to certify. It is even more clearly true if the Court denies certification and the government's only avenue of relief is a petition for mandamus, which issues "only when there has been a clear abuse of discretion or usurpation of judicial authority." *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1387 (Fed. Cir. 1996).[4]

[3] The government cites *Coast Federal Bank v. United States*, 49 Fed. Cl. 11 (2001) (Gov. Br. at 14), for the proposition that the ordinary stay test does not apply to interlocutory appeals. But *Coast Federal* did *not* involve the standard for staying the effect of an otherwise operative order requiring a party to take some action, as the government requests here. A stay made perfect sense in *Coast Federal*, because the Court had certified a dispositive issue of law regarding the amortization of certain credit in a *Winstar* case, and all "[f]urther proceedings" would be "'controlled'" by the outcome of the certified question." *Id.* at 13. Thus, unlike here, a ruling on appeal might have forced the parties and the Court to "retry[ the case] under a different set of assumptions." *Id.* at 15. None of this is true here, where the issue merely involves the propriety of certain discovery, and not any legal issue on the merits that could require a new trial.

[4] The government's half-hearted suggestion that the collateral order doctrine could supply a ground to appeal this Court's privilege rulings has been categorically rejected by the Federal Circuit. *See, e.g.*, *Quantum Corp.*, 940 F.2d at 643-44 (holding that there is no basis for appellate

**The Deliberative Process Privilege**. Where the government asserted the deliberative process privilege, the Court compelled production only if a document contained segregable factual material or if Chevron had a "compelling need" for production that outweighed the government's interest in non-disclosure. These rulings were correct for the reasons stated by the Court, and also could be affirmed on alternative grounds.

With respect to the production of segregable factual material, the Court noted "the absolute clarity of the applicable precedent." *Chevron U.S.A., Inc.*, 80 Fed. Cl. at 361 (discussing *Ryan v. Dep't of Justice*, 617 F.2d 781, 791 (D.C. Cir. 1980) (factual content should be disclosed if it "do[es] not reveal the deliberative process and [is] not intertwined with the policy-making process"); *Judicial Watch, Inc.*, 432 F.3d at 372 ("Factual material is not protected . . . unless it is 'inextricably intertwined' with the deliberative material."); *Pac. Gas & Elec. Co. v. United States*, 70 Fed. Cl. 128, 134 (2006)). And the government will not be able to show that the Court failed to apply this precedent faithfully when it made line-by-line judgments that certain factual material was segregable.

Similarly, the Court followed settled precedent in concluding that "[a] showing of compelling need can overcome" the privilege. *Chevron U.S.A., Inc.*, 80 Fed. Cl. at 335-36 (quoting *EPA v. Mink*, 410 U.S. 73, 88 (1973); *Marriott Int'l Resorts, L.P. v. United States*, 437 F.3d 1302, 1307 (Fed. Cir. 2006)). The Court then applied this precedent by inspecting approximately 500 documents *in camera*, evaluating their contents, and, in each instance, balancing Chevron's need "to establish a potential breach of the Equity Process Agreement against

(continued…)

jurisdiction over interlocutory appeals of privilege rulings in discovery under the collateral order doctrine); *see also Connaught Labs., Inc. v. SmithKline Beecham, P.L.C.*, 165 F.3d 1368, 1370 (Fed. Cir. 1999) (noting that mandamus or contempt are the proper mechanisms for review of such rulings).

DOE's competing interest of protecting 'agency officials, deliberative, advisory opinions and recommendations.'" *E.g.*, Jan. 31, 2008 Deliberative Process Order at 2 (quoting *Senate of Puerto Rico v. Dep't of Justice*, 823 F.2d 574, 585 (D.C. Cir. 1987)). Chevron has made at least a *prima facie* showing that documents evidencing *ex parte* communications – particularly those involving Mary Egger's dual role – go to the heart of the claims in this case.[5] Accordingly, the government will not be able to provide any reason for second-guessing the Court's "determinat[ions] that Chevron has established a compelling need that outweighs the harm to the Government." *E.g.*, Jan. 31, 2008 Deliberative Process Order at 2.

The Court's orders are also affirmable on alternative grounds. The Court "declined to consider Chevron's request that the court apply the alleged 'misconduct exception.'" *Chevron U.S.A., Inc.*, 80 Fed. Cl. at 361. However, federal appellate courts, including the D.C. Circuit, have held that "[t]he [deliberative process] privilege disappears altogether when there is any reason to believe government misconduct has occurred." *In re Sealed Case*, 121 F.3d 729, 746 (D.C. Cir. 1997); *see also id.* at 738 ("[W]here there is reason to believe the documents sought may shed light on government misconduct, 'the privilege is routinely denied,' on the grounds that shielding internal government deliberations in this context does not serve 'the public's interest in honest, effective government.'"); *In re Subpoena Served Upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992) ("the privilege may be overridden where necessary . . . to shed light on alleged government malfeasance") (internal quotation marks omitted). Were it needed to

[5] The Court also noted that the documents "arguably . . . are not subject to the deliberative process privilege at all" because "the Government participants were not engaged in policy-making in the traditional sense." 80 Fed. Cl. at 361. This point was not ultimately relied upon by the Court to avoid threshold application of the privilege, but it significantly diminishes the Government's interest in non-disclosure.

compel production here, therefore, the *prima facie* showing of government misconduct in this case provides an independent basis for affirming this Court's orders.[6]

**The Attorney-Client Privilege.** Where the government asserted the attorney-client privilege, the Court compelled production only of (1) "documents that were authored by or were received by Chevron," (2) "attorney communications that do not provide legal advice, but rather concern primarily or exclusively technical or factual information," and (3) documents subject to the crime/fraud/misconduct exception. *Chevron U.S.A., Inc.*, 80 Fed. Cl. at 363-64. In its motion for reconsideration, the government made clear that it had not intended to claim attorney-client privilege over documents authored or received by Chevron. The government, therefore, presumably will not appeal the first category, and it certainly will not succeed if it does. Furthermore, in assessing whether a communication concerned legal advice, the Court directly applied the rules set forth in *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000), so any appeal of the Court's assessments would be fruitless.

The government also is unlikely to succeed on the merits of any challenge to the Court's application of the crime/fraud/misconduct exception, as shown above. Even the government concedes the existence of a crime/fraud exception to the attorney-client privilege, and the Court correctly recognized that the D.C. Circuit applies the exception to other forms of misconduct. *See Chevron U.S.A., Inc.*, 80 Fed. Cl. at 363; *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985); *In*

[6] Furthermore, the Government's affidavit asserting the applicability of the deliberative process privilege is deficient. As the Court observed, the government's assertions of privilege should have been made by the Secretary of Energy or a delegate who was "not directly responsible for or involved in [the] substantive litigation." *Marriott Int'l*, 437 F.3d at 1308. But the Secretary's delegate in this case, Principal Deputy General Counsel Eric Fygi, plainly did not meet those criteria. *See Chevron USA, Inc.*, 80 Fed. Cl. at 360-61. Because Mr. Fygi was not the appropriate affiant, and because his claim of non-involvement deprived his affidavit of credibility, the Court's orders also could be affirmed on the ground that the Government did not properly assert the deliberative process privilege.

*re Sealed Case*, 676 F.2d 793, 812 (D.C. Cir. 1982); *see also Weiss*, 155 Ct. Cl. at 886-87; *Moody*, 654 F.2d at 800-01; *Witmer*, 835 F. Supp. at 212, 221.

Under these clear rules, the required showing of misconduct has been made. The Protocol and the Equity Process Agreement (which were drafted by the government) plainly prohibit *ex parte* communications. Neither Mary Egger's dual role nor the occurrence of other *ex parte* communications is disputed.[7] And the Court narrowly limited its application of the misconduct exception to just twelve documents, based on content reviewed *in camera*. The government, therefore, cannot succeed in challenging the Court's finding of evidence sufficient to trigger the misconduct exception in this case. For these reasons, any mandamus review of the rulings on attorney-client privilege would fail on the merits.

**The Work Product Privilege.** Where the government asserted the work product doctrine, the Court ordered production only of (1) segregable factual material, (2) documents prepared neither by an attorney nor for an attorney by that attorney's agent, and (3) certain documents for which Chevron had a "substantial need" yet no ability to obtain the same information from other sources. Order at 36-37. The Court's disclosure orders are correct and also are affirmable on other grounds.

Just as the deliberative process privilege does not preclude a disclosure of factual material that reveals no internal government deliberations, the work product doctrine does not preclude a disclosure of factual material that reveals no attorney work product. And, as shown above, facts do not become work product simply because they are included in a document that otherwise consists of attorney work product.

[7] Specifically, it is undisputed that Ms. Egger "was a key legal and strategic advisor to the 'DOE Equity Finalization Team' while, at the same time, serving as the principal legal and strategic advisor to the ASFE and the ASFE's technical advisors." *Chevron USA, Inc.*, 80 Fed. Cl. at 360 (footnote omitted). The Court correctly determined that in light of Ms. Egger's role on the DOE Equity Finalization Team, "she functioned as a legal and technical member of" the EFT.

The Court also applied the well-settled rule that the work product doctrine "'protect[s] materials prepared by agents for the attorney, as well as those prepared by the attorney.'" *Chevron U.S.A., Inc.*, 80 Fed. Cl. at 366 (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)). Thus, the government at most can quibble with the Court's determination that certain DOE employees were not agents of certain attorneys, and the government is unlikely to win a reversal on that basis.

Finally, the Court applied the well-settled rule that "'work product protection is *qualified* and may be overcome by need and undue hardship.'" *Id.* at 365 (quoting *In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed. Cir. 2007)). In applying this rule, the Court took account of the greater protection afforded to opinion work product. *See id.* And there can be no question that Chevron has a "substantial need" for documents that "may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement." *E.g.*, Work Product Order at 1. Such documents establish the precise breach of contract claimed by Chevron in this case, and Chevron simply has no ability – with or without hardship – to obtain the same pieces of evidence from other sources. While Chevron has other evidence of the government's wrongdoing, the documents at issue may provide particularly clear evidence of the gravity and scope of the wrongdoing, thus significantly limiting Chevron's ability to present its case. The Court properly exercised its discretion in ordering disclosure – subject to a protective order – of the limited number of documents found to meet this standard based on careful *in camera* inspection. The government is not likely to succeed in challenging these determinations on appeal.

In the alternative, disclosure of several documents could be sustained under the "misconduct" exception discussed above. It is undisputed that the crime/fraud/misconduct exception applies equally to the attorney-client privilege and the work product doctrine.[8] Perhaps

[8] Indeed, the leading case applied the exception to the work product doctrine, while recognizing that the same exception would apply to the attorney-client privilege, "since the

because the same documents are subject to disclosure on the basis of "substantial need," the Court "declined to consider Chevron's request to apply the misconduct exception to contested work-product privilege documents at this time," while stating that it "may revisit this decision, if required." *Chevron U.S.A., Inc.*, 80 Fed. Cl. at 366. For this independent reason, the government is not likely to succeed in appealing the Court's order compelling production of putative work product.

### B. The Government Will Experience No Irreparable Harm In The Absence Of A Stay

The government will experience no irreparable injury from disclosing the disputed documents, and thus there is no reason to stay their disclosure pending appeal. Contrary to the government's claim that its privilege assertions "will be moot" if it complies with the Court's order, Gov. Br. at 14, the Federal Circuit has held that privilege rulings can be "effectively review[ed]" after trial. *Quantum Corp.*, 940 F.2d at 644. The critical reason this is true — which the government ignores — is that compliance will not result in the public disclosure of the documents. The Court can impose a protective order that will prevent any public disclosure of the documents. Such a protective order would provide the government ample opportunity for effective relief in the unlikely event that the Federal Circuit were to disagree with this Court's rulings. *See, e.g., Jade Trading, LLC*, 65 Fed. Cl. at 449 (finding that interest in non-disclosure of documents would "be adequately protected by a Protective Order"); *Dairyland Power Co-op v. United States*, 77 Fed. Cl. 330, 339 (2007) ("By this limitation on who can see and use the documents, the harm to government deliberations from disclosure to the public is further minimized.").

---

(continued…)

coverage and purposes of the attorney-client privilege are completely subsumed into the work product privilege." *In re Sealed Case*, 676 F.2d at 812. Even if disclosure were not otherwise required, therefore, the misconduct exception would require disclosure of work product documents that relate directly to DOE's improper *ex parte* communications.

In short, the government recites no basis to support any irreparable injury. If it were somehow to prevail in a post-trial appeal, there would have been no public disclosure of the documents precluding effective relief. Therefore, the second prong of the stay test is not satisfied.

**C. A Stay Would Harm Chevron And The Public Interest**

The requested stay would injure Chevron and disserve the public interest by further delaying this litigation, by further delaying the termination of the current equity finalization process, and by further delaying any legitimate resolution of equity finalization.

Chevron filed this lawsuit in August 2004, after the government had already taken nearly a year to respond to Chevron's Freedom of Information Act requests. Then, after the Court rejected the government's motions to dismiss, the case was set for a liability trial beginning on April 30, 2007. The government's ensuing privilege claims, therefore, already have set back the trial schedule by well over a year. Chevron, in fact, has not even been able to begin deposing the government's witnesses, all of whom authored or received documents that the government has withheld. Similarly, Chevron's expert witnesses will not be able to complete their reports until the factual record is more fully developed.

A further delay for a full appeal of the privilege claims – which could potentially last more than a year – should be avoided for several reasons. The Court has invested countless hours of effort in this case, particularly in recent months, and it would serve the interests of judicial efficiency and economy to proceed promptly through discovery and trial. Furthermore, important witnesses for both parties – as well as third-party witnesses – have retired or otherwise ceased involvement in equity finalization, and others may do so in the relatively near future. Promptly proceeding with depositions and possibly a trial will minimize the burden on these witnesses and will minimize any diminishment of recollection before testimony is taken. And Chevron, after

more than three and one-half years of litigation including an 18-month wait for documents, is entitled to proceed toward resolution on its claims based on DOE's facially egregious conduct.

Even more importantly, delayed resolution of this litigation will prolong the underlying equity finalization process, which has been irreparably tainted by the DOE's breaches of the Equity Process Agreement. In this Court, Chevron seeks only a judgment of breach and reliance damages to compensate it for expenditures wasted on the tainted process. But even after those damages are awarded, any results of the current process will be illegitimate and unenforceable. *See Chevron USA, Inc. v. United States*, 71 Fed. Cl. 236, 274 n.22 (2006) ("Implicit in [Chevron's] argument is the position that, absent compliance with the procedures contained in the Equity Process Agreement, the ASFE cannot render a final equity determination within the meaning of the Equity Process Agreement."). DOE nevertheless has refused to stay that process, and Chevron has been compelled to protect its rights by continuing to participate in the process under protest. Chevron will be safe in refusing further participation (and presumably even DOE will halt the tainted process) only after the liability phase of this litigation is complete. In the meantime, DOE and Chevron (under protest) will continue to expend substantial effort and resources on the process.

A delay in the resolution of this case, therefore, will increase the amount of time, money and other resources wasted on the tainted equity finalization process. Even if Chevron could be compensated through reliance damages, that will just mean the burden of the additional wasted efforts would further fall on the public fisc. Accordingly, the stay requested by DOE – and the resulting delay in ultimate resolution of this litigation – will harm the public interest.

For the same reasons, the requested stay also will delay the ultimate resolution of equity finalization. Because the current process is tainted, equity finalization can only be resolved by an

agreement of the parties (or a court order) to abandon the process or begin a new process. But such an agreement or order is unlikely to occur before the resolution of this case, so a further delay in this case will further delay the ultimate resolution of equity finalization.

Further delay in the ultimate resolution of equity finalization is harmful to both parties and to the public interest. DOE, in fact, has directly conceded this point. Before DOE's Office of Hearing and Appeals, Chevron sought to stay the tainted process so that further resources would not be wasted on a process that could not produce a legitimate and enforceable result. DOE, while denying that the current process is tainted, responded that it would "harm the DOE and the public interest" to "further delay" the completion of equity finalization. Opp'n to OHA Stay at 12-13 (Ex. 3). DOE acknowledged that equity finalization "has already been a lengthy process, one that was originally envisioned to have been completed years ago." *Id.* at 13. Indeed, equity finalization was mandated by a federal statute that Congress passed in 1996 and that required completion within eight months. National Defense Authorization Act for Fiscal Year 1996, Pub. L. No. 104-106 § 3412(a), 110 Stat. 186 (1996). DOE has recognized that even without such a legislative mandate, "there is a 'strong public interest' in efficient decision-making in the administrative setting." Opp'n to OHA Stay at 13 (quoting *Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*, 53 F.3d 1395, 1407 (4th Cir. 1995)). Given Congress's directive, it is plain that the public interest weighs heavily against further delay of equity finalization.

In addition, DOE has argued that further delay of equity finalization "will tax the DOE, which has invested significant time and personnel to complete the process." *Id.* The same is true, of course, for Chevron. Equity finalization should be resolved as promptly as possible so that these personnel – and Chevron and DOE more generally – can move on to other matters. By

causing inevitably costly delays, therefore, the requested stay would substantially harm both parties as well as the public interest.

**D. The Government Fails Even Its Own Improper Test**

The foregoing discussion demonstrates that the government fails even its own stated standard for a stay, namely, "a clear case of hardship or inequity in being required to go forward." Gov. Br. at 14 (internal quotation marks omitted). As shown above, producing disputed materials to Chevron subject to the full safeguards of a stringent protective order would not create any hardship for the government. To the contrary, a stay would create a severe and unnecessary harm to Chevron and the public, far outweighing any marginal inconvenience to the government. Even under the government's improper standard, a stay should be denied.

**CONCLUSION**

For the foregoing reasons, Chevron respectfully requests that the Court deny the government's motion to certify the discovery orders for interlocutory appeal. Chevron also respectfully requests that the Court deny the government's motion to stay the Court's April 4, 2008 order.

Dated: April 25, 2008

Respectfully submitted,

/s/ Lawrence D. Rosenberg

Donald B. Ayer
Lawrence D. Rosenberg
*Counsel of Record*
Michael S. Fried
Louis K. Fisher
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*