# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A., )
Plaintiff, )
v. ) No. 14-1365C
THE UNITED STATES, )
Defendant. )

Chambers 702
National Courts Building
717 Madison Place N.W.
Washington, D.C.
Wednesday,
February 13, 2008

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on February 14, 2008.)

BEFORE: HONORABLE SUSAN G. BRADEN
JUDGE

APPEARANCES:

For the Plaintiff:
LARRY ROSENBERG, Esquire

For the Defendant:
JOHN KOSLOSKE, Esquire
U.S. Department of Justice

P R O C E E D I N G S

(2:18 p.m.)

THE CLERK: Counsel, this is Joe Whitehead, Judge Braden's law clerk. We're going to go ahead and get started. This is being digitally recorded so please state your name and the party you represent to start.

MR. ROSENBERG: This is Lawrence Rosenberg of Jones, Day for Plaintiff Chevron. With me here are Donald Ayer, Louis Fisher also of Jones, Day, and Veronica Rawa, in-house counsel for Chevron.

MR. KOSLOSKE: John Kosloske, Department of Justice representing the United States. With me is Anuj Vohra, also of the Department of Justice.

THE COURT: All right, it's Judge Braden. Good afternoon. What's up?

MR. ROSENBERG: Judge Braden, it's Larry Rosenberg. We're not sure that we want to bother you for very much time but we had noticed that shortly before your privilege ruling had come out, I think Joe suggested that you might want to talk to the parties about scheduling some time in the near future and both Mr. Kosloske and I are going to be out of town for a good chunk of time in the next week or two, we thought we might discuss whatever is at issue now.



The only thing that I wanted to ask -- a little quick question about clarification is, in the order you had said that the parties should by March 18 provide their views as to whether they intend to request the Court to certify, and my question is do you just want us to let you know whether we intend to do it or are you looking for some kind of briefing by the 18th. What did you have in mind?

THE COURT: No, I just want to know. If neither party intends to ask for certification, then that's when we set a schedule, and if the government decides not to ask then their production of documents is due on that date, I recall.

MR. ROSENBERG: Right, that's what the order says.

JUDGE BRADEN: Okay?

MR. ROSENBERG: Okay. If we decide not to certify, we think that the government shouldn't get certification, you're not looking for a brief from us on that date?

THE COURT: No, because the government will file something and then you'll respond if they do. Or not.

MR. ROSENBERG: Okay. If the government does certify, they'd file a brief then on the 18th?



JUDGE BRADEN: The government has to say what they want to do on the 18th. If they decide they need some additional time to do a brief, that's fine. We'll set a schedule on that date on the 18th. I was not anticipating receiving briefs from anybody, but just a statement.

MR. ROSENBERG: Okay.

JUDGE BRADEN: There was no reason for me to talk to you all until we get to that next stage; there's nothing else you need me for I hope.

MR. ROSENBERG: Okay. I think that's fine, Your Honor. I take it you don't want --

THE COURT: I don't want to get ahead of things. Let's just do one thing at a time, we've got a whole pile of other motions pending. It seems to me that once we get to the 18th, then if neither party has an interest in certifying -- I don't know that I will or won't but it seems to me that that's the next juncture we get to. Then if neither party wants to I'm certainly not intending to do it on my own. Then we'll have a scheduling conference and start lining up these other briefs and whatever other discovery and things you need to do.

It seems to me the next order of business would be the government's motion to dismiss,



logically, and even though it came in after the motion for summary judgment but I think I need to work on the motion to dismiss before I get to summary judgment, if we get to summary judgment. That would be the next logical step, it would seem to me. The government has something else they filed, I can't even remember -- the day after the privilege order. Do you remember what it was?

MR. KOSLOSKE: We filed a motion in limine regarding the Plaintiff's experts, Your Honor.

JUDGE BRADEN: Well, you did that before.

MR. KOSLOSKE: We filed a motion to compel, Your Honor.

JUDGE BRADEN: Right, but there's nothing to compel -- it seems to me that that's again the cart before the horse. You're entitled to have specific answers but a lot of what you want them to give you are in these documents, which they don't have yet.

MR. KOSLOSKE: We filed a motion; we've since come to an agreement with the Plaintiff's attorney that action can be deferred on that motion until March 18 when --

JUDGE BRADEN: Okay, that's fine, we'll make a note of that for the record so it's clear that the parties have agreed. We'll just put a little notation

# EXHIBIT 2

UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S., )
Plaintiff, )
v. ) No. 04-1365C
UNITED STATES, )
Defendant. )

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on April 15, 2008.)

BEFORE: THE HONORABLE SUSAN G. BRADEN
JUDGE

APPEARANCES:

For the Plaintiff:
LAWRENCE D. ROSENBERG, Esquire
DONALD AYER, Esquire
MICHAEL FRIED, Esquire
Jones Day
Washington, D.C.

For the Defendant:
JOHN KOSLOSKE, Esquire
JOHN KENNER, Esquire
ENISH BORA, Esquire
U.S. Department of Justice

discuss is the Court's April 4, 2008, order, in particular that part of the order that directs the government to produce all the documents on our log with the exception of the 13 documents that are the subject of the motion for reconsideration. As indicated in the notice of compliance that we filed, in our view, that order to produce is overbroad in several respects.

THE COURT: Well, I agree with you on that. I did not intend to deal with the documents that we had not looked at, and so I should have been more specific about that. I mean, that is more than I expected to do.

MR. KOSLOSKE: I think that what we would respectfully request is that Your Honor vacate that aspect of the April 4 order and ultimately modify the January 31, '08, order to require only production of documents consistent with that order. And then finally we'd request that the Court stay any directive to produce documents pending our exhaustion of all appellate avenues and relief.

THE COURT: Well, that's a lot for me to remember.

MR. KOSLOSKE: Your Honor, we'd be happy to put it in a filing for you.



THE COURT: I think we need to do that.

MR. KOSLOSKE: Sure.

THE COURT: Okay. And I'm not going to vacate anything, but I don't mind amending the April 4th order to clarify that I intended production of documents for which I have been reviewing them for privilege --

MR. KOSLOSKE: The government will --

THE COURT: -- except for the ones that you asked for reconsideration of, because I haven't gotten to those yet. And there's nothing wrong with me ordering you, and then you want to file your mandamus. So I don't know what you -- you know, procedurally, if you file the mandamus, are you filing it with the --

MR. KOSLOSKE: Our preference would be to file a combined petition for mandamus and for interlocutory appeal.

THE COURT: Well, the problem with that, as I recall, when you file for a mandamus, the Court asks -- then Chevron doesn't get to say anything unless the Federal Circuit asks them to respond. So you're kind of precluding them from being able to make a response.

MR. ROSENBERG: Yes. Your Honor, it's Larry Rosenberg.

THE COURT: But, I mean, you know, you're



welcome to do that. I'm sure they'll figure this out.

MR. ROSENBERG: But, Your Honor, I'm very confused by that. Mandamus requires you as one of its preconditions to show that you have no alternative avenue for relief.

THE COURT: Well, I understand that, but I can't prohibit them. They can do whatever they want.

MR. ROSENBERG: No, that's right. I just don't understand why they would file --

THE COURT: I think that the Federal Circuit will --

MR. ROSENBERG: -- a writ of mandamus petition while certification --

THE COURT: Well, that's all right. I mean, if they want to do it, they should feel free to go ahead and do it. I mean, I think the Circuit may look at it a bit like I looked at their filing of the notice. I mean, if they filed that notice of appeal and were planning to follow through a petition, they could have said so. They didn't do that. I don't know what they did to tell you the truth. They filed a notice of appeal that was void. I can't imagine the Solicitor authorized it if the Solicitor knew there was a motion for reconsideration pending. My sense is either the staff just did it on their own or the



Solicitor wasn't told there was a motion pending.

Now I don't know what happened, but that would be my best guess. So, if they want to complicate the situation further, I don't think we should get in their way as far as I'm concerned. I mean, they're free to file whatever they want to file. I don't want to stop them from filing a mandamus if they feel like they want to. And Chevron can do whatever you want to do. Under the rules, it prohibits you from being -- the Federal Circuit will let you know if they want to hear anything about it.

MR. ROSENBERG: Right, right.

THE COURT: And if they combine it with a petition to seek interlocutory review, I suspect they'll figure that out. I mean, they'll figure out the same thing I did, which is, you know, exactly -- we're playing it a bit fast and loose. I've never said that I wouldn't entertain a motion for that, but I don't want to preclude them from seeking a mandamus under whatever grounds they think they have.

MR. ROSENBERG: Right, right. Well, our position for Chevron, Your Honor, is, and we're happy to do whatever the Court wants --

THE COURT: Well, there's nothing for me to want. It seems to me the government's basically in

Page 14

plunge away.
MR. KOSLOSKE: Well, it would be the motion to certify the three issues is what we would be filing this week and hopefully receiving a ruling on certification.
THE COURT: But you're not going to be getting a ruling from me on that any time in the near future. I mean, I don't know what you've got you're filing here. But if you're filing a motion before me and you're filing a mandamus, I'm not going to interfere with your ability to go to the Federal Circuit.
MR. KOSLOSKE: We were going to withhold the filing of the mandamus until you had an opportunity to consider certification. And then if you acted favorably on the request for --
THE COURT: Well, that's like blackmail. I mean, I don't understand what you're doing. I really don't. But you file whatever motions you want to file before whoever you want to file them. If you file a motion before me of some sort on Friday, then I'll get to it. I'm not going to get to it until after I have briefing from the other side. We'll probably have an argument on it, and I'm not going to do it anytime soon. I'm going to be out of the country in June for

Page 15

two weeks. There's no way I'm going to get to this probably until, you know, the middle of the summer at the best.
And I'd like to be able to do the motion for reconsideration. But, I mean, if you feel like you need to do -- I don't want to hold you up. If you want to go to the Federal Circuit and do something now, I mean, you do what you want to do. Just because you file a motion doesn't mean I have to respond to it, you know, in the next three days. You all have been fighting about this for quite some period of time, and I certainly have devoted a tremendous amount of time to try and address these issues. But I do have other cases on my docket that are on the schedule.
MR. ROSENBERG: Your Honor, it's Larry Rosenberg. I think that brings up the other sort of question that the government's filing raises, which is whether there would be a stay of the Court's order to produce the documents that you ordered produced in your privilege order.
THE COURT: Well, I don't know why I need to stay it.
MR. ROSENBERG: Right.
THE COURT: My view is that I have

Page 16

jurisdiction in the case and off we go. I think I've asked for briefing on -- we've got a motion on jurisdiction I think that's due as well.
MR. ROSENBERG: Right. Because this is --
THE COURT: So I do need to clarify this April 4th order, because I didn't mean for them to turn over -- I guess I'll have to figure how we did it. You designated documents that you wanted me to read.
MR. ROSENBERG: Right.
THE COURT: So we need to come up with some way of describing those documents.
MR. ROSENBERG: Right. I think it would be the documents that the Court ordered --
THE COURT: Well, I didn't order, you requested what I read.
MR. ROSENBERG: Right, right.
THE COURT: To be all documents that the Court was requested to read or something that had been withheld to date as privileged. I need to add that in there. The government's right about that.
MR. ROSENBERG: Yes. That's fine.
THE COURT: All right. And we have a pending motion for reconsideration, and I'm not going to be able to get to that in the next day or two.
MR. ROSENBERG: Right.

Page 17

THE COURT: So, I mean, you know, I don't know what exactly the government has in mind, but we'll wait and see what they do on Friday.
MR. ROSENBERG: Right.
THE COURT: I don't feel any need to kind of get in the way other than just to clarify what I meant in that order, and then we'll see. They can move for a stay if they want. They haven't said they want to do that. I haven't heard them say that.
MR. KOSLOSKE: Yes, I think I did mention that, Your Honor. John Kosloske.
THE COURT: Well, I have not seen a motion in writing.
MR. KOSLOSKE: Well, at least as we discussed a few minutes ago, we'll file a motion for clarification of the April 4 order and --
THE COURT: Well, I can clarify that on my own. I mean, there's no reason I can't go ahead and do that. I don't need to impose that on you. But if you want to stay something, you've got to state the reasons why.
MR. KOSLOSKE: Yes.
THE COURT: But I don't think that a motion for certification necessarily should be granted because there's a -- a stay should be granted because

# EXHIBIT 3

Case No. TEA-0010

# U.S. Department of Energy

# Office of Hearings and Appeals

Chevron USA Inc., *Appellant*,

*v.*

United States Department of Energy, *Appellee.*

ON APPEAL FROM THE PRINCIPAL DEPUTY ASSISTANT SECRETARY FOR FOSSIL ENERGY'S DECISION FINALIZING THE PARTICIPATION PERCENTAGES IN PRODUCTION FROM THE STEVENS ZONE, NAVAL PETROLEUM RESERVE NO. 1

## DEPARTMENT OF ENERGY'S OPPOSITION TO MOTION OF CHEVRON USA INC. TO STAY OR CONTINUE THE APPEAL

U.S. DEPARTMENT OF ENERGY
ADA L. MITRANI
U.S. DEPARTMENT OF ENERGY
FORS, RM. 6H-065
1000 INDEPENDENCE AVENUE SW
WASHINGTON, DC 20585
TELEPHONE: (202) 586-5550
FACSIMILE: (202) 586-3437

O'MELVENY & MYERS LLP
GREGORY B. THORPE
ROBERT M. SWERDLOW
400 SOUTH HOPE STREET
LOS ANGELES, CA 90071-2899
TELEPHONE: (213) 430-6000
FACSIMILE: (213) 430-6407

*Attorneys for Appellee the United States Department of Energy*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1
II. BACKGROUND ..... 3
A. The Equity Process Agreement ..... 4
B. The Decision Under Appeal and Chevron's Prior Stay Requests ..... 5
C. The Claims Court Action ..... 7
III. ARGUMENT ..... 8
A. Legal Standards Governing Chevron's Motion ..... 8
B. A Stay Is Not Warranted ..... 10
1. Chevron Cannot Show it Will Suffer An Irreparable Injury if the Stay Is Denied. ..... 10
2. A Stay Will Harm the DOE and the Public Interest. ..... 12
3. None of the Other Factors Favor Granting An Indefinite Stay ..... 14
IV. CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page

## CASES

*Cherokee Nation of Oklahoma v. United States*,
124 F.3d 1413 (Fed. Cir. 1997) .......... 12

*Chevron U.S.A. v. United States*,
71 Fed. Cl. 236 (2006) .......... 7

*Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*,
53 F.3d 1395 (4th Cir. 1995) .......... 13

*Dorelien v. United States Attorney General*,
317 F.3d 1314 (11th Cir. 2003) .......... 9

*In re Ashland Oil Co.*,
No. BEA-07100 (Dept. of Energy OHA Sept. 24, 1981) .......... 9

*In re Crude Oil Co. (TCC)*,
No. BEE-1015 (Dept. of Energy OHA Dec. 16, 1981) .......... 9

*In re Environmental Protection Services, Inc.*,
2003 EPA ALJ Lexis 25 (2003) .......... 10

*In re Fountain Foundry Corp.*,
1994 EPA ALJ Lexis 71 (1994) .......... 9

*In re Philip Morris, Inc.*,
Docket No. 8838, 79 F.T.C. 1023 FTC Lexis 363 (1971) .......... 10

*In re Rambus Inc.*,
Docket No. 9302 FTC Lexis 41 (2002) .......... 12

*In re Southern Company*,
No. VES-0096 (Dept. of Energy OHA October 2, 2002) .......... 8

*PNC Financial Services Group, Inc. v. C.I.R.*,
-- F.3d --, 2007 WL 2403550 (D.C. Cir. August 24, 2007) .......... 10

*Randolph-Sheppard Vendors of America v. Weinberger*,
795 F.2d 90 (D.C. Cir. 1986) .......... 10

*United States v. Standard Oil Co.*,
545 F.2d 624 (9th Cir. 1976) .......... 3, 4

## STATUTES

10 C.F.R. § 1003.40 .......... 8, 9

10 C.F.R. § 1003.40(b) .......... 8

Pub. L. No. 104-106, § 3412(a), 110 Stat. 631-32 .......... 4

# I. INTRODUCTION

Appellant Chevron USA Inc. ("Chevron") moves to stay its own appeal of the Assistant Secretary for Fossil Energy's ("ASFE") February 2007 decision finalizing participation percentages in production from the Stevens Zone, Naval Petroleum Reserve No. 1, through "final resolution" of *Chevron U.S.A., Inc. v. United States* (No. 1:04 CV 1365) (the "Claims Court Action"). (Mot. at 21.) According to Chevron, such a stay is necessary for two reasons. First, Chevron claims that trial in the Claims Court Action is scheduled to begin in early February 2008 and that the outcome of that trial "could impact the issues before th[is] Office—and could potentially even affect the Office's jurisdiction over the appeal[.]" (Mot. at 18.) Second, Chevron claims that discovery in the Claims Court Action is ongoing and is likely to result in the production of documents that are "essential" to this appeal. (Mot. at 9.) Neither claim justifies the indefinite stay Chevron seeks and there is no reason to stay this appeal.

First, as this Office previously recognized in denying Chevron's first stay request, Chevron's claims about alleged breaches of the "Agreement Regarding Equity Redetermination Process" (the "Equity Process Agreement") are outside this Office's purview, and the fact that Chevron is pursuing such claims in another forum is not a sufficient reason to stay this proceeding. That reasoning remains sound and Chevron's current motion should be denied for the same reasons. Chevron is not entitled to stay this proceeding merely because it is seeking money damages from another court for the alleged breach of the Equity Process Agreement and this Office should not stay this proceeding (just as it did not stay the previous appeal) in anticipation of uncertain action by the Court of Federal Claims.

Second, contrary to Chevron's claim, the judge presiding over the Claims Court Action will not "enter a judgment resolving Chevron's claims of breach of contract[,]" by "early next year[.]" (Mot. at 3.) The court has bifurcated the trial of the Claims Court

Action, with "phase one" scheduled to begin in February 2008 and limited to whether any *ex parte* communications prohibited by the Equity Process Agreement actually occurred (the so-called "liability stage" of the trial). The question of whether Chevron is entitled to the relief it has requested—money damages in the amount of Chevron's expenditures in the equity finalization process—is reserved for phase two (the so-called "damages stage"), which has not yet been scheduled. As a result, even if Chevron prevails in phase one, the limited issues that will be addressed during that trial will not result in a final judgment that might impact the scope of this proceeding or this Office's jurisdiction. In reality, granting Chevron an indefinite stay until the conclusion of the Claims Court Action would likely delay this proceeding, unnecessarily, for years.

Chevron's second argument, that it cannot proceed until discovery in the Claims Court Action is completed, ignores the limited scope of the issues properly before this Office on this appeal. Chevron previously appealed the Assistant Secretary for Fossil Energy's ("ASFE") June 2002 Stevens Zone decision to this Office. In that appeal, Chevron challenged only one issue, whether the ASFE had erred in choosing a methodology to convert gas to barrels-of-oil equivalent ("BOEs"). In January 2005, this Office granted Chevron's appeal in part, reversed the ASFE's decision, and remanded it to the ASFE with instructions as to the BOE methodology.

The Equity Process Agreement specifies that following such a remand, Chevron is limited to challenging "any ***further*** determination of the ASFE on such remand…." (Chevron Appendix at Ex.1 at ¶ B(8) (emphasis added)). Thus, this appeal, by the terms of the Equity Process Agreement, may not address the June 2002 decision and will address only a single, relatively narrow, issue that can (and should) be decided by this Office without reference to the documents or allegedly improper *ex parte* communications at issue in the Claims Court Action.[1]

[1] In its Notice of Appeal, Chevron lists seven "Issues Under Appeal" and four "Errors in the Administrative Decision," dating back nearly a decade before the ASFE's February 2007

Finally, none of the other criteria that must be considered before granting Chevron's motion favor imposing an indefinite stay. Granting Chevron's motion would indefinitely stay a process that Congress originally sought to have concluded almost a decade ago. Both the Department of Energy and the public have an interest in the prompt and efficient resolution of this proceeding, which requires ongoing time and attention from Department of Energy personnel. This interest is particularly strong here where Chevron may ultimately be required to pay the government tens of millions of dollars. As Chevron admits, there is no impediment that prevents it from proceeding with this appeal at this time and it is prepared to do so "under protest." Nor has Chevron attempted to prove that it is likely to succeed on the merits of its appeal.

For the foregoing reasons, appellee the United States Department of Energy ("DOE") respectfully requests that this Office deny Chevron's motion for a stay.

## II. **BACKGROUND**

This proceeding relates to the parties' long-running efforts to finalize their equity interests in the "Elk Hills" oil field in Kern County, California. In 1912, the President issued an Executive Order designating Elk Hills as "Naval Petroleum Reserve No. 1" ("NPR-1"), making the field a petroleum reserve under the jurisdiction of the Secretary of the Navy. Although the land within the reserve was primarily owned by the federal government, it also included some lands subject to private interests all of which ultimately came under the ownership of Standard Oil of California, the predecessor to Chevron. Standard's lands were not contiguous but were "checker-boarded" throughout the reserve. *See United States v. Standard Oil Co.*, 545 F.2d 624, 626-27 (9th Cir. 1976).

---

decision. The Department of Energy objects to the majority of these issues and errors as impermissible under the terms of the Equity Process Agreement and outside this Office's jurisdiction. As this filing addresses only Chevron's stay motion, we will defer our substantive response to those purported issues at this time.

In 1944, the Navy and Standard entered into a Unit Plan Contract ("UPC") which provided that the field would be operated as a single unit and gave the Navy ultimate authority over operation of the field. The UPC also established initial equity ownership interests in the field and provided for periodic redeterminations of those interests. Federal jurisdiction over the reserve was transferred to the DOE upon its creation in 1977. *Id.*

In 1996, Congress enacted legislation directing the Secretary of Energy to sell the Government's interest in the reserve within two years and to finalize equity interests in the four known oil and gas zones. Pub. L. No. 104-106, § 3412(a), 110 Stat. 631-32. The Secretary of Energy was directed to retain the services of an independent petroleum engineer ("IPE"), mutually acceptable to the equity owners, to prepare a recommendation for each owner's final equity percentage in three of the field's known oil and gas zones. After agreement by Chevron, the Department retained the services of Netherland Sewell & Associates Inc. ("NSAI") to serve as the IPE.

When it became clear that the parties would not be able to complete the equity finalization process before the mandated sale date, the parties entered into two agreements, the "Agreement Regarding Fixing of Equity Interest at NPR No. 1 for Purpose of Sale" (the "Decoupling Agreement"), and the "Agreement Regarding Equity Redetermination Process" (the "Equity Process Agreement"). It is the latter of these two agreements, the Equity Process Agreement, which underpins this Office's jurisdiction to hear this appeal.

## A. **<u>The Equity Process Agreement</u>**

Under the Equity Process Agreement, the IPE is empowered to make a final recommendation to the Assistant Secretary for Fossil Energy ("ASFE") for each of the four hydrocarbon-bearing zones. (Chevron Appendix at Ex. 1 at ¶ B(2).) The ASFE may

accept or reject the IPE's recommendations in whole or in part. (*Id.* at ¶ B(6).) If the ASFE rejects the IPE's recommendation, Chevron may appeal the ASFE's decision to this Office. (*Id.* at ¶ B(7).)

By agreement of the parties and delegation of the Secretary of Energy, this Office is vested with jurisdiction to review only those points on which the ASFE rejected the IPE's recommendation that have been challenged by Chevron. (*Id.* at ¶¶ C(6) and B(7).) Most importantly for this appeal, where this Office remands the decision back to the ASFE with instructions, Chevron may only appeal any "further determination" made by the ASFE on remand. (*Id.* at ¶ B(8).)

### B. <u>**The Decision Under Appeal and Chevron's Prior Stay Requests**</u>

In June 2002, the ASFE issued his decision finalizing participation percentages in production from the Stevens Zone, the largest producing zone in the field. (Chevron Appendix at Ex. 5.) As the ASFE explained,

> By this decision, I adopt [the IPE's] amended final recommendation with two exceptions: [1] the abandonment pressures assumed for the 26R and NWS reservoirs are reduced and [2] exclusive use of current prices as the basis for conversion of gas to equivalent barrels of oil is rejected in favor of averaging the conversion factors derived from the current prices with those derived from relative heating values.

(*Id.* at 13.)

On January 15, 2003, Chevron appealed the ASFE's June 2002 decision to this Office. (DOE Appendix at Ex. 1.) Chevron challenged only one aspect of the ASFE's decision. Specifically, Chevron "ask[ed] OHA to find that relative price as of 1942 is the only permissible basis of converting gas to oil under the Unit Plan Contract." (*Id.* at Ex. 2 [Chevron's Opening Brief] at 21.)

In July 2004, Chevron requested a stay from this Office, arguing that all proceedings under the Equity Process Agreement should be stayed pending the outcome

of its then-planned court case. (DOE Appendix at Ex. 3.) In that motion, Chevron essentially made all of the same arguments for a stay that it makes here, claiming that it had uncovered evidence of improper *ex parte* communications and arguing that it should not be forced to expend additional "time and energy" on this proceeding until a final decision is entered in its court challenge. (*Id.* at 2.) This Office denied that request on August 10, 2004. (*Id.* at Ex. 4.) Chevron moved for reconsideration the next day. (*See id.* at Ex. 5 [Order denying reconsideration].) In denying Chevron's request for reconsideration, this Office reiterated that "disputes about the [Equity Process] agreement are outside our purview. Accordingly, given the absence of a joint motion for stay, the proceedings should go forward." (*Id.*) Chevron then chose to proceed with its Stevens Zone appeal.

By order dated January 31, 2005, this Office granted Chevron's appeal in part, finding, as a matter of law, that the ASFE "did not convert gas reserves to barrel-of-oil equivalents (BOEs) consistent with the Unit Plan Contract." (Chevron Appendix at Ex. 7 at 12.) Based on its interpretation of the UPC, this Office remanded the decision to the ASFE for further consideration consistent with this Office's opinion. (*Id.*) Chevron did not challenge this Office's order or seek a stay of its implementation. Rather, Chevron took advantage of the decision granting its appeal and provided data to the ASFE to assist him in converting gas to BOEs in conformance with the order. (*See* DOE Appendix at Ex. 6 [ASFE's May 2006 Preliminary Decision] at 2.) Chevron did not ask the ASFE to stay issuance of a Final Determination, even though the Claims Court Action was already underway.

On February 27, 2007, the ASFE issued a revised decision finalizing participation percentages in production from the Stevens Zone. (DOE Appendix at Ex. 7.) As explained by the ASFE, the issue addressed by his decision "concerns the method to be used to convert volumes of natural gas to barrels-of-oil equivalent (BOEs), a conversion used in the determination of each owner's equity participation in the oil, gas, natural

gasoline and associated hydrocarbons produced from the unitized areas." (*Id.* at 1.) It is that issue in that decision (and only that issue) which is properly before this Office now.

C. **<u>The Claims Court Action</u>**

In August 2004, Chevron filed suit against the United States in the Court of Federal Claims alleging that the DOE breached the terms of the Equity Process Agreement and the Decoupling Agreement. Specifically, Chevron alleged that during finalization proceedings for the Dry Gas, Carneros, and Stevens Zones, the Department of Energy's Deputy General Counsel for Technology Transfer and Procurement engaged in improper *ex parte* communications with DOE decision-makers in violation of the Equity Process Agreement.[2] *See Chevron U.S.A. v. United States*, 71 Fed. Cl. 236, 253 (2006).

On February 5, 2007, the judge presiding over the Claims Court Action entered an order bifurcating the proceedings upon liability and damages into two phases. (DOE Appendix at Ex. 8.) In the first phase, the court will decide whether communications prohibited by the Equity Process Agreement occurred. Trial for phase one has been reset several times but is currently scheduled to begin on February 4 of next year. (*Id.* at Ex. 9.) The questions of whether Chevron was damaged by any prohibited communications and the amount of damages, if any, it is entitled to, would be addressed in phase two if Chevron succeeds in phase one.[3] In other words, even if Chevron

---

[2] Chevron devotes most of its motion to recounting the accusations it has leveled against career public servants in the Claims Court Action, even though those allegations are completely irrelevant to its appeal and to this motion. We will not speculate as to Chevron's motives in presenting to this Office such irrelevant accusations. While the United States vigorously disputes Chevron's accusations, characterizations and claims, unlike Chevron, the Department of Energy will not waste this Office's time by correcting Chevron's misstatements, all of which are before the Claims Court, and are not properly before this Office.

[3] In June 2007, the Government filed a motion for clarification of the scope of the bifurcated trial asking the court for an order clarifying that "the issues to be resolved during the liability phase [*i.e.*, phase one] include the effect upon the Elk Hills equity finalization process of any *ex parte*

"prevails" in phase one by establishing that prohibited *ex parte* communications occurred, a final judgment in the case will not be entered at the conclusion of that trial. In reality, assuming *arguendo*, that the court rules against the Government in phase one, entry of final judgment and the ultimate conclusion of that action likely remains years away.

## III. ARGUMENT

### A. Legal Standards Governing Chevron's Motion

Applications for stays "incident to a submission over which OHA has jurisdiction" are governed by the regulations set forth in 10 C.F.R. §§ 1003.40-.46. 10 C.F.R. § 1003.40(b). Under section 1003.45(b), this Office considers five factors to determine whether to issue a stay including whether: (1) an irreparable injury will result in the event that the stay is denied; (2) a denial of the stay will result in a more immediate hardship or inequity to the applicant than a grant of the stay would cause to other persons affected by the proceeding; (3) it would be desirable for public policy reasons to grant immediate relief pending a decision by this Office on the merits; (4) it is impossible for the applicant to fulfill the requirements of an outstanding order or regulatory provision; and (5) there is a strong likelihood of success on the merits. Only where the party seeking the stay establishes that these criteria favor a stay is issuance of a stay appropriate. *See In re Southern Company*, No. VES-0096 (Dept. of Energy OHA October 2, 2002) (denying request for stay where movant's submission failed to establish entitlement to such relief).

Chevron contends that this Office need not evaluate the criteria set forth in

---

communications allegedly in breach of the Equity Process Agreement." (DOE Appendix at Ex. 10 at 7.) The court denied the Government's motion in a written order dated June 14, 2007, "for the reasons discussed in the June 14, 2007 telephone discovery conference…." (*Id.* at Ex. 11.) During that telephone conference, the court stated that "where the Government's argument on liability and causation are conducted in two—or bifurcated and this effect, this sort of causation aspect goes to the damages aspect, not the liability." (*Id.* at Ex. 12 at 4:8.)

section 1003.40(b) and can instead grant its motion by simply granting Chevron an indefinite extension of time in which to file its opening brief pursuant to 10 C.F.R. § 1003.6. (Mot. at 9-10.) But Chevron is not seeking a mere extension. Rather, Chevron is requesting an indefinite delay of all activity in this matter pending the resolution of the Claims Court Action. (Mot. at 21.) That relief is properly characterized as a stay and therefore properly evaluated under section 1003.40. *See Dorelien v. United States Attorney General*, 317 F.3d 1314, 1321 (11th Cir. 2003) (citing Black's Law Dictionary and noting that "[t]o 'stay' an order or decree means [*inter alia*] to hold it in abeyance....").

Chevron cites *In re Ashland Oil Co.*, No. BEA-07100 (Dept. of Energy OHA Sept. 24, 1981) as an instance in which "OHA has granted stay relief in similar circumstances in the past." (Mot. at 19.) In reality, the stay in *Ashland* was issued not by this Office, but by a district court, which had directed Ashland to exhaust its administrative remedies. *Id.* at 80,976. When Ashland requested a postponement of the hearing before this Office pending decisions on its motions and completion of discovery, that request was denied. *Id.* at 80,977.

In the other case cited by Chevron, *In re Crude Oil Co. (TCC)*, No. BEE-1015 (Dept. of Energy OHA Dec. 16, 1981), TCC requested in an Application for Exception to be relieved from the requirement to file certain forms due to a pending criminal investigation. This Office stayed the requirement, but only until its own determination on the merits of whether it should relieve the company from such requirement, not until the completion of the criminal proceeding. Indeed, this Office ultimately concluded that while TCC should not be required to file the forms, which might result in self-incrimination, it was nevertheless not entitled to a stay and should instead file a modified version of the reports. *See id.*

In fact, as other administrative tribunals have found, the fact that a federal court action might affect an administrative proceeding, and the costs associated with it, is not a

sufficient reason for granting a stay. *See, e.g.*, *In re Fountain Foundry Corp.*, 1994 EPA ALJ Lexis 71 *3 (1994) (denying request to stay administrative proceeding pending resolution of related district court action where "[t]he district court's determination may or may not be close at hand"); *In re Environmental Protection Services, Inc.*, 2003 EPA ALJ Lexis 25 *4 (2003) (denying request to stay proceeding "while [movant] pursues information in a federal forum that may, or may not, support a defense" in the administrative proceeding).

B. **A Stay Is Not Warranted**

1. **Chevron Cannot Show it Will Suffer An Irreparable Injury if the Stay Is Denied.**

The minimal inconvenience and the expense to Chevron of pursuing this appeal at the same time it is prosecuting the Claims Court Action does not constitute an irreparable injury or justify staying this proceeding. *In re Philip Morris, Inc.*, Docket No. 8838, 79 F.T.C. 1023, 1971 FTC Lexis 363 *3-4 (1971); *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 108 (D.C. Cir. 1986). As this Office has already ruled, Chevron is not entitled to a stay until the Claims Court Action is complete. (DOE Appendix at Exs. 4 and 5.)

Recognizing this well-established rule, Chevron claims that a stay is necessary to allow it to complete discovery in the Court of Claims Action because that process may reveal additional documents relevant to this appeal. (Mot at 19.) But the same possibility existed when Chevron originally sought a stay of these proceedings, a possibility this Office correctly found insufficient to justify a stay. The fact that Chevron claims it may uncover some *additional* documents does not warrant a different result. *Cf. PNC Financial Services Group, Inc. v. C.I.R.*, -- F.3d --, 2007 WL 2403550 *6 (D.C. Cir. August 24, 2007) (Absent some change in material facts "the same issue presented a second time in the same case in the same court should lead to the same result." (internal

citation omitted)).

Indeed, the reasons for denying a stay of this appeal are even more compelling than they were in 2004 because the only issue properly before this Office can be decided without reference to any of the documents Chevron is pursuing in the Claims Court Action. The narrow issue properly on appeal is whether the Secretary erred in implementing this Office's January 2005 directive to revise the methodology for converting gas to BOEs. This Office's consideration of the legal question of whether the methodology is correct does not hinge on the content of any allegedly improper *ex parte* communications and is, therefore, no reason to delay this proceeding until resolution of the parties' discovery dispute. Indeed, Chevron does not even attempt to explain the relevance of the documents it is seeking in the Claims Court Action to that specific issue.[4]

Assuming, *arguendo*, that DOE breached the Equity Process Agreement by engaging in prohibited communications, and assuming *arguendo* that the discovery dispute underway in the Claims Court Action is resolved in Chevron's favor, no document now withheld would be relevant to the issue on appeal: whether the ASFE erred in implementing this Office's 2005 order. The ASFE either erred or did not err, and this can be determined from the decision itself. The effect of an allegedly prohibited communication on the ASFE's decision, even if the decision is found to be erroneous, is of no consequence when the issue is whether there is an error, not why and how the error was made. Therefore, no document, however "damaging" to DOE in Chevron's opinion,

[4]Chevron focuses heavily on what it calls the "secret report" dated December 22, 2000. (Mot. at 8-9, 13-15.) That report was prepared for the ASFE by NSAI after the NSAI's final Stevens Zone recommendation, and was labeled "Privileged and Confidential" "Predecisional Analysis," and "Not for Distribution" by NSAI. (Chevron Appendix at Ex. 25.) Both the Chevron Equity Finalization Team and the DOE Equity Finalization Team were made aware at the time that the ASFE was going to consult with NSAI, and neither was provided a copy of the NSAI report to the ASFE. (*See* DOE Appendix at Ex. 15 [November 6, 2000 letter from ASFE to Chevron and DOE].)

will have any relevance to the ultimate issue: Did the ASFE err in implementing the 2005 order?[5]

Nor is the unlikely possibility that the February trial in the Claims Court Action might impact the jurisdiction of this Office, as Chevron alleges, a reason to stay this proceeding. "The pendency of a case dealing with similar issues is not sufficient grounds for staying a Commission proceeding." *In re Rambus Inc.*, Docket No. 9302, 2002 FTC Lexis 41 *4 (2002) (internal citation and quotations omitted). Given the discovery dispute, the DOE's pending motion for summary judgment on the issue of contract interpretation[6] and another for partial dismissal, and the possibility of appellate review of the document dispute, there is no certainty that trial in the Claims Court Action will begin in February. Even if it does, in light of the bifurcation of the trial, the only final judgment the court could issue at the conclusion of the trial would be one in the Government's favor (a judgment Chevron would likely appeal). In reality, a final decision in the Claims Court Action is likely years away and even if that decision is in Chevron's favor, it would be an award for monetary damages and unlikely to affect the jurisdiction of this Office.

### 2. A Stay Will Harm the DOE and the Public Interest.

Chevron claims that the DOE will suffer no prejudice from entry of a stay because

---

[5] Moreover, even if Chevron could show that some of the documents in the Claims Court Action are relevant and admissible to the limited issue now on appeal, it would still not be entitled to the indefinite stay that it seeks given the impending end of discovery in the Claims Court Action. *Cherokee Nation of Oklahoma v. United States*, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("A stay so extensive that it is immoderate or indefinite may be an abuse of discretion." (internal quotations and citation omitted)).

[6] Chevron contends that communications between the DOE's Deputy General Counsel for Technology Transfer and Procurement, and the Office of the ASFE violated the Equity Process Agreement. The Government has moved for summary judgment, arguing that, under the plain language of the agreement, the prohibition on *ex parte* communications in the Equity Process Agreement applies only to technical team members, not attorneys.

NSAI has withdrawn from serving as the IPE. (Mot. at 19-20.) NSAI withdrew only after Chevron refused to execute a new Confidentiality Agreement containing a covenant not to sue NSAI, even though Chevron previously had signed such an agreement. (*See* DOE Appendix at Ex. 13 [March 29, 2006 letter from counsel for NSAI] at 1 stating "After NSAI provided Chevron with an updated version of the Confidentiality Agreement that made no substantive change to the prior versions other than to change the Contract Number and dates, Chevron refused to sign the Confidentiality Agreement; instead, Chevron provided a substantially changed version that materially reduced the level of protections that had been afforded to NSAI under the first two contracts.")[7] Chevron should not now be allowed to leverage its decision to jettison the IPE into a justification for staying this action indefinitely. In any event, unless Chevron is planning on interfering with any attempt to finalize equity percentages or on refusing to agree to *any* IPE, the present situation is not permanent and therefore not a reason to stay this action indefinitely. Chevron should not be permitted to frustrate the resolution of issues it brought before this Office and which Chevron unquestionably agreed to in the Equity Process Agreement.

Granting an indefinite stay will further delay what has already been a lengthy process, one that was originally envisioned to have been completed years ago. Further delays will tax the DOE, which has invested significant time and personnel to complete the process, and will unnecessarily postpone the final resolution of this matter. *See Doolin Sec. Sav. Bank, F.S.B. v. F.D.I.C.*, 53 F.3d 1395, 1407 (4th Cir. 1995) (recognizing that there is a "strong public interest" in efficient decision-making in the administrative setting). Two zones still remain to be completed at this point–the Stevens Zone and the Shallow Oil Zone. The pace and resolution of this proceeding should not

[7] The Confidentiality Agreement is an agreement between the Department of Energy and Chevron whereby Chevron agreed, among other things, to a covenant not to sue NSAI on the same basis and subject to the same limitations as set forth in the Department of Energy's contract with NSAI. (DOE Appendix at Ex. 14.)

be dependent on Chevron's legal tactics in another action. If all proceedings before this Office were stayed until the parties involved exhausted every other potential remedy available to them, few proceedings would ever be resolved expeditiously.

Only when it is faced with an ASFE decision that it asserts is erroneous does Chevron want the entire process to stop. Having reaped the benefits of this Office's 2005 decision and fully participated in the equity redetermination process on remand, Chevron cannot now fairly ask to stay these proceedings.

### 3. None of the Other Factors Favor Granting An Indefinite Stay.

As Chevron admits, nothing prevents it from fulfilling the requirements of any outstanding order or regulatory provision, and a stay is not warranted on these grounds. (Mot. at 20.) Contrary to Chevron's claim, the final factor, whether a showing has been made that there is a strong likelihood of success on the merits, focuses on whether Chevron has shown that it is likely to prevail *in this proceeding*, not on whether it is likely to prevail in the Claims Court Action. *See In re Southern Company*, *supra*, at 3 ("[W]e find that a Stay is not warranted in this case, because there is no immediate jeopardy to Southern and because Southern has not shown that it will succeed on the merits of the underlying Application for Exception."). But Chevron has not made the required showing under either approach.

Chevron has not even attempted to show that it is likely to prevail in convincing this Office that the ASFE's February 2007 decision is erroneous. (*See* Mot. at 20-21 (focusing exclusively on Claims Court Action.).) Nor has it offered a persuasive explanation for why the documents in dispute in the Claims Court Action are essential to this Office's resolution of the narrow legal issue properly presented by this appeal.

Even accepting Chevron's argument that the relevant inquiry is whether Chevron has shown a strong likelihood of succeeding in the Claims Court Action, (Mot. at 21),

such a showing has not been made. Chevron has not established that it will ultimately prevail in obtaining a final judgment in its favor in the Claims Court Action. Chevron's motion focuses exclusively on the arguments it intends to present in phase one of the Claims Court Action. But even if Chevron prevails in phase one, by convincing the court that *ex parte* communications prohibited by the Equity Process Agreement occurred, it would still need to demonstrate, *inter alia*, in phase two, that it was damaged by those communications, before a final judgment in its favor could be entered. Despite the fact that Chevron knows that success on the merits in phase two is a necessary prerequisite to entry of final judgment in its favor in the Claims Court Action, Chevron did not addressed the phase two issues at all. Thus, even under Chevron's own approach, it has not shown a likelihood of success in the Claims Court Action sufficient to justify imposing an indefinite stay.

## IV. **CONCLUSION**

For the foregoing reasons, the Department of Energy respectfully requests that this Office deny Chevron's motion to stay this proceeding indefinitely.

Dated: October 1st, 2007

GREGORY B. THORPE
ROBERT M. SWERDLOW
O'MELVENY & MYERS LLP

By: [signature]
Robert M. Swerdlow
Attorneys for Appellee the United States Department of Energy

**CERTIFICATION**

I, Robert Michael Swerdlow, certify pursuant to 10 C.F.R. § 1003.9(b), that I am a duly authorized representative of the United States Department of Energy and that I have caused a copy of the DEPARTMENT OF ENERGY'S OPPOSITION TO MOTION OF CHEVRON USA INC. TO STAY OR CONTINUE THE APPEAL to be transmitted electronically to and served by overnight mail on the following:

Lawrence D. Rosenberg, Esq.
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
ldrosenberg@jonesday.com

DATED: October 1st, 2007

O'MELVENY & MYERS LLP

Robert M. Swerdlow
Attorneys for Appellee the United States Department of Energy