No. 04-1365
(Judge Braden)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO CERTIFY THE COURT'S JANUARY 31, 2008 PRIVILEGE RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE COURT'S APRIL 4, 2008 ORDER PENDING APPEAL

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 307-1438
Fax: (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

May 2, 2008

# TABLE OF CONTENTS

**PAGE(S)**


I. CHEVRON'S UNSUPPORTED ARGUMENTS AND HYPERBOLE FAIL TO DIMINISH THE FACT THAT THE GOVERNMENT'S IDENTIFIED LEGAL ISSUES MEET THE STANDARDS FOR CERTIFICATION. .......................... 1

A. Controlling Question Of Law. .................................................................. 2

i. The Court's Application Of The Crime/Fraud Exception. ......................... 2

ii. Application Of The Work-Product Privilege To Factual Material. ............ 5

iii. Factual Material In Drafts. ............................................................. 7

B. Substantial Ground For Difference Of Opinion. .................................... 8

i. Crime/Fraud Exception. ........................................................................ 8

ii. Deliberative-Process Privilege. .......................................................... 11

iii. Factual Work-Product. ....................................................................... 11

C. Materially Advance The Litigation. ....................................................... 13

II. CHEVRON PRESENTS NO SERIOUS CHALLENGE TO THE GOVERNMENT'S REQUEST THAT THE COURT STAY ITS APRIL 4, 2008 ORDER TO THE EXTENT IT REQUIRES THE PRODUCTION OF PRIVILEGED DOCUMENTS. ..................................................... 16

A. The Government Is Likely To Succeed On The Merits Of Its Appeal. ................ 17

B. The Government Will Be Irreparably Harmed By The Disclosure Of Privileged Documents Prior To Interlocutory Appeal. .................................. 18

C. A Stay Would Harm Neither Chevron Nor The Public Interest. .......................... 22

D. The Government Has Already Established "Clear Hardship" If Privileged Documents Are Disclosed Prior To An Appeal Being Taken. ............ 24

CONCLUSION. ........................................................................................................ 25

## TABLE OF AUTHORITIES

### CASES

**PAGE(S)**

American Airlines, Inc. v. United States,
71 Fed. Cl. 744 (2006). .......... 15

American Telephone & Telegraph Co. v. United States,
33 Fed. Cl. 540 (1995). .......... 1

Chase Manhattan Bank N.A. v. Turner & Newall, PLC,
964 F.2d 159 (2d Cir. 1992).......... 21, 22

Chevron U.S.A. Inc. v. United States,
80 Fed. Cl. 340 (2008). .......... *passim*

Coast Federal Bank v. United States,
49 Fed. Cl. 11 (2001). .......... 17

Connaught Laboratories, Inc. v. Smithkline Beecham P.L.C.,
165 F.3d 1368 (Fed. Cir. 1999).......... 19

In re Ford Motor Co.,
110 F.3d 954 (3d Cir. 1997).......... 20

Jackson v. Motel 6 Multipurposes, Inc.,
172 F.R.D. 469 (M.D. Fla. 1997).......... 16

Judicial Watch, Inc. v. DOJ,
423 F.3d 366 (D.C. Cir. 2005). .......... 12, 13

Kearney v. Jandernoa,
979 F. Supp. 1156. .......... 16

Klamath Irrigation District v. United States,
69 Fed. Cl. 160 (2005). .......... 1

Koch v. Specialized Care Servs., Inc.,
437 F. Supp. 2d 362 (D. Md. 2005). .......... 8

Marriott International Resorts, L.P. v. United States,
63 Fed. Cl. 144 (2004). .......... 13, 14, 15

Marriott Int'l Resorts, L.P. v. United States,
122 Fed. Appx. 490, 491 (Fed. Cir. 2005). .......... 13

Moody v. IRS,
654 F.2d 795 (D.C. Cir. 1981). .......... 9, 10

Pac. Gas & Elec. Co. v. United States,
70 Fed. Cl. 128 (2006). .......... 7

Quantum Corp. v. Tandon Corp.,
940 F.2d 642 (Fed. Cir. 1991). .......... 18, 19

In re Regents of the University of California,
101 F.3d 1386 (Fed. Cir. 1996). .......... 19

Scholl v. United States,
69 Fed. Cl. 395 (2005). .......... 16

In re San Juan Dupont Plaza Hotel Fire Litigation,
859 F.2d 1007 (1st Cir. 1988). .......... 13

In re Sealed Case,
107 F.3d 46 (D.C. Cir. 1997). .......... 4

In re Sealed Case,
676 F.2d 793 (D.C. Cir. 1982). .......... 4

In re Spalding Sports Worldwide, Inc.,
203 F.3d 800 (Fed. Cir. 2000) .......... 19

United States v. Phillip Morris Inc.,
314 F.3d 612 (D.C. Cir. 2003). .......... 16, 19, 20, 22

United States v. West,
672 F.2d 796 (10th Cir. 1982). .......... 20

United States v. Witmer,
835 F. Supp. 208 (M.D. Pa. 1993). .......... 10

Upjohn Co. v. United States,
449 U.S. 383 (1981). .......... 22

Weiss v. United States,
155 Ct. Cl. 825 (1961). .......... 9

Zenith Radio Corporation v. United States,
764 F.2d 1577 (Fed. Cir. 1985)............................................................................ 14

**STATUTES**

28 U.S.C. § 1292(d)(2). ........................................................................................ 1, 14, 16

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365 |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO CERTIFY THE COURT'S JANUARY 31, 2008 PRIVILEGE RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE COURT'S APRIL 4, 2008 ORDER PENDING APPEAL

Defendant, the United States, respectfully files this brief in support of its April 16, 2008 motion to certify the Court's January 31, 2008 privilege rulings and to stay the Court's April 4, 2008 Order, and in reply to plaintiff, Chevron U.S.A. Inc.'s ("Chevron") April 25, 2008 "Opposition To Defendant's Motion To Certify Rulings For Interlocutory Appeal And To Stay The April 4, 2008 Order" ("Pl. Resp.").

I. CHEVRON'S UNSUPPORTED ARGUMENTS AND HYPERBOLE FAIL TO DIMINISH THE FACT THAT THE GOVERNMENT'S IDENTIFIED LEGAL ISSUES MEET THE STANDARDS FOR CERTIFICATION

In its response to the Government's motion to certify, Chevron argues that the requirements set forth at 28 U.S.C. § 1292(d)(2) are strict criteria that the Government cannot meet. As we noted in our opening brief, this Court has previously stated that the three-part test provides guidelines to allow the trial court "to weigh the relative benefits of an immediate appeal . . . [and] should be viewed together as a statutory language equivalent of a direction to consider the probable gains and losses of an immediate appeal," American Telephone & Telegraph Co. v. United States, 33 Fed. Cl. 540, 541 (1995) (internal citation omitted), and that the decision to certify "is committed to the sound discretion of the trial judge." Klamath Irrigation District v.

United States, 69 Fed. Cl. 160, 162 (2005). The discretion afforded to the Court in ruling upon a request for certification notwithstanding, the Government here meets each of the requirements, as the identified issues for appeal are controlling questions of law for which there is substantial ground for difference of opinion. Moreover they are appropriate for interlocutory appeal because resolution of the Government's identified issues would greatly simplify the litigation going forward, and provide guidance to all litigants before the Court of Federal Claims who wish to assert any of the privileges upon which the Court ruled.

A. Controlling Question Of Law

Chevron argues that the Government's three identified questions of law are not "controlling" because "the Court's rulings did not turn on them" and that "these issues did not form the basis for the [Court's] underlying decisions[]" on the documents it reviewed. Pl. Resp. 4. Chevron's argument attempts to render the Court's 38-page written opinion on the privileges advisory and without any real effect. Despite Chevron's best efforts, this is simply not the case. The Court's rulings for the documents reviewed *in camera* were based directly upon the rulings by the Court upon the issues the Government has identified for interlocutory appeal, and thus each issue represents a controlling question of law.

i. The Court's Application Of The Crime/Fraud Exception

According to Chevron, the Government's identification as an issue for interlocutory appeal of whether the crime/fraud exception applies where the conduct that is the basis for invoking the exception is an alleged breach of contract "ignores" that the Court's rulings with regards to the exception were based upon communications "not merely in violation of contract, but in repeated violation of an administrative order, fundamental principles of fairness, and basic

canons of legal ethics . . . the Court's findings appear to rest on blatant and egregious misconduct that is akin to fraud." Pl. Resp. 4. In making this argument, Chevron itself ignores the plain language of the Court's January 31, 2008 opinion, which applied the crime/fraud exception only to documents "that appear to evidence *ex parte* communications prohibited by the Equity Process Agreement." Chevron U.S.A. Inc. v. United States, 80 Fed. Cl. 340, 364 (2008). The Court's explicit application of the exception was based upon an alleged breach of contract. In addition to its disregard for the plain language of the Court's ruling, Chevron's argument is flawed in several other respects.

Chevron refers to the Government's "repeated violation of an administrative order," Pl. Resp. 4, as a basis for the Court's application of the crime/fraud exception to the attorney-client privilege. The administrative order to which Chevron refers, ASFE Administrative Order No. 96-01 (July 8, 1996) ("Equity IPE Protocol"), prohibited certain *ex parte* communications by either party with the Independent Petroleum Engineer ("IPE"), Netherland, Sewell and Associates ("NSAI"). The Equity IPE Protocol, however, is an unpublished instruction by the United States Department of Energy's ("DOE") Assistant Secretary for Fossil Energy for purposes of the Elk Hills equity finalization process that does not have the force of law. At most, the protocol reflects a process agreed upon by Chevron and DOE to resolve equity finalization for three of the four known oil-and-gas zones in the Elk Hills Field. Chevron's disingenuous attempt to elevate the Equity IPE Protocol to the status of a penal law, therefore, is unavailing.

Furthermore, none of the documents as to which the Court invoked the crime/fraud

exception is a communication between DOE and NSAI, either *ex parte* or otherwise.[1/] As such, a "violation" of the Equity IPE Protocol could not have served as the basis for the Court's application of the crime/fraud exception.

As to Chevron's remarkable suggestion that the Court based its application of the crime/fraud exception upon violations of "fundamental principles of fairness[] and basic canons of legal ethics," for which there is absolutely no support in any of the Court's rulings, the Government is unaware of any precedent that has applied the crime/fraud exception to the attorney-client privilege to communications deemed "unfair." Moreover, Chevron has not identified here, nor anywhere else in its voluminous briefing of this privilege dispute, the specific "basic canons of legal ethics" that supposedly apply to this administrative process for the finalization of equity interests, the statutes or regulations from which such "basic canons" derive, or how such standards were incorporated into the Equity Process Agreement.

The express language of the Court's ruling states only that it applied the exception to documents "that appear to evidence *ex parte* communications prohibited by the Equity Process

---

[1] The Court did indicate that one of the documents to which it applied the crime/fraud exception, Document No. 1899, "appears to evidence past communications between [Gary] Latham and the IPE." Mr. Latham served as the contracting officer's technical representative on NSAI's contract with the Government. The Equity IPE Protocol expressly allowed for *ex parte* communications relating to contract administration. Thus, it is not at all clear that the past communications "evidenced" by this document were even prohibited. Regardless, as we stated in our opening brief, the crime/fraud exception to the attorney-client privilege is not properly applied to communications that are clearly neither criminal nor fraudulent, much less that merely "evidence" an alleged crime or fraud. Communications are subject to the exception only when they were made *in furtherance* of a specific crime or fraud. See In re Sealed Case, 107 F.3d 46, 50 (D.C. Cir. 1997). At bottom, the crime/fraud exception to the attorney-client privilege is concerned with abuse of a privileged relationship. See In re Sealed Case, 676 F.2d 793, 807 (D.C. Cir. 1982) ("Exception comes into play when a privileged relationship is used to further a crime, fraud, or other fundamental misconduct.").

Agreement." Chevron, 80 Fed. Cl. at 364. Indeed, in its decision, the Court states only that it saw "no reason" why the crime/fraud exception could not apply to alleged violations of an administrative order (as noted above, the Court did not apply the exception to any communications that allegedly would have violated the order) and "an essential term in a high-profile government contract." Id. at 363. The Court's individual rulings upon documents invoking the crime/fraud exception further indicate that those rulings are predicated upon an understanding that the exception could apply to a breach of contract. See, e.g., Court's January 31, 2008 "Final Order Regarding Documents The Government Asserts Are Subject To The Attorney-Client Privilege," Document No. 1108 (noting that the exception applied to this document because it "may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement"); Document No. 1123 (same); Document No. 1255 (same). Nowhere in its rulings, either in its published opinion or its sealed appendices, does the Court state that its findings "rest on blatant and egregious misconduct that is akin to fraud" or "repeated violation[s] of an administrative order, fundamental principles of fairness, and basic canons of legal ethics." Pl. Resp. 4. In fact, these are nothing more than Chevron's hyperbolic characterizations that are unsupported by any of this Court's findings. Because the Court expressly based its application of the crime/fraud exception to the attorney-client privilege upon its determination that the exception could apply to documents that evidenced a breach of contract, the issue is controlling and appropriate for interlocutory review.

ii. Application Of The Work-Product Privilege To Factual Material

In response to the Government's identification of the Court's application of the work-product privilege to factual material as an issue for appeal, Chevron argues that "the Court

expressly agreed that factual materials prepared in anticipation of litigation can be work product" and "only ordered disclosure where facts were severable and could be revealed without disclosing the fruits of attorney efforts (or where Chevron had a "substantial need" for the document)." Pl. Resp. 5. This argument is equally specious, and misrepresents the Court's rulings for a number of documents over which we asserted the work-product privilege.

Chevron's argument again ignores the express language of the Court's opinion, which plainly states that "factual information is not subject to the attorney work-product privilege." Chevron, 80 Fed. Cl. at 366. Based upon that determination, the Court ordered the production of numerous documents, or the redacted text contained in them, noting that "although prepared in connection with the equity finalization process, [the document] does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege." See, e.g., Court's January 31, 2008 "Final Order Regarding Documents The Government Asserts Are Subject To The Work Product Privilege," Document No. 1552, 1553, 1556, 1574, 1575, 1582 (CME011 0251), 1583, 1586, 1602 (CBG011 275), 1602 (CBG011 288), 1602 (CBG011 367-68), 1881, 1944, 2265, 4351, 4382, 4384, 4385, 4403.[2/] The Court's rulings upon each of these documents was clearly based upon its determination that factual information simply cannot be work-product, without any consideration of a distinction between fact and opinion work-product. Therefore, the issue the Government has identified is

---

[2] For other documents that the Court reviewed *in camera*, it made the same finding (*i.e.*, that although prepared as part of the equity finalization process, the document was factual and not subject to the work-product privilege), but ordered that the Government need only disclose the "header." See, e.g., Court's January 31, 2008 "Final Order Regarding Documents The Government Asserts Are Subject To The Work Product Privilege," Document No. 889 (1879-84), 889 (1910), 1123, 1142, 1170.

controlling, and appropriate for interlocutory appeal.

iii. Factual Material In Drafts

Chevron argues that the issue of whether the deliberative process privilege requires the separation of factual material in draft decisions is not controlling because, based upon "clear, binding precedent," "[t]he Court made careful, document-by-document and line-by-line determinations as to whether factual material could be disclosed without revealing the deliberative process." Pl. Resp. 5-6. As we stated in our briefing upon the deliberative process privilege and in our motion to certify, we do not dispute that, as a general rule, the privilege requires the segregation of factual from deliberative material. We noted, however, that several circuits have held that the segregation requirement does not apply to factual material contained in drafts. And despite the Court's ruling that the "absolute clarity of the applicable precedent" requires such segregation, Chevron, 80 Fed. Cl. at 361, the single case upon which the Court relied in support of that finding, Pac. Gas & Elec. Co. v. United States, 70 Fed. Cl. 128 (2006), does not address the application of the privilege in the context of drafts. Nor does the Court's opinion explain why the exception set forth in the precedents upon which we rely does not apply in this case. As a result, for nearly all of the draft decisions over which the Government asserted the deliberative process privilege, the Court ruled that the factual material contained in those drafts must be produced. See, e.g., Court's January 31, 2008 "Final Order Regarding Documents The Government Asserts Are Subject To The Deliberative Process Privilege," Document. No. 265, 281, 548, 577. If, however, the Government is correct that the exception for draft decisions does apply, then the Court's line-by-line review and segregation of the factual material contained in those drafts is neither appropriate nor necessary. Because the issue directly affects the Court's

review of those draft decisions we have withheld, it is controlling and appropriate for interlocutory review.

B. Substantial Ground For Difference Of Opinion

i. Crime/Fraud Exception

Chevron argues that the question of whether the crime/fraud exception can apply in a breach of contract case is irrelevant, and there is no substantial ground for difference of opinion as to the issue, because "by its terms, the crime-fraud exception turns on the nature of the misconduct at issue, not the nature of the claim asserted[.]" Pl. Resp. 6 (citing Koch v. Specialized Care Servs., Inc., 437 F. Supp. 2d 362, 373 (D. Md. 2005)). Chevron's argument is entirely specious. The "nature of the misconduct" Chevron has identified that serves as the basis for the application of the exception is *an alleged breach of contract*, nothing more. More importantly, the Court's applied the exception only to documents it believed "evidence . . . communications prohibited by the Equity Process Agreement." Chevron, 80 Fed. Cl. at 340. As such, the issue the Government has identified is appropriate for interlocutory appeal: whether the crime/fraud exception to the attorney-client privilege applies where the conduct that serves as the basis for its application is an alleged breach of contract.

Regardless of Chevron's unsupported argument, the issue is one for which there is substantial ground for disagreement. As we noted in our motion, Chevron has identified no authority for the novel proposition that an alleged breach of contract can serve as the basis for the application of the exception to the attorney-client privilege. The cases Chevron cites in its response to the Government's motion to certify are of no moment.

Weiss v. United States, 155 Ct. Cl. 825 (1961), involved deliberative-process and work-

product privileges claims; the court did not consider the attorney-client privilege. Id. at 867-68 ("It is clear that the Acting Secretary has not invoked the attorney-client privilege . . . at this point in the proceeding . . . the attorney-client privilege is not in issue."). The Court in Weiss ultimately determined that the plaintiff's need for the documents in question outweighed the Government's work-product privilege claim to the extent it involved ordinary work product, but allowed the Government an opportunity to submit the work-product materials to the Court for *in camera* review to determine whether those materials were subject to heightened protection as opinion work-product consistent with the Supreme Court's ruling in Hickman v. Taylor. 155 Ct. Cl. at 887-89. Weiss, therefore, does *not* support Chevron's contention that the crime/fraud exception can be invoked based upon an allegation of breach of contract to overcome an assertion of the attorney-client privilege.

Moody v. IRS, 654 F.2d 795 (D.C. Cir. 1981), is similarly unhelpful to Chevron's argument. As with Weiss, Moody did *not* deal with claims of attorney-client privilege; the privilege at issue there was the work-product doctrine. Moreover, Moody did not involve a breach of contract claim. The court in Moody considered alleged professional misconduct in a *judicial* proceeding. The D.C. Circuit noted that "at least in some circumstances, a lawyer's unprofessional behavior may vitiate the work-product privilege." Id. at 800. The Moody court, however,

> stress[ed] that in this case, [the IRS] has admitted to engaging in the conduct which forms the basis of the charge of unprofessional conduct. *We are therefore not dealing with a situation where disclosure is sought for the purposes of determining whether such misbehavior occurred*. The latter case involves an entirely different problem - an exception which threatens to swallow the rule - than is presented in this case.

Id. at 800 n.17 (emphasis supplied). Not only does Moody *not* support the proposition that a breach of contract allegation may serve as the basis for the application of the crime/fraud exception to the attorney-client privilege, Moody expressly disavowed the use of a "misconduct" exception where the party seeking to overcome the privilege is doing so in an attempt to *establish* that such misconduct actually occurred. This is exactly what Chevron attempts to do here - overcome our attorney-client privilege assertions in an attempt to *establish* liability on its breach of contract claims. As the Moody Court noted, such an application of the exception "threatens to swallow" the privilege in its entirety, and is therefore improper.

United States v. Witmer, 835 F. Supp. 208 (M.D. Pa. 1993), dealt with with the Government's ability to enforce a number of Civil Enforcement Demands as part of an investigation of a contractor that allegedly made false statements in connection with a bid for an Army contract. Id. at 211-12. In granting the Government's request that the Court review a number of the contractor's documents *in camera* to determine if the crime/fraud exception applied, the Court ruled that the Government "had reason to believe that . . . [the contractor] made a decision to defraud the government . . . in its bid." Id. at 223. Witmer, then, is not a case where the crime/fraud exception was invoked based upon allegations of a breach of contract - the basis for applying the exception in that case was an attempt to *defraud* the Government. Witmer provides no support whatsoever for Chevron's argument that the crime/fraud exception may be applied to "other forms of misconduct." Pl. Resp. 18-19.

Contrary to Chevron's assertion, there is substantial ground for disagreement with the Court's determination that the crime/fraud exception to the attorney-client privilege may be

applied where the conduct that constitutes the basis for the exception is an alleged breach of contract. This ground for disagreement is only amplified by Chevron's failure once again to identify a single case to support the unprecedented notion that the crime/fraud exception to the attorney-client privilege is sufficiently malleable to encompass an alleged breach of contract.

ii. Deliberative-Process Privilege

There are substantial grounds for disagreement with the Court's determination that the deliberative-process privilege requires the segregation of factual material in draft decisions. In our certification motion we noted that several appellate courts have ruled that the segregation requirement of the deliberative process privilege does not apply to drafts. In its response, Chevron merely identifies two opinions issued by the District Court for the District of Columbia that do require that factual material be separated from deliberative material in drafts. Pl. Resp. 8. These two opinions, from the same district no less, certainly do nothing to dispute the notion that there is ground for disagreement with regards to the segregation requirement. Indeed, just the opposite is true. Given that Chevron has identified caselaw that appears to conflict with a number of cases the Government has cited regarding segregation, there is substantial ground for disagreement with regards to this issue, making it appropriate for interlocutory appeal. This is especially true in light of the fact that the Federal Circuit has not yet addressed whether the segregation requirement applies to drafts.

iii. Factual Work-Product

As we noted in our opening brief, there is substantial ground for disagreement with the Court's determination that factual material is not subject to the work-product privilege because the Court's ruling substantially limits the privilege's applicability and runs afoul of both the plain

language of RCFC 26(b)(3) and Federal Circuit jurisprudence governing the privilege. Chevron argues that in the Court's privilege rulings, it "expressly recognized that factual materials can constitute work product." Pl. Resp. 8. Chevron again chooses to ignore the plain language of the Court's opinion regarding the applicability of the privilege to factual material, as set forth in the section of the opinion entitled "The Court's Resolution": "factual information is not subject to the attorney work-product privilege, because facts by definition have no attorney work-product." Chevron, 80 Fed. Cl. at 366. Chevron's further argument, that "[t]he Court's actual rulings merely required the redaction and production of portions of, or attachments to, documents that were not protected work product for other reasons[,]" is simply incorrect. As we demonstrated above, for numerous documents over which the Government asserted the work-product privilege, the Court ordered their disclosure based solely upon its determination that, despite the fact that those documents were created as part of the equity finalization process, they were not subject to the work-product privilege because they were factual. There is substantial grounds for disagreement with the Court's restrictive application of the work-product doctrine.

Chevron also argues that one of the cases the Government relies upon in support of its position regarding factual material in work-product, Judicial Watch, Inc. v. DOJ, 423 F.3d 366 (D.C. Cir. 2005), "explained that where portions of documents were not work product, disclosure of those portions would be required." Pl. Resp. 9. Chevron made this same erroneous argument in its August 24, 2007 response to the Government's briefing on its attorney-client and work-product privilege claims. As we noted in our September 14, 2007 reply in support of our privilege assertions, Judicial Watch does not require the segregation of factual material, and plainly states that "factual material is itself privileged when it appears within documents that are

attorney work-product. If a document is fully protected as work product, then segregability is not required." Judicial Watch, 432 F.3d at 371. Were Chevron's reading of Judicial Watch correct, the opinion would plainly contradict itself. It does not. Judicial Watch's clear holding was that "the work-product doctrine simply does not distinguish between factual and deliberative material." Id.

C. Materially Advance The Litigation

Chevron argues that an interlocutory appeal would not materially advance the litigation because regardless of any decision on appeal, "full discovery and a trial on the merits still would be required." Pl. Resp. 9. The Government does not dispute the fact that an appellate ruling in its favor would not terminate the litigation. Nonetheless, as we noted in our motion to certify, certification for interlocutory appeal is appropriate where resolution of the question at issue would resolve important questions of law that could affect other cases, and could simplify the issues before the Court. This was exactly the approach taken by this Court in Marriott International Resorts, L.P. v. United States, 63 Fed. Cl. 144 (2004), where Judge Lettow noted that despite the fact that an interlocutory appeal would mean more time would pass before the merits of the case could be addressed, certification was appropriate because "definitive resolution of the procedural issue would manifestly benefit" the case. Id. at 147. In granting the Government's petition for interlocutory appeal in Marriott, the Federal Circuit noted that "although disposition of the issue would not dispose of the litigation . . [r]eview of the issue might simplify the litigation or affect other cases with similar important issues." Marriott Int'l Resorts, L.P. v. United States, 122 Fed. Appx. 490, 491 (Fed. Cir. 2005). Cf. In re San Juan Dupont Plaza Hotel Fire Litigation, 859 F.2d 1007 (1st Cir. 1988) (granting petition for

interlocutory review of discovery order pursuant to 28 U.S.C. § 1292, noting that "[a]lthough the call is close, we believe the work product issue in this matter to be sufficiently novel and important, and the circumstances sufficiently out of the ordinary, as to fulfill the statutory requisites"); Zenith Radio Corporation v. United States, 764 F.2d 1577, 1580 (Fed. Cir. 1985) (granting petition for interlocutory review of discovery order compelling the production of allegedly privileged interrogatory responses without discussion of statutory requirements, but noting that "[t]hese privileges involve subtle and sensitive questions and ordinarily should not be breached without a more penetrating analysis").

Chevron argues that Marriott is "inapposite" to the instant case because "[r]esolution of [the issue in Marriott] had broad significance bearing on the validity of all deliberative process privilege claims made in that and every other case[.]" Pl. Resp. 12. Chevron does not dispute, however, that certification *was* appropriate in Marriott.

The rationale that allowed for certification and interlocutory review in Marriott applies here. The Court's privilege rulings here were not simply part of an unpublished, limited discovery order relating to specific documents. Instead, this Court's published Memorandum Opinion and Order of January 31, 2008 sets forth in great detail the scope, contours, and general applicability of the attorney-client, work-product, and deliberative-process privileges. With regards to the attorney-client privilege, the Court expands the crime/fraud exception to that privilege in an entirely novel manner. The Court's opinion goes far beyond simply ordering the disclosure of privileged documents; it creates new law. Indeed, the opinion itself does not even address the documents the Court reviewed *in camera*; it provides, rather, in general terms, the rationale for the individual document determinations contained in appendices to the opinion.

The Court's opinion clearly has "broad significance bearing on the validity" of the assertions of privilege by any party involved in a contractual dispute with the Government before the Court of Federal Claims. This, then, is "an 'exceptional case' that justifies interlocutory appeal." American Airlines, Inc. v. United States, 71 Fed. Cl. 744, 746 (2006).

Chevron argues that the Government "fails to identify any pending case that involves the same issues and would be affected" by an interlocutory review of the privilege opinion. Pl. Resp. 13. And indeed, in response to the Government's argument for certification in American Airlines that an interlocutory appeal would provide guidance to other commercial airlines, the Court noted that "[t]his might be a viable argument if a significant number of other commercial airlines had similar pending cases against the Government." Id. at 747. But unlike in American Airlines, the Court's privilege rulings here have a much broader application - they will govern the ability of any party before this court, regardless of the type of party they represent, to assert the attorney-client, work-product, and deliberative-process privileges. The privilege issues in dispute are not limited to cases brought by oil companies disputing equity finalization procedures. As in Marriott, then, resolution of the issues the Government has identified for appeal will have "broad significance bearing on the validity" of all such privilege claims. Therefore, despite the fact that an interlocutory appeal here is unlikely to terminate the litigation, it is nonetheless appropriate in light of the significant impact it will have, not only in simplifying the issues before this Court, but also in numerous other cases in which issues regarding the contours of these privileges arise.

## II. CHEVRON PRESENTS NO SERIOUS CHALLENGE TO THE GOVERNMENT'S REQUEST THAT THE COURT STAY ITS APRIL 4, 2008 ORDER TO THE EXTENT IT REQUIRES THE PRODUCTION OF PRIVILEGED DOCUMENTS

Chevron argues that the four-factor test that requires a party requesting a stay pending appeal to establish 1) a likelihood of success on the merits; 2) irreparable injury absent a stay; 3) that a stay will not substantially injure other parties to the proceeding; and 4) where the public interest lies, is applicable here, because "courts routinely apply this ordinary four-factor stay test in the context of interlocutory appeals." Pl. Resp. 14. Chevron's argument is again erroneous. None of the cases Chevron cites in support of this proposition applied the "ordinary four-factor stay test" to an interlocutory appeal of a question *certified* for interlocutory appeal pursuant to 28 U.S.C. § 1292. See, e.g., United States v. Phillip Morris Inc., 314 F.3d 612, 621-22 (D.C. Cir. 2003) (applying the four-part test in context of an interlocutory appeal pursuant to collateral order doctrine); Jackson v. Motel 6 Multipurposes, Inc., 172 F.R.D. 469, 473 (M.D. Fla. 1997) (applying four-part test in context of interlocutory appeal *after* denying party's request for certification); Kearney v. Jandernoa, 979 F. Supp. 1156, 1159 (applying four-part test in context of interlocutory appeal pursuant to writ of mandamus); Scholl v. United States, 69 Fed. Cl. 395, 395-97 (2005) (considering the factors included in the four-factor test in light of defendant's request for stay pending interlocutory appeal pursuant to writ of mandamus ).

Requiring a party to meet these standards after the certification of an order for interlocutory appeal would defy logic - certification for interlocutory appeal allows the trial court and the party to seek specific guidance as to the question certified. To certify the privilege opinion for interlocutory appeal while at the same time requiring production of the documents that are the subject of the appeal would defeat the purpose of interlocutory review and destroy the

privileges the Government seeks to protect. For that reason, in the context of a certified interlocutory appeal, this Court "has broad discretion to stay proceedings before it in the interests of economy of time and effort for itself, for counsel, and for litigants." Coast Federal Bank v. United States, 49 Fed. Cl. 11, 15 (2001) (internal citations omitted).

As the Court noted in a conference call with the parties, its rulings on the privilege dispute here are "pivotal," and the Federal Circuit should be afforded "an opportunity to correct course before we do anything that would cause some problems." May 9, 2007 Transcript, p. 46, line 19. (A copy of the cited sections of the transcript of the Court's May 9, 2007 telephonic conference with the parties is attached to the Government's April 16, 2008 motion for certification as Exhibit A). In light of that broad discretion and the significance of the Court's rulings, upon certification of the Government's identified legal issues for interlocutory appeal, the Court should stay its April 4, 2008 Order to the extent it calls for the production of documents the Government has withheld as privileged.

Nonetheless, should the Court believe that an analysis of the four-part test is necessary prior to granting a stay pending interlocutory appeal, the Government satisfies each factor.

A. The Government Is Likely To Succeed On The Merits Of Its Appeal

As we have already established in our motion to certify and above, there is a substantial ground for difference of opinion as to each of the legal issues we have identified for appeal. And for each issue, the Court's rulings appear to conflict with established caselaw regarding the attorney-client, work-product, and deliberative-process privileges. In arguing that the Government cannot meet the "likelihood of success" prong of the four-part test for a stay, Chevron merely restates the arguments it raised earlier in its brief regarding the lack of a

substantial grounds for disagreement. Because Chevron raises no new arguments as to this prong of the test, we need not re-address those arguments.[3] We note, however, that for both the Court's rulings as to the deliberative-process privilege and factual material in drafts, as well as for the Court's rulings on the work-product privilege, Chevron has identified "alternative grounds" upon which the Court's rulings could be affirmed. Chevron's presentation of separate grounds to support the Court's privilege rulings may be viewed as a concern by Chevron that the Court's rulings may not withstand appellate scrutiny.

B. The Government Will Be Irreparably Harmed By The Disclosure Of Privileged Documents Prior To Interlocutory Appeal

Chevron argues that the Government will suffer no irreparable harm as a result of the disclosure of privileged documents that are the subject of the privilege dispute because "compliance will not result in the public disclosure of the documents," the disclosure can take place subject to a protective order, and the privilege rulings could therefore be "effectively reviewed" after trial. Pl. Resp. 21. In support of its position, Chevron relies upon the Federal Circuit's decision in Quantum Corp. v. Tandon Corp., 940 F.2d 642, 644 (Fed. Cir. 1991). Quantum, however, only considered whether a discovery order met the requirements for an interlocutory appeal under the collateral order doctrine. 940 F.2d at 643-44. The Quantum Court did not consider either a request for stay in light of a certification request or the "ordinary four-

[3] Chevron does state that the Equity Process Agreement was "drafted by the Government" and "plainly prohibit[s] *ex parte* communications." Pl. Resp. 19. This too, is simply disingenuous. The Equity Process Agreement was drafted as a result of a series of arms-length negotiations regarding the equity finalization process between the parties and their attorneys. A detailed discussion of those negotiations, including the formation of the communications prohibition in the Equity Process Agreement upon which Chevron's lawsuit is based, is set forth in our August 16, 2007 Motion for Summary Judgment.

factor test" for a stay for which Chevron argues here.

Moreover, since Quantum, the Federal Circuit consistently has held that there can be no effective review of an order requiring disclosure of privileged materials after disclosure of the privileged material. See, e.g., In re Spalding Sports Worldwide, Inc., 203 F.3d 800, 804 (Fed. Cir. 2000) (granting mandamus petition that sought to prevent wrongful exposure of privileged communications "because maintenance of the attorney-client privilege up to its proper limits has substantial importance to the administration of justice, and because *an appeal after disclosure of the privileged communication is an inadequate remedy*") (emphasis supplied) (quoting In re Regents of the University of California, 101 F.3d 1386, 1387 (Fed. Cir. 1996)); Connaught Laboratories, Inc. v. Smithkline Beecham P.L.C., 165 F.3d 1368, 1370 (Fed. Cir. 1999) (noting that requiring a final judgment prior to the appeal of a discovery order compelling production of protected material would be ineffective if the order "implicate[d] privileges, such as attorney-client or work product, *that would be irreparably harmed if the information in question were released prior to an appeal*") (emphasis supplied) (internal citations omitted)).

Other circuit courts of appeal share the Federal Circuit's view. In Philip Morris Inc., for example, the appellant tobacco company sought an emergency stay pending expedited appeal under the collateral-order doctrine of a district court discovery order requiring production of a document allegedly protected by the attorney-client privilege. In evaluating the third prong of the collateral-order doctrine, i.e., whether the district court's order would be effectively unreviewable on appeal from a final judgment after trial, the D.C. Circuit stated:

> While [appellant] could appeal the discovery order after final judgment, the appellate court would merely send the case back for re-trial without use of the privileged materials. By that point, the

> entirety of the [allegedly privileged document] will have been disclosed to third parties, making the issue of privilege effectively moot. In this case, the right sought to be protected–[appellant's] privilege–would be destroyed if interlocutory appeal is not allowed. Moreover, the [opposing party] could gain valuable new leads from the [allegedly privileged document]. It would be impossible for a court to sort out and redress the harm caused by the incorrect disclosure.

314 F.3d at 619 (citations and parenthetical material omitted). The D.C. Circuit in Philip Morris further held that the appellant "would suffer irreparable injury if a stay is denied," noting that "the general injury caused by the breach of the attorney-client privilege and the harm resulting from the disclosure of privileged documents to an adverse party is clear enough." Id. at 621-22. See also In re Ford Motor Co., 110 F.3d 954, 963 (3d Cir. 1997) ("Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. At best, on appeal after final judgment, an appellate court could send the case back for re-trial without use of the protected materials. At that point, however, the cat is out of the bag."); United States v. West, 672 F.2d 796, 799 (10th Cir. 1982) ("Whether disclosure is limited to a motion or granted in the course of the trial, the privilege is still rendered worthless. Any subsequent review, even after limited disclosure, would be for naught, because the damage would already be accomplished. Thus, appellate review of the claim would be meaningless.").

Moreover, Chevron's argument that the Government's privilege claims will not be mooted upon disclosure simply because a protective order would prevent the public disclosure of those documents makes no sense. The Government's primary concern here is not only the public disclosure of the privileged material. The concern is with the disclosure of privileged information *to opposing counsel*. See Chase Manhattan Bank N.A. v. Turner & Newall, PLC,

964 F.2d 159, 164 (2d Cir. 1992) ("In the case of the attorney-client privilege . . . a litigant claiming the privilege would probably prefer almost anyone other than adversary counsel to review the documents in question. . . [the discovery order in question] allows one kind of critical disclosure - to opposing counsel in litigation - that the privilege was designed to protect."). In Chase Manhattan Bank, the Second Circuit considered upon a writ of mandamus a district court's discovery order that allowed for plaintiff's counsel to conduct an "attorney's-eyes-only" review of documents withheld by defendant as attorney-client privileged, to make a determination as to which documents plaintiff wanted to formally challenge defendant's privilege claims. The court of appeals held that such a procedure was improper, noting that "[t]he attorney-client privilege prohibits disclosure to adversaries as well as the use of confidential communications as evidence at trial." Id. As the court explained, "[i]f opposing counsel is allowed access to information arguably protected by the privilege before an adjudication as to whether the privilege applies, a pertinent aspect of the confidentiality will be lost, even though communications later deemed to be privileged will be inadmissible at trial." Id. at 165. And as the court further observed, even if such disclosed privileged documents are ultimately deemed inadmissible at trial, "[they] may alert adversary counsel to evidentiary leads or give insights regarding various claims or defenses. Moreover, attorneys cannot unlearn was has been disclosed to them in discovery." Id. The disclosure to Chevron of the privileged documents in question here, especially in light of the ongoing equity finalization for which many of the documents in question were prepared, would effectively destroy the privilege, notwithstanding that such documents may be subject to a protective order preventing their public disclosure.

As Chevron would have it, in any case, materials subject to the attorney-client, work-

product, and deliberative process privileges could be disclosed to opposing counsel so long as there was a protective order in place preventing the public disclosure of those materials. Such a rule would vitiate the privileges in their entirety and have a chilling effect on the "full and frank communications between attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); see also Chase Manhattan Bank, 964 F.2d at 165 (noting that the limited assurance that communications disclosed to adversaries will not be admissible at trial "will not suffice to ensure free and full communication by clients who do not rate highly a privilege that is operative only at the time of trial"). Requiring the production of privileged documents here prior to affording the Government an opportunity to appeal any such order would irreparably harm the Government and undermine the purpose of the privileges asserted.

We also noted in our motion to certify that the disclosure of privileged documents prior to appeal would greatly harm DOE's interests in the continuing equity finalization process, a point Chevron does not dispute in its opposition to our certification motion.

C. A Stay Would Harm Neither Chevron Nor The Public Interest

Chevron argues that a stay of the April 4, 2008 would result in harm to it because such a stay would delay the ultimate completion of this lawsuit. Pl. Resp. 22. Of course, "[a] mere assertion of delay does not constitute substantial harm." Phillip Morris Inc., 314 F.3d at 622. And despite Chevron's representation that "a stay would effectively halt the process of the case entirely until any appeals are finished," Pl. Resp. 2, the Government is not requesting that the litigation be stayed in its entirety. We request only that the Court stay its April 4, 2008 Order to the extent it requires the production of documents we have withheld as privileged. The Court need not stay any other aspect of the Order, and in fact, the Court has directed, notwithstanding

the ongoing privilege dispute and the Government's motion to certify, that Chevron file responses to the Government's February 13, 2008 Motion For Reconsideration and August 17, 2007 Motion To Dismiss In Part for lack of subject-matter jurisdiction.[4/] And contrary to its misleading argument, Chevron concedes that it would *not* be harmed by a stay of only the production of the disputed documents here. Chevron clearly states in its brief that "there is sufficient other evidence for the case to proceed through discovery and trial *even if* the Federal Circuit were to reverse the orders compelling disclosure." Pl. Resp. 11. See also Chevron's July 24, 2007 "Status Report Regarding Disputed Documents," p. 8 (noting that "Chevron believes that the *evidence already in hand* is more than sufficient to establish" its case on liability) (emphasis supplied).

Moreover, Chevron states that it would be harmed by a stay of the Court's April 4, 2008 Order "[b]ecause the current process is tainted, [and] equity finalization can only be resolved by an agreement of the parties (or a court order) to abandon the process or begin a new process. But such an agreement or order is unlikely to occur before the resolution of this case." Pl. Resp. 23-24. This posturing is wholly self-serving and presumptuous. This Court has made no finding that the current equity finalization process is "tainted," let alone that it has jurisdiction to

---

[4] There are also several other motions currently pending before the Court for which briefing has not yet been, but could be, completed, including the Government's motion to compel, motion for summary judgment, and motion to exclude Chevron's designated trial experts. There is no reason that the parties cannot complete the briefing on those motions pending the Government's interlocutory appeal. None of the documents that are the subject of the Government's certification motion has a bearing upon the resolution of these outstanding motions, including the issues addressed by the Government's motion for summary judgment. In the latter regard, the Court upheld the Government's privilege assertions over any documents identified by Chevron relating to the negotiation of the Equity Process Agreement. Chevron has not requested interlocutory review of those rulings.

entertain Chevron's requested finding that the alleged breaches of contract in this case were "material." The equity finalization process is ongoing, is unaffected by the privilege issues currently before this Court, and would not be delayed by an interlocutory appeal. Chevron's argument to the contrary is baseless.

Because neither Chevron's lawsuit before this Court nor the ongoing equity finalization process will be unduly delayed by a stay pending interlocutory appeal of the Court's privilege rulings, Chevron cannot establish any harm to either itself or the public interest that weighs against such a stay. As such this prong weighs in favor of granting the Government's request for a stay of the April 4, 2008 Order.

D. The Government Has Already Established "Clear Hardship" If Privileged Documents Are Disclosed Prior To An Appeal Being Taken

Chevron argues that the Government cannot establish "a clear case of hardship or inequity in being required to go forward" because any disclosure of privileged materials would be "subject to the full safeguards of a stringent protective order." Pl. Resp. 25. We have already explained that the disclosure of privileged documents to opposing counsel, under protective order or otherwise, moots the privilege and would create an irreparable injury without adequate remedy. The Federal Circuit has clearly embraced this argument. Therefore, the Government has established the requisite hardship for a stay of the Court's April 4, 2008 Order to the extent it requires the disclosure of privileged documents.

CONCLUSION

For the reasons stated both herein and in our April 16, 2008 motion to certify, the Government's motion should be granted. We respectfully request that the Court certify the requested interlocutory appeal and stay the April 4, 2008 Order to the extent it requires production of documents over which the Government has asserted privilege.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

s/ John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-1438
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

May 2, 2008

## CERTIFICATE OF FILING

I hereby certify that on May 2, 2008, a copy of the foregoing "DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO CERTIFY THE COURT'S JANUARY 31, 2008 PRIVILEGE RULINGS FOR INTERLOCUTORY APPEAL AND TO STAY THE COURT'S APRIL 4, 2008 ORDER PENDING APPEAL" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/John E. Kosloske