**Filed Electronically on May 19, 2008**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:04cv1365 |
| vs. | ) | |
| | ) | Judge Susan G. Braden |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**CHEVRON'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION**

Donald B. Ayer
Lawrence D. Rosenberg
*Counsel of Record*
Michael S. Fried
Louis K. Fisher
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

Dated: May 19, 2008

*Counsel for Chevron U.S.A. Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT .......................................................................................................................2

I. THE GOVERNMENT OFFERS NO VALID REASON TO RECONSIDER THE COURT'S DETERMINATIONS REGARDING DOCUMENTS PREPARED BY, OR PREVIOUSLY SENT TO, CHEVRON ........................................................2

A. Chevron And The Court Reasonably Understood The Government To Be Making Indefensible Attorney-Client Privilege Assertions Over The Documents In Question.....................................................................................3

B. The Government's Attempt to Defend Its Conduct By Reference to the Work Product Doctrine Is Just As Meritless As An Attorney-Client Privilege Designation Would Have Been ..................................................4

II. THE GOVERNMENT'S DOCUMENT-SPECIFIC ARGUMENTS MERELY REINFORCE THE DEFICIENCIES OF ITS GENERAL APPROACH TO WITHHOLDING DOCUMENTS AS PRIVILEGED .......................................................8

CONCLUSION..................................................................................................................11

## TABLE OF AUTHORITIES

### CASES

*In re Allen*, 106 F.3d 582 (4th Cir. 1997) ....................6

*Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority*, 242 F.R.D. 139 (D.D.C. 2007) ....................6

*Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122 (2007) ....................7

*In re Grand Jury Subpoenas*, 318 F.3d 379 (2d Cir. 2003) ....................7, 9

*In re Grand Jury Subpoenas*, 959 F.2d 1158 (2d Cir. 1992) ....................5, 8

*Paalan v. United States*, 58 Fed. Cl. 99 (2003) ....................3

*In re San Juan Dupont Plaza Hotel Fire Litigation*, 859 F.2d 1007 (1st Cir. 1988) ....................5

*Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987) ....................6

*Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985) ....................4, 5, 6, 7, 9, 10

Plaintiff Chevron U.S.A. Inc. ("Chevron") opposes the government's motion for reconsideration of portions of the Court's January 31, 2008 Opinion and Order (the "Order"). The government requests the Court to reconsider the portion of the Order addressing documents that Chevron itself created, or that Chevron already received from the government, over which the government nonetheless asserted privilege claims. It appears that the government's motion is premised more upon attempting to vindicate the reasonableness of its conduct in making privilege designations than upon the significance of the handful of documents it identifies. And, in candor, it appears (without Chevron or its counsel having had the opportunity to review the documents in question) that the documents identified by the government in its motion are not likely to be particularly important to Chevron's case. Nonetheless, the sweeping and unprecedented legal arguments the government uses to withhold these documents (and presumably hundreds or thousands of others that the Court never reviewed) are entirely meritless and supply no basis for reconsideration.

The government now argues that it was entitled to withhold these plainly unprivileged documents under the work product doctrine. The government incorrectly relies on several cases that merely have recognized a narrow exception to the ordinary work product standards, permitting that privilege to apply to a narrow set of documents that would demonstrably reveal significant attorney thought processes. None of those cases even arguably authorizes what the government attempted here — the wholesale nondisclosure of any documents considered by any government participant in the entire equity finalization process. Indeed, the government's effort to withhold these documents on that theory merely underscores the government's extraordinarily restrictive and unprecedented approach to privilege issues in this case. The government's position is baseless, and its motion for reconsideration should be denied.

The government's discussion of several individual documents confirms that the government has applied its unprecedented theory as broadly as its legal argument would suggest. Without any explanation why disclosure could meaningfully reveal important, protected attorney thought processes, the government repeatedly asserts that documents were properly withheld as work product simply because someone somehow "considered" them during the equity finalization process. With respect to several of the documents, the person who the government contends "considered" the documents was not even an attorney. And in no case does it appear in any way probable that, despite the government's silence, the withheld documents would reveal significant attorney legal or strategic judgments of the sort recognized in the narrow exception on which the government relies. The government's discussion of these documents demonstrates that its conduct in withholding documents as privileged went beyond any reasonably arguable position.

## ARGUMENT

### I. THE GOVERNMENT OFFERS NO VALID REASON TO RECONSIDER THE COURT'S DETERMINATIONS REGARDING DOCUMENTS PREPARED BY, OR PREVIOUSLY SENT TO, CHEVRON

In its Order, this Court observed that the government "has continued to assert privilege, after the court's initial ruling," over numerous documents, "including 14 documents that were authored by or were received by Chevron." Order at 34. The government now asserts that "the Court's decision misconstrues the basis for the Government's privilege assertions with respect to" these documents, and states that the government actually "withheld those documents as work-product protected." Gov. Br. at 2. The government's argument is doubly wrong. In the first place, Chevron and the Court reasonably understood the government to have been asserting attorney-client privilege designations over the documents in question before the government's current motion. And second, the government's claim that it was entitled to withhold Chevron's own documents as government work product is every bit as erroneous as attorney-client privilege

claims would have been. Therefore, the government's alternative rationale for withholding these documents simply supplies no justification for its conduct.

### A. Chevron And The Court Reasonably Understood The Government To Be Making Indefensible Attorney-Client Privilege Assertions Over The Documents In Question

The government now claims that it never intended to assert the attorney-client privilege over these documents. But in its privilege log, the government did, in fact, expressly assert the attorney-client privilege over the documents in question, without any limitation to particular pages or portions of those documents. Moreover, in none of its subsequent briefs (until this motion for reconsideration) did the government ever state that it did not assert the attorney-client privilege over some or all of these documents. *See* Def.'s Mem. of Law in Supp. of Its Attorney-Client and Work-Product Privilege Claims, at 18 (Aug. 3, 2007) (offering work-product defense without withdrawing attorney-client privilege designation); Def.'s Reply in Supp. of Its Attorney-Client and Work-Product Privilege Claims, at 13 (Sept. 14, 2007) (same); Def.'s Filing in Response to the Court's Dec. 19, 2007 Request, at 1-2 (Dec. 19, 2007) (merely referring back to previous briefing).

The government blames the Court for "misconstru[ing]" the government's privilege arguments, Gov. Br. at 2, yet the Court's Order plainly resulted from the broad and undefined character of the government's privilege assertions despite repeated direct requests from the Court to clarify those assertions. *See, e.g.*, Dec. 19, 2007 Tr. at 6:9-7:10; June 15, 2007 Tr. at 12:23-13:2 (attached as Ex. A). This claim can therefore supply no ground for reconsideration. *See* Gov. Br. at 1 (conceding that "[r]econsideration of a determination is confined to those situations where the Court's decision is based 'upon manifest error of law[] or mistake of fact'") (quoting *Paalan v. United States*, 58 Fed. Cl. 99, 105 (2003)). Moreover, the government admits that not all of the withheld documents prepared by or sent to Chevron were even designated as work-product

protected, which it now asserts as the sole basis for withholding the documents. Gov. Br. at 5 n.1. Therefore, there could have been no rational way, in the absence of an affirmative disclaimer of the attorney-client privilege, for the Court to have inferred that the government had withdrawn its assertion of that privilege. Accordingly, the Court was correct in stating that the government had made plainly meritless assertions of attorney-client privilege.

### B. The Government's Attempt to Defend Its Conduct By Reference to the Work Product Doctrine Is Just As Meritless As An Attorney-Client Privilege Designation Would Have Been

In any event, the government's attempt to defend its refusal to disclose documents prepared by Chevron or previously sent to Chevron is completely baseless under its alternative work-product rationale. Nothing in the work product doctrine, any more than the attorney-client privilege, permits the government to withhold these documents. Therefore, the government's alternative ground can supply no basis for reconsideration.

The government premises its purported right to withhold the documents from discovery upon a "selection" doctrine recognized by some courts, including *Sporck v. Peil*, 759 F.2d 312 (3d Cir. 1985). *Sporck* involved a deposition of a party to a lawsuit in which the deponent was asked to reveal the documents his counsel had shown him in preparation for the deposition. *See id.* at 313-14. In this context, the panel found, even though the documents themselves did not satisfy the test for work product protection, "that the selection and compilation of documents by counsel in this case in preparation for pretrial discovery" itself fell within the scope of the work product doctrine because the attorney would naturally select the documents he perceived to be most important and relevant to use in preparing for the deposition. *Id.* at 316. "Because identification of the documents as a group w[ould] reveal defense counsel's selection process," the court permitted the deponent to refuse to answer this specific question about documents that a lawyer had shown a client in direct preparation for a deposition. *Id.* at 315. Significantly, nothing in *Sporck* would

have authorized the withholding of the same documents in response to a broad discovery request that was not framed so as to reveal an attorney's selections.

Some courts have criticized the *Sporck* rationale in certain respects. *See, e.g.*, *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F.2d 1007, 1018 (1st Cir. 1988) (holding that the *Sporck* selection rationale "is flawed because it assumes that the revelatory nature of the sought-after information is, in itself, sufficient to cloak the information"). And the Federal Circuit has not yet resolved the applicability or scope of *Sporck* in this Court. Nonetheless, even putting aside whether the *Sporck* selection rationale is available, by its terms it does not support the government's privilege designations over Chevron's own documents, or those it has already received, in this case.

The *Sporck* case itself involved a narrow exception directed to a small set of documents used by a lawyer to prepare a client for a deposition, where the request was framed so that the response would reveal the lawyer's thought processes. The government's other cases are similar in import, and often emphasize the narrow scope of the selection doctrine. The government relies on *In re Grand Jury Subpoenas*, 959 F.2d 1158 (2d Cir. 1992). But in that case, the Second Circuit *rejected* application of work product protection pursuant to the *Sporck* rationale over certain collected telephone records. The panel noted that the *Sporck* selection theory "creat[es] only a narrow exception to the principle that documents do not acquire protection simply by being transferred by client to attorney." *Id.* at 1167 (internal quotation marks omitted). The court held that there must be "a real, rather than speculative, concern that the thought processes of the client's counsel in relation to pending or anticipated litigation would be exposed." *Id.* (brackets and internal quotation marks omitted). Moreover, because the "document demand [wa]s not designed

to glean what telephone calls [the requester] deem[ed] relevant," but covered a more general category of documents, it found that the *Sporck* doctrine was inapplicable. *Id.*

In *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir. 1987), the Eighth Circuit applied a similarly narrow rationale to protect an in-house attorney for a party from being compelled to answer questions about which documents she remembered seeing or hearing about. *See id.* at 1325. While the court found that this inquiry could reveal the thought processes of the lawyer, and therefore warranted protection, it emphasized that the "case d[id] not involve [the party's] refusal to produce the documents inquired about by plaintiffs' counsel," which it suggested might lead to a different result. *Id.* at 1328. The court found that, because "any recollection [the lawyer] may have of the existence of documents in [the party's] possession likely would be limited to those documents she ha[d] selected as important to her legal theories concerning this case," the work product doctrine could be applied to that narrow testimony. *Id.* at 1329.

Similarly, in *Disability Rights Council of Greater Washington v. Washington Metropolitan Area Transit Authority*, 242 F.R.D. 139 (D.D.C. 2007), the district court permitted application of the selection doctrine to documents responsive to a request for "the subset of [customer complaint files] selected by Plaintiffs as relevant to their case." *Id.* at 142. The court permitted application of the doctrine to this single category of documents on the ground that "the compilation of the documents by Plaintiffs' counsel [wa]s indeed done by an attorney in preparation for this litigation," and could consequently reveal the lawyer's thought processes. *See also In re Allen*, 106 F.3d 582, 608 (4th Cir. 1997) (applying rationale to one document collecting employment records specifically requested by a lawyer, because it "reveals [the lawyer's] thought processes and theories regarding this litigation").

In short, even assuming that the *Sporck* selection rationale applies with full force (as the Federal Circuit has not yet decided), it is universally recognized to be a "narrow" doctrine:

> Not every selection and compilation of third-party documents by counsel transforms that material into attorney work product. To fit within what we have repeatedly characterized as a narrow exception to the general rule . . . the party asserting the privilege must show a real, rather than speculative, concern that counsel's thought processes in relation to pending or anticipated litigation will be exposed through disclosure of the compiled documents.

*In re Grand Jury Subpoenas*, 318 F.3d 379, 386 (2d Cir. 2003) (internal quotation marks omitted). This Court has recognized the same limitation, noting that the *Sporck* exception "is narrow and requires a showing of a real, rather than speculative concern," and rejecting it where "[n]o such showing has been made." *Evergreen Trading, LLC v. United States*, 80 Fed. Cl. 122, 136 (2007) (internal quotation marks omitted).

No court has ever applied the selection rationale in the radically expansive manner that the government apparently seeks to apply it here — to immunize from discovery as work product every document somehow "utilized" in any way "during the equity finalization process." Gov. Br. at 3. The government apparently did not limit designations over documents produced by, or delivered to, Chevron to any discernible category on the basis of specific arguments that those documents would be specially likely to reveal an attorney's thought processes. Instead, it argued generically and sweepingly that any documents selected by anyone (whether a lawyer or not) in any connection during the entire equity finalization process may be categorically withheld under *Sporck*.

Thus, the government argued that, as a blanket matter, so long as documents are "attached to" or even "discussed by" any member of "DOE's EFT" — whether a lawyer or not — "as part of the equity finalization process, they are protected by the work-product privilege, and therefore need not be segregated from those documents that are privileged." Def.'s Mem. of Law in Supp.

of Its Attorney-Client and Work-Product Privilege Claims, at 18 (Aug. 2, 2007). The government later reiterated its categorical claim that "[t]hose documents 'selected and compiled' by DOE's EFT during the equity finalization process, regardless of whether they were created by Chevron or part of the 'public record,' reflect its thought process and strategy, as well as those issues it considered relevant or significant." Def.'s Reply in Supp. of Its Attorney-Client and Work-Product Privilege Claims, at 15 (Sept. 14, 2007). This is so, the government claims, even though production of the documents would not be in response to a targeted request by Chevron for documents selected by the EFT. This breathtaking claim is categorically rejected by the government's own cases, which emphasize the "narrow[ness]" of the selection doctrine and the necessity of particularized analysis to support it rather than the sort of global presumption relied upon by the government in this case. *E.g.*, *In re Grand Jury Subpoenas*, 959 F.2d at 1167.

The government's novel effort to apply the "selection" theory, which has not been adopted by the Federal Circuit, as a blanket protection for any document "utilized" by the government is simply not supportable.

## II. THE GOVERNMENT'S DOCUMENT-SPECIFIC ARGUMENTS MERELY REINFORCE THE DEFICIENCIES OF ITS GENERAL APPROACH TO WITHHOLDING DOCUMENTS AS PRIVILEGED

The government devotes the last section of its brief to discussing several specific documents. While the government's discussion of some of the documents in this section may reflect genuine uncertainty or indicate that in some instances it has produced relevant portions of documents,[1] the government's discussion with respect to others merely reinforces the inadequacy of the government's central argument.

[1] Chevron does not separately address the government's responses to documents 968, 1057, 1390, 819, 1549, and 1553. As to these documents, the government either expresses uncertainty about the referenced documents or states that it produced the relevant portions of the documents and does not assert a *Sporck* selection rationale for withholding them. The government concedes

While it does not appear likely that these particular documents would be important to Chevron's case, they supply a set of discrete examples proving the radically expansive and unprecedented scope of the government's privilege designations — upon which the government also premised the withholding of numerous documents not identified in its motion for reconsideration. They confirm that, in keeping with its legal argument, the government has sought to immunize documents over which there simply can be no valid claim of privilege. They demonstrate that the government has withheld documents — undoubtedly many more than those included in the small sample reviewed by the Court — that were produced by, or already sent to, Chevron, purportedly based on a *Sporck* "selection" rationale, even where the underlying documents were prepared by non-lawyers, or where the accompanying substantive memoranda are not disclosed, thus preventing any imaginable inference of a disclosure of attorney thought processes.

With respect to all of the documents over which it claims a "selection" rationale for invoking the work product doctrine, the government's defenses of such nondisclosures consistently lack any concrete explanation how the withheld documents would actually reveal attorney thought processes. Instead, the government offers only a bare, ritualistic assertion that the documents were "considered" at some point by someone, somehow during the equity finalization process. (Documents 27, 631, 1243, 1721, 1727, 1889). The government thus fails to justify application of the *Sporck* doctrine with respect to any of them. *See, e.g.*, *In re Grand Jury Subpoenas*, 318 F.3d at 386 (noting that "the party asserting the privilege must show a real, rather

(continued…)

that it wrongly withheld production of part of document 978, Gov. Br. at 7 n.3, and asserts that on February 12, 2008, it produced the attachment to counsel for Chevron. Gov. Br. at 7. However, the belated production of a document only *after* the Court's Order plainly supplies no ground for reconsideration of the Order.

than speculative, concern that counsel's thought processes . . . will be exposed through disclosure of the compiled documents") (internal quotation marks omitted). The government has had ample opportunities to do so in its numerous previous briefs (including, if it had so chosen, to file *in camera* explanations of how some document could meaningfully implicate attorney thought processes). Yet it has consistently failed even to make any effort to satisfy this core requirement of the *Sporck* doctrine.

A number of the documents have the even more fundamental defect that they were not even prepared or compiled by attorneys, but rather by non-lawyer engineers. (Documents 27, 1721, 1727, 1889). There is thus no conceivable risk that disclosing the attachments in question could reveal attorney thought processes. These documents exemplify the unreasonably broad and categorical manner in which the government made its privilege designations.

Finally, several of the documents at issue are attachments to letters or memoranda that are themselves privileged. (Documents 631, 1243, 1721). Disclosing attachments to these documents standing alone, without the underlying documents to which they are attached, does not appear at all likely to reveal the author's thought processes or mental impressions. If the government believes otherwise, it had an obligation to explain why. The *Sporck* doctrine is plainly inapplicable to these documents for that additional reason, as well.

## CONCLUSION

For the foregoing reasons, Chevron respectfully requests that the Court deny the government's motion for reconsideration.

Dated: May 19, 2008

Respectfully submitted,

/s/ Lawrence D. Rosenberg

Donald B. Ayer
Lawrence D. Rosenberg
*Counsel of Record*
Michael S. Fried
Louis K. Fisher
Jones Day
51 Louisiana Avenue, NW
Washington, DC 20001
Tel.: 202-879-3939
Fax: 202-626-1700

*Counsel for Chevron U.S.A. Inc.*