# EXHIBIT A

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON USA, )
Plaintiff, )
v. ) Docket No.: 04-1365C
UNITED STATES, )
Defendant. )

Room 702
National Courts Building
717 Madison Place, NW
Washington, D.C.
Wednesday,
December 19, 2007

The parties met, pursuant to notice of the Court, at 1:42 p.m.

BEFORE: HONORABLE SUSAN G. BRADEN
Judge

APPEARANCES:

For the Plaintiff:

LAWRENCE DAVID ROSENBERG, Esquire
DEBBY CLAYMAN

For the Defendant:

JOHN KOSLOSKE, Esquire
ANUSH VOHRA
U.S. Department of Justice

do this, this is fine.
Like 27. The Bates numbers on the one I looked at is CME02202210. Is that correct?
MR. VOHRA: Yes it is, Your Honor.
THE COURT: I've got a faxed cover sheet on which you don't declare privilege, and then I have a letter that you have asserted as privileged dated May 1, 1981, which is sent to Chevron.
I'm at a total loss to understand why anybody remotely thinks that document could be privileged, attorney/client privilege, when they've already sent it to Chevron.
I don't mind going through this, but the first couple I went through are just along -- I mean, that's absurd. Is there some human being who has looked at this stuff?
MR. VOHRA: Yes, Your Honor. Again, I apologize, I don't have the document in front of me. According to the privilege log it states that portions of that document were redacted.
THE COURT: You redacted the entire letter dated May 19, 1981. The letter was sent from the Acting Secretary of Department of Energy to D.T. McGee at Chevron. You now want to assert attorney/client privilege over a document that you sent to Chevron?



MR. VOHRA: Well, Your Honor, as we set forth in our brief on the work product privileges --
THE COURT: Forget work product for the moment. You've asserted this document is subject to attorney/client privilege. It's in the public domain -- you sent it to Chevron. Now you're saying you want to call it back 30 years later? I have no idea what you're doing, and I don't think you do either. To the extent it would be work product is the same problem.
MR. VOHRA: Your Honor --
THE COURT: Mr. Kosloske, have you supervised what's going on here?
MR. KOSLOSKE: Yes, Your Honor.
THE COURT: And you're contending that this document sent to Chevron --
MR. KOSLOSKE: I can't answer your question without pulling out the brief, looking at the document, looking at what we argued. On this short notice, I haven't been able to do that.
THE COURT: Fine. Short notice? Presumably you've been looking through these things.
I strongly suspect that there's been no adult supervision here. That's not going to be my problem. I'm going to leave it the way it is. But



I'm running into -- there's no arguable -- it's impossible that you can assert such a document is privileged. Whatever privilege you may have come up with, you've waived. You sent the letter to these people.
Very well, I'll look forward to getting the CA numbers so I'm sure that I'm looking at the same documents you want me to, but you just confirmed that one of them was the same. I must admit that it's not the first one I've seen like this. I have no idea what you're doing, but I wish you well.
MR. VOHRA: Just to make sure we're clear, the Court wants a list of those numbers and --
THE COURT: I have a list of the numbers. What I want is a correlation for the Bates numbers to be sure that I am looking at the very same documents you want me to since there are duplicate numbers because of the way the government put the thing together. The reason I asked about this specific one, I could not believe it when I read it.
MR. KOSLOSKE: I understand, Your Honor.
THE COURT: Particularly under the circumstances, since we've been through this exercise now -- this is not the first time we've gone through these documents.



I had another problem with Mr. Fuji, asserting privilege on documents I already said were privileged. Obviously, he didn't read any of the orders before, either. Which I've noted.
It's not going to be very pretty, I don't think. All right, well, I'll look forward to getting the other things.
I had hoped to get this out -- I could have done the deliberative process ones but you've decided you want me to do it all in one, so that's fine. I'm going to do it with one with three appendices.
For the life of me, Mr. Kosloske, I have no idea what you're talking about in terms of the government not reviewing documents that you have a chance to appeal.
I've been pretty clear all along, have I not, that no one's getting anything until we're finished with the process. So I don't know why you continue to argue things that are not even on the table. Perhaps it's a style of advocacy or there's some trial strategy in this that I have somehow missed.
MR. KOSLOSKE: No trial strategy, Your Honor, just the way the message was worded I wanted to be clear on that point.

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON, )
Plaintiff, )
)
v. ) Docket No. 04-1365
THE UNITED STATES, )
Defendant. )

Live Tape

(The following transcript was transcribed from a digital recording provided by the United States Court of Federal Claims to Heritage Reporting Corporation on June 15, 2007.)

The parties met, pursuant to the notice of the Court, at 4:32 p.m.

BEFORE: HON. SUSAN G. BRADEN
Judge

APPEARANCES:

For the Plaintiff:

LAWRENCE DAVID ROSENBERG, Esquire
LEWIS FISHER, Esquire
MICHAEL FREED, Esquire

For the Defendant:

JOHN EDGAR KOSLOSKE, Esquire
ANUJ VOHRA, Esquire
U.S. Department of Justice
Civil Division
1100 L Street, N.W.
Washington, D.C. 20530

MR. KOSLOSKE: Respectfully, Your Honor, we're not suggesting a linkage between the two agreements.

THE COURT: It sounds like that to me. How did I miss out on that? Why don't you explain to me exactly what their causation is under your theory, precisely?

MR. KOSLOSKE: Chevron would have to demonstrate that an alleged improper communication had an effect upon either, say in the case of the IPE, a recommendation with respect to a particular zone, or in the case of the ASSE, a decision for a particular zone, and would have to have an effect that would be unfavorable to Chevron or the Chevron's disadvantage.

THE COURT: So, the government's position is that ex parte communications could take place on a daily and continual basis, for whatever reasons, even though it's prohibited by the contract?

MR. KOSLOSKE: Maybe even though it's -- even if that occurred and even though it was a facial breach of the contract, the plaintiff would still have to demonstrate a nexus between that breach and injury to the plaintiff before it could recover --

THE COURT: Well, the injury, isn't that the injury, the fact that they didn't get a proceeding



without ex parte communication?

MR. KOSLOSKE: I didn't argue that, Your Honor.

THE COURT: I understand. All right. Well, you will ample opportunity to make those arguments and have them reviewed.

MR. KOSLOSKE: Thank you, Your Honor.

THE COURT: I'm disappointed. I hope you're hearing that. You know, I expect that when the government says to me something is privileged -- well, there may be a few things on the margin, okay, where there are mistakes made. But, as best as I can see, this comes very close to abuse, and I'm sorry to say that. I'm embarrassed to say it, because I was in the Department.

MR. KOSLOSKE: We're reviewing your rulings, Your Honor.

THE COURT: It's not a matter of reviewing my rulings. I mean, this is cavalier. I didn't expect this. I expected to see a lot more of these documents where there was privilege than what I've seen, a lot more. And on some of these, the issue is not you re-reviewing. That's the purpose of doing it on the work product and attorney-client privilege. There is no deliberative process review that goes on.



You represented to the Court that somebody looked at these documents and they were privileged.

MR. KOSLOSKE: And, at the end of the process, Your Honor, under your order, we have an opportunity to file a memorandum with respect to any of your rulings that we disagree with and we intend to exercise that opportunity.

THE COURT: I don't think you heard what I just said. The last word on whether they were privileged or not comes from the Justice Department. This is not a game, let me see how many we can designate and let the Judge read, so then we get to figure what changed her mind. When you represent to a court that something is subject to the attorney-client privilege, it's not a game. It's not we just say that and we'll see if the judge takes the time to read it or not and says anything to us. I'm taking your at your word as an officer of the Court. The deliberative process stuff I think is a little more squishy and there's room for disagreement on some of that type of stuff. But, on attorney work product, if I've seen those you designate, I expect that they're attorney work product documents, period. If you give a document to Chevron, it's no longer privileged. It's not subject to any privilege. To have those



things on the log is an abuse. There is no other way to put it. I'm just not amused and I'm really disappointed. I came in to -- I mean, credibility is something that's -- when you begin to lose it, it's hard to regain.

MR. KOSLOSKE: Well, respectfully, Your Honor --

THE COURT: Mr. Kosloske, did you review these work product privileges, yourself?

MR. KOSLOSKE: I reviewed some of them --

THE COURT: Some.

MR. KOSLOSKE: -- myself. But, we had others involved in the process.

THE COURT: Did the others involved in the process understand -- hopefully, you will have them -- maybe I need to have a telephone conference and get them all together, because they need to understand that this process is not a game.

MR. KOSLOSKE: Well --

THE COURT: I mean, you designated how many documents? How many thousands of documents were designated? And you're telling the Court that these documents are -- forget about the deliberative process privileged documents. My secretary is doing a log on the number of pages that I'm reading and I can assure