No. 04-1365C
(Judge Braden)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

CHEVRON U.S.A. INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS IN PART

---

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

DONALD E. KINNER
Assistant Director

JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

JUNE 30, 2008

## TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The Material Breach Findings Requested By Chevron Relate To Its Claim That The Government's Putative Breaches Of The Equity Process Agreement And/Or The Alleged Two-Part Agreement Of May 19, 1997 Excused Chevron From All Further Performance Of Such Contracts, Not To The Determination Of Chevron's Damages . . . . . . . . . . . . . . . . . . . . . . . . 2

II. Because Findings Of Material Breach Are Not Required For An Award Of The Reliance Damages Sought By Chevron, Such Gratuitous Findings Would Constitute Declaratory Relief Forbidden By The Tucker Act. . . . . . . . . . . 7

III. Merely Because The Complaint States A Contract Claim For Damages Does Not Mean That The Court Has Jurisdiction To Entertain The Impermissible Declaratory Relief Sought By Chevron .. . . . . . . . . . . . . . . . . . . . 10

IV. The Government Was Not Dilatory In Making This Jurisdictional Objection. . . 14

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## TABLE OF AUTHORITIES

### CASES

Adams v. United States,
20 Cl. Ct. 542 (1990) .......................................................................................10

Admiral Financial Corp. v. United States,
378 F.3d 1336 (Fed. Cir. 2004)......................................................................... 7

Alaska Pulp Corp. v. United States,
48 Fed. Cl. 655 (2001). ................................................................................ 5, 6

Alaska Pulp Corp. v. United States,
59 Fed. Cl. 655 (2004). ................................................................................ 5,6,7

American Maritime Transport, Inc. v. United States,
18 Cl. Ct. 283 (1989) .......................................................................................3

Austin v. United States,
206 Ct. Cl. 719, cert. denied, 423 U.S. 911 (1975) ........................................8,12

Barron Bancshares, Inc. v. United States,
366 F.3d 1360 (Fed. Cir. 2004)......................................................................... 3

Brazos Electric Power Cooperative, Inc. v. United States,
144 F.3d 784 (Fed. Cir. 1998)........................................................................... 3

Burtt v. United States,
176 Ct. Cl. 310 (1966) .....................................................................................12

Chevron U.S.A. Inc. v. United States,
71 Fed. Cl. 236 (2006). .................................................................................. 15

Christopher Village, L.P. v. United States,
360 F.3d 1319 (Fed. Cir. 2004) .......................................................................3

Computer Products International, Inc. v. United States,
26 Cl.Ct. 518 (1992) .......................................................................................17

Corcoran v. Royal Development Co.,
121 F.2d 957 (2d Cir. 1941)............................................................................. 9

**TABLE OF AUTHORITIES (CONT'D)**

**CASES (CONT'D)**

Dakota Tribal Industries v. United States,
34 Fed. Cl. 295 (1995). .......... 12

DiLuigi v. Kafkalas,
437 F.Supp. 863 (M.D. Pa. 1977). .......... 17

Ellis v. United States,
222 Ct. Cl. 65, 610 F.2d 760 (1979). .......... 9

Farmers Grain Co. of Esmond v. United States,
33 Fed. Cl. 298 (1995). .......... 3

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983). .......... 8

First Annapolis Bancorp, Inc. v. United States,
75 Fed. Cl. 280 (2007). .......... 3

Folden v. United States,
379 F.3d 1344 (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005). .......... 14

Fountain v. United States,
192 Ct. Cl. 495, 427 F.2d 759 (1970), cert. denied, 404 U.S. 839 (1971). .......... 12

Gentry v. United States,
212 Ct. Cl. 1, 546 F.2d 343 (1976). .......... 8,9,12,13

Hansen Bancorp, Inc. v. United States,
367 F.3d 1297 (Fed. Cir. 2004). .......... 7

Hometown Financial, Inc. v. United States,
409 F.3d 1360 (Fed. Cir. 2005). .......... 3, 5

Hurt v. United States,
64 Fed. Cl. 88 (2005). .......... 14

Indiana Michigan Power Co. v. United States,
422 F.3d 1369 (Fed. Cir. 2005). .......... 5

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee,
456 U.S. 694 (1982). .......... 15

James v. Caldera,
159 F.3d 573 (Fed. Cir. 1998). .......... 8, 12

Katz v. Cisneros,
16 F.3d 1204 (Fed. Cir. 1994). .......... 3

Kline v. Cisneros,
76 F.3d 1236 (D.C. Circuit 1996). .......... 11, 12

L'Enfant Plaza Properties, Inc. v. United States,
227 Ct. Cl. 1, 645 F.2d 886 (1981). .......... 12

Ledford v. United States,
297 F.3d 1378 (Fed. Cir. 2002). .......... 16

Malone v. United States,
849 F.2d 1441 modified, 857 F.2d 787 (Fed. Cir. 1988). .......... 4

Mason v. United States,
222 Ct. Cl. 436, 615 F.2d 1343 (1980) .......... 3

Miller v. United States,
67 Fed. Cl. 195 (2005). .......... 14

Morris v. United States,
33 Fed. Cl. 733 (1995). .......... 11, 12, 13

Nelson Construction Co. v. United States,
79 Fed. Cl. 81 (2007). .......... 8, 10

Newport News Shipbuilding and Dry Dock Co. v. Garrett,
6 F.3d 1547 (Fed. Cir. 1993) .......... 14

Old Stone Corp. v. United States,
450 F.3d 1360 (Fed. Cir. 2006). .......... 5, 7

## TABLE OF AUTHORITIES (CONT'D)

## CASES (CONT'D)

Olin Jones Sand Co. v. United States,
225 Ct. Cl. 741 (1980) ....................................................................................12

Orion Scientific Systems v. United States,
28 Fed. Cl. 669 (1993). ..................................................................................... 16

Pauley Petroleum Inc. v. United States,
219 Ct. Cl. 24, 591 F.2d 1308 cert. denied, 444 U.S. 898 (1979). .................................. 9

Peterson v. United States,
68 Fed. Cl. 773 (2005). ..................................................................................... 15

Phillips v. GSA,
924 F.2d 1577 (Fed. Cir. 1991)........................................................................... 14

Pines Residential Treatment Center, Inc. v. United States,
444 F.3d 1379 (Fed. Cir. 2006)............................................................................. 3

RHI Holdings, Inc. v. United States,
142 F.3d 1459 (Fed. Cir. 1998)....................................................................... 8, 11

Renda Marine, Inc. v. United States,
71 Fed. Cl. 378 (2006). ..................................................................................... 16

Special Devices, Inc. v. OEA, Inc.,
269 F.3d 1340 (Fed. Cir. 2001)........................................................................... 11

Stone Forest Industries, Inc. v. United States,
973 F.2d 1548 (Fed. Cir. 1992)............................................................................. 3

Taylor v. United States,
80 Fed. Cl. 376 (2008). ..................................................................................... 11

Thomas v. HUD,
124 F.3d 1439 (Fed. Cir. 1997)......................................................................... 4, 5

United States v. Ken Mar Associates, Ltd.,
697 F.Supp. 400 (W.D. Okla. 1987). .............................................................. 17, 18, 19

## TABLE OF AUTHORITIES (CONT'D)

### CASES (CONT'D)

United States v. King,
395 U.S. 1 (1969)........................................................................................... 11

Utter v. Hiraga,
845 F.2d 993 (Fed. Cir. 1988)........................................................................... 15

Wertz v. United States,
51 Fed. Cl. 443 (2002). ..................................................................................... 15

Wheeler v. United States,
3 Cl.Ct. 686 (1983) ..........................................................................................3,9

### STATUTES

United States Code:

28 U.S.C. § 1491(a)(2) (2000) .........................................................................................13

28 U.S.C. § 1491(a)(2) (2000) .........................................................................................13

Public Laws:

Act of August 29, 1972, Pub. L. No. 92-415, 86 Stat. 652 (1972). ........................................... 13

Tongass Timber Reform Act, Pub. L. No. 101-626, 104 Stat. 4426 (1990)................................. 5

### MISCELLANEOUS

Rules of the United States Court of Federal Claims:

RCFC 12(b) .......................................................................................................................15,19

RCFC 12(b)(1) ...............................................................................................2,12,13,15,16

RCFC 12(h)(3) .....................................................................................................................15

# **INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX**

**Document** **Page**

Minute Order filed on November 12, 1987,
in United States v. Ken Mar Associates, Ltd., et al.,
No. CIV-83-1805-P (W.D. Okla.) .......... 1

Docket Sheet in United States v. Ken Mar Associates, Ltd., et al.,
No. CIV-83-1805-P (W.D. Okla.) .......... 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CHEVRON U.S.A. INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 04-1365C |
| v. | ) | |
| | ) | (Judge Braden) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS IN PART

PRELIMINARY STATEMENT

Defendant, the United States, respectfully submits this reply to "Chevron's Opposition to Defendant's Motion to Dismiss in Part" dated June 17, 2008. Chevron opposes the Government's jurisdictional motion upon three grounds: (1) the requested findings of material breach contained in the complaint are within the Court's jurisdiction to make because they relate to the determination of the reliance damages claimed by Chevron, Pl. Opp. 1;[1] (2) the Government's motion is improper because "it merely attacks the availability of a particular remedy without attacking the Court's jurisdiction over any claim in this case," id.; and (3) "the government's dilatory conduct in bringing this motion for the first time years after the close of jurisdictional briefing was plainly improper." Id. For the reasons set out in detail below, we disagree.

Properly construed, the complaint requests, in addition to monetary relief, findings of material breach for the purpose of establishing Chevron's putative right to discontinue performance of the Equity Process Agreement and the alleged two-part May 19, 1997 Agreement, not

---

[1] In this reply, "Pl. Opp. ____" refers to the referenced page(s) of "Chevron's Opposition to Defendant's Motion to Dismiss in Part" dated June 17, 2008, and "Def. Supp. App. ____" refers to the referenced page(s) of the appendix to this reply.

for the purpose of an award of the claimed reliance damages. A finding of material breach is not required for an award of the reliance damages sought by Chevron. Such gratuitous findings thus would constitute declaratory relief forbidden by the Tucker Act rather than, as Chevron asserts, "permissible elaboration on the Court's ruling." Merely because the complaint states a claim for monetary relief does not mean that the Court has jurisdiction to entertain declaratory relief that is not permitted by the Tucker Act, i.e., the material breach findings requested by Chevron.

The Government was not dilatory in filing the Rule 12(b)(1) motion to dismiss in part. A jurisdictional matter can be raised at any stage of a judicial proceeding by any party or by the Court *sua sponte*. Moreover, the timing of the Government's Rule 12(b)(1) motion, which was filed in mid-August 2007, 5-1/2 months before the scheduled trial date as of that time, does not violate any scheduling order of the Court and did not result in any prejudice to Chevron, which had ten months within which to prepare its response to the motion.

## ARGUMENT

### I. The Material Breach Findings Requested By Chevron Relate To Its Claim That The Government's Putative Breaches Of The Equity Process Agreement And/Or The Alleged Two-Part Agreement Of May 19, 1997 Excused Chevron From All Further Performance Of Such Contracts, Not To The Determination Of Chevron's Damages

Chevron first argues that "the Complaint does not seek any declaratory relief, but rather merely seeks ordinary factfinding in the course of adjudicating Chevron's damages claim." Pl. Opp. 1; see also Pl. Opp. 2 ("Plainly, in the two sentences upon which the government bases its entire motion, Chevron is asking the Court not to enter declaratory relief, but rather to make findings in the course of adjudicating Chevron's damages claims."); Pl. Opp. 3 ("[I]t is clear from the face of the Complaint that Chevron only is requesting findings attendant to an award of contract

damages."). We disagree.

The Court "is not bound by the labels a party chooses for an action or by its characterization of an issue." American Maritime Transport, Inc. v. United States, 18 Cl.Ct. 283, 293 (1989) (citing Mason v. United States, 222 Ct. Cl. 436, 442, 615 F.2d 1343, 1346 (1980)). Instead, the Court "must conduct a careful examination of a party's assertions to determine their true character." Wheeler v. United States, 3 Cl.Ct. 686, 688 (1983); accord Brazos Electric Power Cooperative, Inc. v. United States, 144 F.3d 784, 787 (Fed. Cir. 1998) ("Court of Federal Claims jurisdiction cannot be circumvented by such artful pleading[;] we look to the substance of the pleadings rather than to their form."); Pines Residential Treatment Center, Inc. v. United States, 444 F.3d 1379, 1380 (Fed. Cir. 2006) ("Regardless of a party's characterization of its claim, 'we look to the true nature of the action in determining the existence or not of jurisdiction.'" (quoting Katz v. Cisneros, 16 F.3d 1204, 1207 (Fed. Cir. 1994)).

One of the two ways in which the concept of materiality arises in the context of breach of contract is that, upon material breach of a contract, the non-breaching party has the right to discontinue performance of the contract and to seek redress in accordance with law.[2/] See, e.g., Stone Forest Industries, Inc. v. United States, 973 F.2d 1548, 1550 (Fed. Cir. 1992); Farmers

[2] The other way in which the concept of materiality arises in the context of breach of contract is that a party sued for breach of contract may defend on a theory that its nonperformance is excused because the other contracting party committed the first material breach. Hometown Financial, Inc. v. United States, 409 F.3d 1360, 1370 (Fed. Cir. 2005); Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1380 (Fed. Cir. 2004); Christopher Village, L.P. v. United States, 360 F.3d 1319, 1334 (Fed. Cir. 2004); First Annapolis Bancorp, Inc. v. United States, 75 Fed. Cl. 280, 291 (2007).

Grain Co. of Esmond v. United States, 33 Fed. Cl. 298, 300 (1995).[3] It is in this sense that the complaint refers to and requests findings of "material breach" of the Equity Process Agreement and the alleged two-part May 19, 1997 Agreement. That Chevron so intended is reflected by the statements of its initial attorney of record in this matter, Donald B. Craven of Akin Gump Strauss Hauer & Feld LLP, two months before the filing of Chevron's complaint on August 20, 2004. In a June 14, 2004 letter to the DOE General Counsel, Mr. Craven asserted, among other things:

> ***DOE's conduct*** in the Stevens Zone proceeding ***constitutes a*** fundamental and ***material breach*** of the DOE's obligations under the Equity Process Agreement. ***As a result of DOE's breach, [Chevron] considers both the Equity Process Agreement and the Decoupling Agreement to be no longer operative.***

Appendix to Defendant's Motion for Summary Judgment dated August 16, 2007, Volume III, at 736 (emphases added). The complaint should be construed in light of what Chevron intended when that pleading was prepared and not some different meaning Chevron finds convenient for the purpose of responding to the Government's jurisdictional objection.[4] Properly construed, therefore, the complaint requests findings of material breach for the purpose of establishing Chevron's right to discontinue performance of the Equity Process Agreement and the alleged two-part May 19, 1997 Agreement.

---

[3] See also Thomas v. HUD, 124 F.3d 1439, 1442 (Fed. Cir. 1997) (HUD's material breach of settlement agreement with disciplined employee discharged employee from contractual duty to resign); Malone v. United States, 849 F.2d 1441,1446, modified, 857 F.2d 787 (Fed. Cir. 1988) (Government's material breach of construction contract provided contractor with a legal right to avoid the contract, discharged contractor's duty to perform, and relieved contractor of default termination and its consequences).

[4] Chevron's present counsel of record, who did not prepare Chevron's complaint, is Lawrence D. Rosenberg of Jones Day. Mr. Rosenberg entered his appearance in this case on September 29, 2005, thirteen months after the complaint was filed.

Contrary to Chevron's argument, see Pl. Opp. 3-4, "material breach" is a *liability* finding for the purpose of determining the right of a non-breaching party to discontinue performance of a contract.[5/] No such finding is necessary to an award of the reliance damages sought by Chevron. "Damages for a breach of contract are recoverable where: (1) the damages were reasonably foreseeable by the breaching party at the time of contracting; (2) the breach is a substantial causal factor in the damages; and (3) the damages are shown with reasonable certainty." Indiana Michigan Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005); see also Old Stone Corp. v. United States, 450 F.3d 1360, 1375 (Fed. Cir. 2006) ("Losses must also satisfy a closely related requirement–they must be proximately caused by the breach.").

This distinction is reflected in the Court's decisions with respect to liability and damages in the Alaska Pulp litigation. See Alaska Pulp Corp. v. United States, 48 Fed. Cl. 655 (2001) ("Alaska Pulp I"); Alaska Pulp Corp. v. United States, 59 Fed. Cl. 655 (2004) ("Alaska Pulp II"). That litigation involved a timber contract between the Alaska Pulp Corporation ("Alaska Pulp") and the Forest Service. Alaska Pulp claimed that the Forest Service's implementation of the Tongass Timber Reform Act, Pub. L. No. 101-626, 104 Stat. 4426 (1990) ("TTRA") materially breached the timber contract excusing further performance by Alaska Pulp and relieving Alaska Pulp of the consequences of the Forest Service's termination of the contract for default based upon Alaska Pulp's suspension of pulp mill operations after the enactment and implementation of TTRA. Alaska Pulp I, 48 Fed. Cl. at 656, 658.

---

[5] A "material breach" is a breach that "relates to a matter of vital importance, or goes to the essence of the contract." Thomas, 124 F.3d at 1442. "Whether a breach is material is a mixed question of law and fact." Hometown, 409 F.3d at 1369. "The legal aspect of the question flows from the proper interpretation of the contract, while the factual aspects of the question flow from the parties' conduct–what they did, or did not, do." Id.

In Alaska Pulp I, the Court addressed the material breach issue in the context of resolving Alaska Pulp's motion for partial summary judgment regarding the Government's liability upon the TTRA claim, not as part of any damages assessment. In concluding that the Forest Service's implementation of TTRA constituted a material breach of the timber contract,[6/] the Court opined that "[t]he materiality of the breach is not affected by its actual consequences or by the measure of harm that flows from that breach," rejecting the Government's effort to rebut the materiality of the breach "by attempting to minimize the actual effect of the unilateral terms on [Alaska Pulp's] corresponding contract rights." Alaska Pulp I, 48 Fed. Cl. at 660. Noting that "[l]iability for a material breach requires an evaluation of the breaching party's conduct in light of the contractual expectations of the parties," an "assessment made as of the time of breach," id, at 661, the Court opined:

> [Alaska Pulp] . . . has shown that individually and collectively [TTRA] . . . resulted in an entirely different agreement from the one entered into 30 years earlier, or modified in 1990. ***It is this showing, and not the actual impact, financial or otherwise, which is central.***

Id. at 672 (emphasis added).

In Alaska Pulp II, the Court addressed Alaska Pulp's damages claim, holding that Alaska Pulp was not entitled to any damages because "the TTRA was not a substantial factor–indeed, no factor at all–in the closure of the pulp mill and the resulting termination of the contract." 59 Fed.

[6] In Alaska Pulp II, 59 Fed. Cl. at 412, the Court summarized its liability decision as follows: "[W]e . . . ruled in favor of [Alaska Pulp] on Count I, finding that the TTRA constituted a material breach of [Alaska Pulp's] contract. [Alaska Pulp] was, therefore, relieved of its performance obligations. Closing the pulp mill without providing for alternate means of primary manufacturing could not amount to an [Alaska Pulp] breach. By the same token, the Forest Service's formal termination no longer would be considered a breach, entitling [Alaska Pulp] to damages based on an improperly terminated contract."

Cl. at 438. In the course of its damages opinion, the Court noted that Alaska Pulp had the burden of proving the requirements for an award of damages, including "causation, foreseeability, and reasonable certainty in the amount of damages," and that, "[w]here, as in this case, independent facotrs combine to harm [Alaska Pulp], the causation requirement is satisfied only if [Alaska Pulp] proves the breach was a 'substantial factor' in causing the damages." Id. at 413-14. The Court did not consider the materiality of the breach in the damages context, except to remark in passing that, in addition to presenting Alaska Pulp with an opportunity to cease the unprofitable operation of its pulp mill with legal impunity, "[a] material breach also provides an alternate form of recovery–restitution–in lieu of expectancy or reliance damages." Id. at 415.[7/] Chevron, however, does not seek restitution. Its monetary claim is one for reliance damages, which does not require a finding of material breach.[8/]

## II. Because Findings Of Material Breach Are Not Required For An Award Of The Reliance Damages Sought By Chevron, Such Gratuitous Findings Would Constitute Declaratory Relief Forbidden By The Tucker Act

Chevron next argues that, "if the Court were to make findings of 'materiality' where those findings were not strictly necessary to an award of damages, then the findings merely would constitute permissible elaboration on its ruling, not impermissible declaratory relief." Pl. Opp. 3. We disagree.

---

[7] See also Old Stone, 450 F.3d at 1371 (Fed. Cir. 2006) (finding of "total breach" necessary for restitution award); Admiral Financial Corp. v. United States, 378 F.3d 1336, 1344 (Fed. Cir. 2004) (same); Hansen Bancorp, Inc. v. United States, 367 F.3d 1297 (Fed. Cir. 2004) (same).

[8] Chevron asserts that "the government's suggestion that materiality is irrelevant to the case is completely unsupportable in light of its repeatedly expressed position on these points." Pl. Opp. 4. Chevron does not point to anything in the record in support of that assertion. That is because there is no record support for it. The Government has not previously contended that a finding of material breach is germane to the analysis of Chevron's claim for reliance damages.

Unless explicitly authorized by law, declaratory relief in a Tucker Act suit is permitted only where "it is tied and subordinate to a monetary award." Gentry v. United States, 212 Ct. Cl. 1, 24, 546 F.2d 343, 355 (1976) (internal quotation marks omitted); accord Austin v. United States, 206 Ct. Cl. 719, 723 ("[I]t is now firmly established that, since the general jurisdiction of this court is limited to money claims against the Government, we have no authority to enter a declaratory judgment, or to grant affirmative non-monetary relief unless it is tied and subordinate to a monetary award."), cert. denied, 423 U.S. 911 (1975). In James v. Caldera, 159 F.3d 573, 581 (Fed. Cir. 1998), the Federal Circuit clarified that "tied and subordinate to a monetary award" means a determination of rights or other non-monetary relief that is *necessary* for a monetary award. In concluding that it lacked jurisdiction to entertain the claimant's challenge to a bar to military re-enlistment, the court explained: "The reason is that there would be no need to consider the bar in deciding whether James was entitled to back pay by reason of a five month extension of his enlistment." Id. (citations omitted) (emphasis added).

Chevron's broad construction of the tied-and-subordinate-to standard to include judicial findings "not strictly necessary to an award of damages" is inconsistent with James and settled precepts of construction with respect to statutes that waive the sovereign immunity of the United States, such as the Tucker Act. In "construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Nelson Construction Co. v. United States, 79 Fed. Cl. 81, 84 (2007) (quoting Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983)). Thus, "[a]ny statute which creates a waiver of sovereign immunity must be strictly construed in favor of the Government." RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998).

Chevron's reliance upon the decision of Judge Learned Hand in Corcoran v. Royal Development Co., 121 F.2d 957 (2d Cir. 1941), is misplaced. If anything, that decision *undermines* Chevron's argument here. In the course of the opinion, the Second Circuit observed that "it is absurd to speak of a judgment as 'declaratory' in so far as it 'declares' no more than is necessary to sustain the immediate relief prayed, for in that sense every action is for a 'declaratory judgment.'" Id. at 959. Turning to the appeal before it, the court stated: "In the case at bar the complaint asks the 'declaration' of no rights that would not have to be adjudicated before there could be a distribution of a corporation's assets in equity." Id. Corcoran plainly implies that any determination of rights not necessary to support a distribution of corporate assets – the immediate relief sought in that case – would have been tantamount to a declaratory judgment.

Both this Court and the Court of Claims have drawn a similar distinction in the context of analyzing whether requested judicial findings are tied and subordinate to a monetary award or constitute declaratory relief outside the scope of the Tucker Act's waiver of sovereign immunity. See, e.g., Ellis v. United States, 222 Ct. Cl. 65, 69-70, 610 F.2d 760, 762 (1979) (claimant's annuity entitlement turned upon whether claimant eligible to retire as a "firefighter" within meaning of annuity statute, declaratory relief that was tied and subordinate to a monetary claim); Pauley Petroleum Inc. v. United States, 219 Ct. Cl. 24, 38, 591 F.2d 1308, 1315, cert. denied, 444 U.S. 898 (1979) (court had jurisdiction to entertain suit that required ruling upon plaintiffs' rights under offshore oil leases where plaintiffs explicitly sought a monetary remedy and were "not asking for a simple declaration of rights in their leases which may or may not result in a subsequent payment of money outside of the court's processes"). Gentry, 212 Ct. Cl. at 24, 546 F.2d at 345-46 (resolution of constitutionality of annuity statute's "live-with" requirement was

necessary to determine claimant's entitlement to payment under the statute and, therefore, constituted declaratory relief that was tied and subordinate to the monetary claim); Wheeler, 3 Cl.Ct. at 688 (Claims Court "may properly interpret and apply statutes and review regulations incident to and as a necessary part of awarding damages").

Therefore, because findings of material breach are not required for an award of the reliance damages sought by Chevron, such gratuitous findings would constitute declaratory relief forbidden by the Tucker Act.

III. Merely Because The Complaint States A Contract Claim For Damages Does Not Mean That The Court Has Jurisdiction To Entertain The Impermissible Declaratory Relief Sought By Chevron

Chevron argues that, "[e]ven if [it] were seeking declaratory relief beyond this Court's authority, the government's Rule 12(b)(1) motion would be meritless" because "[t]he Court indisputably has jurisdiction over Chevron's breach-of-contract claims and has the authority to award the damages that Chevron requests." Pl. Opp. 5. "Any request for additional relief that is beyond the Court's authority," the argument goes, "simply could be denied at the time of the decision and, thus, would not implicate the Court's jurisdiction." Id.; see also Pl. Opp. 8 ("even if the government were correct that the complaint requested declaratory relief outside the scope of this Court's Tucker Act jurisdiction to issue, this would be a premature remedies question, not a valid ground for a motion to dismiss"). Again, we disagree.

The extent of the Court's authority under the Tucker Act to award non-monetary relief implicates the Court's subject-matter jurisdiction. E.g., Nelson, 79 Fed. Cl. at 84 ("The scope of this court's jurisdiction to entertain claims ***and grant relief*** depends upon the extent to which the United States has waived its sovereign immunity." (emphasis added)); Adams v. United States,

20 Cl.Ct. 542, 543 (1990) (Court of Federal Claims "has no jurisdiction to grant injunctive or declaratory relief . . . except as conferred by statute," citing United States v. King, 395 U.S. 1, 3 (1969)). And this Court "has a duty to inquire into its jurisdiction to hear and decide a case." Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1342 (Fed. Cir. 2001); accord RHI Holdings, 142 F.3d at 1461 ("All federal courts are courts of limited jurisdiction, and it is the duty of a federal court to examine its jurisdiction over every claim before its assumes jurisdiction."); Taylor v. United States, 80 Fed. Cl. 376, 378 (2008) (citing Special Devices). The Court, therefore, should address the question of its authority to make the material breach findings requested by Chevron now rather than later, before entertaining the merits of those requested findings.

According to Chevron, "[b]y the [Tucker Act's] terms, where Tucker Act jurisdiction exists, it exists over a 'claim' as a whole, and such jurisdiction over a 'claim' is conferred wherever the 'claim' is 'founded' on breach of a contract involving the government." Pl. Opp. 6. "In keeping with this plain statutory meaning, under which the 'claim' is the relevant unit of analysis for purposes of ascertaining Tucker Act jurisdiction," Chevron argues, "this Court's cases have recognized that the presence of non-contractual elements within a claim cannot defeat jurisdiction over that claim, so long as the claim as a whole is supported by a sufficient contractual basis to ground jurisdiction under the statute." Id. As support for this argument, Chevron relies upon two decisions: Morris v. United States, 33 Fed. Cl. 733 (1995), and Kline v. Cisneros, 76 F.3d 1236 (D.C. Circuit 1996).

Morris and Kline are inapposite. They involved the question of whether the pleadings in those cases set forth monetary claims "founded upon" contracts with the United States and, therefore, within the Tucker Act's waiver of sovereign immunity, or tort claims independent of

any such contracts, which fall outside the Tucker Act's waiver of sovereign immunity. Neither Morris nor Kline concerned the extent of the Court's authority under the Tucker Act to entertain a claim for declaratory or other non-monetary relief – the question presented by the requests for material breach findings contained in Chevron's complaint. The test developed by the courts to determine whether a claim that could be plead as a tort is nevertheless within the Court's Tucker Act jurisdiction is whether the claim is one for a "'tortious' breach of contract rather than a tort independent of the contract." L'Enfant Plaza Properties, Inc. v. United States, 227 Ct. Cl. 1, 11, 645 F.2d 886, 892 (1981) (citing Burtt v. United States, 176 Ct. Cl. 310, 314 (1966)); accord Fountain v. United States, 192 Ct. Cl. 495, 498, 427 F.2d 759, 761 (1970) ("If contractual relations exist, the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction."), cert. denied, 404 U.S. 839 (1971).[9/] The courts employ a different test to determine the extent of this Court's authority to grant non-monetary relief: such relief must be "tied and subordinate to" a monetary claim within the Tucker Act's waiver of sovereign immunity, i.e., a monetary claim founded upon the Constitution, a Federal statute or regulation, or a contract. James, 159 F.3d at 581; Gentry, 212 Ct. Cl. at 24, 546 F.2d at 35; Austin, 206 Ct. Cl. at 723.

Chevron also cites Morris for the proposition that "even the genuine presence of extra-judicial provisions in a claim does not support a dismissal on a Rule 12(b)(1) motion." Pl. Opp. 7. Morris does not hold anything of the kind. In Morris, the Court concluded that the complaint

---

[9] For a claim to be characterized as a tortious breach of contract, the claimant must establish a connection between the alleged tortious conduct and a contractual obligation of the United States to the claimant. L'Enfant Plaza, 227 Ct. Cl. at 11, 645 F.2d at 892. "It is not sufficient to argue . . . that the alleged tortious conduct is 'related' in some general sense to the contractual relationship between the parties." Id.; accord Olin Jones Sand Co. v. United States, 225 Ct. Cl. 741, 745 (1980); Dakota Tribal Industries v. United States, 34 Fed. Cl. 295, 298 (1995).

stated a tortious breach of contract and was therefore within the Court's Tucker Act jurisdiction. 33 Fed. Cl. at 742-43. In a footnote accompanying that holding, the Court noted that "the complaint also contains allegations unrelated to any contract obligations" and stated that, "to the extent that the plaintiffs have alleged additional non-contract claims, ***this court cannot assume jurisdiction thereof*** as they would sound in tort, if at all." Id. at 743 n.8.

Chevron's analysis jettisons the judicially-fashioned tied-and-subordinate-to requirement of the Tucker Act. It is also inconsistent with 28 U.S.C. § 1491(a)(2) (2000), enacted in 1972,[10/] which amended the Tucker Act by authorizing certain equitable relief when such relief would be "an incident of and collateral to" a money judgment pursuant to 28 U.S.C. § 1491(a)(1) (2000):

> To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, and correction of applicable records, and such orders may be issued to any appropriate official of the United States.

The "judgment" of which section 1491(a)(2) speaks is a money judgment. See Austin, 206 Ct. Cl. at 723. If Chevron's construction of the Tucker Act were correct, there would have been no need for this legislation. It would have been superfluous.

Chevron further contends that "the government fails to cite a single case in which this Court has granted a Rule 12(b)(1) dismissal of a request for declaratory relief where the plaintiff sought money damages on the same claim." Pl. Opp. 9. But Chevron overlooks Gentry, cited by both parties, in which the Court of Claims dismissed a portion of the claimant's petition that requested a declaratory judgment regarding the alleged unconstitutionality of a statutory provision – an allegation that also was at the heart of the claimant's monetary claim which the court

---

[10] Act of August 29, 1972, Pub. L. No. 92-415, 86 Stat. 652 (1972).

held was within its Tucker Act jurisdiction. 212 Ct. Cl. at 24, 546 F.2d at 355.

Therefore, the mere fact that the complaint states a contract claim for damages that is within the Court's Tucker Act jurisdiction does not mean that the Court also has jurisdiction to entertain the impermissible declaratory relief sought by Chevron, i.e., the requested material breach findings.

IV. The Government Was Not Dilatory In Making This Jurisdictional Objection

Chevron asserts that "the government's conduct in raising the issues in [its Motion to Dismiss in Part ], for the first time, years after moving to dismiss for lack of subject matter jurisdiction, and after the Court's initial deadline for filing Rule 12 motions, is improper and wasteful." Pl. Opp. 10. According to Chevron, "[c]ourts have sanctioned the government for similar conduct in other cases." Id. Chevron, however, has not filed a separate motion for sanctions related to this allegation. It appears, therefore, that Chevron is requesting that the Court deny the Government's jurisdictional objection as a penalty for alleged undue delay by the Government in filing the motion.

It is elementary that "[a] jurisdictional matter can be raised at any stage of a judicial proceeding by any party or by the court on its own motion." Phillips v. GSA, 924 F.2d 1577, 1579 (Fed. Cir. 1991); accord Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*."), cert. denied, 545 U.S. 1127 (2005); Newport News Shipbuilding and Dry Dock Co. v. Garrett, 6 F.3d 1547, 1553 (Fed. Cir. 1993) ("[A] party may challenge the subject matter jurisdiction of a federal tribunal at any time."). The Court has an obligation to examine its jurisdiction at all stages of a proceeding. Miller v. United States, 67 Fed. Cl. 195, 198 (2005); Hurt v.

United States, 64 Fed. Cl. 88, 89 (2005). For that reason alone, the Government's jurisdictional objection is not dilatory.

According to Chevron, the Government's jurisdictional objection is untimely because it was filed after "the Court's initial deadline for filing Rule 12 motions" and because the objection was not raised in the motions to dismiss for lack of subject matter jurisdiction filed by the Government in 2004 and 2005 and resolved by the Court on May 31, 2006, in Chevron U.S.A. Inc. v. United States, 71 Fed. Cl. 236 (2006). See Pl. Opp. 10, 11. There are several problems with this contention.

Prior to August 22, 2006, the Court did not by order establish a deadline for filing Rule 12(b)(1) motions. While Rule 12(b) provides that a motion to dismiss for lack of subject-matter jurisdiction "shall be made before pleading if a further pleading is permitted," Rule 12(h)(3) provides a mechanism for raising such a defense after an answer is filed: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." A party, therefore, does not waive its right to raise the issue of a lack of subject-matter jurisdiction either by failing to include the defense in a Rule 12(b)(1) motion filed prior to an answer or by failing to raise the objection in an answer. Peterson v. United States, 68 Fed. Cl. 773, 776 (2005); Wertz v. United States, 51 Fed. Cl. 443, 445 n.2 (2002). As the Supreme Court has observed, "a party does not waive the requirement [for subject-matter jurisdiction] by failing to challenge jurisdiction early in the proceedings." Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982); see also Utter v. Hiraga, 845 F.2d 993, 997 n.1 (Fed. Cir. 1988) ("Parties, by agreement or otherwise, are incapa-

ble of either adding to or detracting from a court's jurisdiction.").[11/]

The pretrial and trial schedule initially adopted by the Court in this case on August 22, 2006, provided that "[a]ny motion(s) pursuant to RCFC 12 and/or 56 shall be filed on or before February 23, 2007" and scheduled a trial of liability issues beginning on April 30, 2007. Pretrial and Trial Schedule, ¶¶ 5,8. On February 5, 2007, the Court adopted a Revised Pretrial and Trial Schedule which required that "[a]ny motion(s) pursuant to RCFC 12 and/or 56" be filed on or before July 23, 2007" and rescheduled a trial of liability issues to begin on October 1, 2007. Id, ¶¶ 5,8. On July 30, 2007, the Court rescheduled the trial of liability issues for February 4, 2008, and stated that "[t]he pretrial and trial schedule may be further amended as necessary." Revised Trial Schedule filed on July 30, 2007.

The Government's Rule 12(b)(1) motion to dismiss in part for lack of subject-matter jurisdiction was filed on August 16, 2007, 5-1/2 months before the February 4, 2008 trial date fixed by the Court's then-in-effect pretrial and trial schedule. The February 5, 2007 Pretrial and Trial Schedule previously in effect had permitted the filing of motions pursuant to Rule 12 or 56 as late as nine weeks before the trial of liability issues. On January 29, 2008, the Court entered a Scheduling Order postponing the February 4-15, 2008 trial of liability issues "until a future date to be determined by the court." Presently, there is no scheduled date for a trial of liability issues in this case and the discovery proceedings are far from complete. Under the circumstances, the suggestion by Chevron that the Government's Rule 12(b)(1) motion to dismiss in part for lack

---

[11] Of course, the jurisdiction of the Court of Federal Claims cannot be expanded by the creation or invocation of its procedural rules. Renda Marine, Inc. v. United States, 71 Fed. Cl. 378, 286 (2006); Orion Scientific Systems v. United States, 28 Fed. Cl. 669, 671 (1993); see also Ledford v. United States, 297 F.3d 1378, 1381 (Fed. Cir. 2002) ("[I]t is well established that federal rules of civil procedure cannot expand a court's subject matter jurisdiction.").

of subject-matter jurisdiction did not "adhere to the Court's scheduling order," Pl. Opp. 11, is strange.

In support of its argument that courts have sanctioned the Government "for similar conduct," Chevron cites United States v. Ken Mar Associates, Ltd., 697 F.Supp. 400 (W.D. Okla. 1987), DiLuigi v. Kafkalas, 437 F.Supp. 863 (M.D. Pa. 1977), and Computer Products International, Inc. v. United States, 26 Cl.Ct. 518 (1992). See Pl. Opp. 11. The facts of those decisions are readily distinguished from the circumstances of the filing of the Government's motion to dismiss in part for lack of subject-matter jurisdiction, however. They all involved jurisdictional objections raised by the Government on the eve of trial. See Ken Mar, 697 F.Supp. at 403 (jurisdictional motion filed 11 days before scheduled trial); DiLuigi, 437 F.Supp. at 865 (Rule 12(b)(1) motion to dismiss filed two days before scheduled trial); Computer Products, 26 Cl.Cl. at 522-23 (Rule 12(b)(1) motion filed eight days before scheduled trial date). The Government's motion to dismiss in part for lack of subject-matter jurisdiction in the present case, by contrast, was not filed on the eve of trial.

More fundamentally, while expressing displeasure with the timing of the Government's jurisdictional objections, the DiLuigi and Computer Products courts did not sanction the Government for the inopportune jurisdictional objections. In DiLuigi, the district court acknowledged that, "[b]ecause a party can always assert lack of subject matter jurisdiction, the Court can impose no penalty against the [Government]." 437 F.Supp. at 869. In Computer Products, this Court noted that, despite the fact of the filing of the Government's motion to dismiss shortly before trial, the Court was required to address the motion because "it raised jurisdictional issues which cannot be ignored by the court and must be disposed of before proceeding to trial." 26

Cl.Ct. at 523.

Chevron asserts that Ken Mar is a case where "one court faced with conduct by the government belatedly asserting jurisdictional challenges never timely raised in the course of motion practice responded by ordering the government to pay the fees and costs incurred by the other party in having to respond to such a belated motion to dismiss for lack of jurisdiction." Pl. Opp. 11. Contrary to Chevron's assertion, the district court in Ken Mar did not go that far. It only ordered that counsel for the other party submit an affidavit detailing "the fees and costs reasonably incurred in responding to [the Government's] Motion to Dismiss for Lack of Subject Matter Jurisdiction." 697 F.Supp. at 405. In a subsequent unpublished order on November 12, 1987, the district court afforded the Government an opportunity to object to the reasonableness of the opposing counsel's claimed fees and costs and to the imposition of such expenses upon the *Government's attorney* "as a sanction for the untimely filing of [the Government's] Motion to Dismiss[.]" Def. Supp. App. 1. Thereafter, on December 18, 1987, the district court *sustained* the Government's objection to such an award, concluded that further sanctions were *not* warranted, and determined that those rulings *mooted* the Government's objections to the reasonableness of the fees and costs claimed by opposing counsel. Def. Supp. App. 10 (Docket Entry # 176).[12]

In Ken Mar, the district court did reprimand a Government attorney for filing the motion to dismiss for lack of subject-matter jurisdiction after the deadline imposed by a scheduling order for filing dispositive motions where the circumstances supporting the Government's filing of the

---

[12] We have requested a copy of the Ken Mar court's December 18, 1987 Order summarized in Docket Entry # 176 from a district court records retention center in Fort Worth, Texas, but, as of the date of this reply, we have not received a copy of the Order. Upon receipt, we will file a copy of the Order in this case so that the Court may confirm what the docket entry plainly reflects.

jurisdictional motion existed as of the dispositive motions deadline. 697 F.Supp. at 405. But the driving factor in the court's decision to reprimand the attorney was the hardship to the other party occasioned by the timing of the jurisdictional motion:

> While subject matter jurisdiction may be raised at any time, ***the government's failure to comply with the scheduling orders*** of this Court ***created a substantial hardship on both the Court and opposing counsel***. Indeed, ***opposing counsel were required to respond to a dispositive motion in the midst of trial preparation***, which motion should have been filed four months earlier.

Id. at 404 (emphasis added); see also id. at 405 ("***Based on the hardship created by counsel*** in this matter ***as a result of . . . the failure to comply with the pretrial scheduling orders*** of this Court . . . .).

Aside from the fact that the filing of the Government's motion to dismiss in part did not violate any scheduling order adopted by the Court in this case, Chevron has not pointed to any resulting hardship. If the Government's jurisdictional objection here had been raised in either of the Rule 12(b)(1) motions filed by the Government in 2004 and in 2005, Chevron would have had to expend the same resources responding to the jurisdictional objection and, as a result of the Court's orders regarding the motion to dismiss in part,[13/] Chevron had ten months within which to prepare its response to the motion – nine months more than the 28 days allowed by the Court's rules for the response to a Rule 12(b) motion.

---

[13] See August 29, 2007 Order (staying "briefing and further proceedings" upon the Government's motion to dismiss in part "until the court issues a comprehensive interlocutory order regarding [the Government's] pending document privilege claims"); April 4, 2008 Memorandum Opinion and Order (Corrected) (lifting August 29, 2007 stay and fixing a June 17, 2008 due date for Chevron's response to the Government's motion to dismiss in part).

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss in part should be granted.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

/s/ John E. Kosloske
JOHN E. KOSLOSKE
Senior Trial Counsel
LESLIE OHTA
ANUJ VOHRA
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., Room 8012
Washington, D.C. 20530
Tele: (202) 307-1438
(fax) (202) 514-8624

Attorneys for Defendant

OF COUNSEL:

PAUL T. MICHAEL
ADA L. MITRANI
Trial Attorneys
Office of General Counsel
Department of Energy
Washington, D.C.

JUNE 30, 2008

CERTIFICATE OF FILING

I hereby certify that on this 30th day of JUNE, 2008, a copy of “DEFENDANT’S REPLY TO PLAINTIFF’S OPPOSITION TO DEFENDANT’S MOTION TO DISMISS IN PART” and related appendix were filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court’s electronic filing system. Parties may access this filing through the Court’s system.

s/John E. Kosloske