# In the United States Court of Federal Claims

No. 04-1365
Filed August 28, 2008
**TO BE PUBLISHED**

| | | |
|---|---|---|
| CHEVRON U.S.A., INC., Plaintiff, v. THE UNITED STATES, Defendant. | * | Jurisdiction; Motion to Dismiss, RCFC 12(b)(1). |

**Donald B. Ayer**, **Lawrence D. Rosenberg**, Jones Day, Washington, D.C., Counsel for Plaintiff.

**John E. Kosloske**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**Paul T. Michael**, Office of the General Counsel, Department of Energy, Washington, D.C., Of Counsel.

## MEMORANDUM OPINION AND ORDER DENYING THE GOVERNMENT'S (SECOND) MOTION TO DISMISS.

**BRADEN, *Judge*.**

## I. BACKGROUND AND RELEVANT PROCEDURAL HISTORY.[1]

On August 16, 2007, Defendant ("the Government") filed a second Motion To Dismiss, in Part ("Gov't Sec. Mot. to Dis."),[2] together with an Appendix ("Gov't App."). On August 29, 2007, the court entered an order staying further proceedings regarding this motion, pending the court's resolution of the Government's outstanding privilege assertions.

On February 13, 2008, the court convened a telephone status conference, wherein the parties agreed to continue to stay further proceedings in this case until the Government's pending Motion for Reconsideration of the court's January 31, 2008 Memorandum and Orders in *Chevron II* regarding various privilege assertions were resolved.[3]

On April 4, 2008, the court ordered the Government to produce previously withheld documents in accordance with the court's January 31, 2008 privilege rulings, except those subject to the Government's February 13, 2008 Motion for Reconsideration. On that same day, the court also lifted the August 29, 2007 stay.

---

[1] The relevant facts and procedural history of this case from the filing of the August 20, 2004 Complaint to May 31, 2006 are set forth in *Chevron U.S.A.* v. *United States*, 71 Fed. Cl. 236, 239-55 (2006) ("*Chevron I*"). The procedural history from May 31, 2006 to January 31, 2008 is set forth in *Chevron U.S.A.* v. *United States*, 80 Fed. Cl. 340, 349-54 (2008) ("*Chevron II*"). The court assumes familiarity with both of these foundational decisions.

[2] On November 19, 2004, the Government filed a Motion to Dismiss, pursuant to RCFC 12(b)(1), asserting that: 1) the May 19, 1997 Equity Process Agreement was not money-mandating or otherwise provided a substantive right to money damages; 2) this case arises in the context of an established statutory scheme that does not provide for judicial review; 3) sovereign immunity has not been waived for reliance damages, including attorney fees; and 4) the Non-Appropriated Funds Instrumentality Doctrine precludes judicial review of this issue. On May 31, 2006, the court denied that motion. *See Chevron I*, 71 Fed. Cl. at 256-71. In addition, on November 19, 2004, the Government filed a Motion to Dismiss, pursuant to RCFC 12(b)(6), asserting that: 1) Chevron's claims were barred by Section B.9 of the May 19, 1997 Equity Process Agreement; and 2) Chevron is not entitled to reliance damages. On May 31, 2006, the court also denied that motion. *Id*. at 271-78.

[3] On this date, August 28, 2008, the court also has issued a Memorandum Opinion and Order Denying the Government's February 13, 2008 Motion for Reconsideration and a separate Memorandum Opinion and Order denying the Government's April 16, 2008 Motion to Certify the Court's January 31, 2008 Memorandum Opinion and Orders Regarding Privilege Assertions Made by the United States in *Chevron II*.

On June 17, 2008, the Plaintiff ("Chevron") filed an Opposition to the Government's second Motion to Dismiss ("Pl. Opp'n"). On June 30, 2008, the Government issued a Reply ("Gov't Reply").

## II. DISCUSSION.

### A. Jurisdiction.

The United States Court of Federal Claims has "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (2000). The Tucker Act, however, is "only a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages." *United States* v. *Testan*, 424 U.S. 392, 398 (1976). Therefore, in order to pursue a substantive right, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages for the court to have jurisdiction. *See Todd* v. *United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act itself."); *see also Roth* v. *United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004) ("Because the Tucker Act itself does not provide a substantive cause of action, . . . a plaintiff must find elsewhere a money-mandating source upon which to base a suit."); *Khan* v. *United States*, 201 F.3d 1375, 1378 (Fed. Cir. 2000) ("[T]he plaintiff 'must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.'" (quoting *James* v. *Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998))).

### B. Standard Of Review On A Motion To Dismiss Pursuant To RCFC 12(b)(1).

The court's consideration of motions to dismiss for lack of subject matter jurisdiction and to dismiss for failure to state a claim is "necessarily a limited one." *Scheuer* v. *Rhodes*, 416 U.S. 232, 236 (1974). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Id*. In ruling on a motion to dismiss, the court is "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *Henke* v. *United States*, 60 F.3d 795, 797 (Fed. Cir. 1995) (citing *Scheuer*, 416 U.S. at 236-37).

RCFC 12(b)(1) requires that the plaintiff bear the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds* v. *Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

### C. The Court's Resolution Of The Government's (Second) Motion To Dismiss.

#### 1. The Government's Argument.

The Government's second Motion to Dismiss argues that the claims alleged in paragraphs 64 and 70 of the August 20, 2004 Complaint are not subject to the court's jurisdiction and must be dismissed, pursuant to RCFC 12(b)(1). *See* Gov't Sec. Mot. to Dis. at 7-14.

Paragraphs 60-63 of the August 20, 2004 Complaint allege that the Assistant Secretary for Fossil Energy ("ASFE") and the Deputy General Counsel for Technology Transfer and Procurement of the Department of Energy ("DOE") engaged in "contractually prohibited," *i.e.*, *ex parte* communications, in breach of the May 19, 1997 Equity Process Agreement and "the parties' two-part May 19, 1997 agreement."[4] *See* Compl. ¶¶ 60-63. Paragraph 64 requests "a finding that, DOE has materially breached the [May 19, 1997] Equity Process Agreement, and, in turn, the parties' two-part May 19, 1997 Agreement." *Id.* ¶ 64.

Paragraphs 67-69 allege that these prohibited *ex parte* communications breached the implied covenant of good faith and fair dealing inherent in the May 19, 1997 Equity Process Agreement and "the parties' two-part May 19, 1997 Agreement." *Id.* ¶¶ 67-69. Paragraph 70 specifically requests "a finding that DOE has materially breached the implied covenant of good faith and fair dealing with respect to the "parties' two-part May 1997 agreement." *Id.* ¶ 70.

The Government contends that the court may not adjudicate whether the allegations in paragraphs 64 and 70 of the August 20, 2004 Complaint are a "material" breach, because such a legal determination is a request for "declaratory relief," exceeding the court's subject matter jurisdiction. *See* Gov't Mot. to Dis. at 1-14; Gov't Reply at 1-14; *see also Brown* v. *United States,* 105 F.3d 621, 624 (Fed. Cir. 1997) ("The Tucker Act does not provide independent jurisdiction over . . . claims for equitable relief."); *Gentry* v. *United States*, 546 F.2d 343, 355 (1976) ("Our authority to issue a declaratory judgment is limited."); *Austin* v. *United States*, 206 Ct. Cl. 719, 723 (1975) ("[I]t is now firmly established that, since the general jurisdiction of this court is limited to money claims against the Government, we have no authority to enter a declaratory judgment, or to grant affirmative non-monetary relief unless it is tied and subordinate to a monetary award.").

Although Chevron has represented that it is only seeking reliance damages, it is the duty of the court to examine the pleadings and determine whether the allegations therein are within the court's subject matter jurisdiction. *See, e.g., Pines Residential Treatment Ctr., Inc.* v. *United States*, 444 F.3d 1379, 1380 (Fed. Cir. 2006) ("Regardless of a party's characterization of its claim, 'we look to the true nature of the action in determining the existence or not of jurisdiction.'" (quoting

---

[4] The terms of the May 19, 1997 Agreement Regarding Fixing of Equity Interest at Naval Petroleum Reserve No. 1 for Purposes of Sale ("the Decoupling Agreement") and relationship to the May 19, 1997 Equity Process Agreement are discussed in *Chevron I*, 71 Fed. Cl. at 245-49 and *Chevron II*, 80 Fed. Cl. at 344-45.

*Katz* v. *Cisneros*, 16 F.3d 1204, 1207 (Fed. Cir. 1994))); *Brazos Elec. Power Coop., Inc.* v. *United States*, 144 F.3d 784, 787 (Fed. Cir. 1998) ("[J]urisdiction cannot be circumvented by . . . artful pleading . . . we customarily look to the substance of the pleadings rather than their form."). Therefore, the Government urges the court not only to look at Paragraphs 64 and 70 of the August 20, 2004 Complaint, but also to allegations in a June 14, 2004 letter to the DOE's General Counsel from Chevron's initial counsel of record, asserting that: "DOE's conduct . . . constitutes a fundamental and material breach of the DOE's obligations under the Equity Process Agreement. As a result of DOE's breach, [Chevron] considers both the Equity Process Agreement and the Decoupling Agreement to be no longer operative." *See* 8/17/07 Gov't App. at 736;[5] *see also* Gov't Reply at 4.

The Government concludes that Chevron actually is seeking to cease performance under the May 19, 1997 Decoupling Agreement, *see* Gov't Sec. Mot. to Dis. at 8 (citing *Stone Forest Indus., Inc.* v. *United States*, 973 F.2d 1548, 1550 (Fed. Cir. 1992) ("Upon material breach of a contract the non-breaching party has the right to discontinue performance of the contract, and to seek redress in accordance with the law.")), or excuse Chevron's failure to perform thereunder, *see id*. (citing *Hometown Fin., Inc.* v. *United States*, 409 F.3d 1360, 1370 (Fed. Cir. 2005) ("Under general contract principles, a party sued for breach of contract may defend on a theory that its nonperformance is excused because the other contracting party committed the first material breach.")). Therefore, the Government argues Chevron is seeking declaratory relief that is not tied and subordinate to Chevron's request for reliance damages. *See* Gov't Reply at 4. Consequently, the claims alleged in Paragraphs 64 and 70 of the August 20, 2004 Complaint fall outside the court's jurisdiction, requiring dismissal. *See* Gov't Sec. Mot. to Dis. at 14 ("A finding by the court of [a] 'material' breach in this case would not be tied and subordinate to any judgment for the reliance damages sought by Chevron[,] because such a finding is not a prerequisite to the award of such monetary relief.").

### 2. The Plaintiff's Response.

Chevron responds that the Government "seeks dismissal of a declaratory-relief request that does not exist." Pl. Opp'n at 2. Certainly, the August 20, 2004 Complaint requests that the court find a breach of the May 19, 1997 Equity Process Agreement and, "in turn, the parties' two-part May 19, 1997 agreement;" however, an award of monetary damages is also requested. *See, e.g.*, Compl. ¶¶ 64, 65, 70, 71, and Prayer for Relief. Chevron argues the Government fails to recognize the distinction between declaratory relief and making a finding necessary to award damages. *See* Pl. Opp'n at 2 ("[I]t is absurd to speak of a judgment as 'declaratory' in so far as it 'declares' no more than is necessary to sustain the immediate relief prayed, for in that sense every action is for a 'declaratory judgment.'" (quoting *Corcoran* v. *Royal Dev. Co.*, 121 F.2d 957, 959 (2d Cir. 1941) (L. Hand, J.))). In short, to make a finding, the court must make a declaration. *Id*. Therefore, to a certain extent, all judgments are declaratory in nature. *See In re Caddo Parish-Villas S., Ltd.*, 174

---

[5] This document may be found in Volume III of an Appendix submitted in support of the Government's August 17, 2007 Motion for Summary Judgment.

F.3d 624, 628 (5th Cir. 1999) (observing that judicial functions "require the [trial court] to make findings of fact and to apply existing law to those facts"). Under the Government's reasoning, however, the court could only issue legal rulings essential to the decision; dicta would be impermissible. *See* Pl. Opp'n at 3.

Chevron concedes that a determination of "materiality" is not necessary to award reliance damages, but contends that a finding of material breach is relevant to the amount of a reliance damage award. *Id.* at 3-4 (citing *Lutz* v. *United States Postal Serv.*, 485 F.3d 1377, 1381 (Fed. Cir. 2007) ("A breach is material when it relates to a matter of vital importance and goes to the essence of the contract." (quoting *Thomas* v. *Dep't of Housing & Urban Dev.*, 124 F.3d 1439, 1442 (Fed. Cir. 1997))). The Tucker Act authorizes the United States Court of Federal Claims "to render judgment upon *any claim* against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C.§ 1491(a) (emphasis added). Therefore, if the court has jurisdiction over a claim under the Tucker Act, it also has jurisdiction to hear non-contract elements of a claim, so long as they are "founded" upon a breach of contract claim that is within the court's subject matter jurisdiction. *See* Pl. Opp'n at 5-6.

### 3. The Court's Resolution.

The predecessor to the United States Court of Appeals for the Federal Circuit has held that the Tucker Act, 28 U.S.C. § 1491(a)(1), does not authorize the United States Court of Federal Claims to issue declaratory judgments, unless such relief "is *tied and subordinate to a monetary award*." *Gentry*, 546 F.2d at 355 (emphasis added) (internal citation and quotation omitted); *see also Brown*, 105 F.3d at 624 ("The Tucker Act does not provide *independent* jurisdiction over . . . claims for equitable relief.") (emphasis added).

Both parties spar over *James* v. *Caldera*, 159 F.3d 573 (Fed. Cir. 1998), a military pay case, where our appellate court held that claims to remove or appeal a bar to reenlistment was equitable relief not "tied and subordinate" to a back pay claim. *Id.* at 581. Significantly, the *James* court did not hold that the United States Court of Federal Claims did not have jurisdiction over back-pay claims associated with any extension of enlistment, only that since the principal claims were for non-monetary relief the United States District Court first should ascertain the relevant jurisdictional bases for all claims. *Id.* at 583-84. Therefore, the court does not read *Caldera* to preclude the court from first adjudicating Chevron's breach of contract claims and then determining whether damages are established, before reaching whether any breach is material and how such a finding may affect the amount of damages or other relief requested to remedy the breach. *See Pauley Petroleum, Inc.* v. *United States*, 591 F.2d 1308, 1315 (1979), *cert. denied*, 444 U.S. 898 (1979) ("Defendant's . . . jurisdictional attack . . . is based on the incorrect premise that the [United States] Court of [Federal] Claims has no equity jurisdiction. . . .Equitable doctrines can be employed incidentally to this court's general monetary jurisdiction either as equitable procedures to arrive at a money judgment or as substantive principles on which to base the award of a money judgment.") (citations omitted).

Therefore, any materiality determination is not "tied" to liability, but rather to the appropriate remedy and necessarily is "subordinate" or incidental thereto. *See Gentry*, 546 F.2d at 355. For this reason, the United States Court of Federal Claims "can properly use equitable theories in passing upon suits for monetary award" which is "grounded firmly on the Tucker Act's history, on unquestioned Supreme Court cases and on [United States Court of Federal] Claims decisions[.]" *Pauley Petroleum*, 591 F.2d at 1316-17.

## III. CONCLUSION.

Based on the foregoing reasons, the Government's second Motion To Dismiss is denied.[6]

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

[6] On August 16, 2007, the Government filed a Motion for Summary Judgment that raises three questions: 1) whether the Equity Process Agreement and Decoupling Agreement are part of a "Single Agreement" (*see* 8/16/07 Gov't Mot. for S.J. at 15-26); 2) whether Chevron's Continued Performance "of the Equity Process Agreement forecloses Chevron" from "Treating The Alleged Breach" as a "Material Breach Enlisting Chevron to Cancel The Agreement" (*id*. at 46-50); and 3) whether Chevron has the right to cancel the Decoupling Agreement. *Id*. at 50.

Many of the key documents asserted by the Government to be privileged have not been produced, forcing Chevron to delay taking depositions necessary to establish the allegations in the Complaint and determine whether any material facts are at issue. Therefore, the court has stayed the Government's August 16, 2007 Motion for Summary Judgment. It appears to the court that a part of the Government's second Motion to Dismiss requests adjudication of issues already submitted on summary judgment. It would be premature, however, for the court to adjudicate those questions, prior to affording Chevron discovery. Therefore, for this additional reason, the Government's second Motion to Dismiss is denied.