# In the United States Court of Federal Claims

No. 04-1365C
Filed: August 28, 2008
**TO BE PUBLISHED**

| | | |
|---|---|---|
| CHEVRON U.S.A., INC., Plaintiff, v. THE UNITED STATES, Defendant. | * | Attorney-Client Privilege; Attorney Work-Product Privilege; Fed. R. Ev. 612; Motion for Reconsideration, RCFC 59(a)(1). |

**Donald B. Ayer, Lawrence D. Rosenburg**, Jones Day, Washington, D.C., Counsel for Plaintiff.

**John E. Kosloske**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**Paul T. Michael**, Office of General Counsel, Department of Energy, Washington, D.C., Of Counsel.

## MEMORANDUM OPINION AND FINAL ORDER REGARDING RECONSIDERATION OF THE JANUARY 31, 2008 MEMORANDUM AND OPINION REGARDING PRIVILEGE ASSERTIONS MADE BY THE UNITED STATES.

**BRADEN, *Judge*.**

## I. BACKGROUND AND RELEVANT PROCEDURAL HISTORY.[1]

On January 31, 2008, the court issued a Memorandum Opinion and Orders Regarding Privilege Assertions Made By The United States. *See Chevron II*, 80 Fed Cl. at 354-66. On February 13, 2008, Defendant ("the Government") filed a Motion for Reconsideration, pursuant to

---

[1] The relevant facts and procedural history of this case from the filing of the August 20, 2004 Complaint to May 31, 2006 are set forth in *Chevron U.S.A., Inc.* v. *United States*, 71 Fed. Cl. 236, 239-55 (2006) ("*Chevron I*"). The relevant facts and procedural history from May 31, 2006 to January 31, 2008 are set forth in *Chevron U.S.A., Inc.* v. *United States*, 80 Fed. Cl. 340, 349-54 (2008) ("*Chevron II*"). In particular, the *in camera* procedure suggested by the court and agreed by the parties to review documents asserted to be privileged is discussed in *Chevron II*, 80 Fed. Cl. at 351-54. The court assumes familiarity with these foundational decisions.

RCFC 59(a)(1), challenging certain of the court's privilege rulings ("Gov't Mot. to Recon."). Instead of pursuing the February 13, 2008 Motion for Reconsideration, the Government made a strategic decision to change course and file a Notice of Appeal in the United States Court of Appeals for the Federal Circuit. On March 31, 2008, however, the Clerk of the United States Court of Appeals for the Federal Circuit determined, because the Motion for Reconsideration was pending, the Government's Notice of Appeal was "ineffective" and "deactivated" as premature. *See* Order, *Chevron U.S.A., Inc.* v. *United States*, No. 08-5061 (Fed. Cir. Mar. 31, 2008).

On April 28, 2008, the court issued an Order requiring Plaintiff ("Chevron") to respond to the merits of the Government's February 13, 2008 Motion for Reconsideration. On May 19, 2008, Chevron filed an Opposition ("Pl. Recon. Opp'n"). On June 2, 2008, the Government filed a Response ("Gov't Recon. Resp.").

## II. STANDARD OF REVIEW.

United States Court of Federal Claims Rule ("RCFC") 59(a)(1) provides that "reconsideration may be granted . . . for any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." RCFC 59(a)(1). The United States Court of Appeals for the Federal Circuit has held that a decision to grant a motion for reconsideration is within the trial court's discretion. *See Yuba Natural Res., Inc.* v. *United States,* 904 F.2d 1577, 1583 (Fed. Cir. 1990) (holding that "the decision whether to grant reconsideration lies largely within the discretion of the [trial] court"). The party requesting reconsideration, however, must establish a manifest error of law or mistake of fact to prevail. *See Coconut Grove Entm't, Inc.* v. *United States,* 46 Fed. Cl. 249, 255 (2000) (reconsideration requires that the movant "point to a manifest error of law or mistake of fact").

## III. THE COURT'S DECISION REGARDING RECONSIDERATION.

The Government has asserted three bases for reconsideration: 1) the court misconstrued the "basis for the Government's privilege assertions;" 2) the court erred in declining to adopt or apply a standard, regarding attorney work-product privilege, established in a 1985 decision of the United States Court of Appeals for the Third Circuit, *Sporck* v. *Peil*, 759 F.2d 312 (3d Cir. 1985); and 3) the court erred in ruling that certain specific documents were not subject to the attorney work-product privilege, based upon the rationale set forth in *Sporck*. *See* Gov't Mot. to Recon. at 2-10.

### A. The Court Did Not Misconstrue "The Basis For The Government's Privilege Assertions."

In *Chevron II*, the court ruled that "14 documents. . . authored by or . . . received by Chevron" were not subject to the attorney-client privilege. *See Chevron II*, 80 Fed. Cl. at 363. The Government requests reconsideration of 13 documents that the court determined were not subject to the attorney work-product privilege, except for "two documents [*i.e.*, 1727 (CBG004579) and 1889 (CBG0051007-1010)] where [the Government] inadvertently failed to assert the [attorney]

work-product privilege *in addition* to the attorney-client privilege[.]" Gov't Mot. to Recon. at 2; *see also id*. at 11. Reconsideration is requested because "the [*c*]*ourt misconstrued the basis for the Government's privilege assertions* with respect to Chevron documents." Gov't Mot. to Recon. at 2 (emphasis added). The Government contends that these documents were properly withheld as privileged under the attorney work-product privilege. *Id*.

The court's privilege rulings were based on representations made by the Government. Specifically, on August 8, 2007, the Government filed a Supplement To Clarify Its August 3, 2007 Memorandum of Law In Support of Its Attorney-Client and Work-Product Privilege Claims ("Gov't Mot. to Supp.") asserting that documents in the following 12 folders were subject to the attorney-client privilege: 27, 631, 968, 978, 1057, 1243, 1390, 1549, 1553, 1721, 1727, and 1889. *See* Gov't Mot. to Supp. at 3. In the same pleading, the Government also advised the court that 7 of the aforementioned 12 folders (*i.e.,* 27, 631, 978, 1057, 1243, 1553, and 1721) also were subject to the attorney work-product privilege. *Id*. at 2. Therefore, the court did not misconstrue the "basis for the Government's privilege assertions" as to these documents. Nevertheless, the court has reconsidered specific January 31, 2008 rulings herein as requested by the Government.

### B. The Court Did Not Err In Declining To Adopt Or Apply The Standard Of The United States Court Of Appeals For The Third Circuit In This Case For Attorney Work-Product Privilege.

Second, the Government argues that the attorney work-product privilege assertions made in this case are justified by the *Sporck* decision, although neither the United States Supreme Court nor the United States Court of Appeals for the Federal Circuit has adopted the holding in that case. *See* Gov't Mot. to Recon. at 3-5. Nevertheless, the Government criticizes the court for failing to embrace *Sporck*, since that decision "has been widely adopted." *Id*. at 4.[2]

*Sporck* was reviewed by the United States Court of Appeals for the Third Circuit on a Petition for Writ of Mandamus in a securities fraud class action. *See Sporck*, 759 F.2d at 313. The relevant facts follow. In preparation for a deposition, defendant's counsel reviewed with the client

[2] As of the date of this Memorandum Opinion and Order, neither the United States Supreme Court, the United States Court of Appeals for the Federal Circuit, nor the federal appellate courts in the First, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, and Eleventh circuits have "adopted" the majority's reasoning in *Sporck*. The court's research has identified only two federal appellate courts, other than the United States Court of Appeals for the Third Circuit, that even have discussed *Sporck*. *See In re Grand Jury Subpoenas*, 318 F.3d 379, 385 (2d Cir. 2003) (stating that *Sporck* does not apply when the documents at issue previously were disclosed); *Simon* v. *G.D. Searle & Co*., 816 F.2d 397, 402 n.3 (8th Cir. 1987) (distinguishing *Sporck* where "counsel's mental impressions, namely the impressions that certain documents were important or significant, would have been exposed to the world" and holding that a lawyers' mental impressions are not violated by allowing discovery of documents that "incorporate a lawyer's thoughts in, at best, . . . an indirect and diluted manner."). Accordingly, the Government's representation that *Sporck* has been "widely adopted" is overstated.

"an unknown quantity of the numerous documents produced by defendants in response to plaintiff's discovery requests." *Id*. During the deposition, defendant's counsel declined to produce all documents reviewed by the defendant, because "the *selected documents represented*, as a group, *counsel's legal opinion* as to the evidence relevant both to the allegations in the case and possible legal defenses." *Id*. (emphasis added); *see also id*. at 314 (holding that "the select grouping of the documents was attorney work-product protected from discovery by Federal Rule of Civil Procedure 26(b)(3).").[3] The trial court initially granted plaintiff's motion to compel production, pursuant to Fed. R. Ev. 612.[4] *Id*. at 314. On reconsideration, however, the trial court decided that: "although the select grouping of documents constituted attorney work-product, it was not 'opinion' work-product entitled to absolute protection, and that principles behind Federal Rule of Evidence 612 supported [plaintiff's] claims to identification of the documents." *Id*.

The United States Court of Appeals for the Third Circuit reversed, holding that the trial judge committed a "clear error of law," because although "the individual documents that comprise the grouping are not attorney work-product[;] . . . the *selection process*[, however, showed] defense counsel's mental impressions and legal opinions[,] as to how the evidence in the documents *relates* to the issues and defenses in the litigation." *Id*. at 315 (emphasis added). The majority reasoned that "*identification* of the documents as a group must be prevented to protect *defense counsel's* [mental impressions] work product." *Id*.; *see also id*. at 315-16 (quoting *Hickman* v. *Taylor*, 329 U.S. 495, 510 (1947) (prohibiting discovery of "secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel *in the course of his legal duties*.") (emphasis added)).[5] Circuit Court Judge Collins J. Seitz, however, issued a dissent predicting that the majority ruling would result in an "impermissible expansion of the [attorney] work product doctrine at the expense of legitimate discovery . . . [I]n order to claim" the "shield of opinion work product, it must be the attorneys' thought processes that are revealed." *Sporck*, 759 F.2d at 319 (dissent) (citation omitted). The court is persuaded by the reasoning of Judge Seitz's dissent and declines to adopt *Sporck.*

---

[3] Fed. R. Civ. P. 26(b)(3)(B) provides: "If the court orders discovery of . . . materials [otherwise not discoverable under Fed. R. Civ. P. 26(b)(3)(a)], it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative, concerning the litigation."

[4] Fed. R. Ev. 612, in relevant part, provides: "if a witness uses a writing to refresh memory for the purpose of testimony, whether – (1) while testifying, or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness."

[5] The majority panel members were: Circuit Court Judges James Hunter II and Arlin M. Adams.

The Government justifies asserting attorney work-product privilege as to certain Chevron documents, simply because they were "*attached to correspondence between DOE EFT members and/or DOE attorneys*[.]" Gov't Mot. to Recon. at 3 (emphasis added). Elsewhere in the Motion for Reconsideration, however, the Government represents that the attorney work-product privilege assertions were made, because the Chevron documents at issue "*were reviewed or used by DOE's Equity Finalization Team*." *Id*. (emphasis added). As the court previously discussed, the primary contract at issue, the May 19, 1997 Equity Finalization Agreement, does not define or include the term "DOE Equity Finalization Team." *See Chevron II*, 80 Fed. Cl. at 357. A non-privileged document does not subsequently become privileged if it was *attached* to a privileged document. Likewise a non-privileged document does not subsequently become privileged if it was reviewed by an attorney in this case. The essential element of attorney work-product is that the content contains or reflects the work-product of a lawyer. *See In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1301 (Fed. Cir. 2006) ("We recognize work-product immunity because it promoted a fair and efficient adversarial system by protecting the *attorney's* thought process and legal recommendations from the prying eyes of his or her opponent. Essentially, the work-product doctrine encourages *attorneys* to write down their thoughts and opinions with the knowledge that their opponents will not rob them of their fruits of their labor.") (emphasis added) (internal citations and quotation omitted). To date, the Government has not identified the members of what the Government has characterized as "DOE EFT Members," the "Headquarters Advisory Team," or the "DOE Equity Finalization Team." *Id*. Since the Government has not identified any members of the "DOE Equity Finalization Team" and has continued to assert that DOE Deputy Counsel Egger was not on the "team," the Government cannot assert *attorney* work-product privilege over documents reviewed or used by the DOE Equity Finalization Team. *See* 5/19/07 TR 16-17.

### C. The Court Did Not Err In Ruling That Certain Documents Were Not Subject To The Attorney Work-Product Privilege, "Based Upon The Rationale Set Forth In *Sporck*."

The Government also contends that the court erred in not ruling that documents in Folders 27, 631, 819, 968, 978, 1057, 1243, 1390, 1549, 1553, 1721, 1727, and 1889 were subject to the attorney work-product privilege, per *Sporck*. *See* Gov't Mot. to Recon. at 5-11. The court's January 31, 2008 rulings and reconsideration rulings follow:

**Folder 27 (CME02202210-14)**

<u>January 31, 2008 Ruling</u> – October 3, 2000 fax cover sheet from Butch Gangle to Mary Egger forwarding a redacted May 19, 1981 letter to Chevron from Barton House, Department of Energy ("DOE") Acting Assistant Secretary.

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process[,] does not reveal any mental process, plans, strategies, tactics, or impressions, [of an attorney] but is factual and is not subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of

the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Assuming[,] *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source.

Reconsideration Ruling – Since Gangle was not an attorney, the October 3, 2000 fax cover sheet (CME02202210) is not subject to the attorney work-product privilege. Since the context of the message did not request or convey legal advice, it is not subject to the attorney-client privilege. The attached May 19, 1981 letter to Chevron (CME02202211-13) is in the public domain and any privilege the Government could have asserted is waived. Although this document may have been reviewed by a Government attorney, in this case, that fact does not transform a non-privileged document into one subject to the attorney work-product privilege, unless it contains or reflects specific content contributed by the Government attorney. *See EchoStar Commc'ns*, 448 F.3d at 1301.

**Folder 631 (COM00600009-14)**

January 31, 2008 Ruling – Fax cover sheet (COM00600009) from Greg Thorpe to Mary Egger, Wayne Kauffman, Alan Burzlaff, and Owen Olpin. This document contains no attorney thought process, is factual, and not subject to the attorney work-product privilege.

March 31, 1997 (COM00600012-13) is a draft of 626, with edits made by Greg Thorpe forwarded to Mary Egger, Wayne Kauffman, Alan Burzlaff, and Owen Olpin marked as "Personal & Confidential Attorney-Client Communication." The edits made by Greg Thorpe contain attorney thought process and are subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

(COM00600014) is an attachment to the March 31, 1997 draft letter titled "Chevron's Statement of Potential Legal Issues[,]" was prepared by Chevron and is not privileged.

Reconsideration Ruling – (COM0060009) fax cover sheet has no text and therefore is not subject either to the attorney-client or attorney work-product privilege. (COM00600014) is a document authored by Chevron and sent from Chevron's corporate law department. Although this document may have been reviewed by a Government attorney, in this case, that fact does not transform a non-privileged document into one subject to the attorney work-product privilege, unless it contains or reflects specific content contributed by the Government attorney. *See EchoStar Commc'ns*, 448 F.3d at 1301.

**Folder 819 (CDE00702109-18)**

January 31, 2008 Ruling – May 17, 2006 2:50 p.m. e-mail from Arnold Smits to Mary Egger copied to Gena Cadieux and Gary Latham re: "Draft Preliminary Decision Finalizing Participation Percentages in Production" with two attachments. The text of the e-mail (CDE00702109) is pre-decisional[,] but factual and should be produced. The attachments (CDE00702110-18) contain a draft letter to Norm Stone (Chevron) and Butch Gangle transmitting the Preliminary Decision Finalization Participation Percentages in Production from Stevens Zone." The document is pre-decisional, but factual and should be produced. *See* 816. The redline edits by Mary Egger on (CDE00702116) are also factual and should be produced.

Reconsideration Ruling – The Government provided the court with three 819 folders: one folder contains only (CDE00702109), referenced in the court's January 31, 2008 deliberative process rulings, which the Government agrees is not privileged. *See* Gov't Mot. for Recon. at 9 n.4. A second folder contains (CDE00702110), a draft transmittal letter from DOE to Norman Stone (Chevron) and Butch Gangle. The transmittal letter is not privileged and the content is completely factual. The third folder contains (CDE00702111-18), a draft Preliminary Stevens Zone Decision, with red-line edits on (CDE00702116), represented as having been made by Mary Egger. (CEO007032111-18). To the extent the edits on (CDE00702116) convey legal advice, they are subject to the attorney-client privilege, if Ms. Egger was functioning as counsel to the Assistant Secretary. To the extent the edits include work product, they arguably are subject to the attorney work-product privilege, although the edits appear to the court to be solely editorial/grammatical in nature. Although the remainder of this document may have been reviewed by a Government attorney, in this case, that fact does not transform non-privileged parts of the document into one subject to the attorney work-product privilege, unless it contains or reflects specific content contributed by the Government attorney. *See EchoStar Commc'ns*, 448 F.3d at 1301.

**Folder 968 (CBG0030153-54)**

January 31, 2008 Ruling – May 19, 1998 fax cover sheet from Wayne Kauffman to Ms. Egger (CBG0030153) requesting approval for a cover sheet for the "equity reports[;]" however, the cover sheet was not attached. Instead, a May 6, 1998 letter from O. J. Williams, Director, Naval Petroleum Reserves of California, to Mr. Don Romine, Occidental (CBG0030154), was attached. This document addressed to Chevron's predecessor does not request nor convey legal advice and is not subject to the attorney-client privilege. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").[6]

Reconsideration Ruling – The court's identification of 968 (CGB0030184) instead of (CBG0030154) was a clerical error. *See Chevron II*, 80 Fed. Cl. at 363. The Government has now provided 968 (CBG0030154) to Chevron, but withheld 968 (CBG0030153), a 5/19/98 fax cover sheet to Mary

[6] This ruling was made final in the January 31, 2008 Attorney-Client Privilege Rulings.

Egger from Wayne Kauffman that forwarded the May 6, 1998 letter. *See* Gov't Mot. to Recon. at 7. Subsequently, the court was provided with 968 (CBG0030153), which could be construed as requesting legal advice and is subject to the attorney-client privilege; however, 968 (CBG0030154) is not subject to the attorney work-product privilege for the reasons discussed herein and in the court's January 31, 2008 rulings.

**Folder 978 (CBG030310-15)**[7]

<u>January 31, 2008 [Attorney-Client] Ruling</u> – "Technical Issues for Discussion" (CBG0030310) is an attachment to a June 4, 1998 letter from Mary Egger to Cynthia Giumarra, Assistant General Counsel, Chevron, is not privileged and should be produced.

E-mail string (CBG0030311-15). The redacted text of the June 4, 1998 12:07 p.m. e-mail from Alan Burzlaff to Mary Egger re: "Proposed Letter to CUSA 6/4/98" (CBG00315) and June 4, 1998 11:01 a.m. reply copied to Greg Thorpe, Wayne Kauffman and Ken Schuessler do not request [or] convey legal advice and are not subject to the attorney-client privilege. *See* [*In re*] *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The attached draft letter, however, could be construed to request legal advice and is subject to the attorney-client privilege

* * *

The redacted text of the June 4, 1998 12:13 p.m. e-mail (CBG0030314) from Alan Burzlaff to Mary Egger copied to Ken Schuessler, Greg Thorpe, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the June 4, 1998 12:28 p.m. e-mail (CGB0030312) from Wayne Kauffman to Mary Egger re: "Proposed Letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the June 4, 1998 2:14 p.m. e-mail (CBG0030311) from Greg Thorpe to Alan Burzlaff, Mary Egger, Ken Schuessler, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" could be construed to convey legal advice and is subject to the attorney-client privilege.

* * *

[7] The court issued January 31, 2008 rulings on Folder 978 under both the attorney-client and attorney work-product privileges.

CBG030317 is a June 4, 1998 letter from Mary Egger to Ms. Giumarra (Chevron) copied to Greg Thorpe, Own Olpin, Wayne Kauffman, and Alan Burzlaff re: "Stevens Zone Equity – For discussion purposes only." (CBG030318) is the same as (CBG030317).

* * *

E-mail string. (CBG0030319-21) The June 4, 1998 9:58 a.m. e-mail from Wayne Kauffman to Mary Egger re: "Draft letter to CUSA" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 10:19 a.m. reply from Mary Egger re: "Draft letter to CUSA" could be construed to convey legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 12:07 p.m. e-mail from Alan Burzlaff to Mary Egger re: "Proposed letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 10:16 a.m. e-mail from Mary Egger to Alan Burzlaff re: "Proposed Letter to CUSA 6/4/98" could be construed to convey legal advice and is subject to the attorney-client privilege. (CBG0030319)

* * *

Draft June 4, 1998 memo with handwritten notes from ABB (Alan Burzlaff) marked June 18, 1998 (CBG0030323) could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

(CBG003025-27) Draft letter to Ms. Cynthia H. Giumarra (Chevron) re: "Stevens Zone Equity – For discussion purposes only" is the same text as (CBG0030317) with handwritten note "Draft – For Review/Comment," conveys legal advice and is subject to the attorney-client privilege.

(CBG0030329) Edits to (CBG0030325) from Greg Thorpe to Mary Egger, Alan Burzlaff, Ken Schuessler, and Wayne Kauffman re: "Possible Instruction Letter Paragraph (new language in bold)" conveys legal advice and is subject to the attorney-client privilege.

* * *

(CBG0030330) is a June 30, 1998 memo from Alan Burzlaff to Mary Egger/Greg Thorpe that requests legal advice and is subject to the attorney-client privilege.

* * *

<u>January 31, 2008 [Work-Product] Ruling</u> – "Technical Issues for Discussion" (CBG0030310), is an attachment to a June 4, 1998 letter from Mary Egger to Cynthia Giumarra, Assistant General Counsel, Chevron, and is not privileged.

E-mail string (CBG0030311-15). The redacted text of the June 4, 1998 12:07 p.m. e-mail (CBG0030315) from Alan Burzlaff to Mary Egger re: "Proposed Letter to CUSA 6/4/98." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege.

Redacted text of the June 4, 1998 11:01 a.m. reply e-mail (CBG0030315) from Mary Egger to Greg Thorpe, Wayne Kauffman and Ken Schuessler re: same contains attorney thought process and is subject to the attorney work-product privilege.

* * *

Text of the June 4, 1998 12:13 p.m. e-mail (CBG0030314) from Alan Burzlaff to Mary Egger copied to Ken Schuessler, Greg Thorpe, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel defense." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

Text of the June 4, 1998 12:28 p.m. e-mail (CGB0030312) from Wayne Kauffman to Mary Egger re: "Proposed Letter to CUSA 6/4/98." Kauffman was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege. Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

Redacted text of the June 4, 1998 2:14 p.m. e-mail (CBG0030311) from Greg Thorpe to Alan Burzlaff, Mary Egger, Ken Schuessler, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" contains attorney thought process and is subject to the attorney work-product privilege.

* * *

June 4, 1998 letter draft (CBG030317) from Mary Egger to Ms. Giumarra (Chevron) copied to Greg Thorpe, Own Olpin, Wayne Kauffman, and Alan Burzlaff re: "Stevens Zone Equity – For discussion purposes only" contains attorney thought process and is subject to the attorney work-product privilege.

(CBG030318) Same ruling as (CBG030317).

* * *

E-mail string. (CBG0030319-21) June 4, 1998 9:58 a.m. e-mail (CBG0030321) from Wayne Kauffman to Mary Egger copied to Alan Burzlaff and Greg Thorpe re: "Draft letter to CUSA." Kauffman was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel defense." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

* * *

June 4, 1998 10:19 a.m. reply (CBG0030320) from Mary Egger re: "Draft letter to CUSA" contains attorney thought process and is subject to the attorney work-product privilege.

* * *

June 4, 1998 12:07 p.m. e-mail (CBG0030316) from Alan Burzlaff to Mary Egger re: "Proposed letter to CUSA 6/4/98." Same ruling as 978 above.

* * *

June 4, 1998 10:16 a.m. e-mail (CBG0030319) from Mary Egger to Alan Burzlaff re: "Proposed Letter to CUSA 6/4/98" contains attorney thought process and is subject to the attorney work-product privilege.

Draft June 4, 1998 memo with handwritten notes (CBG0030323) from ABB (Alan Burzlaff) marked June 18, 1998 re: "Possible Instruction Letter Paragraph" re: capture issue. Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel defense." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

* * *

(CBG003025-27) Draft letter to Ms. Cynthia H. Giumarra (Chevron) re: "Stevens Zone Equity – For discussion purposes only" is the same text as (CBG0030317) with handwritten note "Draft – For Review/Comment," and is subject to the attorney work-product privilege.

* * *

(CBG0030329) Edits to (CBG0030325) from Greg Thorpe to Mary Egger, Alan Burzlaff, Ken Schuessler, and Wayne Kauffman re: "Possible Instruction Letter Paragraph (new language in bold)" contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(CBG0030330) is a June 30, 1998 memo from Alan Burzlaff to Mary Egger/Greg Thorpe re: oil migration issue. Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel defense." *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

Reconsideration Ruling – Folder 978 contains multiple documents (CBG0030307-31). The Government acknowledges that it inadvertently withheld 978 (CBG0030310), but subsequently produced this document on February 12, 2008 for the court's review. *See* Gov't Mot. to Recon. at 7. The Government objects to the production of Document 978 (CBG0030311-15). *Id.* at 7-8. The court, however, did not require production of (CBG003011-13). On reconsideration, the 6/4/98 12:07 p.m. e-mail (CBG0030314-15) could be considered to request legal advice and is subject to the attorney-client privilege, but is not subject to the attorney work-product privilege as the court previously ruled.

**Folder 1057 (CBG004 0120-35)**

January 31, 2008 Ruling – Redacted text of the September 22, 1998 memo from Alan Burzlaff to Wayne Kauffman copied to Mary Egger, Ken Schuessler, and Jim Murphy re: "Shallow Oil Zone (SOZ) Equity Finalization Proposed Cutoff Date[.]"

The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions [of an attorney], but is factual and is not subject to the attorney work-product privilege, because it is a factual description of the September 15, 1998 SOZ interim meeting of the "DOE and Chevron Equity Finalization Teams" and the IPE. The memo is not subject to the attorney work-product privilege, nor are: Attachment 1 (SOZ Equity Finalization Data Cutoff Data – handout at meeting); Attachment 2 (NSAI minutes of July 9-10, 1996 meeting (Page 3)); Attachment 3 (August 2, 1996 letter from DOE to Chevron); Attachment 4 (August 15, 1986 letter from Chevron to Wayne Kauffman re: Production Database); Attachment 5 (Stevens Zone - Chevron Presentation Slide 24 Reservoir "Current WOC Data"); Attachment 6 (Chevron Response to NSAI Provisional Stevens Zone Recommendation - March 1988); Attachment 7 (Page 2 of the May 19, 1997 Agreement Regarding Equity Redetermination Process); Attachment 8 (File memo, dated May 15, 1997, by Gary Latham re: May 13, 1997 "Discussions with Chevron and NSA on process ground rules for SOZ equity finalization" stamped "Privileged Confidential, Highly Sensitive," including comment on the following topics: "Potential Areas of Agreement that would reduce the scope of NSAI's tasks," "Sand Counting Techniques," "Data Cutoff," and "Tentative Schedule"). Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

Reconsideration Ruling – On reconsideration, since (CBG0040120-21) was copied to Mary Egger, it could be construed to request legal advice and is subject to the attorney-client privilege, but is not subject to the attorney work-product privilege, as the court previously ruled. Attachments 1-7 (CBG0040122-33) should be produced, but without markings that the Government represents were made by "DOE EFT members." Attachment 8, "MEMO TO FILE,"(CBG0040134), authored by Gary Latham, is subject neither to the attorney-client privilege nor attorney work-product privilege.

**Folder 1243 (GSI0031233-34)**

January 31, 2008 Ruling – February 16, 1999 memo (CSI0031233) from Greg Thorpe to Mary Egger, Wayne Kauffman, Butch Gangle, Alan Burzlaff, and Ken Schuessler with cc: to Christine Suh and Owen Olpin re: "Value Weighing." The memo contains attorney thought process and is subject to the attorney work-product privilege[;] however, the attachment "Table III- Results of Operations For Oil and Gas Producing Activities" is from the Chevron Corp. 1998 Annual Report, is in the public domain, and is not privileged, without the notation.

In addition, if any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

Reconsideration Ruling – (CSI0031234) Table III is a Chevron document in the public domain and is not privileged, without the notation. Although this document may have been reviewed by a Government attorney, in this case, that fact does not transform a non-privileged document into one

subject to the attorney work-product privilege, unless it contains or reflects specific content contributed by the attorney. *See EchoStar Commc'ns*, 448 F.3d at 1301.

**Folder 1390 (CME01602657-63)**

January 31, 2008 Ruling – July 29, 1999 cover memo from Christine Suh (O'Melveny & Myers) to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, and Owen Olpin, copied to Greg Thorpe re: "Stevens Zone Data Cutoff Date Dispute." (CME01302657) does not request nor convey legal advice, as it is factual, and not subject to the attorney-client privilege. *See* [*In re*] *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

Instead of attaching the DOE EFT position paper referenced, the documents that follow (CME01602658-63) are documents in the public domain that previously were received by Chevron.

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

Reconsideration Ruling – The Government asserts that it did not claim any privilege as to 1390 (CME01602658-63). *See* Gov't Mot. to Recon. at 8-9. The Government's Filing In Response To The Court's December 19, 2007 Request ("Gov't Resp. to Ct. Dec. 19, 2007 Req."), Exhibit C, however, lists 1390 (CME0162657-63) among the documents that the Government maintained were subject to the attorney-client privilege. *See* Gov't Resp. to Ct. Dec. 19, 2007 Req., Ex. C at 2. The court accepts the Government's clarification that attorney-client privilege is not asserted as to 1390 (CME0160258-63), but only as to 1390 (CME0160257). The deleted text of 1390 (CME0160257), although authored by an attorney, does not convey legal advice, but is simply a factual instruction regarding delivery of DOE's EFT position paper. Neither the attorney-client nor the attorney work-product privilege is applicable.

**Folder 1549 (CME001100834-37)**

January 31, 2008 Ruling – The redacted text of the October 20, 1999 cover fax sheet (CME01100834) from Butch Gangle to "DOE Equity Team" copied to Mary Egger, Greg Thorpe and Alan Burzlaff does not request nor convey legal advice as it describes documents from the 1976 Report on 29R Carneros Zone and therefore is not subject to the attorney-client privilege. *See* [*In re*] *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The attachments (CME01100835-36) are a June 9, 1976 document: "Addendum and Modifications of Reservoir Engineering and Correlation Subcommittees Report on 29 R Carneros Zone" previously submitted to Chevron's predecessors and are in the public domain and not privileged. *Id.*

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

Reconsideration Ruling – The Government asserts that it did not claim attorney-client privilege over Document No. 1549 (CME01100835-36). *See* Gov't Mot. to Recon. at 10. The Government's Filing In Response To The Court's December 19, 2007 Request, Exhibit C, however, lists 1549 (CME01100834-37) among the list of documents the Government maintained were subject to the attorney-client privilege. *See* Gov't Resp. to Ct. Dec. 19, 2007 Req., Ex. C at 2. The court accepts the Government's clarification that the attorney-client privilege is not asserted as to 1549 (CME011000835-36). As to 1549 (CME011000834), the court continues to believe this memo is not entitled to the attorney-client privilege, because it does not request legal advice, and, because Gangle is not an attorney, it is not subject to the attorney work-product privilege. This document was not asserted to be subject to the deliberative process privilege appropriately since the content is factual.

**Folder 1553 (CDE00302715-16)**[8]

January 31, 2008 [Attorney-Client] Ruling – October 20-21, 1999 e-mail string. The redacted text of the October 21, 1999 11:35 a.m. e-mail from Butch Gangle to Mary Egger does not request nor convey legal advice, as it reports Alan Burzlaff is receiving Chevron data and the discovery of "a great deal of materials in our warehouse and out at Elk Hills" and is not subject to the attorney-client privilege. *See* [*In re*] *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the October 21, 1999 4:50 p.m. e-mail from Mary Egger to Greg Thorpe, Butch Gangle and copied to Alan Burzlaff and Gary Holcomb re: "Gas Plants inlet & outlet streams gas analysis, Elk" does not request nor convey legal advice, as it reports on a revised NSAI schedule and is not subject to the attorney-client privilege. *See* [*In re*] *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

---

[8] The court issued January 31, 2008 rulings on Folder 1553 under both the attorney-client and attorney work-product privileges.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

January 31, 2008 [Work-Product] Ruling – October 20-21, 1999 e-mail string. Redacted text of the October 21, 1999 11:35 a.m. e-mail (CDE00302715) from Butch Gangle to Mary Egger re: "Gas Plants inlet and outlet streams gas analysis. Elk Hill."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions [of an attorney], but is factual, as it reports only that Alan Burzlaff received Chevron data and of the discovery of "a great deal of materials in [DOE's] warehouse and out at Elk Hills" and not subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

Redacted text of the October 21, 1999 4:50 p.m. e-mail (CDE00302715) from Mary Egger to Greg Thorpe and Butch Gangle copied to Alan Burzlaff, Gary Holcomb re: "Gas Plants inlet & outlet streams gas analysis, Elk" does not reveal any mental process, plans, strategies, tactics, or impressions [of an attorney], but is factual, as it only reports on a revised NSAI schedule and is not subject to the attorney work-product privilege.

Reconsideration Ruling – The deleted portions of (CDE00302715) 10/21/99 11:35 a.m. e-mail does not request legal advice and is not subject to the attorney-client privilege, and because Butch Gangle was a DOE engineer, the text is not subject to the attorney work-product privilege. (CDE00302715) 10/21/99 4:50 p.m. e-mail from Mary Egger, however, could be construed to convey legal advice, as it evidences that she had a communication with DOE's Assistant Secretary Kripowicz about "Gas plants inlet & outlet streams gas analysis, Elk."

**Folder 1721 (CSI00441053-63)**

January 31, 2008 Ruling – May 19, 2000 5:47 p.m. e-mail from A. Burzlaff to Greg Thorpe copied to Butch Gangle, Ken Schuessler, and Mary Egger re: "Verification of Capture Analysis in CUSA SOZ Equity Case," together with attachments (CSI0041053-54).

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel defense." *In re EchoStar Commc'ns Corp.*, 448 F.3d

1294, 1302 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

(CSI0041055-61) are Chevron documents and are not subject to any privilege. (CSI0041062-63) allegedly are handwritten notes of A. Burzlaff, but are factual in nature and not privileged.

Reconsideration Ruling – (CSI0041055-61) "Chevron-SOZ Equity Evaluation – Upper SOZ Decline Curve Analysis" is a Chevron document in the public domain, and is not privileged. (CSI0041062) are handwritten notes restating some of the information in (CSI0041055-61). Since these notes were represented as the handwriting of Alan Burzlaff who is not an attorney, they are not subject to the attorney work-product privilege or attorney work-product privilege since there is no indication or affidavit confirming these notes were conveyed to a DOE attorney for any purpose.

**Folder 1727 (CBG0040577-85)**

January 31, 2008 Ruling – May 25, 2000 fax cover sheet (CBG0040577) from Butch Gangle to Mary Egger, Owen Olpin, and Greg Thorpe re: "16G/17G Inclusion," forwarding three documents provided by Jim Gruber (CBG0040579-85) . The text of the fax cover does not request nor convey legal advice and is not subject to attorney-client privilege. *See* [*In re*] *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

(CBG0040579) is an April 11, 1979 letter sent to Chevron and is not privileged. (CBG0040580-81) is an April 9, 1979 memo from R. H. Nelson, Capt. CEC, USN to George S. McIssac, DOE Assistant Secretary re: "Clarification of Letter to Mr. D. L. Bower Regarding Inclusion of Section 16G and 17G Into the Unit Plan Contract." If R. H. Nelson is an attorney, this document is subject to the attorney-client privilege as it conveys legal advice. As (CBG0040585) indicates, (CBG0040582-84) is the text of a communication about the terms of a proposed 1978 settlement re: "Elk Hills" that the court considers not relevant to the issues in this case. Production of (CBG0040580-85) is not required.

Reconsideration Ruling – (CBG0040579) is a 1979 letter to Chevron that is in the public domain and any privilege that the Government may have asserted has long since been waived. Although this document may have been reviewed by a Government attorney, in this case, that fact does not transform a non-privileged document into one subject to the attorney work-product privilege, unless it contains or reflects specific content contributed by the attorney. *See EchoStar Commc'ns*, 448 F.3d at 1301.

**Folder 1889 (CBG0051006-10)**

January 31, 2008 Ruling – October 12, 2000 fax cover memo from Alan Burzlaff to Greg Thorpe, Molly White, Mary Egger, Butch Gangle, and Owen Olpin (CBG0051006) does not request nor convey legal advice, but rather discusses a conference call re: the CUSA's SOZ technical case. *See* [*In re*] *Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The attached March 14, 2000 Doug Hess USOZ Sectors Chart (CBG0051007-08) text (CBG0051009-10) is a Chevron document (*see* CBG0051006 - "attached as a copy of a page from CUSA's [Chevron's] equity spreadsheet . . . the attached CUSA materials presented to the IPE . . ."). These documents are in the public domain and do not request or convey legal advice. Therefore, CBG0051007-10 are not subject to the attorney-client privilege.

Reconsideration Ruling – The Government appears to contest the court's rulings regarding (CGB0051007-08), admitting that the documents were authored by Chevron, but asserting they are subject to the attorney work-product privilege, because they "were considered by the DOE EFT as part of the equity finalization process, and constitute work product under the *Sporck* rationale[.]" Gov't Mot. for Recon. at 11. Although this document may have been reviewed by a Government attorney, in this case, that fact does not transform a non-privileged document to one subject to the attorney work-product privilege, unless it contains or reflects specific content contributed by the attorney. *See EchoStar Commc'ns*, 448 F.3d at 1301.

## IV. CONCLUSION.

For these reasons, the Government's February 13, 2008 Motion for Reconsideration is granted in part and denied in part.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**