# In the United States Court of Federal Claims

No. 04-1365C
Filed: August 28, 2008
**TO BE PUBLISHED**

| | | |
|---|---|---|
| CHEVRON U.S.A., INC., | * | Attorney-Client Privilege; |
| | * | Attorney Work-Product Privilege; |
| Plaintiff, | * | Certification, 28 U.S.C. §§ 1292(b), (d)(2); |
| | * | Deliberative Process Privilege; |
| v. | * | Federal Courts Improvement Act of 1982, |
| | * | 28 U.S.C. § 1292(d)(2); |
| THE UNITED STATES, | * | Interlocutory Appeal; |
| | * | Mandamus; |
| Defendant. | * | "Misconduct Exception" to the Attorney- |
| | * | Client Privilege. |

**Donald B. Ayer, Lawrence D. Rosenburg**, Jones Day, Washington, D.C., Counsel for Plaintiff.

**John E. Kosloske**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**Paul T. Michael**, Office of the General Counsel, Department of Energy, Washington, D.C., Of Counsel.

## MEMORANDUM OPINION AND FINAL ORDER DENYING CERTIFICATION.

**BRADEN, *Judge*.**

Congress authorized federal trial courts to certify orders for interlocutory appellate appeal, but only in "exceptional cases[,] while generally retaining for the federal courts a firm final judgment rule." *Caterpillar, Inc.* v. *Lewis*, 519 U.S. 61, 74 (1996). The Defendant ("Government") fairly points out that, in several telephone conferences with the parties, the court indicated an interest in certifying certain questions regarding the scope of the deliberative process, attorney-client, and attorney work-product privileges that arose during *in camera* review. The three questions posited by the Government, however, are not the same as those the court had in mind and, more importantly, do not satisfy the requirements of 28 U.S.C. § 1292(d)(2). Nor is this case so "exceptional" as to require setting aside the final judgment rule. For these reasons, the court has determined that the

Government's April 16, 2008 Motion To Certify The Court's January 31, 2008 Privilege Rulings For Interlocutory Appeal must be denied.[1]

## I. BACKGROUND AND RELEVANT PROCEDURAL HISTORY.[2]

On January 31, 2008, the court issued a Memorandum Opinion and Orders in *Chevron II*, ruling on the Government's assertions of attorney-client, attorney work-product, and deliberative process privilege. Therein, the parties also were requested to advise the court, on or before March 18, 2008, whether they intended to request certification of any of those rulings.

On February 13, 2008, the court convened a telephone status conference, wherein the parties agreed to stay further proceedings in this case, until the privilege assertions were resolved.

On March 13, 2008, the Government filed a Status Report and Motion requesting until April 8, 2008 to ascertain the views of the Solicitor General regarding certification of the privilege rulings in *Chevron II*. On March 17, 2008, Plaintiff ("Chevron") filed a Response, arguing that the Government did not provide an adequate justification for the requested extension. On that date, the Government filed a request for additional time that the court granted. On March 18, 2008, Chevron notified the court that it did not intend to seek certification of the court's January 31, 2008 privilege rulings.

On March 28, 2008, the Government made a strategic decision to change course and filed a Notice of Appeal in the United States Court of Appeals for the Federal Circuit of the court's January 31, 2008 Memorandum Opinion and Orders. On March 31, 2008, however, the Clerk of the United States Court of Appeals for the Federal Circuit determined that the Government's appeal was "ineffective" and "deactivated," because the Government's February 13, 2008 Motion for Reconsideration was still pending in the United States Court of Federal Claims. *See* Order, *Chevron U.S.A., Inc.* v. *United States*, No. 08-5061 (Fed. Cir. Mar. 31, 2008).[3]

---

[1] To preserve the Government's privilege objections for appeal, the documents subject to the court's January 31, 2008 privilege rulings will be subject to a Protective Order specifying that production and any use in discovery and trial does not waive any privilege asserted.

[2] The relevant facts and procedural history of this case from the filing of the August 20, 2004 Complaint to May 31, 2006 are set forth in *Chevron U.S.A., Inc.* v. *United States*, 71 Fed. Cl. 236, 239-55 (2006) ("*Chevron I*"). The relevant facts and procedural history from May 31, 2006 to January 31, 2008 are set forth in *Chevron U.S.A., Inc.* v. *United States*, 80 Fed. Cl. 340, 349-54 (2008) ("*Chevron II*"). In particular, the *in camera* procedure suggested by the court and agreed by the parties to review documents asserted to be privileged is discussed in *Chevron II*, 80 Fed. Cl. at 351-54. The court assumes familiarity with these foundational decisions.

[3] On this date, August 28, 2008, the court also has issued a Memorandum Opinion and Order Denying the Government's February 13, 2008 Motion for Reconsideration, and a separate

On April 4, 2008, the court issued a Memorandum Opinion and Order determining that, in light of the Government's March 28, 2008 Motion to Appeal, the Government's March 13, 2008 request for additional time to consider certification was moot. In addition, the Government was ordered to produce the documents, as directed by the court's January 31, 2008 privilege rulings. A schedule for briefing on the Government's February 13, 2008 Motion for Reconsideration also was set.

On April 16, 2008, the Government filed a Motion To Certify The Court's January 31, 2008 Privilege Rulings For Interlocutory Appeal And To Stay The Court's April 4, 2008 Order Pending Appeal ("Gov't IR Mot."). On April 25, 2008, Plaintiff filed a Response ("Pl. IR Opp'n"). On May 2, 2008, the Government filed a Reply ("Gov't IR Reply").

On July 7, 2008, the Government filed a Motion For Leave to File December 18, 1987 Order Filed In *United States* v. *Ken Mar Assocs. Ltd.*, No. Civ-83-1805-P (W.D. Okla. 1987) (Order Re: Sanctions). The court granted that motion on July 8, 2008.

On July 16, 2008, the Government filed a Motion To Unseal The Court's January 31, 2008 Final Privilege Orders ("Gov't Mot. to Unseal"), because: "We are not aware of any basis upon which the orders might be withheld from the general public." Gov't Mot. to Unseal at 1. The only reason the court initially placed these orders under seal was at the request of the Government. *See* 12/20/07 TR at 10. Therefore, the court hereby places the three January 31, 2008 Orders in the public record and attaches them as an Appendix to this Memorandum Opinion and Final Order to "facilitate the process of appellate review." Gov't Mot. to Unseal at 1.

## II. THE STANDARD FOR CERTIFICATION.

Congress authorized the United States Court of Federal Claims to seek interlocutory appellate review of an order, where: "The [trial] court determined that this question of law was controlling . . . The court further determined that there was a substantial ground for difference of opinion regarding its jurisdiction over [Plaintiff's] claim and that an immediate appeal on the issue would 'materially advance the ultimate termination of the litigation.'" *Vereda, Ltda.* v. *United States*, 271 F.3d 1367, 1373-74 (Fed. Cir. 2001) (citing 28 U.S.C. § 1292(d)(2)).[4] Subsequently, the

---

Memorandum Opinion and Order denying the Government's August 16, 2007 second Motion To Dismiss.

[4] The Federal Courts Improvement Act of 1982 ("FCIA") provides, in relevant part, that:

> [W]hen any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the

United States Court of Appeals for the Federal Circuit has held that all three elements must be met. *See Pause Tech. LLC* v. *TiVo Inc.*, 401 F.3d 1290, 1293 (Fed. Cir. 2005) (certification should be applied *strictly* to preserve the final judgment rule that "serves the important purpose of promoting efficient judicial administration" (citing *Firestone Tire & Rubber Co.* v. *Risjord*, 449 U.S. 368, 374 (1981) ("We have recently defined this limited class of final 'collateral orders' in these terms: '[The] order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment.'") (quoting *Coopers & Lybrand* v. *Livesay*, 437 U.S. 463, 468 (1978)))).

## III. DISCUSSION OF THE QUESTIONS PRESENTED FOR CERTIFICATION.

The Government has posited three questions for interlocutory review:

> 1. Whether the "crime/fraud" exception to the attorney-client privilege applies[,] where the conduct that serves as the basis for its application is an alleged breach of contract?
>
> 2. Whether the work-product privilege applies to factual material prepared in anticipation of litigation?
>
> 3. Whether the deliberative process privilege protects against the disclosure of factual material in draft decisions?

Gov't IR Mot. at 3.

Each of these substantive questions are discussed herein, in the specific context of the three required elements of certification. *See Pause Tech.*, 401 F.3d at 1293.

### A. Whether The Questions Posited Are "Controlling Questions Of Law."

#### 1. Whether The "Crime/Fraud Exception" To The Attorney-Client Privilege Applies, Where The Conduct That Serves As The Basis For Its Application Is An Alleged Breach Of Contract.

The first question that the Government contends should be certified is "whether the crime/fraud exception to the attorney-client privilege applies where the conduct that serves as the basis for its application is an alleged breach of contract." Gov't IR Mot. at 3. The court, however, held that the "misconduct exception," *not* the "crime/fraud exception," to the attorney-client privilege was the basis for the court's determination that certain specific documents should be

---

> Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2).

produced. *See Chevron II*, 80 Fed. Cl. at 364. Therefore, the court has restated the question as: "Whether the 'misconduct exception' to the attorney-client privilege applies where the 'unlawful act' is an alleged breach of contract and/or violation of an Administrative Order."[5]

**a. The Government's Argument.**

The Government argues that each of the three questions posited are "controlling questions of law," because the documents that the Government asserts are privileged "bear directly on the material issues in this matter." Gov't IR Mot. at 6 (discussing *Marriott Int'l Resorts, L.P.* v. *United States*, 63 Fed. Cl. 144, 145 (2004) (where a trial court observed that a procedural question can materially affect the outcome of litigation), *rev'd on other grounds*, 437 F.3d 1302 (Fed. Cir. 2006)). In other words, since the court's rulings concern a question of law regarding the *general applicability* of certain privilege doctrines, the Government concludes that such rulings *ipso facto* are "controlling questions of law." *Id*. After making this broad assertion, however, the Government declined to address the specific issue of whether the "misconduct exception" to the attorney-client privilege applies where the "unlawful act" at issue is an alleged breach of contract and/or violation of an Administrative Order. *Id*. at 5-6.

**b. The Plaintiff's Response.**

Chevron responds that a question of law is "controlling," for purposes of certification, if the question materially affects the remaining issues to be decided by the trial court. *See* Pl. IR Opp'n at 3 (citing *Brown* v. *United States*, 3 Cl. Ct. 409, 411 (1983) ("Questions of law have only been deemed 'controlling,' under [28 U.S.C. § 1292(d)] if they materially affect issues *remaining to be decided* in the trial court.") (emphasis in original)). The routine production of "documents that *may be used along with* all of the other evidence in the litigation" does not elevate the merits of that production to a "controlling question" of law. *Id*. at 4 (emphasis added). Chevron concludes that "[t]he [G]overnment makes no effort to connect its three abstract legal principles to the [C]ourt's actual rulings on any of the documents at issue." *Id*.

**c. The Court's Resolution.**

The United States Court of Appeals for the D.C. Circuit has held that "Communications otherwise protected by the attorney-client privilege are not protected if the communications are made in furtherance of a crime, fraud, or *other misconduct*." *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) (emphasis added). As the court observed in *Chevron II*, the United States Court of Appeals for the D.C. Circuit in *In re Sealed Case*, 107 F.3d 46 (D.C. Cir. 1997), a different case where the crime/fraud exception was invoked, did not undermine the prior extension of that exception to misconduct and clarified that "the client must have made or received the otherwise

---

[5] The Government's May 2, 2008 Reply takes the remarkable position that the July 8, 1996 Administrative Order, No. 96-01 was not an "order" at all, but a "Equity Independent Petroleum Engineer Protocol," *i.e.*, "an unpublished instruction . . . that does not have the force of law." Gov't IR Reply at 3.

privileged communication with the intent to further an *unlawful* or fraudulent *act*." *Chevron II*, 80 Fed. Cl. at 363 at (quoting *In Re Sealed Case*, 107 F.3d at 49) (emphasis added).

In this case, the "misconduct" or "unlawful acts" at issue are prohibited *ex parte* communications that allegedly constitute a breach of an essential term in a Government contract, as well as an alleged violation of an Administrative Order. *Id*. After reading over 3,726 pages of documents that the Government asserts are privileged, it would be disingenuous for the court not to disclose that it has reached an *initial view* that DOE's conduct certainly *appears* to have breached the May 17, 1997 Equity Process Agreement and July 8, 1996 Administrative Order, although the court has not yet concluded, as Chevron asserts, that the Government's conduct amounts to "systematic and egregious *ex parte* communications between advocates and decisionmakers, and impermissible and undisclosed dual roles in the decisionmaking process, not merely in violation of [the May 19, 1997 Equity Process Agreement], but in repeated violation[s] of [the July 8, 1996] [A]dministrative [O]rder, fundamental principles of fairness, and basic canons of legal ethics." Pl. IR Opp'n at 4. A final determination will be made after trial and hearing the Government's explanations and defenses.

The United States Court of Appeals for the Federal Circuit has followed the United States Court of Appeals for the D.C. Circuit and at least four other federal appellate courts in recognizing the crime-fraud exception to the attorney-client privilege. *See In re Spaulding Sports Worldwide, Inc.*, 203 F.3d 800, 806-07 (Fed. Cir. 2000). Whether the United States Court of Appeals for the Federal Circuit also may recognize a "misconduct exception" to the attorney-client privilege and the parameters of that exception are important legal issues, but not "controlling questions" in this case. Although the misconduct documents are highly relevant, cumulative, and evidence prohibited *ex parte* communications that appear to breach the terms of the May 19, 1997 Equity Process Agreement and violate the July 8, 1996 Administrative Order, they are not the only evidence that may establish liability. *See, e.g.*, *Chevron II*, 80 Fed. Cl. at 360 n. 20.[6] Therefore, the court is unable

---

[6] Of the numerous documents for which the Government asserted attorney-client privilege, the court initially determined that 16 documents, otherwise subject to that privilege, should be produced under the "misconduct exception [to the attorney-client privilege]." *Chevron II*, 80 Fed. Cl. at 364.

On further examination, the court has identified four additional documents subject to the misconduct exception to the attorney-client privilege. A list of all of these documents follow. (The documents that the court considers to be highly relevant are designated by a *.) *See* 1000 (CBG0030780-81) (7/21/98 9: 51 a.m. e-mail); 1108 (CSI0040687-88) (10/22/98 6:27 p.m., 10/23/98 8:55 a.m., 10/23/98 8:32 a.m. e-mails); 1123 (CDE00304102-3) (10/28/98 7:58 p.m., 10/29/98 6:21 a.m, 10/29/98 10:15 a.m. e-mails); 1255 (CSI0040686) (3/5/99 e-mail); 1294 (CME01102353-55) (4/21/99 memo); 1384 (CDE00304416-17) (7/23/99 12:44 p.m., 7/25/99 1:43 p.m. e-mails); 1526 (CDE00307909-10) (9/29/99 8:27 a.m., 9/29/99 11:29 a.m. e-mails); 1602 (CBG01100275) (11/15/99 6:13 p.m., 11/16/99 5:01 p.m. e-mails); 1602 (CBG01100283) (11/24/99 11:43 a.m. e-mail); 1602 (CBG01100367-68) (11/18/99 11:53 a.m. e-mail); 1666 (CDE00307731) (2/23/00 3:16 p.m. e-mail); 1835 (CDE01332854) (9/05/00 2:46 p.m. e-mail)*; 1899

to represent that interlocutory review will "materially affect" this litigation, certainly not at this juncture before discovery is complete. Accordingly, the court has determined that the first question presented by the Government is not a controlling question of law. *See Brown*, 3 Cl. Ct. at 411.

### 2. Whether The Attorney Work-Product Privilege Applies To Factual Material, Prepared In Anticipation Of Litigation.

#### a. The Government's Argument.

Again, the Government elected not to address specifically whether the attorney work-product privilege applies to factual material, *prepared in anticipation of litigation*, is a controlling question of law, but instead has rested on the general argument that, because the Government has asserted certain documents are privileged, *ipso facto* they "bear directly on the material issues in this matter." Gov't IR Mot. at 6. Instead, the Government argues that the court's statement that "factual information is not subject to the attorney work-product privilege, because facts by definition have no attorney work-product content," is incorrect. *Id.* at 10 (citing *Chevron II*, 80 Fed. Cl. at 366); *see also* Gov't. IR Reply at 6.

#### b. The Plaintiff's Response.

Chevron responds that the Government incorrectly characterized the court's rulings that factual material was not subject to the attorney work-product privilege, whether such material was prepared "in anticipation of litigation" or not. *See* Pl. IR Opp'n at 5 (citing Gov't IR Mot. at 3). The court recognized that factual attorney work-product is entitled to less protection than attorney opinion work-product. *Id*. (citing *Chevron II*, 80 Fed. Cl. at 365 (ruling that disclosure of factual attorney work-product was appropriate if the factual content did not reveal the work-product component of an attorney effort)).

#### c. The Court's Resolution.

The United States Court of Appeals for the Federal Circuit in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007), held that attorney work-product that is factual may be discovered, if the requesting party makes a showing of "substantial need and undue hardship." *Id*. at 1375. Our appellate court also recognized in *In re Echostar Communication Corp*., 448 F.3d 1294 (Fed. Cir. 2006), that the practical "line between factual work-product and opinion work-product is not always distinct, especially when . . . an attorney's opinion may itself be factual work-product. When faced with the distinction between where that line lies, however, a [trial] court should balance the policies

---

(CAS00500027) (10/17/00 1:27 p.m. e-mail)*; 1902 (CAS00501674) (10/19/00 4:05 p.m. e-mail)*; 2058 (CDE01308443) (1/29/01 10:06 a.m. e-mail); 2392 (CDE00706371-72) (1/13/03 12:06 p.m. e-mail and 1/9/03 memo)*; and 2994 (CBG0090110-11) (7/21/98 9:51 a.m. e-mail).

In addition, the court ruled that 4826 (CDE00601719) (undated memo) may be subject to the misconduct exception, but has reserved a final ruling until Chevron conducts additional discovery.

to prevent sword-and-shield litigation tactics with respect to the policy to protect work-product." *Id.* at 1302.

Again, of the 164 folders that the Government asserted were subject to the attorney work-product privilege, the court determined after conducting a line-by-line examination, that 64 folders contained documents not subject to the attorney work-product privilege, because they were not *authored* by an *attorney and/or* contained factual content that did not reveal any attorney mental process, plans, strategies, tactics, or impressions,[7] *and* for which Chevron demonstrated a

[7] *See* 13 (CBG0030623) (Oct. 20, 1999 fax cover sheet); 27 (CME02202210) (Oct. 3, 2000 fax cover sheet forwarding a redacted May 19, 1981 DOE letter to Chevron); 570 (CBG0020371) (Feb. 28, 1997 fax cover sheet and attached memo); 634 (COM00602479) (April 1, 1997 fax cover sheet); 782 (Feb. 24, 1999 fax cover sheet); 889 (CBG01102221) (March 8, 2000 1:14 a.m. e-mail) [but ruled subject to the attorney-client privilege];889 (1894)( redacted text of an Aug. 27, 1999 8:35 a.m. e-mail); 889 (1943) (redacted text of a July 8, 1999 12:06 p.m. e-mail); 889 (1982-top 1983) (redacted text of a July 21, 1998 9:51 a.m. e-mail); 889 (1983-top 1984); 889 (1984-top 1985) (redacted text of the July 20, 1998 11:17 a.m. e-mail); 889 (2258) (redacted text of the Feb. 23, 2000 3:16 p.m. email); 952 (CAS00501280) (redacted text of the May 6, 1998 fax cover); 953 (CBG0030672) (text of May 6, 1998 cover letter); 954 (CME00301668) (text of May 6, 1998 cover letter); 978 (CBG0030315) (June 4, 1998 12:07 p.m. e-mail); 1025 (CBG0030773) (Aug. 3, 1998 4:11 p.m. e-mail); 1027 (same as 1025); 1071-77, 80-87 (individual pages from a 20-page presentation); 1108 (CI0040688) (Oct. 22, 1998 6:27 p.m. e-mail); 1237 (CDE00307577-78) [but ruled subject to attorney-client privilege] (Feb. 3, 1999 7:51 p.m. e-mail); 1372 (CBG0031080-81) (July 20, 1999 10:07 a.m. e-mail and 7:02 p.m. e-mail); 1524 (CDE00303219) (Sept. 28, 1999 12:19 and 3:30 p.m. e-mails); 1525 (CDE00303556) (Sept. 27, 1999 3:56 p.m. e-mail); 1526 (CDE00307909-10) (Sept. 29, 1999 8:27 and 11:29 a.m. e-mails also subject to misconduct exception)*; 1552 (CSI0060187) (Oct. 20, 1999 fax cover); 1553 (CDE00302715) (Oct. 21, 1999 11:35 a.m. e-mail and 4:50 p.m. e-mail)*; 1556 (Oct. 26, 1999 fax cover); 1574 (CME01400797) (Nov. 1, 1999 4:58 p.m. e-mail re: 1942 prices, quoting from 1957 DOE's SOZ and Stevens Redetermination); 1575 (CME01102064) (Nov. 2, 1999 fax cover sheet and attached charts); 1582 (CME01102051) (Nov. 18, 1999 2:53 p.m. e-mail), (CME01102052-54) (comparative charts); 1583 (CDE00307529) (Nov. 18, 1999 2:53 p.m. e-mail); 1586 (CSI0020020) (Nov. 22, 1999 fax cover sheet and public domain information and charts); 1593 (CSI0020411-16) (Nov. 30, 1999 memo); 1602 (CBG0110275) (Nov. 15, 1999 6:13 p.m. e-mail), 1602 (CBG01100288) (Dec. 13, 1999 12:34 p.m. e-mail), 1602 (CBG0110367-68) (Nov. 18, 1999 11:53 a.m. e-mail); 1639 (CAS00501281-2) (May 6, 1992 memo with attachments (CAS00501283-88)), (CME00800116)(Feb. 9, 2000 Elk Hills Equity Status Summary); 1666 (CDE00307731) (2/23/00 3:16 p.m. e-mail)*; 1682 (CDE00307246) (Mar. 22, 2000 7:43 a.m. e-mail); 1881 (CME01300526-34) (Oct. 10, 2000 fax cover sheet); 1884 (same as 1881); 1944 (CBG0081456-57); 2130 (CDE00304468) (redacted text of the May 3, 2001 8:08 a.m. e-mail); 2195 (CBG01204105-21) (power point slide presentation); 2196 (CME01300346) (Nov. 7, 2001 12:38 a.m. e-mail); 2265 (CDE00304342-44) (May 1, 2002 12:54 p.m. e-mail and 10:58 a.m. e-mail); 2319 (CDE00307651) (redacted text of the Aug. 27, 2002 1:31 p.m. e-mail); 2327 (CDE00304247-48) (redacted text of Oct. 3, 2002 7:34 a.m. e-mail); 2327 (redacted text of the Oct. 3, 2002 9:08 a.m. e-mail); 2711 (CBG0071194) (redacted text of the May 28, 2003 5:05 a.m.

"substantial need" and that an "undue hardship" exists. In this case, however, the ultimate disposition of liability is not dependent on the folders at issue. Although they are highly relevant and cumulative evidence of the alleged prohibited *ex parte* communications, their production and admission is not dispositive of the issue of liability, certainly not at this juncture before discovery is complete. *See Chevron II*, 80 Fed. Cl. at 360 n.20. Therefore, interlocutory review will not "materially affect" the disposition of this issue. Accordingly, the second question advanced by the Government is not a controlling question of law. *See Brown*, 3 Cl. Ct. at 411.

### 3. Whether The Deliberative Process Privilege Protects Against The Disclosure Of Factual Material In Draft Documents.

#### a. The Government's Arguments.

The Government insists that factual material in draft documents is absolutely subject to the deliberative process privilege. *See* Gov't IR Mot. at 9 ("[S]everal appellate courts have held that the separation requirement does not apply to factual material contained in *drafts*.") (emphasis in original) (citing *Lead Indus. Ass'n, Inc.* v. *OSHA*, 610 F.2d 70, 86 (2d Cir. 1979) (observing that the production of factual material in drafts would allow insight into agency's internal workings, which "is exactly what the law forbids"); *see also Mobil Oil Corp.* v. *E.P.A.*, 879 F.2d 698, 703 (9th Cir. 1989) ("[T]he deliberative process privilege [applies] to a draft document regardless of whether it differs from its final version."); *Nat'l Wildlife Fed'n* v. *Forest Serv.*, 861 F.2d 1114, 1122 (9th Cir. 1988) ("Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to [the] goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes."); *Russell* v. *Dep't of the Air Force*, 682 F.2d 1045, 1049 (D.C. Cir. 1982) (observing that "a simple comparison between the pages sought and the official document would reveal" an agency decision maker's judgment); *Montrose Chemical Corp. of California* v. *Train*, 491 F.2d 63, 71 (D.C. Cir. 1974) ("When a summary of factual material on the public record is prepared by the staff of an agency administrator, for his use in making a complex decision, such a summary is part of the deliberative process[.]"). Again, the Government failed to specifically address whether this question was "controlling." *See* Gov't IR Mot. at 9-10.

---

and 10:37 a.m. e-mail); 2994 (CBG0090110-11) (redacted text of the July 21, 1998 9:51 a.m. e-mail)*; 3339 (CDE00104606-7) (Nov. 15, 2004 3:36 p.m. e-mail); 4351 (CDG01207967) (Oct. 17, 2006 "Revised Timeline and Records Sequence to Chevron OHA Appeal"); 4382 (CBG01301639) (Oct. 17, 2006 fax cover); 4384 (CBG01301696) (Oct. 17, 2006 fax cover sheet); 4385 (CBG0130170) (Oct. 17, 2006 fax cover sheet); 4403 (CBG01308732) (Oct. 17, 2006 memo); 4758 ("Background Information for *Chevron USA* v. *United States*," authored by Burzlaff (DOE Engineer)). In addition, the court ruled that several documents had factual content that was not subject to the attorney work-product privilege, but only required production only of "the header" of the document. *See, e.g.,* 631 (fax cover sheet); 889 (1941) (July 8, 1999 9:06 a.m. e-mail).

**b. The Plaintiff's Response.**

Chevron responds that the court did not apply a blanket legal rule as to whether the deliberative process privilege protects against the disclosure of factual material in draft documents, but instead inspected and ruled on each document individually and on a line-by-line basis in many cases. *See* Pl. IR Opp'n at 5-6. Therefore, the Government is contending that the court incorrectly should have made these determinations regarding the *general applicability* of the deliberative process privilege. *See* Pl. IR Opp'n at 6.

**c. The Court's Resolution.**

The January 31, 2008 Final Order Regarding Documents The Government Asserts Are Subject To The Deliberative Process Privilege shows that the court examined the Government's deliberative process privilege assertions here, as elsewhere, on a line-by-line basis, to ascertain if any factual content could be isolated and disclosed, irrespective of whether the document being reviewed was a draft or final. *See Chevron II*, 80 Fed. Cl. at 361.[8]

---

[8] The court ruled that portions of the following draft documents contained factual content and were not subject to the deliberative process privilege. *See* 265 (red-line draft of "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For The Stevens Zone"); 278 (deleted portions of the draft "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For The Stevens Zone"); 281 (draft "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For The Stevens Zone"); 298 (draft cover letter and draft "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For The Stevens Zone"); 526 ("DRAFT Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone"); 548 ("DRAFT Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone"); 572 ("DRAFT Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone"); 765 (draft of suggestions regarding OHA remand); 577 (Nov. 9, 2001 cover memo); 794 (Draft Section III.C. of ASFE Stevens Zone Proceeding); 816 (draft letter transmitting Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone); 819 (draft letter transmitting Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone); 820 (draft letter transmitting Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone); 975 (draft Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1); 979 (draft Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1); 980 (draft Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1); 983 (draft Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1); 997 (draft "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process For The Stevens Zone"); 1002 (draft Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1); 1060 (draft Preliminary Decision Finalizing Participation

The United States Supreme Court held in *E.P.A.* v. *Mink*, 410 U.S. 73 (1973) that "[documents] consisting only of compiled factual material or purely factual material contained in deliberative memoranda and *severable* from its context would generally be available for discovery by private parties in litigation with the Government." *Id.* at 88 (emphasis added). The dispositive adjective in that ruling is "severable." In *Chevron II*, the court observed that: "In light of the absolute clarity of applicable precedent, the court considers the Government's continued assertion that factual content is subject to the deliberative process privilege to border on abuse." *See Chevron II*, 80 Fed. Cl. at 361. If factual information is severable, whether in final, draft, or semi-draft form, such text is not subject to the deliberative process privilege – no ifs, ands or buts. *See Mink*, 410 U.S. at 88. Although Chevron has requested and is entitled to factual material in draft documents, in the court's judgment, none of the information at issue is dispositive of the liability or damage issues in this case. Therefore, whether the deliberative process privilege protects against disclosure of factual materials in draft documents is not a controlling question of law.

* * *

Since the court has determined that none of the three questions presented are controlling, the Government's Motion To Certify could be dismissed here. In the interest of fairness, however, the court has analyzed the second and third requirements of certification.

### B. Whether The Questions Presented Involve A Substantial Ground For A Difference Of Opinion.

#### 1. As To The "Misconduct Exception" To The Attorney-Client Privilege.

##### a. The Government's Argument.

Again, the Government generically argues that there is a substantial ground for difference of opinion regarding each of the three questions presented, because the "[c]ourt's rulings narrow the scope of the existing attorney-client, work-product, and deliberative process privileges in a *novel manner* that conflicts with the established authority setting forth the parameters of each privilege." Gov't IR Mot. at 7 (emphasis added).

Specifically, the Government argues that any "misconduct exception" to the attorney-client privilege does not apply in breach of contract cases. *Id*. at 7-8 (citing *Chevron II*, 80 Fed. Cl. at 363). More importantly, the primary case that the court relied upon, *In re Sealed Case*, 754 F.2d 395 (D.C. Cir. 1985), is a non-precedential decision that addressed only attorney communications made for the purpose of facilitating an "illegal and fraudulent scheme." *Id*. at 8 (citing *In re Sealed Case*, 754

---

Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1); 1472 (draft "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For The Stevens Zone"); 1486 (same as 1472); 1497 (same as 1472); 1505 (same as 1472); 1507 (same as 1472); 3801 (same as 765); 3819 (Draft "Gaps in the Data"); 3946 (same as 816).

F.2d at 402). In fact, no case holds that a breach of contract that qualifies as "other misconduct" warrants an exception to the attorney-client privilege. *Id*. The Government does not address whether a violation of an Administrative Order is "other misconduct" qualifying as an exception to the attorney-client privilege.

In addition, the Government disagrees with the court's application of a "misconduct exception" to documents that only "appear to *evidence* [improper intra-agency] *ex parte* communications," because there is no legal precedent holding that evidence of presumed misconduct invokes the crime/fraud/misconduct exception. *Id*. Instead, "the communication must have been made with the intent by the client to *further* a wrongful act." *Id*. at 8-9 (emphasis added) (citing *In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997) ("Unless the government made some showing that the Company intended to further and did commit a crime, the government could not invoke the crime-fraud exception to the privilege.")).

**b. The Plaintiff's Response.**

Chevron responds that application of the "misconduct exception" to the attorney-client privilege depends on the nature of the misconduct, not the nature of the claim asserted. *See* Pl. IR Opp'n at 6 (citing *Koch* v. *Specialized Care Servs., Inc.*, 437 F. Supp. 2d 362, 373 (D. Md. 2005) ("The determinant of the [crime/fraud/misconduct] exception's applicability is the wrongfulness of the conduct before the Court, not the form of pleading.")). In addition, Chevron argues that the Government has cited no legal precedent that suggests any alternate understanding of the crime/fraud/misconduct exception. *Id*. at 7. In fact, the crime/fraud/misconduct exception has been recognized and applied by the predecessor to the United States Court of Appeals for the Federal Circuit in a breach of contract case. *Id*. (citing *Weiss* v. *United States*, 155 Ct. Cl. 825, 886-87 (1961)).

**c. The Court's Resolution.**

The United States Court of Appeals for the Federal Circuit has held that a "substantial ground for difference of opinion" is present where two precedential cases indicate different interpretations of law. *See Vereda, Ldta.*, 271 F.3d at 1373-74. That is not the case here. There is no difference of opinion among the federal appellate courts as to whether there is a "misconduct exception" to the

attorney-client privilege;[9] instead there is a dearth of jurisprudence, as the court recognized in *Chevron II*, 80 Fed. Cl. at 363.

If the court were to find a "substantial ground for disagreement" where there is no controlling precedent on a discovery issue, interlocutory appeal would become the rule, rather than the exception, undermining the established policy of requiring finality before appellate review is ripe. *See Caterpillar*, 519 U.S. at 74 ("Routine resort to [28 U.S.C.] § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for exceptional cases while generally retaining for the federal courts a firm final judgment rule.") (citations and internal quotations omitted).

For these reasons, the court has determined that there is not a substantial ground for a difference of opinion as to whether the "misconduct exception" to the attorney-client privilege applies.

**2. As To Attorney Work-Product That Contains Factual Content, But Prepared In Anticipation Of Litigation.**

**a. The Government's Argument.**

The Government also disagrees with the court's ruling that "factual information is not subject to the attorney work-product privilege," because this ruling conflicts with RCFC 26(b)(3)[10] and the

---

[9] The court does not read the predecessor to our appellate court's decision in *Weiss*, as Chevron does, to recognize a fraud misconduct exception. *See* Pl. IR Opp'n at 7. Instead, that federal court held: "The [court] prefers to rest the relationship of the fraud issue to the claims of privilege upon the *element of necessity*. On this basis the *prima facie* showing of bad faith establishes plaintiff's right to discovery of all of the documents withheld, including advisory opinions which . . . would be privileged, and the alleged work product of Army[']s attorneys for which exemption is claimed under the rule of *Hickman* v. *Taylor*." *Weiss* 155 Ct. Cl. at 886-87 (emphasis added). Moreover, *Weiss* arose in the context of the attorney work-product privilege, not the attorney-client privilege.

[10] Rule of the Court of Federal Claims 26(b) provides:

> (3) Trial Preparation: Materials.
>
> Subject to the provisions of subdivision (b)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such

"overarching principles" of the work-product doctrine. *See* Gov't IR Mot. at 10 (quoting *Chevron II*, 80 Fed. Cl. at 336). Accordingly, the Government contends that the court's January 30, 2008 ruling "greatly diminishes the scope of the [attorney] work-product privilege and appears to conflict with the Federal Circuit's application of the privilege[.]" *Id.* at 11. In addition, the Government asserts that certification is required, because the court's January 31, 2008 rulings apply not just to the individual documents examined in this case *in camera*, but also to the general applicability of the attorney work-product privilege doctrine. *Id.* at 11-12.

**b. The Plaintiff's Response.**

Chevron responds that the court ruled only that specific factual content in the documents at issue were not privileged. *See* Pl. IR Opp'n at 8-9 (citing *Chevron II*, 80 Fed. Cl. at 365). The court's ruling that the documents reviewed were not entitled to the deliberative process privilege was not only based on the documents' factual content, but other reasons, such as that the information was already in the public domain. *Id.* at 9 (citing *Judicial Watch, Inc.* v. *DOJ*, 432 F.3d 366, 371 (D.C. Cir. 2005) (holding that where "any portions" of documents, including "the attachments, included nonprivileged materials[,]" disclosure of the nonprivileged portions with redaction of the privileged content was appropriate)).

**c. The Court's Resolution.**

In light of the detailed guidance provided in *In re Echostar Communications*, 448 F.3d at 1301-04 and *In re Seagate Tech.*, 497 F.3d at 1375, there is no substantial ground for a difference of opinion as to whether attorney work-product privilege applies to factual material, whether or not it was prepared in anticipation of litigation. What is important is the qualitative content at issue. Factual content, whether or not prepared "in anticipation of litigation," remains factual. Accordingly, the court has determined that there is no substantial ground for a difference of opinion as to whether the attorney work-product privilege applies to factual material. Moreover, since almost

---

> materials when the required showing has been made, the court shall protect against disclosure of the material impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
>
> A party may obtain without the required showing a statement concerning the action or its subject matter previously made by that party. Upon request, a person not a party may obtain without the required showing a statement concerning the action or its subject matter previously made by that person. If the request is refused, the person may move for a court order. The provisions of RCFC 37(a)(4) apply to the award of expenses incurred in relation to the motion. For purposes of this paragraph, a statement previously made is (A) a written statement signed or otherwise adopted or approved by the person making it, or (B) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement by the person making it and contemporaneously recorded.

RCFC 26(b).

all Government action is prepared "in anticipation of litigation," the intent or purpose for which a Government attorney authors or reviews a document is not relevant to whether the attorney work-product privilege applies. What is relevant is the qualitative content for which the privilege is asserted and whether the party seeking production establishes a "substantial need" and "undue hardship." *In re Seagate Tech.*, 497 F.3d at 1375 (holding that factual attorney work-product may be discovered upon a showing of "substantial need" and "undue hardship.").

**3. As To Draft Deliberative Documents That Contain Factual Content.**

**a. The Government's Argument.**

The Government also argues that the court erred in ruling that factual material in certain draft documents was not privileged, even where factual material could be segregated from deliberative material. *See* Gov't IR Mot. at 9 (citing *Chevron II*, 80 Fed. Cl. at 361). The Government points out that several federal appellate courts have held that factual material in draft documents is privileged. *Id.* (citing *Mobil Oil Corp.*, 879 F.2d at 703 (holding that the application of the deliberative process privilege to a draft document does not hinge on whether the draft differs from the final version); *Nat'l Wildlife Fed'n*, 861 F.2d at 1122 ("Materials that allow the public to reconstruct the predecisional judgments of the administrator are no less inimical to [the] goal of encouraging uninhibited decisionmaking than materials explicitly revealing his or her mental processes."); *Russell*, 682 F.2d at 1049 (observing that "a simple comparison between the pages sought and the official document would reveal" an agency decisionmaker's judgment); *Lead Indus. Ass'n, Inc.*, 610 F.2d at 86 (observing that the production of factual material in draft documents would allow insight into an agency's internal workings, which "is exactly what the law forbids")). Moreover, the Government argues that the main case that the court relied upon does not address draft decisions and that the United States Court of Appeals for the Federal Circuit has yet to consider the issue. *See* Gov't IR Mot. at 10 (citing *Pac. Gas & Elec. Co.* v. *United States*, 70 Fed. Cl. 128, 134 n.7 (2006) ("Where possible, 'facts that are separable from the privileged portion of a document should be disclosed.'") (citation omitted)).

**b. The Plaintiff's Response.**

Chevron responds that whether information is contained in a draft or a final document, the deliberative process privilege applies only where that information is "inextricably intertwined with deliberative content." Pl. IR Opp'n at 7-8 (citing *Wilderness Soc'y* v. *Dep't of Interior*, 344 F. Supp. 2d 1, 14 (D.D.C. 2004) ("The District of Columbia Circuit has made clear that simply designating a document as a 'draft' does not automatically make it privileged under the deliberative process privilege.")); *see also Exxon Corp.* v. *Dep't of Energy*, 585 F. Supp. 690, 698 (D.D.C. 1983) ("[W]hile purely factual material is not exempt, it must be disclosed only if 'reasonably segregable' from privileged material.") (citation omitted).

c. **The Court's Resolution.**

Contrary to the Government's contention, it is well established that where factual content is severable from deliberative content in final documents, factual content must be produced. *See Mink*, 410 U.S. at 88. Therefore, there is no substantial ground for disagreement about whether such factual content is privileged whether in final or draft deliberative documents.

**C. Whether Interlocutory Appeal Will Materially Advance This Litigation.**

**1. The Government's Argument.**

The Government also argues that interlocutory review of the three above referenced questions will simplify the present litigation and "provide guidance in other cases before the [United States] Court of Federal Claims that raise similar important privilege issues." Gov't IR Mot. at 13.

**2. The Plaintiff's Response.**

Chevron responds that interlocutory review of the court's January 30, 2008 rulings regarding allegedly privileged documents would delay, rather than advance, litigation. *See* Pl. IR Opp'n at 10-11 (citing *Quantum Corp.* v. *Tandon Corp.*, 940 F.2d 642, 644 (Fed. Cir. 1991) (holding that early appellate resolution of an attorney-client privilege document dispute would not materially advance litigation)); *see also Jade Trading, LLC* v. *United States*, 65 Fed. Cl. 443, 448-49 (2005) (appellate resolution of a dispute over the production of confidential third-party tax information would not materially advance the litigation at issue). Because sufficient information exists to pursue this case, regardless of the Government's protests, interlocutory review would not materially advance this litigation. *See* Pl. IR Opp'n at 11-12. Even if the court's privilege rulings were reversed, no retrial would be needed. *Id*. at 12 (citing *Purdue Pharma L.P.* v. *Endo Pharms. Inc.*, 438 F.3d 1123, 1135 (Fed. Cir. 2006) (vacating judgment after bench trial and instructing district court on remand to reweigh the evidence)); *see also Moncrief* v. *Williston Basin Interstate Pipeline Co.*, 174 F.3d 1150, 1155 (10th Cir. 1999) (remanding case for a determination on evidence in the record).

Finally, Chevron disagrees with the Government's general proposition that *Marriott* holds that interlocutory review materially advances litigation, whenever litigation is simplified. *See* Pl. IR Opp'n at 12-13 (citing *Marriott*, 63 Fed. Cl. at 145-46) (observing that resolution of *Marriott* affected all deliberative process proceedings and that the circuits were split).

**3. The Court's Resolution.**

Chevron filed this case on August 24, 2004. From November 19, 2004 to May 31, 2006, the court considered and ruled on the Government's first and supplemental motions to dismiss, pursuant to RCFC 12(b)(1), (b)(6), after extensive briefing and several oral arguments, occasioned in part by Chevron's change in counsel.

Following filing of the Government's June 28, 2006 Answer and entry of an initial August 23, 2006 Protective Order, the Government asserted privilege as to 7,337 folders consisting of over 35,919 pages of documents. *See Chevron II*, 80 Fed. Cl. at 342. The court has spent the last fifteen months, in addition to attending to other cases on the court's docket, reviewing and re-reviewing *in camera* 801 folders consisting of over 3,726 pages of documents, conducting numerous telephone conferences, and entering Memorandum Opinions and preliminary rulings on August 22, 2006; May 21, 2007; May 24, 2007; May 25, 2007; June 5, 2007; June 6, 2007; June 8, 2007; June 11, 2007; June 12, 2007; June 13, 2007; June 15, 2007; June 18, 2007; June 28, 2007; July 2, 2007; July 3, 2007; July 9, 2007; July 10, 2007; and July 12, 2007 to address the Government's privilege assertions. On January 31, 2008, the court issued a Memorandum Opinion and Final Orders issuing the court's final rulings on the documents reviewed by the court and asserted to be subject to privilege. On this date, August 28, 2008, the court also has issued a Memorandum Opinion and Final Order Regarding Reconsideration of these decisions.

Production of the privileged documents at issue will be subject to a Protective Order to preserve Chevron's ability to challenge the court's evidentiary rulings on appeal to allow deposition discovery to proceed. Until the privileged documents, subject to the court's January 31, 2008 Memorandum Opinion and Orders, are produced, Chevron cannot conduct meaningful depositions. At the conclusion of such discovery, the court will be in a position to set a briefing schedule on the Government's August 17, 2007 Motion for Summary Judgment and, if necessary thereafter, set a trial date. In the court's judgment, this case can be set for trial and liability issues resolved in 2009. Therefore, in the court's judgment, certification will not materially advance this litigation.

## IV. CONCLUSION.

For the reasons stated herein, the Government's April 16, 2008 Motion to Certify is denied.[11]

**IT IS SO ORDERED.**

**s/ Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

---

[11] On April 14, 2008, the Government advised the court that if the three questions posited were not certified, the Government would file a petition for a writ of mandamus or combined petition for mandamus and interlocutory appeal. *See* 4/14/08 TR at 3-7. The United States Court of Appeals for the Federal Circuit has stated, both in *Spaulding Sports*, 203 F.3d at 804 and *Echostar Communications*, 448 F.3d at 1297-98, that a petition for mandamus is the preferred procedure for resolving privilege disputes such as those presented in this case. In that regard, the court has two procedural observations. First, the misconduct exception and scope is an issue of first impression in the this circuit; however, because the documents at issue are highly relevant evidence of prohibited *ex parte* communications that allegedly breached the May 17, 1997 Equity Process Agreement and violated the April 6, 1996 Administrative Order, appellate consideration of the misconduct exception and scope of application may be better resolved after trial and a full development of the factual record. Second, the court has attempted to identify the misuse documents herein to facilitate any preliminary review the United States Court of Appeals for the Federal Circuit may decide to undertake. *See supra* note 6.

# COURT APPENDIX TO MEMORANDUM OPINION AND FINAL ORDER DENYING CERTIFICATION

# In the United States Court of Federal Claims

No. 04-1365C
Filed: August 28, 2008*

| | |
|---|---|
| CHEVRON U.S.A., INC., | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

## FINAL ORDER REGARDING DOCUMENTS THE GOVERNMENT ASSERTS ARE SUBJECT TO THE ATTORNEY-CLIENT PRIVILEGE.

| Documents Withheld | Ruling |
|---|---|
| 13 | October 20, 1999 fax cover sheet from Butch Gangle to "DOE SOZ Equity Team" copied to Mary Egger, Greg Thorpe, Alan Burzlaff re: "EHEC Minutes - 1956 Objection."<br><br>The redacted text of the October 20, 1999 cover e-mail does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 14 | October 20, 1999 fax cover sheet from Butch Gangle to "DOE SOZ Equity Team," copied to Mary Egger, Greg Thorpe, Alan Burzlaff re: "SOZ Conversion research" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of |

* This Final Order was issued on January 28, 2008, together with *Chevron U.S.A. Inc.* v. *United States*, 80 Fed. Cl. 340 (2008), but placed under seal.

| | |
|---|---|
| | obtaining legal advice or services."). The attachments CBG0030612-22 are factual documents dated 1956 re: gas reserves in NPR #1 and are not privileged. *Id.* |
| 27 | October 3, 2000 fax cover sheet from Butch Gangle to Mary Egger forwarding a redacted May 19, 1981 letter to Chevron from Barton House, Department of Energy ("DOE") Acting Assistant Secretary. The May 19, 1981 letter was sent to Chevron, does not request nor convey legal advice and is not subject to the attorney client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 66 | October 12, 1999 3:56 p.m. e-mail from Gary Latham to Robert Kripowicz/Mary Egger re: "Gas-oil Conversion."<br><br>The redacted text of the e-mail does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>In addition, the disclosed text references Ms. Egger's role and potential *ex parte* communications between Ms. Egger and Mr. Latham, and/or the IPE which are directly relevant to the issues before the court. |
| 262 | August 9, 1996 cover sheet and draft memo re: Final Elk Hills Equity Recommendations from Robert Nordhaus, DOE General Counsel, to Netherland Sewell (IPE) regarding "legal issues . . . regarding the meaning of certain UPC provisions and the role of Netherland Sewell & Associates (NSA) as the Independent Petroleum Engineer[.]" This document was circulated by Mary Egger to J. Williams and Wayne Kaufman for "technical review."<br><br>The cover sheet does not request nor convey legal advice. Likewise the draft memo from Mr. Nordhaus expresses a legal opinion to the IPE, a third party. The document is not subject to attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). Moreover, the header of the document (CGB0050818) describes the functions |

| | |
|---|---|
| | being performed by Gary Latham at that time (as Contracting Officer's Representative) which appear to differ from those represented to the court. *Compare* CBG0050818 *with* Fygi Decl. Exhibit C. |
| 626 | March 25, 1997 cover sheet from Mary Egger to Owen Olpin, Wayne Kauffman, Ken Schuessler, Alan Burzlaff, and Gary Latham requesting comments on draft letter (CBG0020884) from Mary Egger to "the Equity IPE" re: "Legal Issues for Stevens Zone Equity Finalization." does not request nor convey legal advice, but rather provides Ms. Egger's views about legal issues to the Equity IPE, a third party. In fact, the memo refers to the Independent Legal Advisor, evidencing that Ms. Egger was not the attorney for IPE. The draft letter is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The March 25, 1997 cover sheets (CBG0020883, 85-86) are factual and not privileged.<br><br>If Mr. Schussler or Mr. Burzlaff functioned as members of the "DOE field equity technical team" this document also may evidence an improper *ex parte* communication with Ms. Egger. |
| 631 | COM00600009 is a fax cover sheet from Greg Thorpe to Mary Egger, Wayne Kauffman, Alan Burzlaff, and Owen Olpin. This document is factual and not subject to the attorney-client privilege. COM00600012-13 is a March 31, 1997 draft of 626 with edits made by Greg Thorpe. The edits made by Greg Thorpe, however, could be construed to convey legal advice and are subject to the attorney-client privilege. COM00600014 is an attachment to the March 31, 1997 draft letter titled "Chevron's Statement of Potential Legal Issues." stating Chevron's position and is not privileged. |
| 634 | COM00602479 is an April 1, 1997 fax cover sheet from Greg Thorpe to Mary Egger. The cover sheet is factual and not subject to the attorney-client privilege. COM00602481-2 is an April 1, 1997 draft of 626 with handwritten edits by Mr. Thorpe that could be construed to convey legal advice and is subject to the attorney-client privilege. Attachment 1 (COM00602483) is titled "alt 1" "Department of Energy's Description of Potential Stevens Zone Legal Issues" and Attachment 2 (COM00602484) is titled |

| | |
|---|---|
| | "Alt 2." Both documents could be construed to convey legal advice and are subject to the attorney-client privilege. |
| 733 | May 12, 1997 cover fax sheet from Greg Thorpe to Mary Egger, Wayne Kaufmann, and Ken Meeks (CBG00100917) is factual and not privileged. The attached draft "Agreement Regarding Fixing Of Equity Interests at Naval Petroleum Reserve No. 1 For Purpose of Sale" (CBG00100918-37) could be construed to request or convey legal advice and is subject to the attorney-client privilege. |
| 782 | February 24, 1999 fax cover sheet from Alan Burzlaff to Greg Thorpe, Mary Egger, Wayne Kauffman, and Butch Gangle, forwarding transcripts of Stevens Zone June/July 1997 presentations.<br><br>The redacted text on the cover sheet provides factual information "pertinent to our current legal issue topic" and could be construed to request legal advice and is subject to the attorney client privilege.<br><br>The more relevant issue to this case is whether any of the recipients functioned as members of the "DOE field equity technical team." If so, the header of the fax cover sheet (CME0102240), which was produced, may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The transcript pages already were provided to Chevron with edits, so any privilege regarding the edits has been waived. |
| 953 | May 6, 1998 memo from Alan Burzlaff to Wayne Kauffman copied to K. L. Schuessler re: "Stevens Zone Equity Finalization Potential 'Capture' Analysis Legal Issue." Reference "Letter dated April 30, 1998 from Cynthia Giumarra, Chevron USA to Mary Egger, U.S. Department of Energy (DOE)." This technical memo and attachments were requested by Wayne Kauffman and do not request nor convey legal advice and are not subject to the attorney-client privilege, nor do they attain that status simply subsequently by being faxed to Ms. Egger on that same day for a subsequent discussion. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>In addition, if any of the recipients functioned as members of the |

"DOE field equity technical team" this folder may evidence a prohibited *ex parte* communication prohibited by the Equity Process Agreement.

954 Same ruling as 953.

968 May 19, 1998 fax cover sheet from Wayne Kauffman to Ms. Egger (CBG0030153) requesting approval for a cover sheet for the "equity reports," however, the cover sheet was not attached. A May 6, 1998 letter from O. J. Williams, Director, Naval Petroleum Reserves of California, to Mr. Don Romine, Occidental (CBG0030154), was attached. This document addressed to Chevron's predecessor does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

976 The redacted text of a memo "Proposed Joint Instruction Meeting" (CBG0030293) faxed on June 1, 1998 at 10:57 from O'Melveny & Myers LLP conveys legal advice and is subject to the attorney-client privilege.

CBG0030295 is another draft of the text of the prior document, re: "Proposed Joint Instructions Wording" faxed on June 1, 1998 at 8:19 from Alan Burzlaff to Mary Egger, Greg Thorpe, and Wayne Kauffman, could be construed to request legal advice and is subject to the attorney-client privilege.

The redacted text of the May 29, 1998 10:59 fax cover sheet (CBG0030296) forwarding a draft of a letter to Richard Krenek (IPE) from DOE and Chevron re: "Joint Instruction relating to Stevens Zone Equity Finalization" could be construed to convey legal advice and is subject to the attorney-client privilege.

If Wayne Kauffman or Alan Burzlaff functioned as members of the "DOE field equity technical team," however, the fax cover sheet (CBG0030291) and (CBG0030296), already produced, may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

978 "Technical Issues for Discussion" (CBG0030310) is an attachment to a June 4, 1998 letter from Mary Egger to Cynthia Giumarra, Assistant General Counsel, Chevron, is not privileged and should be produced.

E-mail string (CBG0030311-15). The redacted text of the June 4, 1998 12:07 p.m. e-mail from Alan Burzlaff to Mary Egger re: "Proposed Letter to CUSA 6/4/98" (CBG00315) and June 4, 1998 11:01 a.m. reply copied to Greg Thorpe, Wayne Kauffman and Ken Schuessler do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The attached draft letter, however, could be construed to request legal advice and is subject to the attorney-client privilege

* * *

The redacted text of the June 4, 1998 12:13 p.m. e-mail (CBG0030314) from Alan Burzlaff to Mary Egger copied to Ken Schuessler, Greg Thorpe, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the June 4, 1998 12:28 p.m. e-mail (CGB0030312) from Wayne Kauffman to Mary Egger re: "Proposed Letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the June 4, 1998 2:14 p.m. e-mail (CBG0030311) from Greg Thorpe to Alan Burzlaff, Mary Egger, Ken Schuessler, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" could be construed to convey legal advice and is subject to the attorney-client privilege.

* * *

CBG030317 is a June 4, 1998 letter from Mary Egger to Ms. Giumarra (Chevron) copied to Greg Thorpe, Own Olpin, Wayne Kauffman, and Alan Burzlaff re: "Stevens Zone Equity – For discussion purposes only." CBG030318 is the same as CBG030317.

* * *

E-mail string. (CBG0030319-21) The June 4, 1998 9:58 a.m. e-mail from Wayne Kauffman to Mary Egger re: "Draft letter to CUSA" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 10:19 a.m. reply from Mary Egger re: "Draft letter to CUSA" could be construed to convey legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 12:07 p.m. e-mail from Alan Burzlaff to Mary Egger re: "Proposed letter to CUSA 6/4/98" could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The June 4, 1998 10:16 a.m. e-mail from Mary Egger to Alan Burzlaff re: "Proposed Letter to CUSA 6/4/98" could be construed to convey legal advice and is subject to the attorney-client privilege. (CBG0030319)

* * *

Draft June 4, 1998 memo with handwritten notes from ABB (Alan Burzlaff) marked June 18, 1998 (CBG0030323) could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

(CBG003025-27) Draft letter to Ms. Cynthia H. Giumarra (Chevron) re: "Stevens Zone Equity – For discussion purposes only" is the same text as CBG0030317 with handwritten note "Draft – For Review/Comment," conveys legal advice and is subject to the attorney-client privilege.

(CBG0030329) Edits to CBG0030325 from Greg Thorpe to Mary

Egger, Alan Burzlaff, Ken Schuessler, and Wayne Kauffman re: "Possible Instruction Letter Paragraph (new language in bold)" conveys legal advice and is subject to the attorney-client privilege.

* * *

(CBG0030330) is a June 30, 1998 memo from Alan Burzlaff to Mary Egger/Greg Thorpe that requests legal advice and is subject to the attorney-client privilege.

993 January 25, 1998 e-mail from Mary Egger to Greg Thorpe re: "Draft Comments." could be construed to convey legal advice and is subject to the attorney-client privilege.

1000 July 21, 1998 e-mail from Wayne Kauffman to Mary Egger copied to Francis Gangle, Jim Murphy, Greg Thorpe, Jay Williams re: "CUSA Proposed Communications Protocol draft."

In this memo Mr. Kauffman is reporting on the views of the "DOE EFT" about Chevron's proposed changes to the Protocol. The first three paragraphs do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If Butch Gangle functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The fourth paragraph arguably could be construed as requesting legal advice, however, the last sentences "Wording should . . . at this time." admits there were *ex parte* communications, the central issue in this case. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this paragraph. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

1025 August 3, 1998 4:11 p.m. e-mail from Alan Burzlaff to Greg Thorpe, Wayne Kauffman, Mary Egger copied to Jim Murphy, Butch Gangle, and Ken Schuessler re: "Equity Finalization Data Cutoff Dates."

This document does not request nor convey legal advice, as it

reports on cutoff dates reflected in minutes to NSAI meeting where Chevron was in attendance, is factual, and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

1027 Same ruling as1025.

1057 The redacted text of a September 22, 1998 memo from Alan Burzlaff to Wayne Kauffman copied to Mary Egger, Ken Schuessler, Jim Murphy re: "Shallow Oil Zone (SOZ) Final Equity Finalization Proposed Change to Data Cutoff Date." The document does not request or convey legal advice, as it reports on a September 15, 1999 SOZ interim meeting that Alan Burzlaff attended apparently as a member of the "DOE Equity Finalization Team," and is not subject to the attorney-client privilege. In addition, if any of the above-named functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

Attachment 1 is a document re: "SOZ Equity Finalization Data Cutoff Date," is a DOE handout used at the "SOZ First Interim Meeting on September 15, 1998." Attachment 2 is a copy of January 9-10, 1996 NSAI Minutes. Attachment 3 is an August 2, 1996 letter from DOE to Norman D. Stone, Equity Manager for Chevron. Attachment 4 is a copy of an August 15, 1996 letter sent by Norman Stone (Chevron) in response to the above referenced August 2, 1996 letter. Attachment 5 is a copy of a document "Current WOC Data" which was "Stevens Zone - Chevron Presentation Slide - 242 Reservoirs" using data from a June 1997 meeting. Attachment 6 is a Chevron Response to the NSAI Provisional Stevens Zone Recommendations, March 1998. Attachment 7 is page 2 from the May 19, 1997 Agreement Regarding Equity Redetermination Process. Attachment 8 is a May 15, 1997 memo from Gary Latham to the file re: "[May 13, 1997] Discussion with Chevron and NSA (IPE) on process ground rules for SOZ equity finalizations.

None of these attachments request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding*

| | |
|---|---|
| | *Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 1071 | 1071 to 1077, 1079 to 1087, and 1090 are individual pages from 1090, a 20 page presentation prepared by Systems Technology Associates, Inc. re: "Potential Stevens Zone Legal Issue 'Use of Capture Methodology' - September 30, 1998 Briefing." Although 1090 contains the caption "Attorney Client Communication-Privileged and Confidential," the document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 1072 | Same ruling as 1071. |
| 1073 | Same ruling as 1071. |
| 1074 | Same ruling as 1071. |
| 1075 | Same ruling as 1071. |
| 1076 | Same ruling as 1071. |
| 1077 | Same ruling as 1071. |
| 1079 | Same ruling as 1071. |
| 1080 | Same ruling as 1071. |
| 1081 | Same ruling as 1071. |
| 1082 | Same ruling as 1071. |
| 1083 | Same ruling as 1071. |
| 1084 | Same ruling as 1071. |
| 1085 | Same ruling as 1071. |
| 1086 | Same ruling as 1071. |
| 1087 | Same ruling as 1071. |
| 1090 | Same ruling as 1071. Five slides in this presentation arguably could be construed to discuss legal issues regarding the equity finalization process. CME01302117 ("Legal Issue on Use of Capture"); CME01302132 ("What Are Chevron's Issues"); CME01302134 ("What are Merits of Chevron's Legal |

| | |
|---|---|
| | Arguments"); CME01302135 ("Stevens Zone Legal Issue"); CME01302136 ("NSAI Shale Methodology"). The Government's log, however, does not represent these slides as being prepared by or presented to an attorney. The attorney-client privilege does not attach. |
| 1108 | October 22-23, 1998 e-mail string. The October 22, 1998 6:27 p.m. e-mail from Alan Burzlaff "To all" re: "Revised Equity Data Cutoff Date Proposal" could be construed to request legal advice as it is a "subject data cutoff proposal that incorporates the feedback I received today" and is subject to the attorney-client privilege.<br><br>The October 23, 1998 8:55 a.m. memo from Mary Egger to Greg Thorpe, Ken Schuessler, Wayne Kauffman, Alan Burzlaff copied to Butch Gangle and Jim Murphy re: same could be construed to convey legal advice and is subject to the attorney-client privilege.<br><br>The October 23, 1998 8:32 a.m. e-mail from Ken Schuessler to Mary Egger, Greg Thorpe, Wayne Kauffman, Alan Burzlaff copied to Butch Gangle and Jim Murphy re: "Revised Equity Data Cutoff Date Proposal" could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1108. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000). |
| 1123 | October 28-29, 1998 e-mail string. The October 28, 1998 7:58 p.m. e-mail from Alan Burzlaff "to all" re: "DOE Proposed Materiality Question for NSAI" could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>* * *<br><br>The October 29, 1998 6:21 a.m. e-mail from Mary Egger to Ken Schuessler, Greg Thorpe, Wayne Kauffman, Alan Burzlaff re: "DOE Proposed Materiality Question for NSAI" conveys legal advice and is subject to the attorney-client privilege. |

* * *

The October 29, 1998 10:15 a.m. e-mail from Butch Gangle to Mary Egger re: same could be construed to request legal advice and is subject to the attorney-client privilege.

Butch Gangle, Wayne Kauffman, and Ken Schuessler were authorized to represent DOE before the IPE (NSAI). Ms. Egger was not, as she was counsel to the ASFE. This document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1123. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

1133 October 13, 1997 "Description of NSAI 31S Shale Methodology," authored by Alan Burzlaff, System Technology Associates, Inc. Although this document is labeled "Privileged Attorney-Client Communication," it does not request nor convey legal advice as it is a factual description of the "technical approach used by the IPE in competing equity participation in the 31S Shales" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

1142 November 19, 1998 4:21 a.m. e-mail from Alan Burzlaff to Greg Thorpe re: "Item 1Writeup for Stevens Zone Capture Legal Issue" does not request nor convey legal advice as it describes the fact that Mr. Burzlaff prepared a "write-up of item 1 for the subject Capture legal issue." The "write-up" is not included, therefore the e-mail text alone is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1145 November 23, 1998 fax cover sheet from Greg Thorpe and Stephanie Walter to Alan Burzlaff, Butch Gangle, Mary Egger, and Owen Olpin attaching a "redraft of technical review" *i.e.*

| | |
|---|---|
| | November 23, 1998 System Technology Associates' "Description of the IPE's 31S Shale Methodology." The edits on this document convey legal advice and are subject to the attorney-client privilege. An undated version of underlying text, however, is not privileged, as discussed at 1133.<br><br>If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1154 | December 1, 1998 fax cover sheet from Greg Thorpe to Ken Schuessler, Alan Burzlaff, Mary Egger, Owen Olpin, and Wayne Kauffman forwarding "Revised draft of 'technical' piece." The attached document is re-named "Netherland Sewell's 31S Shale Methodology." The edits on this document convey legal advice and are subject to the attorney-client privilege. An undated version of underlying text, however, is not privileged, as discussed at 1133. If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1170 | December 7, 1998 memo from Butch Gangle to Greg Thorpe and Mary Egger copied to Wayne Kauffman, Alan Burzlaff, Ken Schuessler re: "NSAI EFT Conference Call on December 7, 1998." does not request nor convey legal advice as it reports on an "Equity Finalization Team teleconference" where Chevron participated and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1237 | February 3, 1999 7:51 p.m. e-mail from Alan Burzlaff to Mary Egger and Greg Thorpe re: "BTU Legal Issue Internal Briefing" could be construed to request legal advice and is subject to the attorney-client privilege. If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |

| | |
|---|---|
| 1243 | February 16, 1999 memo from Greg Thorpe to Mary Egger, Wayne Kauffman, Butch Gangle, Alan Burzlaff, and Ken Schuessler with cc: to Christine Suh and Owen Olpin re: "Value Weighing." The memo conveys legal advices and is subject to the attorney-client privilege, however, the attachment "Table III-Results of Operations For Oil and Gas Producing Activities" is from the Chevron Corp. 1998 Annual Report, is in the public domain, and should be produced, without the notation. If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1255 | March 5-6, 1999 e-mail string.<br><br>The March 5, 1999 4:59 p.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle, Ken Schuessler, Gary Holcomb, Wayne Kauffman, Greg Thorpe regarding "Chevron's Data Cutoff Proposal dated March 5," could be construed to request legal advice and is subject to the attorney-client privilege. Butch Gangle, Wayne Kauffman, and Ken Schuessler were authorized to represent DOE before the IPE (NSAI). Ms. Egger was not, as she was counsel to the ASFE. This document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1255. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).<br><br>* * *<br><br>The March 6, 1999 e-mail from Ken Schuessler to Alan Burzlaff regarding "Chevron's Data Cutoff Proposal dated March 5," does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 1286 | April 15, 1999 e-mail string. The redacted text of the April 15, 1999 3:30 p.m. e-mail from Alan Burzlaff "To all" does not request nor convey legal advice as it reports the fact that Alan Burzlaff worked on a draft "Technical Report," but the report itself was not included and therefore the e-mail text is not subject to the attorney-client privilege. |

The redacted text of the April 15, 1999 5:21 p.m. e-mail from Mary Egger to Alan Burzlaff re: "Final Draft of Technical repot being Faxed" could be construed to convey legal advice and is subject to the attorney-client privilege.

1294 CME01102353-55 is a April 21, 1999 memo from Alan Burzlaff to Greg Thorpe, Mary Egger, Wayne Kauffman, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh, re: "Analysis of Chevron's Equitable Claim." The redacted text of the April 21, 1999 memo arguably could be construed to request legal advice, as it appears to respond to a memo from Greg Thorpe regarding Chevron's equitable claim.

If any of the above referenced individuals, however, functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Butch Gangle, Wayne Kauffman, and Ken Schuessler were authorized to represent DOE before the IPE (NSAI). Ms. Egger was not, as she was counsel to the ASFE. This exchange occurred before the IPE's Decision on the Stevens Zone and the ASFE's Preliminary and Final Decisions, in both of which Ms. Egger took a leading role. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the documents in folder 1294. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

1312 May 6, 1999 fax cover sheet from Mary Egger to Wayne Kauffman, together with May 6, 1999 signed final letter from Mary Egger to C. Kenneth Roberts, Esq. re. "Mediation of Stevens Zone Legal Matters." The log indicates that Mr. Roberts was the "ILA" and a "client DOE employee." In fact, Mr. Roberts' client was Netherland Sewell, the IPE. Therefore, the May 6, 1999 letter is not privileged, nor are Ms. Egger's edits on Settlement Agreement Number Three since they were disclosed.

1356 September 13, 1999 4:44 p.m. e-mail (CAS0021163-64) from Lou Capitanio to Mary Egger re: "New Draft" could be construed to request legal advice and is subject to the attorney-client privilege, but for the text "The 1998 production data . . . into 1998." which is factual, and should be produced.

The September 14, 1999 9:54 a.m. e-mail (CAS0021163) from Mary Egger to Lou Capitanio re: "New Draft" copied to Gary

Latham, Arnold Smits, and Robert Kripowicz (ASFE) could be construed to convey legal advice and is subject to the attorney-client privilege.

The redacted text of the September 14, 1999 1:50 p.m. e-mail (CAS0021163) from Lou Capitanio to Mary Egger re: "New Draft" copied to Gary Latham, Arnold Smits, and Robert Kripowicz does not request nor convey legal advice as it is a factual report of a "teleconference with the IPE" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The redacted text of a June 22, 1999 11:46 a.m. e-mail (CAS002116122) from Mary Egger to Robert Kripowicz re: "Elk Hills injury lawsuit" is not relevant to this case.

1372 E-mail string dated July 20, 1999.

The redacted text of a July 20, 1999 7:02 a.m. e-mail (CBG0031080-81) from Butch Gangle to Alan Burzlaff, Ken Schuessler, Gary Holcomb, James Gruber re: "Questions for NSAI on Wednesday" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

July 20, 1999 10:07 a.m. e-mail from Alan Burlaff in response copied to Mary Egger and Greg Thorpe could be construed to request legal advice and is subject to the attorney-client privilege. The redacted text of the July 20, 1999 12:06 p.m. e-mail from Greg Thorpe could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may

| | |
|---|---|
| | evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1373 | Same ruling as 1372 re: July 20, 1999 7:02 a.m. e-mail and July 20, 1999 1:06 p.m. e-mail.<br><br>The redacted text of the July 20, 1999 5:58 p.m. e-mail (CDE00304407) from Mary Egger to Butch Gangle, Ken Schuessler, Gary Holcomb, James Gruber, and Alan Burzlaff copied to Greg Thorpe re: "Questions for NSAI on Wednesday." could be construed to convey legal advice and is subject to the attorney-client privilege.<br><br>If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1384 | July 23-26, 1999 e-mail string.<br><br>The redacted text of the July 23, 1999 8:49 a.m. e-mail (CDE00304417-18) from Alan Burzlaff to Greg Thorpe, Christine Suh re: "Comments on Cutoff Date Brief" coped to Mary Egger, Ken Schuessler, and Butch Gangle could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>* * *<br><br>The redacted text of the July 23, 1999 1:23 p.m. reply (CDE00304417) from Greg Thorpe does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>* * *<br><br>The redacted text of the July 23, 1999 12:44 p.m. e-mail (CDE00304416-17) from Mary Egger in response could be construed to convey legal advice and is subject to the attorney- |

client privilege. Ms. Egger's memo, however, directly discusses the issue in this case, *i.e.*, the parties compliance with the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

* * *

The July 25, 1999 1:43 p.m. e-mail from Greg Thorpe to Mary Egger, Alan Burzlaff, Christine Suh copied to Ken Schuessler and Butch Gangle could be construed to convey legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

* * *

The redacted text of the July 26, 1999 11:20 a.m. e-mail from Alan Burzlaff to Greg Thorpe could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The July 26, 1999 12:23 p.m. e-mail from Mary Egger in reply could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1390 July 29, 1999 cover memo from Christine Suh (O'Melveny & Myers) to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, and Owen Olpin, copied to Greg Thorpe re: "Stevens Zone Data Cutoff Date Dispute." (CME01302657) does not request nor convey legal advice, as it is factual, and not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

Instead of attaching the DOE EFT position paper referenced, the documents that follow (CME01602658-63) are documents in the public domain that previously were received by Chevron.

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1458 September 10, 1999 e-mail string. The redacted text of the September 10, 1999 8:22 a.m. e-mail (CDE00307147-48) from Butch Gangle to Greg Thorpe (O'Melveny & Myers) re: "Meeting with NSAI & Chevron" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The redacted text of the September 10, 1999 9:49 a.m. e-mail (CDE00307147) from Mary Egger to Greg Thorpe and Butch Gangle copied to Alan Burzlaff, Ken Schuessler, and Gary Holcomb in reply does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").
If any of the recipients of this communication functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1468 The redacted text of the September 11, 1999 12:17 p.m. e-mail from Gary Latham to Mary Egger re: "NSAI critique of the Stevens shale studies by DOE and Chevron" does not request nor convey legal advice, as it reports on a September 9, 1999 meeting with the NSAI and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients of this communication functioned as members of the "DOE field equity technical team," this

document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1503 September 20-21, 1999 e-mail string. The redacted text of the September 20, 1999 3:58 p.m. e-mail from Mary Egger to Robert Kripowitcz, Gary Latham, Louis Capitanio, and Arnold Smits re: "ASFE data decision" does not request nor convey legal advice as it states only that a draft decision is being circulated, but the draft was not attached, therefore, the e-mail text is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The deleted text of the September 21, 1999 9:45 a.m. e-mail from Lou Capitanio to Mary Egger copied to Gary Latham, Arnold Smits, and Gena Cadieux re: same could be construed to request legal advice and is subject to the attorney-client privilege.

1518 September 23, 1999 e-mail string. The redacted text of the September 23, 1999 10:14 a.m. e-mail from Mary Egger to Robert Kripowicz copied to Patsy Hicks, Gary Latham, Louis Capitanio, Arnold Smits, and Gena Cadieux re: "Data Decision." The text "Bob . . . data" contains legal advice and is subject to the attorney-client privilege. The remainder of the text does not convey legal advice is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the September 23, 1999 12:32 p.m. reply e-mail from Robert Kripowicz does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the September 23, 1999 2:40 p.m. reply e-mail from Mary Egger does not request nor convey legal advice and not is subject to the attorney-client privilege. *See Spalding*

*Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients of this communication functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1524 September 28, 1999 e-mail string. The redacted text of the September 28, 1999 12:19 p.m. e-mail from Butch Gangle to Mary Egger and Greg Thorpe re: "Draft: Chevron Stevens Pricing Data" could be construed to seek legal advice about a draft memo to Norm Stone and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

The September 28, 1999 reply from Greg Thorpe to same conveys legal advice and is subject to the attorney-client privilege.

* * *

The redacted text of the September 28, 1999 6:23 p.m. reply from Mary Egger to Butch Gangle and Greg Thorpe copied to Christine Suh and Alan Burzlaff conveys legal advice and is subject to attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1525 September 27-28, 1999 e-mail string.

The September 27, 1999 3:56 p.m. e-mail from Francis Gaggle to Mary Egger and Greg Thorpe regarding "Chevron's Stevens Price Data" does not request nor convey legal advice as it reports

the fact that Butch Gangle received price data from Chevron and, therefore, is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The September 24, 1999 10:34 p.m. e-mail from Greg Thorpe does not identify the recipient. Assuming the recipients were those listed in the 3:56 p.m. e-mail, the document conveys legal advice and is subject to attorney-client privilege.

* * *

The September 28, 1999 10:02 a.m. e-mail memo from Mary Egger to Butch Gangle and Greg Thorpe could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1526 September 29, 1999 e-mail string. The September 29, 1999 8:27 a.m. e-mail from Butch Gangle to Mary Egger and Alan Burzlaff does not request nor convey legal advice as it conveys price ratio calculations performed by Alan Burzlaff and his views on not having the meeting in Dallas and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

Of significance is Ms. Gangle's requesting approval from Ms. Egger on negotiating price ratio calculations with Chevron relevant to the IPE's decision. Arguably this request is subject to the attorney-client privilege. Mr. Gangle was authorized to represent DOE before the IPE. Ms. Egger was not. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all the e-mails in folder 1526. *See In re Spalding Worldwide, Inc.*, 203 F.3d 800, 807 (Fed. Cir. 2000).

* * *

The September 29, 1999 11:29 a.m. e-mail from Mary Egger to Butch Gangle copied to Greg Thorpe re: "Pricing Ratios" could be construed to convey legal advice and is subject to the attorney client privilege.

Same ruling as with 8:27 a.m. e-mail. This document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1529 The redacted text of the October 1, 1999 9:56 fax cover sheet (CME01102058) and attached factual graphs showing Stevens Zone price data from Alan Burzlaff to Greg Thorpe, Mary Egger, and Ken Schuessler do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1530 The redacted text of the October 1, 1999 8:01 a.m. e-mail from Butch Gangle to Mary Egger/Greg Thorpe, Alan Burzlaff, and Gary Holcomb re: "Norm's Final Firm Offer." The document could be construed to request legal advice and is subject to the attorney-client privilege.

1549 The redacted text of the October 20, 1999 cover fax sheet (CME01100834) from Butch Gangle to "DOE Equity Team" copied to Mary Egger, Greg Thorpe and Alan Burzlaff does not request nor convey legal advice as it describes documents from the 1976 Report on 29R Carneros Zone and therefore is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The attachments (CME01100835-36) are a June 9, 1976 document: "Addendum and Modifications of Reservoir Engineering and Correlation Subcommittees Report on 29 R Carneros Zone" previously were submitted to Chevron's predecessors and are in the public domain and not privileged. *Id*.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1553 October 20-21, 1999 e-mail string. The redacted text of the October 21, 1999 11:35 a.m. e-mail from Butch Gangle to Mary Egger does not request nor convey legal advice, as it reports Alan Burzlaff is receiving Chevron data and the discovery of "a great deal of materials in our warehouse and out at Elk Hills" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The redacted text of the October 21, 1999 4:50 p.m. e-mail from Mary Egger to Greg Thorpe, Butch Gangle and copied to Alan Burzlaff, and Gary Holcomb re: "Gas Plants inlet & outlet streams gas analysis, Elk" does not request nor convey legal advice, as it reports on a revised NSAI schedule and is not subject to the attorney-client privilege. *See Spalding Sports*

*Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1555 October 22, 1999 memo from Greg Thorpe and Christine Suh to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, and Owen Olpin regarding "Current Price Issue In Rebuttal Brief." This document conveys legal advice and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1562 October 28, 1999 fax cover sheet (CBG0030584) from Alan Burzlaff to Greg Thorpe, Christine Suh, Mary Egger, Butch Gangle, and Ken Schuessler, attaching a October 27, 1999 memo (CBG0030585-86) to F.J. Gangle from Alan Burzlaff (signed) and copied to Greg Thorpe, Mary Egger, Ken Schuessler, and Christine Suh re: "Appropriate 'Current Price' Time Period, Stevens Zone Conversion Factor Issue." The fax cover sheet does not request nor convey legal advice as it is a technical analysis of "the current price period from DOE's perspective" and is not subject to the attorney-client privilege. The memo (CBG0030585-86) does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The attachments CBG0030587-92 are factual charts/graphs and should be produced. In particular, CBG0030590 is information from the U.S. Energy Information Administration in the public domain.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 1563 | Unsigned draft of October 27, 1999 Burzlaff memo (unsigned). Same ruling as 1562. |
| 1564 | Signed copy of October 27, 1999 Burzlaff memo. *See* comments on document number 1562. |
| 1565 | Signed copy of October 29, 1999 Burzlaff memo. *See* comments on document number 1562. |
| 1574 | The redacted text of the November 1, 1999 4:58 p.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle, Greg Thorpe and Christine Suh and re: "1942 Prices" does not request nor convey legal advice as it reports on information from a May 23, 1941 oil price bulletin from Standard Oil (Chevron's predecessor) and the 1957 SOZ Redetermination and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1575 | November 2, 1999 fax cover sheet (CME01102064) from Alan Burzlaff to Greg Thorpe/Christine Suh, Mary Egger, and Butch Gangle. The fax cover sheet comment does not request nor convey legal advice as it reports that the attachments are "plots of historical prices,"is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The four attached charts (CME01102065-68) are factual data that also are not privileged.<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The attached graphs are factual and should be produced. |
| 1579 | November 4, 1999 memo from Alan Burzlaff to Butch Gangle Reference to a NSAI letter to Butch Gangle and Norm Stone (Chevron) dated October 27, 1999 Subject: "Stevens Zone Gas Conversion Guidelines" copied to Ken Schuessler |

(CME0141124-35) does not request nor convey legal advice, as it is a series of technical answers to questions posed by the IPE, and therefore is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

A November 5, 1999 fax cover sheet from Butch Gangle to Mary Egger (CME04120-21) indicates this memo was forwarded to Ms. Egger on November 5, 1999, however, CME0401122-23, a November 5, 1999 letter from Butch Gangle to Richard Krenek, (IPE) indicating that the November 4, 1999 memo was sent to the IPE first, with no input from Ms. Egger.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1582 November 18, 1999 e-mail string.

The November 15, 1999 6:13 p.m. e-mail (CME0110253-54) from Alan Burzlaff to Greg Thorpe, Mary Egger, Christine Suh copied to Butch Gangle, Ken Schuessler, and Gary Holcomb re: "Prices in Chevron Current Price Brief to ILA." could be construed to request legal advice and is subject to the attorney-client privilege. The comparative chart, however, is factual and not subject to the attorney-client privilege.

* * *

The November 16, 1999 2:01 p.m. response from Greg Thorpe conveys legal advice and is subject to the attorney-client privilege.

* * *

The November 16, 1999 9:11 p.m. e-mail from Alan Burzlaff to Greg Thorpe copied to Mary Egger, Owen Olpin, Francis Gangle, and Kenneth Schuessler. The first sentence could be construed to request legal advice and is subject to the attorney-client privilege. The comparative chart, however, conveys facts and is not privileged.

* * *

The November 18, 1999 2:53 p.m. e-mail from Francis Gangle to Mary Egger, Greg Thorpe, Alan Burzlaff copied to Gary Holcomb re: "NSAI Conversion Methodology Meeting in Bakersfield." does not request nor convey legal advice, as it reports on a November 18, 1999 meeting with IPE and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). This document is also relevant to Chevron's causation theory. *See* 6/15/07 TR at 10. The author of the hand-written note on CME01102050 is not identified, but the content is factual.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1586 November 22, 1999 fax cover sheet (CSI0020020) from Alan Burzlaff to Greg Thorpe, Christine Suh, Mary Egger, and Butch Gangle transmitting "Plots of conversion factor results (based on NSAI methodology) for varying price window," with 2 pages of charts (CSI0020021-22). These documents do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1589 The redacted text of the November 23, 1999 11:53 a.m. e-mail from Mary Egger to Alan Burzlaff, Butch Gangle, Greg Thorpe re: "Voicemail from Gary Henderson (Counsel for Chevron)" does not request nor convey legal advice and is not subject to the attorney-client privilege. That text, however, discusses a settlement that the court does not consider to be relevant to this case. Therefore, the document does not need to be produced.

1593 November 30, 1999 memo from Alan Burzlaff to Butch Gangle, Greg Thorpe, and Mary Egger re: "Gas Conversion Factor Methodology, Analysis of Impact on NSAI Stevens Zone Provisional Equity Recommendation," (CSI0020411) copied to Ken Schuessler forwarding 5 charts (CSI0020412-16). Although these documents are marked "privileged and confidential" they do not request nor convey legal advice as they graphically depict a range of "possible equity outcomes related to the proposed price-based gas conversion factors methodologies presented by [the IPE]" and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1596 All of the factual charts in this file also are not subject to the attorney-client privilege, without the notations by Ms. Egger on CME01102038. The source for CME01102034-6 is listed as NPR I Product Revenues (DOE share), BP01 Monthly Status Report and are in the public domain.

1602 E-mail string. The redacted text of the November 15, 1999 6:13 p.m. e-mail (CBG01100275) from Alan Burzlaff to Greg Thorpe, Mary Egger, Christine Suh, copied to Butch Gangle, Ken Schuessler, and Gary Holcomb re: "Prices in Chevron Current Price Brief to ILA" could be construed to request legal advice and is subject to the attorney-client privilege. Mr. Gangle and Mr. Schuessler were authorized to represent the DOE before the IPE/ILA. Ms. Egger was not. This document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). The attached three charts, however, are factual and should be disclosed.

* * *

The redacted text of the November 16, 1999 5:01 p.m. e-mail from Greg Thorpe to Alan Burzlaff copied to Christine Suh, Own Olpin, Mary Egger and Butch Gangle could be construed to request legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

* * *

The redacted text of the November 24, 1999 11:43 a.m. e-mail (CBG01100283) from Greg Thorpe to Alan Burzlaff and Butch Gangle and copied to Gary Holcomb, Greg Thorpe, and Mary Egger could be construed to convey legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

* * *

The redacted text of the December 13, 1999 12:34 p.m. e-mail (CBG01100288) from Alan Burzlaff to Greg Thorpe coped to Mary Egger and Butch Gangle re: "Price Window for Stevens Zone Settlement Agreement." does not request nor convey legal advice as it reports on the fact of a "current price window we agreed to with Chevron" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

CBG01100289 is the same document as CBG01100288.

| | |
|---|---|
| 1602 [CBG01100367-68] | The redacted text of the November 18, 1999 11:53 a.m. e-mail (CBG01100367-68) from Butch Gangle to Mary Egger, Greg Thorpe, and Alan Burzlaff copied to Gary Holcomb re: "NSAI conversion methodology meeting in Bakersfield" does not request nor convey legal advice as it reports on the facts of a November 18, 1999 NSAI meeting and is not subject to the |

| | |
|---|---|
| | attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| | * * * |
| | The redacted text of the November 19, 1999 11:05 a.m. e-mail from Greg Thorpe to Butch Gangle, Mary Egger and Alan Burzlaff copied to Gary Holcomb re: same could be construed to convey legal advice and is subject to the attorney-client privilege. |
| | The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. In addition, these documents are relevant to the Government's causation theory. *See* 6/15/07 TR at 10. |
| 1666 | The redacted text of the February 23, 2000 3:16 p.m. e-mail (CDE00307731) from Butch Gangle to Mary Egger re: "Of All Surprises" could be construed to request legal advice and is subject to the attorney-client privilege. This document shows communication between Gangle and Latham about activities with the IPE, that also were conveyed to Ms. Egger. It also shows Gangle advising the ASFE. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.<br><br>The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). |
| 1682 | March 22-23, 2000 e-mail string. The redacted text of the March 22, 2000 6:31 p.m. e-mail (CDE00307246-47) from Greg Thorpe to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, Christine Suh and Owen Olpin re: "letter to krenek" conveys legal advice and is subject to the attorney-client privilege. |

The March 23, 2004 5:44 a.m. e-mail from Mary Egger to Greg Thorpe, Butch Gangle, Alan Burzlaff, Ken Schuessler, Owen Olpin, and Christine Suh re: "letter to krenek" could be construed to convey legal advice and is subject to the attorney-client privilege.

The redacted text of the March 22, 2000 7:34 a.m. e-mail (CDE00307246) from Alan Burzlaff to Mary Egger, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh re: "letter to krenek" does not request nor convey legal advice, as it reports on the "estimated recoverable oil that Chevron is claiming" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The redacted text of the March 23, 2000 10:38 a.m. e-mail reply from Greg Thorpe to Mary Egger, Alan Burzlaff, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh contains legal advice and is subject to the attorney-client privilege.

The March 23, 2000 1:39 p.m. e-mail reply from Mary Egger to Greg Thorpe, Alan Burzlaff, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh arguably conveys and requests legal advice and is subject to the attorney-client privilege, however, the referenced attachment was not produced in this folder.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1699 April 25, 2000 memo from Francis Gangle to Mary Egger and Greg Thorpe re: "SOZ 1994 Equity Studies," transmitting 4 attachments re: same. This document does not request legal advice, as it reports on public documents relevant to the Equity Process Agreement. Attachments 1, 2, and 4 were all sent to Chevron and any privilege was waived, except for the handwritten notes which may be withheld. Attachment 3 (CBG0050319) a February 5, 1998 memo to the IPE from Butch Gangle re: "1998 schedule" is factual, and not subject to the

attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1721 May 19, 2000 e-mail from A. Burzlaff to Greg Thorpe copied to Butch Gangle, Ken Schuessler, and Mary Egger re: "Verification of Capture Analysis in CUSA SOZ Equity Case" together with attachments. CSI004-1053-54 could be construed to request legal advice and is subject to the attorney-client privilege.

CSI0041055-61 are Chevron documents and are not subject to any privilege. CSI0041062-63 are allegedly handwritten notes of A. Burzlaff, but are factual in nature, not privileged, and should be produced.

1725 The text of CBG0040615-16 is a draft letter re: "1994 SOZ Reports"with handwritten notes from Mary Egger to Greg Thorpe, Butch Gangle, and Alan Burzlaff. CBG0040615 was produced, so whatever privilege attached was waived. CBG0040616 could be construed to convey legal advice and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1727 May 25, 2000 fax cover sheet (CBG0040577) from Butch Gangle to Mary Egger, Owen Olpin, and Greg Thorpe re: "16G/17G Inclusion," forwarding three documents provided by Jim Gruber (CBG0040579-85) . The text of the fax cover does not request nor convey legal advice and is not subject to attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

CBG0040579 is an April 11, 1979 letter sent to Chevron and is not privileged. CBG0040580-81 is a April 9, 1979 memo from

R. H. Nelson, Capt. CEC, USN to George S. McIssac, DOE Assistant Secretary re: "Clarification of Letter to Mr. D. L. Bower Regarding Inclusion of Section 16G and 17G Into the Unit Plan Contract." If R. H. Nelson is an attorney, this document is subject to the attorney-client privilege as it conveys legal advice. As CBG0040585 indicates, CBG0040582-84 is the text of a communication about the terms of a proposed 1978 settlement re: "Elk Hills" that the court considers not relevant to the issues in this case. Production of CBG0040580-85 is not required.

1808 August 24, 2000 e-mail (CDE01332934) from Louis Capitanio to Mary Egger with cc: to Gary Latham re: "Response to DOE 8/22 Stevens Equity Letter" with attachment "doe8-23.wpd." This document does not convey legal advice – in fact it states "I could not give any consideration to legal significance of 'final recommendation' since I'm not really too familiar with the agreements and protocols." The document is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1809 The redacted text of the August 24, 2000 10:14 a.m. e-mail (CLC00102286) is the same as 1808. The attached draft letter from Robert Kripowicz to Francis Gangle (CLC00102287) authored by Louis Capitanio, however, arguably could be construed to request legal advice from Ms. Egger and is subject to the attorney-client privilege.

1826 August 29, 2000 e-mail string.

The August 29, 2000 10:42 a.m. e-mail from Arnold Smits to Mary Egger copied to Gary Latham, Louis Capitanio re: "Extension of Time." The text arguably could be construed to request legal advice and is subject to the attorney-client privilege.

* * *

The 1:54 p.m. response from Mary Egger to Arnold Smits and Robert Kripowicz copied to Gary Latham and Louis Capitanio

states that Greg Thorpe is "the DOE EFT lawyer." The text arguably could be construed to request legal advice and is subject to the attorney-client privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1832 Same ruling as 1826.

1835 The redacted text of the September 5, 2000 2:46 p.m. e-mail from Arnold Smits to Mary Egger copied to Louis Capitanio and Gary Latham re: "Supplement to the Protocol for the SOZ and draft letter to Luquatte" does not request nor convey legal advice, as it reports on a September 5, 2002 meeting with Robert Kripowicz and is not subject to the attorney-client privilege.

As to paragraphs 1-3 and paragraph 4 until: "Therefore, I recommend . . . question" that arguably could be construed to request legal advice. The remainder of the text in paragraphs four and five are factual and do not request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

This document, however, is relevant to the issues in this case in that Lou Capitanio appears to be in communication with the "DOE EFT" as well as Gena Cadieux and Mary Egger who the Government states is counsel for the ASFE. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this document. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

* * *

The redacted text of Ms. Egger's 3:05 p.m. reply is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry

| | |
|---|---|
| | [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 1849 | September 11-13, 2000 e-mail string. The redacted text of the September 13, 2000 10:48 a.m. e-mail from Lou Capitanio to Gena Cadieux copied to Arnold Smits, Gary Latham, and Mary Egger re: "Draft Letter Confirming September 7 Protocol Teleconference" does not request nor convey legal advice and is not subject to the attorney-client privilege.<br><br>* * *<br><br>The redacted text of the September 13, 2000 11:01 a.m. reply from Gena Cadieux conveys legal advice and is subject to the attorney-client privilege.<br><br>* * *<br><br>The redacted text of the September 13, 2000 11:22 a.m. e-mail from Lou Capitanio to Gena Cadieux copied to Arnold Smits and Gary Latham does not request nor convey legal advice, as it reports on the fact that Chevron submitted no comment on a NSAI final recommendation and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1881 | The redacted text of the October 10, 2000 fax cover sheet (CME01300526) from Butch Gangle to "DOE Equity Legal Team" copied to Mary Egger, Greg Thorpe, Alan Burzlaff, and Owen Olpin re: "In reply to question on Bowers Memo" does not request nor convey legal advice, as it describes various attachments from 1976 proceedings and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |

The attached April 17, 1976 memo (CME01300527) from R.F. Schlecht re: Section 7 R Evaluation-Godsey-Earlougher, Inc." with attachment, to 17 recipients who were asked to provide a technical review the Godsey-Earlougher evaluation, none of which appear to be attorneys. CME01300528 is March 31, 1976 comparative analysis of Section 7R Reserves that is factual. CME01300529 is the first page of a document prepared by Godsey-Earlougher, Inc. "Department of Navy Petroleum and Oil Shale Reserves-Evaluation of Stevens Sand Reservoir . . . as of March 1, 1976." None of these documents request nor convey legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

The redacted text of CME01300530-31, a letter to George G. Dowd, Captain JAGG, USN from an engineering firm, "Godsley-Earlougher, Inc." does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

CME01300532-34 is a report "Oil In Place Determination Section 7R, Tule Elk Oil Field, Kern County, California" by Richard L. Whiting, Consulting, Petroleum, Natural Gas and Geological Engineers, P.O. Drawer B, College Station, Texas 77841. The requestor of the document is not clear, but the document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

1884 Same ruling as 1881.

1889 October 12, 2000 fax cover memo from Alan Burzlaff to Greg Thorpe, Molly White, Mary Egger, Butch Gangle, and Owen Olpin (CBG0051006) does not request nor convey legal advice, but rather discusses a conference call re: the CUSA's SOZ technical case. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.")

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The attached March 14, 2000 Doug Hess USOZ Sectors Chart (CBG0051007-08) text (CBG0051009-10) is a Chevron document (*see* CBG0051006 - "attached as a copy of a page from CUSA's [Chevron's] equity spreadsheet . . . the attached CUSA materials presented to the IPE . . ."). These documents are in the public domain and do not request or convey legal advice. Therefore, CBG0051007-10 are not subject to the attorney-client privilege.

1894 October 12, 2000 e-mail string.

The redacted text of the October 12, 2000 1:11 p.m. e-mail (CME01102747-48) from Greg Thorpe to Alan Burzlaff copied to Butch Gangle re: "SOZ" does not request nor convey legal advice as it requests clarification regarding technical issues and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

The redacted text of the October 12, 2000 3:18 p.m. e-mail (CME01102747) from Alan Burzlaff to Greg Thorpe copied to Butch Gangle, Mary Egger, and M. White re: "SOZ" does not request legal advice and is not subject to the attorney-client privilege.

The redacted text of the October 12, 2000 3:38 p.m. e-mail (CME03302746-47) from Greg Thorpe to Alan Burzlaff copied to Butch Gangle, Mary Egger, Owen Olpin, and Molly White could be construed to convey legal advice and is subject to the attorney-client privilege.

| | |
|---|---|
| | The redacted text of the October 12, 2000 7:47 p.m. e-mail (CME01102746) from Alan Burzlaff to Greg Thorpe copied to Mary Egger, Butch Gangle, Owen Olpin, and Molly White re: "SOZ" does not request legal advice, as it discusses the technical significance of "Chevron's 166/176 Methodology" and is not subject to the attorney-client privilege.<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 1897 | Same ruling as 1894. |
| 1898 | Same ruling as 1889. |
| 1899 | The redacted text of the October 17, 2000 1:27 p.m. e-mail from Gary Latham to Robert Kripowicz copied to Mary Egger and Arnold Smits re: "Protocol on IPE Communications" does not request legal advice, except for the last sentence of the first paragraph which is directed to Ms. Egger. The remainder of the text of the first paragraph, however, is highly relevant to the issues in this case providing Mr. Latham's explanation to ASFE Kripowicz of Mr. Latham's understanding and views about the *ex parte* communications barred by Administrative Order 96-01. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>This document appears to evidence past communications between Mr. Latham and the IPE (NSAI)If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Assuming *arguendo*, Ms. Egger's receipt of this document and question directed to her is subject to the attorney-client privilege, the court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). |

| | |
|---|---|
| 1902 | October 17-19, 2000 e-mail string. The reacted text of the October 17, 2000 1:27 p.m. e-mail from Gary Latham to Robert Kripowicz copied to Mary Egger and Arnold Smits re: "Protocol on IPE communications. Same ruling as 1899.<br><br>* * *<br><br>The October 19, 2000 4:05 p.m. reply e-mail from Mary Egger to Gary Latham and Richard Kripowicz copied to Arnold Smits re: "Protocol on IPE communications" conveys legal advice and is subject to the attorney-client privilege. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of all of the e-mails in folder 1902. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). |
| 1905 | The redacted text of the October 20, 2000 7:50 a.m. e-mail reply from Robert Kripowicz to Mary Egger and Gary Latham re: "Protocol on IPE Communications" in response to the October 19, 2000 4:05 p.m. e-mail (*see* 1902) does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 2049 | January 19, 2001 12:32 p.m. e-mail from Alan Burzlaff to Mary Egger and Greg Thorpe copied to Ken Schuessler, Butch Gangle, and Molly White re: "Chevron's response" arguably could be construed to request legal advice as it comments on Chevron's legal filings and is subject to the attorney-client privilege. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2058 | The redacted text of the January 29, 2001 10:06 a.m. e-mail from Butch Gangle to Mary Egger, Gary Latham, Louis Capitanio, Arnold Smits, Greg Thorpe, and Alan Burzlaff re: "Comments On Talking Points" arguably could be construed to request legal advice and is subject to the attorney-client privilege.<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process |

Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

2111 The redacted text of the March 13, 2001 11:50 a.m. e-mail from Gary Latham to Mary Egger copied to Arnold Smits re: "Time Periods for preparation of preliminary and final SOZ equity decisions" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2130 The redacted text of the May 3, 2001 8:08 a.m. e-mail (CDE00304468-69) from Butch Gangle to Mary Egger re: "SOZ Equity Update Report" does not request nor convey legal advice, as it reports on a April 16, 2001 meeting in Golden with STA, a meeting on April 17, 2001 with DOE engineers in Bakersfield, where Greg Thorpe was in attendance and a follow-on "regularly scheduled conference call" with IPE "to discuss . . . progress on the SOZ equity finalization," and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2142 The reacted text of the June 20, 2001 3:04 p.m. e-mail from Arnold Smits to Gena Cadieux coped to Gary Latham re: "Comparison of the Effects of Different Gas Conversion Methods on Equity" arguably could be construed to request legal advice and is subject to the attorney-client privilege. The attached chart, however, is factual and not privileged.

2152 The redacted text of the June 28, 2004 2:04 p.m. e-mail from Gary Latham to Robert Kripowicz copied to Mary Egger, Gina

Cadieux, and Arnold Smits re: "Stevens Zone equity - Basis for Conversion from natural gas to Barrels of oil equivalent (BOE)" arguably could be construed to convey legal advice and is subject to the attorney-client privilege.

2195 Power point slide presentation prepared by Butch Gangle and presented on November 6, 2001 to DOE Equity Process Team. The majority of this document (CBG0124105-19, 21) are technical bullets or graphs re: "Shallow Oil Zone, DOE Modeling Effort, NSAI Modeling Effort, IPE (NSAI) Interim Deliverables, Streamlining The Equity Process" and do not convey nor request legal advice and are not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The slide "Legal Issues" (CGB01204120) arguably could be construed to request legal advice but the log does not reflect that this information was communicated to an attorney represents the DOE EFT.

2196 The November 7, 2001 12:38 a.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle and Ken Schuessler confirms that Ms. Egger was present at the November 6, 2001 meeting. Her role at that meeting is central to the issues before the court (this document, however, implies the author was Burzlaff not Gangle, as is represented in the text). The text of this e-mail does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). Moreover, if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2260 April 26-27, 2002 e-mail string.

The April 26, 2002 4:09 p.m. e-mail from Gena Cadieux to Gary Latham re: "questions, finally." This e-mail arguably convey legal advice regarding Chevron's comments on the Preliminary IPE Decision and is subject to the attorney-client privilege.

* * *

The April 27, 2002 7:13 a.m. e-mail from Gary Latham to Gena Cadieux in response, copied to Arnold Smits does not request nor convey legal advice, as it re-states the 4 cases set forth by the IPE re: "depletion scenarios for the 26R reservoir" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2261 April 27, 2002 10:04 a.m. e-mail from Gary Latham to Gena Cadieux copied to Arnold Smits re: "26R abandonment pressure." This document does not request nor convey legal advice and is subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). In addition, this document is relevant to Chevron's causation theory. *See* 6/15/07 TR at 10. Moreover, if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2265 May 1, 2002 e-mail string. The redacted text of the first four paragraphs of the May 1, 2002 12:54 p.m. e-mail from Alan Burzlaff to Butch Gangle copied to Kevin Beacon and Ken Schuessler re: "SOZ Equity Interim Deliverable Process" does not request nor convey legal advice, as it reports on an April 30, 2002 meeting with the IPE and Chevron and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). The text "1. Any future . . . May 31st (simulation), respectively" arguably could be construed to request legal advice via the fact this was subsequently forwarded by Butch Gangle to Mary Egger and Greg Thorpe with a request for advice.

* * *

The redacted text of the May 1, 2002 10:58 a.m. e-mail from Butch Gangle to Mary Egger, Greg Thorpe copied to Alan Burzlaff and Ken Schuessler re: "SOZ Equity Interim Deliverable Process" does not request nor convey legal advice as it discussed a April 30, 2002 meeting with the IPE and Chevron. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2266 May 8, 2002 e-mail string. The May 1, 2002 8:32 a.m. e-mail from Gena Cadieux to Gary Latham copied to Arnold Smits re: "aquifer encroachment" arguably could be construed to convey legal advice and is subject to the attorney-client privilege.

The May 8, 2002 1:15 p.m. response from Gary Latham to Gena Cadieux and Arnold Smits. The first and second paragraphs forward an excerpt from the NSAI "Special Report" and is not subject to any privilege, except for text "that we . . . far," that arguably could be construed to request legal advice and is subject to the attorney-client privilege. The third paragraph also arguably requests legal advice and is subject to the attorney-client privilege.

2267 May 8, 2002 e-mail string. The May 8, 2002 8:43 a.m. e-mail from Gena Cadieux to Gary Latham re: "horizontal well case" arguably conveys legal advice and is subject to the attorney-client privilege.

The May 8, 2002 3:29 p.m. reply e-mail from Gary Latham to Gena Cadieux copied to Arnold Smits does not request nor convey legal advice and is not subject to the attorney-client privilege as it summarizes Chevron's comments on the NSAI final recommendation. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper

*ex parte* communication prohibited by the Equity Process Agreement.

2319 The redacted text of the August 27, 2002 1:31 p.m. e-mail from Butch Gangle to Mary Egger re: "Heads Up" does not request nor convey legal advice, as it discusses Burzlaff's report on the IPE's preliminary USOZ simulation model for the period 1919-1997 and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2323 The redacted text of the October 3, 2002 5:01 p.m. e-mail from Gary Latham to Mike Smith copied to Mary Egger, Louis Capitanio, Arnold Smits, and Gena Cadieux re: "Provisional Recommendation on Equity In Elk Hills Shallow Oil Zone" does not request nor convey legal advice, as it summarizes the IPE decision announced at a public meeting on October 1, 2002 and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). This document, however, is relevant to the Government's causation theory. *See* 6/15/07 TR at 10.

Moreover, If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2327 October 3, 2002 e-mail string. The redacted text of the October 3, 2002 7:34 a.m. e-mail from Butch Gangle to Mary Egger copied to Alan Burzlaff, Ken Schuessler re: "Somewhat Good News" does not request nor convey legal advice, as it summarizes an October 1, 2002 public meeting of the NSAI at which the NSAI announced a provisional recommendation and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one

| | |
|---|---|
| | that was made . . . for the purpose of obtaining legal advice or services.”). This document is also relevant to the Government’s causation theory. *See* 6/15/07 TR at 10.<br><br>Moreover, if any of the recipients functioned as a member of the “DOE field equity technical team,” this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2340 | November 13, 2002 e-mail string. The redacted text of the November 13, 2002 10:26 a.m. e-mail from Gary Latham to Mary Egger copied to Arnold Smits re: “Effective Date for Purposes of determining financial adjustments between Chevron Texaco and DOE” does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (“[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.”).<br><br>The redacted text of the November 13, 2002 10:36 a.m. reply from Mary Egger arguably could be construed to convey legal advice and is subject to the attorney-client privilege. |
| 2341 | Same ruling as 2340 |
| 2351 | November 18, 2002 e-mail string. The redacted text of the November 18, 2002 4:38 p.m. e-mail from Mary Egger to Mike Smith and Gary Latham coped to Lee Otis and Eric Fygi re: “Chevron challenge to final ASFE Stevens Zone” does not request nor convey legal advice, as it reports on Chevron’s notice of appeal and schedule and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (“[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.”).<br><br>* * *<br><br>The redacted text of the November 18, 2002 6:02 p.m. e-mail from Gary Latham to Mary Egger does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) (“[T]he central inquiry [is] whether the |

| | |
|---|---|
| | communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 2352 | Same ruling as 2351 |
| 2356 | Same ruling as 2351 (Note that the first paragraph was produced here.). |
| 2391 | The redacted text of the January 13, 2003 e-mail from Butch Gangle to Alan Burzlaff copied to Mary Egger re: "Petrophysics Question" arguably could be construed to request legal advice and is not subject to the attorney-client privilege.<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2392 | January 13, 2003 e-mail memo from Gary Latham to Mary Egger, Isaiah Smith, Beth Kelly, Butch Gangle, Louis Capitanio re: "FOAI [sic] Request from Akin et al." does not request or convey legal advice, but reflects Mr. Latham's impressions of the scope of Chevron's FOIA request.<br><br>The attached January 9, 2003 memo marked "Privileged and Confidential" arguably could be construed to request legal advice. The document references the existence of a "Secret Report" not produced to the court. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this memo. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000). |
| 2398 | Same ruling as 1905. |
| 2711 | May 28, 2003 e-mail string. The redacted text of the May 28, 2003 5:05 a.m. e-mail from Butch Gangle to Mary Egger and Alan Burzlaff re: "SOZ Comments Due Tomorrow" does not request nor convey legal advice as it discusses scheduling matters re: "NSAI SOZ Provisional Recommendations" and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |

The deleted text of the May 28, 2003 10:37 a.m. e-mail from Alan Burzlaff to Butch Gangle re: "SOZ Comments Due Tomorrow" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2994 The redacted text of the July 21, 1998 9:51 a.m. e-mail (CBG0090110-11) from Wayne Kauffman to Mary Egger copied to Butch Gangle, Jim Murphy, Greg Thorpe, and Jay Williams re: "CUSA Proposed Communications Protocol draft" could be construed to request legal advice and is subject to the attorney-client privilege. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The court has determined that the misconduct exception to the attorney-client privilege doctrine requires production of this e-mail. *See In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 8078 (Fed. Cir. 2000).

The July 21, 1998 9:57 a.m. message flag and status are not privileged.

3201 The redacted text of the May 6, 1996 6:04 p.m. e-mail (CME01300840) from Ernest Hunter to Jay Willis, Wayne Kauffman, Mary Egger, and Gary Latham does not request legal advice, but for the text "Mary will get . . . me." Except for the noted text, this document is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

CMEE01600838-39 is a separate document created May 7, 1996 by Navy Petroleum Reserves called "Discussion Paper for Divcat . . . nt-Related Owner Issues Meeting with Chevron." The meeting was to be held at DC DOE HQ on May 10, 1996 with the following attendees: for DOE: Cpt. Hunter; Mary Egger; Gary

Latham; Wayne Kauffman; Alan Burzlaff; and for Chevron: Mike Stay; Cynthia Giumarra; Jim Brady; Norm Stone; and possibly Jack Smith. This document lists 16 "Assumptions for the Equity Finalization Process Team" and 13 "Guiding Principles for Process." This document was re-faxed from SI International on May 3, 2004, together with the May 6, 1996 e-mail discussed above to unknown recipients, since the fax cover sheet was not enclosed. The document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

3339 November 15, 2004 3:36 p.m. e-mail from Butch Gangle to Gena Cadieux copied to Alan Burzlaff, Greg Thorpe re: "Stevens CF Update." This e-mail does not request nor convey legal advice, as it responds to a technical question from Ms. Cadieux and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The document is also relevant to the Government's causation theory. *See* 6/15/07 TR at 10.

3423 May 11, 2005 note to NSAI allegedly authored by Ms. Egger and sent to Gary Latham. The log description does not match this document as it appears to be been prepared for the NSAI. The document does not request nor convey legal advice and is not subject to the attorney client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

| | |
|---|---|
| | If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 3715 | February 22, 2006 4:04 p.m. e-mail from Gena Cadieux to Arnold Smits, Gary Latham copied to Mary Egger re: "Building blocks for the decision." This document arguably could be construed to convey legal advice and is subject to the attorney-client privilege. |
| 3767 | February 22, 2006-March 10, 2006 e-mail string.<br><br>The February 22, 2006 4:04 p.m. e-mail. Same ruling as 3715.<br><br>The February 23, 2006 3:42 p.m. e-mail from Arnold Smits to Gena Cadieux copied to Gary Latham re: "Building blocks for the decision" arguably could be construed to request legal advice is subject to the attorney-client privilege.<br><br>The March 10, 2006 3:51 p.m. and March 10, 2006 4:26 p.m. e-mails do not request nor convey legal advice and are not subject to the attorney-client privilege. The text, however, of all of the above are irrelevant to the issues in this case. |
| 3779 | March 10-13, 2006 e-mail string.<br><br>The March 10, 2006 9:23 a.m. e-mail from Mary Egger to Gary Latham, Arnold Smits, Ben Lardizabal, Beth Kelly, Paul Michael re: "Telecom with NSAI," with legend "Attorney-Client Communications/Attorney Work Product Privileged and Confidential." This document arguably could be construed to convey legal advice regarding the expiration of the IPE contract and concerns about suit from Chevron. The document is relevant, however, in that Ms. Egger characterizes Gary Latham as the "DOE HQ Team Leader" (CDE00706987) and that sentence should be produced.<br><br>* * *<br><br>The March 10, 2006 e-mail from Gary Latham to Mary Egger, Arnold Smits, Ben Lardizabal, copied to Beth Kelly, Paul Michael re: "Telecom with NSAI" does not request nor convey legal advice and is not subject to the attorney-client privilege. |

* * *

The March 13, 2006 8:17 a.m. e-mail reply from Mary Egger to Gary Latham, Arnold Smits, Ben Lardizabal, Beth Kelly, Paul Michael re: "Telecom with NSAI" does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

* * *

The March 13, 2006 9:19 am reply from Gary Latham to Mary Egger copied to Arnold Smits does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

3820 "Draft-3/26/06 (GVL) "III A. Gaps in the Data 3/26/06)." On the face of this document, it does not request nor convey legal advice. The log, however, represents that the document contains "[d]raft comments to *a* DOE attorney . . . reflecting confidential attorney client communication[.]" (emphasis added). Therefore, this document arguably could be construed to request or convey legal advice and is subject to the attorney-client privilege.

4347 October 17, 2006 "Draft DOE Equity Finalization Team Comments On Accuracy of OHA Conversion Factor Calculation Case No. TEA-0001," prepared by "DOE EFT and counsel." This document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

4348 October 17, 2006 Draft.002 of document 4347.

| | |
|---|---|
| 4349 | October 17, 2006 Draft.002 of document 4347, with red-line edits, which the log alleges were made by unnamed members of the "EFT staff." This document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4350 | October 17, 2006 "Draft DOE Equity Finalization Team [Technical] Comments On Accuracy of OHA Conversion Factor Calculation Case No. TEA-0001." Same ruling as 4347. |
| 4354 | Undated "DOE Written Rebuttal of CUSA Report and Presentation on the Shallow Oil Zone Detailed Outline," with staff assignments designated. On its face, this document does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4357 | The redacted text is of a draft October 17, 2006 letter to Richard Krenek (IPE) from Butch Gamble copied to Norm Stone, Gary Latham, Alan Burzlaff and blind-copied to Mary Egger and Greg Thorpe does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").<br><br>If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 4361 | January 22, 1999 "DOE Technical Response to Chevron Technical Report on Capture Methodology," with red-line edits authored by "DOE EFT (Gangle et al.)." This document does not request nor convey legal advice and is not subject to the attorney-client privilege. |
| 4382 | Same ruling as 1549. |
| 4384 | The redacted text of the October 17, 2006 fax cover sheet from Butch Gangle to "DOE Equity Team" copied to Mary Egger, Greg Thorpe and Alan Burzlaff re: "Carneros MER (1/12/93)" is |

identical to the fax cover sheet in 1556, except for the date. This document does not request nor convey legal advice as it forwards a Chevron MER response dated 1/12/93 and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

4385 The redacted text of a October 17, 2006 fax cover sheet. This document is the same as the fax cover sheet in 14. The fax cover sheet from Butch Gangle to the "DOE Equity Team," re: "SOZ Conversion Research," copied to Mary Egger, Greg Thorpe and Alan Burzlaff, does not request not convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

4403 The redacted text of a October 17, 2006 memo from Butch Gangle to "DOE SOZ Equity Legal Team" re: "Inclusion under UPC Sec. 15(b) vs. A&S agreement Sec. 4(d) Part II" does not request not convey legal advice, but forwards old correspondence from the Acting Secretary of the Navy to the U.S. Attorney General, and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services.").

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 4636 | Draft portion of DOE EFT document re. "4.16 USOZ Reserves." On its face, this document does not request nor convey legal advice. The log represents this document as being prepared "for review by counsel." Therefore, this document arguably could be construed to request or convey legal advice and is subject to the attorney-client privilege. |
| 4651 | Draft partial DOE "Response to [NSAI] Provisional Recommendation of Equity Participation For the Stevens Zone,"with edits. This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4652 | Draft (different than 4651) DOE "Response to [NSAI] Provisional Recommendation of Equity Participation For the Stevens Zone," with edits. This undated document alleged to have been authored by Butch Gangle on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4655 | Draft portion of DOE EFT document re: "4.1 Issue 1: High Abandonment Pressures." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4656 | Draft portion of DOE EFT document re: "4.11 Issue 11: Water Saturations form Oil Base Core." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |

| | |
|---|---|
| 4657 | Draft portion of DOE EFT document re. "4.12 Issue 12: Sand Counting Using Mud Logs." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4658 | Draft portion of DOE EFT document re. "4.2 Issue 2: Oil Migration, 26R Sand to 31S C/D Shales." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4659 | Draft portion of DOE EFT document re. "4.7 Issue 7: 26 R Net Sand Thickness." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4660 | Draft portion of DOE EFT document re: "4.8 Issue 8: W31S Reserves." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4661 | This document is undated with unknown author re: "DOE EFT views on 'Protocol'" does not request nor convey legal advice on its face. It is represented, however, as being prepared for review by Mary Egger, an attorney. Therefore, this document arguably could be construed to request or convey legal advice and is subject to the attorney-client privilege. |
| 4676 | Draft document, "31S Shales Pool Abandonment Pressure," with edits. This undated document, alleged to have been authored by |

| | |
|---|---|
| | Butch Gangle, on its face does not request nor convey legal advice and is not subject to neither the attorney-client privilege. |
| 4681 | "Comments on CUSA's Rebuttal to NSAI's Provisional Stevens Equity Report Material Balance Water Influx." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4688 | Draft portion of DOE EFT document re: "4.9 Issue 9: T&N Sands Reserves." This undated document, alleged to have been authored by Butch Gangle, on its face does not request nor convey legal advice and is not subject to the attorney-client privilege. *See Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 805 (Fed. Cir. 2000) ("[T]he central inquiry [is] whether the communication was one that was made . . . for the purpose of obtaining legal advice or services."). |
| 4689 | Same ruling as 4651. |
| 4690 | Same ruling as 4652. |
| 4773 | Undated draft letter to Laurence Rosenberg, Jones Day from Jeffrey Jarrett, ASFE. This document, authored by Mr. Jarrett, in response to Mr. Rosenberg's July 14, 2006 letter, re: June 5, 2006 Gangle letter re: SOZ, does not request nor convey legal advice and is not subject to the attorney-client privilege. |
| 4826 | Undated document (but prepared after this case was filed) with the legend "Privileged and Confidential" and titled "Talking Points Call with Fred Sewell." This document allegedly was prepared by unidentified "DOE attorneys." If an *ex parte* contact, initiated by the ASFE, with the IPE violates the Equity Process Agreement, this document may evidence of the fact that such a contact may have occurred. If so, this document may also bear on the misconduct exception issue. At this juncture, the court believes the log information provides Plaintiff with the ability to explore this topic in deposition with any of the ASFE's who have served since this suit was filed. If an ASFE is identified who recalls that he/she initiated an *ex parte* telephone call with Fred Sewell, the court would like that witness's knowledge to be exhausted, before the court will rule on whether disclosure of document 4826, is required under the misconduct exception. |

| | |
|---|---|
| 5082 | May 29, 1998 memo from Alan Burzlaff, Ken Schuessler to Mary Egger re: "Proposed Joint [Technical] Instruction to NSAI," with hand edits made by Greg Thorpe. The memo arguably could be construed to request legal advice and is subject to the attorney-client privilege. The handwritten notes of Mr. Thorpe are subject to the attorney-client privilege. |

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

# In the United States Court of Federal Claims

No. 04-1365C
Filed: August 28, 2008*

| | |
|---|---|
| CHEVRON U.S.A., INC., | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

**FINAL ORDER REGARDING DOCUMENTS THE GOVERNMENT ASSERTS ARE SUBJECT TO THE DELIBERATIVE PROCESS PRIVILEGE.**

| Documents Withheld | Ruling |
|---|---|
| 130 (CLC001 3921-40) [Dry Gas Zone] | July 23, 1997 cover memo from Patricia F. Godley (ASFE), to: Gena Cadieux; Louis Capitanio; Mary Egger; Gary Latham; and Arnold Smits requesting review and comment on an attached Draft Preliminary Decision on Final Equity for the Dry Gas Zone. The draft Preliminary Decision was redacted in its entirety. The handwritten notes on pages 2-3, 5-12, and 14-15 of the Draft Preliminary Decision, represented as those of Gary Latham, are pre-decisional, but editorial, except for notes on pages 14-15, which are deliberative. The text of: "Section I. Background, Authority, and Procedural History;" "Section II. Implementation of the NDA Act," *i.e.*, CLC00103924-31, is factual. In addition, the text of CLC00103932-33 through "considers appropriate" is factual, including "A. NSAI's Final Recommendation;" "B. DOE Comments on NSAI's Final Recommendation;" "C. Chevron's Comments on NSAI's Final Recommendation." The Fygi Declaration states that the redacted portion of this Draft |

* This Final Order was issued on January 28, 2008, together with *Chevron U.S.A., Inc*. v. *United States*, 80 Fed. Cl. 340 (2008), but placed under seal.

| | |
|---|---|
| | Preliminary Decision was "prepared by the . . . ASFE and distributed by her to her advisors for review and comment." Fygi Decl. ¶ 10 at 5. Aside from the fact that the court seriously doubts the ASFE prepared this draft herself, more relevant is the fact that the Equity Process Agreement absolutely prohibits *ex parte* communications between the ASFE and "the DOE field equity technical team concerning equity redetermination-related matters." Compl. Ex. B.2 ¶ B.4. In this document, Ms. Egger is functioning as an attorney for the ASFE. Mr. Latham's marginal comments also evidence that he is providing technical advice to the AFSE. The Government does not contest that Mr. Latham (Geophysicist), Mr. Capitanio (Petroleum Engineer), and Mr. Smits (Petroleum Engineer) were DOE employees with technical backgrounds. If any one of them or Ms. Egger functioned as members of "the DOE field equity technical team." *See*, *e.g.*, 255, 543, 889 (CBG01101894) this document may evidence an improper *ex parte* communication.<br><br>The remainder of the text "IV Decision" and V Conclusion" is pre-decisional, deliberative, and subject to the deliberative process privilege.<br><br>The court has balanced Chevron's request to have the documents in this folder disclosed in part (Sections I-III) to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 9. |
| 132 (CDE003 7512)<br>[Dry Gas Zone] | August 29, 1997 e-mail from Mary Egger to Gary Latham, Louis Capitanio, copied to Gena Cadieux re: "Dry Gas Zone Preliminary Decision."<br><br>This document is pre-decisional and deliberative, as it contains a potential recommendation re: the "Cobb revision" language in the Preliminary Decision to be presented to Patricia Godley (ASFE). The third line of the first paragraph, however, describes actions taken by Chevron that are factual and not privileged. The second redacted paragraph is pre-decisional, deliberative, and subject to |

| | |
|---|---|
| | the deliberative process privilege. The third paragraph is pre-decisional, but seeks to verify factual information from technical staff and is not privileged.<br><br>This document also reflects Ms. Egger requesting the date of a meeting of the "Engineering Committee" or "Operating Committee" and is relevant to whether Mr. Latham and/or Mr. Capitanio may have functioned as members of the "DOE field equity technical team." *See*, *e.g.*, 255 543, 889(CBG01101894).<br><br>The court has balanced Chevron's request to have this document produced in part to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F. 3d at 1307; *see also* July 24, 2007 Chevron Status Report at 9. |
| 144<br>CME00901890-4<br>[Carneros Zone] | September 29, 1997 cover memo from Mary Egger to ASFE re: "Carneros Zone – Additional Inclusion of Lands," attaching a draft document prepared by Gregory B. Thorpe.<br><br>The cover memo (CME00901890) is pre-decisional, but factual and not subject to the deliberative process privilege.<br><br>The attached draft document (CME00901891-93) is pre-decisional, but only deliberative in part. Since Mr. Thorpe (O'Melveny & Meyers) was counsel to the DOE Equity Team, why did Ms. Egger, who was counsel to the ASFE receive this document. *See* May 9, 2007 TR at 16.<br><br>The text of the document CME0090191 "Ideally . . ." through CME00901893 "consultant" is pre-decisional, deliberative, and subject to the deliberative process privilege. The text on CME00901892 from "additional Carneros Formations" outline through the fourth paragraph "regarding this issue" is factual and should be sufficient to determine whether an improper *ex parte* communication may have occurred. |
| 159<br>CDE00303616 | March 9, 1998 e-mail string between Mary Egger, Gary Latham, and Dobie Langenkamp (Director, Naval Petroleum and Oil Shale Reserves) re: "Opportunity to reply to Stevens rebuttals." |

| | |
|---|---|
| | The redacted portions of the March 9, 1998 12:52 p.m. e-mail from Dobie Langenkamp to Gary Latham and Mary Egger re: "Opportunity to reply to Stevens rebuttals" discussing amending the protocol are pre-decisional, deliberative, and subject to the deliberative process privilege.<br><br>The 4:12 p.m. e-mail from Mary Egger to Gary Latham discusses *ex parte* prohibitions in the Equity Process Agreement and Ms. Egger's view of them, which are directly at issue in this case.<br><br>The court has balanced Chevron's request to have the text of these e-mails produced in their entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest to protect "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 10. |
| 161<br>CDE00306990-1 | Draft April 1998 letter from Patricia Godley [ASFE] to Mr. Carnie R. Block, Vice President, Western Basins Group, with red-line notations. This folder was not listed in the Government's September 4, 2007 Memorandum of Law in Support of Its Deliberative-Process Privilege Claims but was asserted in the Fygi Declaration. *See* Fygi Decl. at 38.<br><br>This document is pre-decisional, deliberative, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 167 (CME003 1825–27)<br>[Stevens Zone] | April 28, 1998 fax cover sheet and memo (CME00301825) from Gary Latham to Pat Godley (ASFE)/Mary Egger (CME00301826) and confirmation fax (CME00301827) re: "Status of NSAI planning for response to comments on their provisional Stevens equity recommendation – April 28, 1998." This April 28, 1998 memo was authored by Gary Latham and is marked "Privileged and Confidential."<br><br>The memo is pre-decisional, but the heading and first paragraph are factual. The text of Item 1 "NSAI . . . on the table," is factual. The balance of the text "I wonder . . . as possible." is deliberative. The text of Item 2 is factual. The text of Item 3 is deliberative. If Gary Latham (*see*, *e.g.*, 255, 543, 889 (CBG01101894)) or Ms. Egger functioned as a member of "the DOE field equity technical team," |

which this document may help establish, then it also evidences an improper *ex parte* communication.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

178 (CAS002 734-37) [Elk Hills]

July 27, 1998 fax cover sheet from Mary Egger to Patricia Godley (ASFE) with memo from Mary Egger and Pat Godley (ASFE) to Bob Kripowitz (PDASFE), dated July 27, 1998, together with a two page document. The Fygi Declaration asserts deliberative process privilege regarding both. *See* Fygi Decl. ¶ 13 at 14-15.

The cover sheet (CAS0020737) is pre-decisional, but the message on the cover sheet "Re: DOE Communications Protocol . . . Chevron draft," conveys factual information about an attached Chevron document and is not privileged. The balance of the message is pre-decisional, deliberative, and subject to the deliberative process privilege.

The first paragraph of the July 27, 1998 memo (CAS0020734) and first paragraph of the attached draft (CAS0020735), marked "Personal and Confidential Attorney-Client Communication," conveys the fact that prior to this date Chevron and the Government had concerns about "certain aspects of communications relating to the equity finalization process." This is factual information relevant to whether improper *ex parte* communications took place and the parties' knowledge of same and should be produced. The second paragraph (CAS0020734), "The Chevron draft . . ." is pre-decisional and deliberative. The third paragraph "If you have . . . otherwise from you" is factual. The fourth bolded paragraph "Incidentally . . . timely designation." is factual. Therefore, only paragraph 2 of CAS0020734 is subject to the deliberative process privilege and the rest of CAS0020734 should be produced.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting

| | |
|---|---|
| | "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 10.<br><br>CAS0020735-36 is a draft memorandum from O'Melveny & Meyers. If O'Melveny was counsel to the DOE Equity Team, the issue is why Ms. Egger received this document since she was counsel to the ASFE. Production of the first sentence of CAS0020735, however, should be sufficient to determine whether an improper *ex parte* communication may have occurred, without revealing any deliberative content. |
| 210 (CDE010 1793)<br>[Stevens Zone] | E-mail string, dated February 1, 1999 to and from the ASFE, James Gruber/Gary Latham copied to Mary Egger and Arnold Smits re: "Equity Legal issue-oil/gas equivalence." The Fygi Declaration asserts deliberative process privilege over redacted information in three e-mails. *See* Fygi Decl. ¶ 14 at 15-17.<br><br>The redactions on these e-mails concern communications that are pre-decisional, but the first four paragraphs are factual as they explain how Chevron calculated the technical conversion factor. The court discounts Mr. Fygi's prediction that "[r]eleasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing." *Id.* ¶ 14 at 17. Moreover, the technical nature of this information is far removed from "frank and uninhibited [policy] advice." *Id.* The paragraph after the 2/1/99 separator is not deliberative. The paragraphs beginning "I then took . . ." and "During our last . . ." are factual, but contain some deliberative content, and are subject to the deliberative process privilege. If Mr. Latham (*see e.g.*, 255, 543, 889 (CBG01101894), Mr. James Gruber, or Ms. Egger functioned as members of the "DOE field equity technical team," however, this document evidences an improper *ex parte* contact. Moreover, this text may be relevant to why improper *ex parte* communications may have taken place, as it discusses the specific dollar amount at issue to DOE.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and |

| | |
|---|---|
| | recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 10. |
| 240 (CME016 2750-53) [Stevens Zone] | August 19, 1999 e-mail from Louis Capitanio to Robert Kripowicz (ASFE) copied to Gary Latham and Arnold Smits (CME01602750) re: "Critical Data and Decline Curves." This document is pre-decisional, but deliberative only in part. The text "In our . . . is attached" is factual.<br><br>The attached August 19, 1999 memo from Louis Capitanio to Robert Kripowicz (CMEO1602751-52) also is pre-decisional, but deliberative, only in part as it discusses technical information that Mr. Capitanio considered to be "Critical Data." The court discounts Mr. Fygi's prediction that "[r]eleasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing." *Id.* ¶ 14 at 17. Moreover, the technical nature of this information is far removed from "frank and uninhibited [policy] advice." *Id.* All the bold text on CME01602751 is deliberative, except for "incremental production vs. accelerated production." The remainder of CME01602751 and CME01602752 is factual. If Mr. Capitanio, Gary Latham (*see e.g.*, 255, 543, 889 (CBG01101894), and/or Arnold Smits functioned as a member of the "DOE field equity technical team," however, this document evidences an improper *ex parte* contact.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 10-11. |
| 242 CFO00101819-27 | Two sets of handwritten notes – both sets are four pages in length. The first set, dated August 25, 1999, authored by Robert Kripowicz and reflects views about a meeting with the IPE (Scott Frost, Vicki Allen, and Rick Krenek), including a note about a September 8, 1999 meeting. The Fygi Declaration asserts deliberative process privilege regarding these notes. *See* Fygi Decl. ¶ 33 at 38. |

| | |
|---|---|
| | The second set of notes is not dated, but may reflect events at the August 25, 1999 meeting with NSAI on 8-25-99, regarding cut-off issue and decision." These notes are pre-decisional, deliberative, and subject to the deliberative process privilege.<br><br>The notes on bullet 2 "IPE Input" on CF000101827 under the DOE heading that discuss whether data used by the IPE was "improper." The Chevron bullet 2 "Protocol" appears to be relevant to improper *ex parte* communications. The court has balanced Chevron's request to have this document produced to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need only for the notes on CF000101827 that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 11. |
| 243<br>CFO00101828-38<br>[Stevens Zone] | Handwritten notes of August 25, 1999 meeting regarding Stevens Zone Equity Data Cutoff Issue, consisting of 10 pages, represented as authored by Gena Cadieux. The Fygi Declaration asserts deliberative process privilege regarding these notes. *See* Fygi Decl. ¶ 33 at 38.<br><br>These notes are pre-decisional, deliberative, and subject to the deliberative process privilege. With respect to CF000101830, the Equity Process Agreement prohibits "equity-related communications or meetings with the Equity IPE . . . by an owner (including its agents and contractors without the participation or opportunity to participate by the other owner." *See* Compl. Ex. B ¶ A.2 incorporating Administrative Order No. 96-01 into the Equity Process Agreement.<br><br>If Chevron can establish by Affidavit that it did not have the opportunity to participate in the referenced August 25, 1999 telephone conference with the IPE, the court will reconsider this ruling, as it may evidence an improper *ex parte* communication in violation of the Equity Process Agreement. |
| 253<br>CFO00101808-11<br>[Stevens Zone] | 3 pages of typewritten "Q and A" regarding an August 31, 1999 telephone conference between "NSAI Participants" and "DOE Participants" with prepared questions re: "Stevens Zone Data Cut-Off Issue." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 38. |

This document is pre-decisional, deliberative, and subject to the deliberative process privilege. The question and answer under the "fairness of the process," however, references communications that may evidence *ex parte* communications prohibited by the Equity Process Agreement, prohibiting "oral equity-related communications or meetings with the Equity IPE . . . by an owner (including its agents and contractors without the participation or opportunity to participate by the other owner.)" *See* Compl. Ex. B ¶ A.2, incorporating Administrative Order No. 96-01 into the Equity Process Agreement.

If Chevron can establish by Affidavit that it did not have the opportunity to participate in this August 31, 1999 meeting with the IPE, the court will reconsider this ruling, as it may evidence an improper *ex parte* communication in violation of the Equity Process Agreement.

| | |
|---|---|
| 255<br>CDE00307810<br>[Stevens Zone] | September 2 and 3, 1999 e-mail string re: "Decision on Stevens Zone data submission" between Mary Egger, Robert Kripowicz, and Gary Latham. The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 38. |

The deleted information from the September 2, 1999 1:44 p.m. e-mail from Gary Latham to Robert Kripowicz re: "Decision on Stevens Zone data submission" is pre-decisional, deliberative, and subject to the deliberative process privilege. This document, however, evidences that Gary Latham and Arnold Smits participated by teleconference with "the equity group" and conveyed information about that group's activities to the ASFE. If "the equity group" was or included the "DOE field equity technical team" or if Mr. Latham and Mr. Smits were functioning in the latter capacity, this document evidences that an improper *ex parte* communication occurred.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

| | |
|---|---|
| 261<br>CME01602735-39 | September 9, 1999 typewritten note to Krip (Bob Kripowicz-ASFE) from Gary L. (Latham) re: "Miscellaneous Thoughts," (CME01602736) followed by 2 pages of printed notes re: "Thoughts for your Consideration," (CME01602797-38) represented to be authored by A. Smits re: Background, Discussion of Data, and Findings." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 38.<br><br>The last sentence of the deleted text of CME01602736, a September 9, 1999 note from Gary Latham to the ASFE is pre-decisional, deliberative, and subject to the deliberative process privilege, but provides information relevant to whether Gary Latham may have functioned as a member of the "DOE field equity technical team." Likewise, the text of CME01602737-38, *i.e.*, September 9, 1999 handwritten notes of Mr. Smits at Bullet 5 also provides relevant information regarding this issue.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307. |
| 264<br>CLC00102345<br>[Stevens Zone] | September 11, 1999 e-mail from Gary Latham to Robert Kripowicz (ASFE) copied to Arnold Smits, Louis Capitanio, and Mary Egger re: "NSAI critique of the Stevens shale studies by DOE and Chevron." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 38-39.<br><br>The redacted text "Arny and I . . . package for you with Arny." is pre-decisional, but provides a summary of factual information about a NSAI meeting that Arnold Smits and Gary Latham attended where Chevron was present and is relevant to whether they were functioning as members of the "DOE field equity technical team."<br><br>The court has balanced Chevron's request to have this text produced to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need |

that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

The text beginning with "What you will read" to the end of the document, however, is deliberative, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this text.

265 (CLC001 2695-2705) [Stevens Zone]

September 13, 1999 e-mails to and from Louis Capitanio and to and from Mary Egger, copied to Gary Latham and Arnold Smits, together with red-line draft of "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For The Stevens Zone." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 11 at 7.

The deleted text of the e-mail is pre-decisional, but the second paragraph is factual. Otherwise, CLC00102695 is not subject to the deliberative process privilege.

The attached red-line draft CLC00102697-CLC00102705 is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced.

268 (CLC001 2715-16)

Series of September 14, 1999 e-mails to and from Mary Egger and Louis Capitanio copied to Gary Latham, Arnold Smits, and Robert Kripowicz (ASFE) re: "New Draft." The e-mails are pre-decisional, but the content of the deleted text of the 1:50 p.m. e-mail (CLC00102715), is factual, except for the text beginning "I believe . . ." and "My impression . . .," that are deliberative. The 1:50 p.m. e-mail evidences direct communication between the IPE and Mr. Capitanio, *e.g.*, "we did not ask the IPE" and "The IPE also offered during the telecon," even though Mr. Capitanio was not designated as an "Owner." *See* Feb. 16, 2007 Gov't Resp. to Pl. Interrogatory 8 at 23-24. If Mr. Capitanio was functioning as member of the DOE field equity technical team in participating in this telephone conference and conveying information from the IPE to Mr. Kripowicz (ASFE), this may evidence an *ex parte* communication prohibited by the Equity Process Agreement. The situation is complicated further since Ms. Egger was the individual who requested this information.

The Fygi Declaration asserts deliberative process privilege is applicable, because: "This is the type of deliberative information that must be shared openly and frankly with the PDASFE, as well as other advisors whose responsibilities included the duty to advise. the PDASFE in this matter." Fygi Decl. ¶ 16 at 19. The issue here is not whether this is deliberative information, but whether it was obtained and used in violation of the Equity Process Agreement.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

* * *

The deleted text of the 9:54 a.m. e-mail from Mary Egger is pre-decisional, but the content is factual, in part. Paragraph two beginning with "I believe . . .," is deliberative content and subject to the deliberative process privilege. Ms. Egger's e-mail states: "We may need to talk to the IPE again. . . on the . . . well submissions." The Government has represented to the court the names of individuals who were authorized to represent DOE before the IPE. Ms. Egger's name was not listed. This document raises issues regarding whether Ms. Egger was authorized to provide advice to a participant in the IPE process on technical matters, as well as providing advice to the ASFE. The Fygi Declaration asserts deliberative process privilege is applicable because of a "concern related to a question as to what impact the draft decision might have on the IPE's ability to fulfill its mission and continue gathering data." Fygi Decl. ¶ 16 at 19. There is no indiction in this document or elsewhere that the IPE was concerned about being able to "fulfill its mission." *Id.* The point is the IPE was independent and, in fact, had an independent legal advisor. Ms. Egger's client was the ASFE, not the IPE. Moreover, contrary to the Fygi Declaration, the redacted text does not "attempt to address the concern that, left unresolved, could not only affect the substantive content of the [ASFE] decision but also threaten the underlying process itself – the ability of the IPE to perform its

duties." *Id*. at 19-20. Instead, Ms. Egger's e-mail evidences DOE's interest in whether the IPE intended to use post-1997 data and to influence the IPE not to rely on this data, as becomes evident in the 1:50 p.m. e-mail.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

* * *

The deleted text in the second and third paragraphs of the 4:44 p.m. e-mail from Louis Capitanio to Mary Egger is factual. This e-mail, however, states: "I have not yet seen the DOE's April 23 [1999] submittal to the IPE's . . . question." This implies that Mr. Capitanio should or thought he should receive this information, although he was not designated as a "owner" under Administrative Order 96-01. The fourth paragraph is pre-decisional, is deliberative, and subject to the deliberative process privilege. The Fygi Declaration asserts deliberative process privilege for this document again arguing the "impact of the IPE's ability to do its work[.]" *Id*. at 20. For the same reasons, the court finds the rationale unfounded.

* * *

The deleted text of the 12:22 p.m. e-mail from Mary Egger to Robert Kripowicz is factual and should be produced.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 11.

| | |
|---|---|
| 270 (CDE003 4426-28) | E-mail string, dated September 15-16, 1999. This folder was not listed in the Government's September 4, 2007 Memorandum of Law in Support of Its Deliberative-Process Privilege Claims but was asserted in the Fygi Declaration. *See* Fygi Decl. ¶ 34 at 44-45. |

The text of the September 16, 1999 2:10 p.m. e-mail (CDE00304427) from Arnold Smits to Bob Kripowicz (ASFE) re: "Proposed SOZ Schedule Change" references a "technical meeting in Bakersfield" on September 16, 1999. The factual information in this e-mail properly was produced so that Chevron may explore in what capacity Mr. Smits and others attended this meeting. The redacted text (CDE00304427-28) is pre-decisional, deliberative, and subject to the deliberative process privilege except for the text "concern NSAI . . . teleconference"which is factual. If Chevron did not participate in this technical meeting as it may evidence a potential violation of the Equity Process Agreement. The court discounts Mr. Fygi's prediction that disclosure of these "technical" communications will have a "chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing." Fygi Decl. ¶ 34 at 45.

* * *

The redacted text of a September 16, 1999 5:26 p.m. e-mail (CDE00304426) from Mary Egger to Robert Kripowicz (ASFE) re: "Proposed SOZ Schedule Change" copied to Louis Capitanio, Gary Latham, Arnold Smits, and Gena Cadieux is pre-decisional and deliberative. The deleted text, however, indicates that Ms. Egger made technical changes to a draft ASFE Decision regarding the Proposed SOZ Schedule Change. If Ms. Egger or any of the other DOE staff recipients functioned as a member of the "DOE field equity technical team," this text may evidence an improper *ex parte* contact prohibited by the Equity Process Agreement. The deleted text at issue does not provide a "recommendation" nor "brief description of the issue," contrary to the Government's representation. *See* Fygi Decl. ¶ 34 at 45. The issue is how did Ms. Egger have this information. *See also* Ruling on 268 9:54 a.m. e-mail (CLC00102715).

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a

compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

278 (CLC001 2657-2668) [Stevens Zone]

CLC00102657 is an e-mail string to and from Mary Egger, A. Smits, G. Latham, Lou Capitanio, and Gena Cadieux re: "comments/revision." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 11 at 7.

The redacted second paragraph of the September 16, 1999, 12:35 p.m. e-mail is pre-decisional, deliberative, and subject to the deliberative process privilege.

* * *

The redacted paragraph of the 9/16/99, 10:30 a.m. e-mail is pre-decisional and contains deliberative content, except for the first four lines that are factual.

The last sentence of CLC00102657 "I've taken . . . technically correct," is pre-decisional, contains deliberative content, but this sentence shows Ms. Cadieux requesting verification of a technical issue from Ms. Egger and is relevant to whether Ms. Egger obtained this information by functioning, at any time, as a member of the "DOE field equity technical team."

The court has balanced Chevron's request to have this sentence (CLC00102657) produced to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

* * *

The deleted portions of the draft "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process for the Stevens Zone" (CLC00102659-68), are pre-decisional, but not all portions are deliberative. CLC00102659-63 discussing introduction and "Background" until the text "DISCUSSION" is factual, including the parenthetical comment on page 2. The remainder of the document is

deliberative, except for the text on CLC00102664: "The IPE considers . . ." which is factual. The court has determined, however, that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as factual and not privileged, should be produced.

| | |
|---|---|
| 281 (CLC001 2643-2656) [Stevens Zone] | The deleted handwritten note by Louis Capitanio on CLC0102643 concerning a September 17, 1999 meeting with Robert Kripowicz, Mary Egger, and Arnold Smits is pre-decisional, deliberative, and subject to the deliberative process privilege. The Fygi Declaration asserts deliberative process privilege for this note, because it reflects "the opinions and comments of the PDASFE and its advisors." Fygi Decl. at 8-9. If Mr. Capitanio, Mr. Smits (*see* 251, 261, 264), or Ms. Egger functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication. *See also* ruling on 268 9:54 a.m. e-mail (CLC00102715).<br><br>The court has balanced Chevron's request to have this sentence produced to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 11.<br><br>* * *<br><br>CLC00102645-48 is a draft "Decision Regarding Dispute Over Data Submitted In Connection With The Equity Finalization Implementation Process for the Stevens Zone" that is pre-decisional. The introduction and Background Sections of the text of CLC001 02645-48 are factual and the redline comments are solely editorial in nature and should be produced, together with the text which is factual. The text of CLC00102649-56, however, contains the Discussion and Decision Sections with red line comments that are pre-decisional, deliberative, and subject to the deliberative process privilege, as the Fygi Declaration asserts. *See* Fygi Decl. ¶ 11 at 7-8. |
| 283 CDE00309043 | September 20, 1999 e-mail from Mary Egger to Robert Kripowicz (ASFE), Gary Latham, Louis Capitanio, Arnold Smits, and Gena Cadieux re: "ASFE data decision." The Fygi Declaration asserts |

| | |
|---|---|
| | deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 39.<br><br>The redacted text of CDE00309043 is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 292<br>CDE01310270<br>[Stevens Zone] | September 21, 1999 e-mail from Gary Latham to Robert Kripowicz, Mary Egger, Louis Capitanio, Arnold Smits re: "Stevens data cutoff decision." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 39.<br><br>The redacted text of CDE01310270 is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document, however, as previously discussed, if any of the aforementioned functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |
| 294 (CDE003 4074) | September 22, 1999 e-mail string re: "Draft ASFE Data Decision." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 39.<br><br>The redacted text of CDE003044074 is pre-decisional, deliberative, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 298 (CDE003 9901-13)<br>[Stevens Zone] | September 23, 1999 draft cover letter (CDE00309001) re: "Decision Regarding Dispute Over Data Submitted In Connection with the Equity Finalization Implementation Process For the Stevens Zone" is pre-decisional, but factual. CDE00309002-05 (Introduction and Background Sections) are pre-decisional, but factual. CDE00309005 "Discussion" through CDE00309012, is pre-decisional, deliberative, and is subject to the deliberative process privilege. The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 11 at 8. |

| | |
|---|---|
| | The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 320 - 332 (CME013 1693-1705) [Stevens Zone] | 13 pages of a 2/16/00 handout re: a Stevens Zone Oil Migration Presentation, represented on the log as being prepared by Gary Latham for unidentified persons. The Fygi Declaration asserts deliberative process privilege as to the redacted portions of 329 (CME0131702) and 331 (CME0131704). See Fygi Decl. at 21. The redacted information is predecisional, but factual and relevant to the Government's causation theory. *See* 6/15/07 TR at 10.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307. |
| 337 (CME013 1676-80) [Stevens Zone] | "Key Questions For NSA At Stevens Final Equity Briefing For Principal Deputy ASFE (02/23/00)." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 18 at 22-23.<br><br>The redacted portions of CME01301676 are a list of questions and bullet points, represented as being prepared by Gary Latham (with unidentified handwritten notes) for a 2/23/00 final briefing of the Principal Deputy ASFE with the IPE. The redacted questions on the first page are pre-decisional, deliberative, and are subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced.<br><br>CME0130677 is a document "Materiality of Various Factors In The Equity Calculation" with seven bullet points that are pre-decisional, but factual in content, except for the bold text that could be construed as deliberative. Since two of the bullets were disclosed and the remainder provide factual context for CME01301679, *i.e.*, "Weighting Factor," and CME01301680, which were produced, CME01301677-78 also should be produced without the bold text. |

| | |
|---|---|
| 339 (CLC001 4511-13) | Three page document "Elk Hills Equity Status (March 17, 2000)," represented as being prepared by Gary Latham. The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 20 at 24-25.<br><br>This document is pre-decisional, but the first two pages are not deliberative, as they discuss primarily factual matters. The handwritten notes on CLC00104511-12 are relevant to central issues of this case, as they evidence communication between Mr. Latham and the ASFE. If Mr. Latham also functioned as a member of the "DOE field equity technical team," this document would evidence a potential prohibited *ex parte* contact. *See, e.g.*, 255, 543, 889 (CBG01101894).<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.<br><br>* * *<br><br>CLC001045113, however, is pre-decisional, deliberative, discussing the parameters of a settlement, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 356<br>CAS0021105<br>[Stevens Zone] | August 4, 2000 e-mail from Gary Latham to Robert Kripowicz and Mary Egger re: "Changes to NSAI final equity recommendation for the Stevens Zone." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 39.<br><br>This document is pre-decisional, deliberative, and subject to the deliberative process privilege. This e-mail, however, is relevant to the issue of whether Butch Gangle and/or Gary Latham functioned as a member of the "DOE field equity technical team" and references "*ex parte* communication prohibitions" at issue in this case. |

| | |
|---|---|
| | The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 12-13 (357). |
| 357<br>CAS0030910<br>[Stevens Zone] | Two e-mails dated August 4, 2000. The August 4, 2000 1:24 p.m. e-mail is the same document as 356.<br><br>The August 4, 2000 2:24 p.m. e-mail is a reply is from Mary Egger to Gary Latham, Robert Kripowicz (ASFE) re: "Changes to NSAI final equity recommendation for the Stevens Zone." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 39. The deleted text is pre-decisional, deliberative, and is subject to the deliberative process privilege. |
| 362 (CFO001 948-52) | The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 20 at 24-25. CFO001948-49, however, are duplicates of a August 10, 2000 3:37 p.m. e-mail from Gary Latham to Robert Kripowicz copied to Mary Egger re: "Possible equity discussions with Chevron's Gary Luquatte."<br><br>CFO00100950 "Equity Fact Sheet (8/10/00)" is the attachment to CFO001948-49. The redacted text in Section A of CFO00100950 is pre-decisional, but factual as the title "Equity Fact Sheet (8/10/00)" states, and should be produced. The redacted chart under Section B "History of SOZ Equity Determinations" is pre-decisional, but factual, and should be produced. The first two lines of text beginning with "Historical . . . by about 5.5 points" is factual, however the text, "but . . . equity, but" is pre-decisional, deliberative, and subject to the deliberative process privilege. The rest of the text in this paragraph beginning with "NSAI has recommended. . ." is factual. The redacted chart following Section C. "Recent Owner Positions on DOE Equity in the SOZ" is pre-decisional, but factual. The redacted text "Owner . . . DOE seeks." is pre-decisional, deliberative, and subject to the deliberative process privilege. The redacted chart on CFO00100951- Section D "Equity Costs to the Government by Year (includes STA, NSAI, and outside legal)" is pre-decisional, but factual and should be produced. The text of CFO00100951 |

| | |
|---|---|
| | following the chart is pre-decisional but factual and should be produced. CFO00100952 appears to be a duplicate of CFO00100951, but for highlighting and a line of text before the chart, which is pre-decisional, deliberative, and subject to the deliberative process privilege.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the factual portions designated as not privileged, should be produced. |
| 373<br>CLC00101235-37<br>[Shallow Oil Zone] | Three page document. The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 39. CLC00101235 are handwritten notes, represented as authored by Louis Capitanio that are pre-decisional, deliberative, and subject to the deliberative process privilege. CLC00101236 is a chart, however, that is factual in content and should be produced, without the handwritten notes, which are privileged.<br><br>The handwritten notes on CLC00101237, are also privileged. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the factual portions designated are not privileged and should be produced. |
| 380 (CLC001 2288) | Handwritten notes of Louis Capitanio, dated 8/23/00, re: a telephone call from Butch Gangle to Louis Capitanio. The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 21 at 25-26. The redacted text is pre-decisional, but has only partial deliberative content. The first paragraph concerns a "Protocol Issue" and references a communication from Butch Gangle to Gary Latham, who in turn was to take copies of same to Robert Kripowicz and Mary Egger. If Mr. Gangle, Mr. Latham, or Ms. Egger functioned as a member of the "DOE field equity technical team," this document would evidence an improper *ex parte* communication.<br><br>The second paragraph beginning with "Gary: NSAI has said . . . and NSAI" is factual and should be produced. The third paragraph beginning with "Gary" is pre-decisional, deliberative, and is subject to the deliberative process privilege. The remainder of the document lists other potential participants, is factual, and should be produced. |

| | |
|---|---|
| | The court rejects the Fygi Declaration's contention that disclosure of these notes would undermine the ability of the PDASFE and his staff to "work efficiently and effectively." Fygi Decl. ¶ 21 at 26. Likewise, the court rejects the contention that disclosure of these notes "would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing." *Id*. These notes were made by Capitanio, and do not reflect the purpose was to provide advice to the PDASFE.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307. |
| 381<br>CDE01333720<br>[Stevens Zone] | The August 24, 2000 e-mail from Louis Capitanio to Mary Egger copied to Gary Latham re: "Response to DOE 8/22 Stevens Equity Letter." The Fygi Declaration asserts deliberative process privilege for this document. *See* Fygi Decl. ¶ 33 at 39.<br><br>The redacted text of this e-mail is pre-decisional, but contains only partial deliberative content. The first two sentences are factual and should be produced. The balance of this document includes deliberative content, but Chevron has not established a compelling need for disclosure of this text. |
| 384 (CAS005 1712)<br>[Stevens Zone] | August 29, 2000 e-mail string. The redacted text of the 1:52 pm e-mail from Arnold Smits to Robert Kripowitz and Mary Egger re: "Request for a Conference Call" is pre-decisional, but only has partial deliberative content. The first paragraph evidencing a telephone call between Butch Gangle and Arnold Smits and two sub-headings are factual. The text of the paragraph "Both owners . . . paid." is factual. The paragraph under the second heading, however, is pre-decisional, deliberative, and is subject to the deliberative process privilege.<br><br>* * *<br><br>The redacted text of the 1:57 pm e-mail is pre-decisional, but factual as it evidences that Ms. Egger did not consider her role as that of "DOE EFT counsel, which previously was O'Melveny's |

| | |
|---|---|
| | role" The Fygi Declaration asserts deliberative process privilege for both of these documents. *See* Fygi Decl. ¶ 23 at 26-27. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced.<br><br>* * *<br><br>The redacted text of the 2:09 pm e-mail is pre-decisional, but factual, but the text "However, I . . . counsel present" is deliberative and subject to the deliberative process privilege.<br><br>* * *<br><br>The redacted text of the 2:15 pm e-mail is pre-decisional, but factual and should be produced. The text "If EFT . . . issue #1," is pre-decisional, deliberative, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this text. |
| 495 (CAS005 1665-67) [Stevens Zone] | 3 page "Summary of [Chevron and DOE] Criticisms of the Final Equity Recommendation By NSAI for the Stevens Zone and NSAI Responses to those Criticisms" dated January 17, 2001, represented to have been prepared by Gary Latham, DOE "the head of the Headquarters technical advisory team." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 23 at 27.<br><br>This document is pre-decisional, but is largely factual and contains only partial deliberative content. On CAS00501665 under NSAI Response, the sentence beginning with "However, . . ." is deliberative. Likewise, on CAS00501667 under "NSAI Response," the sentence beginning with "However, . . ." is deliberative. In addition, the handwritten notes in the margins on CAS00501665-66 are deliberative. Otherwise all three pages should be produced. The Fygi Declaration states: "This document also contains the author's opinions of what impacts these issues (*i.e.*, the parties' arguments to the IPE) would have on the parties' equity interests." *Id*. Accordingly, this information is relevant to the Government's causation theory. *See* 6/15/07 TR at 10.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting |

| | |
|---|---|
| | "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307. |
| 497 (CFO001 1150-53) [Stevens Zone] | 4 pages, duplicate pages in folder 495. Same ruling as 495, including allowing redaction of other handwritten notes. |
| 511 (CBG006 3-9) | CBG0060003 are handwritten notes, dated February 1, 2001, represented in the log as those of Butch Gangle. The notes indicate that GL (Gary Latham), NS (Norman Stone) GH (Gary Henderson or Greg Hueni), BK (Beth Kelly or perhaps Bob Kripowicz) and GT (Greg Thorpe) were present at the meeting described.<br><br>The Fygi Declaration asserts this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 39-40. The document is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document.<br><br>* * *<br><br>CBG0060004 is a chart entitled "Event Timing For Equity Process Schedule and Options as Described in the December 4, 2000 Option Paper," marked "Privileged & Confidential Predecisional Analysis – Not For Distribution" and represented as prepared by Ms. Egger. This document is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document.<br><br>* * *<br><br>CBG0060005 is a January 29-30, 2001 e-mail string re: "Chevron mtg." The deleted text of the January 29, 2001 e-mail from Mary Egger to Gary Latham, Alan Burzlaff, Butch Gangle, and Greg Thorpe is pre-decisional, but factual, except for the sentence beginning with "I don't . . ." which has deliberative content. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process |

Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

CBG0060006-7 two page "Draft Talking Points for the 2/1/01 Chevron Mtg. Regarding the Acceleration of the SOZ Equity Process," marked "Privileged & Confidential Attorney Client Communications," represented to have been authored by Mary Egger. This document is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this entire document.

* * *

CBG0060008-9 is January 17, 2001 and January 19, 2001 e-mail string re: "Chevron's Response." The redacted text of the January 19, 2001 3:43 p.m. e-mail (CBG006008) from Alan Burzlaff to Mary Egger, Greg Thorpe, copies to Butch Gangle, Ken Schussler, and Molly White is pre-decisional, deliberative, and subject to the deliberative process privilege. This document may evidence a prohibited *ex parte* communication, if Alan Burzlaff, Mary Egger, Butch Gangle, and/or Ken Schussler had functioned or were functioning as members of the "DOE field equity technical team." A related question is in what capacity were Ms. Egger and Mr. Thorpe functioning at this juncture. *See* 384 (1:57 p.m. e-mail).

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307.

* * *

The January 19, 2001 3:43 p.m. e-mail (CBG006008) is pre-decisional, but factual and should be produced in its entirety.

* * *

| | |
|---|---|
| | The redacted text of the January 17, 2001 1:14 p.m. email (CBG0060009) is pre-decisional, but factual, other than the parenthetical "Don't . . . content.", which is deliberative and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 526 (CGC007 294-323) [Stevens Zone] | February 18, 2001 "DRAFT Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve No. 1 (March 2001)," marked "Privileged And Confidential Pre-Decisional Analysis," without designating author or recipients. The Fygi Declaration asserts deliberative process privilege as to this entire document. *See* Fygi Decl. ¶ 12 at 10-11.<br><br>This document is pre-decisional, deliberative, and subject to the deliberative process privilege with respect to: CGC00700295 (TABLE OF CONTENTS), the red-line edits on CGC00700298, CGC00700300-01, CGC00700303-04. Beginning with red-line edits on CGC00700304 and continuing through CGC00700323, *i.e.*, "III. Preliminary Decision, Appendix I." The remainder of the document (CGC00700 296-CGC00700 304) describing: "I. Background and Authorities; and II. Implementation of the NDA Act" is factual and should be produced.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 531 (CBG006 12) | February 26, 2001 e-mail from Alan Burzlaff to Mary Egger, Gary Latham, Butch Gangle, Greg Thorpe, copied to Ken Schuessler re: "Chevron's Streamling Suggestions for SOZ Equity Process." The Fygi Declaration asserts "privilege for redacted portions of this email." Fygi Decl. ¶ 25 at 29.<br><br>This document is pre-decisional, however, the content is only partially deliberative. The text in lines 1-7 "We have . . . Recommendation" is deliberative and subject to the deliberative process privilege. The remainder of the text is factual and should be produced. The text under Item 2 "This Chevron . . . addition," is factual and should be produced. The text "I . . . comments." is deliberative and subject to the deliberative process privilege. The text under Item 3 "in |

| | |
|---|---|
| | Chevron's . . . Decision" is factual and should be produced. The text ("Although . . . list)," and "I . . . Decision)." is deliberative and subject to the deliberative process privilege. In addition, the last two lines "I am . . . call" are factual and should be produced. The Fygi Declaration asserts deliberative process privilege as to this entire document. *See* Fygi Decl. ¶25 at 29-30. This document, however, may evidence a prohibited *ex parte* communication if Alan Burzlaff, Butch Gangle, Ken Schuessler, or Gary Latham functioned as a member of the "DOE final equity technical team." The court rejects the contention that: "Releasing this type of commentary to the public would have a chilling effect on the willingness of a person to provide such advice[.]" (*see* Fygi Decl. ¶ 27 at 30), since Burzlaff characterizes his observations of Chevron's three suggestions as "stating the obvious." (CBG0060012).<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l*, 437 F.3d at 1307. |
| 543 (CAS002 940-41) | E-mail string, dated April 3 and 5, 2001.<br><br>The Fygi Declaration asserts deliberative process privilege as to this document. *See* Fygi Decl. ¶ 33 at 40. The April 3, 2001 2:34 pm e-mail from Gary Latham to Robert Kirpowicz copied to Gena Cadieux, Arnold Smits re: "NSAI procedure for estimating 26R ultimate recovery" is pre-decisional, but lines 1 and 2 are factual and should be produced. The remainder of the text contains recommendations about agency policy and is subject to the deliberative process privilege.<br><br>* * *<br><br>The April 3, 2001 3:04 pm reply is pre-decisional, deliberative, and is subject to the deliberative process privilege. If Gary Latham had knowledge of the NSAI procedure, because he was functioned as a member of the "DOE field equity technical team," the April 3, 2001 e-mail may evidence an improper *ex parte* communication in prohibited by the Equity Process Agreement. |

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307.

* * *

The April 5, 2001 6:15 pm e-mail's first three sentences are factual and should be produced, however the balance of the e-mail is pre-decisional and contains deliberative content and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions of the April 5, 2001 e-mail designated as not privileged, should be produced.

| | |
|---|---|
| 548 (CGC007 144-178)<br>[Stevens Zone] | "DRAFT Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone, Naval Petroleum Reserve No. 1, (DOE May 2001)" marked "Privileged And Confidential Pre-decisional Analysis," without designating author or recipient. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 11.<br><br>This document is pre-decisional, deliberative, and subject to the deliberative process privilege with respect to: CG00700145 (TABLE OF CONTENTS), the red-line edits on CG00700153-54 and continuing through CGC00700177. The remainder of the document (CGC00700146-1543), however, describing: "I. Background and Authorities and II. Implementation of the NDA Act" is factual and should be produced.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 551<br>CAS00602920 | June 6, 2001 unidentified language re: "The constant solution gas weighting methodology supported by Chevron." Represented as authored by "STA (Burzlaff et al.)" as a "member of DOE headquarters technical advisory team regarding constant solution gas weighting methodology to be used in the deliberative process |

| | |
|---|---|
| | leading to the ASFE Preliminary Decision." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 40.<br><br>This document is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not yet established a compelling need for disclosure of this document. |
| 552 (CDE003 7354) | E-mail string, dated June 6, 2002 re: "Stevens Prelim." The Fygi Declaration asserts that the redacted text of each of these e-mails is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 26 at 30.<br><br>This document is pre-decisional, but only partially deliberative. The redacted text of the 3:57 pm e-mail from Arnold Smits to Gena Cadieux copies to Gary Latham re: "Chevron . . . (CF/BBL)" is factual and should be produced, although the rest of the sentence has deliberative content. The content of the two sentences "Under . . . barrels of oil." is factual and should be produced. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced.<br><br>* * *<br><br>The redacted text of the 4:09 pm e-mail is pre-decisional, deliberative, and is subject to the deliberative process privilege. |
| 557 (CDE003 3566) [Stevens Zone] | Redacted text of the June 26, 2001 2:14 p.m. e-mail from Gary Latham to Mary Egger re: "Basis for Conversion of Stevens Zone gas to oil equivalent" copied to Gena Cadieux and Arnold Smits. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 40.<br><br>This document is pre-decisional, deliberative, and subject to the deliberative process privilege. If Gary Latham, however, was functioning as a member of the "DOE final equity technical team," (*see* 255, 261, 264, 380, 495, 543, 889 (CBG01101894)). This e-mail may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting |

| | |
|---|---|
| | "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307. |
| 571<br>CFO00101889-90<br>[Stevens Zone] | 2 page document. CF00101889-90 are comments on Stevens Zone draft decision submitted on 10/25/01. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 40.<br><br>These notes are pre-decisional, deliberative, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 572 (CME015 1894-1928)<br>[Stevens Zone] | CME01501894 is the same October 23, 2001 cover memo as folder 570 which was produced. The attached November 2001 "DRAFT Preliminary Decision Finalizing Participation Percentages In Production From the Stevens Zone, Naval Petroleum Reserve No. 1," marked "Privileged And Confidential Pre-Decisional Analysis (November 2001)," without designating the author or recipient, is pre-decisional, deliberative, and subject to the deliberative process privilege with respect to: CME01501896 (TABLE OF CONTENTS) and CME0150905-CME01501928. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 11.<br><br>The remainder of the document CME01501897-CME01501905, describing: "I. Background and Authorities; and II. Implementation of the NDA Act," however, is factual and should be produced.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 577 (CFO001 1174-1181)<br>[Stevens Zone] | CFO00101175 is a November 9, 2001 cover memo that is pre-decisional, but factual and should be produced. The attached "Preliminary Decision Finalizing Participation Percentages Production from the Stevens Zone, Naval Petroleum Reserve No. 1 (November 2001)" is pre-decisional, deliberative, and is subject to the deliberative process privilege, with respect to CF00101177 (TABLE OF CONTENTS), Sections III and IV. The Fygi Declaration asserts that this entire document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 11. The |

| | |
|---|---|
| | remainder of the document, Sections I. and II. are factual and should be produced. *See* 572.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 589 (CDE003 4454-55) [Stevens Zone] | E-mail string, dated December 4 and 5, 2001. The Fygi Declaration asserts that the redacted text in both e-mails is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 40.<br><br>The redacted text of the 10:09 a.m. e-mail reply to same from Mary Egger is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document.<br><br>* * *<br><br>The redacted text of the December 5, 2001 8:02 a.m. e-mail from Gary Latham to Gena Cadieux copied to Mary Egger re: "Owner comments on the Stevens Zone Preliminary Decision." is pre-decisional, deliberative, and is subject to the deliberative process privilege. |
| 602 (CDE007 8635-36) | E-mail string, dated May 13, 2002 re: "Reflections on the abandonment pressure debate." The Fygi Declaration asserts that the redacted text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 40.<br><br>This document is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |

| | |
|---|---|
| 672 (CDE007 1247-49) [Stevens Zone] | E-mail string, dated March 28, 2003, March 30, 2003, September 23, 2004, September 24, 2004 re: "Stevens CF and Equity for 1942 Prices." The Fygi Declaration asserts that the redacted text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 40.<br><br>The redacted text of the 4:38 p.m. September 23, 2004 e-mail from Mary Egger to Arnold Smits and 8:18 a.m. September 24, 2004 e-mail (CDE00701247) from Arnold Smits to Mary Egger with copy to Gena Cadieux is pre-decisional, deliberative, and are subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 740 CFE00100119-21 [Stevens Zone] | May 5, 2006 cover e-mail and 2 page January 4, 2006 memo to Jeffrey Jarrett PDA (ASFE) from Gary Latham re: "Redetermination of Final Equity in the Stevens Zone of the Elk Hills Oil Field." marked "Predecisional Materials - Privileged and Confidential - For Internal Use Only." The Fygi Declaration asserts that both documents are subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>The redacted text of CFE00100120 is pre-decisional, but the text "As part of . . . possible approaches" is factual and should be produced. This document states that Gary Latham and Arnold Smits were members of the "Equity Advisory Team," Louis Capitanio was "with the oil & gas R&D group," but available to spend 25% of his time on the "Equity Advisory Team." The "Equity Advisory Team," a term not referenced in the Equity Process Agreement. All of the "members,' however, were DOE employees with technical backgrounds. To the extent that members of the so-called "Equity Advisory Team" also functioned as members of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. In addition, the last sentence characterizing Ms. Egger's role in the process, is factual and should be produced.<br><br>Assuming *arguendo*, that this information is privileged, the court has balanced Chevron's request to have this folder produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need |

| | |
|---|---|
| | that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307. |
| 750<br>CDE00706638-9<br>[Stevens Zone] | February 9, 2006 memo "Gena Cadieux's Questions and Responses by the ASFE Equity Advisory Team (Latham, Smits)" regarding the "Stevens Zone post-OHA remand preliminary decision" prepared for unknown individuals. The Fygi Declaration asserts that the redacted text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>This document is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 754<br>CLC00100074<br>[Stevens Zone] | February 14, 2006 handwritten notes "of a meeting of six DOE employees, including two attorneys" by unknown author re: "Stevens Equity OHA Decision" meeting reflecting attendance of J. Jarrett, G. Latham, M. Egger, G. Cadieux, A. Smits, L. Capitanio. This folder was not listed in the Government's September 4, 2007 Memorandum of Law in Support of Its Deliberative-Process Privilege Claims, but the Fygi Declaration asserts that the redacted text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>This document is pre-decisional, deliberative, subject to the deliberative process privilege. The court has balanced the competing interests of the parties and determined that Chevron has not established a compelling need for disclosure of this document. |
| 756 (CDE003 4336) | February 22, 2006 e-mail from G. Cadieux to Arnold Smits, Gary Latham copied to Mary Egger re: "Building Blocks for the decision." The Fygi Declaration asserts that the redacted text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 27 at 32-33.<br><br>The redacted text is pre-decisional, but provides procedural instructions, without deliberative content. Moreover, the reference to a "report of your interactions with the EFTs" is a central and relevant issue in this case.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and |

| | |
|---|---|
| | recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 13. |
| 765 (CDE007 3354-57) [Stevens Zone] | This document is a draft of options suggested by the DOE technical team and reviewed by the ASFE Advisory Team regarding the OHA remand with exhibits. The Fygi Declaration asserts that the redacted text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 27 at 32-33.<br><br>The document is pre-decisional, deliberative, and is subject to the deliberative process privilege, except for Exhibit A (CDE00703356)Figure 4 "Gas Conversion Factor Calculations, Stevens Zone" (CDE00703357), which are factual and should be produced. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 783 (CDE007 6766) | March 15, 2006 e-mail string re: "OHA Decision Piece" between Gary Latham and Gena Cadieux with cc: to Arnold Smits. The Fygi Declaration asserts that the redacted e-mail text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>* * *<br><br>The text of the 12:53 pm e-mail is part factual and part deliberative content. The first four sentences are pre-decisional, but factual and should be produced.<br><br>* * *<br><br>The 1:02 pm text is factual and should be produced.<br><br>* * *<br><br>The 1:23 pm text is in part factual and part deliberative. The first sentence is factual and should be produced. The second, third, and fourth sentences contain deliberative content. The fifth, sixth, and seventh sentences are factual and should be produced. |

| | |
|---|---|
| | The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 794 (CDE001 520-21) | March 27, 2006 Draft Section III.C. of ASFE Stevens Zone Proceeding was prepared by Gena Cadieux. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 28 at 33-34.<br><br>CDE00100520 is pre-decisional, deliberative, and is subject to the deliberative process privilege. CDE00100521 is pre-decisional, but the first line of text and chart "DOE Equity" are factual and should be produced. The remainder of the document contains deliberative content, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 800 (CDE007 2033) | March 28, 2006 e-mail from Gary Latham to Gena Cadieux with cc: to Arnold Smits re: "Revised Section III.A." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>The redacted text of the e-mail is pre-decisional, but the first sentence is factual and should be produced. The remainder of the document contains deliberative content and is subject to the deliberative process privilege.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 809 (CDE007 15865) | March 27, 2006, April 4-5, 2006 e-mail string. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>The text of the April 4, 2006 11:01 a.m. e-mail (CDE00715865) from Gena Cadieux to Arnold Smits copied to Gary Latham re: "Section III C Text Rewrite.doc." is pre-decisional, deliberative, and subject to the deliberative process privilege.<br><br>The text of the April 5, 2006 10:38 a.m. e-mail is pre-decisional, but factual and should be produced. The court has determined that Chevron has not established a compelling need for disclosure of |

| | |
|---|---|
| | this entire document, however, the portions designated as not privileged, should be produced. |
| 816 (CDE001 72-80) | (CDE00100072-79). *See* 975. CDE00100080 is a draft letter to Norm Stone (Chevron) and Francis ("Butch") Gangle transmitting the Preliminary Decision Finalization Participation Percentages in Production from Stevens Zone." The document is pre-decisional, but factual and should be produced. The document is also relevant to the issue of whether Mr. Gangle functioned as a member of the "DOE final equity technical team." |
| 819 (CDE00702109-18) | May 17, 2006 2:50 p.m. e-mail from Arnold Smits to Mary Egger copied to Gena Cadieux and Gary Latham re: "Draft Preliminary Decision Finalizing Participation Percentages in Production" with two attachments. The text of the e-mail (CDE00702109) is pre-decisional but factual and should be produced. The attachments (CDE00702110-18) contain a draft letter to Norm Stone (Chevron) and Butch Gangle transmitting the Preliminary Decision Finalization Participation Percentages in Production from Stevens Zone." The document is pre-decisional, but factual and should be produced. *See* 816. The redline edits by Mary Egger on CDE00702116 are also factual and should be produced. |
| 820 (CDE00703428-29; CDE0073354-57) | May 18, 2006 9:19 a.m. e-mail from Mary Egger to Arnold Smits copied to Gena Cadieux and Gary Latham re: "Draft Preliminary Decision Finalizing Participation Percentages in Production" with two attachments. The text of the e-mail (CDE00703428) is pre-decisional but factual and should be produced. The first attachment (CDE00703429) is a draft letter to Norm Stone (Chevron) and Butch Gangle transmitting the Preliminary Decision Finalization Participation Percentages in Production from Stevens Zone." The document is pre-decisional, but factual and should be produced. *See* 816. Additionally, the redline edit is grammatical and factual and should be produced. The second attachment CDE0073354-57 is the same as 765. |
| 840 (CDE003 1602) [Elk Hills] | June 9, 2006 e-mail string re: "Financial risks associated with the Elk Hills equity finalization process." The Fygi Declaration asserts that the redacted e-mail text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>The redacted text of the June 9, 2006 9:32 a.m. e-mail to Mary Egger from Gary Latham and Arnold Smits is pre-decisional, deliberative, and is subject to the deliberative process privilege. |

| | |
|---|---|
| | The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 841 (CDE003 1625-26) | June 9, 2006 2 page e-mail string re: "Financial risks associated with the Elk Hills equity finalization process." The Fygi Declaration asserts that the redacted e-mail text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>The redacted text of the June 9, 2006 9:31 a.m. e-mail from Mary Egger to Gary Latham copied to Arnold Smits and June 9, 2006 9:55 a.m. e-mail from Gary Latham to Mary Egger is pre-decisional, deliberative, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 846 (CDE007 538-39) | June 9, 2006 2 page e-mail string re: "Financial risks associated with the Elk Hills equity finalization process." The Fygi Declaration asserts that the redacted e-mail text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>The redacted text of the six e-mails among Mary Egger, Gary Latham, and Arnold Smits is pre-decisional, deliberative, and subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 850 (CDE007 1660) | June 9, 2006 e-mail from Gary Latham to Mary Egger copied to Arnold Smits re: "Revised Equity Scenarios 6-8-06." The Fygi Declaration asserts that the redacted e-mail text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 29 at 34-35. The redacted text is pre-decisional, but the text is factual and does not contain any deliberative content and should be produced. The redacted e-mail text has nothing to do with "potential outcomes to both parties under various assumptions." Fygi Decl. ¶ 29 at 34. |
| 851 (CDE007 6742) | June 9, 2006 e-mail string. The Fygi Declaration asserts that the redacted e-mail text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 41.<br><br>The deleted text of the 1:42 pm e-mail from Gary Latham to Mary Egger re: "Additional data for the equity scenarios" copied to Arnold Smits is pre-decisional, but factual and should be produced. |

* * *

| | |
|---|---|
| | The deleted text of the 2:40 pm e-mail from Mary Egger to Gary Latham copied to Arnold Smits, marked privileged and confidential, is pre-decisional and the first two paragraphs and the fourth paragraph include deliberative content, but the chart at paragraph 3 is factual and should be produced. The fifth paragraph is factual and should be produced.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 872 (CBG011 220-271) | This folder contains 51 pages of e-mails. The Fygi Declaration asserts that the redacted e-mail text is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 42 (CBD011259, 262, 266, 268, 271).<br><br>Redacted text of a February 1, 2005 e-mail (CBG01100259) from Gary Latham to Butch Gangle re: "Proposed Discussions with Norm (Stone at Chevron) about implementing the OHA decision."<br><br>The redacted text is pre-decisional, deliberative, and is subject to the deliberative process privilege. The document, however, shows a communication between Gary Latham and Butch Gangle regarding Ms. Egger's role in implementing the OHA decision. If Mr. Gangle or Gary Latham functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication in violation of the Equity Process agreement.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 13-14. |

* * *

The redacted text of a series of e-mails dating June 9-10, 2004 between Gary Latham and Butch Gangle re: "Elk Hill product delivery summaries" (CBG01100262) is pre-decisional, but factual in part and deliberative in part.

* * *

The redacted text of the 5:32 pm e-mail is factual and should be produced.

* * *

The redacted text of the 7:06 am e-mail is pre-decisional but factual, other than the sentence "You might recall. . ." which contains deliberative content and is subject to the deliberative process privilege.

* * *

The redacted text of the 3:11 p.m. e-mail is pre-decisional but factual and should be produced. In addition, if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 12-14.

The redacted text of a February 12, 2004 e-mail (CBG01100266) from Arnold Smits to Butch Gangle re: "Your Equity Percentage Chart" is pre-decisional, but the first paragraph contains deliberate content. The second paragraph "Source . . ." is factual and should be produced. The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. In addition, if any of the aforementioned, however, functioned as members of the "DOE field equity team,"

this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307; *see also* July 24, 2007 Chevron Status Report at 13-14.

The redacted text of a January 28, 2000 e-mail from Gary Latham to Butch Gangle (CBG01100268) is pre-decisional, deliberative, and is subject to the deliberative process privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307. *See, e.g.*, July 24, 2007 Chevron Status Report at 13-14.

The redacted text of a May 3, 2002 e-mail from Arnold Smits to Butch Gangle, copied to Gary Latham, Louis Capitanio, and Gary Halcomb re: Chevron SOZ numbers" (CBG01100271) is pre-decisional, but content is factual as it requests verification of Chevron SOZ Equity Numbers. In addition, if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against DOE's competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a

compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307. *See, e.g.*, July 24, 2007 Chevron Status Report at 13-14.

975 (CDE001 72-79) [Stevens Zone]

Another draft "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 11.

This document is undated. The log represents that the author was Alan Burzlaff, a Petroleum Engineer on the DOE Equity Finalization Team. The document may be pre-decisional, but the content of CDE0010072–78 describing: "I. Background; II. Process to Implementation and OHA Order; and III. Issues Pertinent to Preliminary Decisions," is factual and should be produced. (CDE00100072-78) The balance of the document describing IV. Preliminary Decisions and Rationale (CDE00100078-79), is pre-decisional, deliberative, and is subject to the deliberative process privilege. If Mr. Burzlaff functioned as a member of the "DOE field equity technical team" this document may reflect an improper *ex parte* contact with the ASFE. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

| | |
|---|---|
| 979 (CDE001 1019-26) [Stevens Zone] | Another draft "Preliminary Decision, Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 11.<br><br>This document is undated. The log represents that the author was Gena Cadieux. The document may be pre-decisional, but the content of CDE00101019-25 describing: I. Background; "II. Process to Implement the OHA Order; and III. Issues Pertinent to Preliminary Decision" is factual and should be produced, except for the comments and edits on CDE00101023 that contain deliberative content, the balance of the document describing: "III. Preliminary Decisions and Rationale" is pre-decisional, contains deliberative content, and is subject to the deliberative process privilege.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 980 (CDE001 1037-44) [Stevens Zone] | Another draft "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 11.<br><br>This document is undated. The log represents that the author was Gena Cadieux. The document may be pre-decisional, but the content of CDE00101037-43, describing: "I. Background; II. Process to Implement the OHA Order, and III. Issues Pertinent to Preliminary Decision" is factual and should be produced. The balance of the document describing: "IV Preliminary Decisions and Rationale" is pre-decisional, contains deliberative content, and is subject to the deliberative process privilege.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |

| | |
|---|---|
| 983 (CDE003 784-791) [Stevens Zone] | Another draft "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." This document is undated and has no author designation. The log represents that the author was Alan Burzlaff. Same ruling as 975. |
| 993 (CDE003 4348-49) [Stevens Zone] | Undated document "Stevens Zone Protocol Issue." This folder was not listed in the Government's September 4, 2007 Memorandum of Law in Support of Its Deliberative-Process Privilege Claims but was asserted in the Fygi Declaration. *See* Fygi Decl. at 45-46. Same ruling as 1121. |
| 997 (CDE003-7913-7922) [Stevens Zone] | Draft cover letter transmitting an undated draft "Decision Regarding Dispute Over Data Submitted In Connection with the Equity Finalization Implementation Process For the Stevens Zone." The Fygi Declaration asserts that these documents are subject to the deliberative process privilege. *See* Fygi Decl. ¶ 11 at 8.<br><br>Both documents are pre-decisional, but the draft cover letter is factual and should be produced as it does not contain deliberative content. Likewise CDE00307914-17 to "Discussion" is factual and should be produced. The remainder of the document (CDE001307917-22) contains deliberative content and is subject to the deliberative process privilege.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |
| 1002 (CDE005 22-29) [Stevens Zone] | Another draft "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 12.<br><br>This document is undated. The log represents that the authors were "unnamed DOE attorneys." The document (CDE0050022-28) may be pre-decisional, but the content is fact and should be produced. CDE00500028-29 ("IV. Preliminary Decision and Rationale") contains deliberative content and is subject to the deliberative process privilege.<br><br>The court has determined that Chevron has not established a compelling need for disclosure of this entire document, however, the portions designated as not privileged, should be produced. |

| | |
|---|---|
| 1059 (CGC002 1734-1736) | Undated and unidentified 3 pages (page 8 and two page 5) from a draft DOE document with handwritten and other comments, allegedly made by Mary Egger. The Fygi Declaration asserts that these pages are subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 42.<br><br>These pages appear to be pre-decisional, deliberative, and are subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 1060 (CGC002 1737-44) [Stevens Zone] | Another draft "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 12.<br><br>This document is undated. The log represents that the author was Mary Egger. The document may be pre-decisional, but CDC00202737-43 to "IV. Preliminary Decision and Rationale" is factual and should be produced as it does not contain deliberative content, but for the edits on page CGC00201741. |
| 1119 (CME003 2333-34) [Carneros Reservoir] | 2 page document, dated January 1992 "Carneros Reservoir." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 30 at 35.<br><br>The log represents that this document was attached to a 4/9/97 note from Lou Capitanio to Pat Godley, Mary Egger, and Gary Latham and was authored by Capitanio.<br><br>The document is pre-decisional, but appears largely to be factual and includes statements from the public domain. There is no evidence that this document was prepared for any "decision-maker." Given the technical nature of the text, the court discounts the Fygi representation that "[r]eleasing this type of advice to the public, in general, would have a chilling effect on the willingness of a person providing such advice because it could subject that person to criticism or second-guessing." Fygi Decl. ¶ 30 at 35. This document is not subject to the deliberative process privilege and should be produced. |

| | |
|---|---|
| 1121 (CME015 1948-49) [Stevens Zone] | Two page document "Stevens Zone Protocol Issue." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 31 at 36.<br><br>The log represents that this document was authored by Mary Egger "for advice to the ASFE and transmitt[ed] on 9-7-00." This document is pre-decisional, but contains both factual and deliberative content. The first two paragraphs are factual and should be produced. Assuming *arguendo* that the balance of the document contains deliberative content, the handwritten note on CME01501948 and Pro Comment on Alternative 2 "Eliminates . . . by EPTs" is highly relevant to *ex parte* communication allegations.<br><br>The court has balanced Chevron's request to have this document produced in its entirety to establish a potential breach of the Equity Process Agreement against the competing interest of protecting "agency officials, deliberative, advisory opinions and recommendations" and determined that Chevron has established a compelling need that outweighs the harm to the Government. *See Senate of Puerto Rico,* 823 F.2d at 585; *see also Marriot Int'l.*, 437 F.3d at 1307; *see also* July 24, 2006 Chevron Status Report at 14. |
| 1123 (CME025 627-28) [Stevens Zone] | Duplicate of 1121, without handwritten note. Same ruling as 1121. |
| 1126 (CME025 802-09) [Stevens Zone] | Another draft "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve" undated with red-line edits represented as being from Ms. Egger and the "HQ team." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 12.<br><br>The document is pre-decisional, contains deliberative content, and is subject to the deliberative process privilege. To the extent this document contains factual information, other documents that should be produced contain that information, such as folder 980. Therefore, there is no need for this document to be produced. |

| | |
|---|---|
| 1127 (CME025 810-17) [Stevens Zone] | Another draft "Preliminary Decision Finalizing Participation Percentages In Production From The Stevens Zone Naval Petroleum Reserve No. 1" undated with red-line edits represented as being from Mary Egger. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 12 at 12.<br><br>The document is pre-decisional, contains deliberative content, is subject to the deliberative process privilege. To the extent this document contains factual information, other documents that should be produced contain that information, such as folder 980. Therefore, there is no need for this document to be produced. |
| 1135 (CLC001 4094-95) [DGZ Carneros Equity Review] | "DGZ/Carneros Equity Review," dated April 7, 1997, with handwritten notes and notation "Privileged and Confidential," represented to have been made by Louis Capitanio. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 33 at 42.<br><br>The redacted text is pre-decisional, deliberative, and is subject to the deliberative process privilege. The chart under "<u>CARNEROS OPTION SUMMARY</u>" and reference to including a handwritten note "Record not complete . . . for later argument" and a "side agreement," may be relevant to establishing proper *ex parte* communications. Chevron, however, has not established a "compelling need" for this document. |
| 1472 (CDE013 32979-87) [Stevens Zone] | Undated draft cover letter (CDE01332979) transmitting another draft "Decision Regarding Dispute Over Data To Be Submitted Regarding Equity Finalization Implementation Process For the Stevens Zone," with red-line edits. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 36 at 47.<br><br>The draft cover letter is pre-decisional, but factual and not privileged and should be produced. The attached document (CDE01332980-87). The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 36 at 47.<br><br>This document is pre-decisional, deliberative, and is subject to the deliberative process privilege. To the extent that CDE01332980-83 contains factual content it should be produced. |

| | |
|---|---|
| 1486 (CLC001 2657-668) | The redacted text of the 9/16/99 10:30 a.m. e-mail (CLC00102657) from Gena Cadieux to Mary Egger re: "comments/revision of draft decision" is pre-decisional, deliberative, and subject to the deliberative process privilege. The redacted text of the 9/16/99 12:35 p.m. e-mail from Lou Capitanio to Mary Egger copied to Arnold Smits and Gary Latham is pre-decisional, deliberative, and is subject to the deliberative process privilege. Undated draft cover letter (CLC00102658) and draft decision (CLC00102659-68). Same ruling as 1472. |
| 1497 (CDE013 33271-82) [Stevens Zone] | 9/20/99 draft cover letter (CDE01333271) and another draft "Decision Regarding Dispute Over Data." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 36 at 47. Same ruling as 1472. |
| 1505 (CDE013 33161-172) [Stevens Zone] | 9/20/99 draft cover letter and draft decision. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 36 at 47. Same ruling as 1472. |
| 1507 (CDE003 9030-42) [Stevens Zone] | A different 9/20/99 draft cover letter and draft "Decision Regarding Dispute Over Data" with red-line edits. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 36 at 47. Same ruling as 1472. |
| 2286 (CDE007 17619-21) (CDE007 17623-25) [Stevens Zone] | This document contains the comments of Gary Latham on a 5/31 draft of the "Stevens Final Decision." The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 36 at 47.<br><br>This document is pre-decisional, deliberative, and subject to the deliberative process privilege. If Mr. Latham, however, functioned as a member of the "DOE filed equity technical team," however, this document may evidence an *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |
| 3801 (CDE00100403) | A draft of options suggested by the DOE technical team and reviewed by the ASFE advisory team regarding the OHA remand with exhibits. *See* 765. |
| 3819 (CDE00100395) | "Draft-3/26/06 (GVL) "III A. Gaps in the Data 3/26/06)." This document is pre-decisional but factual and should be produced. |
| 3946 (CDE005 30) | (CDE00500030) Same ruling as 816 (CDE00100080). |
| 3954 (CDE007 3389-96) | (CDE00703389-96) is similar to 816 (CDE00100072-79). A draft |

| | |
|---|---|
| [Stevens Zone] | "Preliminary Decision Finalizing Participation Percentages in Production From the Stevens Zone Naval Petroleum Reserve Numbered 1" with red-line edits. The Fygi Declaration asserts that this document is subject to the deliberative process privilege. *See* Fygi Decl. ¶ 37 at 50.<br><br>This document is pre-decisional, deliberative, and is subject to the deliberative process privilege. The court has determined that Chevron has not established a compelling need for disclosure of this document. |
| 3956 (CDE007 3407-14) | A different draft of 3954. Same ruling as 3954. |
| 3964 (CDE007-3380-87) | Same document as 3954. Same ruling as 3954. |
| 3970 (CDE007-3556-63) | Another draft of 3954, without red-line edits. Same ruling as 3954. |
| 3978 (CDE007 3547-54) | Another draft of 3954, without red-line edits. Same ruling as 3954. |

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**

# In the United States Court of Federal Claims

No. 04-1365C
Filed: August 28, 2008*

| | |
|---|---|
| CHEVRON U.S.A., INC., | |
| Plaintiff, | |
| v. | |
| THE UNITED STATES, | |
| Defendant. | |

## FINAL ORDER REGARDING DOCUMENTS THE GOVERNMENT ASSERTS ARE SUBJECT TO THE WORK PRODUCT PRIVILEGE

| **Documents Withheld** | **Ruling** |
|---|---|
| 13 | October 20, 1999 fax cover sheet from Butch Gangle to "DOE SOZ Equity Team" copied to Mary Egger, Greg Thorpe, Alan Burzlaff re: "EHEC Minutes - 1956 Objection."<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, however, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual not subject to the attorney work-product privilege. Assuming *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source and if any of the aforementioned functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |

* This Final Order was issued on January 28, 2008, together with *Chevron U.S.A., Inc.* v. *United States*, 80 Fed. Cl. 340 (2008), but placed under seal.

| | |
|---|---|
| 27 | October 3, 2000 fax cover sheet from Butch Gangle to Mary Egger forwarding a redacted May 19, 1981 letter to Chevron from Barton House, Department of Energy ("DOE") Acting Assistant Secretary.<br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Assuming *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source. |
| 65 | This document (CME009-00447), prepared by Systems Technology Associates ("STA"), titled "Elk Hills Field: Decoupling of Sale and Equity Finalization Financial Adjustment Calculation for Equity Decoupling Option B-2: Oil Equivalent Reserves (Oil and Gas only) from DOE Reserve Report (10/1/95)," marked "Privileged Confidential," is a factual spreadsheet.<br><br>This document, faxed from 805-325-0038, as page six of a larger document on April 7, 1997, is relevant to the issues in this case, because the log indicates this document was located in Ms. Egger's files. If STA's employees functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Chevron has demonstrated a "substantial need" for this document or that "undue hardship" exists as this data cannot be obtained from another source. *See, e.g.*, July 24, 2007 Chevron Report at 14. |
| 202 | This document (CME01602590-96) is a copy of the final version of Administrative Order No. 96-01, signed by Patricia Fry Godley on July 8, 1996, together with "Attachment 1 - Documentation To Be Submitted Prior to Final Presentations, Dry Gas Zone, Carneros Zone, and Stevens Zone."<br><br>This document subsequently was faxed from O'Melveny & Myers on July 7, 1998 to an unknown designation, as part of |

a larger 30 page transmittal. The document is in the public domain and not subject to the attorney work-product privilege.

570 February 28, 1997 cover fax sheet from Alan Burzlaff to Wayne Kauffman, with a comment that the attached memo to the Independent Petroleum Engineer ("IPE") is "edited based on comments from DOE Engineers," reflects no attorney thought process nor conveys any information that could be construed as privileged. Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege.

The February 27, 1997 memo attached from Alan Burzlaff to the IPE (Richard Krenek) re: "NSAI Request for Background Information on Well 454-19R," in response to the IPE's February 20, 1997 request to Butch Gangle re: "NSAI [IPE] Request For Background Information on Well 454-19R" (with handwritten notes "Draft 2"). Burzlaff, as a DOE consultant, was a representative of DOE, but Burzlaff was not designated as an "owner" authorized to represent DOE with the IPE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual/technical in nature and is not subject to the attorney work-product privilege.

626 March 25, 1997 cover sheets (CBG0020883-85) from Mary Egger to Owen Olpin, Wayne Kauffman, Ken Schuessler, Alan Burzlaff, and Gary Latham requesting comments on draft letter (CBG0020884) authored by Mary Egger to "the Equity IPE" re: "Legal Issues for Stevens Zone Equity Finalization." The March 25, 1997 cover sheets (CBG0020883-85) are factual and not privileged. The attached draft letter to the IPE contains attorney thought process and is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure

of the text.

631 Fax cover sheet (COM00600009) from Greg Thorpe to Mary Egger, Wayne Kauffman, Alan Burzlaff, and Owen Olpin. This document contains no attorney thought process, is factual, and not subject to the attorney work-product privilege.

March 31, 1997 (COM00600012-13) is a draft of 626, with edits made by Greg Thorpe forwarded to Mary Egger, Wayne Kauffman, Alan Burzlaff, and Owen Olpin marked as "Personal & Confidential Attorney-Client Communication." The edits made by Greg Thorpe contain attorney thought process and are subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

COM00600014 is an attachment to the March 31, 1997 draft letter titled "Chevron's Statement of Potential Legal Issues" was prepared by Chevron and is not privileged.

634 April 1, 1997 fax cover sheet (COM00602479) from Greg Thorpe to Mary Egger. The cover sheet contains no attorney thought process, is factual, and not subject to the attorney work-product privilege.

April 1, 1997 draft of 626 (COM00602481-2) with handwritten edits by Mr. Thorpe contains attorney thought process and is subject to the attorney work-product privilege. Attachment 1 (COM00602483) is titled "alt 1" "Department of Energy's Description of Potential Stevens Zone Legal Issues" and Attachment 2 (COM00602484) is titled "Alt 2." The attachments contain attorney thought process and are subject to the attorney work-product privilege.

782 February 24, 1999 fax cover sheet from Alan Burzlaff to Greg Thorpe, Mary Egger, Wayne Kauffman, and Butch Gangle, forwarding transcripts of Stevens Zone June/July 1997 presentations. Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared

| | |
|---|---|
| | in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege as it relates to Stevens Zone presentations made by both parties in June/July 1997.<br><br>The more relevant issue to this case is whether any of the recipients functioned as members of the "DOE field equity technical team." If so, the header of the fax cover sheet (CME0102240), which was produced, may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The transcript pages already were provided to Chevron with edits, so any privilege regarding the edits has been waived. |
| 811 | This file contains several documents, pages of which were withheld by the Government, because of markings on certain pages. The log represents that Butch Gangle was the author but does not address specifically the comments and markings, which may have been made by Mary Egger. The markings on: CME01101932-33, 35, 40, and 46 (editorial notes), 50-55 (brackets around Norme J. Hyne, Ph.D. definitions from a public document *Dictionary of Petroleum Exploration, Drilling, & Production*), and 2003 (editorial notes) do not reflect any attorney thought process. The markings on 62 (math calculation), 63 (notation in bracket around text), and 66 (underlining) contain attorney thought process and are subject to the attorney work-product privilege. As to 62, 63, 66, Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists because this data cannot be obtained from another source. |
| 889 | (1848-49) E-mail string. The redacted text of the August 5, 1999 3:25 p.m. e-mail from Mary Egger to Alan Burzlaff, Butch Gangle, Greg Thorpe, Ken Schuessler and Owen Olpin re: "Disappointing News" contains attorney thought process and is subject to the attorney work-product privilege.<br><br>Redacted text of the August 26, 1999 e-mail from Mary Egger to Butch Gangle re: "Carneros Brief." Although the content is factual it arguably could be construed to contain attorney thought process and is subject to the attorney work-product privilege. |

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1851) Redacted text of the July 20, 1999 1:06 p.m. e-mail from Alan Burzlaff to Butch Gangle re: "Questions for NSAI on Wednesday" reflects no attorney thought process, nor conveys any information, to an attorney, that could be construed as subject to the attorney work-product privilege.

* * *

(1852) Redacted text of the July 20, 1999 e-mail from Butch Gangle to Alan Burzlaff re: "Questions for NSAI on Wednesday" reflects no attorney thought process nor conveys any information to an attorney that could be construed as subject to the attorney work-product privilege.

* * *

(1853) Redacted text of the July 14, 1999 2:02 p.m. e-mail from Alan Burzlaff to Greg Thorpe re: "NSAI Bombshell." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists because this data cannot be obtained from another source.

* * *

(1856) Redacted text of the May 25, 1999 3:41 p.m. e-mail from Mary Egger to Greg Thorpe copied to Alan Burzlaff, Ken Schuessler, Wayne Kauffman, and Butch Gangle re: "SOZ Amendment." The attached text contains attorney thought process and is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication, prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this request, without disclosure of the text.

* * *

(1856) Redacted text of the June 2, 1999 12:00 p.m. e-mail from Mary Egger to Greg Thorpe copied to Alan Burzlaff, Christine Suh, Butch Gangle, Ken Schuessler, and Wayne Kauffman re: "Draft response to Chevron." The text contains attorney thought process and is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication, prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this request, without disclosure of the text.

* * *

(1877) Redacted text of the September 15, 1999 1:34 p.m. e-mail memo from Greg Thorpe to Mary Egger, Butch Gangle, Alan Burzlaff, and Ken Schuessler re: "ILA Letter" contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1879-84) Redacted text of the September 13, 1999 e-mail from Butch Gangle to Mary Egger copied to Greg Thorpe re: "ILA Call." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1888) Redacted text of the August 20, 1999 6:23 p.m. e-mail from Mary Egger to Greg Thorpe, Butch Gangle, Alan Burzlaff, Ken Schuessler, with cc: to Christine Suh re: "telecom 8/31" arguably could be construed as attorney thought process and is subject to the attorney work-product privilege.

Redacted text of the August 30, 1999 7:58 a.m. e-mail from Greg Thorpe to Mary Egger, Butch Gangle, Alan Burzlaff, and Ken Schuessler copied to Christine Suh re: "Telecon 8/31" contains attorney thought process that is strategic in nature and is subject to the attorney work-product privilege.

* * *

The text of the September 1, 1999 9:15 p.m. reply from Butch Gangle re: same. Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, however, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege.

Chevron, however, has not demonstrated a "substantial need" for this document and that this data cannot readily be obtained from another source.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1894) Redacted text of the August 27, 1999 8:35 a.m. e-mail from Butch Gangle to Mary Egger and Greg Thorpe re: " FW telecom 8/31" copied to Alan Burzlaff, Ken Schuessler and Gary Holcomb. Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual, as it reports on an August 26, 1999 telephone call from Norm Stone (Chevron) and is not subject to the attorney work-product privilege. Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an undue hardship exists, because this information cannot readily be obtained from another source, and if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See, e.g.*, July 24, 2007 Chevron Report at 21.

The Government has represented that only certain individuals were authorized to represent DOE as an owner with the IPE. *See* Gov't Resp. to Pl. Int. 8 at 23-24. This document evidences that Gary Latham may have been serving in this capacity with the IPE, at the direction of Ms. Egger.

* * *

In addition, if any of the aforementioned functioned as members of the "DOE field equity team," this document may

evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

Since this document may evidence two potential violations of the Equity Process Agreement, the court has determined that Chevron has established a substantial need for this document and the relevant information cannot readily be obtained from another source. *See, e.g.*, July 24, 2007 Chevron Report at 21.

* * *

(1910) Redacted text of the August 6, 1999 9:06 p.m. e-mail from Alan Burzlaff to Mary Egger, Greg Thorpe, Owen Olpin, Christine Suh, Ken Schuessler, and Butch Gangle re: "IRA Conversion Guidance." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege.

Redacted text of the August 7, 1999 7:44 a.m. e-mail from Butch Gangle in response to Alan Burzlaff, Christine Suh, Butch Gangle, Greg Thorpe, Ken Schuessler, and Owen Olpin re: "Disappointing News." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1914) Redacted text of the August 5, 1999 12:25 p.m. e-mail from Mary Egger to Alan Burzlaff, Christine Suh, Butch Gangle, Greg Thorpe, Ken Schuessler, and Owen Olpin re:

"Disappointing news" contains attorney thought process and is subject to the work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The text "I'm most interested . . . affect is" is directly relevant to whether any of the recipients of this memo were serving as members of the "DOE field equity team." Therefore, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists because this information cannot be readily obtained from another source.

Redacted text of the August 5, 1999 6:45 p.m. reply from Butch Gangle to Alan Burzlaff re: same copied to same recipients as 12:25 p.m. e-mail. Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, however, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. In addition, the text "The evidence is manifest . . . not a PE" is directly relevant to the issues in this case. Therefore, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source.

* * *

(1941) Redacted text of the July 8, 1999 9:06 a.m. e-mail from Butch Gangle to Alan Burzlaff copied to Greg Thorpe and Mary Egger re: "Equity Issues." Butch Gangle was a DOE engineer, not supervised by Ms. Egger nor outside counsel, and the content is factual. Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information cannot readily be obtained from another source.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1941) Redacted text of the July 8, 1999 2:21 p.m. e-mail reply from Alan Burzlaff re: same. Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1942-1943) Redacted text of the July 2, 1999 12:51 p.m. e-mail from Greg Thorpe to Ken Meeks copied to Butch Gangle, Mary Egger, Alan Burzlaff, Ken Schuessler, Owen Olpin, and Christine Suh re: "Equity Issues" contains attorney thought process and is subject to the work product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(1943) Redacted text of the July 8, 1999 12:06 p.m. e-mail from Butch Gangle to Alan Burzlaff copied to Greg Thorpe and Mary Egger re: "Equity Issues." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it

reports on a technical discussion with Ken Meeks earlier in the day of July 8, 1999 and is not subject to the attorney work-product privilege. Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information cannot be obtained from another source, and if any of the aforementioned functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

(1982-top 1983) Redacted text of the July 21, 1998 9:51 a.m. e-mail from Wayne Kaufman to Mary Egger copied to Butch Gangle, Jim Murphy, Greg Thorpe, and Jay Williams re: "CUSA Proposed Communications Protocol draft."

In this document, Kauffman provides the factual views of the "DOE EFT" re: the present protocol. Assuming, *arguendo,* that this document is subject to the attorney work-product privilege, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the aforementioned functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See, e.g.*, July 24, 2007 Chevron Report at 21-22.

* * *

(1983-top 1984) Same ruling as (1982-top 1983).

* * *

(1984-top 1985) Redacted text of the July 20, 1998 11:17 a.m. e-mail from Alan Burzlaff to Wayne Kauffman copied to Ken Schuessler, Kevin Beacon, and Butch Gangle re: "CUSA Proposed Communication Protocol" to "express concern about *ex parte communications*," the central issue in this case.

Burzlaff, as a DOE consultant, was a representative of DOE.

The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege. Assuming, *arguendo*, that this document is subject to the attorney work-product privilege, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the aforementioned functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See, e.g.*, July 24, 2007 Chevron Report at 22.

* * *

(1985) Redacted text of the July 15, 1998 7:56 p.m. e-mail from Alan Burzlaff to Butch Gangle copied to Carl T. Price, Jim Murphy, Jeff Sands, Ken Schuessler, Wayne Kauffman, and Ira Kornreich re: "Format of NSAI Deliverables." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

* * *

(2221) Redacted text of the March 8, 2000 1:14 a.m. e-mail from Butch Gangle to Mary Egger copied to Greg Thorpe and Alan Burzlaff re: "Stevens Final Equity Recommendation."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any

mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as to the first three paragraphs.

As to the last paragraph, however, Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

* * *

(2258) Redacted text of the February 23, 2000 3:16 p.m. e-mail from Butch Gangle to Mary Egger re: "Of all surprises."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, however, does not reveal any mental process, plans, strategies, tactics, or impressions, but is a factual report regarding the (February) 7, 2000 SOZ Interim Meeting, and communication of same to Gary Latham. Assuming *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source and if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See, e.g.*, July 24, 2007 Chevron Report at 24 (re. 1666).

* * *

(2272-73) Redacted text of the February 17, 2000 10:04 p.m. e-mail from Butch Gangle to Mary Egger re: "SOZ 7th Interim Meeting Today." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization

Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege. Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

* * *

(2484) Redacted text of the October 6, 1999 5:16 p.m. e-mail from Greg Thorpe does not request nor convey legal advice nor reflect attorney thought process, and is subject neither to the attorney-client nor work product privileges. The deleted text of the 10/08/99 2:29 p.m. e-mail does not request nor convey legal advice nor reflect attorney thought process, and is subject neither to the attorney-client nor work product privilege, except for "esp . . . matters" which contains attorney thought process and is subject to the work product privilege.

* * *

(2486-87) Redacted text of the 10/1/99 5:01 a.m. e-mail from Butch Gangle to Mary Egger, Greg Thorpe, Alan Burzlaff, and Gary Holcomb. The first two paragraphs and last paragraph are not subject to any privilege. The remainder of the document neither requests nor conveys legal advice, does not reflect attorney thought process, and is subject neither to the attorney-client nor work product privilege. The text, however, is pre-decisional, contains deliberative content, and is subject to the deliberative process privilege.

* * *

(2488-top 2489) Same as (2487).

* * *

(2489) Redacted text of the 9/28/99 5:34 p.m. e-mail from Greg Thorpe conveys legal advice and is subject to the attorney-client privilege. The 9/28/99 12:19 p.m. e-mail from Butch Gangle does not request or convey legal advice, reflect attorney thought process, and is subject neither to the attorney-client nor work product privilege. The text, however, is pre-

| | |
|---|---|
| | decisional, contains deliberative content, and is subject to the deliberative process privilege, except for the first three sentences, which are factual and should be disclosed. |
| 952 | Redacted text of the May 6, 1998 cover fax (CAS00501280-83) from Wayne Kauffman to Gary Latham copied to Mary Egger, Owen Olpin, and Greg Thorpe re: "For 10 a.m. (Pacific) time conference."<br><br>Kauffman was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege.<br><br>The attached May 6, 1998 memo (CAS00501281) from Alan Burzlaff to Wayne Kauffman re: "Stevens Zone Equity Finalization Potential 'Capture' Analysis Legal Issue," referencing an April 30, 1998 letter from Chevron's counsel, Cynthia Giumarra, to Ms. Egger.<br><br>Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual, as the memo concludes: "There is no need to issue supplemental legal guidance to the IPE concerning a technical issue," and is not subject to the attorney work-product privilege. Assuming, *arguendo*, this memo is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. *See, e.g.*, July 24, 2007 Chevron Report at 22. |

The factual/technical attachments re: "Capture Analysis," "NSAI Equity Spreadsheet," "315 Shale Summary (2pgsX15)," "Equity Analysis Endpoints C Shale," and "Equity Analysis Endpoints D Shale," contain factual/technical content, contain no attorney work-product, and are not privileged; however, the handwritten comments and markings on CAS000501284-88 (NSAI spreadsheets and presentation slides) may be withheld.

953 Same ruling as 952.

954 Same ruling as 952.

978 "Technical Issues for Discussion" (CBG0030310), is an attachment to a June 4, 1998 letter from Mary Egger to Cynthia Giumarra, Assistant General Counsel, Chevron, and is not privileged.

E-mail string (CBG0030311-15). The redacted text of the June 4, 1998 12:07 p.m. e-mail (CBG0030315) from Alan Burzlaff to Mary Egger re: "Proposed Letter to CUSA 6/4/98." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege.

Redacted text of the June 4, 1998 11:01 a.m. reply e-mail (CBG0030315) from Mary Egger to Greg Thorpe, Wayne Kauffman and Ken Schuessler re: same contains attorney thought process and is subject to the attorney work-product privilege.

* * *

Text of the June 4, 1998 12:13 p.m. e-mail (CBG0030314) from Alan Burzlaff to Mary Egger copied to Ken Schuessler, Greg Thorpe, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit

has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

Text of the June 4, 1998 12:28 p.m. e-mail (CGB0030312) from Wayne Kauffman to Mary Egger re: "Proposed Letter to CUSA 6/4/98." Kauffman was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege. Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

Redacted text of the June 4, 1998 2:14 p.m. e-mail (CBG0030311) from Greg Thorpe to Alan Burzlaff, Mary Egger, Ken Schuessler, and Wayne Kauffman re: "Proposed Letter to CUSA 6/4/98" contains attorney thought process and is subject to the attorney work-product privilege.

* * *

June 4, 1998 letter draft (CBG030317) from Mary Egger to Ms. Giumarra (Chevron) copied to Greg Thorpe, Own Olpin, Wayne Kauffman, and Alan Burzlaff re: "Stevens Zone Equity – For discussion purposes only" contains attorney thought process and is subject to the attorney work-product privilege.

(CBG030318) Same ruling as CBG030317.

* * *

E-mail string. (CBG0030319-21) June 4, 1998 9:58 a.m. e-mail (CBG0030321) from Wayne Kauffman to Mary Egger copied to Alan Burzlaff and Greg Thorpe re: "Draft letter to CUSA." Kauffman was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified

as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

* * *

June 4, 1998 10:19 a.m. reply (CBG0030320) from Mary Egger re: "Draft letter to CUSA" contains attorney thought process and is subject to the attorney work-product privilege.

* * *

June 4, 1998 12:07 p.m. e-mail (CBG0030316) from Alan Burzlaff to Mary Egger re: "Proposed letter to CUSA 6/4/98." Same ruling as 978 above.

* * *

June 4, 1998 10:16 a.m. e-mail (CBG0030319) from Mary Egger to Alan Burzlaff re: "Proposed Letter to CUSA 6/4/98" contains attorney thought process and is subject to the attorney work-product privilege.

Draft June 4, 1998 memo with handwritten notes (CBG0030323) from ABB (Alan Burzlaff) marked June 18, 1998 re: "Possible Instruction Letter Paragraph" re: capture issue. Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

* * *

(CBG003025-27) Draft letter to Ms. Cynthia H. Giumarra (Chevron) re: "Stevens Zone Equity – For discussion purposes

only" is the same text as CBG0030317 with handwritten note "Draft – For Review/Comment," and is subject to the attorney work-product privilege.

* * *

(CBG0030329) Edits to CBG0030325 from Greg Thorpe to Mary Egger, Alan Burzlaff, Ken Schuessler, and Wayne Kauffman re: "Possible Instruction Letter Paragraph (new language in bold)" contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

(CBG0030330) is a June 30, 1998 memo from Alan Burzlaff to Mary Egger/Greg Thorpe re: oil migration issue. Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

993 January 25, 1998 e-mail from Mary Egger to Greg Thorpe re: "Draft Comments." contains attorney thought process and is subject to the attorney work-product privilege.

1025 August 3, 1998 4:11 p.m. e-mail from Alan Burzlaff to Greg Thorpe, Wayne Kauffman, Mary Egger copied to Jim Murphy, Butch Gangle, and Ken Schuessler re: "Equity Finalization Data Cutoff Dates." Burzlaff, as a DOE consultant, was a representative of DOE. The text, although prepared in connection with the Stevens Zone Equity Finalization Process, however, does not reveal any mental process, plans, strategies,

| | |
|---|---|
| | tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege. |
| 1027 | Same ruling as 1025. |
| 1057 | Redacted text of the September 22, 1998 memo from Alan Burzlaff to Wayne Kauffman copied to Mary Egger, Ken Schuessler, and Jim Murphy re: "Shallow Oil Zone (SOZ) Equity Finalization Proposed Cutoff Date" copied to Mary Egger, Ken Schuessler and Jim Murphy.<br><br>The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, because it is a factual description of the September 15, 1998 SOZ interim meeting of the "DOE and Chevron Equity Finalization Teams" and the IPE. The memo is not subject to the attorney work-product privilege, nor are: Attachment 1 (SOZ Equity Finalization Data Cutoff Data – handout at meeting); Attachment 2 (NSAI minutes of July 9-10, 1996 meeting (Page 3)); Attachment 3 (August 2, 1996 letter from DOE to Chevron); Attachment 4 (August 15, 1986 letter from Chevron to Wayne Kauffman re: Production Database); Attachment 5 (Stevens Zone - Chevron Presentation Slide 24 Reservoir "Current WOC Data"); Attachment 6 (Chevron Response to NSAI Provisional Stevens Zone Recommendation - March 1988); Attachment 7 (Page 2 of the May 19, 1997 Agreement Regarding Equity Redetermination Process); Attachment 8 (File memo, dated May 15, 1997, by Gary Latham re: May 13, 1997 "Discussions with Chevron and NSA on process ground rules for SOZ equity finalization" stamped "Privileged Confidential, Highly Sensitive," including comment on the following topics: "Potential Areas of Agreement that would reduce the scope of NSAI's tasks," "Sand Counting Techniques," "Data Cutoff," and "Tentative Schedule"). Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source. |
| 1060 | Same ruling as 1057. |
| 1071 | 1071 to 1077, 1079 to 1087, and 1090 are individual pages from 1090, a 20 page presentation prepared by Systems |

| | |
|---|---|
| | Technology Associates, Inc. re: "Potential Stevens Zone Legal Issue 'Use of Capture Methodology' - September 30, 1998 Briefing." Although 1090 contains the caption "Attorney Client Communication-Privileged and Confidential," the document contains no thought process as it is technical/factual in nature, and is not subject to the attorney work-product privilege. |
| 1072 | Same ruling as 1071. |
| 1073 | Same ruling as 1071. |
| 1074 | Same ruling as 1071. |
| 1075 | Same ruling as 1071. |
| 1076 | Same ruling as 1071. |
| 1077 | Same ruling as 1071. |
| 1079 | Same ruling as 1071. |
| 1080 | Same ruling as 1071. |
| 1081 | Same ruling as 1071. |
| 1082 | Same ruling as 1071. |
| 1083 | Same ruling as 1071. |
| 1084 | Same ruling as 1071. |
| 1085 | Same ruling as 1071. |
| 1086 | Same ruling as 1071. |
| 1087 | Same ruling as 1071. |
| 1090 | September 30, 1998 Systems Technology Associates, Inc. Briefing, "Potential Stevens Zone Legal Issue - Use of Capture methodology." Five slides in this presentation arguably could be construed to be subject to the attorney work-product privilege: CME01302117 ("Legal Issue on Use of Capture"); CME01302132 ("What Are Chevron's Issues"); CME01302134 ("What are Merits of Chevron's Legal Arguments"); CME01302135 ("Stevens Zone Legal Issue"); CME01302136 ("NSAI Shale Methodology"). The Government's log, however, does not represent that these slides were prepared by or presented to an attorney. |

These five slides were prepared in connection with the Stevens Zone Equity Finalization Process and contain a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, only these five slides are subject to the attorney work-product privilege.

1108 October 22-23, 1998 e-mail string. October 22, 1998 6:27 p.m. e-mail (CSI0040688) from Alan Burzlaff "To all" re: "Revised Equity Data Cutoff Date Proposal." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process, but contains factual information about the cutoff date for NSAI. Accordingly, this text is not subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

October 23, 1998 8:55 a.m. memo (CSI0040687-88) from Mary Egger to Greg Thorpe, Ken Schuessler, Wayne Kauffman, and Alan Burzlaff copied to Butch Gangle and Jim Murphy re: "Revised Equity Cutoff Date Proposal" contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

October 23, 1998 8:32 a.m. e-mail (CSI0040687) from Ken Schuessler to Mary Egger, Greg Thorpe, Wayne Kauffman, Alan Burzlaff copied to Butch Gangle and Jim Murphy re: "Revised Equity Data Cutoff Date Proposal." Schuessler, as a DOE consultant, was a representative of DOE. The redacted

text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. In addition, the Schuessler memo regarding the Stevens Zone has a factual statement relevant to the Government's causation theory: "Despite Chevron . . . the DOE." *See* 6/15/07 TR at 10. Assuming, *arguendo*, this statement is subject to the attorney work-product privilege, Chevron, however, has not demonstrated a "substantial need" for this statement and that "undue hardship" exists, because this information can be obtained from another source.

1123 October 28-29, 1998 e-mail string. The October 28, 1998 7:58 p.m. e-mail (CDE00304103) from Alan Burzlaff "to all" re: "DOE Proposed Materiality Question for NSAI." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

October 29, 1998 6:21 a.m. e-mail (CDE00304102) from Mary Egger to Ken Schuessler, Greg Thorpe, Wayne Kauffman, and Alan Burzlaff copied to Jim Murphy and Butch Gangle re: "DOE Proposed Materiality Question for NSAI," contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

October 29, 1998 10:15 a.m. e-mail (CDE00304102) from Butch Gangle to Mary Egger re: same. Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege. Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1142 November 19, 1998 4:21 a.m. e-mail from Alan Burzlaff to Greg Thorpe re: "Item 1Writeup for Stevens Zone Capture Legal Issue" describes the fact that Mr. Burzlaff prepared a "write-up of item 1 for the subject Capture legal issue." The "write-up" is not included. Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1145 November 23, 1998 fax cover sheet from Greg Thorpe and Stephanie Walter to Alan Burzlaff, Butch Gangle, Mary Egger, and Owen Olpin attaching a "redraft of technical review," *i.e.,* November 23, 1998 System Technology Associates' "Description of the IPE's 31S Shale Methodology." The edits on this document contain attorney thought process and are subject to the attorney work-product privilege. An undated version of underlying text, however, is discussed at 1133.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1154 December 1, 1998 fax cover sheet from Greg Thorpe to Ken Schuessler, Alan Burzlaff, Mary Egger, Owen Olpin, and Wayne Kauffman forwarding "Revised draft of 'technical' piece." The attached document is re-named "Netherland Sewell's 31S Shale Methodology." The edits on this document contain attorney thought process and are subject to the attorney work-product privilege. An undated version of underlying text is discussed at 1133.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1170 December 7, 1998 memo from Butch Gangle to Greg Thorpe and Mary Egger copied to Wayne Kauffman, Alan Burzlaff, Ken Schuessler re: "NSAI EFT Conference Call on December 7, 1998." Gangle was a DOE engineer and a representative of

DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, since this memo reports on an "Equity Finalization Team teleconference" where Chevron participated.

If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1237 February 3, 1999 7:51 p.m. e-mail (CDE00307577-78) from Alan Burzlaff to Mary Egger and Greg Thorpe re: "BTU Legal Issue Internal Briefing."
Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process, in part, and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text, in part, is subject to the attorney work-product privilege.

The first paragraph, however, is factual, relevant to the Government's causation theory, and does not reveal any mental process, plans, strategies, tactics or impressions and is not subject to the attorney work-product privilege. *See* 6/15/07 TR at 10.

Assuming, *arguendo*, this paragraph is privileged, Chevron has demonstrated a "substantial need" for the first paragraph and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See, e.g.*, July 24, 2007 Chevron Report at 22.

1243 February 16, 1999 memo (CSI0031233) from Greg Thorpe to Mary Egger, Wayne Kauffman, Butch Gangle, Alan Burzlaff, and Ken Schuessler with cc: to Christine Suh and Owen Olpin re: "Value Weighing." The memo contains attorney thought process and is subject to the attorney work-product privilege, however, the attachment "Table III- Results of Operations For Oil and Gas Producing Activities" is from the Chevron Corp. 1998 Annual Report, is in the public domain, and is not privileged, without the notation.

In addition, if any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1255 March 5-6, 1999 e-mail string. March 5, 1999 4:59 p.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle, Ken Schuessler, Gary Holcomb, Wayne Kaufman, Greg Thorpe regarding "Chevron's Data Cutoff Proposal dated March 5." Burzlaff, as a DOE consultant, was a representative of DOE. The text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

If any of the above-named, however, functioned as a member of the "DOE field equity technical team" this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

March 6, 1999 e-mail from Ken Schuessler to Alan Burzlaff regarding "Chevron's Data Cutoff Proposal dated March 5." Burzlaff, as a DOE consultant, was a representative of DOE. The text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual

| | |
|---|---|
| | information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 1286 | April 15, 1999 e-mail string. The redacted text of the April 15, 1999 3:30 p.m. e-mail re: "Final Draft of Technical Report being faxed" (CDE00312417) from Alan Burzlaff "To all" reports on the fact that Alan Burzlaff worked on a draft "Technical Report," but the report itself was not included. Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege.<br><br>If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.<br><br>* * *<br><br>Redacted text of the April 15, 1999 5:21 p.m. e-mail re: "Final Draft of Technical Report being faxed" (CDE00312417) from Mary Egger to Alan Burzlaff re: "Final Draft of Technical Report being Faxed" contains attorney thought process and is subject to the attorney work–product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |
| 1294 | Redacted text of April 21, 1999 memo (CME01102353-55) from Alan Burzlaff to Greg Thorpe, Mary Egger, Wayne Kauffman, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh, re: "Analysis of Chevron's Equitable Claim." |

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)).

Table 1 "Hypothetical Equity Percentage Participation v. Stevens Zone Fixed Sale Equity" likewise could be construed as attorney work-product. Table 2 (CME01102354) "Impact of Equity Percentage Participation on the Final Adjustments for Historical Unit Production by the Equity Decoupling Agreement," however, is factual and relevant to the Government's causation theory. *See* 6/15/07 TR at 10.

In addition, if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text, other than Table 2, and factual explanation on 02354 that follows.

CME01102355, however, arguably could be construed under governing precedent as subject to the attorney work-product privilege. Accordingly, this text is subject to the attorney work-product privilege. Chevron, however, has not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

1372 E-mail string dated July 20, 1999. Redacted text of a July 20, 1999 7:02 a.m. e-mail (CBG0031080-81) from Butch Gangle to Alan Burzlaff, Ken Schuessler, Gary Holcomb, James Gruber re: "Questions for NSAI on Wednesday."

Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains factual information that does not appear to have been communicated to any attorney. Assuming, *arguendo*, this document is

privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source.

Accordingly, this text is not subject to the attorney work-product privilege.

* * *

July 20, 1999 10:07 a.m. e-mail from Alan Burzlaff to Butch Gangle, Ken Schuessler, Gary Holcomb, and James Gruber copied to Mary Egger and Greg Thorpe re: "Questions for NSAI on Wednesday."

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

Redacted text of the July 20, 1999 12:06 p.m. e-mail from Greg Thorpe to Alan Burzlaff, Butch Gangle, Ken Schuessler, Gary Holcomb, and James Gruber copied to Mary Egger re: "Questions for NSAI on Wednesday" contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

| | |
|---|---|
| 1373 | *See* 1372 re: July 20, 1999 7:02 a.m. e-mail and July 20, 1999 1:06 p.m. e-mail.<br><br>Redacted text of the July 20, 1999 5:58 p.m. e-mail (CDE00304407) from Mary Egger to Butch Gangle, Ken Schuessler, Gary Holcomb, James Gruber, and Alan Burzlaff copied to Greg Thorpe re: "Questions for NSAI on Wednesday"contains attorney thought process and is subject to the attorney work-product privilege.<br><br>If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |
| 1384 | July 23-26, 1999 e-mail string.<br><br>Redacted text of the July 23, 1999 8:49 a.m. e-mail (CDE00304417-18) from Alan Burzlaff to Greg Thorpe, Christine Suh copied to Mary Egger, Ken Schuessler, and Butch Gangle re: "Comments on Cutoff Date Brief." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.<br><br>* * *<br><br>Redacted text of the July 23, 1999 1:23 p.m. reply (CDE00304417) from Greg Thorpe to Alan Burzlaff conveys |

attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

Redacted text of the July 23, 1999 12:44 p.m. e-mail (CDE00304416-17) from Mary Egger to Alan Burzlaff, Greg Thorpe, Christine Suh, Ken Schuessler, and Butch Gangle re: "Comments on Cutoff Date Brief" conveys attorney thought process and is subject to the attorney work-product privilege. Ms. Egger's memo, however, directly discusses the issue in this case, *i.e.*, the parties compliance with the Equity Process Agreement. Therefore, Chevron has demonstrated a "substantial need" for these two sentences and that an "undue hardship" exists, because this information cannot readily be obtained from another source.

* * *

July 25, 1999 1:43 p.m. e-mail (CDE00304416) from Greg Thorpe to Mary Egger, Alan Burzlaff, and Christine Suh copied to Ken Schuessler and Butch Gangle contains attorney thought process and is subject to the attorney work-product privilege.

* * *

Redacted text of the July 26, 1999 11:20 a.m. e-mail (CDE00304416) from Alan Burzlaff to Greg Thorpe re: "Comments on Cutoff Data Brief."
Burzlaff, as a DOE consultant, was a representative of DOE.

The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing

Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

The July 26, 1999 12:23 p.m. e-mail (CDE00304416) from Mary Egger in reply to Greg Thorpe, Christine Suh, Alan Burzlaff, Ken Schuessler, and Butch Gangle re: "Comments on Cutoff Data Brief" contains attorney thought process and is subject to the attorney work-product privilege.

If any of the aforementioned individuals functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1458 September 10, 1999 e-mail string. Redacted text of the September 10, 1999 8:22 a.m. e-mail (CDE00307147-48) from Butch Gangle to Greg Thorpe (O'Melveny & Myers) re: "9/9/99 Meeting with NSAI & Chevron." Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

Redacted text of the September 10, 1999 9:49 a.m. e-mail (CDE00307147) from Mary Egger to Greg Thorpe and Butch Gangle copied to Alan Burzlaff, Ken Schuessler, and Gary Holcomb in reply contains attorney thought process and is subject to the attorney work-product privilege, however, two factual sentences are directly relevant to the issues in this case. "We need . . . next week," and "Let me know . . . call today." Moreover, if any of the recipients of this communication functioned as members of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Therefore, Chevron has demonstrated a "substantial need" for this these two sentences and that an "undue hardship" exists, because this information cannot readily be obtained from another source.

1524 September 28, 1999 e-mail string. Redacted text of the September 28, 1999 12:19 p.m. e-mail (CDE00303219) from Butch Gangle to Mary Egger and Greg Thorpe re: "Draft: Chevron Stevens Pricing Data."

Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard.

* * *

September 28, 1999 reply (CDE00303219) from Greg Thorpe to same contains a factual statement and is not subject to the attorney work-product privilege.

* * *

Redacted text of the September 28, 1999 6:23 p.m. reply (CDE00303219) from Mary Egger to Butch Gangle and Greg Thorpe copied to Christine Suh and Alan Burzlaff re: "Draft Chevron Stevens Pricing Data" contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1525 September 27-28, 1999 e-mail string.

(CDE00303556) September 27, 1999 3:56 p.m. e-mail from Butch Gangle to Mary Egger and Greg Thorpe regarding "Chevron's Stevens Price Data."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as it reports on the fact that Butch Gangle received price data from Chevron and that is being analyzed by STA. Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

September 24, 1999 10:34 p.m. reply e-mail (CDE00303556) re: same from Greg Thorpe contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an

improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

September 28, 1999 10:02 a.m. e-mail memo from Mary Egger to Butch Gangle and Greg Thorpe re: same contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1526 September 29, 1999 e-mail string. The September 29, 1999 8:27 a.m. e-mail (CDE00307909-10) from Butch Gangle to Mary Egger and Alan Burzlaff re: "Pricing Ratios."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as it repeats price ratio calculations performed by Alan Burzlaff in the first three paragraphs. As for paragraphs 4-7, the redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

September 29, 1999 11:29 a.m. e-mail (CDE00307909) from Mary Egger to Butch Gangle copied to Greg Thorpe re: "Pricing Ratio's" contains attorney thought process and is subject to the attorney work-product privilege. If any of the recipients, however, functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1530 Redacted text of the October 1, 1999 8:01 a.m. e-mail (CME01301270-71) from Butch Gangle to Mary Egger, Greg Thorpe, Alan Burzlaff, and Gary Holcomb re: "Norm's Final Firm Offer."

Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1550 October 20, 1999 fax transmittal memo (COM002-01289) from Butch Gangle to DOE Equity SOZ Team with cc: to Mary Egger, Greg Thorpe, and Alan Burzlaff re: "EHEC Minutes-1956 Objection."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as it discusses a letter in the public domain to Standard Oil (Chevron's predecessor), and the minute keeping practice of the EHEC from 1979 on. Chevron, however, has

not demonstrated a "substantial need" for this document and that "undue hardship" exists, because this information can be obtained from another source.

1551 October 29, 1999 fax transmittal memo (COM002-01293) from Butch Gangle to DOE Equity SOZ Team with cc: to Mary Egger, Greg Thorpe, and Alan Burzlaff regarding "SOZ Conversion Research."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as it describes 1956 letters in the public domain about price data for oil, gas, and gasoline for purposes of evaluating oil and gas reserves at NPR-1. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1552 October 20, 1999 fax memo (CSI0060187) from Butch Gangle to DOE Equity SOZ Team with cc: to Mary Egger, Greg Thorpe, and Alan Burzlaff regarding "Carneros EHEC Record dated 6/9/76." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as it discusses the record from the EHEC Geology and Reservoir Subcommittees.

The 2-page attachment is a June 9, 1976 final and signed Addendum and Modification of Reservoir Engineering and Correlation Subcommittees Report on 2 9R Carneros Zone with Table, in the public domain, and not subject to any privilege.

1553 October 20-21, 1999 e-mail string. Redacted text of the October 21, 1999 11:35 a.m. e-mail (CDE00302715) from

Butch Gangle to Mary Egger re: "Gas Plants inlet and outlet streams gas analysis. Elk Hill."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual, as it reports only that Alan Burzlaff received Chevron data and of the discovery of "a great deal of materials in [DOE's] warehouse and out at Elk Hills" and not subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

Redacted text of the October 21, 1999 4:50 p.m. e-mail (CDE00302715) from Mary Egger to Greg Thorpe and Butch Gangle copied to Alan Burzlaff, Gary Holcomb re: "Gas Plants inlet & outlet streams gas analysis, Elk" does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual, as it only reports on a revised NSAI schedule and is not subject to the attorney work-product privilege.

1555 October 22, 1999 memo from Greg Thorpe and Christine Suh to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, and Owen Olpin re: "Current Price." This document conveys attorney thought process and is subject to the attorney work-product privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1556 October 26, 1999 fax memo from Butch Gangle to "DOE Equity Team" copied to Mary Egger, Greg Thorpe, and Alan Burzlaff re: "Carneros MER (1/12/93)."

Gangle was a DOE engineer and a representative of DOE. The text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it summarizes an attached July 12, 1993 memo from Chevron to the Director of Naval Petroleum Reserves and circumstances surrounding its production, and is not subject to the attorney work-product privilege.

1562 October 28, 1999 fax cover sheet (CBG0030584) from Alan Burzlaff to Greg Thorpe, Christine Suh, Mary Egger, Butch Gangle, and Ken Schuessler, attaching a October 27, 1999 memo (CBG0030585-86) to F.J. Gangle from Alan Burzlaff (signed) and copied to Greg Thorpe, Mary Egger, Ken Schuessler, and Christine Suh re: "Appropriate 'Current Price' Time Period, Stevens Zone Conversion Factor Issue."

The memo (CBG0030585-86) is an analysis of "the current price period from DOE's perspective." Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

The attachments CBG0030587-92, however, are factual charts/graphs. In particular, CBG0030590 is information from the U.S. Energy Information Administration in the public domain. Neither attachment is subject to the attorney work-product privilege.

1563 Unsigned draft of October 27, 1999 Burzlaff memo. *See* ruling on folder 1562.

| | |
|---|---|
| 1564 | Signed copy of October 27, 1999 Burzlaff memo. *See* ruling on folder 1562. |
| 1565 | Signed copy of October 29, 1999 Burzlaff memo. *See* ruling on folder 1562. |
| 1574 | Redacted text of the November 1, 1999 4:58 p.m. e-mail from Alan Burzlaff to Mary Egger copied to Butch Gangle, Greg Thorpe and Christine Suh and re: "1942 Prices."<br><br>This document does not reveal any mental process, strategy, tactics or impressions but is information from a Standard Oil May 23, 1941 oil price bulletin and the 1957 SOZ Redetermination and therefore is not subject to the attorney work-product privilege. |
| 1575 | November 2, 1999 fax cover sheet (CME01102064) from Alan Burzlaff to Greg Thorpe/Christine Suh, Mary Egger, and Butch Gangle. The fax cover sheet comment does not reveal any mental impressions but is factual and not subject to the attorney work-product privilege. The four attached charts, *i.e.*, Oil Price History (West Texas Intermediate Crude), Oil Price History:1996-1998 (same), Natural Gas Price History (Henry Hub Location), Natural Gas Price History: 1996-1998 (same) (CME01102065-68) are factual data that also is not privileged. |
| 1579 | November 4, 1999 memo (CME01401124-27) from Alan Burzlaff to Butch Gangle Reference to a NSAI letter to Butch Gangle and Norm Stone (Chevron) dated October 27, 1999 Subject: "Stevens Zone Gas Conversion Guidelines" copied to Ken Schuessler (CME0141124-35).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header |

should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

A November 5, 1999 fax cover sheet (CME04120) from Butch Gangle to Mary Egger forwarding a November 5, 1999 letter (CME0401122-23) from Butch Gangle to Richard Krenek, IPE indicating that the November 4, 1999 memo was sent to the IPE copied to Chevron, with no prior input from Ms. Egger. Therefore, this document (CME01401124-27) is not privileged.

1582 November 18, 1999 e-mail string.

November 15, 1999 6:13 p.m. e-mail (CME0112053-54) from Alan Burzlaff to Greg Thorpe, Mary Egger, Christine Suh copied to Butch Gangle, Ken Schuessler, and Gary Holcomb re: "Prices in Chevron Current Price Brief to ILA."

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. The comparative charts on 2053-54, however, are factual and not privileged. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

The November 16, 1999 2:01 p.m. response from Greg Thorpe contains attorney thought process and is subject to the attorney work-product privilege.

November 16, 1999 9:11 p.m. e-mail (CME01102052) from Alan Burzlaff to Greg Thorpe copied to Mary Egger, Owen Olpin, Francis Gangle, and Kenneth Schuessler.

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

The comparative chart, however, is factual and is not privileged.

* * *

November 18, 1999 2:53 p.m. e-mail (CME01102051) from Butch Gangle to Mary Egger, Greg Thorpe, Alan Burzlaff copied to Gary Holcomb re: "NSAI Conversion Methodology Meeting in Bakersfield." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it reports on a November 18, 1999 meeting with IPE and is not subject to the attorney work-product privilege.

* * *

The author of the handwritten note on CME01102050 is not identified, but the content is factual and is not privileged.

| | |
|---|---|
| 1583 | Redacted text of the November 18, 1999 2:53 p.m. e-mail (CDE0030759) from Butch Gangle to "everyone" re: "NSAI Conversion Methodology Meeting in Bakersfield."<br><br>Gangle was a DOE engineer and a representative of DOE. The first section of redacted text "This . . . me," although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual, relevant to the Government's causation theory, and is not subject to the attorney work-product privilege. *See* 6/15/07 TR at 10.<br><br>The second section of redacted text "but . . . view" is subject to the attorney work-product privilege. |
| 1586 | November 22, 1999 fax cover sheet (CSI0020020) from Alan Burzlaff to Greg Thorpe, Christine Suh, Mary Egger, and Butch Gangle transmitting "Plots of conversion factor results (based on NSAI methodology) for varying price window," with 2 pages of charts (CSI0020021-22).<br><br>Burzlaff, as a DOE consultant, was a representative of DOE. The fax cover sheet and attached charts, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege. |
| 1589 | Redacted text of the November 23, 1999 11:53 a.m. e-mail from Mary Egger to Alan Burzlaff, Butch Gangle, Greg Thorpe re: "Voicemail from Gary Henderson [Counsel for Chevron]" conveys attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |
| 1593 | November 30, 1999 memo from Alan Burzlaff to Butch Gangle, Greg Thorpe, and Mary Egger re: "Gas Conversion Factor Methodology, Analysis of Impact on NSAI Stevens |

| | |
|---|---|
| | Zone Provisional Equity Recommendation," (CSI0020411) copied to Ken Schuessler forwarding 5 charts (CSI0020412-16).<br><br>Burzlaff, as a DOE consultant, was a representative of DOE. The text, except for the sentence in the second paragraph "For our . . . recommendation," although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege, although these documents are marked "privileged and confidential," they factually graphically depict a range of "possible equity outcomes related to the proposed price-based gas conversion factors methodologies presented by [the IPE]." The first sentence in the second paragraph "For our. . . recommendation." is subject to the attorney work-product privilege. |
| 1596 | The source for CME01102034-36 is listed as NPR I Product Revenues (DOE share), BPOI Monthly Status Report and are in the public domain. The other factual charts (CME01102037-39) also are factual and not privileged, without the notations alleged to have been made by Ms. Egger on CME01102038 that contain attorney thought process and are subject to the attorney work-product privilege. |
| 1602 | E-mail string. Redacted text of the November 15, 1999 6:13 p.m. e-mail (CBG01100275) from Alan Burzlaff to Greg Thorpe, Mary Egger, Christine Suh copied to Butch Gangle, Ken Schuessler, and Gary Holcomb re: "Prices in Chevron Current Price Brief to ILA."<br><br>Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is a factual explanation of California Border Gas prices and Stevens Posting oil prices that appear in Chevron's Current Price Brief and are not subject to the attorney work-product privilege. In addition, the attached three charts are factual and not privileged. |

* * *

Redacted text of the November 16, 1999 5:01 p.m. e-mail (CBG01100275) from Greg Thorpe to Alan Burzlaff copied to Christine Suh, Own Olpin, Mary Egger and Butch Gangle re: same contains attorney thought process and is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

Redacted text of the November 24, 1999 11:43 a.m. e-mail (CBG01100283) from Greg Thorpe to Alan Burzlaff and Butch Gangle and copied to Gary Holcomb, Greg Thorpe, and Mary Egger re: "Final Draft Version of DOE EFT Response On Gas Conversion Equations" contains attorney thought process and is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

Redacted text of the December 13, 1999 12:34 p.m. e-mail (CBG01100288) from Alan Burzlaff to Greg Thorpe copied to Mary Egger and Butch Gangle re: "Price Window for Stevens Zone Settlement Agreement." Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual as it re-states the "current price" window agreed to with Chevron and the gas conversion factors and is not subject to the attorney work-product privilege.

* * *

(CBG01100289) is the same document as (CBG01100288).

* * *

Redacted text of the November 18, 1999 11:53 a.m. e-mail (CBG01100367-68) from Butch Gangle to Mary Egger, Greg Thorpe, and Alan Burzlaff copied to Gary Holcomb re: "NSAI conversion methodology meeting in Bakersfield."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual, as it reports on a November 18, 1999 NSAI meeting at which Chevron was present, and is not subject to the attorney work-product privilege.

* * *

Redacted text of the November 19, 1999 11:05 a.m. e-mail (CBG01100367) from Greg Thorpe to Butch Gangle, Mary Egger and Alan Burzlaff copied to Gary Holcomb re: "NSAI conversion methodology." This document contains attorney thought process and is subject to the attorney work-product privilege; however, the first sentence "Thank you . . . we thought" is factual and relevant to the Government's causation theory. *See* 6/15/07 TR at 10. Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for the first sentence, and that an "undue hardship" exists, because this information cannot readily be obtained from another source. If any of the aforementioned, however, functioned as members of the "DOE field equity team," the first sentence may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1639 February 9, 2000 Elk Hills Equity Status Summary (CME00800116). The log represents that this document, marked "Privileged & Confidential" was prepared by Butch Gangle (DOE DFT) for unknown recipients.

Gangle was a DOE engineer and a representative of DOE. The chart, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as it states factual results of certain past and existing positions. Moreover, the document is relevant to the Government's causation theory. *See* 6/15/07 TR at 10. Therefore, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

1666 Same ruling as 889 (2258).

1682 March 22-23, 2000 e-mail string. Redacted text of the March 22, 2000 6:31 p.m. e-mail (CDE00307246-47) from Greg Thorpe to Mary Egger, Butch Gangle, Alan Burzlaff, Ken Schuessler, Christine Suh and Owen Olpin re: "letter to krenek." The e-mail contains attorney thought process. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

March 23, 2004 5:44 a.m. e-mail from Mary Egger to Greg Thorpe, Butch Gangle, Alan Burzlaff, Ken Schuessler, Owen Olpin, and Christine Suh re: "letter to krenek."

The e-mail contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

Redacted text of the March 22, 2000 7:34 a.m. e-mail (CDE00307246) from Alan Burzlaff to Mary Egger, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh re: "letter to krenek."

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual since it reports the "estimated recoverable oil that Chevron is claiming" and is not subject to the attorney work-product privilege.

* * *

Redacted text of the March 23, 2000 10:38 a.m. e-mail reply from Greg Thorpe to Mary Egger, Alan Burzlaff, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

March 23, 2000 1:39 p.m. e-mail reply from Mary Egger to Greg Thorpe, Alan Burzlaff, Greg Thorpe, Butch Gangle, Ken Schuessler, Owen Olpin, and Christine Suh arguably contains attorney work-product and is subject to the attorney work-product privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

| | |
|---|---|
| 1695 | Redacted text of the April 10, 2000 4:48 a.m. e-mail (CDE0037455-56) from Butch Gangle to Mary Egger/Greg Thorpe re: "DOE SOZ Presentations Start Today."<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |
| 1721 | May 19, 2000 5:47 p.m. e-mail from A. Burzlaff to Greg Thorpe copied to Butch Gangle, Ken Schuessler, and Mary Egger re: "Verification of Capture Analysis in CUSA SOZ Equity Case" together with attachments (CSI0041053-54).<br><br>Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |

| | |
|---|---|
| | CSI0041055-61 are Chevron documents and are not subject to any privilege. CSI0041062-63 allegedly are handwritten notes of A. Burzlaff, but are factual in nature and not privileged. |
| 1725 | The text of CBG0040615-16 is a draft letter re: "1994 SOZ Reports" with handwritten notes from Mary Egger to Greg Thorpe, Butch Gangle, and Alan Burzlaff. CBG004615 was produced, so whatever privilege attached was waived.<br><br>CBG0040616 contains attorney thought process and is subject to the attorney work-product privilege. |
| 1881 | Redacted text of the October 10, 2000 fax cover sheet (CME01300526) from Butch Gangle to "DOE Equity Legal Team" copied to Mary Egger, Greg Thorpe, Alan Burzlaff, and Owen Olpin re: "In reply to question on Bowers Memo (6/10/76)."<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it discusses various attachments from 1976 proceedings and is not subject to the attorney work-product privilege.<br><br>Attached April 17, 1976 memo (CME01300527) from R.F. Schlecht re: "Section 7 R Evaluation-Godsey-Earlougher, Inc." with attachment, to 17 recipients who were asked to provide a technical review of the Godsey-Earlougher evaluation is not privileged.<br><br>CME01300528 is March 31, 1976 comparative analysis of Section 7R Reserves that is factual. CME01300529 is the first page of a document prepared by Godsey-Earlougher, Inc. "Department of Navy Petroleum and Oil Shale Reserves-Evaluation of Stevens Sand Reservoir . . . as of March 1, 1976." Neither document is privileged.<br><br>Redacted text of CME01300530-31, a letter to George G. Dowd, Captain JAGG, USN from an engineering firm, "Godsley-Earlougher, Inc." is not privileged. |

CME01300532-34 is a report "Oil In Place Determination Section 7R, Tule Elk Oil Field, Kern County, California" by Richard L. Whiting, Consulting, Petroleum, Natural Gas and Geological Engineers, P.O. Drawer B, College Station, Texas 77841 is not privileged.

1884 Same ruling as 1881.

1897 E-mail string. Redacted text of the October 12, 2000 1:11 p.m. e-mail (CME02202219) from Greg Thorpe to Alan Burzlaff copied to Butch Gangle re: "soz" contains attorney thought process and is subject to the attorney work-product privilege.

* * *

Redacted text of the October 12, 2000 3:18 p.m. e-mail from Alan Burzlaff to Greg Thorpe copied to Butch Gangle, Mary Egger and M. White.

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

* * *

The redacted text of the October 12, 2000 6:34 p.m. e-mail from Greg Thorpe to Alan Burzlaff copied to Mary Egger, Butch Gangle, Owen Olpin and Molly White contains attorney thought process and is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1898 October 12, 2000 fax cover sheet (CSI0041005) from Alan Burzlaff to Greg Thorpe/Molly White, Mary Egger, Butch Gangle, Own Olpin, with text, and forwarding two pages of charts re: USOZ Sections, prepared by Doug Hess (CSI0041006-07) and two pages of unidentified text re: same (CSI0041008-09) .

If any of the aforementioned functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1933 November 13, 2000 handwritten notes of Butch Gangle of a telephone call with Robert Kripowicz re: "SOZ Schedule."

Gangle was a DOE engineer, and a representative of DOE. The text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

1944 November 15, 2000 fax cover sheet from Gary Latham to Butch Gangle with note forwarding Option Paper.

| | |
|---|---|
| | Latham was a DOE engineer and a representative of DOE. The fax cover sheet and attached note, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege. |
| 2049 | January 19, 2001 12:32 p.m. e-mail from Alan Burzlaff to Mary Egger and Greg Thorpe copied to Ken Schuessler, Butch Gangle, and Molly White re: "Chevron's response."<br><br>Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text. |
| 2130 | Redacted text of the May 3, 2001 8:08 a.m. e-mail (CDE00304468) from Butch Gangle to Mary Egger re: "SOZ Equity Update Report."<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, as it reports on a April 16, 2001 meeting in Golden with STA, a meeting on April 17, 2001 with DOE engineers in Bakersfield, where Greg Thorpe was noted in attendance and a follow-on "regularly scheduled conference call" with IPE "to discuss . . . progress on the SOZ equity finalization."<br><br>Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and |

that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2195 Power point slide presentation prepared by Butch Gangle and presented on November 6, 2001 to DOE Equity Process Team.

The majority of this document (CBG01204105-19, 21) are technical bullets or graphs re: "Shallow Oil Zone, DOE Modeling Effort, NSAI Modeling Effort, IPE (NSAI) Interim Deliverables, Streamlining The Equity Process." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege, except for CBG01204120 "Legal Issues."

Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2196 The November 7, 2001 12:38 a.m. e-mail (CME01300346) from Alan Burzlaff to Mary Egger copied to Butch Gangle and Ken Schuessler.

Burzlaff, as a DOE consultant, was a representative of DOE. The text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual as it confirms that Ms. Egger was present at the November 6, 2001 meeting. Her role at that meeting is central to the issues before the court. Therefore, the document is not subject to the attorney work-product privilege.

Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

2265 May 1, 2002 e-mail string. Redacted text of the first four paragraphs of the May 1, 2002 12:54 p.m. e-mail (CDE00304343-44) from Alan Burzlaff to Butch Gangle copied to Kevin Beacon and Ken Schuessler re: "SOZ Equity Interim Deliverable Process."

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, except for the text in the third paragraph "obviously . . . NSAI," although prepared in connection with the Stevens Zone Equity Finalization Process does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual as it reports on an April 30, 2002 meeting with the IPE and Chevron and is not subject to the attorney work-product privilege. As for the text (CDE00304344) "1. Any future . . . May 31st (simulation), respectively," Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual and is not subject to the attorney work-product privilege.

* * *

The redacted text of the May 1, 2002 10:58 a.m. e-mail (CDE00304342-43) from Butch Gangle to Mary Egger and Greg Thorpe copied to Alan Burzlaff and Ken Schuessler re: "SOZ Equity Interim Deliverable Process." Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it discusses the April 30, 2002 meeting with the IPE and

| | |
|---|---|
| | Chevron and is not subject to the attorney work-product privilege. |
| 2319 | Redacted text of the August 27, 2002 1:31 p.m. e-mail (CDE00307651) from Butch Gangle to Mary Egger re: "Heads Up."<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it repeats Burzlaff's report on the IPE's preliminary USOZ simulation model for the period 1919-1997 and is not subject to the attorney work-product privilege.<br><br>Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. |
| 2327 | October 3, 2002 e-mail string. The redacted text of the October 3, 2002 7:34 a.m. e-mail (CDE00304247-48) from Butch Gangle to Mary Egger copied to Alan Burzlaff and Ken Schuessler re: "Somewhat Good News."<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it summarizes an October 1, 2002 public meeting at which the NSAI announced a provisional recommendation and is not subject to the attorney work-product privilege. This document is also relevant to the Government's causation theory. *See* 6/15/07 TR at 10.<br><br>Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field |

equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

Redacted text of the October 3, 2002 9:08 a.m. e-mail from Mary Egger to Butch Gangle copied to Alan Burzlaff and Ken Schuessler re: same arguably could be construed to contain attorney thought process, however, the text "NSAI didn't . . . direction!!" is a statement of fact and relevant to the Government's causation theory. *See* 6/15/07 TR at 10. Assuming, *arguendo*, this text is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source and if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. *See, e.g.*, July 24, 2007 Chevron Status Report at 24-25.

2391 Redacted text of the January 13, 2003 12:17 p.m. e-mail (CDE00301506) from Butch Gangle to Alan Burzlaff copied to Mary Egger re: "Petrophysics Questions."

Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

If any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

2711 May 28, 2003 e-mail string. Redacted text of the May 28,

2003 5:05 a.m. e-mail (CBG0071194-95) from Butch Gangle to Mary Egger and Alan Burzlaff re: "SOZ Comments Due Tomorrow."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it discusses scheduling matters re: NSAI SOZ Provisional Recommendations and is not subject to the attorney work-product privilege. Assuming, *arguendo*, this document is privileged Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

* * *

Redacted text of the May 28, 2003 10:37 a.m. e-mail from Alan Burzlaff to Butch Gangle re: "SOZ Comments Due Tomorrow."

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but rather is factual as it relates to a May 27, 2003 telephone conference in which Chevron participated and scheduling re: SOZ comments and is not subject to the attorney work-product privilege.

*Assuming,* arguendo, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

| | |
|---|---|
| 2730 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown.<br><br>Although the author of 2730-2743 is not known, the court will give the Government the benefit of the doubt that these documents are subject to the attorney work-product privilege. |
| 2731 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2732 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2733 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2734 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2735 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2736 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2737 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2738 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional |

| | |
|---|---|
| | Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2739 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2740 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2741 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2742 | May 29, 2003 draft outline and partial text of "Response to Netherland Sewell & Associates, Inc. Provisional Recommendation of Equity Participation for the Shallow Oil Zone." The author of this document is unknown. *See* 2730. |
| 2743 | Undated and author unknown draft "DOE Response to NSAI Provisional Recommendation of Equity Participation for the Shallow Oil Zone." *See* 2730. |
| 2994 | Redacted text of the July 21, 1998 9:51 a.m. e-mail (CBG0090110-11) from Wayne Kauffman to Mary Egger copied to Butch Gangle, Jim Murphy, Greg Thorpe, and Jay Williams re: "CUSA Proposed Communications Protocol draft." <br><br> This document states the fact "DOE EFT supports the present Protocol," implying that Mr. Kauffman is a member of same. Moreover, it evidences the fact that the existing protocol is a matter of dispute between the parties and is not privileged. <br><br> Assuming, *arguendo*, this document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity |

Process Agreement. *See, e.g.*, July 24, 2007 Chevron Report at 29.

The July 21, 1998 9:57 a.m. message flag and status are not privileged.

3339 November 15, 2004 3:36 p.m. e-mail from Butch Gangle to Gena Cadieux copied to Alan Burzlaff, Greg Thorpe re: "Stevens CF Update."

Gangle was a DOE engineer and a representative of DOE. The redacted text, except for the last paragraph on CDE00104606 "So as . . . that is not," although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it responds to a technical question from Ms. Cadieux and is not subject to the attorney work-product privilege.

Assuming, *arguendo*, this entire document is privileged, Chevron has demonstrated a "substantial need" for this document and that an "undue hardship" exists, because this information cannot readily be obtained from another source, and if any of the recipients functioned as a member of the "DOE field equity technical team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. The document is also relevant to the Government's causation theory. *See* 6/15/07 TR at 10.

3512 E-mail string. September 1, 2005 11:06 am e-mail from Gary Latham to Butch Gangle, Norman Stone, Alan Burzlaff is not subject to any privilege since it was sent to Chevron.

* * *

The September 6, 2005 7:08 pm e-mail from Alan Burzlaff to Butch Gangle copied to Richard Seader re: "OHA Implementation by PDASFE" discussing a "Latham whitepaper."

Burzlaff, as a DOE consultant, was a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court

of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege.

If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

| | |
|---|---|
| 4347 | October 17, 2006 "Draft DOE Equity Finalization Team Comments On Accuracy of OHA Conversion Factor Calculation Case No. TEA-0001." The log states the author was "DOE EFT and counsel." The document contains attorney thought process and is subject to the attorney work-product privilege. |
| 4348 | October 17, 2006 Draft.002 of document 4347. Same ruling as 4347. |
| 4349 | October 17, 2006 Draft.002 of document 4347, with red-line edits, which the log alleges were made by unnamed members of the "EFT staff." Same ruling as 4347. |
| 4350 | October 17, 2006 "Draft DOE Equity Finalization Team [Technical] Comments On Accuracy of OHA Conversion Factor Calculation Case No. TEA-0001." Same ruling as 4347. |
| 4351 | October 17, 2006 "Revised Timeline and Records Sequence to Chevron OHA Appeal," authored by Butch Gangle.<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is a factual chart (without comment) "Revised Timeline and Records Sequence to Chevron OHA Appeal" and is not subject to the attorney work-product privilege. |
| 4354 | Undated "DOE Written Rebuttal of CUSA Report and Presentation on the Shallow Oil Zone Detailed Outline," with staff assignments designated, but no author designated in log. |

The factual content of the headers with the staff designation should be sufficient for Chevron's purposes, without revealing the subheaders that arguably contain attorney thought process. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement.

4357 Redacted text is of a draft October 17, 2006 letter to Richard Krenek from Butch Gamble copied to Norm Stone, Gary Latham, Alan Burzlaff and blind-copied to Mary Egger and Greg Thorpe.

Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals for the Federal Circuit has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is not subject to the attorney work-product privilege, since it was forwarded to Norm Stone (Chevron).

4361 January 22, 1999 "DOE Technical Response to Chevron Technical Report on Capture Methodology," with red-line edits. The log states the author as "DOE EFT (Gangle et al.)" and arguably is subject to the attorney work-product privilege.

4378 Same ruling as document 4348.

4382 October 17, 2006 fax from Butch Gangle to DOE Equity Team copied to Mary Egger, Greg Thorpe, and Alan Burzlaff re: "Carneros EHEC Record Dated 6/1976."

Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it describes the attached record from EHEC Geology and Reservoir Subcommittee with maps and is not subject to the attorney work-product privilege.

| | |
|---|---|
| 4384 | Redacted text of the October 17, 2006 fax cover sheet from Butch Gangle to "DOE Equity Team" copied to Mary Egger, Greg Thorpe and Alan Burzlaff re: "Carneros MER (1/12/93)" is identical to the fax cover sheet in 1556, except for the date.<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it forwards a Chevron MER response dated January 12, 1993 and is not subject to the attorney work-product privilege. |
| 4385 | Redacted text of a October 17, 2006 fax cover sheet. This document is the same as the fax cover sheet in 14 from Butch Gangle to the "DOE Equity Team," re: "SOZ Conversion Research" copied to Mary Egger, Greg Thorpe and Alan Burzlaff.<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual and is not subject to the attorney work-product privilege. |
| 4403 | Redacted text of a October 17, 2006 memo from Butch Gangle to "DOE SOZ Equity Legal Team" re: "Inclusion under UPC Sec. 15(b) vs. A&S agreement Sec. 4(d) Part II."<br><br>Gangle was a DOE engineer and a representative of DOE. The redacted text, although prepared in connection with the Stevens Zone Equity Finalization Process, does not reveal any mental process, plans, strategies, tactics, or impressions, but is factual as it forwards old correspondence from the Acting Secretary of the Navy to the U.S. Attorney General and is not subject to the attorney work-product privilege. |
| 4613 | Undated document that appears to be a draft letter/comments from the DOE EFT to the IPE re the Shallow Oil Zone, with no author designation and is not privileged. |
| 4614 | Same ruling as 4613. |

| | |
|---|---|
| 4619 | Draft portion of DOE EFT filing to be made with the ASFE, with red-line edits re: "Use of Data beyond the Cutoff (March 1, 1997)" re: the Stevens equity process with no author designation and is not privileged. |
| 4636 | Draft portion of DOE EFT document re: "4.16 USOZ Reserves" authored by "DOE EFT (Gangle et al.)" arguably is subject to the attorney work-product privilege. |
| 4651 | Draft partial DOE "Response to [NSAI] Provisional Recommendation of Equity Participation For the Stevens Zone,"with edits. This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4652 | Draft (different than 4651) DOE "Response to [NSAI] Provisional Recommendation of Equity Participation For the Stevens Zone," with edits. This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4655 | Draft portion of DOE EFT document re: "4.1 Issue 1: High Abandonment Pressures." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens |

| | |
|---|---|
| | Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4656 | Draft portion of DOE EFT document re: "4.11 Issue 11: Water Saturations form Oil Base Core." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4657 | Draft portion of DOE EFT document re: "4.12 Issue 12: Sand Counting Using Mud Logs." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4658 | Draft portion of DOE EFT document re: "4.2 Issue 2: Oil Migration, 26R Sand to 31S C/D Shales." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court |

| | |
|---|---|
| | of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4659 | Draft portion of DOE EFT document re: "4.7 Issue 7:26 R Net Sand Thickness." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4660 | Draft portion of DOE EFT document re: "4.8 Issue 8: W31S Reserves." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4667 | Draft DOE "Assessment Final Stevens Equity Recommendation" re: DOE EFT assessment of IPE final Stevens Equity Recommendation. This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel |

| | |
|---|---|
| | deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4675 | Draft document "31 Shales Pool Abandonment Pressure, N/A and C/D Shales Migration, Section 31S Total Oil Contribution for NA Shale Interval, C/D Shale Migration Solution Gas" with edits. This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4676 | Draft document, "31S Shales Pool Abandonment Pressure," with edits. This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4681 | "Comments on CUSA's Rebuttal to NSAI's Provisional Stevens Equity Report Material Balance Water Influx." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court |

| | |
|---|---|
| | of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4688 | Draft portion of DOE EFT document re: "4.9 Issue 9: T&N Sands Reserves." This document was represented to be authored by DOE EFT (Gangle et al.).<br><br>Gangle was a DOE engineer, and a representative of DOE. The redacted text was prepared in connection with the Stevens Zone Equity Finalization Process and contains a mix of factual information and communication that the United States Court of Appeals has identified as "relevant to the advice-of-counsel deference." *In Re Echostar Communications Corp.*, 448 F.3d 1294, 1301 (2006) (citing Fed. R. Civ. P. 26(b)(3)). Accordingly, this text is subject to the attorney work-product privilege. |
| 4689 | Same ruling as 4651. |
| 4690 | Same ruling as 4652. |
| 4718 | Draft "Section 1.1 4.2 Previous SOZ Equity Determinations," with red-line edits. Unknown author. This undated document with no author identified, does not contain attorney thought process. |
| 4758 | "Background Information for *Chevron USA* v. *United States*, filed in United States Court of Federal Claims," August 20, 2004, marked "Attorney Work Product" was represented to be authored by STA (Burzlaff, et al.) and the content is entirely factual and not subject to the attorney work-product privilege. |
| 4760 | Undated draft letter to Norm Stone and Francis Gangle from Jeffrey Jarrett, ASFE re: "Preliminary Decision Finalizing Elk Hills Zone Equity." This document contains attorney thought process and is subject to the attorney work-product privilege. |
| 5082 | May 29, 1998 memo from Alan Burzlaff and Ken Schuessler to Mary Egger re: "Proposed Joint [Technical] Instruction to NSAI," with hand edits made by Greg Thorpe contains attorney thought process and is subject to the attorney work-product privilege. If any of the aforementioned, however, functioned as members of the "DOE field equity team," this |

document may evidence an improper *ex parte* communication prohibited by the Equity Process Agreement. Disclosure of the header should be sufficient for Chevron's need in this regard, without disclosure of the text.

**IT IS SO ORDERED.**

**s/Susan G. Braden**
**SUSAN G. BRADEN**
**Judge**